MONIQUE OLIVIER (SBN 190385)
(molivier@dplolaw.com)
DUCKWORTH, PETERS, LEBOWITZ, OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 433-0333
Facsimile: (415) 449-6556
SHANNON LISS-RIORDAN, *pro hac vice anticipated*
(sliss@llrlaw.com)
SARA SMOLIK, *pro hac vice anticipated*
(ssmolik@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
Telephone: (617) 994-5800
Facsimile: (617) 994-5801

UNITED STATES DISTRICT COURT
NORTHERN DISTRIC OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DOUGLAS O'CONNOR, and THOMAS COLOPY, individually and on behalf of all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., TRAVIS KALANICK, and RYAN GRAVES, <br><br> Defendants, | Case Number:   C 13-3826-KAW <br><br> **PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES** <br><br> **Hearing Date:** <br> **Time:** <br> **Courtroom:** <br><br> **Before the Hon. Kandis A. Westmore** |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 4

    I.    BECAUSE UBER'S ARBITRATION PROVISION DOES NOT PROVIDE THE DRIVERS WITH MEANINGFUL OPPORTUNITY TO OPT OUT, OR ADEQUATE INFORMATION FOR THE DRIVERS TO MAKE A REASONED DECISION AS TO WHETHER TO OPT OUT, IT SHOULD BE STRICKEN AS UNENFORCEABLE. ............................................................. 4

    II.    NOW THAT THIS CLASS ACTION HAS BEEN FILED, THIS COURT SHOULD DIRECT UBER TO CEASE ALL COMMUNICATIONS WITH CLASS MEMBERS THAT WOULD AFFECT THEIR RIGHTS TO PARTICIPATE IN THIS LITIGATION .................. 5

    III.    IF THE COURT DECLINES TO STRIKE THE ARBITRATION CLAUSE ALTOGETHER, IT SHOULD AT THE VERY LEAST REQUIRE UBER TO PROVIDE NOTICE REGARDING THEIR RIGHTS IN THIS CASE AND REVISE THE OPT OUT PROCEDURE TO GIVE DRIVERS A MEANINGFUL OPPORTUNITY TO OPT OUT .... 10

CONCLUSION ................................................................................................................... 11

PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES

# TABLE OF AUTHORITIES

**Cases**

AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740 (2011) .......................................................... 4

Austen v. Catterton Partners V, LP, 831 F. Supp. 2d 559 (D. Conn. 2011) ..................................... 8

Basco v. Wal-Mart Stores, Inc., 2002 WL 272384 (E.D. La. Feb. 25, 2002) ................................. 6

Belt v. Emcare Inc., 299 F. Supp. 2d 664 (E.D. Tex. 2003) ............................................................ 8

Burrell v. Crown Cent. Petroleum, Inc., 176 F.R.D. 239 (E.D. Tex. 1997) .................................... 6

Carnegie v. H&R Block, Inc., 180 Misc.2d 67 (N.Y.S.C. Jan. 7, 1999) ................................... 9,10

County of Santa Clara v. Astra USA, Inc., 2010 WL 2724512 (N.D. Cal. July 8, 2010) .... 7, 8, 10

Currency Conversion Fee Antitrust Litigation, 361 F.Supp.2d at 252 ........................................... 9

Ehret v. Uber Technologies, Inc., C.A. No. 12CH36714 (Circuit Court of Cook County, IL) ...... 5

Guifu Li v. A Perfect Day Franchise, Inc., 270 F.R.D. 509 (N.D. Cal. 2010) ............................... 8

Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981) .............................................................................. 3, 5

Haffer v. Temple Univ. of Commonwealth Sys. of Higher Educ., 115 F.R.D. 506 (E.D.Pa.1987) 5,10

Hampton Hardware, Inc. v. Cotter & Co., 156 F.R.D. 630 (N.D.Tex.1994) ............................. 6, 9

Hicks v. Macy's Dep't Stores, Inc., 2006 WL 2595941 (N.D. Cal. Sept. 11, 2006) ................... 4, 5

Ingle v. Circuit City Stores, Inc., 328 F.3d 1165 (9th Cir. 2003) ................................................... 4

Jenifer v. Delaware Solid Waste Auth., 1999 WL 117762 (D. Del. Feb. 25, 1999) ...................... 6

Keystone Tobacco Co., Inc. v. U.S. Tobacco Co., 238 F. Supp. 2d 151 (D.D.C. 2002) ............. 5, 8

Kilgore v. KeyBank, Nat. Ass'n, 673 F.3d 947 (9th Cir. 2012) ..................................................... 4

King v. Hausfeld, WL 1435288 (N.D. Cal. Apr. 9, 2013) .............................................................. 4

Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193 (11th Cir. 1985) ........................................ 6

Laguna v. Coverall North America, Inc., No. 09-cv-2131 (S.D. Cal. Nov. 30, 2010) .................. 7

Lavitman et al v. Uber Technologies et al, Mass. Super. Ct. (Suffolk) C.A. No. 12-4490) ........... 4

Mevorah v. Wells Fargo Home Mortg., 2005 WL 4813532 (N.D. Cal. 2005) ............................... 5

Pollar v. Judson Steel Corporation, 33 FEP Cases 1870 (N.D. Cal. 1984) ............................. 7, 10

Quevedo v. Macy's, Inc., 798 F. Supp. 2d 1122 (C.D. Cal. 2011) .............................................. 4, 5

Ralph Oldsmobile Inc. v. General Motors Corp., 2001 WL 1035132 (S.D.N.Y. Sep. 7, 2001) .... 8

PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES

School Asbestol Litig., 842 F.2d 671 (3d Cir. 1988)..................................................................8, 9

Sjoblom v. Charter Communications, LLC, 2007 WL 5314916 (W.D.Wis. Dec. 26, 2007)..........8

Skirchak v. Dynamics Research Corp., 508 F.3d 49 (1st Cir. 2007)..............................................9

Wang v. Chinese Daily News, 236 F.R.D. 485 (C.D.Cal. 2006)..............................................8, 10

Zaborowski v. MHN Gov't Servs., Inc., 2013 WL 136368 (N.D. Cal. Apr. 3, 2013) ....................5

**Statutes**

115 F.R.D..................................................................................................................................10,12

Fed. R. Civ. P. 23 .......................................................................................................................3, 7

## INTRODUCTION

This case is brought on behalf of individuals who have worked as drivers for Defendants Uber Technologies, Inc., Travis Kalanick, and Ryan Graves (Uber) throughout the country [1]. Uber is a car service that provides drivers who can be hailed and dispatched through a mobile phone application. As set forth in the Plaintiffs class action complaint, Uber advertises to customers that gratuity is included in the cost of its car service. However, Uber drivers do not receive the total proceeds of any such gratuity. Instead, they receive only a portion of such gratuity if any is charged to the customer. Furthermore, based on Ubers communication to customers that gratuity is included in the price, few if any customers leave tips for the drivers. Thus, drivers do not receive tips that are customarily provided in the car service industry and that they would otherwise receive were it not for Ubers communication to customers that they need not tip. Plaintiffs, on behalf of a national class of Uber drivers, assert that this conduct violates common and statutory law [2].

In July 2013, just before this case was filed, Uber disseminated to its drivers a revised contract that they were required to accept if they wanted to continuing driving for Uber. This 15-page "Software License and Online Services Agreement" is attached here as Exhibit 1. The agreement was e-mailed to Ubers drivers, and drivers were instructed that they could accept the terms of the agreement by swiping a button on their smartphone [3]. Buried at the end of the agreement, beginning on page 11, is an arbitration provision. The arbitration provision contains a class action waiver, barring the drivers from bringing or participating in any class action alleging violations of the law by Uber. Ex. 1, at 13.

The arbitration provision provides for an opt-out mechanism, under which the drivers have 30

---

[1] As set forth in Plaintiffs Complaint (Doc. No. 1), Uber drivers in Massachusetts are excluded from this proposed class (because a separate case has been brought in Massachusetts on behalf of these drivers, see Lavitman et al v. Uber Technologies et al, Mass. Super. Ct. (Suffolk) C.A. No. 12-4490).

[2] Pursuant to the contract that Uber requires its drivers to enter, California law governs any disputes between the drivers and Uber regarding Ubers services. Plaintiffs have brought common law claims for tortious interference, unjust enrichment, and breach of implied contract, as well as statutory claims under California Labor Code §351, the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 et seq. (UCL), and California Labor Code §2802 for misclassifying the drivers as independent contractors and thereby not reimbursing them for business related expenses (such as for their vehicles, gas, and other expenses).

[3] The agreement is dated July 15, 2013, but was not disseminated until later. Plaintiff Douglas OConnor received the e-mail containing the agreement on or about July 22, 2013. See OConnor Declaration (Exhibit 2).

1

PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES

days from the date they accept the agreement to opt out of the arbitration requirement. Ex. 1, at 14. [4] In order to "opt out," the drivers are required to send a notice of their intent to "opt out" in writing to Uber, not by e-mail, or even ordinary mail. Instead, the notice must be "delivered by a nationally recognized overnight delivery service or by hand delivery" to the attention of Ubers General Counsel in San Francisco. Ex. 1, at 14. Nowhere in the notice sent to drivers, or in the contract, or in the arbitration provision itself is there a description of the types of claims that have been brought against Uber concerning the companys practices with respect to not paying gratuities to drivers (see notes 1 and 7). See Ex. 1.

Plaintiffs hereby seek a declaration from this Court that this arbitration clause is not enforceable and should be stricken, since the means by which drivers have been notified of the clause and their ability to "opt out" of the clause has not been adequate, and the drivers have not been given meaningful information by which to make a reasoned decision about whether to opt out of arbitration. Although drivers were e-mailed the contract that they were required to agree to in order to continue driving for Uber, and were able to accept the contract by simply swiping a button on their smartphone, in order to opt out of the arbitration clause (as described in information buried at page 14 of the agreement), drivers would have to hand deliver or use "a nationally recognized overnight delivery service" to Ubers General Counsel to deliver a notice of their intent to opt out. Moreover, drivers were not given any notice about any particular reason that it may be in their interest to opt out of the arbitration clause, namely that Uber has been subjected to claims by drivers that they have not received gratuities to which they are entitled.

Now that this case has been filed regarding these claims that would affect Uber drivers across the country, Uber should no longer be permitted to communicate with potential class members so as to affect their ability to participate in this case. Thus, the current arbitration clause should be stricken.

Or, at the very least, before being allowed to unknowingly waive their right to participate in this case, Uber drivers should be given fair notice (on their smartphones - the same means by which they received the new contract) that: (1) this case is pending; (2) they need to "opt out" of the arbitration clause in order to be able to potentially participate in this case; (3) they will be given additional time to make a reasoned choice as to whether to preserve their rights to participate in this case by opting out of

---

[4]The deadline for opting out is not clear, as it not clear by what date the drivers are required to accept the new agreement.

PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES

the arbitration clause; and (4) they will be able to opt out of the arbitration clause through a less burdensome means i.e. they should be permitted to opt out by swiping a button on their smartphones, the same method through which they were to agree to the new contract that Uber required them to agree to.

Without providing meaningful notice of their rights, Ubers new agreement deprives potential class members of their right to participate in this case. Drivers wishing to simply maintain their working relationship with Uber may accept the agreement, including the arbitration provision, without any understanding of the rights they are giving up. This is particularly likely where acceptance of the agreement including the arbitration provision is completed by a simple swipe of a button on the drivers smartphone, see Ex. 1 at 15, but the procedure to opt-out of arbitration requires the driver to send, by hand or overnight delivery, a signed, written statement (no form is provided by Uber) indicating his or her desire to opt out. Id. at 14.

Because drivers are currently in the period of time during which they can be deciding whether or not to opt out of the arbitration clause, but because they do not have notice of this case, which was filed on August 16, 2013 [5], Ubers arbitration provision constitutes misleading and coercive communication with class members. Pursuant to Fed. R. Civ. P. 23, the Court has broad authority to not only enjoin any such further communications, but to correct the effects of such communications thus far and to control Defendants future communications with class members about this litigation and their rights to participate in it. See Gulf Oil Co. v. Bernard, 452 U.S. 89, 99-101 (1981) ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties"). As set forth below, Ubers communications with class members, through the arbitration provision, are misleading because they fail to inform the class members of the pending litigation and the rights they are potentially giving up. Further, the communication is coercive because the nature of the relationship between Uber and the drivers is such that the drivers are dependent upon Uber for future work and income. Plaintiffs thus ask that this Court strike the arbitration agreements obtained by Uber from class members and rule that the existence of such agreements will not bar the class members participation in this litigation. In the alternative, the Court should at the very least require Uber to: (1) provide drivers clear notice of this case

---

[5] Plaintiffs counsel e-mailed a copy of the complaint to counsel for Uber the day that it was filed, August 16, 2013.

3

and the right they are giving up to potentially participate in this case unless they opt out of the arbitration clause; (2) expand the time period for drivers to opt out of the arbitration clause; and (3) require that Uber allow drivers to opt out of the arbitration clause in the same, unburdensome way they were permitted to accept the new agreement (i.e. by swiping a button on their smart phones).

## ARGUMENT

### I. BECAUSE UBER'S ARBITRATION PROVISION DOES NOT PROVIDE THE DRIVERS WITH MEANINGFUL OPPORTUNITY TO OPT OUT, OR ADEQUATE INFORMATION FOR THE DRIVERS TO MAKE A REASONED DECISION AS TO WHETHER TO OPT OUT, IT SHOULD BE STRICKEN AS UNENFORCEABLE.

Courts in California have upheld arbitration agreements where those agreements contain a real and meaningful opportunity for the recipient to opt out of arbitration. See Kilgore v. KeyBank, Nat. Ass'n, 673 F.3d 947, 964 (9th Cir. 2012), on reh'g en banc, 718 F.3d 1052 (9th Cir. 2013) (arbitration provision upheld where agreement provided 60 day period to opt out); Hicks v. Macy's Dep't Stores, Inc., 2006 WL 2595941 (N.D. Cal. Sept. 11, 2006) (arbitration agreements are not procedurally unconscionable if recipient is provided with a meaningful opportunity to opt out); cf. Quevedo v. Macy's, Inc., 798 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011), reconsideration denied, 2011 WL 6961598 (C.D. Cal. Oct. 31, 2011) (upholding arbitration provision that contained an opt-out form). [6] Here, Uber did not provide such an opportunity, and the arbitration agreements it has obtained already from class members should be stricken. See Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1172 (9th Cir. 2003) (refusing to enforce arbitration agreement where recipient had no meaningful opportunity to opt out).

Ubers arbitration provision makes no mention of the litigation previously filed against Uber challenging Ubers practice of retaining driver tips, and thus does not give drivers any indication of why they might want to opt out of an arbitration clause. [7] It provides only 30 days for the drivers to consider

---

[6] As courts in this district have noted, California law concerning contract formation and procedural unconscionability survives the Supreme Courts ruling in AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740 (2011). See King v. Hausfeld, WL 1435288, *8 and n.2 (N.D. Cal. Apr. 9, 2013), and cases cited therein.

[7] As noted above, Uber drivers in Massachusetts previously filed similar claims there. See Lavitman et al v. Uber Technologies et al, Mass. Super. Ct. (Suffolk) C.A. No. 12-4490). And in Illinois, Uber customers filed claims that tips they intended for drivers were not being retained by drivers.

whether or not to opt out. Unlike the arbitration agreements at issue in <u>Hicks</u> and <u>Quevedo</u>, Ubers arbitration provision contains neither a form nor a pre-paid envelope. Instead, to accept the arbitration agreement, drivers need not do anything more than accept the rest of the agreement by swiping a button on their phones. Ex. 1, at 15. [8] To opt out, however, drivers are required to send, by hand or overnight delivery, a signed, written statement (no form is provided by Uber) indicating his or her desire to opt out. <u>Id</u>. at 14. [9] Because Ubers procedure does not provide the drivers with a real and meaningful opportunity to opt out of the arbitration provision, the arbitration agreements Uber has already obtained from class members should be stricken as unenforceable.

## II.   NOW THAT THIS CLASS ACTION HAS BEEN FILED, THIS COURT SHOULD DIRECT UBER TO CEASE ALL COMMUNICATIONS WITH CLASS MEMBERS THAT WOULD AFFECT THEIR RIGHTS TO PARTICIPATE IN THIS LITIGATION

Fed. R. Civ. P. 23 entrusts the Court with broad authority to exercise control over class actions, including communications between defendants and potential class members. <u>See</u> <u>Gulf Oil</u>, 452 U.S. at 99-101 ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties"). This authority to control communications with class members includes the period before the class has been certified. <u>See</u> <u>Mevorah v. Wells Fargo Home Mortg.</u>, 2005 WL 4813532 *3 (N.D. Cal. 2005) (applying <u>Gulf Oil</u> analysis to pre-certification communications by defendant to potential class members without regard to the fact that no motion for class certification was filed);
<u>Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.</u>, 238 F. Supp. 2d 151, 154 (D.D.C. 2002) (Rule 23 provides authority for court to regulate communications between a party and class members, even before a class has been certified); <u>Haffer v. Temple Univ. of Commonwealth Sys. of Higher Educ.</u>, 115 F.R.D. 506, 512 (E.D.Pa.1987). For example, in <u>Hampton Hardware, Inc. v. Cotter & Co.</u>, 156 F.R.D. 630, 634

---

<u>See</u> <u>Ehret v. Uber Technologies, Inc.</u>, C.A. No. 12CH36714 (Circuit Court of Cook County, IL).

[8] Moreover, Ubers agreement contains other hallmarks of procedural unconscionability, including the fact that the arbitration provision comes 11 pages into the agreement and does not require a separate signature to indicate acceptance. <u>See</u> <u>Zaborowski v. MHN Govt Servs., Inc.</u>, 2013 WL 136368 (N.D. Cal. Apr. 3, 2013).

[9] Notably, English is not the first language for many Uber drivers, so requiring them to send a written hand delivered, or overnight delivered, statement (when no form was provided) to Ubers General Counsel in San Francisco is not a realistic, practical means by which Uber drivers can opt out of the arbitration clause.

PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES

(N.D.Tex.1994), the court limited the defendants communications with class members prior to certification, noting that "the effect of a defendant attempting to influence potential plaintiffs not to join an embryonic class action would be just as damaging to the purposes of Rule 23 as a defendant that influences members of an already-certified class to opt out."

This authority to control communications between defendants and class members is an important safeguard and gives the Court the ability to protect the purposes of Rule 23 and the class action mechanism. See Basco v. Wal-Mart Stores, Inc., 2002 WL 272384 (E.D. La. Feb. 25, 2002) ("[W]here an alleged class action has been filed but certification has not yet been decided, a court may issue a limitation on ex parte contact under Rule 23, if it is clear the defendant is attempting to engage in conduct which would undermine the purposes of the rule."); Jenifer v. Delaware Solid Waste Auth., 1999 WL 117762 (D. Del. Feb. 25, 1999) ("The purpose of Rule 23 is to protect the interests of absent class members and foster the fair and efficient resolution of class action issues."). This is especially true where the purpose of a defendants communication is to limit its liability through ex parte communications with class members. See Hampton Hardware, 156 F.R.D. at 634 (noting that the purpose of Rule 23 would be undermined if a defendant were permitted to have unlimited ex parte communications with putative class members where those communications were specifically designed to reduce the size of the potential class); Burrell v. Crown Cent. Petroleum, Inc., 176 F.R.D. 239, 243 (E.D. Tex. 1997) (recognizing that Rule 23 permits a court to limit contact between defendants and a not yet certified class). As the Eleventh Circuit noted in Kleiner v. First Natl Bank of Atlanta, 751 F.2d 1193, 1202 (11th Cir. 1985): "When confronted with claims pressed by a plaintiff class, it is obviously in the defendants interest to diminish the size of the class and thus the range of potential liability Such conduct reduces the effectiveness of the class action for no reason except to undermine the purposes of the rule."

Here, there can be no doubt that Ubers continued inclusion of an arbitration clause in its new agreement has the very real potential of depriving class members — who are unlikely to be aware of this litigation — of their opportunity to participate in the case and, through the class action mechanism, challenge their ability to recover the gratuities they have earned that have been unlawfully retained by Uber (as well as their claims for misclassification). The continued dissemination of the agreement with the arbitration provision will, without a doubt, reduce the efficacy of Rule 23, by preventing the ability of

class members to participate in litigation brought on their behalf and limiting Ubers liability without court oversight. As such, this Court has the authority to act to prevent Ubers contact with class members from impinging on their rights.

This is particularly true here where the arbitration provision has the potential to mislead class members as to their rights and is presented in an inherently coercive context. As described above, although the arbitration agreement contained in Ubers licensing agreement is four pages long, nowhere does it inform the class members that, by accepting the agreement, they will lose their right to participate in class action litigation challenging Ubers practice of withholding tips from drivers and interfering with drivers receiving tips and misclassifying drivers as independent contractors. Nor does the arbitration provision mention any of the pending litigation challenging those practices or provide the contact information for plaintiffs counsel. The absence of such information makes these communications by Uber misleading. See County of Santa Clara v. Astra USA, Inc., 2010 WL 2724512, at *1 (N.D. Cal. July 8, 2010); Pollar v. Judson Steel Corporation, 33 FEP Cases 1870, 1870 (N.D. Cal. 1984) (where notice published by defendants did not contain description of claims or contact information for plaintiffs counsel, court restrained defendant from communicating with class members and issued curative notice). In County of Santa Clara, a consumer class action where the class had not yet been certified, defendants sent refunds to putative class members and informed plaintiffs counsel that the repayments would be characterized as accord and satisfaction of claims related to the class action. Id. at *1.
The County of Santa Clara court held that defendants omitted material information and misled the putative plaintiff class because, among other things, the letter did not contain the complaint or a Ninth Circuit opinion that had approved of plaintiffs legal theory, did not describe the claim, did not contain the current status of the case, did not provide contact information for the plaintiffs attorneys. Id. at *6. The court therefore held that the accord and satisfaction release is invalid in California, and it ordered that checks cashed will be deducted from any recovery obtain herein . . . by the recipients. Id. at *6.

Moreover, because of the business relationship between Uber and the members of the proposed class — Uber drivers depend on their relationship with Defendants to earn income — the presentation of the arbitration provision is inherently coercive and, therefore, improper in the context of Rule 23. See Laguna v. Coverall North America, Inc., No. 09-cv-2131 (S.D. Cal. Nov. 30, 2010), Docket No. 88, at

7

PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES

14 citing Belt v. Emcare Inc., 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003) (any statements made by Defendants to potential class members may well have been inherently coercive given the arguably disproportionate balance of power between the parties, in which Defendants were dominant.); Austen v. Catterton Partners V, LP, 831 F. Supp. 2d 559, 568 (D. Conn. 2011) (When a defendant is in an ongoing, current business relationship with members of a putative class it may be prudent to preempt the defendants ability to use the relationship and pressure class members to make factual concessions or settle claims.); Ralph Oldsmobile Inc. v. General Motors Corp., 2001 WL 1035132, at *2 (S.D.N.Y. Sep. 7, 2001) (finding communications coercive because, despite any evidence of actual coercion, class members were economically dependent upon defendant, evincing potential for abuse and grounds for court intervention); see also Guifu Li v. A Perfect Day Franchise, Inc., 270 F.R.D. 509, 517-19 (N.D. Cal. 2010) (recognizing inherently coercive nature of direct communications between employer and employees regarding participation in class actions and refusing to give effect to opt outs obtained by employer); Wang v. Chinese Daily News, 236 F.R.D. 485, 488-89 (C.D.Cal. 2006) (invalidating opt-outs obtained from class members because of inherently coercive nature of employment relationship).

Courts should intervene where communications with class members are misleading, coercive or where communication "poses a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally." In re School Asbestol Litig., 842 F.2d 671, 680 (3d Cir. 1988); see also County of Santa Clara, 2010 WL 2724512, at *6 (misleading or coercive communications by defendants with class members "cannot be allowed under Rule 23, for to rule otherwise would allow defendants to shift control of one preceding from the district judge to the defense counsel."). [10] Importantly, it is not necessary that the Court find actual harm has occurred before

---

[10] See also Sjoblom v. Charter Communications, LLC, 2007 WL 5314916, *4 (W.D.Wis. Dec. 26, 2007) (striking class member affidavits attached to opposition to motion for class certification where class members were not informed of pending litigation and their right to participate); Wang, 236 F.R.D. at 489 (invalidating opt-outs obtained by employer because of inherently coercive relationship between employer-defendant and class members); Keystone Tobacco Co., Inc v. U.S. Tobacco Co., 238 F. Supp. 2d 151, 153, 154 (D.D.C. 2002) (where settlement proposals were presented to class members in potentially coercive manner, court ordered that a curative notice be sent to persons who signed settlement informing them that they may withdraw from the settlement if they wish to do so, that those contacting putative class members undergo retraining to ensure they comply with the courts order, and ordered that that plaintiffs counsel promptly notify the court if improper communications are ongoing so that the court may consider what sanctions to impose, including contempt of court).

ordering corrective action the mere potential for subversion of Rule 23s purposes is sufficient. See In re School Asbestos Litig., 842 F.2d 671, 683 (3d Cir. 1988); Hampton Hardware, 156 F.R.D. at 633. In some cases, this intervention includes refusing to enforce arbitration agreements obtained by defendants from prospective class members. See, e.g., In re Currency Conversion Fee Antitrust Litigation, 361 F.Supp.2d at 252; Carnegie, 180 Misc. 2d at 73-74.

Courts have refused to enforce arbitration agreements — like the one at issue here — that would have the effect of preventing class members from participating in the litigation brought on their behalf. In In re Currency Conversion Fee Antitrust Litigation, 361 F.Supp.2d 237 (S.D.N.Y. 2005), the court held that an arbitration clause that a company tried to implement after a lawsuit was filed was not enforceable, since the affected individuals were not informed of the case and how the arbitration provision would affect their rights in the case. The court noted that "[t]here was no reasonable manner for cardholders to know that by failing to reject the arbitration clause, they were forfeiting their rights as potential plaintiffs in this litigation." Id. at 251. As a result, the court held "that [the defendants] cannot enforce the arbitration clause because those banks possessed information regarding this litigation which they withheld from their cardholders when they added the clause to their contracts. In the absence of candid disclosure, it would be unconscionable to allow [the defendants] to nullify cardholders' rights." Id. at 252.

Similarly, in Skirchak v. Dynamics Research Corp., 508 F.3d 49 (1st Cir. 2007), the court held that an arbitration provision containing a class waiver was not enforceable. Like Uber, here, the defendant in Skirchak sent the arbitration agreement to class members via email, and the class action waiver language was buried several pages into an attachment to that email. Id. at 60. The court found that because the timing, the language, and the format of the presentation of the [arbitration] Program obscured, whether intentionally or not, the waiver of class rights, the waiver lacked both prominence and clarity, and was unenforceable as to members of the class. Id.

Finally, in Carnegie v. H&R Block, Inc., 180 Misc.2d 67, 70 (N.Y.S.C. Jan. 7, 1999), the defendant acquired agreements from putative class members requiring them to arbitrate the claims at issue in the class litigation. In considering plaintiffs motion to strike the agreements, the Carnegie court noted that: "The twin purposes of the class action device are to facilitate the bringing of suits based on small claims in order to deter business activities harmful to a large number of individuals and to afford

9

PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES

such individuals a quasi-constitutional right to participate meaningfully in the legal process which they otherwise would not have." Id. at 71. The Carnegie court made clear that its authority to control the conduct of the parties with respect to class members "necessarily flows from the courts obligation to ensure that decisions as to participation by potential class members are freely made after appropriate notice." Id. Having found the communications misleading, the Carnegie court ordered that those agreements to arbitrate would not preclude class members from participating or benefitting from the class action brought on their behalf. Id. at 73-74.

Here, where a proposed class action has been filed on behalf of a national class of Uber drivers, and where Defendants recently amended driver agreement contains an arbitration provision that may significantly affect the rights of potential class members to participate in the litigation and to recover as part of a lawsuit brought on their behalf, the Court should exercise its authority under Rule 23 to order Uber to discontinue its practice of presenting drivers with an arbitration provision that would affect their rights in this lawsuit.

### III.   IF THE COURT DECLINES TO STRIKE THE ARBITRATION CLAUSE ALTOGETHER, IT SHOULD AT THE VERY LEAST REQUIRE UBER TO PROVIDE NOTICE REGARDING THEIR RIGHTS IN THIS CASE AND REVISE THE OPT OUT PROCEDURE TO GIVE DRIVERS A MEANINGFUL OPPORTUNITY TO OPT OUT

Rule 23 vests this Court with the authority to modify the procedure by which drivers may opt out of Ubers arbitration provision as well as the authority to ensure that the drivers receive fair and adequate notice of pending litigation and how the arbitration provision may affect their right to participate as a class member in that litigation. See Haffer, 115 F.R.D. at 512 (the court has "explicit authority to require for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action.") (internal quotations omitted). Given both the important, remedial purposes of Rule 23 and California law concerning the enforcement of arbitration agreements, if the Court declines to strike the arbitration clause altogether, the Court should exercise its authority to require notice be given to drivers regarding the claims asserted in this case and meaningful opportunity to opt out of the arbitration clause, by less burdensome means. See, e.g., Pollar, 33 FEP Cases at 1870 (ordering corrective notice where defendants

communication with class members did not include information about the litigation and their right to participate and, therefore, violated the intent of Rule 23).

Thus, if the Court declines to strike the arbitration clause altogether, Plaintiffs ask that the Court order the following remedy: 1) that notice be provided to members of the proposed class of this litigation; 2) that this notice be provided in the same manner — i.e., through email — as the new driver agreement and arbitration provision; 3) that the time period for class members to opt out of the arbitration provision be extended to 60 days from the receipt of that notice, ensuring class members an adequate opportunity to review their options and contact Plaintiffs counsel for information about the case; 4) that class members be permitted to opt out in the same manner that Uber permitted them to accept the new agreement, namely, by swiping a button on their smartphone, or by replying to an email.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court GRANT this motion and issue the proposed order filed herewith.

Respectfully submitted,

DOUGLAS O'CONNOR, and

THOMAS COLOPY, individually and on behalf of all others similarly situated,

Date:   August 21, 2013

By their attorneys:
/s/ Monique Olivier
MONIQUE OLIVIER (SBN 190385)
(molivier@dplolaw.com)
DUCKWORTH, PETERS, LEBOWITZ, OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 433-0333
Facsimile: (415) 449-6556

SHANNON LISS-RIORDAN, *pro hac vice anticipated*
(sliss@llrlaw.com)
SARA SMOLIK, *pro hac vice anticipated*
(ssmolik@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.

11

PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES

100 Cambridge Street, 20th Floor
Boston, MA 02114
Telephone: (617) 994-5800
Facsimile: (617) 994-5801

PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES