1  SHANNON LISS-RIORDAN, *pro hac vice*
   (sliss@llrlaw.com)
2  SARA SMOLIK, *pro hac vice*
   (ssmolik@llrlaw.com)
3  LICHTEN & LISS-RIORDAN, P.C.
4  100 Cambridge Street, 20th Floor
   Boston, MA 02114
5  Telephone: (617) 994-5800
6  Facsimile: (617) 994-5801

7  MONIQUE OLIVIER (SBN 190385)
8  (molivier@dplolaw.com)
   DUCKWORTH, PETERS, LEBOWITZ, OLIVIER LLP
9  100 Bush Street, Suite 1800
   San Francisco, CA 94104
10 Telephone: (415) 433-0333
11 Facsimile: (415) 449-6556

12
                    UNITED STATES DISTRICT COURT
13                  NORTHERN DISTRIC OF CALIFORNIA

14                                          Case Number:   C 13-3826-KAW

15 DOUGLAS O'CONNOR, and                    **PLAINTIFFS' RENEWED**
   THOMAS COLOPY, individually and on       **EMERGENCY MOTION FOR**
16 behalf of all other similarly situated,  **PROTECTIVE ORDER TO STRIKE**
                                            **ARBITRATION CLAUSES**
17              Plaintiffs,

18             v.                           **Hearing Date:**
                                            **Time:**
19 UBER TECHNOLOGIES, INC.,                 **Courtroom:**
   TRAVIS KALANICK, and RYAN
20 GRAVES,                                  **Before the Hon. Kandis A.**
                                            **Westmore**
21              Defendants,

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................2

ARGUMENT...................................................................................................................................5

I.   BECAUSE UBER'S ARBITRATION PROVISION DOES NOT PROVIDE THE
DRIVERS WITH MEANINGFUL OPPORTUNITY TO OPT OUT, OR ADEQUATE
INFORMATION FOR THE DRIVERS TO MAKE A REASONED DECISION AS TO
WHETHER TO OPT OUT, IT SHOULD BE STRICKEN AS UNENFORCEABLE. .............5

II.   NOW THAT THIS CLASS ACTION HAS BEEN FILED, THIS COURT SHOULD
DIRECT UBER TO CEASE ALL COMMUNICATIONS WITH CLASS MEMBERS THAT
WOULD AFFECT THEIR RIGHTS TO PARTICIPATE IN THIS LITIGATION .................7

III.   IF THE COURT DECLINES TO STRIKE THE ARBITRATION CLAUSE
ALTOGETHER, IT SHOULD AT THE VERY LEAST REQUIRE UBER TO PROVIDE
NOTICE REGARDING THEIR RIGHTS IN THIS CASE AND REVISE THE OPT OUT
PROCEDURE TO GIVE DRIVERS A MEANINGFUL OPPORTUNITY TO OPT OUT ....12

CONCLUSION................................................................................................................................13

# TABLE OF AUTHORITIES

## Cases

AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740 (2011) ........................................................11

Austen v. Catterton Partners V, LP, 831 F. Supp. 2d 559 (D. Conn. 2011)...................................10

Basco v. Wal-Mart Stores, Inc., 2002 WL 272384 (E.D. La. Feb. 25, 2002) .................................8

Belt v. Emcare Inc., 299 F. Supp. 2d 664 (E.D. Tex. 2003)...........................................................9

Burrell v. Crown Cent. Petroleum, Inc., 176 F.R.D. 239 (E.D. Tex. 1997) ....................................8

Carnegie v. H&R Block, Inc., 180 Misc.2d 67 (N.Y.S.C. Jan. 7, 1999)...................................11, 12

County of Santa Clara v. Astra USA, Inc., 2010 WL 2724512 (N.D. Cal. July 8, 2010) ...............9

Currency Conversion Fee Antitrust Litigation, 361 F.Supp.2d 237 (S.D.N.Y. 2005) ..............2, 11

Da Silva et al v. CleanNet USA et al, AAA No. 11 11401777 08……………………………..1,2

Ehret v. Uber Technologies, Inc., C.A. No. 12CH36714 (Circuit Court of Cook County, IL).......6

Guifu Li v. A Perfect Day Franchise, Inc., 270 F.R.D. 509 (N.D. Cal. 2010) ..............................10

Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981).............................................................................5, 7

Haffer v. Temple Univ. of Commonwealth Sys. of Higher Educ., 115 F.R.D. 506 (E.D.Pa.1987)
...........................................................................................................................................7, 12

Hampton Hardware, Inc. v. Cotter & Co., 156 F.R.D. 630 (N.D.Tex.1994) .........................7, 8,11

Hicks v. Macy's Dep't Stores, Inc., 2006 WL 2595941 (N.D. Cal. Sept. 11, 2006)..................6, 12

Ingle v. Circuit City Stores, Inc., 328 F.3d 1165 (9th Cir. 2003).....................................................6

Jenifer v. Delaware Solid Waste Auth., 1999 WL 117762 (D. Del. Feb. 25, 1999) .......................8

Keystone Tobacco Co., Inc. v. U.S. Tobacco Co., 238 F. Supp. 2d 151 (D.D.C. 2002)...........7, 10

Kilgore v. KeyBank, Nat. Ass'n, 673 F.3d 947 (9th Cir. 2012) .......................................................6

King v. Hausfeld, WL 1435288, (N.D. Cal. Apr. 9, 2013) ..............................................................6

Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193 (11th Cir. 1985) ..........................................8

II

*Laguna v. Coverall North America, Inc.*, No. 09-cv-2131 (S.D. Cal. Nov. 30, 2010)....................9

*Lavitman et al v. Uber Technologies et al*, Mass. Super. Ct. (Suffolk) C.A. No. 12-4490)......3, 11

*Machado et al v. System4 LLC et al*, Mass. Super. Ct. (Norfolk) C.A. No. 10-00555)............1,2

*Mevorah v. Wells Fargo Home Mortg.*, 2005 WL 4813532 *3 (N.D. Cal. 2005) ..........................7

*Pollar v. Judson Steel Corporation*, 33 FEP Cases 1870, 1870 (N.D. Cal. 1984) .....................9, 12

*Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011) ...................................6, 12

*Ralph Oldsmobile Inc. v. General Motors Corp.*, 2001 WL 1035132 (S.D.N.Y. Sep. 7, 2001)...10

*School Asbestol Litig.*, 842 F.2d 671, 680 (3d Cir. 1988) ......................................................10, 11

*Sjoblom v. Charter Communications, LLC*, 2007 WL 5314916 (W.D.Wis. Dec. 26, 2007) .......10

*Skirchak et al v. Dynamics Research Corp.*, 508 F.3d 49 (1st Cir. 2007)...............................1, 11

*Wang v. Chinese Daily News*, 236 F.R.D. 485, 488-89 (C.D.Cal. 2006).....................................10

*Zaborowski v. MHN Gov't Servs., Inc.*, 2013 WL 136368 (N.D. Cal. Apr. 3, 2013) ...................7

**Statutes**

California Labor Code § 2802 ....................................................................................................3

California Labor Code § 351 ......................................................................................................3

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ................................3

Fed. R. Civ. P. 23......................................................................................................................5, 12

III

1    On August 21, 2013, Plaintiffs filed an Emergency Motion seeking an order striking Uber's

2    recently disseminated arbitration clauses, or in the alternative, providing Uber drivers with additional

3    notice, opportunity, and time to opt out of the arbitration clause (including notice regarding the pendency

4    of this case, so that they could make an informed decision as to whether to opt out of the arbitration clause

5    so that they could be potentially covered by this class action lawsuit). On August 23, 2013, this Court

6    denied the motion without prejudice on the ground that it appeared premature and that Uber had not yet

7    been served yet in this case. That same day, Uber was formally served in this case. [1] Plaintiffs now, in an

8    abundance of caution, hereby renew their motion. If the Court deems it necessary to address this issue at

9    the outset of the case (and while many Uber drivers may still be in the 30-day opt-out period for the

10   arbitration clause), Plaintiffs request that the Court consider this motion on an expedited basis. [2] And in

11   response to the Courts statements in the August 23, 2013, ruling, Plaintiffs submit here examples of cases

12   in which companies were enjoined, on an emergency basis, at an early stage in the case, from allowing

13   potential class members from unknowingly waiving their rights to participate in a class action lawsuit. [3]

---

14   [1] See Declaration of Shannon Liss-Riordan, Esq. (attached here as Exhibit 1). On the day the case was
     filed, Attorney Liss-Riordan provided a courtesy copy of the complaint to Uber through its counsel who
15   represents Uber in the Massachusetts case, Michael Mankes, Esq., from Littler Mendelson, and on the day
     the emergency motion was filed, Attorney Liss-Riordan likewise forwarded notice of the motion by e-mail
16   to Attorney Mankes. See id.

17   [2] If the Court is inclined to believe that these arbitration clauses can be stricken at a later
     date, based on the inadequate notice that Uber drivers received of the arbitration clauses, see, e.g.,
18   Skirchak et al v. Dynamics Research Corp., 508 F.3d 49 (1st Cir. 2007) (declaring clause of arbitration
     provision invalid because it was buried several pages into an attachment that was e-mailed out to employ-
19   ees), as well as their lack of notice that these claims have been advanced on their behalf (and that by not
     excluding themselves from the arbitration clause), they cannot participate or benefit from this litigation,
20   then there is less need for this motion to be addressed on an emergency basis. Plaintiffs are, however,
     renewing this motion as an emergency motion in an abundance of caution, in the event the Court deter-
21   mines that Plaintiffs' only recourse is to seek enjoinment, on a going forward basis, of Uber drivers from
22   unknowingly giving up their potential right to participate in this case as class members.

23   [3] These examples include Machado et al v. System4 LLC et al, Ruling on Plaintiffs' Emergency Ruling
     for a Protective Order (Apr. 11, 2012), Mass. Super. Ct. (Norfolk) C.A. No. 10-00555) (Exhibit 2), and
24   Da Silva et al v. CleanNet USA et al, Interim Award of Injunctive Relief Against Solicitation of Putative
     Class Releases (June 1, 2012), AAA No. 11 11401777 08 (Exhibit 3). In both of these cases, workers
25   alleged that they had been misclassified as independent contractors by their employers and were owed
     significant damages due to wage violations committed by their employers. In both cases (at an early stage
26   of the cases, before classes had been certified or liability issues determined), the companies attempted
     to obtain releases from potential class members, which would have prevented them from participating as
27   class members. In both cases, the companies did not explain to the potential class members what claims
     were being pursued on their behalf through the class action litigation, and thus they were being asked to
28   give up their opportunity to benefit from these cases without knowledge of what rights they were giving

1

1    Plaintiffs thus hereby request again, supplemented as described above, that the Court strike

2    Uber's arbitration clause, or in the alternative, require Uber to provide further notice to Uber drivers of

3    the pendency of this case and the rights they would be giving up by not opting out of the arbitration

4    clause, as well as additional time (and less burdensome means) to opt out of the arbitration clause.   [4]

5                                          **INTRODUCTION**

6    This case is brought on behalf of individuals who have worked as drivers for Defendants Uber

7    up. In both cases, the companies were enjoined from further communications with class members that
     would affect their rights in the litigation, and the companies were prohibited from obtaining the releases.
8    Likewise, here, drivers are still in the midst of unknowingly giving up their rights to benefit from this class
     action litigation, without knowledge of this case, the claims that have been asserted, and what rights they
9    are giving up.

10   Plaintiffs recognize that, in both of these cases, the defendants were attempting to obtain outright
     releases of claims, whereas here, the defendants are seeking agreements to arbitrate claims individually,
11   which may have the effect of preventing Uber drivers from participating in this case as class members.
     However, in the cases cited below in this memorandum, courts have focused on communications with class
12   members that would affect their ability to participate as class members in class action litigation brought
13   on their behalf. Thus, the analysis is the same, regardless of whether the defendant is seeking a release or
     is attempting to bind a potential class member to an arbitration clause that might prevent the class mem-
14   ber from benefiting from the litigation. See, e.g., In re Currency Conversion Fee Antitrust Litigation, 361
15   F.Supp.2d 237, 251 (S.D.N.Y. 2005) (court invalidated arbitration clause where the affected individuals
     were not informed of the case and how the arbitration provision would affect their rights in the case, not-
16   ing that "[t]here was no reasonable manner for cardholders to know that by failing to reject the arbitration
     clause, they were forfeiting their rights as potential plaintiffs in this litigation").

17   Plaintiffs also recognize that, in both the System4 and the CleanNet cases, a preliminary injunction
18   standard was applied to the relief requested. Plaintiffs submit that, given the Courts power to supervise
     communications with potential class members under Rule 23, it is not necessary for the Court to conduct
19   an analysis of whether the plaintiffs satisfy the standard for a preliminary injunction. Plaintiffs note, how-
20   ever, that the balancing of harms would militate in favor of the requested relief since Uber drivers, on the
     one hand, could be unknowingly prevented from being able to benefit from this class action lawsuit if the
21   Court denies the requested relief, whereas Defendants will suffer no harm if they are simply called upon
22   to defend these claims brought on behalf of a class (or to provide more notice to their drivers regarding
     this case, and allow further and meaningful opportunity for the drivers to opt out of the arbitration clause).

23   [4]Plaintiffs note though, that the arbitration clause prohibits drivers who are bound by the agreement
     from bringing a dispute as a class action. See Exhibit 4, at 13. The lead plaintiffs in the case have opted
24   out of the arbitration agreement and are therefore not bound by it. There is nothing therefore prohibiting
25   the lead plaintiffs from bringing a class action on behalf of their fellow drivers. It does not appear that
     class members who have not opted out of the arbitration clause would be prohibited from participating
26   in a class action brought on their behalf by other drivers who are not bound by this provision. Plaintiffs
     expect, however, that Defendants will argue that these potential class members are indeed prohibited from
27   even participating in the case. Thus, Plaintiffs are bringing this motion, again in an abundance of caution,
     in the event that it is determined that class members will not be able to participate in this case unless they
28   opt out of the arbitration clause.

Technologies, Inc., Travis Kalanick, and Ryan Graves ("Uber") throughout the country. [5] Uber is a car service that provides drivers who can be hailed and dispatched through a mobile phone application. As set forth in the Plaintiffs' class action complaint, Uber advertises to customers that gratuity is included in the cost of its car service. However, Uber drivers do not receive the total proceeds of any such gratuity. Instead, they receive only a portion of such gratuity if any is charged to the customer. Furthermore, based on Uber's communication to customers that gratuity is included in the price, few if any customers leave tips for the drivers. Thus, drivers do not receive tips that are customarily provided in the car service industry and that they would otherwise receive were it not for Uber's communication to customers that they need not tip. Plaintiffs, on behalf of a national class of Uber drivers, assert that this conduct violates common and statutory law. [6]

In July 2013, just before this case was filed, Uber disseminated to its drivers a revised contract that they were required to accept if they wanted to continuing driving for Uber. This 15-page "Software License and Online Services Agreement'" is attached here as Exhibit 4. The agreement was e-mailed to Uber's drivers, and drivers were instructed that they could accept the terms of the agreement by swiping a button on their smartphone. [7] Buried at the end of the agreement, beginning on page 11, is an arbitration provision. The arbitration provision contains a class action waiver, barring the drivers from bringing a class action alleging violations of the law by Uber. Ex. 4, at 13.

The arbitration provision provides for an opt-out mechanism, under which the drivers have 30 days from the date they accept the agreement to "opt out" of the arbitration requirement. Ex. 4, at 14. In order to "opt out", the drivers are required to send a notice of their intent to "opt out" in writing to Uber,

---

[5] As set forth in Plaintiffs' Complaint (Doc. No. 1), Uber drivers in Massachusetts are excluded from this proposed class (because a separate case has been brought in Massachusetts on behalf of these drivers, see Lavitman et al v. Uber Technologies et al, Mass. Super. Ct. (Suffolk) C.A. No. 12-4490).

[6] Pursuant to the contract that Uber requires its drivers to enter, California law governs any disputes between the drivers and Uber regarding Uber's services. Plaintiffs have brought common law claims for tortious interference, unjust enrichment, and breach of implied contract, as well as statutory claims under California Labor Code §351, the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 et seq. ("UCL"), and California Labor Code §2802 for misclassifying the drivers as independent contractors and thereby not reimbursing them for business related expenses (such as for their vehicles, gas, and other expenses).

[7] The agreement is dated July 15, 2013, but was not disseminated until later. Plaintiff Douglas OConnor received the e-mail containing the agreement on or about July 22, 2013. See OConnor Declaration (Exhibit 5).

PLAINTIFFS' RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES

not by e-mail, or even ordinary mail. Instead, the notice must be "delivered by a nationally recognized overnight delivery service or by hand delivery" to the attention of Uber's General Counsel in San Francisco. Ex. 4, at 14. [8] Nowhere in the notice sent to drivers, or in the contract, or in the arbitration provision itself is there a description of the types of claims that have been brought against Uber concerning the companys practices with respect to not paying gratuities to drivers (see notes 1 and 7). See Ex. 4.

Plaintiffs hereby seek a declaration from this Court that this arbitration clause is not enforceable and should be stricken, since the means by which drivers have been notified of the clause and their ability to "opt out" of the clause has not been adequate, and the drivers have not been given meaningful information by which to make a reasoned decision about whether to opt out of arbitration. Although drivers were e-mailed the contract that they were required to agree to in order to continue driving for Uber, and were able to accept the contract by simply swiping a button on their smartphone, in order to opt out of the arbitration clause (as described in information buried at page 14 of the agreement), drivers would have to hand deliver or use "a nationally recognized overnight delivery service" to Uber's General Counsel to deliver a notice of their intent to opt out. Moreover, drivers were not given any notice about any particular reason that it may be in their interest to opt out of the arbitration clause, namely that Uber has been subjected to claims by drivers that they have not received gratuities to which they are entitled.

Now that this case has been filed regarding these claims that would affect Uber drivers across the country, Uber should no longer be permitted to communicate with potential class members so as to affect their ability to participate in this case. Thus, the current arbitration clause should be stricken.

Or, at the very least, before being allowed to unknowingly waive their right to participate in this case, Uber drivers should be given fair notice (on their smartphones - the same means by which they received the new contract) that: (1) this case is pending; (2) they need to "opt out" of the arbitration clause in order to be able to potentially participate in this case; (3) they will be given additional time to make a reasoned choice as to whether to preserve their rights to participate in this case by opting out of the arbitration clause; and (4) they will be able to opt out of the arbitration clause through a less burdensome means — i.e. they should be permitted to opt out by swiping a button on their smartphones,

---

[8]The deadline for opting out is not clear, as it not clear by what date the drivers are required to accept the new agreement.

1   the same method through which they were to agree to the new contract that Uber required them to agree

2   to.

3        Without providing meaningful notice of their rights, Uber's new agreement may deprive potential

4   class members of their right to participate in this case. Drivers wishing to simply maintain their working

5   relationship with Uber may accept the agreement, including the arbitration provision, without any

6   understanding of the rights they are giving up. This is particularly likely where acceptance of the

7   agreement — including the arbitration provision — is completed by a simple swipe of a button on the

8   drivers smartphone, see Ex. 4 at 15, but the procedure to opt-out of arbitration requires the driver to send,

9   by hand or overnight delivery, a signed, written statement (no form is provided by Uber) indicating his or

10  her desire to opt out. Id. at 14.

11       Because drivers are currently in the period of time during which they can be deciding whether or

12  not to opt out of the arbitration clause, but because they do not have notice of this case, which was filed

13  on August 16, 2013 [9], Uber's arbitration provision constitutes misleading and coercive communication

14  with class members. Pursuant to Fed. R. Civ. P. 23, the Court has broad authority to not only enjoin any

15  such further communications, but to correct the effects of such communications thus far and to control

16  Defendants future communications with class members about this litigation and their rights to participate

17  in it. See Gulf Oil Co. v. Bernard, 452 U.S. 89, 99-101 (1981) ("Because of the potential for abuse, a

18  district court has both the duty and the broad authority to exercise control over a class action and to enter

19  appropriate orders governing the conduct of counsel and parties"). As set forth below, Uber's

20  communications with class members, through the arbitration provision, are misleading because they fail

21  to inform the class members of the pending litigation and the rights they are potentially giving up.

22  Further, the communication is coercive because the nature of the relationship between Uber and the

23  drivers is such that the drivers are dependent upon Uber for future work and income. Plaintiffs thus ask

24  that this Court strike the arbitration agreements obtained by Uber from class members and rule that the

25  existence of such agreements will not bar the class members participation in this litigation. In the

26  alternative, the Court should at the very least require Uber to: (1) provide drivers clear notice of this case

27  and the right they are giving up to potentially participate in this case unless they opt out of the arbitration

28       [9]As noted above (and in Ex. 1), Plaintiffs' counsel e-mailed a copy of the complaint to counsel for
     Uber the day that it was filed, August 16, 2013.

1  clause; (2) expand the time period for drivers to opt out of the arbitration clause; and (3) require that Uber

2  allow drivers to opt out of the arbitration clause in the same, unburdensome way they were permitted to

3  accept the new agreement (i.e. by swiping a button on their smart phones).

4                                      **ARGUMENT**

5  **I.  BECAUSE UBER'S ARBITRATION PROVISION DOES NOT PROVIDE THE**

6  **DRIVERS WITH MEANINGFUL OPPORTUNITY TO OPT OUT, OR ADEQUATE**

7  **INFORMATION FOR THE DRIVERS TO MAKE A REASONED DECISION AS TO**

8  **WHETHER TO OPT OUT, IT SHOULD BE STRICKEN AS UNENFORCEABLE.**

9       Courts in California have upheld arbitration agreements where those agreements contain a real

10  and meaningful opportunity for the recipient to opt out of arbitration. See Kilgore v. KeyBank, Nat.

11  Ass'n, 673 F.3d 947, 964 (9th Cir. 2012), on reh'g en banc, 718 F.3d 1052 (9th Cir. 2013) (arbitration

12  provision upheld where agreement provided 60 day period to opt out); Hicks v. Macy's Dep't Stores,

13  Inc., 2006 WL 2595941 (N.D. Cal. Sept. 11, 2006) (arbitration agreements are not procedurally

14  unconscionable if recipient is provided with a meaningful opportunity to opt out); cf. Quevedo v.

15  Macy's, Inc., 798 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011), reconsideration denied, 2011 WL 6961598

16  (C.D. Cal. Oct. 31, 2011) (upholding arbitration provision that contained an opt-out form). [10] Here, Uber

17  did not provide such an opportunity, and the arbitration agreements it has obtained already from class

18  members should be stricken. See Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1172 (9th Cir. 2003)

19  (refusing to enforce arbitration agreement where recipient had no meaningful opportunity to opt out).

20       Uber's arbitration provision makes no mention of the litigation previously filed against Uber

21  challenging Uber's practice of retaining driver tips, and thus does not give drivers any indication of why

22  they might want to opt out of an arbitration clause. [11] It provides only 30 days for the drivers to consider

23  whether or not to opt out. Unlike the arbitration agreements at issue in Hicks and Quevedo, Uber's

24  [10]As courts in this district have noted, California law concerning contract formation and procedural
unconscionability survives the Supreme Courts ruling in AT&T Mobility LLC v. Concepcion, 131 S.Ct.

25  1740 (2011). See King v. Hausfeld, WL 1435288, *8 and n.2 (N.D. Cal. Apr. 9, 2013), and cases cited

26  therein.

    [11]As noted above, Uber drivers in Massachusetts previously filed similar claims there. See

27  Lavitman et al v. Uber Technologies et al, Mass. Super. Ct. (Suffolk) C.A. No. 12-4490). And in Illi-
nois, Uber customers filed claims that tips they intended for drivers were not being retained by drivers.

28  See Ehret v. Uber Technologies, Inc., C.A. No. 12CH36714 (Circuit Court of Cook County, IL).

1    arbitration provision contains neither a form nor a pre-paid envelope. Instead, to accept the arbitration

2    agreement, drivers need not do anything more than accept the rest of the agreement by swiping a button

3    on their phones. Ex. 4, at 15. [12] To opt out, however, drivers are required to send, by hand or overnight

4    delivery, a signed, written statement (no form is provided by Uber) indicating his or her desire to opt out.

5    Id. at 14. [13] Because Uber's procedure does not provide the drivers with a real and meaningful

6    opportunity to opt out of the arbitration provision, the arbitration agreements Uber has already obtained

7    from class members should be stricken as unenforceable.

## II.  NOW THAT THIS CLASS ACTION HAS BEEN FILED, THIS COURT SHOULD DIRECT UBER TO CEASE ALL COMMUNICATIONS WITH CLASS MEMBERS THAT WOULD AFFECT THEIR RIGHTS TO PARTICIPATE IN THIS LITIGATION.

11        Fed. R. Civ. P. 23 entrusts the Court with broad authority to exercise control over class actions,

12   including communications between defendants and potential class members. See Gulf Oil, 452 U.S. at

13   99-101 ("Because of the potential for abuse, a district court has both the duty and the broad authority to

14   exercise control over a class action and to enter appropriate orders governing the conduct of counsel and

15   parties"). This authority to control communications with class members includes the period before the

16   class has been certified. See Mevorah v. Wells Fargo Home Mortg., 2005 WL 4813532 *3 (N.D. Cal.

17   2005) (applying Gulf Oil analysis to pre-certification communications by defendant to potential class

18   members without regard to the fact that no motion for class certification was filed); Keystone Tobacco

19   Co., Inc. v. U.S. Tobacco Co., 238 F. Supp. 2d 151, 154 (D.D.C. 2002) (Rule 23 provides authority for

20   court to regulate communications between a party and class members, even before a class has been

21   certified); Haffer v. Temple Univ. of Commonwealth Sys. of Higher Educ., 115 F.R.D. 506, 512

22   (E.D.Pa.1987). For example, in Hampton Hardware, Inc. v. Cotter & Co., 156 F.R.D. 630, 634

23   (N.D.Tex.1994), the court limited the defendants communications with class members prior to

24   [12]Moreover, Uber's agreement contains other hallmarks of procedural unconscionability, including the

25   fact that the arbitration provision comes 11 pages into the agreement and does not require a separate
     signature to indicate acceptance. See Zaborowski v. MHN Govt Servs., Inc., 2013 WL 136368 (N.D. Cal.

26   Apr. 3, 2013).

27   [13]Notably, English is not the first language for many Uber drivers, so requiring them to send a written
     hand delivered, or overnight delivered, statement (when no form was provided) to Uber's General Counsel
     in San Francisco is not a realistic, practical means by which Uber drivers can opt out of the arbitration

28   clause.

1 │ certification, noting that "the effect of a defendant attempting to influence potential plaintiffs not to join

2 │ an embryonic class action would be just as damaging to the purposes of Rule 23 as a defendant that

3 │ influences members of an already-certified class to opt out."

4 │     This authority to control communications between defendants and class members is an important

5 │ safeguard and gives the Court the ability to protect the purposes of Rule 23 and the class action

6 │ mechanism. See Basco v. Wal-Mart Stores, Inc., 2002 WL 272384 (E.D. La. Feb. 25, 2002) ("[W]here

7 │ an alleged class action has been filed but certification has not yet been decided, a court may issue a

8 │ limitation on ex parte contact under Rule 23, if it is clear the defendant is attempting to engage in conduct

9 │ which would undermine the purposes of the rule."); Jenifer v. Delaware Solid Waste Auth., 1999 WL

10 │ 117762 (D. Del. Feb. 25, 1999) ("The purpose of Rule 23 is to protect the interests of absent class

11 │ members and foster the fair and efficient resolution of class action issues."). This is especially true where

12 │ the purpose of a defendants communication is to limit its liability through ex parte communications with

13 │ class members. See Hampton Hardware, 156 F.R.D. at 634 (noting that the purpose of Rule 23 would be

14 │ undermined if a defendant were permitted to have unlimited ex parte communications with putative class

15 │ members where those communications were specifically designed to reduce the size of the potential

16 │ class); Burrell v. Crown Cent. Petroleum, Inc., 176 F.R.D. 239, 243 (E.D. Tex. 1997) (recognizing that

17 │ Rule 23 permits a court to limit contact between defendants and a not yet certified class). As the Eleventh

18 │ Circuit noted in Kleiner v. First Natl Bank of Atlanta, 751 F.2d 1193, 1202 (11th Cir. 1985): "When

19 │ confronted with claims pressed by a plaintiff class, it is obviously in the defendants interest to diminish

20 │ the size of the class and thus the range of potential liability Such conduct reduces the effectiveness of the

21 │ class action for no reason except to undermine the purposes of the rule."

22 │     Here, there can be no doubt that Uber's continued inclusion of an arbitration clause in its new

23 │ agreement has the very real potential of depriving class members — who are unlikely to be aware of this

24 │ litigation — of their opportunity to participate in the case and, through the class action mechanism,

25 │ challenge their ability to recover the gratuities they have earned that have been unlawfully retained by

26 │ Uber (as well as their claims for misclassification). The continued dissemination of the agreement with

27 │ the arbitration provision may well reduce the efficacy of Rule 23, by preventing the ability of class

28 │ members to participate in litigation brought on their behalf and limiting Uber's liability without court

8

1    oversight. As such, this Court has the authority to act to prevent Uber's contact with class members from

2    impinging on their rights.

3         This is particularly true here where the arbitration provision has the potential to mislead class

4    members as to their rights and is presented in an inherently coercive context. As described above,

5    although the arbitration agreement contained in Uber's licensing agreement is four pages long, nowhere

6    does it inform the class members that, by accepting the agreement, they will lose their right to participate

7    in class action litigation challenging Uber's practice of withholding tips from drivers and interfering with

8    drivers receiving tips and misclassifying drivers as independent contractors. Nor does the arbitration

9    provision mention any of the pending litigation challenging those practices or provide the contact

10    information for plaintiffs' counsel. The absence of such information makes these communications by

11    Uber misleading. See County of Santa Clara v. Astra USA, Inc., 2010 WL 2724512, at *1 (N.D. Cal.

12    July 8, 2010); Pollar v. Judson Steel Corporation, 33 FEP Cases 1870, 1870 (N.D. Cal. 1984) (where

13    notice published by defendants did not contain description of claims or contact information for plaintiffs'

14    counsel, court restrained defendant from communicating with class members and issued curative notice).

15    In County of Santa Clara, a consumer class action where the class had not yet been certified, defendants

16    sent refunds to putative class members and informed plaintiffs' counsel that the repayments would be

17    characterized as "accord and satisfaction" of claims related to the class action. Id. at *1. The County

18    of Santa Clara court held that defendants omitted material information and misled the putative plaintiff

19    class because, among other things, "the letter did not contain the complaint or a Ninth Circuit opinion

20    that had approved of plaintiffs' legal theory, did not describe the claim, did not contain the current status

21    of the case, did not provide contact information for the plaintiffs' attorneys." Id. at *6. The court

22    therefore held that "the accord and satisfaction release is invalid in California, and it ordered that checks

23    cashed will be deducted from any recovery obtain herein . . . by the recipients." Id. at *6.

24         Moreover, because of the business relationship between Uber and the members of the proposed

25    class — Uber drivers depend on their relationship with Defendants to earn income — the presentation of

26    the arbitration provision is inherently coercive and, therefore, improper in the context of Rule 23. See

27    Laguna v. Coverall North America, Inc., No. 09-cv-2131 (S.D. Cal. Nov. 30, 2010), Docket No. 88, at

28    14 citing Belt v. Emcare Inc., 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003) ("any statements made by

Defendants to potential class members may well have been inherently coercive given the arguably

disproportionate balance of power between the parties, in which Defendants were dominant."); 

Austen v. Catterton Partners V, LP, 831 F. Supp. 2d 559, 568 (D. Conn. 2011) ("When a defendant is in

an ongoing, current business relationship with members of a putative class  it may be prudent to preempt

the defendants ability to use the relationship and pressure class members to make factual concessions or

settle claims."); Ralph Oldsmobile Inc. v. General Motors Corp., 2001 WL 1035132, at *2 (S.D.N.Y.

Sep. 7, 2001) (finding communications coercive because, despite any evidence of actual coercion, class

members were economically dependent upon defendant, evincing potential for abuse and grounds for

court intervention); see also Guifu Li v. A Perfect Day Franchise, Inc., 270 F.R.D. 509, 517-19 (N.D.

Cal. 2010) (recognizing inherently coercive nature of direct communications between employer and

employees regarding participation in class actions and refusing to give effect to "opt outs" obtained by

employer); Wang v. Chinese Daily News, 236 F.R.D. 485, 488-89 (C.D.Cal. 2006) (invalidating opt-outs

obtained from class members because of inherently coercive nature of employment relationship).

Courts should intervene where communications with class members are misleading, coercive or

where communication poses a serious threat to the fairness of the litigation process, the adequacy of

representation and the administration of justice generally. In re School Asbestol Litig., 842 F.2d 671, 680

(3d Cir. 1988); see also County of Santa Clara, 2010 WL 2724512, at *6 (misleading or coercive

communications by defendants with class members "cannot be allowed under Rule 23, for to rule

otherwise would allow defendants to shift control of one preceding from the district judge to the defense

counsel.").  [14]  Importantly, it is not necessary that the Court find actual harm has occurred before

ordering corrective action — the mere potential for subversion of Rule 23s purposes is sufficient. See

[14] See also Sjoblom v. Charter Communications, LLC, 2007 WL 5314916, *4 (W.D.Wis. Dec. 26, 2007) (striking class member affidavits attached to opposition to motion for class certification where class members were not informed of pending litigation and their right to participate); Wang, 236 F.R.D. at 489 (invalidating opt-outs obtained by employer because of inherently coercive relationship between employer-defendant and class members); Keystone Tobacco Co., Inc v. U.S. Tobacco Co., 238 F. Supp. 2d 151, 153, 154 (D.D.C. 2002) (where settlement proposals were presented to class members in potentially coercive manner, court ordered that a curative notice be sent to persons who signed settlement informing them that they may withdraw from the settlement if they wish to do so, that those contacting putative class members undergo retraining to ensure they comply with the courts order, and ordered that that plaintiffs' counsel promptly notify the court if improper communications are ongoing so that the court may consider what sanctions to impose, including contempt of court).

PLAINTIFFS' RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES

1  In re School Asbestos Litig., 842 F2d 671, 683 (3d Cir. 1988); Hampton Hardware, 156 F.R.D. at 633. In

2  some cases, this intervention includes refusing to enforce arbitration agreements obtained by defendants

3  from prospective class members. See, e.g., In re Currency Conversion Fee Antitrust Litigation, 361

4  F.Supp.2d at 252; Carnegie, 180 Misc. 2d at 73-74.

5      Courts have refused to enforce arbitration agreements — like the one at issue here  that would

6  have the effect of preventing class members from participating in the litigation brought on their behalf. In

7  In re Currency Conversion Fee Antitrust Litigation, 361 F.Supp.2d 237 (S.D.N.Y. 2005), the court held

8  that an arbitration clause that a company tried to implement after a lawsuit was filed was not enforceable,

9  since the affected individuals were not informed of the case and how the arbitration provision would

10  affect their rights in the case. The court noted that "[t]here was no reasonable manner for cardholders to

11  know that by failing to reject the arbitration clause, they were forfeiting their rights as potential plaintiffs

12  in this litigation." Id. at 251. As a result, the court held "that [the defendants] cannot enforce the

13  arbitration clause because those banks possessed information regarding this litigation which they

14  withheld from their cardholders when they added the clause to their contracts. In the absence of candid

15  disclosure, it would be unconscionable to allow [the defendants] to nullify cardholders' rights." Id. at 252.

16      Similarly, in Skirchak v. Dynamics Research Corp., 508 F.3d 49 (1st Cir. 2007), the court held

17  that an arbitration provision containing a class waiver was not enforceable. Like Uber, here, the

18  defendant in Skirchak sent the arbitration agreement to class members via email, and the class action

19  waiver language was buried several pages into an attachment to that email. Id. at 60. The court found that

20  because "the timing, the language, and the format of the presentation of the [arbitration] Program

21  obscured, whether intentionally or not, the waiver of class rights," the waiver "lacked both prominence

22  and clarity," and was unenforceable as to members of the class. Id.

23      Finally, in Carnegie v. H&R Block, Inc., 180 Misc.2d 67, 70 (N.Y.S.C. Jan. 7, 1999), the

24  defendant acquired agreements from putative class members requiring them to arbitrate the claims at

25  issue in the class litigation. In considering plaintiffs motion to strike the agreements, the Carnegie court

26  noted that: "The twin purposes of the class action device are to facilitate the bringing of suits based on

27  small claims in order to deter business activities harmful to a large number of individuals and to afford

28  such individuals a quasi-constitutional right to participate meaningfully in the legal process — which

11

1    they otherwise would not have. " Id. at 71. The Carnegie court made clear that its authority to control the

2    conduct of the parties with respect to class members "necessarily flows from the courts obligation to

3    ensure that decisions as to participation by potential class members are freely made after appropriate

4    notice." Id. Having found the communications misleading, the Carnegie court ordered that those

5    agreements to arbitrate would not preclude class members from participating or benefitting from the class

6    action brought on their behalf. Id. at 73-74.

7         Here, where a proposed class action has been filed on behalf of a national class of Uber drivers,

8    and where Defendants recently amended driver agreement contains an arbitration provision that may

9    significantly affect the rights of potential class members to participate in the litigation and to recover as

10   part of a lawsuit brought on their behalf, the Court should exercise its authority under Rule 23 to order

11   Uber to discontinue its practice of presenting drivers with an arbitration provision that would affect their

12   rights in this lawsuit.

13   **III.   IF THE COURT DECLINES TO STRIKE THE ARBITRATION CLAUSE**

14   **ALTOGETHER, IT SHOULD AT THE VERY LEAST REQUIRE UBER TO PROVIDE**

15   **NOTICE REGARDING THEIR RIGHTS IN THIS CASE AND REVISE THE OPT OUT**

16   **PROCEDURE TO GIVE DRIVERS A MEANINGFUL OPPORTUNITY TO OPT OUT .**

17        Rule 23 vests this Court with the authority to modify the procedure by which drivers may opt out

18   of Uber's arbitration provision as well as the authority to ensure that the drivers receive fair and adequate

19   notice of pending litigation and how the arbitration provision may affect their right to participate as a

20   class member in that litigation. See Haffer, 115 F.R.D. at 512 (the court has "explicit authority to require

21   for the protection of the members of the class or otherwise for the fair conduct of the action, that notice

22   be given in such manner as the court may direct to some or all of the members of any step in the action.")

23   (internal quotations omitted). Given both the important, remedial purposes of Rule 23 and California law

24   concerning the enforcement of arbitration agreements, if the Court declines to strike the arbitration clause

25   altogether, the Court should exercise its authority to require notice be given to drivers regarding the

26   claims asserted in this case and meaningful opportunity to opt out of the arbitration clause, by less

27   burdensome means. See, e.g., Pollar, 33 FEP Cases at 1870 (ordering corrective notice where defendants

28   communication with class members did not include information about the litigation and their right to

12

1 participate and, therefore, violated the intent of Rule 23).

2    Thus, if the Court declines to strike the arbitration clause altogether, Plaintiffs ask that the Court

3 order the following remedy: 1) that notice be provided to members of the proposed class of this litigation;

4 2) that this notice be provided in the same manner — i.e., through email — as the new driver agreement

5 and arbitration provision; 3) that the time period for class members to opt out of the arbitration provision

6 be extended to 60 days from the receipt of that notice, ensuring class members an adequate opportunity to

7 review their options and contact Plaintiffs' counsel for information about the case; 4) that class members

8 be permitted to opt out in the same manner that Uber permitted them to accept the new agreement,

9 namely, by swiping a button on their smartphone, or by replying to an email.

10                                    **CONCLUSION**

11    For the reasons stated herein, Plaintiffs respectfully request that the Court GRANT this motion

12 and issue the proposed order filed herewith.

13

14                          Respectfully submitted,

15                          DOUGLAS O'CONNOR, and

16                          THOMAS COLOPY, individually and on behalf of all

17                          others similarly situated,

18

19 Date:  August 26, 2013              By their attorneys:

20                          /s/ Shannon Liss-Riordan
21                          SHANNON LISS-RIORDAN, *pro hac vice*
                            (sliss@llrlaw.com)
22                          SARA SMOLIK, *pro hac vice*
                            (ssmolik@llrlaw.com)
23                          LICHTEN & LISS-RIORDAN, P.C.
24                          100 Cambridge Street, 20th Floor
                            Boston, MA 02114
25                          Telephone: (617) 994-5800
                            Facsimile: (617) 994-5801
26

27                          MONIQUE OLIVIER (SBN 190385)
                            (molivier@dplolaw.com)
28                          DUCKWORTH, PETERS, LEBOWITZ, OLIVIER LLP

                                    13

1
                                 100 Bush Street, Suite 1800
                                 San Francisco, CA 94104

2
                                 Telephone: (415) 433-0333

3
                                 Facsimile: (415) 449-6556

4

5
**CERTIFICATE OF SERVICE**
      I hereby certify that a copy of this motion is being served on August 26, 2013, by hand delivery

6
on the General Counsel for Uber Technologies, Inc., 182 Howard Street #8, San Francisco, CA 94105.

7
                           /s/ Shannon Liss-Riordan

8
                           SHANNON LISS-RIORDAN, Esq.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

PLAINTIFFS' RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES