UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, *et al.*, | No. C-13-3826 EMC |
| Plaintiffs, | **ORDER GRANTING IN PART PLAINTIFFS' "RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES"** |
| v. | |
| UBER TECHNOLOGIES, INC., *et al.*, | |
| Defendants. _____/ | **(Docket No. 15)** |

Plaintiffs Douglas O'Connor and Thomas Colopy ("Plaintiffs") filed the current class action complaint against defendants Uber Technologies, Inc. ("Uber") and two of its executives, Travis Kalanick and Ryan Graves (collectively "Defendants"), seeking restitution, damages, and other relief for unremitted gratuity. Now pending before this Court is Plaintiffs' "Renewed Motion for Protective Order to Strike Arbitration Clauses" (Docket No. 15).

Having considered the parties' moving and response papers, as well as the oral argument of counsel, the Court hereby **GRANTS**, in part, Plaintiffs' motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

Uber offers a mobile phone application used by riders and drivers to facilitate an "on demand" car service. *See* Docket No. 1 (Compl., ¶¶ 1, 11). The application is used by riders and drivers alike. Riders and drivers begin by downloading the application to their mobile phones. Riders can request rides via the application and the fare is assigned to the first driver within the geographic area to respond to the rider's request via the application. *See* Docket No. 56 (Hearing Transcript, at pgs. 35:19-37:6). Plaintiffs, who are former drivers and users of the application,

allege Uber advertises to riders that gratuity is included in the total cost of the service. *Id*. at ¶ 14. Plaintiffs contend that despite this advertisement, Uber does not remit the full amount of gratuity it receives from customers to the drivers. Plaintiffs have brought a putative class action against Uber to recover the full amount of gratuity they believe they are owed.

Prior to the instant case, Uber was sued in Massachusetts state court over its gratuity policy in 2012. *See* Docket No. 15 (Mot., at pg. 6, n. 11) (citing *Lavitman et al. v. Uber Technologies, Inc. et al.*, Mass. Super. Ct. (Suffolk), C.A. No. 12-4490). A similar action was filed against Uber in Illinois. *See id*. (citing *Ehret v. Uber Technologies, Inc.*, C.A. No. 12CH36714 (Circuit Court of Cook County, IL)). Both actions are class action lawsuits.

The following year, during the pendency of the Massachusetts and Illinois lawsuits against Uber, on July 22, 2013, Uber informed users (drivers) they would receive within two weeks an electronic notification asking them to approve new agreements. Docket No. 36-2 (Coleman Decl., ¶ 10). Continued use of the Uber application was conditioned on approval of these agreements. *See id*. One such agreement, titled Software Licensing and Online Services Agreement (the "Licensing Agreement"), contained an arbitration provision. *See id*. (Ex. A to Coleman Decl., § 14.3). Users could accept the Licensing Agreement, including its arbitration provision, by swiping a button on their mobile phones. Users were given thirty (30) days to opt out of the arbitration provision, *see id.* at § 14.3(viii) ("Your Right to Opt Out of Arbitration"). However, opting out required users to send a letter via hand delivery or overnight mail to Uber's general counsel, clearly indicating an intent to opt out. *See id*. Otherwise, the drivers would be bound by the arbitration agreement, potentially barring them from this or any other lawsuit.

Plaintiffs filed the current action on August 16, 2013. Less than a week later, Plaintiffs consented to proceed before Magistrate Judge Westmore and filed an "Emergency Motion for Protective Order to Strike Arbitration Clauses," requesting the Court strike the arbitration provision, or alternatively, to provide more time to opt out and notice of the pendency of the current class action. *See* Docket Nos. 3, 4. On August 23, 2013, Magistrate Judge Westmore denied Plaintiffs' motion without prejudice on grounds Plaintiffs had failed to first serve Defendants with summons and complaint. *See* Docket No. 14 (Order, at pg. 3-4). Three days later, Plaintiffs filed their

1  "Renewed Emergency Motion for Protective Order to Strike Arbitration Clauses." *See* Docket No.
2  15. Plaintiffs personally served Uber with summons and complaint. *See* Docket No. 17. On
3  September 4, Plaintiffs requested an order shortening time on Defendant's response to this motion.
4  Docket No. 27. Defendants filed an ex parte application in response to this request. Docket No. 34.
5  The Court denied Plaintiffs' emergency motion. Docket No. 37.

6  Currently before this Court is Plaintiffs' motion for a protective order, heard as a regularly
7  noticed motion. Plaintiffs contend that because drivers are not informed of the pendency of the
8  current action prior to approving the Licensing Agreement, and its arbitration provision, and the
9  mode of opting out is unreasonably burdensome, "Uber's new agreement may deprive potential class
10 members of their right to participate in this case." *See* Docket No. 15 (Mot., at pg. 5). Plaintiffs
11 accordingly seek the following relief: (1) strike the arbitration provision in the Licensing
12 Agreement; or, alternatively, (2) require Uber to (a) give notice of the current pending class action to
13 its drivers, (b) explain that opting out of the arbitration provision is necessary to participate in the
14 putative class, (c) extend the opt-out period beyond thirty (30) days, and (d) provide a less onerous
15 means of opting out. *Id.* at pg. 4.

## II. DISCUSSION

### A. Unconscionability: Striking the Arbitration Provision

18 Plaintiffs contend that the Court should strike the arbitration provision as unenforceably
19 unconscionable under California law. In their briefing, Plaintiffs contend procedural
20 unconscionability on numerous grounds – *e.g.*, (1) Uber only provides thirty (30) days to opt out of
21 the arbitration provision; (2) Uber's failure to identify prior litigation against it; (3) the arbitration
22 provision appears towards the end (*i.e.*, at page eleven of a fourteen-page agreement); (4) a separate
23 signature is not required to approve the arbitration provision; and (5) there are relatively onerous
24 opt-out procedures: (a) failure to provide an opt-out form or prepaid envelope, and (b) requiring
25 hand delivery or overnight mail of a letter to opt out, whereas only *clicking* "I accept" to opt in. *See*
26 Docket No. 15 (Mot., at pgs. 6-7, n. 12). At the hearing, Plaintiffs' counsel identified the arbitration
27 provision's fee-splitting clause as substantively unconscionable. *See* Docket No. 56 (Hearing
28 Transcript, 7:17-8:5).

The Court declines to rule on the unconscionability of the arbitration provision as the issue is not properly before the Court at this juncture. Because there is no allegation that a motion to compel arbitration is pending or threatened, the issue of whether the arbitration provision is enforceable is not yet ripe for resolution. *See e.g.*, *Lee v. American Exp. Travel Related Services, Inc.*, 348 Fed. Appx. 205, 207 (9th Cir. 2009) (class representatives of a putative class action could not challenge inclusion of arbitration provision on unconscionability grounds because no arbitration was threatened or impending); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1019-20 (1984) (challenge to constitutionality of arbitration scheme not ripe for resolution because Monsanto "did not allege or establish that it had been injured by actual arbitration under the statute"). *See also Posern v. Prudential Securities, Inc.*, No. C-03-0507 SC, 2004 WL 771399, at *8 (N.D. Cal. Feb. 18, 2004) (finding plaintiff's request to declare arbitration clause invalid speculative because defendant had not yet moved to compel arbitration). Even if an unnamed class member were faced with a motion to compel arbitration, Plaintiffs cite no authority establishing a putative class representative has standing to challenge the motion prior to certification of the class.

This is not to say that the issue may not properly be addressed later in the proceedings. For example, unconscionability and hence enforceability of the arbitration provision may arise at the class certification stage. Its validity and enforceability may be material to factors under Rule 23(a)(3) – *e.g.*, numerosity, typicality, and adequacy of representation. Furthermore, Plaintiffs are not foreclosed from adding a new putative class representative to join the current class action, a representative who has not yet opted out of the arbitration provision. At this juncture, the Court declines to address whether the arbitration agreement is unenforceable as unconscionable without prejudice to further consideration at a later time.[1]

---

[1] Since this Court declines to address unconscionability on ripeness grounds, the Court also declines to rule on Uber's contention, *see* Docket Nos. 36 (Opp'n, at pg. 10) and 59 (12/5/2013 Letter Brief at pg. 3) (citing *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)), that this Court lacks jurisdiction to entertain the enforceability issue because the parties have clearly and unmistakably evinced an intent to delegate that issue to the arbitrator, as discussed in *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772 (2010) and its progeny.

B.  Rule 23(d): Controlling Class Communications

Plaintiffs alternatively request this Court to assert control over communications by Uber with members of the putative class, pursuant to Fed. R. Civ. P. 23(d). Specifically, Plaintiffs request this Court require (1) electronic notice of the current class action be given to the proposed class (*e.g.*, email or other electronic means); (2) to extend the opt-out period to sixty (60) days; and (3) to allow Uber drivers to opt out of the arbitration provision electronically – *i.e.*, swiping a button on their mobile phones or via email.

Uber responds threefold. First, exercising control over communications here would "chill Uber's ability to exercise rights afforded to it under the FAA" and Supreme Court precedent, as articulated in *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1744 (2011). Second, circulation of the Licensing Agreement, and the arbitration provision included within it, is not a class communication. Third, the Court cannot assert control over class communications absent a "showing of misconduct."

Uber's argument that Plaintiffs' requested relief somehow pits the Federal Arbitration Act ("FAA") against Rule 23(d), wherein the latter should yield, is meritless. Neither *Concepcion* nor the FAA abrogates Rule 23(d). *Concepcion* imposed limitations on state law – California common law relating to the contractual defense to unconscionability – which would have effectively barred enforcement of an arbitration agreement. The Court did not address the ability of the district court under Rule 23(d) to control communication which would lead to an arbitration agreement in the midst of a class action lawsuit. *See e.g.*, *Balasanyan v. Nordstrom, Inc.*, No. 11-CV-2609-JM-WMC, 2012 WL 760566, *2, n. 1 (S.D. Cal., Mar. 8, 2012) (noting that the Supreme Court's holding in *Concepcion* does not affect that court's decision to control class communications or invalidate the arbitration agreement before it, where allowing parties to do so would "create an incentive to engage in misleading behavior "). Indeed, Uber recognizes the generally broad power to manage class actions and communications with the class. *See* Docket No. 36 (Opp'n, at pg. 22, n. 10) (". . .Defendants do not contest, for the purposes of this Opposition, that a court may limit future communications with putative class members where such communications would be misleading or coerce a putative class member to repudiate a substantive right.").

Uber's citation to *American Exp. Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2306-2307 (2013) for the proposition that Rule 23 must yield to the FAA is unavailing. While *Italian Colors* affirms that an otherwise valid arbitration agreement cannot be refused enforcement simply because it would undermine the efficacy of a class action, the Court did not discuss Rule 23(d) and the district court's ability to control communications with the class thereunder. *Italian Colors* is inapposite to the issue at bar. The issue now before this Court is not the substantive validity of an arbitration provision, but whether, as a procedural matter, a court may regulate an employer's attempt to impose an arbitration requirement and waiver of legal rights during the course of a class action lawsuit. Neither *Concepcion* nor *Italian Colors* addressed this question.

Next, Uber contends that circulating the Licensing Agreement, and its arbitration provision, is a business communication, not a class communication subject to Rule 23(d). However, the touchstone under Rule 23(d) is not whether the communication is of an ordinary business nature; rather, the inquiry is whether the communication is abusive, misleading, coercive, or otherwise affects the administration of justice in the context of a putative class action lawsuit. As the Ninth Circuit held in *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *judgment vacated on other grounds*, 132 S.Ct. 74 (2011), ". . .Rule 23(d) gives district courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation." Such a threat may exist regardless of whether the communication to the class is denominated as "business" in nature. No court has held that the characterization of the communication as official business in and of itself immunizes such a communication from Rule 23(d) scrutiny. At most, the existence of a possible business purpose may counsel that any regulation imposed by the Court be narrowly tailored. *Montgomery v. Aetna Plywood, Inc.*, No. 95-cv-3193, 1996 WL 189347, at *6 (N.D. Ill. Apr. 16, 1996) (noting that communications ban was narrowly tailored in that it was limited to "communications regarding the litigation").

Cases cited by Uber are distinguishable in that they involved or envisioned purely business communications, completely unrelated to litigation that had no substantial effect on class members rights therein. *See e.g.*, *Cobell v. Norton*, 212 F.R.D. 14, 20 (D.D.C. 2002) (not addressing any

particular business communication but allowing "regular sorts of business communications" that "do not purport to extinguish the rights of the class members in this litigation.").

The Court notes it would be particularly inappropriate to insulate the subject communications from review under Rule 23(d) where, as here, there is a distinct possibility that the arbitration provision and class waiver imposed by Uber was motivated at least in part by the pendency of class action lawsuits which preceded the new Licensing Agreement. Suspicion that the new Licensing Agreement's arbitration provision was intended by Uber as a means to thwart existing class action litigation is heightened by the misleading nature of the communication and the unusually onerous procedures for opting out discussed *infra*.

Uber's third argument that this Court must make an affirmative finding of misconduct before exercising control over class communications misconstrues binding precedent. In general, district courts have both a duty and broad authority to control communications to putative class members even before class certification and to enter appropriate orders governing the conduct of counsel and the parties. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). The Supreme Court's articulation of the requisite factual finding for a district court to limit class communications pursuant to Rule 23(d) does not require a finding of actual misconduct:

> "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the ***need for a limitation*** and the ***potential interference*** with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23. In addition, such a weighing-identifying the potential abuses being addressed-should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances."

*Gulf Oil*, 452 U.S. at 101-02 (emphasis added). The key is whether there is "potential interference" with the rights of the parties in a class action. *See In re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp. 2d 237, 251 (S.D.N.Y. 2005) (describing right to join potential class action), *order amended on other grounds*, 2005 WL 1871012 (S.D.N.Y. Aug. 9, 2005). Wilful misconduct on the defendant's part is not required so long as the effect is to interfere with class members' rights. In *In re School Asbestos Litigation*, 842 F.2d 671, 682 (3d Cir. 1988), the court upheld the district

7

court's finding that a booklet was misleading as a matter of law and impliedly rejected appellant's contention that the district court's findings "fail[ed] to present. . . evidence of 'actual or threatened misconduct of a serious nature." In *In re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005), *order amended by* No. M 21-95, 2005 WL 1871012 (S.D.N.Y., Aug. 9, 2005), the district court rejected defendant's contention that *Gulf Oil* requires a "specific finding of abuses." Relying on Rule 23(d), the district court found that it had the authority to prevent misleading communications, and in particular, those communications that would "undermine Rule 23 by encouraging class members not to join the suit." *Id.* at 254.

In *Balasanyan*, discussed *infra*, the district court found it sufficient to exercise control under Rule 23(d) where defendant's failure to disclose pending litigation when it circulated its arbitration agreement for approval "create[d] an incentive to engage in misleading behavior." *Balasanyan*, 2012 WL 760566, at *3. The court noted that one purpose of Rule 23 is to "prevent improper contacts that could jeopardize the rights of the class members," including inducing putative class members from participating in the class action. *Id. See also Piekarski v. Amedisys Illinois, LLC*, No. 12-CV-7346, 2013 WL 605548, at *2 (N.D. Ill. Nov. 12, 2013) (finding improper, abusive, and misleading arbitration program implemented during pendency of action which involved onerous opt-out procedure that likely prevented participation in the class action).

The cases cited by Uber do not support the opposite conclusion. In *Mevorah*, for example, the court described its prior ruling where the alleged misconduct involved similar potential abuses as those at play here. *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. C05-1175 MHP, 2005 WL 4813532, at *3 (N.D. Cal., Nov. 17, 2005). The court stated, "For example, this court has restricted a defendant's ability to communicate with potential class members following the defendant's publication of a notice that, in relevant part, failed to disclose the pendency or scope of the class action and may have caused confusion among potential class members regarding their rights." *Id.* The court noted that a limitation on class communications must be "based on a clear record and specific findings that reflect a weighing of ***the need*** for a limitation and the ***potential interference*** with the rights of the parties." *Id.* (citing *Gulf Oil Co.*, 452 U.S. at 101) (emphasis added). Hence,

*Mevorah* is consistent with this Court's reading of *Gulf Oil* that the focus is on the *effect* of interfering with the fair administration of a class action lawsuit.[2]

Here, the risk of interfering with the pending class action and the need for a limitation on communication with the class that adversely affects their rights is palpable. The communication which is the subject of this motion is likely to mislead potential class members about their right to join the current class action. The arbitration provision at issue includes a class action waiver, purporting to contractually bar Uber drivers from participating and benefitting from any class actions. Yet, the waivers were shrouded under the confusing title "How Arbitration Proceedings Are Conducted." Despite the title's innocuous wording, only a single paragraph is devoted to discussing the what and how-to of arbitration. The remaining four paragraphs set forth three waivers of substantive rights – class action, collective action, private attorney general action. Furthermore, the arbitration provision is not conspicuous and was not presented as a stand alone agreement. Instead, it is one of many provisions in the Licensing Agreement.

Uber drivers likely did not know the consequences of assenting to the Licensing Agreement. Many likely were not aware they were losing the right to participate in this or any other lawsuit. Indeed, Uber drivers have no meaningful way of learning of the current lawsuit since there has been no class notice. Although Uber characterizes some of its drivers as large, sophisticated "transportation companies," they do not dispute Plaintiffs' factual contention that many, if not the majority of, Uber drivers are smaller outfits run by immigrants for whom English is not their native language. Docket No. 56 (Hearing Transcript, at pgs. 17:14-18:4). Uber made no effort to inform drivers of the legal consequence of the arbitration provision barring them from participation in pending and future class action lawsuit brought on their behalf. Moreover, Uber drivers who desired to continue using Uber's mobile phone application, and as a consequence to continue receiving leads from Uber, were *required* to assent to the terms of the Licensing Agreement, including its arbitration provision.

---

[2] Even if intentional abuse or misconduct were required, as discussed above, there is a basis for inferring that the arbitration provision at issue here was imposed by Uber as a means of undermining pending class action lawsuit against it.

1    While the Licensing Agreement did afford Uber drivers thirty (30) days to opt out of the
2 arbitration provision, the opt-out provision is buried in the agreement. It is part of the arbitration
3 provision, which itself is part of the larger, overall Licensing Agreement. The opt-out clause itself is
4 ensconced in the penultimate paragraph of a fourteen-page agreement presented to Uber drivers
5 electronically in a mobile phone application interface. In sum, it is an inconspicuous clause in an
6 inconspicuous provision of the Licensing Agreement to which drivers were required to assent in
7 order to continue operating under Uber.

8    Even if a driver were aware of the arbitration provision, and its consequence, and of the opt-
9 out clause, the opt-out procedure is extremely onerous. Whereas, opting in only requires an Uber
10 driver to swipe a button on their mobile phones, opting out required Uber drivers to send a letter via
11 *hand delivery or overnight mail* to Uber's general counsel, clearly indicating their desire to opt out.
12 Defendants failed, at the hearing or in briefing, to rebut Plaintiff's contention that many Uber drivers
13 are not native English speakers. Uber's requirement that an opt-out letter be hand delivered or
14 overnighted goes beyond simply ensuring receipt. Other, less burdensome, means – *e.g.*, email or
15 first class mail with return receipt requested – could credibly have accomplished the same end.[3]

16    In sum, the promulgation of the Licensing Agreement and its arbitration provision, runs a
17 substantial risk of interfering with the rights of Uber drivers under Rule 23. The Court concludes it
18 has the authority to assert control over class communications in a manner that is narrowly tailored,
19 supported by the record, and balances the interests of all parties involved consistent with *Gulf Oil*.
20 While the Court will not regulate communications issued prior to the filing of this suit, as Plaintiffs
21 have cited no authority where a court has asserted control under Rule 23(d) over class
22 communications issued *prior* to the filing of a class action complaint, the Court clearly has the
23 authority and jurisdiction to regulate post-filing communications by Uber under Rule 23(d). *See*

---

[3] Tellingly, Defendants cite no case where an opt-out procedure that mandates such onerous means has been upheld. Defendants' opt-out procedure is significantly more burdensome than others upheld in this circuit. *See e.g.*, *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1002 (N.D. Cal. 2011) (providing for thirty-day opt-out period via a toll free number or online form); *Alvarez v. T-Mobile USA, Inc.*, No. 10-cv-2373 WBS, 2011 WL 6702424, at *2 (E.D. Cal. Dec. 21, 2011) (same); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (providing thirty-day opt out period by mailing one-page form).

*Gulf Oil*, 452 at 99-100 (noting district court's duty and broad authority to "enter appropriate orders governing the conduct of counsel and parties"). This discretion includes requiring the issuance of corrective notices and action to ameliorate confusing or misleading communications. *See e.g.*, *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 353 (6th Cir. 2009) (affirming district court's corrective notice and extension of the opt-out period to "unwind the confusion" caused by plaintiffs' attorney unilateral communication with putative class members to procure post-certification opt-outs) (citing *Gulf Oil*); *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003) (relying on *Gulf Oil* to enter "appropriate orders," such as requiring defendant to issue corrective notice to inform potential class members of their right to join a putative class action, where defendant sent letter discouraging participation in pending class action).

Uber drivers must be given clear notice of the arbitration provision, the effect of assenting to arbitration on their participation in this lawsuit, and reasonable means of opting out of the arbitration provision within 30 days of the notice. These requirements shall apply to new drivers (prospectively) and past and current drivers (retrospectively). As for arbitration provisions which have already been distributed after the filing of the complaint in this action (August 16, 2013) to past and current drivers who have approved the arbitration provision without opting out (or for whom approval during the 30 day notice period has begun to run but is still pending), Uber must seek approval of the arbitration provision for these drivers anew, giving them 30 days to accept or opt out from the date of the revised notice.

The foregoing approach is narrowly tailored as required under *Gulf Oil* and is based on factual findings discussed herein.

## III. CONCLUSION

Based on the foregoing, the Court hereby rules as follows:

(1) The Court declines to rule on the alleged unconscionability of the arbitration provision in the Licensing Agreement, as that issue is not yet ripe for adjudication.

(2) Uber's efforts to seek approval of the arbitration provision in the Licensing Agreement during the pendency of this class action is potentially misleading, coercive, and threatens

to interfere with the rights of class members. This Court shall exercise its discretion and authority to control communications to the putative class, pursuant to Rule 23(d), as follows:

    (a)    The parties shall meet and confer within seven (7) days of this Order to discuss and stipulate to the appropriate form, content, and procedures of the corrective notices consistent with this order. If the parties are unable to agree on a proposed corrective notice, they shall notify the Court by submitting their respective proposed notices and procedures for review and decision by the Court within fourteen (14) days of this Order.

    (b)    Until revised notices and procedures are approved by the Court and sent to drivers, Uber shall not issue to Uber drivers or prospective drivers the Licensing Agreement or any other agreement containing an arbitration provision which waives putative class members rights herein.

This order disposes of Docket No. 15.

IT IS SO ORDERED.

Dated: December 6, 2013

_____
EDWARD M. CHEN
United States District Judge

to interfere with the rights of class members. This Court shall exercise its discretion and authority to control communications to the putative class, pursuant to Rule 23(d), as follows:

    (a)    The parties shall meet and confer within seven (7) days of this Order to discuss and stipulate to the appropriate form, content, and procedures of the corrective notices consistent with this order. If the parties are unable to agree on a proposed corrective notice, they shall notify the Court by submitting their respective proposed notices and procedures for review and decision by the Court within fourteen (14) days of this Order.

    (b)    Until revised notices and procedures are approved by the Court and sent to drivers, Uber shall not issue to Uber drivers or prospective drivers the Licensing Agreement or any other agreement containing an arbitration provision which waives putative class members rights herein.

This order disposes of Docket No. 15.

IT IS SO ORDERED.

Dated: December 6, 2013

_____
EDWARD M. CHEN
United States District Judge