MORGAN, LEWIS & BOCKIUS LLP
ROBERT JON HENDRICKS (SBN 179751)
STEPHEN L. TAEUSCH (SBN 247708)
One Market, Spear Street Tower
San Francisco, CA  94105
Tel:  415.442.1000
Fax:  415.442.1001
rhendricks@morganlewis.com
staeusch@morganlewis.com

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR and THOMAS COLOPY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., TRAVIS KALANICK, and RYAN GRAVES,<br><br>Defendants. | Case No. 13-03826-EMC<br><br>Hon. Edward M. Chen<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART PLAINTIFFS' "RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES"**<br><br>[Local Rule 7-9]<br><br>Complaint Filed:  August 16, 2013 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DEF'S MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
No. 13-03826-EMC

DB2/ 24563757.3

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .................................................................................... 1

ISSUE TO BE DECIDED (CIVIL L.R. 7-4(A)(3)) .................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 3

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 3

II.   THE COURT'S DECEMBER 6, 2013 ORDER ............................................................... 4

III.  SUMMARY OF MATERIAL FACTS PRESENTED TO THE COURT BEFORE ITS ORDER ....................................................................................................................... 4

IV.  LEGAL ARGUMENT ...................................................................................................... 6

    A.   LEGAL STANDARD ON MOTIONS FOR RECONSIDERATION .................... 6

    B.   THE COURT SHOULD GRANT UBER LEAVE TO SEEK RECONSIDERATION OF THE ORDER AND SHOULD STAY THE ORDER PENDING RECONSIDERATION ........................................................ 6

        1.   "Prospective Drivers" Are Not Putative Class Members. ........................... 6

        2.   Rule 23 Provides No Basis For "Correcting" Or Restricting Communications With Persons Who Are Not Putative Class Members At The Time Of The Communication. ........................................ 7

        3.   The Court Should Stay The Order Pending Reconsideration. .................... 9

V.   CONCLUSION ................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) .................................................................................................. 9

*Balasanyan v. Nordstrom, Inc.*,
  No. 11-CV-2609-JM-WMC, 2012 WL 760566 (S.D. Cal., Mar. 8, 2012) .............................. 8

*Balasanyan v. Nordstrom, Inc.*,
  Nos. 11-CV-2609-JM-WMC, 3:10–cv–2671–JM-WMC, 2013 WL 4517821 (S.D.
  Cal., Aug. 12, 2013) ................................................................................................. 3, 8

*In re Currency Conversion*,
  361 F. Supp. 2d 237 (S.D.N.Y. Aug 9, 2005) .................................................................. 3, 7, 8

*In re LDK Solar Sec. Litig.*,
  584 F. Supp. 2d 1230 (N.D. Cal. 2008) ............................................................................ 6

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  130 S.Ct. 1758 (2010) .................................................................................................. 9

**STATUTES**

Federal Arbitration Act .................................................................................................... 9

**RULES AND REGULATIONS**

Fed. R. Civ. P. 23 .................................................................................................... passim

Local Rule 7-9 ............................................................................................................... 3, 6

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Northern District of California Civil Local Rule 7-9, Defendant Uber Technologies, Inc. ("Uber") hereby moves for an order granting leave to file a motion for reconsideration of this Court's December 6, 2013 Order Granting In Part Plaintiffs' "Renewed Emergency Motion For Protective Order To Strike Arbitration Clauses" (Dkt. 60) (the "Order").

Uber seeks leave to move for reconsideration of the Order on the ground that the Court manifestly failed to consider the material fact that, since the filing of the Complaint in this matter, Uber has <u>not</u> issued the challenged arbitration agreement to any putative class members, but has issued the agreement only to prospective users of its software application service (i.e. to individuals who have not yet utilized the Uber Software Application, have no claim against Uber at the time of the communication, and therefore are not members of the putative class). As such, the challenged communications are not "class communications" subject to Rule 23.

The Court acknowledged in its Order that its authority under Rule 23 is limited to the supervision of parties' communications with putative class members. However, the Court's Order, which required Uber to amend its arbitration provisions and to provide notice of this lawsuit to prospective users of its application service even *before* they enter into a contract with Uber, extends beyond regulation of communications with putative class members. Reconsideration is thus warranted under Local Rule 7-9(b)(3).

This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the complete files and records of this action, and such other written or oral argument as may be presented hereafter.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1

DEF'S MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
No. 13-03826-EMC

DB2/ 24563757.3

## ISSUE TO BE DECIDED (Civil L.R. 7-4(a)(3))

The issue raised by this Motion is whether the Court should grant Uber leave to seek reconsideration of the Court's December 6, 2013 Order Granting In Part Plaintiffs' "Renewed Emergency Motion For Protective Order To Strike Arbitration Clauses" (Dkt. 60) (the "Order"), given that the Court manifestly failed to consider the material fact that, since the filing of this lawsuit, Uber has issued the challenged arbitration agreement to prospective users only (i.e. to individuals who have not yet utilized the Uber Software Application, have no claim against Uber at the time of the communication, and therefore are not members of the putative class).

Morgan, Lewis & Bockius LLP
Attorneys At Law

DB2/ 24563757.3

2

DEF'S MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
No. 13-03826-EMC

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

Leave to move for reconsideration of the Court's December 6, 2013 Order Granting In Part Plaintiffs' "Renewed Emergency Motion For Protective Order To Strike Arbitration Clauses" (Dkt. 60) (the "Order") is warranted under Local Rule 7-9(b)(3) because the Court manifestly failed to consider the material fact — presented to the Court in briefing and at oral argument — that since the filing of the Complaint Uber has issued the challenged arbitration agreement only to <u>prospective</u> users of its software application service, who are by definition <u>not</u> members of the putative class. Once that fact is considered, the Order's own logic and authority the Court itself relied upon dictate a different result. *See In re Currency Conversion*, 361 F. Supp. 2d 237, 258 (S.D.N.Y. Aug 9, 2005) (*enforcing* post-litigation arbitration agreements with new cardholders because they were "<u>non-putative class members [who] agreed to arbitration before they became putative class members in this litigation</u>…") (emphasis added); *see also Balasanyan v. Nordstrom, Inc.*, Nos. 11-CV-2609-JM-WMC, 3:10–cv–2671–JM-WMC, 2013 WL 4517821, at *23 (S.D. Cal., Aug. 12, 2013) (". . . the court concedes that Nordstrom was engaging in a standard practice that many companies engage in when hiring new employees. Accordingly, the court holds that new employees who signed the [arbitration agreement] upon becoming employed by Nordstrom may be properly excluded from the class.").

In its Order, the Court correctly disclaimed authority under Rule 23 to regulate communications with persons who are not putative class members. *See* Order at 10:20-22. Leave to move for reconsideration is necessary so that the Court may consider whether, by regulating Uber's post-Complaint communications with <u>prospective</u> users of its service, it inadvertently exceeded the scope of its authority under Rule 23. Indeed, Uber submits that, upon reconsideration, the Court would reach a different decision regarding its authority to "correct" Uber's past communications and to supervise Uber's future communications with prospective users. For the foregoing reasons, Uber respectfully requests that the Court grant it leave to file a Motion for Reconsideration of the Order.

Uber additionally requests that the Court stay the Order pending resolution of this motion and any motion for reconsideration. A stay is needed because, if the Court does ultimately rescind its Order upon reconsideration, it will have unnecessarily interfered with Uber's right to enter into arbitration agreements with prospective users of its software application service and will potentially prejudice Uber's rights in the underlying litgation, a bizarre and no doubt unintended consequence of the Court's exercise of authority under Rule 23 to ensure the fair conduct of this putative class action.

## II.   THE COURT'S DECEMBER 6, 2013 ORDER

In its Order, the Court acknowledged that whatever authority it possesses under Rule 23 to regulate class communications does <u>not</u> extend to a party's communications with individuals who are <u>not</u> putative class members. *See* Order at 10:20-22. However, the Court also found that "Uber's efforts to seek approval of the arbitration provision in the Licensing Agreement during the pendency of this class action is potentially misleading, coercive, and threatens to interfere with the rights of <u>class members</u>." Order at 11:26-12:1 (emphasis added). Accordingly, the Court ordered corrective notice and a renewed opportunity to "opt out" of arbitration to past and current users of Uber's software application service who were issued an arbitration agreement after the filing of the Complaint. *Id*. at 11:14-19; 12:3-8. The Court also enjoined Uber from issuing the challenged arbitration provision to "Uber drivers or prospective drivers" until the Court approves revised notice and opt-out procedures. *Id.* at 12:9-12.

## III.   SUMMARY OF MATERIAL FACTS PRESENTED TO THE COURT BEFORE ITS ORDER

The following material facts were before the Court at the time it ruled on the Motion.

To obtain lead generation services through the Uber application, all prospective users of Uber's software must first accept a licensing agreement — the agreement that, prior to the Court's Order, contained the challenged arbitration provision. *See* Declaration of Michael Colman in Opposition to Plaintiffs' Renewed Emergency Motion for Protective Order to Strike Arbitration Clauses (Dkt. No. 36-2) ("Colman Decl."), ¶ 5. Prospective users are thus by definition <u>not</u> putative class members, because the Complaint defines the putative class as "all drivers *who have*

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
DB2/ 24563757.3

4

DEF'S MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
No. 13-03826-EMC

*worked for Uber* anywhere in the country, except in Massachusetts." *See* Complaint, ¶ 25 (emphasis added).

Plaintiffs Douglas O'Connor and Thomas Colopy ("Plaintiffs") filed their Complaint in this matter on August 16, 2013. *See* Complaint (Dkt. No. 1). Uber disseminated the arbitration agreement Plaintiffs challenged through their Motion to all current users of its software application service in July 2013, <u>before</u> Plaintiffs filed the Complaint. *See* Colman Decl., ¶ 5. As of the filing of the Complaint, therefore, all drivers then capable of using the Uber application had already been issued the challenged arbitration agreement and, since that time, Uber has issued the challenged arbitration agreement to <u>prospective</u> drivers only, points specifically confirmed at the hearing on the Motion:

> THE COURT: Well, let me ask defense counsel. Are there notices that -- I mean, how was this being disseminated, this policy and people signing onto the arbitration policy?
>
> MR. HENDRICKS: Well, there was the initial roll-out. And to the extent you have a new driver sign up, when they initially -- before they have -- you know, take their first ride, they are then presented with the licensing agreement and the driver addendum and the other paperwork that comprises the licensing agreement, which includes the arbitration provision.
>
> THE COURT: So everybody who has been working for Uber, let's say more than a month or two, has already received this agreement?
>
> MR. HENDRICKS: I believe that would be correct, yes.
>
> THE COURT: So it's the new drivers that come on that might or might not be affected by any --
>
> . . .
>
> THE COURT: <u>So the issue of what the plaintiff is seeking, sort of notice or warning or know your rights, whatever it is, at this point would only affect prospectively new transportation companies as they sign on</u>. The people who have already been there have now already gotten this and has either opted out or not opted out.
>
> MR. HENDRICKS: <u>That would be correct</u>.

Hearing Transcript (Dkt. No. 56) at 23:19-24:25 (emphasis added).

//

//

//

## IV. LEGAL ARGUMENT

### A. LEGAL STANDARD ON MOTIONS FOR RECONSIDERATION

A motion for reconsideration of an interlocutory order is governed by Northern District of California Civil Local Rule 7-9. *See In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1252 (N.D. Cal. 2008). Under Local Rule 7-9(b), a party must seek leave of court before filing a motion for reconsideration, as Uber does here. Further, to obtain leave to file a motion for reconsideration, the moving party must show one or more of the following: (1) that there has been a change in material fact or law from that which was presented to the court before the entry of the order; (2) the emergence of new material facts or a change of law occurring after the order; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments that were presented to the court before the order. *See* Civ. L.R. 7-9(b).

It is manifest from the Order that the Court inadvertently overlooked the material fact, presented to the Court before the Order issued, that the communications that are the subject of the Order do not involve putative class members because prospective drivers fall outside the class definition ("drivers who have worked for Uber"). Leave to file a motion for reconsideration is thus warranted under Local Rule 7-9(b)(3).

### B. THE COURT SHOULD GRANT UBER LEAVE TO SEEK RECONSIDERATION OF THE ORDER AND SHOULD STAY THE ORDER PENDING RECONSIDERATION

Reconsideration is warranted because, despite its consideration of nearly all issues presented by the parties' papers, the Court manifestly did not consider the facts before it showing that, since the filing of the Complaint, (1) Uber has issued the arbitration agreement to prospective drivers only, (2) prospective drivers are not putative class members, and (3) the challenged communications are thus not "class communications" subject to Rule 23. Those facts are unquestionably material, because the Court itself acknowledges that its authority to regulate communications under Rule 23 does not extend to a party's communications with persons who are not members of the putative class.

///

///

### 1. "Prospective Drivers" Are Not Putative Class Members.

As set forth above, Uber issued the Licensing Agreement after this litigation had commenced <u>only</u> to prospective drivers, and these prospective drivers were required to accept the agreement <u>before</u> they were enabled to use the Uber application for lead generation services. Any contention that such individuals were putative class members at that time Uber issued the challenged arbitration agreement is simply incorrect, as the putative class is defined in the Complaint as "drivers *who have worked for* Uber." *See* Complaint, ¶ 25 (emphasis added).

### 2. Rule 23 Provides No Basis For "Correcting" Or Restricting Communications With Persons Who Are Not Putative Class Members At The Time Of The Communication.

Because Uber issues the Licensing Agreement to prospective drivers before they become putative class members in this litigation, a material fact the Court manifestly did not consider, there is no basis in this Court's decision (or any case law cited by Plaintiffs or relied upon by the Court) for controlling Uber's communications with prospective drivers. Communications with prospective drivers do not "run[] a substantial risk of interfering with the rights of Uber drivers under Rule 23" (Order at 10:16-17), because prospective drivers fall outside the class definition and have no rights in this litigation. No claims were withdrawn from the putative class action litigation or affected in any way by virtue of Uber's agreements with prospective drivers because no claims existed for these individuals at the time they were issued the agreements.

This point is made clearly in authority relied upon by this Court. In *In re Currency Conversion*, the court exercised purported Rule 23 authority to invalidate arbitration provisions in cardholder agreements entered into with putative class members after the litigation commenced. But upon the defendants' motion for clarification whether the court's ruling encompassed cardholders who opened <u>new</u> credit card accounts after this suit began, the court <u>excluded</u> that category of cardholders because they were not putative class members at the time of the communication. 361 F. Supp. 2d at 258. The court explained:

> When arbitration clauses were included in the credit card agreements for these categories of cardholders, <u>they were not putative class members</u>. As a result, they had no rights in this litigation. Indeed, this Court agrees with defendants that <u>there is no basis for restricting a defendant from communicating with persons who are not putative class members</u>. . . . Accordingly, this Court holds that

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
DB2/ 24563757.3

7

DEF'S MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
No. 13-03826-EMC

> because the non-putative class members agreed to arbitration before they became putative class members in this litigation, the arbitration clauses in their cardholder agreements can be enforced. Because these cardholders' rights were hypothetical at the time the arbitration clauses were added, that change did not alter the status of the pending litigation.

*Id.* (emphasis added). In its Order, the Court included a lengthy discussion of *Balasanyan v. Nordstrom, Inc.*, No. 11-CV-2609-JM-WMC, 2012 WL 760566 (S.D. Cal., Mar. 8, 2012) (currently on appeal), a ruling from the Southern District of California in which the district court invalidated a post-litigation arbitration agreement Nordstrom, Inc. entered into with persons who were already putative class members. The subsequent history in that case is significant, however, because in a later decision the same court *upheld* the company's post-litigation agreements with *new* employees and excluded them from the class. *See Balasanyan*, 2013 WL 4517821, at *23 ("… the court concedes that Nordstrom was engaging in a standard practice that many companies engage in when hiring new employees. Accordingly, the court holds that new employees who signed the [arbitration agreement] upon becoming employed by Nordstrom may be properly excluded from the class."). This Court plainly needs no persuasion that Rule 23 does not empower it to supervise Uber's communications with individuals who were not members of the putative class at the time the communication was made, as the Order expressly does not apply to any communications Uber made prior to the filing of the Complaint. *See* Order at 10:20-23; *see also id*. at 12:1-2 ("This Court shall exercise its discretion and authority to control communications to the putative class, pursuant to Rule 23(d)…") (emphasis added).

Accordingly, had the Court considered the material fact that, since this lawsuit commenced, Uber has issued the Licensing Agreement only to prospective drivers and that they are by definition not putative class members, Uber respectfully submits that it would not have ordered corrective notice or enjoined Uber from continuing to include the challenged arbitration provision in its standard form of Licensing Agreement. As Uber is confident the Court would rescind the Order upon reconsideration to avoid committing error, Uber seeks leave to move for reconsideration to avoid the need for appeal or at least to ensure that future courts will not misread this Court's statements regarding post-litigation arbitration clauses as suggesting that

courts may exercise authority under Rule 23 to regulate communications with individuals who are not putative class members.

### 3. The Court Should Stay The Order Pending Reconsideration And Any Appeal.

The Court should stay its Order pending its own reconsideration and any appeal of the Order because, if the Order is rescinded or narrowed upon reconsideration or on appeal, Uber will have been unfairly denied the right, protected by the Federal Arbitration Act, to enter into arbitration agreements with a growing number of prospective users of its software application service. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) ("The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'") (quoting *Volt Information Sciences, Inc. v. 1746 Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1763 (2010). A stay is needed also because the Court's Order may have the effect of altering the underlying factual landscape of the case with respect to class certification issues. In the event the Court upon reconsideration chooses <u>not</u> to rescind or modify the Order or if the Order is overturned on appeal, the stay will have caused no prejudice because the Order already contemplates corrective notice and an opportunity to opt out to all individuals to whom the arbitration provision has been issued since the filing of the Complaint.

## V. **CONCLUSION**

For the foregoing reasons, this Court should grant Uber's motion for leave to move for reconsideration and stay the Order pending resolution of this motion and any motion for reconsideration.

Dated: December 16, 2013

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Robert Jon Hendricks
   Robert Jon Hendricks

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
DB2/ 24563757.3

9

DEF'S MOTION FOR LEAVE TO FILE
MOTION FOR RECONSIDERATION
No. 13-03826-EMC