SHANNON LISS-RIORDAN, *pro hac vice*
(sliss@llrlaw.com)
SARA SMOLIK, *pro hac vice*
(ssmolik@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

MONIQUE OLIVIER (SBN 190385)
(monique@dplolaw.com)
DUCKWORKTH, PETERS, LEBOWITZ, OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104
Telephone:     (415) 433-0333
Facsimile:     (415) 449-6556

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOUGLAS O'CONNOR and THOMAS COLOPY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., TRAVIS KALANICK, and RYAN GRAVES,<br><br>Defendants. | Case No. CV 13-3826-EMC<br><br>**OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART PLAINTIFFS' "RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES"**<br><br>Hearing Date: April 10, 2014<br><br>Time: 1:30 pm<br><br>Courtroom: 5<br><br>Before the Hon. Edward M. Chen |

1

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART PLAINTIFFS' "RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES"

Plaintiffs hereby oppose Uber's motion for reconsideration. Uber's argument that the Court exceeded its authority under Fed. R. Civ. P. 23(d) to control communications with prospective class members is based upon a flawed reading of Plaintiffs' complaint, and Uber's proposed distinction between existing and new drivers is not supported by policy or grammar or required by case law. Uber's claim that the class encompasses only individuals who drove for Uber prior to the filing of the complaint is unsound and inaccurate, particularly given that no class has yet been certified.

The language of Plaintiffs' complaint refers to "individuals who have worked as Uber drivers", which the Court can recognize includes all those individuals who have driven for Uber under the conditions described in Plaintiffs' complaint through the date of judgment, or at least through the date that a class is certified. Uber's attempt to thwart the Court's control over class communications in this case by circumscribing the putative class based on an overly technical, and grammatically inaccurate, reading of the plaintiffs' complaint should be rejected. The verb "have" indicates the present perfect tense, which describes an action that began in the past but continues into the present.[1] Moreover, the present is not limited to the date that the complaint was filed. A lawsuit complaint is a living operative document that states claims that are ongoing over the course of a litigation; it is not merely a stagnant document stating claims that existed only on the date a complaint was filed. To the extent that a defendant does not change its practices after a complaint is filed (which is the case here), the complaint carries forward to assert claims that are ongoing over the course of a lawsuit.

Thus, the fact that Plaintiffs described the proposed class in this case as "individuals who have worked as Uber drivers" should not be read in the overly begrudging way that Uber urges, to limit the class to individuals who worked as Uber drivers only prior to the filing of the complaint, and to exclude drivers who began working after the filing of the complaint. Clearly, when the time

---

[1] See Purdue University Online Writing Lab, Sequence of Tenses, https://owl.english.purdue.edu/owl/resource/601/01/.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART PLAINTIFFS' "RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES"

comes for Plaintiffs to file their motion for class certification, they would not be prevented from seeking a class up until the date of certification (assuming the defendants' challenged practices remained in effect at that time); it is not logical or conceivable that they would be limited to seeking a class only until the date of the filing of the complaint. Uber's argument that the complaint limits the class to drivers who had worked prior to the filing of the lawsuit is not only illogical, but if accepted, it would create a perverse incentive and ability for employers to use arbitration clauses to attempt to shield themselves from class action litigation already filed with respect to employees who had not yet begun working for the employer until after a case was filed.

Moreover, Uber's latest attempt to shield itself from this class action litigation by use of an arbitration clause should not be condoned by this Court, particularly where Uber has been flouting the Court's orders to date. In its ruling of December 6, 2013, the Court prohibited Uber from disseminating further arbitration agreements going forward, pending further order from the Court. Despite this clear order (and despite the fact that the parties had agreed to stay the matter pending an early mediation), Uber filed a motion for clarification asking that it be permitted to require the use of arbitration agreements for new drivers signing up with Uber. The Court rejected this request in no uncertain terms on January 24, 2014 (Doc. 69). Regardless of these orders, it has come to Plaintiffs' attention that Uber has nevertheless continued to require drivers to agree to its new licensing agreement that includes its arbitration clause. See Declaration of Guy Gottlieb (filed herewith) (describing how he was required to agree to Uber's license agreement again, which includes its arbitration provision, in late February 2014, in order to begin driving again for Uber after a suspension).[2]

---

[2] Prior to taking any discovery, Plaintiffs do not yet know how widespread Uber's continued dissemination of its arbitration clause has been. However, as can be seen from the Gottlieb Declaration, it appears that Uber is requiring new drivers to accept the arbitration agreement; it also appears that Uber may be requiring current drivers who log in to the system anew after a "software update" to again accept the arbitration agreement (even if they already were given an opportunity to opt out – thus presumably requiring them to opt out again, even if they already did so previously).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART PLAINTIFFS' "RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES"

Given this violation of the Court's order (which Uber expressly requested that the Court allow, and the Court expressly disallowed), Uber should not be permitted to benefit from a decision retroactively approving its prohibited behavior. Instead, the Court should fashion a remedy that it finds appropriate given Uber's violation of the Court's order.[3]

For all these reasons, and as set forth further below, Uber's motion should be denied, and the Court should enter an appropriate order, sanctioning Uber for its violation of the Court's order, and providing appropriate protections for drivers going forward who may stand to benefit from this litigation.

**BACKGROUND**

In late 2012, Uber was sued in a class action in Massachusetts regarding its gratuity policy. Several months later, in what appears to be a clear attempt to prevent similar claims from spreading nationwide, Uber disseminated a new contract to its drivers that included an arbitration agreement containing a class action waiver. The plaintiffs in this case filed this action shortly after that agreement had been disseminated—and prior to the expiration of the "opt out" period provided for in the arbitration agreement. On December 6, 2013, this Court granted in part "Plaintiffs' Emergency Motion for Protective Order to Strike Arbitration Clauses." (Doc. 60). The Court later clarified on January 24, 2014, that the Court did not intend to "stay Defendants' obligation to refrain from promulgating new arbitration agreements" and that "[u]ntil a corrective notice is approved by the Court and available for distribution or further order, that obligation shall remain in effect." (Doc. 69). Thus, Defendants are still under a continuing obligation to refrain from issuing new arbitration agreements, pending resolution of their motion for reconsideration. However, it has come to

---

[3] For instance, given that it appears Uber has been continuing to require drivers to agree to its new licensing agreement (both new drivers, as well as previous drivers who already accepted the agreement), the Court could order that Uber send <u>all</u> drivers the licensing again, with a new opportunity to opt out of the arbitration clause (if that was not the remedy already ordered – it is not entirely clear to the plaintiffs which categories of drivers would be given a new opportunity to opt out of the arbitration clause, pursuant to the Court's order of December 6, 2013.)

3

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART PLAINTIFFS' "RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES"

Plaintiffs' counsel's attention that as recently as February 26, 2014, Defendants have persisted in distributing arbitration agreements to drivers in flagrant violation of this Court's explicit Orders. See Gottlieb Decl. at ¶¶ 3-5. Uber now seeks reconsideration in an attempt to secure retroactive approval of its blatant disregard of this Court's *express* Order. Defendants should not be permitted to bypass this Court's explicit direction that they refrain from promulgating and distributing arbitration agreements. Defendants' motion for reconsideration should be denied.

### I. Uber's Motion for Reconsideration of the Court's Order Should be Denied Because Defendants' Flawed Grammatical Arguments Misread Plaintiffs' Complaint.

Defendants' argument in support of its request for reconsideration is based upon a flawed understanding of English grammar. Contrary to Uber's argument, nothing in the language of Plaintiffs' complaint indicates that the class that Plaintiffs seek to represent consists only of those drivers who drove for Uber in the past. Rather, Plaintiffs' definition of the class as those "who have driven" indicates that the class includes all those individuals who have driven for Uber under the conditions described in Plaintiffs' complaint through the date of judgment (or at least through the date of class certification).[4] The verb "have" indicates the present perfect tense, which describes an action that began in the past but continues into the present. See Purdue University Online Writing Lab, Sequence of Tenses, https://owl.english.purdue.edu/owl/resource/601/01/.[5] Thus, the complaint should be understood to embrace a continuing violation on Uber's part that carries on into the future and up to the date of judgment. If Plaintiffs intended to limit the class to only those individuals who

---

[4] A class could be certified in this case to include all drivers who have driven for Uber up until the date of class certification and could provide for new drivers to enter the class once they begin driving for Uber (provided they are given an opportunity to opt out of the class).

[5] "The present perfect consists of a past participle (the third principal part) with 'has' or 'have.' It designates action which began in the past but which continues into the present or the effect of which still continues." Purdue University Online Writing Lab, Sequence of Tenses, https://owl.english.purdue.edu/owl/resource/601/01/.
4

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART PLAINTIFFS' "RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES"

drove for Uber at some point in the past and to exclude individuals who will have driven for Uber only since this case has been pending, they would have described the class as those "who *drove* for Uber" (the past simple tense), or "who *had* driven for Uber" (the past perfect tense). Id. Because newly hired drivers who are subject to the same employment practices Plaintiffs challenge are clearly contemplated by Plaintiffs' complaint, the Court properly relied on its authority under to Fed. R. Civ. P. 23(d) to control communications with them. Indeed, the Court was well within its authority in enjoining Uber from continuing to distribute the arbitration agreements to *all* Uber drivers as challenged by Plaintiffs. (Doc. 60, at 5).

Courts have rejected similar arguments that rely on highly technical grammatical parsing of class definitions. For example, in Abadeer v. Tyson Foods, Inc., 2014 WL 129318 at *3 (M.D. Tenn. Jan. 13, 2014), the court rejected the defendant's argument that "the [class certification] order's use of the past tense—referring to employees who 'worked' for Tyson and 'were paid' pursuant to its timekeeping system—limits the class to employees hired between April 30, 2003, and the class-certification date" and "does not expressly contemplate inclusion of the new employees in the class." The Abadeer court rejected Tyson's contention that the new employees should have to "bring individual suits or seek certification of another class action" and instead ruled that the new hires were similarly situated because they suffered the same illegal employment practices as other class members. Id. at *4.

As in Abadeer, the newly hired drivers in this case have claims that they are victims of the same wage violations and misclassification alleged in Plaintiffs' complaint and should be considered putative class members. Indeed, there is even greater reason to consider new drivers part of the putative class in this case, since the arbitration agreements at issue here would potentially preclude new drivers from "bring[ing] individual suits or seek[ing] certification of another class action," as the defendant urged in Abadeer. Id. It is clear that the complaint's reference to "individuals who have worked as Uber drivers" is meant to include new drivers who have begun driving with Uber after the filing of the complaint, and who are subject to all the same violations described in the

5

complaint. Because newly hired drivers are properly considered putative class members, this Court's Order issued on December 6, 2013, was well within its authority under Fed. R. Civ. P. 23(d) and should stand.

## II. Uber's Motion for Reconsideration of the Court's Order Should be Denied Because New Drivers are Properly Considered Putative Class Members and Excluding Them Would Permit Uber to Improperly Limit its Potential Liability.

In support of its motion for reconsideration, Uber cites to two cases, both of which are based on flawed reasoning. Uber relies on In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 258 (S.D.N.Y. 2005), where the court held "that because the non-putative class members agreed to arbitration *before* they became putative class members in this litigation, the arbitration clauses in their cardholder agreements can be enforced." However, this logic ignores the fact that Uber's Licensing Agreements function as a contract of adhesion presented to all new drivers who are already putative class members in this case, without advising them about the pending litigation and the potential violation of their rights. Indeed, this Court should adhere to the accepted rule that complaints containing language similar to what Plaintiffs used are operative living documents, construed to include new workers who begin working for the company while the case is pending. See, e.g., De Giovanni v. Jani-King International, Inc., 262 F.R.D. 71, 87-88 (D.Mass. 2009) (certifying class of "all individuals who have performed cleaning work for Jani-King in Massachusetts any time since January 12, 2004" up until the date the class was certified in 2009, where the complaint (filed in 2007) stated that the plaintiffs sought to represent "individuals who have performed cleaning work", see Complaint, 1:07-cv-10066 (Doc. 1)).[6]

---

[6] At the very least, if the Court were inclined to adopt Uber's argument that the complaint as written does not include new drivers, Plaintiffs should be given the opportunity to amend the complaint to explicitly and unequivocally clarify that it does include drivers who have or will begin driving for Uber after the complaint was filed. See Wolph v. Acer Am. Corp., 272 F.R.D. 477, 483 (N.D. Cal. 2011), reconsideration denied, 2012 WL 993531 (N.D. Cal. Mar. 23, 2012). Although Plaintiffs do not believe such an amendment is necessary for the reasons stated herein, amending the
(continued on next page)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART PLAINTIFFS' "RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES"

In the other case relied upon by Uber, <u>Balasanyan v. Nordstrom, Inc.</u>, 294 F.R.D. 550, 573 (S.D. Cal. 2013), the court noted that "Nordstrom cites no authority that would permit a defendant to reduce their liability by having new potential Class Members sign arbitration agreements." However, despite this observation and without any explanation, the <u>Balasanyan</u> court held that new employees "may be properly excluded from the class" because by distributing arbitration agreements to its new hires, "Nordstrom was engaging in a standard practice that many companies engage in when hiring new employees." <u>Id.</u> at 574. The <u>Balasanyan</u> decision failed to consider the perverse incentives created by permitting exclusion of newly hired employees from the class in this manner. In contrast, this Court's Order of December 6, 2013, recognized these perverse incentives in finding that "there is a distinct possibility that the arbitration provision and class waiver imposed by Uber was motivated at least in part by the pendency of class action lawsuits which preceded the new Licensing Agreement." (Doc. 60, at 7). Permitting Uber to impose the Licensing Agreement, with its onerous arbitration provision, on all newly hired drivers (including apparently drivers who are suspended and then return to work, <u>see</u> Gottlieb Decl. at ¶ 6), would incentivize the use of arbitration agreements "as a means to thwart existing class action litigation" and insulate Uber from liability. (Doc. 60, at 7). The Court should reject the brief and unsupported conclusion of the <u>Balasanvan</u> court and deny Uber's motion for reconsideration.

### III. Uber's Motion for Reconsideration Represents an Attempt to Secure Retroactive Approval of Uber's Violation of This Court's Express Order That Uber Shall not Issue any Arbitration Provision to its Drivers.

As shown here, even prior to discovery, Plaintiffs have some evidence that Uber has blatantly violated this Court's Order of December 6, 2013, against prospective distribution of arbitration agreements and now seeks reconsideration in an attempt to absolve itself of its violation. The

---

(Footnote continued from previous page)
complaint would eliminate any doubt that drivers hired by Uber subsequent to the initial filing of this lawsuit are putative class members.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART PLAINTIFFS' "RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES"

Court's Order clearly states that "[u]ntil revised notices and procedures are approved by the Court and sent to drivers, Uber shall not issue to Uber drivers or prospective drivers the Licensing Agreement or any other agreement containing an arbitration provision which waives putative class members rights herein." (Doc. 60, at 12). Moreover, after Uber requested clarification, the Court further clarified it decisions on January 24, 2014, stating that it would "not stay Defendants' obligation to refrain from promulgating new arbitration agreements" and that "[u]ntil a corrective notice is approved by the Court and available for distribution or further order, that obligation shall remain in effect." (Doc. 69). In moving for reconsideration, Uber should not be permitted to bypass this Court's explicit direction that it refrain from promulgating and distributing arbitration agreements to new drivers.[7]

---

[7] This is so even if the Court ultimately decides to *grant* Uber's motion for reconsideration – which Plaintiffs oppose – for there can be no doubt that Uber has violated the Order as it stands now. As evinced by the attached declaration of Uber driver Guy Gottlieb, it appears that when existing Uber drivers are either suspended or stop driving for a given period of time (or possibly even just log back into Uber's system after a software update), Uber has been presenting them with Licensing Agreements again, in contravention of this Court's prior orders. See Gottlieb Decl. at ¶¶3-6. This flouting of the Court's orders by Uber is particularly egregious, since no one is even disputing that such drivers are properly considered putative class members and the continued distribution of these Licensing Agreements to drivers like Gottlieb directly contravenes the clear language of the Court's Order of December 6, 2013.

Indeed, if Uber is presenting its Licensing Agreements to drivers again as part of a software update, as a condition of continuing to drive for Uber, this would represent a serious breach of the Court's order given that *all* drivers and not just "new employees" would potentially be affected. While Plaintiffs firmly assert that so-called "new drivers" are members of the putative class as this court concluded in its previous Order (Doc. 60), distributing Licensing Agreements to existing drivers as part of a software update would be even more clearly a violation of this Court's directive.

8

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART PLAINTIFFS' "RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES"

# CONCLUSION

For all these reasons, Uber's motion for reconsideration should be denied. In addition, in light of Uber's apparent violation of the Court's Orders regarding the dissemination of arbitration agreements, the Court should invoke its authority to take further corrective action, and impose sanctions on Uber, if the Court deems it warranted (for example, by requiring that <u>all</u> Uber drivers be given an opportunity anew to opt out of Uber's arbitration agreement, if that is not the relief the Court already intended through its Order of December 6, 2013).

Respectfully submitted,

DOUGLAS O'CONNOR AND THOMAS COLOPY, individually and on behalf of all others similarly situated,

By their attorneys,

_/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan, *pro hac vice*
Sara Smolik, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800
Email: sliss@llrlaw.com; ssmolik@llrlaw.com

Monique Olivier, SBN 190385
DUCKWORTH, PETERS,
LEBOWITZ, OLIVIER, LLP
100 Bush Street, Suite 1800
San Francisco, CA 04104
(415) 433-0333
E-mail: monique@dplolaw.com

Dated: March 17, 2014

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART PLAINTIFFS' "RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES"

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this motion was served by electronic filing on March 17, 2014, on all counsel of record.

                                                     /s/ Shannon Liss-Riordan
                                                     Shannon Liss-Riordan, Esq.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART PLAINTIFFS' "RENEWED EMERGENCY MOTION FOR PROTECTIVE ORDER TO STRIKE ARBITRATION CLAUSES"