UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, *et al.*, | No. C-13-3826 EMC |
| Plaintiffs, | |
| v. | **ORDER APPROVING IN PART DEFENDANT'S CORRECTIVE NOTICES** |
| UBER TECHNOLOGIES, INC., *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs Douglas O' Connor and Thomas Colopy ("Plaintiffs") filed a class-action complaint against Defendants Uber Technologies, Inc. ("Uber") and two of its executives, alleging violations of statutory employee reimbursement and California Business and Profession Code § 17200 *et seq*. and other causes of action for unremitted gratuity. Defendant Uber licenses a software application (the "App") which is used by drivers and riders to facilitate an "on demand" car service. Plaintiffs are former drivers and users of the App.

In late July 2013, Uber began requiring drivers to agree to a Software Licensing and Online Services Agreement (the "Licensing Agreement") that contained an arbitration provision ("Arbitration Provision"). Plaintiffs filed a "Renewed Emergency Motion for Protective Order to Strike Arbitration Clauses," ("Renewed Motion") which sought to strike, or in the alternative, modify the Arbitration Provision. The Court issued an order granting in part the Renewed Motion ("Order I") requiring certain modifications to the Provision, which it affirmed in its order denying Uber's Motion for Reconsideration ("Order II").

Before the Court are Uber's proposed revised agreements and corrective notices submitted pursuant to Orders I and II.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

A.   <u>Background of the Corrective Notices and Revised Licensing Agreement</u>

Uber began promulgating the Licensing Agreement shortly before this action was filed, but after a class action was filed by drivers in Massachusetts, similarly alleging unremitted gratuities. *See Lavitman v. Uber Technologies, Inc*., Mass. Super. Ct. (Suffolk), C.A. No. 12-4490.

The Arbitration Provision required all disputes "to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." Docket No. 36-2 Exh. B (Licensing Agreement ¶ 14.3.i). It also contained, among other things, a "Class Action Waiver," precluding class-action arbitration. *Id*. ¶ 14.3.v. Drivers were given 30 days to opt out of the Arbitration Provision. *Id*. ¶ 14.3.iii. However, opting out required drivers to deliver by hand or "a nationally recognized overnight delivery service" to Uber's general counsel, a letter clearly indicating an intent to opt out. *Id*. Otherwise, drivers were bound by the Provision, prohibiting them from bringing suit against Uber. Uber did not inform drivers of *Lavitman* or this action, nor that they would be precluded from participating in such suits if they did not opt out.

In Order I, the Court ordered:

> Uber drivers must be given clear notice of the arbitration provision, the effect of assenting to arbitration on their participation in this lawsuit, and reasonable means of opting out of the arbitration provision within 30 days of the notice. These requirements shall apply to new drivers (prospectively) and past and current drivers (retrospectively). As for arbitration provisions which have already been distributed after the filing of the complaint in this action (August 16, 2013) to past and current drivers who have approved the arbitration provision without opting out (or for whom approval during the 30 day notice period has begun to run but is still pending), Uber must seek approval of the arbitration provision for these drivers anew, giving them 30 days to accept or opt out from the date of the revised notice.

Docket No. 60 (Order I at 11).

In Order II, the Court ordered the parties to submit proposed corrective notices:

> The parties shall meet and confer within seven (7) days of this order to discuss and stipulate to the appropriate form, content, and procedures of the corrective notices consistent with this order. If the parties are

2

> unable to agree on a proposed corrective notice, they shall notify the Court by submitting their respective proposed notices and procedures for review and decision by the Court within fourteen (14) days of this order.

Docket No. 99 (Order II at 15).

The parties failed to meet and confer. Uber has submitted two proposed corrective notices and a revised Licensing agreement ("Revised Licensing Agreement"), with an addendum. Docket Nos. 100-1, 100-2, 100-3. Plaintiffs have failed to submit any proposed corrective notice or procedure. Plaintiffs responded to Uber's submission and Uber replied. *See* Docket Nos. 103, 105.

On May 15, 2014, Uber sent a letter to the Court stating that a technical glitch resulted in some drivers receiving copies of their prior Licensing Agreement and/or Driver Addendum.

B.  Uber's Proposed Corrective Notices and Licensing Agreement

Uber proposes to send the two corrective notices to "any individuals who have received a Licensing Agreement since August 16, 2013," the date the complaint in this action was filed. Docket No. 100. Uber proposes to send the first corrective notice (Docket No. 100-1) a few days before sending the Revised Licensing Agreement. The first corrective notice explains:

> Because some persons have claimed that they may not have fully understood the consequences of agreeing to the arbitration provision and that the procedure for opting out of the arbitration provision was too burdensome, Uber will soon issue a new Licensing Agreement to provide further opportunity for you to consider whether you wish to resolve disputes with Uber through arbitration or not.

Docket No. 100-1. The notice then informs drivers that there are pending lawsuits against Uber, namely, *Lavitman* and this action, and that agreeing to arbitration will preclude participation in any lawsuit. *Id*.

Uber proposes to send the second corrective notice (Docket No. 100-2) together with the Revised Licensing Agreement. Docket No. 100. The second notice is essentially the same as the first, with modifications that make it consistent as a notice accompanying rather than preceding the Revised Licensing Agreement.

1  Uber proposes to send the Revised Licensing Agreement to "any individuals who have
2  received a Licensing Agreement since August 16, 2013," and to future drivers. Docket No. 100. At
3  the beginning of the document, the Revised Licensing Agreement calls attention to the arbitration
4  provision ("Revised Arbitration Provision") contained within. The Revised Arbitration Provision
5  permits drivers to opt out by sending a letter by U.S. Mail within 30 days of the Agreement to
6  Uber's general counsel. Docket No. 100-3 (Revised Licensing Agreement ¶ 14.3.viii).

### III.   DISCUSSION

#### A.   Compliance with the Court's Orders

The Revised Arbitration Provision and proposed corrective notices generally comply with the Court's requirements set forth in Order I and affirmed in Order II. First, the Revised Licensing Agreement gives clear notice of the arbitration provision, in bold caps at the beginning of the Revised Licensing Agreement. *See* Docket No. 100-3 at 1. Second, the Revised Arbitration Provision gives a reasonable means of opting out – sending a letter by U.S. Mail. *See id.* at 16. (As before, it also allows delivery by hand or by a "nationally recognized delivery service (*e.g.*, UPS, Federal Express, etc.)," but no longer requires the delivery service to be express overnight. *See id.*) Third, Uber will send the Revised Licensing Agreement to everyone who received a licensing agreement after the complaint in this action was filed and to new drivers. Docket No. 100. Drivers who previously agreed to the Arbitration Provision will therefore be given a renewed opportunity to opt out. Finally, the proposed corrective notices inform drivers of the suits pending here and in Massachusetts, and that agreeing to arbitration will preclude participation in and recovery from such lawsuits. Docket Nos. 100-1, 100-2. However, the opt out procedure should be bolded, drivers allowed to opt out by email, and Plaintiffs' counsel's contact information should be provided.

#### B.   Plaintiffs' Objections to Uber's Submissions

Plaintiffs respond to Uber's submissions with the following objections: (1) Opting out by U.S. Mail is "burdensome" and drivers should be allowed to opt out "electronically," for example by having in addition to the button allowing the driver to accept the agreement, another button "allowing the driver to accept the agreement but opt out" or by sending "email to Uber their desire to opt out"; (2) Plaintiffs' counsel's contact information should be included in the notice; and (3)

4

Plaintiffs object to the references to *Lavitman* in the notices. Docket No. 103. Plaintiffs also assert that Uber violated the Court's Orders by sending the prior Licensing Agreement to drivers, as described in Uber's letter of May 15, 2014 to the Court. *Id.* It notes that Uber violated Order I once before, by sending the Licensing Agreement to a driver when he attempted to resume using the App after a suspension. *See* Docket Nos. 80, 81.

First, the Court agrees Uber should allow an electronic means of opting out. Uber should provide an email address to which drivers can send an opt out notice. In response to Plaintiffs' proposed methods of opting out, Uber explained, "Because it does not transmit the agreement via email, there is no way for the driver simply to respond to the communication containing the agreement with an 'opt out' request," and engineering such a mechanism "would require Uber to reprogram its systems and create new functionality." Docket No. 105 at 2. Indeed, the Court previously declined to require Uber "to expend undue resources to engineer" new functionalities. Docket No. 99 (Order II at 15). However, little technology is required simply to provide an email address to which drivers can send an opt out notice (as opposed to a more complicated click option). Moreover, given that the notices and Revised Licensing Agreement are sent electronically, it is only fair that drivers be afforded an opportunity to opt out electronically. Additionally, email opt out will prevent disputes over whether a particular letter was received; tracking issues will be minimized.

Second, Plaintiffs' request that Uber include Plaintiffs' counsel's contact information in the corrective notices is reasonable given the complexity of the choices. *Cf. County of Santa Clara v. Astra USA, Inc.*, No. C 05–03740 WHA, 2010 WL 2724523 (N.D. Cal. July 8, 2010).

Third, Uber may include the reference to *Lavitman* in its corrective notices. Plaintiffs argue that the reference to *Lavitman* is "confusing and misleading" because "this arbitration agreement simply cannot be enforced so as to restrict the potential class in that case," as that case was filed before Uber began including an arbitration clause. Docket No. 103 at 3. The Court fails to see Plaintiffs' point. In any case, whether the Arbitration Provision or the Revised Arbitration Provision is enforceable in *Lavitman* is for the *Lavitman* court to decide. It is less misleading and more accurate to include *Lavitman* when mentioning the pending lawsuits, since there are currently two, not one, actions against Uber by drivers.

Fourth, the opt out subheading "Your Right To Opt Out Of Arbitration" and paragraph describing the opt out procedure appearing at the end of the Revised Licensing Agreement should be bolded.

Finally, Plaintiffs request the Court "to order some relief to drivers on account of Uber's continued failure to ensure that it is abiding by the Court's order." *Id*. at 4. Plaintiffs appear to doubt Uber's explanation that some drivers received copies of their prior Licensing Agreement due to a technical glitch. Plaintiffs suggest, "the Court might allow the drivers who received the improper arbitration clause to be deemed to have opted out of the arbitration agreement." *Id*. While the Court is concerned that this is the second instance of a communication forbidden by the Court, the Court is unwilling to order relief unless Plaintiffs present something more than an expression of suspicion that "Uber contends this distribution was 'unintentional.'" *Id*. at 3.

## IV.    CONCLUSION

Uber shall provide in the notices and in its Revised Licensing Agreement an email address to which opt out notices may be sent and contact information for Plaintiffs' counsel. The paragraph in the Revised Licensing Agreement describing the opt out procedure should be in bold. Uber shall make these changes in addition to the corrections the Court has already made (highlighted) and submit the revised documents for the Court's approval.

IT IS SO ORDERED.

Dated: May 29, 2014

_____
EDWARD M. CHEN
United States District Judge