1   MORGAN, LEWIS & BOCKIUS LLP
    ROBERT JON HENDRICKS (SBN 179751)
2   STEPHEN L. TAEUSCH (SBN 247708)
    CAITLIN V. MAY (SBN 293141)
3   One Market, Spear Street Tower
    San Francisco, CA  94105
4   Tel:  415.442.1000
    Fax:  415.442.1001
5   rhendricks@morganlewis.com
    staeusch@morganlewis.com
6   cmay@morganlewis.com

7   Attorneys for Defendant
    UBER TECHNOLOGIES, INC.

8

9                     UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  DOUGLAS O'CONNOR, THOMAS COLOPY,       Case No. 13-03826-EMC
    DAVID KHAN, MATTHEW MANAHAN,
13  WILSON ROLLE, JR., and WILLIAM         Hon. Edward M. Chen
    ANDERSON, individually and on behalf of all
14  others similarly situated,             DEFENDANT UBER TECHNOLOGIES,
                                           INC.'S NOTICE OF MOTION AND
15                  Plaintiffs,            MOTION OF FOR JUDGMENT ON THE
                                           PLEADINGS; MEMORANDUM OF
16            v.                           POINTS AND AUTHORITIES IN
                                           SUPPORT THEREOF
17  UBER TECHNOLOGIES, INC.,
                                           Fed. R. Civ. P. 12(c)
18                  Defendant.
                                           [Request for Judicial Notice & (Proposed)
19                                         Order Filed Concurrently]

20                                         Date:           August 28, 2014
                                           Time:           1:30 p.m.
21                                         Courtroom:      5

22                                         Compl. Filed:          August 16, 2013
                                           First Am. Compl. Filed:  May 30, 2014
23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO
                                                      DEFENDANT'S MOTION FOR
                                                 JUDGMENT ON THE PLEADINGS
DB2/ 25147627                                          Case No. 13-03826-EMC

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

2       **PLEASE TAKE NOTICE THAT** on August 28, 2014, at 1:30 p.m., or as soon as the

3  matter may be heard before the Honorable Edward M. Chen in Courtroom 5 of the United States

4  District Court for the Northern District of California in the San Francisco Courthouse,

5  Seventeenth Floor, 450 Golden Gate Avenue, San Francisco, California, Defendant Uber

6  Technologies, Inc. ("Uber" or "Defendant") will and hereby does move this Court, under Federal

7  Rule of Civil Procedure 12(c), for an Order granting judgment on the pleadings in Uber's favor as

8  to Plaintiffs' claims set forth in Plaintiffs' First Amended Complaint for (1) Tortious Interference

9  with Prospective Economic Advantage (Count I), (2) Breach of contract (Count II), (3) Statutory

10  Gratuity Violation (Count III), and (4) Violation of Business and Professions Codes Section

11  17200 *et seq*. (Count V), to the extent premised on alleged misrepresentations by Uber, purported

12  tortious interference with prospective business advantage, and breach of implied-in-fact contracts.

13  These claims, as they are set forth in the pleadings, are defective as a matter of law.

14       Uber also will and hereby does move for judgment on the pleadings with respect to the

15  claims of Plaintiffs Rolle, Andersen, and putative class members outside California on the ground

16  that their claims are predicated on an unconstitutional extraterritorial application of California

17  law.

18       Uber's Motion is based upon this Notice of Motion, the accompanying Memorandum of

19  Points and Authorities, the concurrently-filed Request for Judicial Notice, all pleadings and

20  papers on file in this action, and such other argument and evidence as may be presented to this

21  Court prior to or at the hearing on this matter.

22  Dated:  July 9, 2014                    MORGAN, LEWIS & BOCKIUS LLP
                                            ROBERT JON HENDRICKS
23                                          STEPHEN L. TAEUSCH
                                            CAITLIN V. MAY
24

25                                   By    /s/ Robert Jon Hendricks
                                          Robert Jon Hendricks
26                                        Attorneys for Defendant
                                          UBER TECHNOLOGIES, INC.
27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

1

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ........................................................................ 1

I.    PRELIMINARY STATEMENT.................................................................................. 2

II.   STATEMENT OF ISSUES TO BE DECIDED [L.R. 7-4(A)(3)] ..................................... 4

III.  *SUMMARY OF ALLEGATIONS CONTAINED IN PLAINTIFFS' FAC*    5

IV.  ARGUMENT ...................................................................................................... 5

    A.   The Standard Governing A Rule 12(c) Motion For Judgment On The
Pleadings. ................................................................................................... 5

    B.   Plaintiffs Fail To State A UCL Claim Based On Alleged
Misrepresentations Because Plaintiffs Did Not Rely On The
Misrepresentations. ..................................................................................... 6

        1.   Plaintiffs' FAC Contains No Allegation That Plaintiffs Relied Upon
Uber's Alleged Misrepresentations............................................... 6

        2.   Plaintiffs Cannot Plausibly Allege That They Relied Upon The
Alleged Misrepresentations............................................................ 9

    C.   Plaintiffs Fail To State A Claim For Tortious Interference With Prospective
Economic Advantage. ................................................................................ 11

        1.   Plaintiffs Have Not Pled An "Independently Wrongful Act." ................ 11

        2.   Plaintiffs Cannot State A Claim For Tortious Interference With
Prospective Economic Advantage Where There Was No Existing
Relationship With Which To Interfere....................................... 12

        3.   Plaintiffs Have Failed To Adequately Identify Any Economic
Relationship With Which Uber Interfered. ............................... 14

        4.   Plaintiffs' Interference Claim Fails Because The FAC Concedes
That Uber Is Not A Stranger To The Relationships In Question. ............. 15

    D.   Plaintiffs' Claim For Breach Of An Implied Contract Fails Because There
Was An Express Contract Covering The Same Subject Matter.......................... 17

    E.   Plaintiffs Cannot Overcome The Presumption That California Law Cannot
Be Applied To The Claims Of Drivers Outside Of California. ......................... 19

        1.   Plaintiffs Have Alleged No Facts Sufficient To Overcome The
Presumption Against Extraterritorial Application. ..................... 19

        2.   Extraterritorial Application Of California Law Would Produce
Absurd Results. ....................................................................... 23

    F.   Plaintiffs' Statutory Gratuity Violation Is Not A Separate Claim. ....................... 24

V.   CONCLUSION................................................................................................. 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Albrecht v. Lund*
    845 F.2d 193 (9th Cir. 1988)......................................................................................... 5

*Allen v. City of Beverly Hills*
    911 F.2d 367 (9th Cir. 1990)................................................................................. 11, 12

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ..................................................................................................... 5

*Avoy v. Turtle Mountain, LLC*
    No. 5:13-cv-00236-LHK, 2014 WL 587173 (N.D. Cal. Feb. 14, 2014)................................ 10

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1990)......................................................................................... 5

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ..................................................................................................... 5

*Block v. eBay, Inc.*
    747 F.3d 1135 (9th Cir. 2014)............................................................................. 8, 10, 11

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*,
    637 F.3d 1047 (9th Cir. 2011)....................................................................................... 5

*Dworkin v. Hustler Magazine, Inc.*
    867 F.2d 1188 (9th Cir. 1989)....................................................................................... 5

*Edgar v. MITE Corp.*
    457 U.S. 624 (1982) ............................................................................................... 19, 20

*Eldorado Stone, LLC v. Renaissance Stone, Inc.*
    No. 04-cv-2562-JM(CAB), 2006 WL 4569360 (S.D. Cal. Feb. 6, 2006)............................. 14

*Elvig v. Calvin Presbyterian Church*
    375 F.3d 951 (9th Cir. 2004)....................................................................................... 20

*Fabbrini v. City of Dunsmuir*
    544 F. Supp. 2d 1044 (E.D. Cal. 2008)........................................................................ 20

*Freeman v. United States*
    No. 3:13-cv-02421-WHO, 2013 WL 5958144 (N.D. Cal. Nov. 7, 2013) ............................ 24

*Global Network Commc'ns., Inc. v. City of New York*
    458 F.3d 150 (2d Cir. 2006), *aff'd* 562 F.3d 145 (2nd Cir. 2009) ................................. 10, 18

*Healy v. Beer Inst., Inc.*
    491 U.S. 324 (1989) .................................................................................................... 19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*
No. 09-cv-5815-CW, 2010 WL 3619884 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F.
App'x 362 (9th Cir. 2012)..........................................................................................................22

*Jent v. N. Trust Corp.*
No. 13-cv-01684 WBS CKD, 2013 WL 5806024 (E.D. Cal. Oct. 28, 2013)...........................8

*Kaing v. Pultegroup, Inc.*
464 F. App'x 630 (9th Cir. 2011) ...........................................................................................10

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*
271 F.3d 825 (9th Cir. 2001)...................................................................................................16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
319 F. Supp. 2d 1059 (C.D. Cal. 2003)..............................................................................16, 17

*Parrino v. FHP, Inc.*
146 F.3d 699 (9th Cir. 1998)..............................................................................................10, 18

*Rickards v. Canine Eye Registration Found., Inc.*
704 F.2d 1449 (9th Cir. 1983)................................................................................................14

*Sateriale v. R.J. Reynolds Tobacco Co.*
697 F.3d 777 (9th Cir. 2012)....................................................................................................8

*Shaffer v. Heitner*
433 U.S. 186 (1977)................................................................................................................19

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*
983 F. Supp. 1303 (N.D. Cal. 1997) .......................................................................................14

*Soriano v. Countrywide Home Loans, Inc.*
No. 09-cv-02415-LHK, 2011 WL 2600759 (N.D. Cal. June 30, 2011) ...............................10

*Southwest Admrs, Inc. v. Rozay's Transfer*
791 F.2d 769 (9th Cir. 1986)...................................................................................................19

*Swartz v. KPMG LLP*
476 F.3d 756 (9th Cir. 2007)...................................................................................................24

*U.S. Legal Support, Inc. v. Hofioni*
No. 13-cv-01770 LKK AC, 2013 WL 6844756 (E.D. Cal. Dec. 20, 2013) ...........................9

*ViChip Corp. v. Lee*
438 F. Supp. 2d 1087 (N.D. Cal. 2006) .................................................................................15

*Watershed Asset Mgmt., LLC v. Watershed Capital, LLC*
No. 13-cv-03852, 2014 WL 785847 (N.D. Cal. Feb. 25, 2014) ...........................................12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

DB2/ 25147627

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Wright v. Adventures Rolling Cross Country, Inc.*
    No. 12-cv-0982-EMC, 2012 U.S. Dist LEXIS 104378 (N.D. Cal. May 3, 2012) (Chen, J.)..................................................................................................................... 4, 19, 21, 22

*Yakima Valley Mem. Hosp. v. Wash. State Dep't of Health*
    654 F.3d 919 (9th Cir. 2011), *aff'd* 731 F.3d 843 (9th Cir. 2013)........................................ 20

*ZL Techs., Inc. v. Gartner, Inc.*
    No. 09-cv-02393 JF(RS), 2009 WL 3706821, at *11, *13 n.13 (N.D. Cal. Nov. 4, 2009) ................................................................................................................................. 9

CALIFORNIA CASES

*Californians for Disability Rights v. Mervyn's, LLC*
    39 Cal. 4th 223 (2006) ...................................................................................................... 6

*Durell v. Sharp Healthcare*
    183 Cal. App. 4th 1350 (2010)........................................................................................ 7, 8

*Eucasia Schools Worldwide v. DW August Co.*
    218 Cal. App. 4th 176 (2013)........................................................................................... 24

*In re Tobacco II Cases*
    46 Cal. 4th 298 (2009) ............................................................................................... 6,7,8,9

*Jenkins v. JP Morgan Chase Bank, N.A.*
    216 Cal. App. 4th 497 (2013)........................................................................................... 11

*Kasparian v. County of Los Angeles*
    38 Cal. App. 4th 242 (1995)............................................................................................. 15

*Kwikset Corp. v. Superior Court*
    51 Cal. 4th 310 (2011) ...................................................................................................... 7

*Roth v. Rhodes*
    25 Cal. App. 4th 530 (1994).............................................................................................. 12

*Salma v. Capon*
    161 Cal. App. 4th 1275 (2008).......................................................................................... 12

*US Ecology, Inc. v. State of Cal.*
    92 Cal. App. 4th 113 (2001)............................................................................................. 18

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*
    42 Cal. App. 4th 507 (1996)......................................................................................... 13, 14

OTHER CASES

*Wieber v. FedEx Ground Package Sys, Inc.*
    220 P.3d 68 (Or. Ct. App. 2009) ....................................................................................... 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**CALIFORNIA STATUTES**

Cal. Lab. Code
§ 351 ............................................................................................................ 4, 22, 24
§ 2802 ....................................................................................................................... 22

**OTHER STATUTES**

Seattle Municipal Code
§ 6.310.100, *et seq.* .................................................................................................. 23
§ 11.10.020, *et seq.* .................................................................................................. 24

**RULES AND REGULATIONS**

Fed. R. Civ. P.
12(b)(6) ................................................................................................................. 5, 10
12(c) .......................................................................................................................... 5
Rule 9(b) ..................................................................................................................... 9

Fed. R. Evid. 201 ............................................................................................... 18, 23

L.R. 7-4(A)(3) ............................................................................................................ 4

**OTHER AUTHORITIES**

Commerce Clause of the United States Constitution ............................................ 4, 19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

DB2/ 25147627

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      PRELIMINARY STATEMENT**

The First Amended Complaint ("FAC") filed by Plaintiffs Douglas O'Connor, Thomas Colopy, David Khan, Matthew Manahan, Wilson Rolle, Jr., and William Anderson ("Plaintiffs") asserts the following five claims for relief:  (1) Tortious Interference with Prospective Economic Advantage; (2) Breach of Implied-In-Fact Contract (on a third party beneficiary theory); (3) Statutory Gratuity Violation; (4) Independent Contractor Misclassification and Expense Reimbursement Violation; and (5) Unlawful and Fraudulent Business Practices in Violation California Business & Professions Code Section 17200 *et seq*. (the "UCL").  *See* ECF No. 107.[1] Having answered the FAC, Uber now seeks and is entitled to judgment on the pleadings with respect to several claims.

*First*, Plaintiffs' fifth claim for relief under the UCL based upon alleged misrepresentations by Uber must be dismissed as a matter of law.  Since the passage of Proposition 64 in 2004, as uniformly recognized by the California Supreme Court, the Ninth Circuit, and other federal district courts, to state a claim under the UCL based upon an alleged misrepresentation, the plaintiff must allege that he or she actually relied on the allegedly misleading communications.  Plaintiffs' UCL claim fails because Plaintiffs do not allege that *they* relied on any purported misleading advertising by Uber.  Plaintiffs' entire theory for this claim has been and remains predicated not on their own reliance on that advertising, but on the allegation that unspecified Uber customers purportedly did not provide tips as a result of the allegedly misleading advertising.  *See, e.g.,* FAC at 2:9-13 ("…based on Uber's *communications to customers* that gratuity is included in the price of its services and so they do not need to tip, few if any customers leave tips for the drivers….drivers do not receive the tips...that they would otherwise receive were it not for *Uber's communications to customers*….") (emphasis added); *see*

---

[1]      Plaintiffs Thomas Colopy and Douglas O'Connor filed their Original Complaint in this matter on August 16, 2013.  *See* Complaint, Dkt. No. 1.  On September 25, 2013, Defendant Uber Technologies, Inc. ("Uber" or "Defendant"), along with the then-individually named defendants, filed a Motion to Dismiss, which the Court granted in part and denied in part.  *See* Dkt. Nos. 39, 58.  Plaintiffs filed the FAC on May 30, 2014.  *See* Dkt. No. 107.  Uber filed its Answer to the FAC on June 16, 2014.  *See* Dkt. No. 110.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

2

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

*also id*. at 2:6, 3:3, 4:20, ¶ 23 ("Uber has prevented its drivers from receiving tips from customers based upon its deceptive and misleading *communications to customers*") (emphasis added). Because Plaintiffs have not pleaded that they themselves relied on any purportedly misleading communications by Uber, their UCL claim fails as a matter of law and should be dismissed.

*Second*, Plaintiffs' first claim for relief for Tortious Interference with Prospective Economic Advantage must also be dismissed. As this Court has previously acknowledged, an essential element of this tort is that an "independently wrongful act" disrupted the purported relationship. *See* ECF No. 58 at 25:16–27. Plaintiffs have not adequately alleged such conduct. To the extent Plaintiffs rely on their assertions of allegedly fraudulent business practices under the UCL, those allegations cannot save this claim for the reasons already stated above — Plaintiffs cannot assert such an UCL claim as a matter of law.[2] Even if Plaintiffs had properly alleged an "independently wrongful act," Plaintiffs' interference claim fails for the additional reasons that (1) they do not identify any *existing* relationship with which Uber allegedly interfered and (2) they concede that Uber is not a stranger to their relationships with "Uber customers" and Uber is thus privileged to "interfere" with those relationships.

*Third*, Plaintiffs' second claim for relief for breach of implied contract on a third party beneficiary theory fails as a matter of law because there is an express contract governing the same subject matter. As this Court has already acknowledged, one cannot state a claim based upon an implied contract claim in such circumstances. *See* Dkt. No. 58 at 16:20–22.

*Fourth*, the Court should not permit Plaintiffs to assert California statutory and common law claims on behalf of non-California residents based upon conduct wholly outside of California's borders.[3] As this Court has previously held, "[w]hen a law contains geographical

---

[2]   While the Court previously held that Plaintiffs' "allegations of misrepresentation and deception…are sufficient to state an independent unlawful act for purposes of the claim for tortious interference with prospective business advantage," that conclusion was based on the related conclusion that "the Complaint [could] fairly be read as asserting a claim for fraudulent business practices under" the UCL. ECF No. 58 at 25:21–27. For the reasons stated, the FAC fails to state such a claim. Notably, the issue of the effect of Proposition 64 on stating a claim and Plaintiffs failure to plead "actual reliance" was not previously raised or considered by this Court.

[3]   Plaintiffs Rolle and Anderson are expressly alleged to reside in and to have used the Uber App in Georgia and Washington, respectively. *See* FAC ¶¶ 8, 9.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

3

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

1    limitations on its application, courts will not apply it to parties falling outside those limitations,

2    *even if* the parties stipulate that the law should apply." *Wright v. Adventures Rolling Cross*

3    *Country, Inc.*, No. 12-cv-0982-EMC, 2012 U.S. Dist LEXIS 104378, at *13 (N.D. Cal. May 3,

4    2012) (Chen, J.) (quoting *Gravquick A/S v. Trimble Navigation Int'l*, 323 F.3d 1219, 1223 (9th

5    Cir. 2003) (emphasis original).  Under the present circumstances, application of California law to

6    Rolle, Anderson and the non-California putative class members would constitute an

7    impermissible extraterritorial application of law in violation of the Commerce Clause of the

8    United States Constitution.

9            *Finally*, Plaintiffs' third claim for relief for violation of California Labor Code Section

10   351 must be dismissed for the same reasons previously held by the Court — there is no private

11   right of action under Section 351.  *See* Dkt. No. 58 at 10:13-14.[4]

12           As set forth in further detail below, Plaintiffs have not met—and cannot meet—their

13   pleading burden, and Uber is entitled to judgment on the pleadings.

14   **II.      STATEMENT OF ISSUES TO BE DECIDED [L.R. 7-4(A)(3)]**

15           The following issues are raised by this motion:

16           1.      Whether Plaintiffs' first claim for relief fails to set forth sufficient facts upon

17   which relief can be granted.

18           2.      Whether Plaintiffs' second claim for relief fails to set forth sufficient facts upon

19   which relief can be granted.

20           3.      Whether Plaintiffs' third claim for relief fails to set forth sufficient facts upon

21   which relief can be granted.

22           4.      Whether Plaintiffs' fifth claim for relief fails to set forth sufficient facts upon

23   which relief can be granted.

24           5.      Whether Plaintiffs Rolle, Andersen, and absent putative class members can

25   extraterritorially apply California law to assert their third, fourth, and fifth claims for relief.

26

27           [4]  Plaintiffs' fifth claim for relief, for alleged violation of the UCL, specifically includes a
     reference to Labor Code Section 351.  Defendant therefore understands that Plaintiffs are
28   separately asserting a UCL claim predicated on Uber's alleged violation of Section 351.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

4

### III.   SUMMARY OF ALLEGATIONS CONTAINED IN PLAINTIFFS' FAC

Plaintiffs allege that Uber provides customers with the ability to utilize a mobile phone application to hail car service drivers.  FAC ¶ 1.  Plaintiffs further allege that Uber advertises to its customers "that a gratuity is included in the total cost of the car service and that there is no need to tip the driver."  *Id.* at ¶ 16.  Plaintiffs contend that they are car service drivers who, contrary to the representations made by Uber, do not receive the total proceeds of any gratuity paid by "Uber customers."  *Id.* at ¶¶ 17, 38.

### IV.   ARGUMENT

#### A.   The Standard Governing A Rule 12(c) Motion For Judgment On The Pleadings.

A party in federal court may move for judgment on the pleadings after the pleadings close.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings tests the legal sufficiency of the claims asserted in the complaint, and the standard is essentially the same as that for a Rule 12(b)(6) motion.  *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  *See also Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011) ("Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and . . . 'the same standard of review' applies to motions brought under either rule.") (citations omitted).  Dismissal is proper where, as here, there is a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A complaint can survive a challenge under Rule 12(b)(6) or Rule 12(c) only where the plaintiff alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To determine the sufficiency of a complaint, courts should first strip away conclusory allegations and should then determine whether any "well-pleaded, nonconclusory factual allegation[s]" give rise to a plausible claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).  Legally conclusory statements, not supported by actual factual allegations, need not be accepted as true.  *Id.* at 678-79.  Where the deficiencies in a claim cannot be cured by amendment, the court may dismiss the claim *without* leave to amend.  *Albrecht v.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

5

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

1    *Lund*, 845 F.2d 193, 195 (9th Cir. 1988).

2          **B.**      **Plaintiffs Fail To State A UCL Claim Based On Alleged Misrepresentations**
                **Because Plaintiffs Did Not Rely On The Misrepresentations.**

3

4               1.      Plaintiffs' FAC Contains No Allegation That Plaintiffs Relied Upon Uber's
                  Alleged Misrepresentations.

5            Prior the passage of Proposition 64 in 2004, the UCL "authorized 'any person acting for

6    the interests of itself, its members or the general public' to file a civil action for relief."

7    *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006) (citation

8    omitted). "Standing to bring such an action did not depend on a showing of injury or damage."

9    *Id.* "After Proposition 64, . . . a private person has standing to sue only if he or she 'has suffered

10   injury in fact and has lost money or property as a result of such unfair competition.'" *Id.* at 227

11   (quoting Cal. Bus. & Prof. Code § 17204). "In Proposition 64, as stated in the measure's

12   preamble, the voters found and declared that the UCL's broad grant of standing had encouraged

13   'frivolous unfair competition lawsuits that clog our courts, cost taxpayers' and 'threaten the

14   survival of small businesses....'" *In re Tobacco II Cases*, 46 Cal. 4th 298, 316 (2009). The intent

15   of Proposition 64 was to preclude such lawsuits. *Id.*

16           In *In re Tobacco II*, the California Supreme Court addressed "the meaning of the phrase

17   'as a result of' in section 17204's requirement that a private enforcement action under the UCL

18   can only be brought by 'a person who has suffered injury in fact and has lost money or property

19   as a result of the unfair competition.'" *Id.* at 324–25 (quoting Cal. Bus. & Prof. Code § 17204).

20   The plaintiffs in *In re Tobacco II* alleged that "the tobacco industry defendants violated the UCL

21   by conducting a decades-long campaign of deceptive advertising and misleading statements about

22   the addictive nature of nicotine and the relationship between tobacco use and disease." *Id.* at 305.

23   The defendants argued that the named plaintiffs lacked standing under the UCL because "the

24   phrase 'as a result of' introduced a tort causation element into UCL actions." *Id.* at 325. ("In the

25   context of this case, this would appear to require a showing of actual reliance on the deceptive

26   advertising and misrepresentations as a result of which the loss of money or property was

27   sustained."). The plaintiffs, on the other hand, "maintain[ed] that the new standing requirement

28   did not impose any type of tort causation requirement." *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

6

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

1    Although the Supreme Court noted that "before Proposition 64, California courts have

2    repeatedly held that relief under the UCL is available without individualized proof of deception,

3    reliance and injury," it ultimately adopted the defendants' argument, explaining:

4          [T]here is no doubt that reliance is the causal mechanism of fraud. Additionally,
            because it is clear that the overriding purpose of Proposition 64 was to impose
5          limits on private enforcement actions under the UCL, we must construe the phrase
            "as a result of" in light of this intention to limit such actions. Therefore, we
6          conclude that this language imposes an actual reliance requirement on plaintiffs
            prosecuting a private enforcement action under the UCL's fraud prong.
7

8    *Id.* at 326 (citations omitted).  The Supreme Court further held that "a class representative

9    proceeding on a claim of misrepresentation as the basis of his or her UCL action must

10   demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance

11   with well-settled principles regarding the element of reliance in ordinary fraud actions."  *Id.* at

12   306; *accord Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327, fn. 10 (2011) (a "plaintiff

13   must allege he or she was motivated to act or refrain from action based on the truth or falsity of a

14   defendant's statement.").  The requirement of actual reliance applies both to UCL claims brought

15   under the "fraudulent" prong and to claims brought under the "unlawful" prong where the

16   predicate unlawful conduct is based on alleged misrepresentations.  *See Durell v. Sharp*

17   *Healthcare*, 183 Cal. App. 4th 1350, 1355 (2010).

18   Multiple federal and state courts have applied *In re Tobacco II*'s holding that a plaintiff

19   cannot state a claim under the UCL based upon alleged misrepresentations where the plaintiff did

20   not actually rely on those misrepresentations.  In *Durell*, for example, the plaintiff alleged that the

21   defendant hospital's website represented that the hospital offered quality and cost-effective care

22   to patients but that the "these promises are false and intended to induce patients to seek treatment

23   at [defendant]'s facilities."  183 Cal. App. 4th at 1361.  The Court of Appeal affirmed the lower

24   court's dismissal of the plaintiff's UCL claim on that theory because the plaintiff did not allege

25   that he actually relied on those alleged misrepresentations, explaining:

26         The SAC does not allege [plaintiff] relied on either [defendant]'s Web site
           representations or on the language in the Agreement for Services in going to Sharp
27         Grossmont Hospital or in seeking or accepting services once he was transported
           there. Indeed, the SAC does not allege [plaintiff] ever visited [defendant]'s Web
28         site or even that he ever read the Agreement for Services. The SAC merely alleges

that as a 'proximate result of [defendant]'s unlawful business practices,' [defendant] and the proposed class 'have suffered economic damages in that they are obligated to pay an unreasonable, unfair and unconscionable debt.' <u>This is the type of 'factual nexus' causation the court rejected in *Tobacco II* in the context of claimed misrepresentation and deception.</u>

*Id.* at 1363 (emphasis added).

The Ninth Circuit reached a similar conclusion in *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777 (9th Cir. 2012). The plaintiffs in *Sateriale* alleged that the defendant had violated the UCL by announcing that it would terminate its "Camel Cash" program in March of 2007, even though defendant in fact intended to stop accepting "Camel Cash" in October of 2006. The Ninth Circuit affirmed the trial court's order dismissing that claim because the plaintiffs had failed to plead that they actually relied on the alleged misrepresentations:

Because the plaintiffs' UCL claim sounds in fraud, [plaintiffs] are required to prove actual reliance on the allegedly deceptive or misleading statements, and that the misrepresentation was an immediate cause of their injury-producing conduct. The complaint does not satisfy these requirements. In particular, the plaintiffs do not allege reliance. They do not allege that they purchased additional Camel cigarettes in reliance on the October 1 announcement. They also do not allege that they delayed redeeming their saved Camel Cash certificates in reliance on the announcement.

*Id.* at 793 (citations omitted); *accord Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014).

In *Jent v. N. Trust Corp.*, No. 13-cv-01684 WBS CKD, 2013 WL 5806024, at \*4 (E.D. Cal. Oct. 28, 2013), the court applied *In re Tobacco II* and dismissed a misrepresentation-based UCL claim where the plaintiffs alleged that they were injured when third parties relied on the defendant's alleged misrepresentations. Specifically, the plaintiffs alleged that certain third-party financial institutions from which plaintiffs sought an extension of credit relied on certain misrepresentations and, as a result, withdrew their offers of credit to plaintiffs, thereby harming them. *Id.* at \*1–4. The court held that "allegations of actual reliance are absent" under such circumstances, because the plaintiffs had not alleged that <u>they</u> had actually relied on the alleged misrepresentations. *Id.* at \*1-4. Judge Jeremy Fogel of this district dismissed a UCL claim with prejudice on the same grounds, finding that the plaintiff could not maintain the UCL claim where "[Plaintiff] allege[d] not its own reliance upon the Alleged Defamatory Statements but that of third parties—potential [] customers [of Plaintiff]—resulting in a loss of profits and injury to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

8

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

1    [Plaintiff]." *ZL Techs., Inc. v. Gartner, Inc.*, No. 09-cv-02393 JF(RS), 2009 WL 3706821, at \*11,

2    \*13 n.13 (N.D. Cal. Nov. 4, 2009) (emphasis added); *see also U.S. Legal Support, Inc. v. Hofioni*,

3    No. 13-cv-01770 LKK AC, 2013 WL 6844756, at \*15 (E.D. Cal. Dec. 20, 2013) ("As Plaintiff is

4    not a consumer of Defendants' services, it cannot demonstrate reliance on Defendants' fraudulent

5    statements in order to establish standing under the UCL's fraud prong.").

6            Here, Plaintiffs' UCL claim is based in part on their theory that that they suffered a "loss

7    of tips that customers did not pay to the drivers due to Defendant's deceptive representations."

8    FAC ¶ 42.  Plaintiffs contend that they were deprived of tips because certain statements on Uber's

9    website and in its marketing materials led the customers to believe that they were not expected or

10   required to pay Plaintiffs a gratuity.  The FAC contains no allegation that <u>Plaintiffs themselves</u>

11   relied on any alleged misrepresentations by Uber.  While Plaintiffs allege an injury flowing

12   indirectly from unspecified Uber customers' reliance on alleged misrepresentations by Uber, that

13   sort of "factual nexus" theory was explicitly rejected in *In re Tobacco II*.  *In re Tobacco II Cases*,

14   46 Cal. 4th at 326.  Because Plaintiffs have not alleged that <u>they</u> relied on the alleged

15   misrepresentations, Uber is entitled to judgment on the pleadings and Plaintiffs' UCL claim, to

16   the extent predicated on alleged misrepresentations by Uber, should be dismissed with prejudice.[5]

17                      2.    <u>Plaintiffs Cannot Plausibly Allege That They Relied Upon The Alleged</u>
                                <u>Misrepresentations.</u>
18

19           The above-discussed defect in Plaintiffs' UCL claim is incurable because Plaintiffs cannot

20   plausibly allege that they reasonably relied on the alleged misrepresentations by Uber or that

21   those alleged misrepresentations were material.  As this Court previously explained in its Order

22   on Uber's earlier Motion to Dismiss, "the Licensing Agreement [between Uber and Plaintiffs]

23   covers how [the] fare will be collected and remitted to the transportation companies (minus

24   Uber's fee deduction)."  ECF No. 58 at 17:9–11; *see also id*. at 17:4-7 ("[T]he amount of

25   payment that Uber owes drivers after a customer pays Uber for a ride. . . is clearly covered by the

26   Licensing Agreement, which describes how fares will be calculated, that fares will be processed

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28      [5]   Notably, Plaintiffs have not even alleged with Rule 9(b) specificity that the *customers* relied
        on Uber's alleged misrepresentations.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

9

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

1    through a 'third party payment processor,' that Uber will retain a percentage of the fare as its fee,

2    and that the remainder of the fare will be remitted to the driver's Transportation Company.").  As

3    this Court has already noted, nowhere does the Licensing Agreement contemplate that Uber will

4    remit a gratuity to the driver.  *Id.; see also* Request for Judicial Notice ("RJN"), Ex. A.[6]  As a

5    result, Plaintiffs cannot plausibly allege that they acted in reliance on Uber's advertisements "on

6    its website, and in marketing materials, that a gratuity is included and there is no need to tip the

7    driver."  FAC ¶ 16.  That is because the Licensing Agreement — which "covers the handling of

8    the fare," ECF No. 58 at 17:12 — does not contemplate that Uber would separately remit

9    gratuities to them.  Because the meaning Plaintiffs ascribe to the alleged misrepresentations is

10   undermined by the clear terms of the Licensing Agreement, Plaintiffs could not reasonably have

11   relied on the misrepresentations they allege.

12       Courts frequently hold that a plaintiff cannot show reliance where, as here, the plaintiff

13   knew, or should have known, that the alleged misrepresentation is inaccurate.  *See, e.g., Kaing v.*

14   *Pultegroup, Inc.*, 464 F. App'x 630, 632 (9th Cir. 2011) ("[Plaintiff] already knew that the

15   incentive payment was illusory before closing and had reason to know the actual market value of

16   the house despite the allegedly inflated appraisal.  [Plaintiff] cannot show any injury or reliance

17   on these facts."); *Avoy v. Turtle Mountain, LLC*, No. 5:13-cv-00236-LHK, 2014 WL 587173, at

18   *5–6 (N.D. Cal. Feb. 14, 2014); *Soriano v. Countrywide Home Loans, Inc.*, No. 09-cv-02415-

19   LHK, 2011 WL 2600759, at *5 (N.D. Cal. June 30, 2011).  In *Block*, for example, the plaintiff

20   alleged that eBay violated the UCL because its User Agreement contained misrepresentations

21   suggesting that eBay was "acting as merely a neutral venue that is accurately transmitting bids for

22   bidders to the seller," when, in fact, it is not neutral and eBay's Automatic Bidding System

23

24       [6] Although the Licensing Agreement is not attached to the FAC, a Court can consider
     documents attached to a motion for judgment on the pleadings when they are necessary to a
25   plaintiff's claims.  This principle prevents plaintiffs from "deliberately omitting references to
     documents upon which their claims are based."  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.
26   1998); *see also Global Network Commc'ns., Inc. v. City of New York*, 458 F.3d 150, 156-57 (2d
     Cir. 2006), *aff'd* 562 F.3d 145 (2nd Cir. 2009) (noting such a rule "prevents plaintiffs from
27   generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting").  Here, the
     Licensing Agreement, with which the Court is now well familiar, appears to be relied upon, and it
28   is necessary to Plaintiffs' claims as it details the terms and conditions governing the parties'
     relationship.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

10

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

"enters bids on behalf of the bidder, at predetermined increments above the current bid, until the user wins the auction or would need to exceed his maximum." 747 F.3d at 1137, 1140.  The Ninth Circuit rejected that theory, explaining:

> According to [plaintiff], he "reasonably relied on [these] representations and assurances." [Plaintiff] does not allege reliance with greater specificity, but argues that eBay's misrepresentations were material, thus reliance can be presumed.

> [Plaintiff]'s argument fails: he could not have relied on the alleged misrepresentations, nor would they have been material. As the complaint concedes, the Automatic Bidding system is described on eBay's website. Further, in a version of the pertinent page attached to the complaint, eBay makes clear that the Automatic Bidding system will be used in *all* traditional auctions. [Plaintiff] does not allege that, at the time he executed the User Agreement, these disclosures were unavailable, or that he was unaware of the Automatic Bidding system. Thus, even if the User Agreement had represented that eBay would directly transmit bids to sellers, [Plaintiff] has not plausibly alleged that he relied on this representation. Moreover, since a reasonable person in [Plaintiff]'s position could not have relied on such a representation, it would not have been material. [Plaintiff] fails to state a claim under the UCL.

*Id.*  The same result is warranted here:  because Plaintiffs have not alleged, and cannot allege, that they relied on the misrepresentations they allege, the Court should dismiss their UCL claim with prejudice to the extent it is based on allegedly deceptive statements by Uber.  *See Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (leave to amend should be denied where further amendment would have been futile).[7]

## C.   Plaintiffs Fail To State A Claim For Tortious Interference With Prospective Economic Advantage.

### 1.   Plaintiffs Have Not Pled An "Independently Wrongful Act."

As this Court has already acknowledged, an element of the interference with prospective

---

[7]  Dismissal with prejudice of the UCL claim is warranted for the additional reason that, even if Plaintiffs were to allege that they relied on Uber's alleged misrepresentations, they cannot plausibly allege that such reliance actually caused them harm.  Plaintiffs' theory is that they do not receive gratuities to which they believe they were entitled, (*see, e.g.*, FAC ¶ 1), yet Plaintiffs' reliance on any misrepresentations by Uber could not be the cause of that alleged injury.  As Plaintiffs cannot plead that reliance on their part caused them harm, amendment of their UCL claim premised on purported misrepresentations would be futile and the claim should be dismissed with prejudice.  *See Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 522–23 (2013) (dismissal with prejudice of UCL claim appropriate where Plaintiff could not amend pleading to show a causal link between her economic injury and the defendant's allegedly wrongful actions).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

11

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

economic advantage tort is that "an 'independently wrongful act' disrupted the relationship." ECF No. 58 at 25:16–18. "Such an act must be 'proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.'" *Id.* at 25:18–19 (quoting *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152 (2004)). The Court previously held that Plaintiffs satisfied this pleading requirement because Plaintiffs' "allegations of misrepresentation and deceptions — which the Complaint can be fairly read as asserting a claim for fraudulent business practices under section 17200 of the California Business and Professions Code — are sufficient to state an independent unlawful act for purposes of the claim . . . ." ECF No. 58 at 25:23–24. However, if the Court now agrees with Uber that Plaintiffs do not—and cannot—state a claim for fraudulent business practices under the UCL, the Court's earlier holding would no longer apply and judgment on the pleadings would be appropriate as to Plaintiffs' interference claim for their failure to allege an "independently wrongful act." *Watershed Asset Mgmt., LLC v. Watershed Capital, LLC*, No. 13-cv-03852, 2014 WL 785847, at *3 (N.D. Cal. Feb. 25, 2014) ("[A] tortious interference [with] prospective economic advantage claim further requires an 'independently wrongful act' other than the act of interference itself.").

> 2.   <u>Plaintiffs Cannot State A Claim For Tortious Interference With Prospective Economic Advantage Where There Was No Existing Relationship With Which To Interfere.</u>

"[A]n essential element of the tort of intentional interference with prospective business advantage is the existence of a business relationship with which the tortfeasor interfered." *Roth v. Rhodes*, 25 Cal. App. 4th 530, 546 (1994) (affirming judgment on the pleadings with respect to a tortious interference claim where the defendants were alleged to have interfered with plaintiff's relationship with future patients, rather than current ones). "Although this need not be a contractual relationship, <u>an existing relationship is required</u>." *Id.* (emphasis added)*; accord Salma v. Capon*, 161 Cal. App. 4th 1275, 1291 (2008).

The term "prospective" refers to the promise of future economic advantage within an existing relationship, <u>not</u> to prospective relationships. As a California Court of Appeal explained:

> [T]he interference tort applies to interference with *existing* noncontractual relations which hold the promise of future economic advantage. In other words, it protects the expectation that the relationship eventually will yield the desired benefit, not

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

12

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

necessarily the more speculative expectation that a potentially beneficial relationship will eventually arise. . . . This view gains some additional support from the usual formulation of the elements of the tort itself requiring an economic relationship between the plaintiff and a third party, knowledge of the *existence* of the relationship on the part of the defendant and intentional acts by the defendant designed to disrupt the relationship, and actual disruption.  These requirements presuppose the relationship existed at the time of the defendant's allegedly tortious acts lest liability be imposed for actually and intentionally disrupting a relationship which has yet to arise.

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 524–26 (1996) (citations omitted) (emphasis original).

Here, Plaintiffs contend that Uber is liable for tortious interference with prospective economic advantage because "[Uber's] conduct in informing Uber customers that there is no need to tip their drivers also constitutes unlawful tortious interference with the prospective economic advantageous [sic] relationship that exists between the drivers and the customers."  FAC ¶ 38.  However, such allegations are insufficient to state a claim, because Plaintiffs must themselves have had an *existing* economic relationship with the passengers at the time Uber made the alleged statements, not, as Plaintiffs allege, a "prospective economic advantageous relationship."  Indeed, Plaintiffs would have to allege facts sufficient to show that, at the time Uber made the alleged statements, Plaintiffs were already in relationships with the passengers and those relationships were disrupted by the alleged statements.  Plaintiffs have utterly failed to do so here.  Accordingly, Plaintiffs' tortious interference claim should be dismissed with prejudice.

Dismissal of the interference claim would be consistent with the holding in *Westside Ctr. Assocs.,* where the plaintiff "postulat[ed] a view of the tort [of prospective economic advantage] which protects [plaintiff]'s economic relationship with the entire market of all possible but as yet unidentified buyers for its property."  42 Cal. App. 4th at 527.  The *Westside* court rejected that view and determined that the plaintiff had not stated a valid claim, explaining that the plaintiff's theory "fails to provide any factual basis upon which to determine whether the plaintiff was likely to have actually received the expected benefit." 42 Cal. App. 4th at 527 ("Without an existing relationship with an identifiable buyer, [plaintiff]'s expectation of a future sale was at most a hope for an economic relationship and a desire for future benefit.") (citation omitted).  *See also Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1456 (9th Cir. 1983) (affirming

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

13

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

1   directed verdict where there was no evidence that the purportedly tortious activity "disrupted an

2   ongoing economic relationship between appellants and third parties"); *Silicon Knights, Inc. v.*

3   *Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1311–12 (N.D. Cal. 1997) (dismissing tortious

4   interference claim as "speculative" where no "actual" economic relationship existed).

5                   3.      Plaintiffs Have Failed To Adequately Identify Any Economic Relationship
                            With Which Uber Interfered.
6

7           In order to state a valid claim for tortious interference with prospective economic

8   advantage, a plaintiff must also adequately identify the relationship and economic interests with

9   which the defendant supposedly interfered—it cannot simply rely on vague allegations about

10  economic relationships with unidentified customers. *See Westside Ctr. Assocs.*, 42 Cal. App. 4th

11  at 520–28 (affirming trial court's order limiting plaintiff's offer of proof as to its tortious

12  interference claim to its relationship with a known and identified party, not to a broader range of

13  unidentified potential buyers).

14          Indeed, in a similar case in the Southern District of California, the court dismissed a

15  tortious interference claim where the relationships and economic interests purportedly interfered

16  with were inadequately identified, explaining:

17          With respect to interference with potential customers, the court concludes that
            [plaintiff] again fails to sufficiently identify the economic interests allegedly
18          harmed by [defendant]. [Plaintiff] alleges that [Defendant] interfered with
            unidentified "actual and prospective customers, purchasers, and users of its
19          manufactured stone." (SACC 132). As set forth in previous motions, [Plaintiff]'s
            potential customers include architects, designers, contractors, and home owners.
20          Such a broad class of allegedly injured individuals consists of potentially hundreds
            if not thousands of affected customers and fails to provide Counterclaimants with
21          adequate notice of the claims asserted against them. . . . The SACC identifies
            speculative economic relationships that cannot support a tortious interference with
22          economic relations claim. Accordingly, the court grants the motion to dismiss the
            tortious interference claims based upon interference with potential customers.
23
            *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, No. 04-cv-2562-JM(CAB), 2006 WL
24
     4569360, at *4 (S.D. Cal. Feb. 6, 2006). Here, Plaintiffs' vague allegation that Uber interfered
25
     with "the prospective economic [sic] advantageous relationship that exists between the drivers
26
     and the customers," (FAC ¶ 38), is similarly insufficient to satisfy the federal pleading standard,
27
     as it fails to put Uber on notice of the particular economic relationships with which it supposedly
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

14

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

interfered.  That is, *inter alia*, the FAC does not notify Uber of which passengers assumed that Uber would pay gratuities to which drivers, or at what rate those gratuities would be paid. Judgment should therefore be entered as to the entirety of Uber's tortious interference claim.

4.   Plaintiffs' Interference Claim Fails Because The FAC Concedes That Uber Is Not A Stranger To The Relationships In Question.

Plaintiffs' interference claim also fails because Uber is privileged to interfere with the alleged relationships upon which Plaintiffs attempt to premise their claim.  This is because "California law has long recognized that the core of intentional interference business torts is interference with an economic relationship by a third-party *stranger* to that relationship."  *ViChip Corp. v. Lee*, 438 F. Supp. 2d 1087, 1097 (N.D. Cal. 2006) (granting summary judgment on intentional interference claim) (emphasis in original).  "Accordingly, an entity with a direct interest or involvement in that relationship is not usually liable for harm caused by pursuit of its interests."  *Id.*  Indeed, California common law "bar[s] prosecution of the tort of interference with prospective economic advantage against a party to the relationship from which the plaintiff's anticipated economic advantage would arise."  *Kasparian v. County of Los Angeles*, 38 Cal. App. 4th 242, 262 (1995).

In the FAC, Plaintiffs contend both that Uber's alleged misrepresentations interfered with future economic relationships between Plaintiffs and "Uber customers" and that Uber's "fail[ure] to remit the total proceeds of gratuities to the drivers" interfered with Plaintiffs' relationship with the passengers.  FAC ¶ 38.  However, as Plaintiffs' own allegations make clear, it is undisputed that Plaintiffs and the "*Uber* customers" would have had no relationship with one another but for Uber, which "provides car service [to the passengers] in cities throughout the country via an on demand dispatch system" and allows the customers "to hail" Plaintiffs "on a mobile phone application."  FAC ¶¶ 13–14.  That is, Uber creates and facilitates any alleged economic relationship that exists between Plaintiffs and the passengers and, as Plaintiffs concede, even distributes the payments from the passengers to Plaintiffs, minus Uber's agreed-upon fee.  In such a context, Uber cannot be said to be a "stranger" to the alleged economic relationship between Plaintiffs and the passengers, and, therefore, cannot be held liable for tortious interference with

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

15

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

1   such relationships.  *See Wieber v. FedEx Ground Package Sys, Inc.*, 220 P.3d 68, 76–77 (Or. Ct.

2   App. 2009) (FedEx could not be liable for tortious interference with relationship between FedEx

3   customers and contractors who picked up and delivered packages on behalf of FedEx because that

4   relationship would not have existed without FedEx's involvement).

5        The Ninth Circuit was confronted with a similar situation in *Marin Tug & Barge, Inc. v.*

6   *Westport Petroleum, Inc.*, 271 F.3d 825 (9th Cir. 2001), which arose from a dispute between Shell

7   Oil and Marin Tug, a fuel-delivery company, regarding the distribution of fuel to third parties.

8   Marin Tug claimed that Shell Oil tortiously interfered with Marin Tug's prospective economic

9   advantage by refusing to deal with Marin Tug, the effect of which "was not only that Shell would

10   no longer contract with Marin Tug but also that Marin Tug could no longer do business with

11   third-party fuel brokers and consumers who otherwise would have hired it to transport Shell oil."

12   *Id.* at 828.  The Ninth Circuit ultimately affirmed summary judgment in Shell Oil's favor on the

13   interference claim, explaining that Shell Oil could not be considered a stranger to Marin Tug's

14   relationships with third party purchasers of Shell Oil fuel.  *Id.* at 834 ("Because the economic

15   relationship between Marin Tug and the buyer of any Shell oil shipped on Marin Tug's barges

16   depends on Shell's cooperation, Shell is not easily characterized as a stranger to that

17   relationship."); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059,

18   1073 (C.D. Cal. 2003) ("[T]he Court finds that DIRECTV has a direct interest and/or

19   involvement in the Plaintiffs/NRTC and Plaintiffs/subscribers relationships; and thus, DIRECTV

20   is not a 'stranger' to such relationships.  Therefore, [Plaintiffs'] interference claims fail as a

21   matter of law.").

22        The same result is appropriate here:  just as Marin Tug would not have had relationships

23   with third-party purchasers of Shell Oil's fuel without the cooperation of Shell Oil, and just as

24   Federal Express could not be liable for tortious interference with relationships that would not

25   have existed but for Federal Express between its customers and its delivery contractors, Plaintiffs

26   here could not have a relationship with "Uber customers' but for Uber and the Uber app.  Indeed,

27   this Court has acknowledged that "Plaintiffs' claims are all based upon the relationship between

28   drivers and Uber that was created by the [Licensing Agreement]."  Dkt. No. 58 at 6:4–5.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

DB2/ 25147627

16

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

1    Accordingly, Uber is not a "stranger" to the relationships it allegedly interfered with and

2    Plaintiffs' claim for intentional interference with prospective economic advantage fails as a

3    matter of law.[8]

4        **D.    Plaintiffs' Claim For Breach Of An Implied Contract Fails Because There
            Was An Express Contract Covering The Same Subject Matter.**

5

6        In its Order on Uber's earlier Motion to Dismiss, this Court explained that "[i]t is well

7    settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists

8    between the parties a valid express contract covering the same subject matter."  ECF No. 58 at

9    16:20–22 (quoting *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203

10   (1996)).  On that basis, the Court dismissed Plaintiffs' breach of implied contract claim with

11   prejudice to the extent it was based on Plaintiffs' theory that an implied contract existed between

12   Plaintiffs and Uber.  The Court explained that "[s]ince Plaintiffs allege that the tips are included

13   in the fare and the [Licensing Agreement] covers the handling of the fare, there is nothing

14   Plaintiffs allege in their implied-in-fact contract claim that the express contract does not cover."

15   *Id.* at 17:11–13.  That which remains of Plaintiffs' breach of implied contract claim, which is

16   based on a third party beneficiary theory, arises from their allegation that "Uber advertises to

17   customers that gratuity is included in the cost of its car service" thereby creating "an implied-in-

18   fact contractual relationship with customers, pursuant to which the customers pay gratuity for the

19   benefit of the drivers." *See* FAC ¶¶ 1, 39.  As to that claim, the Court earlier noted that there

20   were then no "allegations or judicially noticed evidence in the record of an express contract

21   between Uber and customers covering this subject matter, ***which could preclude a finding of***

22   ***implied contractual intent to benefit the third-party drivers*.**"  Dkt. No. 58 at 18:11–13

23   (emphasis added).  In fact, there is an express contract covering that subject matter:  the User

24   Terms and Conditions that each customer enters into with Uber.

25

26

27
    _____
        [8]   Plaintiffs' UCL claim also necessarily fails to the extent it is based upon the interference
28   claim.  *See* FAC ¶ 42.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

17

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

1  *See* RJN, Exs. B, C, and D (User Terms and Conditions in place throughout class period).[9]

2      In order to use the Uber application, a customer "must agree to the terms and conditions

3  that are set out" in the User Terms and Conditions.  *Id.*  Indeed, as explained in the User Terms

4  and Conditions, "[b]y using or receiving any services supplied to [the customer] by [Uber], and

5  downloading, installing or using any associated application supplied by [Uber] which purpose is

6  to enable [the customer] to use [such services], [the customer] expressly acknowledge[s] and

7  agree[s] to be bound by the [User Terms and Conditions]."  *Id.*  The User Terms and Conditions

8  include an integration provision expressly stating that those terms and conditions constitute the

9  entire agreement between Uber and the customer.  *Id.*  ("This Agreement comprises the entire

10  agreement between you and the Company and supersedes all prior or contemporaneous

11  negotiations, discussions or agreements, whether written or oral, between the parties regarding the

12  subject matter contained herein.").  Such integration clauses are enforceable in California and

13  preclude a plaintiff from attempting to imply additional terms into the parties' agreement.  *See US

14  Ecology, Inc. v. State of Cal.*, 92 Cal. App. 4th 113, 130 (2001).  Therefore, contrary to Plaintiffs'

15  allegation that "[Uber] has an implied-in-fact contractual relationship with customers," (FAC ¶

16  39), Uber actually has an <u>express</u> contractual relationship with customers and the contract sets

17  forth the parties' entire agreement.

18      In addition, contrary to Plaintiffs' allegation that Uber and the customers have an

19  agreement "pursuant to which the customers pay gratuity for the benefit of the drivers," (*id.*), the

20  User Terms and Conditions include "Payment Terms" that conspicuously do <u>not</u> contemplate that

21  customers will pay a gratuity to Uber for the benefit of the drivers.  Indeed, the "Payment Terms"

22  provision of the User Terms and Conditions contemplates that fees "are due immediately and are

23  non-refundable"; that Uber "reserves the right to determine prevailing pricing"; and that all fees

24  _____

25  [9] As noted above, courts may consider documents attached to a motion for judgment on the pleadings when they are necessary to a plaintiff's claims.  *See Parrino*, 146 F.3d at 706; *Global Network Commc'ns., Inc.*, 458 F.3d at 156-57.  As much of Plaintiffs' FAC relies on allegations
26  pertaining to Uber's communications with "Uber customers," and the User Terms and Conditions clearly constitute such a communication, the Court should consider it on this motion for judgment
27  on the pleadings.  *See, e.g.*, FAC ¶¶ 1, 2, 23.  This conclusion is further supported by the fact that the User Terms and Conditions are publicly available at https://www.uber.com/legal/usa/terms
28  and their accuracy cannot reasonably be questioned.  *See* Fed. R. Evid. 201.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

18

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

1  are non-refundable.  RJN, Ex. B, C, and D ("Payment Terms").  The User Terms and Conditions

2  also including a provision specifically stating that Uber "<u>shall not be liable for any loss, damage</u>

3  <u>or injury which may be incurred by you . . . arising out of, or in any way connected with . . . any</u>

4  <u>reliance placed by you on the completeness, accuracy or existence of any advertising . . . .</u>" *Id.*

5  ("Limitation of Liability") (emphasis added).

6          Because the User Terms and Conditions constitute the entire agreement between Uber and

7  its customers, and because they cover the same subject matter as the implied contract Plaintiffs

8  allege — advertising and payment for services rendered by drivers —  the Court should dismiss

9  Plaintiffs' breach of contract claim with prejudice.  *See* Dkt. No. 58 at 16:16–17:13.  The fact that

10  Plaintiffs claim to be third-party beneficiaries of the implied contract is immaterial because, as the

11  Ninth Circuit has explained, "[a] third-party beneficiary's rights are generally subject to any

12  contract defense which the promisor could assert against the promisee if the promisee were suing

13  on the contract." *Southwest Admrs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir. 1986).[10]

14  Accordingly, Plaintiffs' breach of contract claim, which Plaintiffs now bring only as purported

15  third party beneficiaries of an alleged implied-in-fact contract between Uber and Uber customers,

16  should be dismissed with prejudice.

17           **E.**    **<u>Plaintiffs Cannot Overcome The Presumption That California Law Cannot
18                 Be Applied To The Claims Of Drivers Outside Of California.</u>**

               **1.**    <u>Plaintiffs Have Alleged No Facts Sufficient To Overcome The
19                    Presumption Against Extraterritorial Application.</u>

20          It is well settled that extraterritorial exercise of power by a state violates the Commerce

21  Clause of the United States Constitution and a party's due process rights.  As the Supreme Court

22  of the United States has explained, the "Commerce Clause … precludes the application of a state

23  statute to commerce that takes place wholly outside of the State's borders." *Edgar v. MITE*

24  *Corp.*, 457 U.S. 624, 642-43 (1982); *see also Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989)

25  ("A state statute is a *per se* violation of the Commerce Clause when it has an 'extraterritorial

26  reach.'"); *Shaffer v. Heitner*, 433 U.S. 186, 197 (1977) ("[A]ny attempt 'directly' to assert

27  _____

28          [10]  Plaintiffs' UCL claim under the unlawful prong, to the extent it is based upon a breach of
contract theory, should likewise be dismissed.  *See* FAC ¶ 42.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

19

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

1  extraterritorial jurisdiction over persons or property would offend sister States and exceed the

2  inherent limits of the State's power."); *Wright v. Adventures Rolling Cross Country, Inc.*, No. 12-

3  cv-0982-EMC, 2012 U.S. Dist LEXIS 104378, at *13 (N.D. Cal. May 3, 2012) (Chen, J.).

4          Here, Plaintiffs seek to assert California statutory and common law claims on behalf of

5  two named Plaintiffs (Rolle and Anderson) and putative class members who reside and provide

6  transportation services outside of California.  *See* FAC ¶ 8 ("Plaintiff Wilson Rolle, Jr. is an adult

7  resident of Atlanta, Georgia, where he works as an Uber driver"); ¶ 9 ("Plaintiff William

8  Anderson is an adult resident of Seattle, Washington, where he works as an Uber driver."); ¶ 1

9  ("This case is brought on behalf of individuals who have worked as Uber drivers ***anywhere in the***

10 ***United States*** (other than Massachusetts).") (emphasis added).  The FAC includes no factual

11 allegations explaining how non-California drivers engaging in driving services outside of

12 California could possibly be subject to California's statutory or common law.  As a result, the

13 Court should reject Plaintiffs' attempt to represent non-California drivers in connection with

14 claims predicated *entirely* on California statutory and common law as an impermissible

15 extraterritorial application of California law.  *Edgar*, 457 U.S. at 642–43.

16         Plaintiffs will likely suggest that extraterritorial application of California law to non-

17 California drivers is permissible here due to a choice-of-law provision in the Licensing

18 Agreement (despite not attaching the agreement to the FAC or even alleging that such a provision

19 exists).[11]  The Court should decline to entertain any such argument because, on June 26, 2014,

20 Plaintiffs' counsel filed a class action complaint in Massachusetts state court on behalf of drivers

21 in Massachusetts alleging that Uber violated two Massachusetts statutes (concerning tips and

22

23         [11]  Because a motion for judgment on the pleadings looks only to the pleadings or documents
       attached thereto, not to facts raised by a plaintiff in its opposition brief or at oral argument,
24     Plaintiffs should not be permitted to make any argument based on the Licensing Agreement in
       response to this motion.  *Yakima Valley Mem. Hosp. v. Wash. State Dep't of Health*, 654 F.3d
25     919, 925 n.6 (9th Cir. 2011), *aff'd* 731 F.3d 843 (9th Cir. 2013) ("Judgment on the pleadings is
       limited to material included in the pleadings."); *accord Elvig v. Calvin Presbyterian Church*, 375
26     F.3d 951, 955 n.1 (9th Cir. 2004); *see also Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044,
       1050 (E.D. Cal. 2008) ("Plaintiff's statements in his opposition brief cannot amend the
27     Complaint." (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)
       ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion
28     to dismiss.")).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB2/ 25147627                                      20                    DEFENDANT'S MOTION FOR
                                                                      JUDGMENT ON THE PLEADINGS
                                                                         Case No. 13-03826-EMC

1   independent contractor classification), as well as Massachusetts common law.  *See* RJN, Ex. E at

2   5–6.  Counsel cannot have it both ways:  she cannot argue here that California law governs

3   drivers' entire relationship with Uber while simultaneously arguing in Massachusetts state court

4   that Massachusetts law governs that relationship.

5        In any event, in *Wright v. Adventures Rolling Cross Country, Inc*., this Court carefully

6   considered and rejected the argument that a California choice-of-law provision overcomes the

7   presumption against extraterritorial application of California law.[12]  2012 U.S. Dist LEXIS

8   104378, at *13 ("[w]hen a law contains geographical limitations on its application,… courts will

9   not apply it to parties falling outside those limitations, *even if* the parties stipulate that the law

10  should apply.") (quoting *Gravquick A/S v. Trimble Navigation Int'l*, 323 F.3d 1219, 1223 (9th

11  Cir. 2003)).  In *Wright*, as here, the plaintiffs purported to bring California Labor Code claims

12  based upon work done outside of California.  *See* 2012 U.S. Dist LEXIS 104378, at *11.  The

13  Court noted California law's "presumption against extraterritorial application" and noted further

14  that the purported choice-of-law clause simply provided that the plaintiffs should be considered

15  California residents and subject to its tax laws.  *Id.* at *11–12.  However, the Court went on to

16  explain:

17          Finally, even if the provision identified by Plaintiffs were a choice-of-law
            provision, there is nothing to indicate that the parties intended to incorporate only
18          portions of California law and exclude the incorporation of California law's
            presumption against extraterritoriality.  Furthermore, as the Court discusses below,
19          the California Labor Code provisions at issue implicitly contain geographical
            limitations and the Ninth Circuit has held that, "[w]hen a law contains
20          geographical limitations on its application, . . . courts will not apply it to parties
            falling outside those limitations, even if the parties stipulate that the law should
21          apply."

22  *Id.* at *12–13 (quoting *Gravquick A/S*, 323 F.3d at 1223).  The Court further explained that Labor

23  Code provisions not including any statement about extraterritorial application — such as the

24

25      [12] Uber recognizes that the Court reached a different conclusion in connection with Uber's
    Motion to Dismiss the Original Complaint.  However, it appears that the Court reached its
26  conclusion without the benefit of its own analysis in *Wright*.  *See* Dkt. 58 at 6:27-7:1 (stating
    there were no cases presented to the court "address[ing] the question at bar — whether parties
27  stipulated through contract that California law would govern their relationship notwithstanding
    that presumption").  *Wright* directly addresses the "question at bar" and, as set forth below, is
28  consistent with rulings of other courts that have considered the question.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

21

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

provisions upon which Counts III, IV, and V of the FAC are based — "do not have extraterritorial

application for several reasons":

> First, the California Supreme Court has referred to the presumption against extraterritorial application as far back as 1916. In *North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 162 P. 93 (1916), the court stated: "Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect." *Id.* at 4. It added that "[t]he intention to make the act operative, with respect to occurrences outside the state, will not be declared to exist unless such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history.'" *Id.* In spite of this holding by the California Supreme Court, the California legislature, in enacting the relevant provisions of the California Labor Code in the 1930s and thereafter, failed to specify that there should be extraterritorial application for the provisions.

> Second, the California legislature has in other provisions of the Labor Code expressly provided for extraterritorial application (*e.g.*, worker's compensation). *See Tidewater Mar. Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 577, 59 Cal. Rptr. 2d 186, 927 P.2d 296 (1996) (noting that, "[i]n some circumstances, state employment law explicitly governs employment outside the state's territorial boundaries" -- *e.g.*, worker's compensation (Cal. Lab. Code §§ 3600.5, 5305)). Since the legislature has provided for extraterritorial application in other provisions of the Labor Code, the fact that the provisions at issue do not include any statement about extraterritorial application is doubly telling.

> Finally, there is no competing presumption that would nullify the presumption against extraterritoriality.

*Id.* at *13–14.  Based upon this analysis, the Court dismissed, <u>with prejudice</u>, the claims arising

from "work performed continuously outside of California," including the plaintiffs' UCL claims.

*Id.* at *18–20.

   The result should be the same here.  As in *Wright*, the choice-of-law provision in the

Licensing Agreement contains no language suggesting that "the parties intended to incorporate

only portions of California law and exclude the incorporation of California law's presumption

against extraterritoriality."  *Wright*, 2012 U.S. Dist LEXIS 104378, at *12.  Plaintiffs' attempt to

apply Labor Code Sections 351 and 2802 to non-Californians who worked outside California

should fail for the same reasons as the Labor Code claims failed in *Wright*:  Sections 351 and

2802, like the provisions of the Labor Code at issue in *Wright*, "do not include any statement

about extraterritorial application" and it should therefore be presumed that they do not apply to

work done outside of California.  *Id.* at *13–14.  Plaintiffs' attempt to apply the UCL to non-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

22

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

1    Californians likewise fails, because choice-of-law provisions do not overcome the presumption

2    against the extraterritorial application of the UCL. *See id.* at *18; *see also Ice Cream Distribs. of*

3    *Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, No. 09-cv-5815-CW, 2010 WL 3619884, at

4    *8 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F. App'x 362 (9th Cir. 2012) (choice-of-law clause did

5    not permit extraterritorial application of the UCL because the provision only "addresse[d] under

6    what law the parties' agreement shall be construed" and "[did] not, as relevant here, provide for

7    the extraterritorial application of the UCL.").

8        Accordingly, the Court should once again apply the well-settled presumption against the

9    extraterritorial application of California law and should dismiss with prejudice each of the

10   California statutory and common law claims asserted in the FAC to the extent they are asserted

11   on behalf of Plaintiffs Rolle and Anderson and the non-California putative class members.

12           2.    Extraterritorial Application Of California Law Would Produce Absurd
                   Results.
13

14       Accepting Plaintiffs' likely argument that the Licensing Agreement's choice-of-law

15   provision was intended to encompass the entirety of drivers' relationships with Uber would also

16   produce absurd results. *See* RJN, Ex. A at 11.  For example, in Section 6.1.1 of the Licensing

17   Agreement, the transportation company represents that it "shall comply with all local laws and

18   regulations, including the laws related to the operation of a taxi/passenger delivery, driving

19   service or transportation . . ." and that its "equipment complies with all applicable federal, state

20   and local laws." *See* RJN, Ex. A at 6–7.  Under Plaintiffs' reading of the purported "choice-of-

21   law" clause, these provisions would require Plaintiff Rolle to comply with local California laws

22   and regulations related to transportation companies in lieu of the laws ordinarily applicable in

23   Atlanta, Georgia, where he operates.  *See, e.g.,* Code of Ordinances of the City of Atlanta, GA §§

24   162-26, *et seq.* (governing vehicles for hire) & 150-1, *et seq.* (traffic and vehicular laws).  The

25   same is true with respect to Plaintiff Anderson:  under Plaintiffs' reading, Plaintiff Anderson

26   agreed in the Licensing Agreement to comply with, *inter alia*, the local traffic laws of California

27   to the exclusion of those in Seattle, Washington.  *See, e.g.,* Seattle Municipal Code §§ 6.310.100,

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

23

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

1    *et seq.* (governing vehicles for hire) & 11.10.020, *et seq.* (traffic and vehicular laws).[13]   The

2    Court should decline the interpretation of the choice-of-law provision urged by Plaintiffs, as it

3    leads to obviously absurd results.  *Eucasia Schools Worldwide v. DW August Co.*, 218 Cal. App.

4    4th 176, 182 (2013) ("Interpretation of a contract must be fair and reasonable, not leading to

5    absurd conclusions.") (citation omitted).

6          The Court should therefore disregard any attempt by Plaintiffs to invoke the terms of the

7    Licensing Agreement.  In the alternative, the Court should interpret the purported choice-of-law

8    provision in a reasonable manner consistent with the expectations of the parties—as simply

9    governing claims arising directly out of the contract, not their entire relationship.

10        **F.    Plaintiffs' Statutory Gratuity Violation Is Not A Separate Claim.**

11         The Court previously dismissed Plaintiffs' Labor Code Section 351 claim with prejudice,

12   explaining that there is no private right of action under that provision.  Dkt. No. 58 at 10:13–24

13   (citing *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 601 (2010)).  Nevertheless, in the

14   FAC, Plaintiffs assert violations of section 351 in support of both their UCL claim and in support

15   of Count III of the FAC, which is titled "Statutory Gratuity Violation (Enforced Through UCL)."

16   FAC ¶¶ 40, 42.  To the extent Plaintiffs are again trying to assert a standalone claim under section

17   351 of the California Labor Code in Count III, Uber is entitled to judgment on this claim pursuant

18   to the Court's previous order dismissing it with prejudice.  And to the extent Count III is simply

19   duplicative of a portion of Plaintiffs' UCL claim, it should likewise be dismissed, as duplicative

20   claims are inappropriate in a federal pleading.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th

21   Cir. 2007) ("the claim is merely duplicative and was properly dismissed"); *Freeman v. United*

22   *States*, No. 3:13-cv-02421-WHO, 2013 WL 5958144, at *3 (N.D. Cal. Nov. 7, 2013) ("The Court

23   finds that Mr. Freeman's claim for negligent infliction of emotional distress must be dismissed

24   because it is duplicative of his existing claim for negligence.").

25

26

27         [13]   This Court may take judicial notice of the fact that there are different laws governing
           transportation companies and their equipment in California; Atlanta, Georgia; and Seattle,
28         Washington.  *See* Fed. R. Evid. 201.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

24

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC

1  **V.      CONCLUSION**

2        For the foregoing reasons, the Court should grant Uber's motion for judgment on the

3  pleadings, and enter judgment in Uber's favor on Plaintiffs' claims for (a) tortious interference

4  with prospective economic advantage, (b) breach of contract, (c) statutory gratuity violation, and

5  (d) violation of California's Unfair Competition Law to the extent that claim is premised on

6  alleged misrepresentations on the part of Uber, purported tortious interference with prospective

7  business advantage, and alleged breach of implied-in-fact contract.  The Court should also enter

8  judgment with respect to Plaintiffs' claims to the extent they seek to apply California law to

9  drivers outside of California, including Plaintiffs Rolle and Anderson.

10  Dated: July 9, 2014                        MORGAN, LEWIS & BOCKIUS LLP

11                                             By   /s/ Robert Jon Hendricks
                                                  Robert Jon Hendricks
12                                                Attorneys for Defendant
                                                  UBER TECHNOLOGIES, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25147627

25

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
Case No. 13-03826-EMC