SHANNON LISS-RIORDAN, *pro hac vice*
(sliss@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

MONIQUE OLIVIER (SBN 190385)
(monique@dplolaw.com)
DUCKWORTH, PETERS, LEBOWITZ, OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104
Telephone:     (415) 433-0333
Facsimile:     (415) 449-6556

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, THOMAS COLOPY, DAVID KHAN, MATTHEW MANAHAN, WILSON ROLLE, JR., and WILLIAM ANDERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC,<br><br>Defendant. | Case No. CV  13-3826-EMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Hearing Date: August 28, 2014<br><br>Time: 1:30pm<br><br>Courtroom: 5<br><br>Judge: Hon. Edward M. Chen |

i

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 4

I.     UBER'S MOTION FAILS TO MEET THE STANDARD FOR A MOTION
FOR RECONSIDERATION ................................................................................. 4

II.    PLAINTIFFS HAVE PROPERLY STATED A CLAIM UNDER THE UCL ...... 7

III.   PLAINTIFFS HAVE PROPERLY STATED A CLAIM FOR TORTIOUS
INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE.......... 14

IV.   PLAINTIFFS HAVE SUFFICIENTLY PLED A CLAIM FOR BREACH
OF AN IMPLIED CONTRACT............................................................................ 19

V.   THE COURT ALREADY PROPERLY HELD THAT CALIFORNIA LAW
MAY BE APPLIED TO DRIVERS WHO WORK FOR UBER OUTSIDE
CALIFORNIA ..................................................................................................... 20

VI.   PLAINTIFFS HAVE NOT ASSERTED A SEPARATE CLAIM UNDER
LABOR CODE SECTION 351 ........................................................................... 23

CONCLUSION.............................................................................................................. 23

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

## **TABLE OF AUTHORITIES**

### **CASES**

389 Orange Street Partners v. Arnold, 179 F.3d 656 (9th Cir.1999)................................................5

Allstate Ins. Co. v. Hauge, 449 U.S. 302 (1981) ......................................................................22

Am. Private Line Servs., Inc. v. E. Microwave, Inc., 980 F.2d 33 (1st Cir. 1992) ......................15

Anderson v. American Airlines, Inc., 2011 WL 855820 (N.D.Cal. Mar.9, 2011) .....................2, 7

Aryeh v. Canon Bus. Solutions, Inc., 55 Cal. 4th 1185 (2013) ................................................8, 9

Ashcroft v. Iqbal, 556 U.S. 662 (2009)........................................................................................4

Bower v. AT & T Mobility, LLC, 196 Cal.App.4th 1545 (2011) .................................................11

Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047 (9th Cir. 2011)........4

Chand v. Burlington Coat Factory of California, LLC, 2014 WL 726837
   (E.D. Cal. Feb. 24, 2014).....................................................................................................2, 11

Clayworth v. Pfizer, Inc., 49 Cal.4th 758 (2010)...........................................................................8

Collins v. Vickter Manor, Inc., 47 Cal.2d 875 (1957).................................................................17

Cortez v. Global Ground Support, LLC, 2009 WL 4282076 (N.D.Cal. Nov. 25, 2009) ..............13

Cortez v. Purolator Air Filtration Products Co., 23 Cal.4th 163 (2000).........................................7

CRST Van Expedited, Inc. v. Werner Enters., 479 F.3d 1099 (9th Cir.2007) .......................13, 14

DiFiore v. American Airlines, Inc., 483 F. Supp. 2d 121 (D. Mass. 2007)...................3, 15, 17, 18

DiFiore v. American Airlines, Inc., 561 F. Supp. 2d 131 (D. Mass. 2008)....................................6

DiFiore v. American Airlines, Inc., 454 Mass. 486 (2009) ............................................................6

DiFiore v. American Airlines, Inc., 646 F.3d 81 (1st Cir. 2011).....................................................6

Dolan v. Tavares, 2011 WL 10676937 (D. Mass. May 16, 2011)................................................15

Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350 (2010) ..............................................8, 12, 13

Dworkin v. Hustler Magazine Inc., 867 F.2d 1188 (9th Cir.1989)................................................4

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

<u>Dyer v. Rosario</u>, 2008 WL 2415377 (E.D. Cal. June 12, 2008) ....................................................20

<u>Esbensen v. Userware Internat, Inc.</u>, 11 Cal.App.4th 631 (1992) ............................................3, 19

<u>Etheridge v. Reins Int'l Cal., Inc.</u>, 172 Cal.App.4th 908 (2009)..............................................2, 7

<u>Fresno Motors, LLC v. Mercedes-Benz USA, LLC</u>, 852 F. Supp. 2d 1280 (E.D. Cal. 2012)......18

<u>Gardner v. Safeco Ins. Co. of Am.</u>, 2014 WL 2568895 (N.D. Cal. June 6, 2014) ........................13

<u>Glue–Fold, Inc. v. Slautterback Corp.</u>, 82 Cal.App.4th 1018 (2000) ..............................................8

<u>Gravquick A/S v. Trimble Navigation Int'l Ltd.</u>, 323 F.3d 1219 (9th Cir. 2003).........................22

<u>Gray v. Golden Gate Nat. Recreational Area</u>, 866 F. Supp. 2d 1129 (N.D. Cal. 2011)..............6, 9

<u>Guifu Li v. A Perfect Day Franchise, Inc.</u>, 2012 WL 2236752
  (N.D. Cal. June 15, 2012) .....................................................................................2, 7, 11

<u>Hall v. Time Inc.</u>, 158 Cal.App.4th 847 (2008) ...........................................................................11

<u>Hodge v. Superior Court</u>, 145 Cal. App. 4th 278 (2006).................................................................7

<u>In re Tobacco II Cases</u>, 46 Cal. 4th 298 (2009) ..................................................................2, 12, 13

<u>Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.</u>, 2014 WL 3372583
  (N.D. Cal. July 9, 2014)...............................................................................................18

<u>Jou Chau v. Starbucks Corp.</u>, 174 Cal. App. 4th 688 (2009).....................................................7, 14

<u>Kasparian v. County of Los Angeles</u>, 38 Cal.App.4th 242 (1995).................................................18

<u>King v. B.F. Saul Mortgage Co.</u>, 2010 WL 3943657 (S.D. Cal. Oct. 6, 2010) ..............................5

<u>Kona Enterprises, Inc. v. Estate of Bishop</u>, 229 F.3d 877 (9th Cir.2000) .......................................5

<u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal.4th 1134 (2003)...........................7, 8, 9, 16

<u>Kwikset Corp. v. Superior Court</u>, 51 Cal.4th 310 (2011)...............................................8, 10, 12, 13

<u>Lavitman v. Uber Technologies, et al.</u>, No. 1:13-cv-10172-DJC (D. Mass) ...............................21

<u>Lowell v. Mother's Cake & Cookie Co.</u>, 79 Cal. App. 3d 13 (1978) ......................................16, 19

<u>Marin Tug v. Westport Petroleum, Inc.</u>, 271 F.3d 825 (9th Cir. 2001)...................................18, 19

<u>Matoff v. Brinker Rest. Corp.</u>, 439 F. Supp. 2d 1035 (C.D. Cal. 2006).....................................2, 7

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

Medical Instrument Development Laboratories v. Alcon Laboratories, 2005 WL 1926673 (N.D.Cal.2005) ............................................................................................................11

Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918 (9th Cir.1988) ................6

Ordonez v. Radio Shack, 2011 WL 499279 (C.D. Cal. Feb. 7, 2011) ...........................................8

Parrino v. FHP, Inc., 146 F.3d 699 (9th Cir. 1998) ....................................................................22

People ex rel. Lockyer v. Brar, 115 Cal.App.4th 1315 (2004) ....................................................11

Phillips Petroleum v. Shutts, 472 U.S. 797 (1985) ......................................................................22

Powerhouse Motorsports Grp., Inc. v. Yamaha Motor Corp., 221 Cal. App. 4th 867 (2013).......18

Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777 (9th Cir. 2012).........................................12

Searle v. Wyndham Internat., Inc., 102 Cal. App. 4th 1327 (2002) ........................................7, 14

Taylor v. Eastern Connection Operating, Inc., 988 N.E.2d 408 (Mass. 2013) .............................22

Union Pac. R.R. Co. v. Coast Packing Co., 236 F. Supp. 2d 1130 (C.D. Cal. 2002)................5, 6

United States v. Westlands Water Dist., 134 F.Supp.2d 1111 (E.D.Cal.2001) .............................5

Wahl v. Am. Sec. Ins. Co., 2010 WL 4509814 (N.D. Cal. Nov. 1, 2010) ....................................6

Watershed Asset Mgmt., L.L.C. v. Watershed Capital, LLC, 2014 WL 785847 (N.D. Cal. Feb. 25, 2014) ...................................................................................................15

Westside Center Associates v. Safeway Stores 23, Inc., 42 Cal.App.4th 507 (1996).................16

Woo v. Home Loan Group, L.P., 2007 WL 6624925 (S.D.Cal. Jul.27, 2007).............................8

Woods v. Fox Broadcasting Sub., Inc., 129 Cal.App.4th 344 (2005) ...........................................17

Wright v. Adventures Rolling Cross Country, Inc., No. 12-cv-0982, 2012 U.S. Dist. LEXIS 104378 (N.D. Cal. May 3, 2012) (Chen, J.) ................................................................21

**STATUTES**

Cal. Bus. & Prof. Code § 17200 et seq ..................................................................... passim

Cal. Civ.Code § 1654.............................................................................................................20

Labor Code § 351 ..................................................................................................... passim

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

Labor Code § 356 ........................................................................................13

Labor Code § 2802 ...........................................................................3, 8, 9, 11

**OTHER AUTHORITIES**

Proposition 64 ...................................................................................9, 10, 11, 12

Restatement of Torts, § 769 .........................................................................19

**RULES**

Civ. L.R. 7–9 ...................................................................................................1, 5, 6

Fed. R. Civ. P. 12 ...........................................................................................1, 3, 4

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

**INTRODUCTION**

On December 5, 2013, the Court denied, in part, Defendant Uber Technologies, Inc.'s motion to dismiss, holding that Plaintiffs had sufficiently pled claims for: 1) the application of California law to Uber drivers working outside of California; 2) the existence of an employment relationship between Uber and its drivers; 3) gratuity violations under Labor Code § 351, brought pursuant to the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; 4) third-party beneficiary of an implied contract between Uber and its customers; 5) tortious interference with a prospective advantageous economic relationship between the drivers and Uber's customers; and 6) violation of the California Unfair Competition Law. See Order (Docket No. 58).

Plaintiffs filed an amended complaint to conform to the Court's order. Docket No. 107. On July 9, 2014, Uber submitted a motion for judgment on the pleadings that parrots many of the same arguments made in its motion to dismiss, and raises others that were available when it filed its earlier motion. Docket No. 116. As discussed with the Court at the Case Management Conference held on July 10, 2014, Uber's Rule 12(c) motion should be treated as a motion for reconsideration of the Court's decision on Uber's Rule 12(b)(6) motion to dismiss to the extent it merely repeats arguments already made.

Uber's motion should be denied because it fails to meet the standard for a motion for reconsideration under Civ. L.R. 7-9. Uber failed to seek leave of Court before filing and may not rely on duplicative argument or on arguments that were available, but not made, the first time around. Moreover, Uber has not even attempted to demonstrate that any of the requirements for reconsideration -- (1) an excusable mistake as to the material facts or controlling law; (2) a material change in the law or facts since the order issued; or (3) a manifest failure by the court to consider a material fact or dispositive argument – exist here. See Civ. L.R. 7–9. On this basis alone, Uber's motion should be denied.

Furthermore, Uber has failed to argue any new, compelling basis for reversing this

Court's original decision.

First, it is well established that plaintiffs may bring claims for violations of Labor Code § 351 through the UCL.  See, e.g., Guifu Li v. A Perfect Day Franchise, Inc., 2012 WL 2236752 (N.D. Cal. June 15, 2012); Anderson v. American Airlines, Inc., 2011 WL 855820, at *9 (N.D.Cal. Mar.9, 2011); Etheridge v. Reins Int'l Cal., Inc., 172 Cal.App.4th 908 n. 6 (2009); Matoff v. Brinker Rest. Corp., 439 F. Supp. 2d 1035, 1038 (C.D. Cal. 2006).  While Uber argues that Plaintiffs' claims under the UCL's "unlawful" prong must fail because they were not the ones lied to by Uber about the gratuities policy, this argument is without merit because the predicate unlawful acts alleged here under the UCL were not Uber's misrepresentations, but its violations of California statutory law.  Moreover, while the 2004 amendments to the UCL limited standing for plaintiffs, it did so only to the extent that it requires that a party whose claims are based solely on misrepresentations under the UCL's "fraudulent" prong to show that they suffered some concrete economic injury that was incurred as a result of the reliance on those misrepresentations.  See UCL § 17204; In re Tobacco II Cases, 46 Cal. 4th 298, 325 n.17 (2009).  Where the injury to the plaintiffs is concrete, and the defendant's conduct misled some members of the public, the causality requirement of the UCL's "fraudulent" prong are met.  Chand v. Burlington Coat Factory of California, LLC, 2014 WL 726837, *7 (E.D. Cal. Feb. 24, 2014).  Here, as this Court already held, Plaintiffs have adequately pled that members of the public were deceived by Uber's misrepresentations and that, as a result, drivers suffered a concrete economic injury.  See Order at 28.

Second, contrary to Uber's repetitive arguments, Plaintiffs have stated a claim for tortious interference with prospective economic advantage.  As this Court has already held, Plaintiffs

2

have pled an "independently wrongful act" by Uber as they claim it has violated Labor Code, §§ 351 and 2802, the UCL, and breached an implied-in-fact contract. Order at 19-20, 26. Moreover, this Court has already held that Plaintiffs sufficiently allege a claim of tortious interference where they have a prospective relationship with customers. Order at 24-25. Additionally, Uber does not retain a privilege to interfere with the relationship between drivers and passengers because that relationship is separate from the relationship between Uber and passengers. DiFiore v. American Airlines, Inc., 483 F. Supp. 2d 121, 128 (D. Mass. 2007).

Third, this Court has already concluded that Plaintiffs have stated a claim for breach of an implied-in-fact contract between Uber and its customers for which drivers are third-party beneficiaries because, Plaintiffs allege, Uber has created an understanding with its customers that drivers are receiving gratuities out of the fares paid by customers. Order at 18-20. Uber now contends that Plaintiffs cannot assert this claim because it has a written user agreement with customers. But the mere existence of a written agreement -- that is silent with respect to the issue that Plaintiffs claim comprises the implied contract -- does not preclude a finding that an implied-in-fact contract exists regarding the payment of gratuities. Esbensen v. Userware Internat, Inc., 11 Cal.App.4th 631, 636 (1992).

Finally, Uber again argues that, even though it requires all of its driver across the country to agree to a California choice-of-law provision in its Licensing Agreement, it cannot be bound by its own contract provision for drivers operating outside California. This Court already held that, because there is no bar to extraterritorial application written into the California labor laws, Uber's own choice-of-law provision may override any general assumption that California law will not be applied outside the state. Order at 7. Here, Plaintiffs have asked that California law be applied to them, and the Court has ruled that is proper. The mere fact that Uber drivers in

3

Massachusetts (who have been carved out of this case altogether) have since filed a separate complaint, asking that Massachusetts law be applied to them, does not undercut this ruling. (Notably, in litigation in Massachusetts, Uber has taken the position that California law applies to its drivers in Massachusetts, by virtue of Uber's choice-of-law provision.)

Thus, for these reasons, discussed further below, Uber's motion for judgment on the pleadings should be denied.

## ARGUMENT

## I. UBER'S MOTION FAILS TO MEET THE STANDARD FOR A MOTION FOR RECONSIDERATION

This Court has already denied Uber's motion to dismiss with respect to many of the same arguments raised in Uber's current motion: the extraterritorial application of California law, drivers' claims that they did not receive gratuities that passengers thought they were paying, tortious interference, breach of implied-in-fact contract, and unfair competition. As Uber admits, the standard of review for a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion.[1] Def.'s Mot. for J. on the Plead. at 5 (citing <u>Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.</u>, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)). Uber's motion for judgment on the pleadings argues, in effect, that because it failed to make the right arguments the first time, it is now entitled to change its strategy and re-brief the same issues. But nothing has changed that would justify reconsideration of the Court's prior order. The instant motion should be denied

---

[1] "The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing.... [Otherwise,] the motions are functionally identical." <u>Dworkin v. Hustler Magazine Inc.</u>, 867 F.2d 1188, 1192 (9th Cir.1989). A Rule 12(b)(6) motion should be denied so long as the plaintiffs have pled plausible claims that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009).

4

because it is an improper end-run around the requirements for reconsideration. <u>King v. B.F. Saul Mortgage Co.</u>, 2010 WL 3943657 (S.D. Cal. Oct. 6, 2010) (treating motion as one for reconsideration where it involved reconsideration of matters "encompassed in a decision on the merits").

A motion for reconsideration may be brought only with leave of the court and only in exceptional cases. <u>See</u> Civ. L.R. 7-9; <u>Kona Enterprises, Inc. v. Estate of Bishop</u>, 229 F.3d 877, 890 (9th Cir.2000) (reconsideration is an "extraordinary remedy to be used sparingly in the interests of finality and conservation of judicial resources"). To justify reconsideration, the moving party must demonstrate: (1) the parties excusably erred as to the material facts or controlling law, despite reasonable diligence; (2) the law or facts have materially changed since the order issued; or (3) the court manifestly failed to consider a material fact or dispositive argument presented to it. Civ. L.R. 7–9(b).

On a motion for reconsideration, a party may not simply repeat arguments already made. Civ. L.R. 7-9(c). Moreover, in the absence of new evidence or a change in the law, a party may not use a motion for reconsideration to present new arguments or claims not raised in the original papers. See <u>389 Orange Street Partners v. Arnold</u>, 179 F.3d 656, 665 (9th Cir.1999); <u>Union Pac. R.R. Co. v. Coast Packing Co.</u>, 236 F. Supp. 2d 1130, 1137-38 (C.D. Cal. 2002) ("[A] mere attempt by [the moving party] to reargue its position by directing this Court to additional case law and . . . argument[s] which it clearly could have made earlier, but did not . . . is not the purpose of motions for reconsideration . . ..").  Ultimately, a party seeking reconsideration must show "more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." <u>United States v. Westlands Water Dist.</u>, 134 F.Supp.2d 1111, 1131

5

(E.D.Cal.2001).

Uber's motion fails to meet the standard for reconsideration. Uber failed to seek leave of the Court to file a motion for reconsideration. Moreover, Uber makes no attempt to argue that there has been a change in facts or law, a manifest failure by the Court to consider the issues Uber argued in its motion to dismiss, or a "material difference in fact or law" that Uber could not have discovered through the exercise of reasonable diligence. Civ. L.R. 7-9(b)(1).

Instead, Uber raises arguments already rejected and mixes in new challenges to Plaintiffs' claims based on arguments that were clearly available when it moved to dismiss. For example, Uber argues that Plaintiffs' claims under the UCL are barred due to a 2004 amendment to the law. See Def.'s Mot. at 3 n.2. While this claim has no merit, it plainly could have been raised in Uber's first motion and should, therefore, be rejected out of hand. See Union Pac., 236 F. Supp. 2d at 1137-38; see also Gray v. Golden Gate Nat. Recreational Area, 866 F. Supp. 2d 1129, 1132 (N.D. Cal. 2011) ("Generally, motions for reconsideration are disfavored, and are not the place for parties to make new arguments not raised in their original briefs.") (citing Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 925–26 (9th Cir.1988)); Wahl v. Am. Sec. Ins. Co., 2010 WL 4509814 (N.D. Cal. Nov. 1, 2010) (requesting moving party to explain why it failed to raise supposedly new legal arguments in earlier motions and denying request to file repetitive motion for judgment on the pleadings). The Court, therefore, should deny Uber's motion on this basis.

In the event the Court nevertheless entertains Uber's arguments, Plaintiffs respond to them below.

6

## II.     PLAINTIFFS HAVE PROPERLY STATED A CLAIM UNDER THE UCL

The UCL covers a wide range of conduct and embraces anything that can properly be called a business practice and that at the same time is forbidden by law.  Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134 (2003) (internal citations omitted).  As a result, courts routinely allow plaintiffs to bring claims of violation of the Labor Code pursuant to the UCL.  See, e.g., Cortez v. Purolator Air Filtration Products Co., 23 Cal.4th 163, 177 (2000) (an employer's alleged unlawful failure to pay wages can be the subject of a UCL claim); Hodge v. Superior Court, 145 Cal. App. 4th 278, 283 (2006) (claim for overtime pay actionable under the UCL).  Moreover, it is well settled that claims for unpaid gratuities in "violation[] of section 351 'are actionable as unlawful business practices'" under the UCL.  Guifu Li v. A Perfect Day Franchise, Inc., 2012 WL 2236752, at *9 (N.D. Cal. June 15, 2012) (quoting Anderson v. American Airlines, Inc., 2011 WL 855820, at *9 (N.D. Cal. Mar.9, 2011) (citing Etheridge v. Reins Int'l Cal., Inc., 172 Cal.App.4th 908 n. 6 (2009)); Matoff v. Brinker Rest. Corp., 439 F. Supp. 2d 1035, 1038 (C.D. Cal. 2006) (for waiters forced to share tips, "a [Labor Code] section 351 violation . . .  may serve as a predicate unlawful act" under the UCL); Jou Chau v. Starbucks Corp., 174 Cal. App. 4th 688, 693-94 (2009) (although appeals court reversed judgment on the merits, trial court allowed UCL claim for section 351 violation to go forward, and this ruling was not disturbed).  As one California appeals court noted, "[g]iven the role gratuities play in so many transactions and in the livelihoods of so many workers, we have no doubt that any business practice which substantially impacts tipping must meet the broad requirements of the UCL, as well as the closely related provisions of section 17500."  Searle v. Wyndham Internat., Inc., 102

7

Cal. App. 4th 1327, 1333 (2002).[2]

The "UCL is a chameleon." <u>Aryeh v. Canon Bus. Solutions, Inc.</u>, 55 Cal. 4th 1185, 1196 (2013). It "affords relief from unlawful, unfair, or fraudulent acts; moreover, under the unlawful prong, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." <u>Id.</u>; <u>Durell v. Sharp Healthcare</u>, 183 Cal. App. 4th 1350, 1359 (2010) ("Therefore, an act or practice is "unfair competition" under the UCL if it is forbidden by law or, even if not specifically prohibited by law, is deemed an unfair act or practice.") (quotation marks omitted). Plaintiffs' amended complaint alleges that Uber's conduct constitutes "unlawful or fraudulent business acts or practices." First Am. Compl. at ¶ 42.

"Depending upon which prong is invoked, a UCL claim may most closely resemble, in terms of the right asserted, an action for misrepresentation, misappropriation, price fixing, interference with prospective economic advantage, or any of countless other common law and statutory claims." <u>Aryeh</u>, 55 Cal 4th. at 1196 (citing <u>Kwikset Corp. v. Superior Court</u>, 51 Cal.4th 310 (2011); <u>Glue–Fold, Inc. v. Slautterback Corp.</u>, 82 Cal.App.4th 1018 (2000); <u>Clayworth v. Pfizer, Inc.</u>, 49 Cal.4th 758 (2010); <u>Korea Supply Co.</u>, 29 Cal.4th at 1134); <u>see</u> <u>also</u> <u>Durell v. Sharp Healthcare</u>, 183 Cal. App. 4th 1350, 1361 (2010) ("Virtually any law—federal, state or local—can serve as a predicate for an action under Business and Professions Code section 17200.") (citations omitted).

---

[2]     Plaintiffs have also asserted that, due to Uber's practice of misclassifying its drivers as independent contractors instead of as employees, Uber has violated Labor Code         § 2802 by failing to reimburse drivers for their business expenses. <u>See</u> First Am. Compl. at ¶¶ 41-42. Such claims are also cognizable as a predicate act under the UCL. <u>Ordonez v. Radio Shack</u>, 2011 WL 499279, *6 (C.D. Cal. Feb. 7, 2011) (citing <u>Woo v. Home Loan Group, L.P.</u>, 2007 WL 6624925 at *4 (S.D.Cal. Jul.27, 2007)).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

This Court has already held that Plaintiffs have sufficiently pled a claim under the UCL's "unlawful" and "fraudulent" prongs. Order at 26-28. Specifically, this Court held that Plaintiffs' claim for gratuities under Section 351 and for business expenses under Section 2802 are sufficient predicate acts under the UCL's "unlawful" prong. Order at 26. Furthermore, the Court held that Plaintiffs have alleged sufficient claims for tortious interference with prospective economic advantage, and breach of implied-in-fact contracts with customers for whom the drivers are third-party beneficiaries. Id. at 25-26. These are also "unlawful" acts that support a claim under the UCL. Aryeh, 55 Cal 4th. at 1196 (citing Korea Supply Co., 29 Cal.4th at 1134).

This Court also held that Plaintiffs have stated a claim under the UCL's "fraudulent" prong. Order at 28. This Court held that the allegation that Uber's representations to customers that a gratuity is included in their bill and that there is no need to tip drivers, despite the fact that Uber does not in fact remit a portion of the fare as gratuity for the drivers, "make it plausible that a reasonable consumer would likely be deceived to the detriment of the drivers." Id.

Uber now argues that, based on 2004 amendments to the UCL, Plaintiffs do not have standing to challenge Uber's gratuities policy, which results in the drivers being deprived of gratuities customers intend for drivers to receive, because Uber's misrepresentations are made only to Uber's customers. Def.'s Mot. for J. on the Plead. at 6-7. As a preliminary matter, this argument was clearly available when Uber moved to dismiss and, therefore, should not be considered here. Gray, 866 F. Supp. 2d at 1132 ("Generally, motions for reconsideration are disfavored, and are not the place for parties to make new arguments not raised in their original briefs.") (citation omitted). Moreover, the argument is without merit.

In 2004, Proposition 64 amended the UCL to limit standing to an individual who has "suffered injury in fact and has lost money or property as a result of the unfair competition." See

9

UCL § 17204; see also Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 323 (2011).  The

initiative declares: "It is the intent of the California voters in enacting this act to prohibit private

attorneys from filing lawsuits for unfair competition where they have no client who has been

injured in fact under the standing requirements of the United States Constitution."[3]  Prop. 64 § 1,

subd. (e) (emphasis added).

Even after Proposition 64, the California Supreme Court held that "[t]here are

innumerable ways in which economic injury from unfair competition may be shown."  Kwikset

Corp., 51 Cal. 4th at 323.  These include "(1) surrender in a transaction more, or acquire in a

transaction less, than he or she otherwise would have; (2) have a present or future property

interest diminished; (3) be deprived of money or property to which he or she has a cognizable

claim; or (4) be required to enter into a transaction, costing money or property, that would

otherwise have been unnecessary."  Id.  The Court held that:

> Neither the text of Proposition 64 nor the ballot arguments in support of it purport to
> define or limit the concept of "lost money or property," nor can or need we supply an
> exhaustive list of the ways in which unfair competition may cause economic harm. It
> suffices to say that, in sharp contrast to the state of the law before passage of Proposition
> 64, a private plaintiff filing suit now must establish that he or she has personally suffered
> such harm.

Id.

---

[3] A California court described the kind of scheme that Proposition 64 sought to put an end to as
follows:

> Attorneys form a front 'watchdog' or 'consumer' organization. They scour public records
> on the Internet for what are often ridiculously minor violations of some regulation or law
> by a small business, and sue that business in the name of the front organization. Since
> even frivolous lawsuits can have economic nuisance value, the attorneys then contact the
> business (often owned by immigrants for whom English is a second language), and point
> out that a quick settlement (usually around a few thousand dollars) would be in the
> business's long-term interest.

(continued on next page)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

Under the UCL, therefore, as amended by Proposition 64, a plaintiff must allege only "(a) a loss or deprivation of money or property sufficient to qualify as injury in fact, and (b) that the economic injury resulted from the unfair business practice which is the gravamen of the claim." Bower v. AT & T Mobility, LLC, 196 Cal.App.4th 1545, 1553–54 (2011); Hall v. Time Inc., 158 Cal.App.4th 847, 849 (2008). Plaintiffs allege that as a result of Uber's violation of the California tips law, Section 351, its tortious interference, and its breach of an implied-in-fact contract, Plaintiffs did not receive gratuities that passengers thought they were paying to their drivers.[4] There can be no doubt that, as alleged, drivers have suffered economic harm as a direct result of Uber's unlawful and fraudulent activity and, thus, that they have cognizable claims under the UCL.

Furthermore, under the UCL's "fraudulent" prong, Plaintiffs must only "show deception to some members of the public, or harm to the public interest, or to allege that members of the public are likely to be deceived," Chand v. Burlington Coat Factory of California, LLC, 2014 WL 726837, *7 (E.D. Cal. Feb. 24, 2014) (citations omitted); Medical Instrument Development Laboratories v. Alcon Laboratories, 2005 WL 1926673, at *5 (N.D.Cal.2005); Guifu Li, 2012 WL 2236752, at *9 (citing Rubio v. Capital One Bank, 613 F.3d 1195, 1204 (9th Cir.2010)). A UCL "plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question." Id. (citation omitted). The public here has been deceived by Uber's representation that they do not have to tip drivers because the gratuity is

---

(Footnote continued from previous page)
People ex rel. Lockyer v. Brar, 115 Cal.App.4th 1315, 1317 (2004).

[4]      Furthermore, Plaintiffs allege that Uber's practices are unlawful to the extent they violate the California expense reimbursement law.  Labor Code § 2802.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

included in their bill.

Uber, meanwhile, relies on cases following the California Supreme Court's decision in <u>In re Tobacco II Cases</u>, 46 Cal. 4th 298 (2009), a decision this Court already cited in its decision upholding Plaintiffs' UCL claim. Order at 27. In <u>Tobacco II</u>, the California Supreme Court held that, pursuant to Proposition 64, a plaintiff could not proceed under the fraudulent prong of the UCL without demonstrating reliance on the misrepresentation. <u>Tobacco II</u>, 46 Cal. 4th at 325. The Court, however, announced:

> We emphasize that our discussion of causation in this case is limited to such cases where, as here, a UCL action is based on a fraud theory involving false advertising and misrepresentations to consumers. The UCL defines 'unfair' competition as 'includ[ing] any unlawful, unfair or fraudulent business act or practice....' [Bus. & Prof.Code,] § 17200. There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application.

<u>Id</u>. at 325, n. 17.

Unlike <u>Tobacco II</u>, Plaintiffs do not allege misrepresentation as a predicate act for liability under the UCL. The predicate acts here are violations of the Labor Code, tortious interference, and breach of implied-in-fact contract. The misrepresentation-based cases relied on by Uber are, therefore, inapposite.

The other cases relied on by Uber also are not applicable here because they involve claims based entirely on misrepresentative advertising. <u>Kwikset</u>, 51 Cal. 4th at 316 (claim that locks fraudulently labeled "Made in U.S.A."); <u>Durell</u>, 183 Cal. App. 4th 1350 (claim that hospital advertising was misleading); <u>Sateriale v. R.J. Reynolds Tobacco Co.</u>, 697 F.3d 777, 793 (9th Cir. 2012) (upholding dismissal of UCL claim based on false advertising of a "Camel Cash" program, finding that plaintiffs failed to show how misrepresentations caused injury). These cases are not helpful where, Plaintiffs allege, a misrepresentation was made, customers relied on

12

that misrepresentation, and the drivers have suffered a concrete economic injury due to the misrepresentation. In other words, Plaintiffs here have suffered the requisite personal harm to state a claim under the UCL. Kwikset Corp., 51 Cal. 4th at 323.

For example, Uber argues that Durell supports a conclusion that actual reliance is required to establish liability under the UCL's "unlawful" prong. Def.'s Mot. for J. on the Plead. at 7. In Durell, however, the plaintiffs alleged that a hospital's advertising was misleading and, therefore, violated the California Consumer Legal Remedies Act. The California Supreme Court held that "we conclude the reasoning of Tobacco II applies equally to the 'unlawful' prong of the UCL when, as here, the predicate unlawfulness is misrepresentation and deception." Durell, 183 Cal. App. 4th at 1363. The predicate unlawful acts alleged here are a failure to pay gratuities in violation of the Labor Code and common law, and failure to pay business expenses. As with Tobacco II, Durell is not applicable.[5]

Moreover, as this Court recognized, the California tips law was enacted, in part, "to prevent fraud on the public in connection with the practice of tipping." Order at 13 (quoting Labor Code, § 356). As a California appellate court recognized:

> Section 351 was also enacted to prevent fraud on the tipping public. The Legislature wanted to prohibit a business owner from deceiving a customer who left a tip for an employee by requiring that the employee later transfer any part of the tip to the employer or the employer's agent. It is undisputed here that the tipping public intended to collectively tip both the baristas and the shift supervisors—for their work as a "team." Requiring these collective tips to be given solely to baristas would mislead the public.

---

[5] Moreover, the Ninth Circuit has permitted a plaintiff to bring a UCL claim that was premised upon a civil tort, such as tortious interference with a prospective economic relationship, under the UCL's "unlawful" prong. CRST Van Expedited, Inc. v. Werner Enters., 479 F.3d 1099, 1107 (9th Cir.2007); see also Cortez v. Global Ground Support, LLC, 2009 WL 4282076, at *3 (N.D.Cal. Nov. 25, 2009); Gardner v. Safeco Ins. Co. of Am., 2014 WL 2568895 (N.D. Cal. June 6, 2014).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Jou Chau v. Starbucks Corp., 174 Cal. App. 4th 688, 706 (2009); see also Searle, 102 Cal. App. 4th at 1335 ("In this situation the only obligation the hotel has to the patron is the one codified in Labor Code section 351: an assurance that, however large or small, the tip will go to the server, not the employer."). Uber's proposed application of the UCL, which would seemingly bar any private right of action for tipped employees where the employer made misrepresentations to customers, would plainly frustrate this central purpose of the tips law.

## III. PLAINTIFFS HAVE PROPERLY STATED A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

This Court has already held that Plaintiffs have stated a claim for tortious interference with prospective economic advantage. Order at 23-26. Uber now repeats its argument that Plaintiffs cannot proceed on this claim because they have failed to plead an "independently wrongful act." This Court has expressly rejected this argument. Order at 25. To satisfy this requirement, the pleader "merely must allege that [defendant]'s acts were unlawful for a reason other than that they interfered with [plaintiff]'s prospective economic advantage." CRST Van Expedited, Inc. v. Werner Enterprises, Inc., 479 F.3d 1099, 1110 (9th Cir. 2007). Here, Plaintiffs allege that Uber tells customers that the gratuity is included even though it does not pay a gratuity to drivers (and thus retains for itself part of what customers believe they are paying in tips to their drivers). First Am. Compl. at ¶¶ 16-18. Plaintiffs allege that such conduct gives rise to Labor Code violation, which is actionable under the UCL, and further constitutes breach of an implied-in-fact contract. As already held, this claim is sufficient to satisfy the "independent wrongful act" requirement.

In the sole case relied on by Uber on this point, the court held that a party had failed to allege an independent wrongful act where it alleged nothing "other than the act of interference

14

itself." <u>Watershed Asset Mgmt., L.L.C. v. Watershed Capital, LLC</u>, 2014 WL 785847 (N.D. Cal. Feb. 25, 2014). As discussed above, Uber's alleged misrepresentation to customers and its alleged failure to distribute to drivers gratuities that reasonable customers believe they are paying to their drivers, are indeed independent unlawful acts. <u>DiFiore</u>, 483 F. Supp. 2d at 128.

Uber further argues that Plaintiffs' claim for tortious interference is insufficient because, at the time of its fraudulent communications with customers, there is no existing relationship between the drivers and the customers. Def.'s Mot. for J. on the Plead. at 12-13. Again, this Court already rejected Uber's claim. Order at 25 ("It is of no consequence that the alleged interference took place before the passengers engages the drivers because, if it was customary that drivers receive tips, Uber plausibly knew that this would be a benefit accruing to the drivers at the time it discouraged tipping by telling passengers tipping is included in the fare."). In so holding, the Court relied on <u>DiFiore</u>, 483 F. Supp. 2d at 128, which upheld a tortious interference claim on behalf of airport skycaps who alleged they were deprived of tips by the airline's use of a mandatory baggage handling fee, which appeared to customers to be a tip for the skycaps.[6] There is no reason to disturb that holding here.

Moreover, tortious interference merely requires proof of a "probable future business relationship anticipating a reasonable expectancy if financial benefit." <u>Am. Private Line Servs., Inc. v. E. Microwave, Inc.</u>, 980 F.2d 33, 36 (1st Cir. 1992); <u>see also</u> <u>Dolan v. Tavares</u>, 2011 WL 10676937, *17 (D. Mass. May 16, 2011) (holding that while a party needs an existing contract to

---

[6]    In <u>DiFiore</u>, the skycaps won at trial on their claim of tortious interference based on the allegation that American levied charges that customers believed were gratuities meant for the skycaps and were awarded in excess of $325,000 by the jury. <u>See</u> <u>DiFiore v. Am. Airlines, Inc.</u>, 454 Mass. 486, 488-89, 910 N.E.2d 889, 892 (2009); <u>DiFiore v. Am. Airlines, Inc.</u>, 561 F. Supp. 2d 131, 132 (D. Mass. 2008). That verdict was later reversed on federal preemption grounds (under the Airlines Deregulation Act, which is not applicable here). <u>DiFiore v. Am. Airlines,</u>
(continued on next page)

15

establish the tort of intentional interference with contractual or business relations, "a plaintiff need not establish an existing contract with respect to an intentional interference with an advantageous relationship claim").

Uber relies on the holding in Westside Center Associates v. Safeway Stores 23, Inc., 42 Cal.App.4th 507 (1996), for the proposition that an existing relationship is needed. Def.'s Mot. for J. on the Plead. at 13. In Westside, however, the court found that plaintiffs had failed to plead a claim for tortious interference where they alleged the claim based on "unidentified buyers" and otherwise "fail[ed] to provide any factual basis upon which to determine whether" the plaintiffs were likely to receive a benefit in the future. 42 Cal. App. 4th at 527. That is not the case here. As the California Supreme Court held, the issue is whether plaintiffs "can demonstrate an economic relationship with a probable future economic benefit will be able to state a cause of action for this tort." Korea Supply Co., 29 Cal. 4th at 1164. Moreover, the very nature of the tort is that the defendant has interfered with a relationship that is "merely prospective." Lowell v. Mother's Cake & Cookie Co., 79 Cal. App. 3d 13, 17 (1978). As this Court held, if Uber were to prevail, this would create a "perverse result" where a "tortfeasor could avoid liability for interference with prospective economic advantage simply by broadly announcing his wrongful intent and thereby unilaterally alter the parties' expectations." Order at 25.

Uber further argues that Plaintiffs' tortious interference claim fails because there is no economic relationship between Plaintiffs and unidentified customers. Def.'s Mot. for J. on the

(Footnote continued from previous page)
Inc., 646 F.3d 81, 83 (1st Cir. 2011).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

Plead. at 14. This argument should fail for the same reason that Plaintiffs have adequately shown a probable future economic benefit flowing from the services they provide to Uber's customers. Uber baldy argues that the complaint "fails to put Uber on notice of the particular economic relationships with which it supposedly interfered." Id. at 14-15. Plaintiffs allege that Uber has interfered with the relationship between Plaintiffs and the Uber customers they have transported. First Am. Compl. at ¶ 14. There is no ambiguity here.

Uber further argues that it cannot be liable for tortious interference as it is not a "stranger" to the relationship between Plaintiffs and passengers. Def.'s Mot. for J. on the Plead. at 15-17. In a similar context, this argument was rejected by Judge Young in DiFiore. A customer's relationship with a driver (and the customer's understanding that the gratuity she pays is intended for her driver) is one that is separate from the driver's relationship with Uber, and is, as well, one in which the driver has a distinct and personal monetary stake. The nature of the tort is that Uber is interfering with a relationship between the drivers and the customers. Thus, Uber's argument that it cannot be held liable for tortious interference because it is a party to the relationship between the driver and the customer is unavailing.

Moreover, California courts have declined to allow businesses with some involvement in a relationship absolute privilege to interfere with its underlings' contracts. See, e.g., Woods v. Fox Broadcasting Sub., Inc., 129 Cal.App.4th 344, 351, fn. 7, & 353, fn. 8 (2005) (corporate officers and directors may be liable for interfering with corporate contracts). Rather, privilege to interfere is a defense that must be raised by the affiliated party and may only be allowed where that party demonstrates it did not use "use improper means." Id.; see also Collins v. Vickter Manor, Inc., 47 Cal.2d 875, 883 (1957) (whether corporation owners are "privileged to cause the corporation to discontinue its relations with plaintiffs, in the belief that such a course of action

17

was in the best interests of the corporation, is a matter of defense, to be decided by a resolution of the factual issues presumptively involved").

Uber argues that it is not a stranger merely because "Plaintiffs here could not have a relationship with 'Uber customers' but for Uber and the Uber app." Def.s Mot. for J. on the Plead. at 16. This argument has been roundly rejected by the California courts, which have held that a "stranger" means one who is not a party to the contract or an agent of a party to the contract. <u>Woods</u>, 129 Cal.App.4th at 353; <u>Powerhouse Motorsports Grp., Inc. v. Yamaha Motor Corp.</u>, 221 Cal. App. 4th 867, 884 (2013) ("No published California case has disagreed with <u>Woods</u>.").[7] As in <u>DiFiore</u>, the payment of what customers believe to be gratuities for the employees providing the service is a separate matter.

Uber relies on <u>Kasparian v. County of Los Angeles</u>, 38 Cal.App.4th 242 (1995), but in that case the plaintiff, a limited partner of a partnership, sued the general partnership, two of the individual partners, and a Los Angeles County supervisor for interfering in settlement negotiations in which the plaintiff hoped the general partnership would buy out his interest. This is clearly not the situation here.[8]

---

[7]    Some courts have held that the not-a-stranger doctrine could apply to non-parties to a contract, but only where that non-party has a significant interest is direct and significant. No such significant interest in the drivers receiving gratuities exists here. <u>See</u>, <u>e.g.</u>, <u>Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.</u>, 2014 WL 3372583 (N.D. Cal. July 9, 2014) (holding that distributor-dealer relationship did not provide sufficient interest in plaintiff's contracts to give rise to not-a-stranger defense).

[8]    Moreover, the California appellate court declined to follow the other case relied on by Uber, <u>Marin Tug v. Westport Petroleum, Inc.</u>, 271 F.3d 825 (9th Cir. 2001). The <u>Woods</u> court distinguished the Ninth Circuit's observations of the not-a-stranger principle in <u>Marin Tug</u> and read that case as being limited to an evaluation of the wrongfulness element of the claim for tortious interference with prospective economic advantage. <u>Woods</u>, 129 Cal.App.4th at 355 ("[W]e conclude that <u>Marin Tug</u> did no more than evaluate the wrongfulness of Shell's conduct in the context of its relationships with Marin Tug and the tug company's customers and was not (continued on next page)

Moreover, it is clear that Uber may not avail itself of the not-a-stranger doctrine where it has retained what customers believe to be tips for the drivers through "improper means." <u>Lowell v. Mother's Cake & Cookie Co.</u>, 79 Cal.App.3d 13, 21 (1978) (invoking the privilege under Restatement of Torts, § 769, that "[o]ne who has a financial interest in the business of another is privileged purposely to cause him not to enter into or continue a relation with a third person in that business if the actor (a) does not employ improper means, and (b) acts to protect his interest from being prejudiced by the relation."). Uber's practices, as alleged, used such improper means by engaging in fraudulent communications regarding gratuities and otherwise violating the California statutory and common law.

## IV. PLAINTIFFS HAVE SUFFICIENTLY PLED A CLAIM FOR BREACH OF AN IMPLIED CONTRACT

Uber argues that an implied contract between Uber and passengers to remit gratuities to drivers cannot be found here because of the existence of a written contract ("User Terms and Conditions") that each customer must enter into with Uber. Def.'s Mot. for J. on the Plead. at 17. Courts, however, have routinely found that an implied-in-fact contract may exist where a written contract already covers the parties' relationship, but fails to cover the specific subject matter that give rise to the implied contract. <u>See</u>, <u>e.g.</u>, <u>Esbensen v. Userware Internat, Inc.</u>, 11 Cal.App.4th 631, 636 (1992) (holding that parties had an implied-in-fact employment contract

---

(Footnote continued from previous page)
extending immunity from contract interference claims to an even broader, more attenuated class of persons."). <u>But</u> <u>see</u> <u>Fresno Motors, LLC v. Mercedes-Benz USA, LLC</u>, 852 F. Supp. 2d 1280, 1297-99 (E.D. Cal. 2012) (declining to follow <u>Woods</u>' limited reading of <u>Marin Tug</u>, and holding that a non-party to the contract could still fall under not-a-stranger doctrine where it maintained significant interest in the contract, such where Mercedes–Benz had a right to review and approve the transfer under the contract at issue in plaintiff Fresno Motors' tortious interference claim).

whereby the plaintiff could only be terminated for good cause even though the parties had executed a written employment contract that was silent as to termination).

Here, an implied-in-fact contract exists because, as Plaintiffs allege, customers pay what they think is a gratuity, which they impliedly expect will be remitted in full to their drivers. This reasonable expectation is not contradicted by the express contract between Uber and its customers (which is silent on the issue of gratuities). Accordingly, this Court has already held that Plaintiffs have pled a cognizable claim for breach of an implied contract to which Plaintiffs are third-party beneficiaries. Order at 18-20.

Uber admits that the User Terms and Conditions is silent as to the payment of gratuities. Def.'s Mot. for J. on the Plead. at 18. Thus, since Uber drafted the User Terms and Conditions, it should be interpreted so as to allow for an implied contract between Uber and its customers whereby Uber would remit to drivers in full the gratuities that customers expect them to receive, as third-party beneficiaries.[9] Dyer v. Rosario, 2008 WL 2415377 (E.D. Cal. June 12, 2008) ("the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist") (quoting Cal. Civ.Code § 1654).

**V.     THE COURT ALREADY PROPERLY HELD THAT CALIFORNIA LAW MAY BE APPLIED TO DRIVERS WHO WORK FOR UBER OUTSIDE CALIFORNIA**

This Court has already decided that, due to the choice of law provision in the Licensing Agreement that Uber drafted and requires all drivers to enter, and which requires all the drivers' claims against Uber be governed by California law, California law may apply to Uber's non-

---

[9]     Uber argues that an integration clause in the User Terms and Conditions prohibits the existence of an implied contract. Def.'s Mot. for J. on the Plead. at 18. The integration clause, however, refers only to "prior or contemporaneous negotiations, discussion or agreements, whether written or oral, between the parties." This clause, again, is silent as to implied-in-fact contracts and should thus be interpreted against Uber.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

California drivers. Order at 7. First, Uber baldy argues that the choice-of-law provision should no longer be enforced because Uber's Massachusetts-based drivers have filed a lawsuit against Uber under Massachusetts law in another case in Massachusetts state court. However, the mere fact that Massachusetts drivers have made this claim (because they find Massachusetts law may benefit them more, and they have their arguments as to why Massachusetts law should apply to them) does not provide Uber a basis for concluding that Uber drivers in all other states have waived their right to have California law applied to them (in a case where they contend that California law provides more benefits to them than the laws of other states). Notably, in the previously filed Massachusetts case, Uber has argued that its choice of law provision controls and that California law, not Massachusetts law, should apply. See Lavitman v. Uber Technologies, et al., No. 1:13-cv-10172-DJC (D. Mass), Def.'s Mot. to Dismiss, at 5-7 (Doc. 6).

Furthermore, Uber again argues that extraterritorial application of the laws at issue here are prohibited under California law. Def.'s Mot. for J. on the Plead. at 21-22. These laws, however, contain no express geographical limitations and this Court has already held that, "[i]n the absence of an express statutory limit . . . the presumption against extraterritorial application of a law is rebutted when there is a choice-of-law clause governing the parties' relationship." Order at 7 (citing Gravquick A/S v. Trimble Navigation Int'l Ltd., 323 F.3d 1219, 1221 (9th Cir. 2003)). Uber (apparently believing this Court was unaware of its own decision and needs it brought to its attention in a motion for reconsideration) now relies on Wright v. Adventures Rolling Cross Country, Inc., No. 12-cv-0982, 2012 U.S. Dist. LEXIS 104378 (N.D. Cal. May 3, 2012 (Chen, J.)). It is clear, however, that there was no choice of law provision that governed the dispute in Wright, and any discussion of the theoretical application of a choice-of-law

provision was dicta.[10]

Moreover, similar to this Court, the Supreme Judicial Court of Massachusetts relied on Gravquick in holding that, due to a Massachusetts choice-of-law provision, workers who provided services to a Massachusetts employer outside Massachusetts would be permitted to bring claims under Massachusetts wage laws where those laws contained no bar on extraterritorial application. Taylor v. Eastern Connection Operating, Inc., 988 N.E.2d 408, 414 (Mass. 2013).[11] This conclusion is supported by the Supreme Court of the United States, which has held that a state may apply its laws on an extraterritorial basis even where another state may have significant contacts with the underlying conduct, so long as there is sufficient contacts with the state applying its law. See Allstate Ins. Co. v. Hauge, 449 U.S. 302, 312 (1981); Phillips Petroleum v. Shutts, 472 U.S. 797, 818 (1985).

Uber argues that extraterritorial application of California law would produce absurd results because non-California drivers would be required to obey California regulations and

---

[10]     Interestingly, although Uber argues that the Court should ignore the Licensing Agreement's choice-of-law provision, it asks the Court to take judicial notice of the Licensing Agreement in support of its argument regarding whether it misrepresented its gratuities policy to the drivers. Compare Def.'s Mot. for J. on the Plead. at 10 n. 6 (citing Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998)) with 20 n. 11. In ruling on the motion to dismiss, this Court has already looked at the Licensing Agreement's choice-of-law provision, so this argument is moot.

[11]     The Court held:

The Massachusetts independent contractor statute is silent as to its extraterritorial effect. See G.L. c. 149, § 148B. We therefore rely on our "functional" choice-of-law principles in assessing the applicability of the statute to the plaintiffs' claims. (citation omitted). Given that the parties agreed to construe the contract in accordance with Massachusetts law, that there is no express limitation on the territorial reach of the Massachusetts independent contractor statute, and that there is no apparent reason to disregard the parties' choice of law, we conclude that the Massachusetts independent contractor statute applies to the plaintiffs' misclassification claim.

Eastern Connection, 988 N.E.2d at 414 (citing Gravquick, 323 F.3d at 1223).

22

traffic laws. Def.'s Mot. for J. on the Plead. at 23. The choice-of-law provision, however, governs only "disputes, actions, claims or causes of action" between the drivers and Uber. Local traffic laws are not enforced by Uber and would not give rise to a claim by a driver against Uber. The parties would not be able to contract out of their duties under local laws to, for example, obey the speed limit. This argument, therefore, is without merit.

## VI.   PLAINTIFFS HAVE NOT ASSERTED A SEAPRATE CLAIM UNDER LABOR CODE SECTION 351

Lastly, Uber argues that Plaintiffs' claim under Labor Code § 351 must be dismissed. Def.'s Mot. for J. on the Plead. at 24. In its order, the Court held that Plaintiffs could bring a claim for violation of Section 351 through the UCL. Order at 10 ("Plaintiffs can proceed to allege Defendants' violation of section 351 as the predicate unlawful activity for their claim under the UCL."). As a result, Plaintiffs' amended complaint (like their original complaint) includes a claim under Section 351 as enforced through the UCL. First Am. Compl. ¶ 40 (Count III). This is not a duplicative claim, as Uber argues, but a necessary predicate claim under the UCL, which only applies here to the extent that Uber has committed unlawful or fraudulent acts.

## CONCLUSION

Uber has filed a repetitive motion for judgment on the pleadings that is more properly treated as a motion for reconsideration. For the reasons discussed above, no reconsideration is merited as to the arguments Uber already raised in its motion to dismiss. To the extent that the current motion raises new arguments, even though these arguments were plainly available when Uber first moved to dismiss, these arguments are likewise without merit. This Court has already held that it may apply California law to Uber drivers outside of California law and that Plaintiffs have sufficiently pled claims under the UCL, Section 351, Section 2802, and California common

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

law.  Uber fails to demonstrate that these conclusions were reached improperly, and its motion, therefore, should be denied.

Respectfully submitted,

DOUGLAS O'CONNOR, THOMAS COLOPY, DAVID KHAN, MATTHEW MANAHAN, WILSON ROLLE, JR., and WILLIAM ANDERSON, individually and on behalf of all others similarly situated,

By their attorneys,

_/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
100  Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800
Email:  sliss@llrlaw.com

Dated:        July 30, 2014

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing document was served by electronic filing on July 30, 2014, on all counsel of record.

_/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan, Esq.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS