September 16, 2014

VIA ECF

The Honorable Edward M. Chen
United States District Court
450 Golden Gate Avenue
Courtroom 5, 17th Floor
San Francisco, CA 94102-3489

Re:     *O'Connor, et al. v. Uber Technologies, Inc.,* Case No. 3:13-cv-03826-EMC

Dear Judge Chen,

Plaintiffs Douglas O'Connor, Thomas Colopy, David Khan, Matthew Manahan, Wilson Rolle, Jr., and William Anderson ("Plaintiffs") and Defendant Uber Technologies, Inc. ("Uber" or "Defendant") (collectively, the "Parties") hereby submit this joint discovery letter brief pursuant to Civil Local Rule 37-1 and this Court's standing order on discovery.  Plaintiffs and Defendant are at an impasse regarding the production of Plaintiffs' tax returns and schedules.  Counsel for the parties met and conferred regarding this dispute in writing and by telephone on September 10, 2014.[1]  The Parties' undersigned trial counsel conclude that no further agreement can be reached.  The Parties' positions are set forth below.

I.     **Defendant's Position — Plaintiffs' Tax Records Are Relevant and Should Be Produced**

Through Request for Production No. 37 to each Plaintiff, Defendant sought Plaintiffs' tax records during the relevant time period, including their federal, state, or local income tax returns, as well as all schedules thereto and documentation used to prepare their tax returns.  In response, each Plaintiff objected on the ground that the request sought "privileged tax records" and failed to produce responsive documents aside from 1099s.[2]

It is well established that "under federal law, tax returns are generally discoverable where necessary in private civil litigation."  *Young v. United States*, 149 F.R.D. 199, 201 (S.D. Cal. 1993); *see also A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006) (tax returns are discoverable where they are "relevant to the subject matter of the action," unless the party opposing production can "show that other sources exist from which the information is

---

[1] The parties attest that there is good cause excusing them from the requirement that they meet and confer in person because lead counsel for Plaintiffs is located in Boston, Massachusetts and counsel for Defendant is located in San Francisco, California.

[2] The failure to produce Plaintiff Colopy's tax returns is particularly troubling, as he testified at his deposition that he had forwarded his tax returns to his counsel with the intent that they be produced in this matter.  Colopy Depo., 301:22-302:9 ("Q. You thought those were produced to us? Is that what you are saying, sir? A. I forwarded all my 2012 tax return information to my counsel. … Q. Okay. Sir, were you intending to produce your tax returns to us? A. Yeah.")

readily obtainable") (internal quotations omitted); *Advante Int'l Corp. v. Mintel Learning Technology*, 2006 WL 3511956, at *1 (N.D. Cal. Dec. 6, 2006).

Plaintiffs' tax returns and underlying schedules are perhaps the most relevant and critically important documents they have in their possession regarding their status as independent contractors or employees.  Under California law, the "principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired[.]" *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341, 350 (1989).  Relevant factors include: (1) whether the alleged employee is engaged in a distinct occupation or business; (2 whether the principal or the alleged employee supplies the instrumentalities, tools, and the place of work for the person doing the work; (3) the method of payment, whether by the time or by the job; and (4) whether or not the parties believe they are creating the relationship of employer-employee.  *Id*. at 350-351.  Plaintiffs' tax returns are relevant to all of these factors, and many others used by courts in assessing independent contractor status.

First, Plaintiffs' tax documents are relevant to whether or not the parties believed they were creating an employer-employee relationship.  Courts have consistently held that a plaintiff's characterization of his or her status in tax records is directly relevant to that inquiry.  *See, e.g., Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-24 (1992) (including "the tax treatment of the hired party" as one of the factors relevant to the employee/independent contractor inquiry); *Beaumont-Jacques v. Farmers Group, Inc.*, 217 Cal. App. 4th 1138, 1145 (2013) (relying on the plaintiff's identification of herself as self-employed on her tax returns to support a finding that plaintiff was an independent contractor); *Murray v. Principal Financial Group, Inc.*, 613 F.3d 943, 946 (9th Cir. 2010) (fact that plaintiff "reported herself as self-employed to the IRS" "strongly favor[ed] classifying her as an independent contractor").

Second, Plaintiffs' tax documents are relevant to whether Plaintiffs are engaged in a distinct occupation or business.  *Desimone v. Allstate Ins. Co*., 2000 U.S. Dist. Lexis 18097, *42 (N.D. Cal. 2000) (plaintiffs were independent contractors in part due to ability to engage in other business).  Plaintiffs' tax returns and attached schedules will show whether they received earnings from other businesses and companies.  In *In re FedEx Ground Package Sys., Inc.*, 2006 WL 3755311, at *3-*5 (N.D. Ind. 2006), as here, the plaintiffs alleged that the defendant had misclassified them as independent contractors.  Like Plaintiffs here, the plaintiffs in *FedEx Ground* refused to turn over their complete tax returns.  The plaintiffs admitted that they had filed their tax returns as "self-employed" and argued that any additional information contained in their tax returns was irrelevant.  The court disagreed.  Applying the "opportunity for profit or loss" prong of the economic reality test, the court explained:

> To the extent the plaintiffs' tax returns can show some plaintiffs were able to maximize profits by controlling costs via workers and subcontractors, or by utilizing business-associated tax benefits, or through other sources of income, this financial information can be relevant for showing the plaintiffs' earnings didn't necessarily depend on the defendants, but upon their individual business judgment and initiative.

*FedEx Ground*, 2006 WL 3755311, at *4.  The same reasoning applies here.  Plaintiffs' tax returns and related tax documents may show the extent to which Plaintiffs were able to engage in

a distinct occupation or business based on their own business judgment, initiative and/or control of expenses. Therefore, these documents are critically relevant and should be produced.

Third, Plaintiffs' tax returns and related documents likely contain information regarding whether and the extent to which they supplied their instrumentalities, tools, and the place of work. For example, these documents may reflect Plaintiffs' vehicle expenses, investment in supplies, licenses, marketing materials, and other indicia that they were financially responsible for the materials required for the work they performed. Such evidence is likewise indicative of independent contractor status.

Fourth, the extent to which Plaintiffs may have held themselves out to federal and state governments as independent contractors and sought to reduce their tax liability through deductions for business expenses that are not available to employees is relevant to Defendant's estoppel and unclean hands defenses.[3]

Finally, apart from the independent contractor issue, Plaintiffs' tax returns are discoverable also because they will also show the amount of any gratuities Plaintiffs earned as transportation providers, which is relevant to Plaintiffs' claim that they are entitled to "in the range of 20% of the total fare" because "it is customary in the car service industry for customers to leave approximately a 20% gratuity for drivers." See First Amended Complaint, Dkt. No. 107, ¶ 21.

## II.   Plaintiffs' Position

Plaintiffs dispute Uber's contention that they should be required to produce their full federal and state tax returns in this matter. Plaintiffs have already produced their IRS Form 1099s for the time period in question.

Both Congress and courts have recognized that tax returns are confidential and should be shielded from discovery in most circumstances. First, Congress has provided that tax returns and return information "shall be confidential." 26 U.S.C. § 6103. Moreover, countless courts have recognize that "[i]ncome tax returns are highly sensitive documents," and, therefore, "courts are reluctant to order their routine disclosure as a part of discovery." Natural Gas Pipeline Co. of America v. Energy Gathering, Inc., 2 F.3d 1397, 1411 (5th Cir. 1993). In DeMasi v. Weiss, 669 F.2d 114, 119-112 (3d Cir. 1982), the Third Circuit recognized that "public policy favors the nondisclosure of income tax returns" because "the crux of the issue is not merely the tax returns, but the personal information contained in the tax returns."

"In general, most courts have noted that public policy concerns favor keeping tax returns confidential when possible, and have ordered production only when the relevance of the information is clear and there is a compelling need." Columbus Drywall & Indus., Inc. v. Masco Corp., 2006 WL 5157686, at *7 (N.D. Ga. 2006); see also Trudeau v. New York State Consumer

---

[3] Courts consistently have held that a party is estopped from adopting in a legal proceeding a position contrary to that previously asserted on its tax returns. Zemel v. Horowitz, 2006 WL 516798, at *6 (N.Y. Sup. Ct. Mar. 2, 2006); Meyer v. Ins. Co. of Am., 1998 WL 709854, at *10 (S.D.N.Y. Oct. 9, 1998) (holding that plaintiff was bound by her sworn representations in tax returns and was estopped from taking a position inconsistent with her representations to IRS). Judicial estoppel forbids a party from "receiving the benefits of a transaction or statute, and then subsequently taking an inconsistent position to avoid the corresponding effects." Zemel, 2006 WL 516798, at *6.

Protection Board, 237 F.R.D. 325, 331 (N.D.N.Y. 2006) ("Routine discovery of tax returns is not the rule but rather the exception. . . For nearly the past thirty-five years, tax returns have been considered "confidential," pursuant to 26 U.S.C. § 6103. . ."); see also Donin v. McAloon, 2011 WL 1897420 at *2 (W.D.N.C. 2011) (Court may only order disclosure of tax returns where returns are relevant and necessary because the information cannot be obtained from another source).  Courts are reluctant to order discovery of tax returns in part because of the "private nature of the sensitive information contained therein, and in part from the public interest in encouraging the filing by taxpayers of complete and accurate returns."  See Smith v. Bader, 83 F.R.D. 437, 438 (S.D.N.Y. 1979) (citing Mitsui & Co. v. Puerto Rico Water Resources Auth., 79 F.R.D. 72, 80 (D.P.R. 1978)).   Accordingly, courts routinely deny access to tax returns.  See, e.g., Fulenweide v. Wheeler, 262 F.2d 97 (5th Cir. 1998) (upholding district court decision to deny discovery of employment plaintiff's tax returns); Houlihan Sendi v. Prudential Bache Sec., 100 FRD, 21, 23 (D.D.C. 1983) ("Whilst there may be specific situations in which tax returns are discoverable, they need not be disclosed to establish income."); Chen v. Republic Rest. Corp., 2008 WL 793686, at *4-5 (S.D.N.Y. Mar. 26, 2008) (denying employer's request for their employees' tax information).

To reconcile privacy concerns with requests for pretrial discovery, courts apply the following two-pronged test in determining whether an individual's tax returns should be subject to disclosure: "first, the tax returns must be relevant to the action; second, the information contained in the returns must not be otherwise obtainable." Buntzman v. Springfield Redevelopment Auth., 146 F.R.D. 30, 32 (D. Mass. 1993). Additionally, "[t]he burden to show relevancy lies on the party seeking the returns; the party resisting disclosure bears the burden of establishing alternative sources for the information." Id.  Uber fails to meet either of these prongs.

Uber argues that Plaintiffs' personal tax documents are relevant to whether they believed they were working for Uber as independent contractors or as employees.  Courts have repeatedly held that tax returns are not relevant as to the misclassification issue.  Indeed, in the FedEx case, cited by Uber, because the drivers had stipulated to having filed their taxes as self-employed, the court did not require drivers to produce tax returns whose claims were based on a right of control test (only drivers whose claims were based on an economic realities test, such as the FLSA or FMLA, were required to produce their tax returns).  Moreover, as the FedEx court held, "where the hired party is provided with the tax form by their employer, the employee's subjective understanding as to his or her employment status isn't dispositive."  In re Fedex Ground Package Sys., Inc, 2006 WL 3755311, *3 (N.D. Ind. Dec. 14, 2006) (citing Robicheaux v. Radcliff Material, Inc., 697 F.2d 662, 667 (5th Cir.1983) ("An employee is not permitted to waive employee status," so "the fact that the plaintiff welders in this case signed contracts stating that they were independent contractors, while relevant, is not dispositive."); Usery v. Pilgrim Equipment Co., Inc., 527 F.2d 1308, 1315 (5th Cir.1976); Baker v. Barnard Const. Co. Inc., 860 F.Supp. 766, 772 (D.N.M.1994)).  See also Hobson v. Commc'ns Unlimited, Inc., 2011 WL 414948 (N.D. Ga. Feb. 7, 2011) (tax returns are not discoverable because sole "inquiry is whether the Plaintiff was properly categorized as an independent contractor while he was working for the Defendants").

Thus, as in the FedEx case, since the drivers have acknowledged that they filed their tax returns as self-employed, there is nothing more to be gleaned from their returns. Here, Plaintiffs have already testified that they filed tax returns as self-employed. Furthermore, Plaintiffs have already responded to Uber's requests for admission that Plaintiffs were not classified as employees on any documents received from Uber and that they did not receive W-2s from Uber.

Uber further argues that Plaintiffs' tax returns are relevant to whether Plaintiffs engaged in a distinct occupation or business. First, Uber fails to demonstrate how this factor is different from the issue of misclassification generally, which, as shown above, is not enough to require the disclosure of personal tax information. Second, while this factor may have been relevant in FedEx, where some delivery drivers hired other drivers to operate multiple trucks, thus increasing their opportunity for profit, it is not relevant here. Plaintiffs did not hire other drivers to operate multiple cars, nor does Uber have any basis for thinking that they might have. The opportunity to profit by merely working harder or more efficiently is not enough to constitute an opportunity for profit. Usery v. Pilgrim Equipment Co., Inc., 527 F.2d at 1313. They were not able to maximize their profits by hiring secondary drivers, like in FedEx. Moreover, they have already provided responses in discovery as to whether they operated a transportation company. Even this, if true, is not sufficient to show that they were independent contractors. Ruiz v. Affinity Logistics Corp., 754 F.3d 1093, 1103 (9th Cir. 2014) (holding that delivery drivers who had formed their own delivery companies were still employees under California law). Moreover, Plaintiffs have answered interrogatories, and testified about, other sources of income they have received. There is no compelling reason to force them also to produce their tax returns to reveal this information.

Uber further argues that the tax returns are relevant to the issue of employment status because they might show the extent to which they supplied their own instrumentalities. While this may be relevant to the question of employment status, it is not in dispute that due to Uber's classification of Plaintiffs as independent contractors, Uber did not provide them with cars, or reimbursement for vehicle expenses. The same is true for Uber's claim that the tax returns are relevant to whether Plaintiffs held themselves out as independent contractors. It is undisputed that, in reliance on the tax documents provided to them by Uber, Plaintiffs filed their returns as independent contractors. Moreover, as discussed above, a party cannot will himself into independent contractor status. Pilgrim Equip. Co., 527 F.2d at 1315 ("[n]either contractual recitations nor subjective intent" of the parties can determine a worker's employee status) (citing Brennan v. Partida, 492 F.2d 707, 709 (5th Cir. 1974); Gulf King Shrimp Co. v. Wirtz, 407 F.2d 508 (5th Cir. 1969)).

As for business expenses, courts routinely utilize the IRS' business standard mileage rate under IRS Rev. Proc. 2008-72, § 5.03.5, to calculate the amount of expenses that employees are entitled to have reimbursed under applicable wage statutes. See, e.g., Dalton v. Lee Publications, Inc., 2013 WL 218129, *1, 11 (S.D.Ca. May 20, 2013) (where plaintiff newspaper delivery drivers claimed that the defendant misclassified them as independent contractors and failed to reimburse business expenses in violation of California law, court found that the plaintiffs' proposal to use the mileage they drove in a typical day, "multiplied by the Internal Revenue Service standard mileage allowance…times the number of days that newspapers were delivered," was "sufficiently…reliable to show Defendant's liability for unreimbursed expenses."); Gattuso v. Harte-Hanks Shoppers, Inc., 42 Cal. 4th 554, 569 (Ca. 2007) (IRS standard mileage rate was

an acceptable method for calculating employee vehicle expenses for reimbursement purposes). Plaintiff Matthew Manahan, for example, testified at his deposition that he claimed only expenses based on mileage, rather than itemizing individual business expenses, on his taxes. Thus, Plaintiffs' tax returns are not relevant, or necessary, to show their business expenses.

Furthermore, Uber argues that the tax returns are discoverable because they are relevant to Uber's claims for estoppel and for unclean hands. As discussed above, Plaintiffs filed their tax returns as independent contractors due to the way they were classified by Uber. As discussed above, should the Court ultimately conclude that Plaintiffs were employees of Uber, their reliance on Uber's treatment of them as independent contractors cannot support these claims.

Finally, Uber argues that the tax returns are discoverable because they may show the amount of gratuities Plaintiffs earned while working as drivers. It is not clear what information exactly Uber expects to obtain from Plaintiffs' tax returns regarding gratuities. Although Uber argues that the tax returns are relevant to Plaintiffs' contention that "it is customary in the car service industry for customers to leave approximately a 20% gratuity for drivers", Plaintiffs' claim is that they have not received much, if anything, in the way of gratuities while working for Uber, so their failure to show much, if any, gratuities on their taxes would support their claim. Indeed, if Uber's interest is in seeing if they did, contrary to their contention, report a great deal of gratuities (thus showing that, nothwithstanding Plaintiffs' allegation that Uber represented to customers that they did not need to tip their driver, that customers nevertheless still tipped the drivers), Plaintiffs would stipulate that they did not report much, if anything, in the way of gratuities.

At their depositions, Uber's counsel was free to ask, and indeed did ask, Plaintiffs how often they have received gratuities. The courts have recognized that evidence regarding gratuities can properly be obtained through testimony, rather than requiring employees who have brought wage claims to produce their tax returns to show reported gratuities. In Mori-Noriega v. Antonio's Rest., Inc., 923 F.2d 839 (Table) (1st Cir. 1990) (unpublished), the First Circuit explicitly concluded that a district court properly relied on a plaintiff's testimony about his tip income rather than his tax returns. Mori-Noriega, 923 F.2d 839, *2 (noting that "this is not an income tax case").

Courts in many other jurisdictions have relied on plaintiffs' testimony about tip income, rather than notoriously unreliable documentary evidence, in cases concerning tip income. See Kissel v. U.S. Steakhouse Bar and Grill, Inc., 2006 WL 2850105 (M.D. Fl. Oct. 3, 2006) (relying on oral testimony regarding tipped employee's income where plaintiff disputed accuracy of tip recording on paychecks); American Legion Post 12 v. Susa, 2005 WL 3276210 (R.I. Super. Ct. Nov. 30, 2005) (accepting plaintiffs' testimony as evidence regarding income and noting that "the fact that [the employees'] sworn testimony that they underreported their income exposed them to tax evasion and perjury charges actually bolsters their credibility"); Jackson v. McCleod, 748 F.Supp. 831 (S.D. Ala. 1990) (relying on tipped employee's oral testimony regarding loss of income rather than documentary evidence); Priest v. Rotary, 634 F.Supp. 571 (N.D. Cal. 1986) (same). As in these cases, Plaintiffs' tax returns and other documentary evidence of Plaintiffs' reported tip income should be disregarded (and Plaintiffs should not be required to produce it) because it is widely recognized that reported tip income is not reliable evidence as to the amount of tips earned by service employees.

At a minimum, the Court should not compel Plaintiffs to produce their tax returns at this point in the litigation.  If, at a later stage, the Court believes that the returns may be relevant to a damages inquiry, the parties and Court could address at that time what, if any, further documents may need to be produced.  But Plaintiffs ask that the Court deny Uber's request, at least until the parties have a ruling on the threshold question of whether Plaintiffs are Uber's employees.

Dated:  September 16, 2014                                   MORGAN, LEWIS & BOCKIUS LLP


                                                             By  /s/Robert Jon Hendricks
                                                                 Robert Jon Hendricks
                                                                 Attorneys for Defendant


Dated:  September 16, 2014                                   LICHTEN & LISS-RIORDAN, P.C.


                                                             By:    /s/ Shannon Liss-Riordan
                                                                 Shannon Liss-Riordan, pro hac vice
                                                                 Attorneys for Plaintiffs


## ECF ATTESTATION

I, Robert Jon Hendricks, am the ECF User whose ID and Password are being used to file this DISCOVERY LETTER BRIEF.  In compliance with General Order 45 X.B, I hereby attest that Shannon Liss-Riordan has concurred in this filing.

Dated: September 16, 2014                                    MORGAN, LEWIS & BOCKIUS LLP


                                                             By /s/ Robert Jon Hendricks
                                                                 Robert Jon Hendricks
                                                                 Attorneys for Defendant
                                                                 UBER TECHNOLOGIES, INC.