October 3, 2014

**VIA ECF**

The Honorable Donna M. Ryu
United States District Court
Oakland Courthouse, Courtroom 4 - 3rd Floor
1301 Clay Street, Oakland, CA 94612

Re:   *O'Connor, et al. v. Uber Technologies, Inc.,* **Case No. 3:13-cv-03826-EMC**

Dear Judge Ryu:

The parties hereby submit this joint discovery letter brief pursuant to Civil Local Rule 37-1 and this Court's standing order on discovery.  This is a putative class action on behalf of drivers in California who claim that Defendant misclassified them as independent contractors.  Plaintiffs allege that Defendant failed to reimburse business expenses in violation of Labor Code § 2802 and violated Business & Professions Code §§ 17200 *et seq.* by not remitting tips to drivers (in violation of Cal. Lab. Code § 351).  Motions for summary judgment are due on November 21, 2014.  The hearing on summary judgment is scheduled for January 15, 2014.

Counsel for the parties met and conferred regarding this dispute in writing and by telephone on September 25, 2014.  The parties believe they are at an impasse regarding these issues, and their respective positions are set forth below.  Copies of Defendant's responses to Plaintiffs' requests at issue, and Plaintiffs' responses to Defendant's requests at issue, are attached as Exhibit 1.[1]

A.    **Information Regarding Deactivations, Warnings, Complaints, and Customer Ratings of Drivers Besides the Named Plaintiffs.**

**Plaintiff's Position**:  Through their Second Requests for Production No. 1 and 2, Plaintiffs requested documents relating to the "deactivation" of drivers, including any responses received from drivers regarding their deactivation and any internal communications or responses related to the decision to deactivate drivers.[2] Uber objected on the grounds that the Requests concern

---

[1]   Although this discovery letter exceeds 8 pages, it contains the parties' positions on a number of issues, and thus the parties request that the Court consider this full letter.

[2]   In a recent independent contract misclassification case, Ayala v. Antelope Valley Newspapers, Inc., 2014 WL 2924954, *3 (Cal. June 30, 2014), the California Supreme Court observed that "[p]erhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because '[t]he power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities.'" Id. at 6.  Thus, evidence regarding the reasons for the discharge of Uber drivers is clearly relevant here.

   In addition to information about deactivating drivers, Plaintiffs requested, through their Second Requests for Production No. 3 and 4, all documents showing complaints, warnings, or suggestions about drivers' performance, and all customer ratings for the drivers who received these warnings. Uber has simply refused to provide any such documents for drivers other than the Named Plaintiffs. For the reasons set forth below, Plaintiffs are entitled to production of

"drivers other than the Named Plaintiffs," that the Requests violate the privacy rights of drivers, and that they would be unduly burdensome to produce.[3] Instead, Uber produced what it referred to as a "sample template reflecting communications sent to the individuals whose accounts were deactivated in cities where the Named Plaintiffs are located." Uber failed to produce *any* documents showing internal communications related to the decision to deactivate a given driver and produced no correspondence with drivers regarding their deactivations.[4]

Uber's objections are groundless and the mere eleven pages it produced are woefully insufficient. First, Plaintiffs have themselves gathered and produced emails from many drivers who have contacted counsel regarding their deactivation by Uber, which shows that such emails do exist and that Uber is simply refusing to produce them. See Plfs' Suppl. Doc. Production of September 18, 2014 (which Plaintiffs can provide if the Court desires). By only producing a "sample template of communications sent to individuals whose accounts were deactivated," Uber has produced documents beyond what was sent to Named Plaintiffs, undercutting their argument that only documents that were received by the Named Plaintiffs have any relevance. Instead, they have arbitrarily handed over eleven pages of documents regarding driver deactivations, while withholding the bulk of responsive material.

Second, it is well established that discovery from potential class members besides named plaintiffs is appropriate, even before a court certifies a class.[5] Moreover, here, Judge Chen expressly did not bifurcate discovery in this case between discovery on Named Plaintiffs and discovery on class members. The Court rejected Uber's request for such phased discovery, ruling instead that "[o]ther than is stated, discovery shall not be phased (e.g. between class certification and merits.)" See Dkt 92; Transcript of July 10, 2014, Hearing at 16:12-14.

---

these documents. In particular, the customer ratings are relevant because Uber has argued that drivers would only be subject to deactivation for certain specified reasons, including low ratings. Plaintiffs should have the opportunity to discover whether the drivers' ratings do in fact correlate with which drivers were chosen for deactivation.

[3]  In order to address the burdensomeness argument, Plaintiffs suggested the parties could agree on key-word search terms to locate relevant documents. Plaintiffs also offered that they could bear some of the cost involved, if such production proved to be overly expensive.

[4]  One such driver is Guy Gottlieb, who filed a declaration in support of the Plaintiffs and was subsequently deactivated. Plaintiffs have sought leave to amend their complaint and add Mr. Gottlieb as a named plaintiff with a retaliation claim. See Dkt. 150. At the deposition of Uber's West Coast General Manager, William Barnes, Uber's counsel instructed the witness not to answer several questions regarding Mr. Gottlieb's deactivation and (over Plaintiffs' counsel's objection) left the room and conferred with the witness while questions were pending. See Barnes Dep. at 106-17. (Plaintiffs can provide a copy of the transcript if the Court desires.) Plaintiffs submit that these instructions and behavior during the deposition were improper, and that Uber should produce any documents (including internal documents) regarding his deactivation (as well as deactivation of other drivers throughout California).

[5]  See, e.g., In re Bank of America, 275 F.R.D. 534, 539 (D. Kan. 2011) (ordering production of putative class members' information; "[i]t appears reasonably likely that these former employees would possess information about the extent of the [challenged] policy or plan"); Khalilpour v. CELLCO P'ship, 2010 WL 1267749, *2 (N.D. Cal. 2010) (same).

(Plaintiffs can provide a copy of the transcript if the Court desires.)  Thus, Uber's objections to providing any information whatsoever from drivers other than Named Plaintiffs is unreasonable and out of step with the Court's express order.[6]

Likewise, Uber's concerns about privacy are misplaced. Courts have repeatedly held that basic discovery regarding potential class members is appropriate and discoverable. See Pioneer Electronics (USA), Inc. v. Superior Court, 40 Cal.4th 360, 373 (2007) ("[c]ontact information regarding the identity of potential class members is generally discoverable"); see also Wiegele v. Fedex Ground Package Sys., 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007). Moreover, these potential class members are at the very least percipient witnesses in this case.

**Defendant's Position:**  Because the parties disputed the proper scope of discovery from the outset of this case, that issue was squarely joined in connection with the parties' case management conferences, and resulted in Judge Chen ordering that the "Parties may proceed with reasonable discovery focused on individual class representatives . . . and high level information and documents relative to class certification and damages." Dkt. No. 92. (emphasis added).  See also id. ("Discovery to be focused and designed not to be overly burdensome in this first phase.") (emphasis added).  Completely ignoring Judge Chen's order and guidance, Plaintiffs served Request Nos. 1 through 4 seeking every document in Defendant's possession, custody, or control regarding every driver in the country (except Massachusetts) relating to such broad topics as deactivation, suggestions, warnings, complaints, and customer ratings. Defendant objected on various obvious grounds (discussed in part below) but, subject to these objections, Defendant produced voluminous documents relating to those topics, including every available communication between Plaintiffs and Defendant regarding any topic whatsoever, as well as the template deactivation-related messages Defendant uses in California, and applicable licensing agreements and driver addenda.  Plaintiffs have also taken 30(b)(6) deposition testimony regarding the same topics, as well as deposition testimony from the individuals who manage Defendant's operations in the cities in which Plaintiffs worked.

Although Plaintiffs now concede their claims are limited to California, there are still **tens of thousands** of partners and drivers who use the Uber App in California. Plaintiffs still seek overly broad and burdensome discovery as to every driver in California when Judge Chen only permitted "high level" discovery and has never authorized such individualized and burdensome discovery.  Plaintiffs effectively seek every single document ***related to*** deactivation, suggestions,

---

[6]     Indeed, at the hearing held on July 10, 2014, the Court recognized the need for discovery beyond just the Named Plaintiffs, noting that "If this were a summary judgment motion solely on this question [of whether drivers were employees or independent contractors], [Defendant] may try to choose to focus on what happened individually here, but given your theory . . . you can come back in opposition and say, well, you can't just look at Mr. X or Ms. Y. There was a – a pervasive right of control.  And here are some affidavits from John Smith and Jane Doe that shows that even though it wasn't exercised in this case . . . this person still belongs to the class of employee." See Transcript of July 10, 2014, Hearing, at 10:23-11:7. Thus, the Court recognized the relevance of discovery on other drivers besides the Named Plaintiffs because it goes directly to the key issue in this case of an employer's overall right to control workers, regardless of whether it is actually exercised in the case of a given Named Plaintiff.

warnings, complaints, and customer ratings, including communications internally and with **_all_** California drivers.  This would require Defendant to engage in an individualized review of communications with every driver in California for the last 4 years in order to determine which are relevant, which are privileged, and which contain trade secret information. It is difficult to conceive how key word searching could identify documents relevant to such broad and amorphous topics.  Moreover, much of the information sought is not contained in systems that can be searched in that manner.  Time-consuming manual searches would be required.  Plaintiffs' cited cases are inapposite, as the parties in those cases were not subject to the same limitations on discovery as ordered here by Judge Chen, nor did those cases involved the substantive, detailed, private, and potentially privileged information being sought here (e.g., background checks).

To the extent Plaintiffs rely on *Ayala v. Antelope Valley Newspapers, Inc*., 2014 WL 2924954, *3 (Cal. June 30, 2014) for the idea that they require every deactivation-related communication in California, they are seriously misguided.  Nothing in *Ayala* stands for that proposition.  In fact, the Court in Ayala focuses on the agreements between the parties in analyzing the issues of control and right to terminate.  Defendant has already produced to Plaintiffs the relevant Licensing Agreements and Driver Addenda.

Second, the documents Plaintiffs seek implicate serious privacy concerns.  Deactivation documents, by their very nature, could reveal highly sensitive personal information, including the results of criminal background checks, driving records, and information that could cause harm to drivers' professional reputations.   It is well established that privacy is a valid objection to discovery requests. *See, e.g. Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 at n. 21 (1984).  Because Plaintiffs seek documents containing private information, they "must do more than satisfy the relevancy standard."  *Save Open Space Santa Monica Mountains v. Superior Court*, 84 Cal.App.4th 235, 252 (2000).  Instead, they must establish a compelling need for the discovery that outweighs the privacy right at issue.  *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 370-71 (2007).  Plaintiffs' argue that the "basic discovery" regarding class members is appropriate, but again cite only to cases allowing for discovery of Plaintiffs' names and contact information.

Courts should also assess whether the private information sought is available from other sources or through less intrusive means.  *Allen v. Sup.Ct. (Sierra)*, 151 Cal.App.3d 447, 449, (1984).  Here, Plaintiffs fail to specify exactly why they need virtually every communication, whether internal or with drivers, in California. Not only have Plaintiffs received the named Plaintiffs' deactivation-related communications and the template communications used across California, but Defendant's corporate deponents also testified to the specific reasons why a driver account could be deactivated.  Plaintiffs have failed to offer a compelling need for this individualized discovery or to explain why the information they have received is insufficient.[7]  There is no

---

[7]   To the extent Plaintiffs' counsel seeks to file affidavits on behalf of other drivers in connection with her summary judgment briefing, she has not encountered any difficulty getting in to contact with numerous drivers.  Not only does she have a website related to this action soliciting communications, but she has represented that hundreds of drivers have been in touch with her as part of the arbitration opt-out process, and her most recent production included deactivation communications she evidently received from several of these drivers.

dispute that deactivations take place for a variety of reasons.

Third, in-house and outside counsel can be and has been consulted regarding deactivations and related issues. As phrased, the requests implicate documents protected by the attorney-client privilege and/or the work product doctrine, or otherwise privileged proprietary or trade secret information. This is particularly true because Plaintiffs request internal communications. Defendant would have to individually review every document to determine if any privilege is implicated.

As to the issue Plaintiffs raise with respect to Defendant's counsel's conferring with Mr. Barnes while questions were pending in his deposition, Defendant notes that such conferences are permitted to assess issues like privilege or privacy, where once the information is disclosed irreparable harm could be done. Civil Standing Order on Discovery, Judge Chen, ¶3.f. Defendant also notes that Plaintiffs' counsel has engaged in the same conduct.

**B.    Information Regarding How Uber Calculated Its Fares And What Customers Were Told Regarding Tips.**

**Plaintiffs' Position**:  Through their Second Requests for Production No. 5 and 6, Plaintiffs requested information regarding how Uber calculated its fares, including any calculation of tips being factored into their fares and any studies, analysis, or research relied upon in making these decisions. Plaintiffs contend that Uber violated Cal. Lab. Code § 351 by not remitting tips to drivers that passengers believe they are paying (based upon representations that Uber has made through its website and marketing materials that tips are included in the fare). At Uber's Rule 30(b)(6) deposition, Deponent Matthew Atkin repeatedly testified that "[t]here's no mention of tip specifically broken out . . . because we've designed fares in such a manner so that there's no need to tip. The … fare fully compensates for the services provided." Atkin Dep. at 50:10-15; 48:12-15. (Plaintiffs can provide a copy of the transcript if the Court desires.) However, when Plaintiffs' counsel attempted to follow-up and determine whether "Uber [has] done any calculations as to what drivers would likely receive under a scenario in which they received tips rather than getting paid the way Uber had set up," or whether Uber accounts for "typical industry standard tips" in creating its fares, Uber's counsel prevented the witness from answering the question and improperly left the room to confer with the witness while a question was pending (over Plaintiffs' counsel's objection), all because of purported concerns regarding "proprietary information." Atkin Dep. at 52-56. Uber has also refused to produce any information regarding how fare amounts were reached, citing concerns about privilege and about relevance in light of the Court's recent Order dismissing some of Plaintiffs' tip-related claims. See Dkt. 136.

Plaintiffs strenuously object to Uber's refusal to provide any information whatsoever regarding how it has made decisions to set rates of compensation for drivers.[8] First, the information at issue is clearly relevant even after the Court's recent order (Dkt. 136), because Plaintiffs' statutory tips

---

[8]    In their meet and confer conference, Plaintiffs suggested that the parties could enter a global stipulation that Uber simply did not take tips into account in setting fares (which is what Uber's San Francisco and Los Angeles General Managers testified to), which would obviate the need for what Uber claims is commercially sensitive discovery.

5

claim remains part of the case and discovery regarding Uber's fares and whether (as it has advertised to customers) tips are included (yet not distributed to drivers as tips), is highly relevant to this claim.[9] Secondly, this information's alleged proprietary nature is not adequate justification for a flat refusal to answer in depositions or produce documents. Indeed, "courts generally eschew an 'absolute privilege for trade secrets and similar confidential information' in favor of a case-by-case approach that balances 'privacy against the need for disclosure.'" ICG Commc'ns, Inc. v. Allegiance Telecom, 211 F.R.D. 610, 614 (N.D. Cal. 2002) (citing Federal Open Market Committee v. Merrill, 443 U.S. 340, 362 (1979)); see also Brooks v. Motsenbocker Advanced Developments, Inc., 2008 WL 109061, at *4 (S.D. Cal. Jan. 8, 2008); Bible v. Rio Properties, Inc., 246 F.R.D. 614, 619-20 (C.D. Cal. 2007).

In addition, Plaintiffs object to Uber's inadequate response to Plaintiffs' First Requests for Production No. 9, which requested "[a]ll documents created or disseminated by Uber at any time that refer in any way to tips, gratuities, or service charges (including any documents directed to drivers, as well as any documents directed to passengers)". In response, Uber produced several print-outs from its website regarding fares, which contained no mention of tips or gratuities, and directed Plaintiffs to search the internet archives so that they could locate other earlier versions of the website themselves. When Plaintiffs conducted this search, they found earlier versions of the very same webpages that Uber had produced, but which did include references to tips and gratuities being included in the fare (language that was apparently removed by Uber at some point from its website). Based on this pointedly selective production by Uber of only the documents that support its defense that it did not make representations to customers regarding tips and gratuities, Plaintiffs know that Uber has not fully produced all documents it has created or disseminated that refer in any way to tips, gratuities, or service charges, and Plaintiffs urge that Uber be required to perform a more exhaustive search and that it be required to produce all such documents, including all webpages and marketing materials, that contain any mention of tips or gratuities.

Plaintiffs further object to Uber's failure to respond to Plaintiffs' First Requests for Production No. 10 and 11, concerning passenger inquiries about tips and Uber's responses. Again, this information is highly relevant to Plaintiffs' statutory gratuity claim as it relates to Plaintiffs' claim that passengers understood, based on Uber's website and marketing materials, that tips are included in the fare. Uber has flatly refused to produce this information. Moreover, Plaintiffs' counsel suggested that, like with the emails regarding driver deactivations and warnings, the parties could agree to key-word search terms that Uber could use on its emails with passengers and drivers to respond to these requests.

**Defendant's Position:** While predicating many of their broad and intrusive requests on their "tip" claim, Plaintiffs are in denial with respect to effect of Judge Chen's September 4th order. Plaintiffs' original theories of tortious interference with prospective business advantage, breach of implied contract (under a third-party beneficiary theory), and violation of the UCL under the

---

[9] Despite Uber's argument to the contrary, Plaintiffs' statutory tips claim is not limited to gratuities that patrons "indicate on a credit card slip". Cal. Lab. Code § 351 provides that "[n]o employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron…"

fraud prong — all of which were predicated on Uber's communications to with customers and what plaintiffs claim customers understood — have been dismissed with prejudice by the Court. *See* Dkt. No. 136.  Currently, Plaintiffs can only recover purported tips if they can establish a violation of California Labor Code § 351. Section 351 is very clear with respect to an employer's obligation in the context of payments by credit card:

> An employer *that permits* patrons to pay gratuities by credit card **shall pay the employees the full amount of the gratuity** *that the patron indicated* **on the credit card slip**, without any deductions for any credit card payment processing fees or costs that may be charged to the employer by the credit card company.

Cal. Labor Code § 351 (emphasis added).  Under the only applicable statute, Defendant's intent, communications, or how it determines fares do not go to the required elements of the statute, or relate to "the amount of the gratuity that the patron indicated on the credit card slip" or whether Defendant failed to remit such amount.  Pertinent to this case, Labor Code § 351 focuses only on whether a customer indicated a tip on the credit card slip and whether that tip was then conveyed by the employer.  Defendant notes that no rider ever indicated any tip amount on any credit card slip for any named plaintiff or any putative class member as to whom Plaintiffs claim to be typical.  Plaintiffs know this.  Moreover, customers can and do leave cash tips, and each plaintiff admitted in RFA responses that they received 100% of any cash tips that they received while using the Uber application.

Further, how Defendant calculates its fares is also highly proprietary, privileged and confidential, because it would reveal sensitive information regarding revenue, profit margins, expenses, the factors Defendant applies to its pricing decisions, and its decision-making strategy.[10] *See, e.g. In re Electronic Arts, Inc.,* 298 Fed. Appx. 568, 569-70 (9th Cir. 2008) (finding that pricing terms, royalty rates, and guaranteed minimum payment terms found in a licensing agreement were subject to protection because the release of this business information may harm the party's "competitive standing"), citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).  Defendant has already produced publicly available information showing that no tip is added to the fare with respect to the services used by Plaintiffs.

Plaintiffs' suggestion that Defendant has selectively produced pages from its website is misleading. As a start up company, many older versions of documents (including web pages) that pre-date this lawsuit and any preservation obligation simply were not archived or retained or may have been overwritten or lost.  Screenshots of older versions of websites are available on the Internet through an Internet archiving service.  In response to Plaintiffs' requests, Defendant provided numerous pages it obtained through that service but, realizing the costs involved, also directed Plaintiffs to the site so they could decide for themselves whether the cost of locating archived material outweighed the benefit.  Defendant met its obligations.

---

[10] Plaintiffs concede that the Court must balance privacy interests against the need for disclosure of proprietary information, but fail to explain why their purported need for the information outweighs Uber's privacy interests.  Because this information is not relevant following the Court's September 4, 2014 Order, privacy interests clearly outweigh any purported need.

A protective order would not adequately address Defendant's concerns as Plaintiffs' counsel has already violated a protective order in another action pending against Defendant, *Lavitman v. Uber Technologies, Inc., et al.*, by using in this case documents subject to a protective order forbidding use of any documents marked confidential in <u>any</u> other action. Atkin Depo., 38:6-20.

C.  **Un-Redacted Arbitration Opt-Out Forms As Well As Information Regarding When The Licensing Agreements Were Distributed And Accepted By Drivers.**

**Plaintiffs' Position**: Uber has distributed an arbitration clause to its drivers which provides for a 30-day opt-out period after a driver has accepted Uber's licensing agreement. Plaintiffs object to Uber's refusal to provide un-redacted arbitration opt-out forms from drivers as well as documents showing when these drivers accepted their licensing agreements, which are necessary in order to determine which drivers have timely opted out. The documents were requested both in Plaintiffs' First Requests for Production No. 13 and 14, and Plaintiffs' Second Request for Production No. 7. In response, Uber produced hundreds of completely redacted opt-out forms and absolutely no information regarding when agreements were accepted by drivers. Again, Uber cites to concerns about privacy and the impropriety of class-wide discovery, as well as burdensomeness. However, such information is expressly within the scope of the Court's Order on Discovery (which did not bifurcate class discovery and discovery on Named Plaintiffs), and is critically important to establish whether drivers opted out of the arbitration clause in a timely manner. Moreover, given that Uber has already produced redacted versions of the opt-out forms, it would not be burdensome for Uber to produce unredacted versions of these forms.[11]

**Defendant's Position:** Assessing whether drivers opted out of the arbitration clause in a timely matter is not "material[] to enforceability of arbitration clauses" at a high level. Dkt. No. 92. As Defendant does not contest the numerosity of the putative class, this information is irrelevant at this time and should be deferred until after it is know whether any claim survives summary judgment. Moreover, as a large proportion, if not a majority, of the opt-out requests were received on a form created by Plaintiffs' counsel, Plaintiffs' request for unredacted forms is disingenuous as Plaintiffs already have these documents. Defendant, however, must protect itself from claims of privacy violation.

D.  **Plaintiffs are Entitled To Additional Discovery Regarding Training Materials and Standards.**

**Plaintiffs' Position**: Finally, through their First Request for Production No. 3, 4, and 5, Plaintiffs requested information regarding driver requirements, evaluations, feedback, and suggestions or expectations that Uber communicated to its drivers. These documents are clearly relevant to the issue of the control that Uber had over its drivers. Uber responded that it was providing "an

---

[11] Many of these forms were sent to Uber by Plaintiffs' counsel. However, because Uber has not provided the information that Plaintiffs have requested showing the dates that the drivers accepted their licensing agreement, Plaintiffs' counsel are not able to determine which of these drivers opted out within the 30-day window. Many of them are asking Plaintiffs' counsel if they opted out in time. Although Plaintiffs' counsel represent them as putative class members, they are not able to assist them in answering this question because Uber has refused to produce this information.

assortment" and "exemplars" of such materials. To the extent that Uber has not more exhaustively provided Plaintiffs with all such relevant materials, it must do so. Indeed, in addition to the "exemplars" that Plaintiffs obtained from Uber, Plaintiffs have received additional training materials directly from drivers who have contacted their counsel, which *Plaintiffs* have now produced to Uber, although Uber has never produced them to Plaintiffs.[12] It appears clear from the assortment of materials that Plaintiffs have gathered from drivers who have contacted their counsel that Uber's production of these materials was far from complete.

**Defendant's Position:** In light of Judge Chen's order, the individualized and burdensome discovery Plaintiffs seek is inappropriate at this stage. Defendant produced all communications to the named Plaintiffs, which included hundreds of documents reflecting driver requirements, evaluations, feedback, and suggestions. A large portion of these communications—the MailChimp messages—reflect generic communications sent to drivers across California. As such, these documents contain the information Plaintiffs seek. Defendant also produced a sampling of training or "onboarding" materials that were not unduly burdensome to collect. As Defendant does not maintain a central repository of such documents, locating all of the materials that have been used in California would be inappropriately burdensome and run contrary to the mandate to focus on "high level" discovery. As discussed above, as a fast growing and decentralized start-up, Uber did not systematically retain documents used early on. As such putative class member may have documents that Uber does not.

E.  **Plaintiffs Must Produce All Responsive Documents That Are in Their "Possession, Custody, or Control"**

**Defendant's Position:** Ironically, Plaintiffs have refused to do even the minimum to meet their obligations. Not only have they failed to produce their tax records (the subject of another letter brief, but, in response to Defendant's Requests for Production of Documents, each Plaintiff also responded only that he "will produce non-privileged documents in his possession."[13] However, Rule 34 of the Federal Rules of Civil Procedure requires production of documents in the party's "possession, custody, or control." Courts have made clear that "actual possession of the requested documents is not required" for the documents to be in a party's "possession, custody, or control." *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995). Instead, documents are within a party's "possession, custody or control" for purposes of Federal Rule of Civil Procedure 34 "if the party…has the legal right to obtain the documents on demand." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006), citing *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995). This broad standard encompasses documents in the possession of a party's attorney. *Martin v. Loadholt*, 2014 WL 2465560, at *5 (E.D. Cal. June 2, 2014) (cautioning a party that responses are "interpreted in light of [a party's] duty to respond as to any and all documents in her possession ***or subject to her custody or control and that of her***

---

[12] For example, Plaintiffs received "onboarding" materials that were in use in San Francisco to instruct drivers regarding Uber's system and practices, but have not received materials used in Los Angeles. Plaintiffs request that Uber be ordered to produce all such materials that have been used throughout the state of California.

[13] This includes Plaintiff O'Connor's responses to RFP Nos. 1-19, 21-25, 28-29, 31-44, 46, 48-52, 54-58, 62-81; Plaintiff Colopy's responses to RFP Nos. 1-19, 21-25, 28-29, 31-44, 46-52, 54-58, 62-71; and Plaintiff Manahan's responses to RFP Nos. 1-25, 28-29, 31-45, 47, 49-59, 62.

*or her agents and <u>attorneys</u>.*") (emphasis added).

Plaintiffs have failed to produce requested documents and then their counsel has sought to question defense witnesses on these previously unproduced documents. *See, e.g.* Abyzov Depo., 99:7-101:20.  Likewise, Plaintiff Manahan failed to produce trip histories related to his use of the Lyft and Sidecar applications (which he admittedly used at the same time he used the Uber App), (RFP Nos. 16, 21, and 22).  For each of these requests, Plaintiff responded only that he would "produce non-privileged responsive documents in his possession," yet has refused to produce his trip histories through the Lyft and Sidecar apps which are readily obtainable by him through his Lyft and Sidecar accounts. Despite multiple written and verbal communications with Plaintiffs' counsel on this issue, Plaintiffs have failed to amend their responses or provide full supplementation.  They should be required to do so. And Plaintiffs should stop trying to use in deposition requested documents not produced.

**Plaintiffs' Position:**

In their responses to Uber's document requests, Plaintiffs repeatedly objected to Uber seeking production of documents that are equally within their own possession and control. Because of the numerous deficiencies in Uber's production, Plaintiffs have resorted to locating additional Uber marketing and training materials on the Internet.  These publicly available documents were never in the "custody" or "control" of Named Plaintiffs and are equally within the possession and control of Uber.  Uber's demand that Plaintiffs should be faulted for not having earlier produced copies of Uber's own website, and Uber's own documents that were distributed to drivers or passengers, which Uber failed to produce to Plaintiffs in discovery, is absurd. <u>See</u> <u>Valvoline Instant Oil Change Franchising v. RFG Oil, Inc.</u>, 2014 WL 2919518, at *7 (S.D. Cal. June 27, 2014) ("When documents . . . are 'equally accessible' to all parties, it is not necessary for the Court to order production").  Moreover, Uber's meritless objection is moot, because Plaintiffs have supplemented their original document production with additional documents they have obtained, both from the Internet and from other drivers, including some copies of Uber's own website and advertisements.  <u>See</u> Supplemental Document Productions on September 18, 2014 and September 26, 2014.  Plaintiffs will continue to supplement their production as they obtain additional documents, and Uber should be required to continue to produce relevant requested documents within its custody and control as well.

With respect to Mr. Manahan, as Plaintiffs have explained to Uber, he has not produced trip histories through Lyft and Sidecar because he does not have access to these materials.


Dated: October 3, 2014                    LICHTEN & LISS-RIORDAN, P.C.
                                          By: /s/ Shannon Liss-Riordan
                                          Shannon Liss-Riordan, *pro hac vice*
                                          Attorney for Plaintiffs

Dated: October 3, 2014                    MORGAN, LEWIS & BOCKIUS LLP

                                          By /s/Robert Jon Hendricks
                                          Robert Jon Hendricks
                                          Attorney for Defendant


### ECF ATTESTATION

I, Shannon Liss-Riordan, am the ECF User whose ID and Password are being used to file this DISCOVERY LETTER BRIEF. In compliance with General Order 45 X.B, I hereby attest that Robert Jon Hendricks has concurred in this filing.


Dated: October 3, 2014                    LICHTEN & LISS-RIORDAN, P.C.

                                          By /s/ Shannon Liss-Riordan
                                          Shannon Liss-Riordan
                                          Attorney for Plaintiffs