United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, *et al.*, | No. C-13-03826 (EMC) DMR |
| Plaintiffs, | **ORDER ON JOINT DISCOVERY LETTER [DOCKET NO. 157]** |
| v. | |
| UBER TECHNOLOGIES INC, | |
| Defendant. | |

On October 3, 2014, the parties filed a joint discovery letter brief in which both parties moved to compel further discovery responses. [Docket No. 157 (Jt. Letter).] The court conducted a hearing on the matter on October 30, 2014. With one exception noted below, this order summarizes the rulings issued during the hearing.

## I. Background

Plaintiffs Douglas O'Connor, Thomas Colopy, David Khan, Matthew Manahan, Wilson Rolle, Jr., and William Anderson filed this putative class action against Uber Technologies, Inc. ("Uber") in August 2013. Plaintiffs seek to represent a class of drivers who provide passenger car service in California for customers who hail rides using Uber's mobile phone application. Plaintiffs allege that Uber misclassifies drivers as independent contractors and forces drivers to bear the expenses of their employment, including vehicle expenses and gas. They also allege that Uber discourages passengers from tipping drivers by advertising that the fare includes a gratuity, but that

Uber does not pay drivers the full amount of the gratuity built into the fare. The present case management schedule permits Uber to file an early summary judgment motion, prior to class certification, on the question of whether Uber drivers are independent contractors or employees. Such a motion must be filed by December 4, 2014, with Plaintiffs' opposition due by December 29, 2014.

In the present joint discovery letter, Plaintiffs seek to compel further responses to fifteen requests for production (RFPs), broken down into four categories of documents. Uber also seeks an order compelling Plaintiffs to provide further documents in response to its RFPs on the grounds that they have not produced all responsive documents in their "possession, custody, or control."[1]

## II. Legal Standard

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). "[T]he party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012).

## III. Discussion

**A. Information Regarding Deactivation of Drivers Other Than Named Plaintiffs**

Plaintiffs seek all documents related to the "deactivation" of drivers, including correspondence with drivers and internal communications. Uber produced responsive documents for the named Plaintiffs, as well as a sample template for communications sent to drivers whose

---

[1] The court notes that its Standing Order requires the parties to submit one exhibit that sets forth each disputed discovery request in full, followed immediately by the objections and/or responses thereto. Here, the parties simply attached one unmarked, un-tabbed 116-page exhibit that appears to contain all of the parties' RFP responses to date, and made no effort to separate out the discovery requests and responses that are not at issue in the joint letter. For future discovery disputes, the parties shall provide an exhibit that sets forth only those discovery requests and responses at issue.

accounts were deactivated in the cities where the named Plaintiffs are located. However, Uber objects to producing documents for putative class members on the grounds that such discovery is premature, as recognized by the presiding judge, the Honorable Edward M. Chen, who has imposed limits on class member discovery at this stage of the litigation. It also objects that the documents implicate putative class members' privacy rights, and that the request is burdensome. Finally, Uber asserts that certain responsive documents are protected from discovery by the attorney-client privilege or the work product doctrine.

Plaintiffs argue that the requested information is relevant to the question of whether Uber drivers are employees or independent contractors, the subject of Uber's upcoming summary judgment motion. According to Plaintiffs, evidence regarding the reasons for the deactivation or discharge of drivers bears on the question of Uber's "right to control the manner and means of accomplishing the result desired," which is the "principal test of an employment relationship" for purposes of determining drivers' status. *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531 (2014) (quoting *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989)) (quotation marks omitted). In *Ayala*, the California Supreme Court wrote that "whether the hirer can discharge the worker without cause" is "[p]erhaps the strongest evidence of the right to control . . . because '[t]he power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities.'" *Id.* (quoting *Malloy v. Fong*, 37 Cal. 2d 356, 370 (1951)). Uber counters that in *Ayala*, the California Supreme Court held that the question of "whether and to what extent" a hirer exercises control over workers is the "wrong legal question"; instead, "what matters is whether a hirer has the '*legal right* to control the activities of the alleged agent.'" *Id.* at 535 (citation omitted). Therefore, Uber argues, individualized termination documents are not relevant to the question of whether Uber has the legal right to control the activities of the drivers. In addition, according to Uber, such individualized class member documents fall outside the discovery boundaries as delineated by Judge Chen.

The court begins by addressing the current scope of discovery. In the April 18, 2014 minute order following the hearing on Uber's motion for reconsideration, Judge Chen ordered the following discovery limits:

3

> Parties may proceed with reasonable discovery focused on individual class representatives, facts material[] to enforceability of arbitration clauses, and high level information and documents relative to class certification and damages. Discovery to be focused and designed not to be overly burdensome in this first phase. Other than is stated, discovery shall not be phased (e.g. between class certification and merits.)

[Docket No. 92 (Minute Order).] The parties offer competing characterizations of Judge Chen's order. Plaintiffs contend that discovery has not been bifurcated between named Plaintiff and putative class member discovery, while Uber argues that Judge Chen expressly limited the parties to "high level information," thus precluding discovery of information specific to individual putative class members at this time.

Having reviewed the transcripts of the April 18, 2014 hearing and the July 10, 2014 case management conference, at which the court discussed sequencing of motions, this court agrees with Plaintiffs that Judge Chen did not prohibit all class member discovery.[2] However, he ordered the parties to focus on "high level information" at this stage. In light of Judge Chen's instructions, as well as the proportionality principles set forth in Federal Rule of Civil Procedure 26(b)(2)(C)(iii), the court finds that some individualized discovery relevant to Uber's termination of drivers is relevant and appropriate at this time, given the forthcoming summary judgment motion. Although Uber has produced a sample template for communications with deactivated drivers, Plaintiffs are entitled to conduct some limited discovery to flesh out whether and how Uber had the legal right to control driver activities through the power to deactivate them. *See Ayala*, 59 Cal. 4th at 535 (court's emphasis on written contract between parties "is not to say the parties' course of conduct is irrelevant. While any written contract is a necessary starting point, . . . the rights spelled out in a contract may not be conclusive if other evidence demonstrates a practical allocation of rights at odds with the written terms.").

---

[2] For example, at the July 10, 2014 case management conference, Judge Chen acknowledged the need for some discovery regarding putative class members, saying, "[Defendant] may try to choose to focus on what happened individually here, but given your theory and your *Ayala* theory, you can come back in opposition and say, well, you can't just look at Mr. X or Ms. Y. There was a – a pervasive right of control. And here are some affidavits from John Smith and Jane Doe that shows that even though it wasn't exercised in this case, there was a perva– therefore, you know, this person still belongs to the class of employee." (Hr'g Tr., July 10, 2014 at 10:24-11:7.)

4

According to Uber, there are tens of thousands of drivers who use the Uber app in California; therefore, production of documents regarding a limited, random sample of deactivated drivers is not unduly burdensome. At the hearing, the parties were instructed to immediately meet and confer regarding the selection of a random sample of 100 deactivated California drivers. By November 10, 2014, Uber shall produce to Plaintiffs all responsive documents regarding those drivers' deactivations, including communications with the drivers and any internal communications about those specific deactivations. Uber shall also produce a privilege log indicating whether it has withheld any documents on the basis of attorney-client privilege and work product protection. Uber's concerns regarding driver privacy rights are adequately addressed through the protective order that is already in place in this matter. To the extent the production of any of the deactivation-related documents raises exceptional concerns regarding drivers' privacy, the parties shall meet and confer as to those documents and present any remaining disputes to the undersigned in accordance with the court's Standing Order regarding resolution of discovery disputes.

## B. Information Regarding Fare Calculations and Tips

Plaintiffs seek documents related to their claims for unpaid tips, including documents regarding how Uber calculates fares and whether and how tips are factored into fares, documents created or disseminated by Uber that refer to tips, and inquiries or complaints about tips as well as Uber's responses thereto.

Plaintiffs argue that the requested documents are relevant to their claim that Uber violated California Labor Code section 351 by not remitting tips to drivers that passengers believe they are paying, based upon representations made by Uber that tips are included in the fares.[3]

---

[3] Section 351 provides, in relevant part:

> No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron . . . Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for. An employer that permits patrons to pay gratuities by credit card shall pay the employees the full amount of the gratuity that the patron indicated on the credit card slip, without any deductions for any credit card payment processing fees or costs that may be charged to the employer by the credit card company.

Cal. Lab. Code § 351.

Uber argues that the requested information is not relevant to Plaintiffs' existing tip claim. Uber bases its assertion on its interpretation of Judge Chen's September 4, 2014 order granting Uber's motion for judgment on the pleadings and dismissing Plaintiffs' claims for tortious interference with prospective business advantage, breach of implied contract under a third-party beneficiary theory, and violation of the Unfair Competition Law (UCL), California Business and Professions Code section 16200 *et al.*, under the fraud prong.

At the October 30, 2014 hearing on this dispute, the court explored the contours of Plaintiffs' tip claim, and made an oral ruling regarding the scope of that claim. Upon further review, such a ruling is premature. However, Plaintiffs' motion to compel is denied for another reason; discovery into this area is premature, and should not go forward at this time because it falls outside the current scope of discovery as delineated by Judge Chen. If Plaintiffs survive the motion for summary judgment on the independent contractor issue, they may renew their requests for discovery related to their tip claim.

### C.     Unredacted Arbitration Opt-Out Forms

Plaintiffs seek documents identifying which drivers opted out of Uber's arbitration agreement, and whether such opt-outs were timely made. In response, Uber produced hundreds of completely redacted opt-out forms, and failed to produce any documents from which Plaintiffs can determine the timeliness of the opt-outs.

Uber resists further production, arguing that Judge Chen directed the parties to proceed with discovery focused on "facts material[] to enforceability of [the] arbitration clauses." According to Uber, the requested discovery is not material to the enforceability of its arbitration clause.

The court finds that the information regarding opt-outs is discoverable. The information will aid counsel in understanding the parameters of the putative class. It does not run afoul of Judge Chen's order, as he directed the parties to conduct discovery of "larger documentation/higher-level documentation with respect to class-cert. issues, numerosity, commonality, et cetera . . ." (Hr'g Tr., April 18, 2014 at 69:11-22.) The requested documents are specific and easy to compile, and therefore will not be burdensome to produce. Uber shall produce all responsive documents by November 10, 2014.

### D. Training Materials and Standards

Plaintiffs seek information regarding driver rules, requirements, and expectations, as well as evaluations, feedback, and suggestions. Plaintiffs argue that such information is relevant to the issue of the amount of control Uber exercises over its drivers. Uber responds that it will provide communications with the named Plaintiffs, as well as "an assortment of PowerPoint presentations, handouts, and other related materials" used by Uber. Plaintiffs contend that this response is inadequate, and assert that they have received additional training materials directly from drivers which were never produced by Uber. For example, Plaintiffs received "onboarding" or application enrollment process materials used in San Francisco to instruct drivers regarding Uber's system and practices, but have not received materials used in Los Angeles. In response, Uber argues that it does not maintain a central repository of training or "onboarding" materials, and as a fast-growing and decentralized start-up, Uber did not systematically retain documents used early on. Accordingly, Uber contends that locating all of the materials that have been used in California would be burdensome.

Documents showing driver expectations, rules, requirements, and policies used in California are directly relevant to the question of whether Plaintiffs and the putative class are employees or independent contractors. Uber is not required to produce every responsive communication sent to each driver, as large-scale individualized production goes beyond the scope of allowable discovery at this stage; exemplars are satisfactory. However, Uber shall employ its significant resources to conduct a thorough and comprehensive search for responsive documents, including retrieving documents that may not have been systematically retained by the company. To the extent Plaintiffs have examples of responsive documents which have not been produced by Uber, Plaintiffs shall provide such documents with Uber in order to facilitate Uber's search for responsive documents. Uber shall produce all remaining responsive documents in its possession, custody or control by November 10, 2014.

### E. Plaintiffs' Responses to Uber's RFPs

Finally, Uber moves to compel Plaintiffs to fully respond to its RFPs by producing all documents in their possession, custody, or control. (Joint Letter 9 (citing Fed. R. Civ. P. 34).)

7

1   According to Uber, Plaintiffs have stated that they will produce all documents in their "possession"
2   only, and have not indicated whether their productions are complete. Uber takes issue with
3   Plaintiffs' responses to nearly all of its RFPs, although it provides only one example of documents
4   that Plaintiffs have failed to produce. (*See* Joint Letter 9 n.13.) Specifically, Uber complains that
5   Plaintiff Manahan has refused to produce trip histories related to his use of the Lyft and Sidecar
6   applications. Plaintiffs contend that Manahan does not have access to his trip histories. It is not
7   clear whether he has requested these from Lyft and Sidecar, nor does he explain the process he
8   would need to follow in order to obtain such information. In short, the parties have not provided
9   sufficient information for the court to determine whether Manahan's Lyft and Sidecar trip histories
10  are within his possession, custody or control within the meaning of Rule 34.

11  By November 10, 2014, Plaintiffs shall supplement their responses and productions to
12  indicate whether they have produced all responsive documents in their possession, custody or
13  control, consistent with their obligations under the Federal Rules of Civil Procedure. In addition, the
14  parties shall meet and confer regarding Plaintiff Manahan's Lyft and Sidecar trip histories to discuss
15  the parties' obligations to obtain such documents and to determine the most efficient way to produce
16  the documents.

### IV. Conclusion

18  For the foregoing reasons, Plaintiffs' motion to compel the production of documents is
19  granted in part and denied in part. Uber shall produce additional documents discussed above by
20  November 10, 2014. In addition, Uber's motion to compel is granted in part and denied in part.
21  Plaintiffs shall serve supplemental responses to Uber's RFPs and produce documents by November
22  10, 2014.

24  IT IS SO ORDERED.

26  Dated: November 6, 2014



DONNA M. RYU
United States Magistrate Judge

8