UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, *et al.*, | No. C-13-3826 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART ADMINISTRATIVE MOTION TO FILE UNDER SEAL** |
| UBER TECHNOLOGIES, INC., *et al.*, | |
| Defendants. | **(Docket No. 221)** |

On December 30, 2014, Plaintiffs filed their opposition to Defendant Uber Technologies' currently pending summary judgment motion. *See* Docket Nos. 211 (Summary Judgment Motion); 222 (Opposition to Summary Judgment). Plaintiffs also filed an administrative motion to seal certain discovery materials attached to their opposition. Docket No. 221. As required by this Court's Local Rules, the parties that designated the relevant materials as confidential pursuant to a stipulated protective order timely filed declarations in support of Plaintiffs' administrative motion to seal. Docket Nos. 224-25 (Supporting Declarations); *see also* N.D. Cal. Local Rule 79-5(e)(1). The Court has reviewed those declarations, and now grants in part and denies in part Plaintiffs' administrative motion to file under seal.

A.  Applicable Legal Standard

A party seeking to seal a judicial record submitted in connection with a dispositive motion bears the burden of establishing that "compelling reasons" support the sealing request. *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006); *see also Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-cv-1846-LHK, 2012 WL 2913669, at *1-2 (N.D. Cal.

Jul. 17, 2012). More specifically, the party seeking to maintain records under seal must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure [of court records], such as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at 1178-79 (internal modifications and quotation marks omitted) (citations omitted). In order to grant a motion to seal documents when applying the "compelling reasons" standard, this Court must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* at 1179 (citations omitted). "The presumption of access is not rebutted where documents subject to a protective order are filed under seal as attachments to a dispositive motion. The compelling reasons standard continues to apply." *Id.* at 1179 (internal modifications and quotation marks omitted) (citations omitted).

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of the records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). The "mere fact that the production of records may lead to a litigant's embarrassment" will not compel the court to seal its records. *Id.* Or, as a number of courts in this district have suggested, "only documents of *exceptionally sensitive information*" will be kept from the public. *Apple*, 2012 WL 2913669, at *2 (emphasis added); *see also Oracle America v. Google, Inc.*, No. 10-cv-03561-WHA, at ECF No. 540 (noting that sealing motions "will be denied outright" unless counsel identified "a limited amount of exceptionally sensitive information that truly deserves protection").

B.  Application of the Compelling Reasons Standard

The Court now applies the above-described standard to the discovery materials sought to be sealed in Plaintiffs' administrative motion:

1.  Exhibit 21

Uber maintains that Exhibit 21 "contain[s] commercially valuable information regarding past issues with the functionality of the Uber driver application and Uber's strategies and procedures that

2

1 it developed to address those issues." Docket No. 225 (Uber Supporting Declaration). This
2 representation appears inaccurate. The Court has reviewed Exhibit 21 in its entirety. The document
3 contains a series of emails between an Uber driver and a (presumably low level) Uber employee
4 regarding the driver's claimed issues with the Uber application freezing, causing him to allegedly
5 receive smaller payments than he believed he was entitled to. Uber's apparently "commercially
6 valuable strategy" in response to this functionality "issue" was to inform the driver that such
7 occurrences "are often due to network errors . . . associated with Verizon's network connection and
8 are out of Uber's control." Docket No. 221-5. Put simply, nothing about Exhibit 21 rises to the
9 level of a trade secret or commercially valuable information.[1]

10      Uber also maintains that Exhibit 21 is sealable because it contains "potentially embarrassing
11 facts about a non-party to this litigation, who is clearly identified by name and whose account was
12 deactivated." Docket No. 225. The Court recognizes the non-party's privacy interests, and finds
13 that such an interest can be appropriately balanced with the public's right to access by redacting
14 personal identifying information from Exhibit 21. *See, e.g.*, *G&C Auto Body Inc. v. Geico General*
15 *Insurance Co.*, No. C06-4898 MJJ, 2008 WL 867372, at *2 (N.D. Cal. Mar. 11, 2008) (finding that a
16 non-party's privacy interest in information with "little or no relevance to the issues raised by [the]
17 summary judgment motions" is sufficient to satisfy the compelling reasons standard). Redaction of
18 identifying information is particularly appropriate here, because the public's interest in the name of
19 the terminated driver is likely insignificant, as the exact name is irrelevant to the legal issues in this
20 case. By contrast, the public's interest in the substance of the communications is likely greater, as
21 the substance is relevant to analyzing the merits of Uber's pending summary judgment motion. *See*
22 *id.* Consequently, the Court denies the request to seal Exhibit 21. Exhibit 21 shall be filed on the
23 public docket with the driver's name and personal identifying information redacted.
24 ///
25 ///
26 ///

---

28 [1] Indeed, the Court has doubts Exhibit 21 would be sealable even under the "good cause" standard that applies to discovery materials that are not submitted along with dispositive pleadings.

3

#### 2. Exhibit 22

Uber claims Exhibit 22 is sealable because it contains "potentially embarrassing facts about a non-party to this litigation whose account was deactivated, and who is identified by name." Uber does not otherwise contend Exhibit 22 is sealable, and the Court is convinced that it is not. Thus, Exhibit 22 shall be filed on the public docket, but with the driver's personal identifying information redacted. Here, that appears to be the individual's email address.

#### 3. Exhibit 23

Uber contends Exhibit 23 is sealable because it contains "commercially valuable information regarding Uber's strategies and procedures developed to improve its competitiveness against other similar technology companies." Again, Uber's description appears false.[2] Exhibit 23 is a spreadsheet listing drivers who were "fired" from the Uber platform or otherwise received performance warnings from Uber. For example, one driver is listed as "deactivating, low rating, english level." Docket No. 221-7. Another simply states "Deactivated for inactivity. 5 months." *Id.* This type of information does not appear commercially sensitive, but even if it is, it certainly does not amount to a trade secret. *See Kamakana*, 447 F.3d at 1179. Nor is the information exceptionally sensitive. *See Apple*, 2012 WL 2913669, at *2.

However, Uber does once again properly recognize the non-party drivers' privacy interests in the reasons for their termination--some of which are potentially embarrassing. Once again, the parties shall file the relevant exhibit on the public document with driver identifying information redacted.[3]

#### 4. Exhibit 25

Uber contends that Exhibit 25 is sealable because it includes "commercially valuable, non-public information regarding Uber's strategies, policies, and technological capabilities that it developed to bolster its competitiveness against other similar technology companies." This representation is seriously misleading. Exhibit 25 contains two emails with the subject "ANOTHER

---

[2] Uber's counsel are warned that submitting inaccurate or misleading statements to the Court in a declaration is sanctionable conduct that will not be condoned or tolerated.

[3] Here, it should likely be sufficient to simply redact the drivers' last names.

4

TERRIBLE DRIVER." The first email reads, in its entirety: "Get rid of this guy. We need to make some serious cuts of guys below 4.5." Docket No. 221-8. The second email reads, in its entirety: "Done via phone! Remote banning -- I love it." *Id.* This document is clearly not sealable.

5.  Exhibit 26

Uber asks the Court to seal Exhibit 26 because it contains an email where an Uber employee uses "coarse language" which could potentially embarrass that employee. This is not grounds to seal Exhibit 26. As noted above, the "mere fact that the production of records may lead to a litigant's embarrassment" will not compel the court to seal its records. *Kamakana*, 447 F.3d at 1179. The Court notes that, by contrast to the driver's names which the Court will require Uber to redact in other exhibits, the coarse language used by the employee here is relevant to the issues to be decided in this summary judgment motion. Moreover, the employee is not a true non-party to this litigation--he is employed by a party to this action and the communication was sent from his business email account in the scope of his employment. In any event, an employee's use of the "f-word" in a business communication is not so shocking in today's world to warrant sealing of this document. The request is denied.

6.  Exhibit 27

Uber claims Exhibit 27 "contains commercially valuable information regarding Uber's strategies, policies and procedures." Docket No. 225. Again, the Court is not convinced. Exhibit 27 is an email terminating a driver because Uber's business was then "slower than normal," and explaining that Uber looks to terminate drivers in the bottom 5% of its active driver pool as determined by customer feedback. Docket No. 221-10. The Court does not believe this is a "trade secret" or otherwise "exceptionally sensitive" information. Indeed, Uber admits in its publically filed summary judgment motion that it terminates drivers based on customer feedback. *See* Docket No. 211 at 4 (explaining that Uber may "deactivate the accounts of drivers who fall below Defendant's quality standards, based on the average rating they have received from passengers or a pattern of serious complaints from passengers"). However, the Court will order Uber to redact the relevant driver's email address for privacy reasons, again noting that the email address is not

relevant to any of the issues in this litigation, nor would the public have any real interest in its disclosure.

### 7. Exhibit 30

Exhibit 30 is a 22 question multiple choice exam Uber apparently uses to test its drivers' "city knowledge and understanding of the functionality of the Uber App." Docket No. 225. Again, Uber claims these materials are sealable because they contain "commercially valuable information." Uber does not point to specific facts that indicate that the questions (notably provided without answers) here are so sensitive to rise to the level of a trade secret or similar. The Court has reviewed the exhibit and is not convinced this is the case. The request to seal Exhibit 30 is denied.

### 8. Exhibit 32

Exhibit 32 is a series of emails between employees of Uber and 7x7 Executive Transportation, a non-party that trains Uber drivers and which produced the emails pursuant to a document subpoena. 7x7's counsel filed a declaration averring that portions of Exhibit 32 contain confidential information regarding such information as 7x7's product pricing. *See, e.g.*, Docket No. 221-12 at Bates page 453. The Court agrees that 7x7's pricing structure and pricing negotiations could be considered trade secrets, and further finds that such information is minimally relevant (if at all) to the issues raised in Uber's summary judgment motion. Thus, 7x7's request to seal this specific information is granted. Specifically, 7x7 may redact the very last paragraph on Bates page 454, and paragraph number three on Bates page 453. All other information shall be publically filed.

### 9. Exhibit 33

Exhibit 33 contains training materials (largely in the form of a 26 question quiz without the corresponding answers) developed by 7x7 transportation. 7x7 argues the materials contain proprietary mnemonic devices and other training techniques that are commercially sensitive. The Court has reviewed the exhibit and concludes that the public's interest in its disclosure outweighs 7x7's interest in maintaining the secrecy of the exhibit. Moreover, the Court notes that unlike other

///

///

///

non-party materials this Court will permit to be filed under seal, these materials are directly relevant to the issues at the very heart of Uber's summary judgment motion--namely, the level of control Uber exercised over its drivers' work. Thus, 7x7's request to seal Exhibit 33 is denied.

This order disposes of Docket No. 221.

**IT IS SO ORDERED**.

Dated: January 27, 2015

_____
EDWARD M. CHEN
United States District Judge