# EXHIBIT D

DECLARATION OF MICHAEL COLMAN IN SUPPORT OF
DEFENDANT UBER TECHNOLOGIES, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION



**SOFTWARE LICENSE AND ONLINE SERVICES AGREEMENT**

This Agreement constitutes a legal agreement between you ("Transportation Company" or "You") and Uber Technologies, Inc., a Delaware corporation ("Uber" or "Vendor").

Uber is the developer of a mobile application and associated software (the "Software" as defined below) and the Uber Services (as defined below). The mobile application and Software enables a person who has downloaded a copy of the Uber App (as defined below) and signed up as a user to request transportation services from transportation companies who have executed this Agreement and have downloaded and are using the Driver App (as defined below).

Uber does not provide transportation services and is not a transportation carrier.

You are an independent company in the business of providing transportation services, which business you are authorized to conduct in the state(s) and jurisdiction(s) in which you operate. As used herein, "You" and "Transportation Company" shall include your employees, subcontractors, agents and representatives, all of which shall be bound by the terms of this Agreement. You desire to enter into this Agreement for the purpose of accessing and using the Uber Services and Software to increase your transportation business.

In order to use the Uber Services and the associated Software, You must agree to the terms and conditions that are set out below. Upon Your electronic execution of this Agreement, You and Uber shall be bound by the terms and conditions set forth herein.

**1.   DEFINITIONS**

In addition to the terms defined elsewhere in this Agreement, the following definitions apply:

1.1   '"**Affiliated Company**" means a company that directly or indirectly is under control of or controls that relevant party, by having more than fifty percent (50%) of the voting stock or other ownership interest or the majority of the voting rights.

1.2   "**App**" means the software application developed, owned, controlled, managed, maintained, hosted, licensed and/or designed by Uber (or its Affiliated Companies) to run on smartphones, tablet computers and/or other devices, through which the Uber Service is made available.

1.3   "**Change Notice**" has the meaning as set out in Section 5.4 (Invoice Terms).

1.4   "**City**" means the state, city, municipality, place, region or territory in which the Driving Service shall be made available by the Transportation Company.

1.5   "**Data**" means all data with regard to or transmitted using the Device, the App, the Driver App, the Uber Service or the Driver ID, or data relating to the User and/or the Ride.

1.6   "**Device**" means the relevant smartphone or such other device as made available by Uber (in its sole discretion) to the Driver in order for the Driver to use and have (limited) access to the Uber Service and to enable the Driver in providing the Driving Service to the Users.

1.7   "**Driver**" means the person who is a member, employee, contractor or business affiliate of, or otherwise retained by the Transportation Company and who shall render the Driving Service of whom the relevant contact details (including copy of the driver's license) are provided to Uber.

1.8   "**Driver Addendum**" means the applicable terms and conditions that Transportation Company is required to enter into with all Drivers prior to allowing access to the Software and Uber Services. The Driver Addendum is available at www.uber.com, and is specific to certain Uber products and Driver's location. Uber may update the Driver Addendum from time to time at its sole discretion. By consenting to this agreement, You are consenting to the Driver Addendum.

1.9   "**Driver App**" means the software application developed, owned, controlled, managed, maintained, hosted, licensed and/or designed by Uber (or its Affiliated Companies) to run on the Device.

1.10   "**Driver ID**" means the identification and password key allotted by Uber to a Driver by which the Driver can access and use the Driver App and Device.

July 2013                                                                                                                                UBE-OCO00009583



1.11 "**Driving Service**" means the transportation service as provided, made available or rendered by the Transportation Company (through the Driver (as applicable) with the Vehicle) upon request of the User through the App.

1.12 "**Fare**" means the amount (including applicable taxes and fees) that the Transportation Company is entitled to charge the User for the Ride, based on the recommended fares for the City as set out on http://www.uber.com or on the App.

1.13 "**Fee**" means the commission paid by the Transportation Company to Uber for the Service.

1.14 "**Intellectual Property Right**" means any patent, copyright, invention, database right, design right, registered design, trademark, trade name, brand, logo, slogan, service mark, know-how, utility model, unregistered design or, where relevant, any application for any such right, know-how, trade or business name, domain name (under whatever extension, e.g. .com, .nl, .fr, .eu, etc.) or other similar right or obligation whether registered or unregistered or other industrial or intellectual property right subsisting in any territory or jurisdiction anywhere in the world.

1.15 "**Ride**" means the transportation of the User by the Driver from the point of pick-up of the User until the point of drop-off of the User.

1.16 "**Software**" means Uber's mobile application and associated software, including but not limited to the App and Driver App.

1.17 "**Toll Charges**" means any and all road, bridge, ferry, tunnel and airport toll charges, including inner-city congestion, environmental or similar charges.

1.18 "**Uber Service**" means the on-demand, lead-generation service through the App, SMS (text messaging), web based requests or such other platforms, communication media or channels as are from time to time operated and made available by or on behalf of Uber that allow a User to request Driving Service from a Driver (who shall render the Driving Service on behalf of the Transportation Company) as available to and accepted by the User.  "Uber Service" also includes Uber's arrangement for a third party payment processor or mobile payment platform to process the Fare for a Ride requested via the App and distribution of the Fare (minus the Fee) to the Transportation Company.

1.19 "**User**" means a person who has signed up and is registered with Uber for the use of the App and/or the Uber Service.

1.20 "**User Information**" Information provided by Uber to the Driver via the Driver App indicating the User's name, the User's pick-up location and photo of the User, if the User has elected to include a photo in the User's profile with Uber.

1.21 "**Vehicle**" means any motorized vehicle (whether powered by an internal combustion, hybrid or an electrical engine) that is in safe and clean condition and fit for passenger transportation as required by applicable laws and regulations and that has been accepted by Uber and identified as the vehicle to be used by the Driver in the provision of the Driving Service.

1.22 "**Website**" means the Uber website www.uber.com.

**2.   LICENSE GRANT**

2.1 Use of and access to the Driver App
Uber hereby grants Transportation Company a non-exclusive, non-transferable, right to use the Software and Uber Service, subject to the terms and conditions of this Agreement for the sole purpose of providing and rendering the Driving Service in and/or from within the City to and for the benefit of the Users. All rights not expressly granted to you are reserved by Uber and its licensors.

2.2 Restrictions.

Transportation Company shall not and will ensure that Driver does not (i) license, sublicense, sell, resell, transfer, assign, distribute or otherwise commercially exploit or make available to any third party the Uber Service, the Software, or the Device in any way; (ii) modify or make derivative works based upon the Uber Service or the Software; (iii) create Internet "links" to the Uber Service or Software or "frame" or "mirror" any Software on any other server or wireless or Internet-based device; (iv) reverse engineer, decompile,



modify, or disassemble, except as allowed under the applicable law; (v) access the Software in order to (a) build a competitive product or service, (b) build a product using similar ideas, features, functions or graphics of the Uber Service or Software, or (c) copy any ideas, features, functions or graphics of the Uber Service or Software; or (vi) launch an automated program or script, including, but not limited to, web spiders, web crawlers, web robots, web ants, web indexers, bots, viruses or worms, or any program which may make multiple server requests per second, or unduly burdens or hinders the operation and/or performance of the Uber Service or Software.

Transportation Company may not use the Software and Uber Service to: (i) send spam or otherwise duplicative or unsolicited messages in violation of applicable laws; (ii) send or store infringing, obscene, threatening, libelous, or otherwise unlawful or tortious material, including material harmful to children or violative of third party privacy rights; (iii) send or store material containing software viruses, worms, Trojan horses or other harmful computer code, files, scripts, agents or programs; (iv) interfere with or disrupt the integrity or performance of the Software or Service or the data contained therein; or (v) attempt to gain unauthorized access to the Software or Service or its related systems or networks.

2.3   <u>Unavailability</u>. The Transportation Company acknowledges and agrees that the Software or the Uber Service may, from time to time, be unavailable (e.g. due to scheduled maintenance or system upgrades) and that Uber cannot, and does not, guarantee an specific or minimum availability of the Software or the Uber Service.

2.4   <u>Ownership</u>.  Uber (and its Affiliated Companies and licensors, where applicable) shall own and have all rights (including Intellectual Property Rights) in and to the Device, the Software, the Uber Service, the Driver ID and the Data. Insofar the Transportation Company and/or Driver may, by operation of applicable law or otherwise, obtain any rights (including Intellectual Property Rights) in relation thereto, these rights shall be and are hereby transferred (insofar permitted under the applicable law, in advance) to Uber (rights obtained by any Driver should be transferred via the Transportation Company). Where a transfer may not be permissible under the applicable mandatory law, the Transportation Company hereby undertakes to grant and to procure from the Driver a grant to Uber of a perpetual, exclusive (exclusive also with regard to Transportation Company and/or Driver), world-wide and transferable right and license under any such non-transferable rights.

3.   **OBLIGATIONS OF THE TRANSPORTATION COMPANY**

3.1   Transportation Company shall have the sole responsibility for any obligations or liabilities to Drivers, Users or third parties that arise from its provision of the Driving Service.

3.2   By using the Uber Services to receive and accept requests for transportation and by providing the Driving Service to the User, the Transportation Company accepts, agrees and acknowledges that a direct legal relationship is created and assumed solely between the Transportation Company and the User. Uber shall not be responsible or liable for the actions, omissions and behavior of the User in or in relation to the activities of the Transportation Company, the Driver and the Vehicle.

3.3   Transportation Company acknowledges and agrees that it and the Driver are solely responsible for taking such precautions as may be reasonable and proper (including taking out adequate insurance in conformity with standard market practice and in conformance with any applicable regulations or other licensing requirements) regarding any acts or omissions of the User.

3.4   The Transportation Company represents and undertakes to procure that the Driver shall comply with, adhere to and observe the terms and conditions set forth in this Agreement, the Driver Addendum, and all applicable laws, regulations, rules, statutes or ordinances governing or otherwise relating to the Driving Service. To the extent required, the



        Transportation Company hereby agrees and ensures that the rights, covenants, undertakings, representations and obligations of the Driver as set out in this Agreement shall apply to, and be assumed, accepted and taken over by the Driver. The Transportation Company shall provide copies of all executed Driver Addendums to Uber upon Uber's request.

3.5  The Transportation Company acknowledges and agrees that it exercises sole control over the Driver and will comply with all applicable laws and regulations (including tax, social security and employment laws) governing or otherwise applicable to its relationship with the Driver. Uber does not and does not intend to exercise any control over the Driver's (or the Transportation Company's) actions or the operation or physical condition of the Vehicle (except as provided under the Agreement).

3.6  Transportation Company undertakes that it will, and that it will ensure that its Driver(s) will, safeguard, protect and keep the Driver ID at all times confidential and safely stored and shall not disclose it to any person other than those who need to have access to the Driver ID in order to render and/or provide the Driving Service.

3.7  Transportation Company undertakes that it will, and that it will ensure that its Driver(s) will, safeguard, protect and keep the User Information received from Uber and the details of any Ride, at all times confidential and shall not disclose it to any person or store the information in any manner, except as required by law.

3.8  Transportation Company will immediately notify Uber of any actual or suspected security breach or improper use of the Device, the Driver App, the Driver ID, the Data or of the User Information.

**4.   USE OF UBER SERVICE AND SOFTWARE BY DRIVERS**

4.1  Driver ID
4.1.1  Uber will issue the Transportation Company a Driver ID for each Driver retained by the Transportation Company to enable Transportation Company and/or the Driver (as applicable) to access and use the Driver App and the Device in accordance with the Driver Addendum. Uber will have the right, at all times and at Uber's sole discretion, to reclaim, prohibit, suspend, limit or otherwise restrict the Transportation Company and/or the Driver from accessing or using the Driver App or the Device. Uber may charge a fee for the use of the Device or request a retainer fee and/or a security deposit per Device.

4.2  Information provided to Users
4.2.1  Once the Driver has accepted a User's request for transportation, Uber will provide the User Information to the Driver via the Driver App, including the User's location. The User shall inform the Driver of the destination. Transportation Company acknowledges and agrees that once the Driver has accepted a User's request for transportation, Uber may provide specific information to the User regarding the Transportation Company and Driver in relation to the Driving Service, including but not limited to the Transportation Company's name, Driver's name, Driver's photo, license number, geo-location and contact information.

4.2.2  The Transportation Company and its Drivers retain the sole right to determine when and for how long each of them will utilize the Software and Services to receive lead generation service. The Transportation Company and its Drivers also retain the option to accept or reject each request for transportation received via the Driver App. However, Transportation Company and Driver agree to utilize the App at least once a month to accept a request for transportation.

4.3  Driver and User Review.
4.3.1  Users who have used the Driving Service will be asked by Uber to comment on the Driving Service and to provide a score for the Driving Service and the Driver. Uber reserves the right to post these comments and scores on the App or the Website (or such other



platforms as owned, managed, controlled or managed by Uber) without reference to the Customer, Transportation Company or Driver. Uber shall also request the Transportation Company and/or the Driver to comment on and to provide a score for the User on the Driver App. Transportation Company will and will require that its Drivers will provide accurate and objective feedback that does not violate any applicable laws and regulations.

4.3.2   The Transportation Company acknowledges that Uber is a distributor (without any obligation to verify) and not a publisher of these comments and scores. Uber reserves the right to refuse, edit or remove unfavorable reviews in the event that such reviews include obscenities or mention an individual's name or violate any privacy laws or any other applicable laws and regulations. Beyond the legal and regulatory requirements, Uber shall not have and hereby disclaims any liability and responsibility for the content and consequences of (the publication or distribution of) any comments, scores or reviews howsoever or whatsoever.

4.3.3   The Transportation Company acknowledges that Uber desires to provide users of its Software with the opportunity to connect with Transportation Companies that maintain the highest standards of professionalism.  Transportation Company agrees that its Drivers will maintain high standards of professionalism and service, including but not limited to professional attire and maintaining an average Customer score set by Uber based on feedback from users of its Software. Uber utilizes a five-star rating system designed to allow the Users of its Software to provide feedback on the level of service provided by those transportation providers who accept requests for transportation received via the Service.  Transportation Company understands that there is a minimum star-rating Drivers must maintain to continue receiving access to the Service and Software.  In the event a Driver's star-rating falls below the applicable minimum star-rating, Uber will notify Transportation Company by email or other written means. In the event the star-rating (based on User feedback) has not increased above the minimum, Uber may deactivate the Driver's access to the Software and Service.  Uber reserves the right, at all times and at Uber's sole discretion, to reclaim, prohibit, suspend, limit or otherwise restrict the Transportation Company and/or the Driver from accessing or using the Driver App or the Device if the Transportation Company or its Drivers fail to maintain the standards of appearance and service required by the users of the Uber Software.

4.4   <u>Disclosure of Information</u>. In case of a complaint, dispute or conflict between the Transportation Company or the Driver on the one hand and the User on the other hand or in other appropriate instances where a legitimate reason for such disclosure exists (for example, receipt by Uber of a subpoena or warrant requesting information), Uber may, but shall not be required to – to the extent permitted by applicable laws and regulations – provide the User, Transportation Company, the Driver and/or the relevant authorities the relevant data (including personal data) of the Transportation Company or the Driver. Uber may also disclose certain information of the Transportation Company or the Driver as set forth in this Agreement.

5.   **CALCULATION OF FARES AND FEES**

5.1   <u>Fares</u>
5.1.1   The recommended pricing structure used in calculating the Fare for the Driving Service can be found at [www.uber.com](www.uber.com), or on the App or can at any time be communicated to the Transportation Company by Uber.
5.1.2   As part of its Services provided to Transportation Company, Uber will arrange for a third party payment processor or mobile payment platform to process the Fare for a Ride requested via the App to the User designated credit card or mobile payment platform.

5.2   <u>Fee</u>
5.2.1   Transportation Company shall pay Uber a Fee per Ride, which shall be set by Uber at Uber's sole discretion based upon local market factors and may be subject to change. The Fee is calculated as a percentage of each Fare. The Fare will be collected by Uber for and



on behalf of the Transportation Company. Transportation Company agrees and requests that Uber deduct its Fee payable on all Fares earned by the Transportation Company and remit the remainder of the Fare to Transportation Company. The Fee is set forth in the City Addendum. The City Addendum may change from time to time. Transportation Company and Drivers can always view the most current City Addendum at http://www.uber.com and also will receive written notice in the event of a change in Fee percentage.

5.3     Invoicing and payment terms
5.3.1   Payment of the Fares to Transportation Company shall be made in accordance with the payment method as set forth in the Driver Addendum.

5.3.2   Uber operates, and the Transportation Company accepts, a system for receipts being issued by Uber for and on behalf of the Transportation Company to the User. The receipts, which are issued by Uber for and on behalf of the Transportation Company to the User shall be sent in copy by email or made available online to the Transportation Company. The receipts may include specific information regarding the Transportation Company and Driver in relation to the Driving Service, including but not limited to the Transportation Company's name, Driver's name, Driver's photo, license number, geo-location and contact information.

The Transportation Company represents that it will ensure that the Driver will notify Uber of any corrections necessary to the receipt for a Ride within three (3) business days after each Ride. Unless Uber receives timely notification (three (3) business days) of any correction needed, Uber shall not be liable for any mistakes in the receipt or in any calculation of the Fares that are remitted to the Transportation Company pursuant to the terms of section 5.2.1.

**6.      REPRESENTATIONS**
6.1     Transportation Company/Driver representations
6.1.1   The Transportation Company represents to Uber and shall ensure that the Driver shall represent to Transportation Company, that for the term of this Agreement:
  (i) it holds, complies and shall continue to hold and comply with all permits, licenses and other governmental authorisations necessary for conducting, carrying out and continuing their activities, operations and business in general and the Driving Service in particular;
  (ii) shall comply with all local laws and regulations, including the laws related to the operation of a taxi/passenger delivery, driving service or transportation service and will be solely responsible for any violations of such local laws and regulations;
  (iii) the Driver has a valid driver's license and is authorized to operate the Vehicle as set out in the Driver Addendum and has all the appropriate licenses, approvals and authority to provide transportation for hire to third parties in the City where the Driving Service is rendered or performed;
  (iv) it has appropriate and up-to-date level of expertise and experience to enable and provide the Driving Service and the Driving Service will be supplied, provided and supported by appropriately qualified and trained Drivers acting with due skill, care and diligence;
  (v) the Transportation Company and the Driver have and maintain a valid policy for the appropriate (transportation, personal injury, third party or general) liability insurance and such other insurances as are considered market practice (all in industry-standard coverage amounts) for the operation of the Vehicle and/or business insurance to cover any anticipated risks, damages and losses related to the operation of a taxi/passenger delivery, driving service or transportation services (including the Driving Service), and not less than the minimum coverage amounts required by applicable law. The Transportation Company shall add Uber to its liability insurance policy as an additional insured, and shall upon first request of Uber provide Uber with a copy of the insurance certificate.



- (vi) the Transportation Company's employees are covered by workers' compensation insurance, as required by law. If permitted by law, Transportation Company may choose to insure itself against industrial injuries by maintaining occupational accident insurance in place of workers' compensation insurance.  Transportation Company's subcontractors may also, to the extent permitted by law, maintain occupational accident insurance in place of workers' compensation insurance.
- (vii) the Vehicle is kept in a clean condition at all times, such Vehicle is in good operating condition and meets the industry safety standards for a Vehicle of its kind;
- (viii) the Driver and the Vehicle maintain at all times the star rating quality described in Section 4.3.3 above.
- (ix) Transportation Company is the owner or lessee, or are otherwise in lawful possession of a Vehicle or Vehicles, and said Vehicle or Vehicles are suitable for performing the commercial carriage services contemplated by this Agreement, which equipment complies with all applicable federal, state and local laws.

6.2     Disclaimer

6.2.1   Uber provides, and the Transportation Company accepts, the Service, the Device and Driver App on an "as is" and "as available" basis. Uber does not warrant or guarantee that the Transportation Company, the Driver or the User's access to or use of the Service, the Website, the Device, the App or the Driver App will be uninterrupted or error free.

6.2.2   **Internet Delays**. THE UBER SERVICE AND SOFTWARE MAY BE SUBJECT TO LIMITATIONS, DELAYS, AND OTHER PROBLEMS INHERENT IN THE USE OF THE INTERNET AND ELECTRONIC COMMUNICATIONS. THE COMPANY IS NOT RESPONSIBLE FOR ANY DELAYS, DELIVERY FAILURES, OR OTHER DAMAGE RESULTING FROM SUCH PROBLEMS.

6.3     Transportation Company/ Driver indemnifications

6.3.1   Subject to the exceptions set forth in this Agreement, the Transportation Company agrees and undertakes and ensures that the Transportation Company will indemnify, defend and hold Uber (and its Affiliated Companies and employees and, at the request of Uber, Uber's licensors, suppliers, officers, directors and subcontractors) harmless from and against any and all claims, demands, expenses (including legal fees), damages, penalties, fines, social contributions and taxes by a third party (including Users, regulators and governmental authorities) directly or indirectly related to this Agreement.

6.3.2   The Transportation Company is solely responsible for ensuring that Drivers take reasonable and appropriate precautions in relation to any third party with which they interact in connection with the Driving Service. Where this allocation of the parties' mutual responsibilities may be ineffective under applicable law, the Transportation Company undertakes to indemnify, defend and hold Uber harmless from and against any claims that may be brought against Uber in relation to the Transportation Company's or Driver's provision of the Driving Service under such applicable law as further set forth in Section 6.3 (Indemnification).

**7.0     RELATIONSHIP BETWEEN THE PARTIES**

7.1     The relationship between the Parties is solely that of independent contracting parties.

7.2     The Parties expressly agree that this Agreement is not an employment agreement or employment relationship.  The parties further agree that no employment contract is created between Uber and the Drivers.



7.3   The Parties expressly agree that no joint venture, partnership, employment, or agency relationship exists between you, Uber or any third party provider as a result of this Agreement or use of the Uber Service or Software.

7.4   The Transportation Company acknowledges and agrees that it has no authority to bind Uber and undertakes not to hold itself out and to ensure that the Driver does not hold himself or herself out, as an employee, agent or authorized representative of Uber. Where, by implication of mandatory law or otherwise, the Driver and/or the Transportation Company may be deemed an agent or representative of Uber, the Transportation Company undertakes and agrees to indemnify, defend and hold Uber harmless from and against any claims by any person or entity based on such implied agency relationship.

**8.   LIABILITY**

8.1   IN NO EVENT SHALL UBER'S AGGREGATE LIABILITY EXCEED THE FEES ACTUALLY PAID BY AND/OR DUE FROM TRANSPORTATION COMPANY IN THE SIX (6) MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO SUCH CLAIM. IN NO EVENT SHALL UBER AND/OR ITS LICENSORS BE LIABLE TO ANYONE FOR ANY INDIRECT, PUNITIVE, SPECIAL, EXEMPLARY, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY TYPE OR KIND (INCLUDING PERSONAL INJURY, LOSS OF DATA, REVENUE, PROFITS, USE OR OTHER ECONOMIC ADVANTAGE). UBER AND/OR ITS LICENSORS SHALL NOT BE LIABLE FOR ANY LOSS, DAMAGE OR INJURY WHICH MAY BE INCURRED BY TRANSPORTATION COMPANY, INCLUDING BUT NOT LIMITED TO LOSS, DAMAGE OR INJURY ARISING OUT OF, OR IN ANY WAY CONNECTED WITH THE UBER SERVICE OR SOFTWARE, INCLUDING BUT NOT LIMITED TO THE USE OR INABILITY TO USE THE UBER SERVICE OR SOFTWARE.

8.2   If the disclaimer of liability by Uber as set out in Clause 7.1 shall, for some reason, not have any effect, the maximum aggregate liability of Uber vis-a-vis the Transportation Company and its Drivers collectively, is limited to 50% of the total amount of the Fee paid to Uber by the Transportation Company in the year (12 months) preceding the event that led to the liability.

8.3   All defenses (including limitations and exclusions of liability) in favor of Uber apply (i) regardless of the ground upon which a liability is based (whether default, tort or otherwise), (ii) irrespective of the type of breach of obligations (guarantees, contractual obligations or otherwise), (iii) for all events and all agreements together, (iv) insofar no event of wilful misconduct or gross negligence of Uber or its management has occurred, and (v) also for the benefit of its Affiliated Companies and employees and, at the request of Uber, Uber's licensors, suppliers and subcontractors.

8.4   Uber makes no guarantees, warranties, or representations as to the actions or conduct of any Users who may request transportation service from Transportation Company or the Driver. Responsibility for the decisions Transportation Company makes regarding transportation services offered via the Software or Uber Service (with all its implications) rests solely with Transportation Company. Transportation Company agrees that it is Your responsibility to take reasonable precautions in all actions and interactions with any third party You interact with through the Uber Service.

8.5   The transportation services that You provide pursuant this Agreement are fully and entirely Your responsibility. Uber does not screen or otherwise evaluate potential riders/Users of Your transportation services. You understand, therefore, that by using the Software and the Uber Service, You may be introduced to third parties that may be potentially dangerous, and that You use the Software and the Uber Service at Your own risk.



8.6  Notwithstanding the Transportation Company's right, if applicable, to take recourse against the Driver, the Transportation Company acknowledges and agrees that it is at all times responsible and liable for the acts and omissions of the Driver(s) vis-à-vis the User and Uber, even where such vicarious liability may not be mandated under applicable law.

8.7  UBER WILL NOT ASSESS THE SUITABILITY, LEGALITY OR ABILITY OF ANY SUCH THIRD PARTIES AND YOU EXPRESSLY WAIVE AND RELEASE UBER FROM ANY AND ALL LIABILITY, CLAIMS, CAUSES OF ACTION, OR DAMAGES ARISING FROM YOUR USE OF THE SOFTWARE OR UBER SERVICE, OR IN ANY WAY RELATED TO THE THIRD PARTIES INTRODUCED TO YOU BY THE SOFTWARE OR SERVICE. YOU EXPRESSLY WAIVE AND RELEASE ANY AND ALL RIGHTS AND BENEFITS UNDER SECTION 1542 OF THE CIVIL CODE OF THE STATE OF CALIFORNIA (OR ANY ANALOGOUS LAW OF ANY OTHER STATE), WHICH READS AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM, MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

**9.  TERM, TERMINATION AND SUSPENSION**

9.1  This Transportation Company Agreement shall commence on the date this Agreement is accepted, for an indefinite period of time, unless terminated by either party by written notice with due observance of a notice period of seven (7) calendar days. Uber may terminate this Agreement automatically, without any notice requirement, at such moment when the Transportation Company and/or its Drivers no longer qualifies, under the applicable law or the quality standards of Uber, to provide the Driving Service or to operate the Vehicle.

9.2.1  Each party may terminate this Agreement or suspend the Agreement in respect of the other party, with immediate effect and without a notice of default being required in case of:
(a) a material breach by the other party of any term of the Agreement (including but not limited to breach of representations or receipt of a significant number of User complaints); or
(b) insolvency or bankruptcy of the other party, or upon the other party's filing or submission of request for suspension of payment (or similar action or event) against the terminating party.

9.3  Upon termination of the Agreement, the Transportation Company and/ or the Driver shall promptly return all Devices and all Data provided to either of them by Uber without withholding a copy thereof.

**10.  CONFIDENTIALITY**

10.1  Parties understand and agree that in the performance of this Agreement, each party may have access to or may be exposed to, directly or indirectly, confidential information of the other party (the "**Confidential Information**"). Confidential Information includes Data, transaction volume, marketing and business plans, business, financial, technical, operational and such other non-public information that either a disclosing party designates as being private or confidential or of which a receiving party should reasonably know that it should be treated as private and confidential.

10.2  Each party agrees that: (a) all Confidential Information shall remain the exclusive property of the disclosing party and receiving party shall not use any Confidential Information for any purpose except in furtherance of this Agreement; (b) it shall maintain, and shall use prudent methods to cause its employees, officers, representatives, contracting parties and agents (the "**Permitted Persons**") to maintain, the confidentiality and secrecy of the Confidential Information; (c) it shall disclose Confidential Information only to those Permitted Persons who need to know such information in furtherance of this Agreement; (d) it shall not, and shall use prudent methods to ensure that the Permitted Persons do not, copy, publish,



disclose to others or use (other than pursuant to the terms hereof) the Confidential Information; and (e) it shall return or destroy all ((hard and soft) copies of) Confidential Information upon written request of the other party.

10.3   Notwithstanding the foregoing, (a) Confidential Information shall not include any information to the extent it (i) is or becomes part of the public domain through no act or omission on the part of the receiving Party, (ii) was possessed by the receiving Party prior to the date of this Agreement, (iii) is disclosed to the receiving Party by a third party having no obligation of confidentiality with respect thereto, or (iv) is required to be disclosed pursuant to law, court order, subpoena or governmental authority, and (b) nothing in this Agreement shall prevent, limit or restrict a Party from disclosing this Agreement (including any technical, operational, performance and financial data (but excluding any User Data)) in confidence to an Affiliated Company.

**11.   LOCATION-BASED SERVICES**

11.1.   For the purpose of rendering the Service, the Transportation Company explicitly agrees and acknowledges, and procures that the Driver agrees and acknowledges, that geo-location information regarding the Driver who is available for the Driving Service or performing the Driving Service shall be monitored and traced through the Driver App via GPS tracking. The Device and the relevant details of the Driver and the Ride and the position of the Driver shall also be disclosed to the User on the App.

11.2   To provide location-based services on the Uber App and for analytical, marketing and commercial purposes of Uber, Uber may collect, use, and share precise geo-location data, including the real-time geographic location of You and the Drivers.  This location data is used by Uber to provide and improve location-based products and services. Information You provide may be transferred or accessed by entities around the world.  Uber abides by the "safe harbor" frameworks set forth by the U.S. Department of Commerce regarding the collection, use, and retention of personal information collected by organizations in the European Economic Area and Switzerland.  You expressly consent to Uber's use of locations-based services and You expressly waive and release Uber from any and all liability, claims, causes of action or damages arising from Your use of the software or Uber service, or in any way relating to the use of the geo-location and other location-based services.

**12   MODIFICATIONS**

12.1   Uber reserves the right to modify the terms and conditions of this Agreement or at any time, effective upon publishing an updated version of this Agreement at http://www.uber.com or on the Software.

12.2   Transportation Company hereby expressly acknowledges and agrees that, by using or receiving the Uber Service, and downloading, installing or using the Software, Transportation Company and Uber are bound by any future amendments and additions to this Agreement or documents incorporated herein, including the Fee schedule.  Continued use of the Uber Service or Software after any such changes shall constitute your consent to such changes. Transportation Company is responsible for regularly reviewing this Agreement.

**13.   MISCELLANEOUS**
13.1   If any provision of this Agreement is or becomes invalid or non-binding, the parties shall remain bound by all other provisions hereof. In that event, the parties shall replace the



invalid or non-binding provision by provisions that are valid and binding and that have, to the greatest extent possible, a similar effect as the invalid or non-binding provision, given the contents and purpose of this Agreement.

13.2   Neither party shall be entitled to assign, transfer, encumber any of its rights and/or the obligations under this Agreement without the prior written consent of the other party, provided that Uber may assign, transfer, encumber any of its rights and/or the obligations under this Agreement (in whole or in part or from time to time) to (a) an Affiliated Company or (b) in the event of a merger or sale of assets without the prior written consent of the Transportation Company.

13.3   This Agreement (including the schedules, annexes and appendixes, which form an integral part of this Agreement) constitutes the entire agreement and understanding of the parties with respect to its subject matter and replaces and supersedes all prior agreements, arrangements, offers, undertakings or statements regarding such subject matter.

**14.   GOVERNING LAW AND JURISDICTION**

14.1   This Agreement shall be governed by California law, without regard to the choice or conflicts of law provisions of any jurisdiction, and any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Service or Software shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California. If any provision of the Agreement is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law.  The failure of Uber to enforce any right or provision in this Agreement shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing.  This Agreement and the documents incorporated by reference therein comprise the entire agreement between you and Uber and supersedes all prior or contemporaneous negotiations, discussions or agreements, whether written or oral, between the parties regarding the subject matter contained herein.

14.2   Other than disputes regarding the Intellectual Property Rights of the parties, any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Service or Software may be subject to arbitration pursuant to Section 14.3.

**14.3   Arbitration.**

　　　　i.   How This Arbitration Provision Applies.

This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce.  This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates.  Nothing contained in this Arbitration Provision shall be construed to prevent or excuse You from utilizing any procedure for resolution of complaints established in this Agreement (if any), and this Arbitration Provision is not intended to be a substitute for the utilization of such procedures.

**Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration.  This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.**

Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.



Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to Your relationship with Uber, including termination of the relationship.  This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, termination, harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by Uber and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims.

    ii.    <u>Limitations On How This Agreement Applies</u>.

This Arbitration Provision does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Arbitration Provision, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate.  Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp).  Nothing in this Arbitration Provision shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Arbitration Provision.

This Arbitration Provision shall not be construed to require the arbitration of any claims against a contractor that may not be the subject of a mandatory arbitration agreement as provided by section 8116 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2010 (Pub. L. 111-118), section 8102 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2011 (Pub. L. 112-10, Division A), and their implementing regulations, or any successor DoD appropriations act addressing the arbitrability of claims.

    iii.    <u>Selecting The Arbitrator and Location of the Arbitration</u>.

The Arbitrator shall be selected by mutual agreement of Uber and You.  Unless You and Uber mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted.  If the Parties cannot agree on an Arbitrator, then an arbitrator will be selected using the alternate strike method from a list of five (5) neutral arbitrators provided by JAMS (Judicial Arbitration & Mediation Services).  You will have the option of making the first strike.  If a JAMS arbitrator is used, then the applicable JAMS rules will apply.  The location of the arbitration proceeding shall be no more than 45 miles from the place where You last provided transportation services under this Agreement, unless each party to the arbitration agrees in writing otherwise.



iv. <u>Starting The Arbitration</u>.

All claims in arbitration are subject to the same statutes of limitation that would apply in court.  The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period.  The demand for arbitration shall include identification of the Parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to Uber shall be provided to General Counsel, Uber Technologies, Inc., 182 Howard Street, # 8, San Francisco CA 94105.  The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

v. <u>How Arbitration Proceedings Are Conducted</u>.

In arbitration, the Parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

You and Uber agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis. Accordingly,

(a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver").  The Class Action Waiver shall not be severable from this Arbitration Provision in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable.  In such instances, the class action must be litigated in a civil court of competent jurisdiction.

(b) There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver").  The Collective Action Waiver shall not be severable from this Arbitration Provision in any case in which (1) the dispute is filed as a collective action and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is unenforceable. In such instances, the collective action must be litigated in a civil court of competent jurisdiction.

(c) There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action ("Private Attorney General Waiver").  The Private Attorney General Waiver shall not be severable from this Arbitration Provision in any case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances and where the claim is brought as a private attorney general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.

Although you will not be retaliated against, disciplined or threatened with discipline as a result of you exercising your rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective or representative action in any forum, Uber may lawfully seek enforcement of this Arbitration Provision and the Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

UBE-OCO00009595



The Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

    vi.    <u>Paying For The Arbitration</u>.

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law.  However, in all cases where required by law, Uber will pay the Arbitrator's and arbitration fees. If under applicable law Uber is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the Parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

    vii.    <u>The Arbitration Hearing And Award</u>.

The Parties will arbitrate their dispute before the Arbitrator, who shall confer with the Parties regarding the conduct of the hearing and resolve any disputes the Parties may have in that regard.  Within 30 days of the close of the arbitration hearing, or within a longer period of time as agreed to by the Parties or as ordered by the Arbitrator, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief.  The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Arbitration Provision.  The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law.  Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all Parties.  A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.  The Arbitrator shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.

    viii.    <u>Your Right To Opt Out Of Arbitration</u>.

Arbitration is not a mandatory condition of your contractual relationship with Uber.  If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying Uber in writing of your desire to opt out of this Arbitration Provision, which writing must be dated, signed and delivered by a nationally recognized overnight delivery service or by hand delivery to Uber Technologies, Inc., 182 Howard Street, #8 San Francisco, CA 94105 addressed to the attention of the <u>General Counsel</u>.  In order to be effective, the writing must clearly indicate your intent to opt out of this Arbitration Provision and the envelope containing the signed writing **must be post-marked within 30 days** of the date this Agreement is executed by you.  Your writing opting out of this Arbitration Provision will be filed with a copy of this Agreement and maintained by Uber.  Should You not opt out of this Arbitration Provision within the 30-day period, You and Uber shall be bound by the terms of this Arbitration Provision.  You have the right to consult with counsel of Your choice concerning this Arbitration Provision.  You understand that You will not be subject to retaliation if You exercise Your right to assert claims or opt-out of coverage under this Arbitration Provision.

    ix.    <u>Enforcement Of This Agreement</u>.

This Arbitration Provision is the full and complete agreement relating to the formal resolution of disputes arising out of this Agreement.  Except as stated in subsection v,



above, in the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable.

By clicking "I accept", You expressly acknowledge and agree to be bound by the terms and conditions of the Agreement, and further acknowledge that You are legally competent to enter into this Agreement with Uber.

UBE-OCO00009597