THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
DEBRA WONG YANG, SBN 123289
  dwongyang@gibsondunn.com
MARCELLUS MCRAE, SBN 140308
  mmcrae@gibsondunn.com
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:   213.229.7520

JOSHUA S. LIPSHUTZ, SBN 242557
  jlipshutz@gibsondunn.com
KEVIN RING-DOWELL, SBN 278289
  kringdowell@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:   415.393.8306

Attorneys for Defendant UBER TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, THOMAS COLOPY, MATTHEW MANAHAN, and ELIE GURFINKEL, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>　　　　　　Defendant. | Case No. CV 13-03826-EMC<br><br>**DECLARATION OF SWATHY PRITHIVI IN SUPPORT OF DEFENDANT UBER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**Hearing:**<br><br>Date:　　August 6, 2015<br>Time:　　1:30 p.m.<br>Place:　　Courtroom 5<br>Judge:　　Hon. Edward M. Chen |

Gibson, Dunn & Crutcher LLP

DECLARATION OF SWATHY PRITHIVI IN SUPPORT OF DEFENDANT UBER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - CASE NO. CV 13-03826-EMC

**DECLARATION OF SWATHY PRITHIVI**

I, Swathy Prithivi, hereby declare under penalty of perjury that the following is true and correct.

1. I have personal knowledge of each fact stated herein, and, if called as a witness, I could and would competently and truthfully testify thereto.

2. I joined Uber Technologies, Inc. in August 2012 as Operations and Logistics Manager in San Francisco. From April 2013 until August 2013 I worked as a Senior Operations and Logistics Manager, responsible for managing supply side operations, including partner onboarding, for the San Francisco Bay Area. From August 2013 to September 2014, I worked as an International Launcher for Europe, the Middle East, India, and Africa. I led the launch of Uber in India, Israel, and Poland, which involved hiring and training the local teams, as well as overseeing partner onboarding and driver operations. Since September 2014, I have worked as a Strategic Project Manager for the UberEverything team, where I have responsibility for UberRUSH, Uber's experimental on-demand delivery product, including the onboarding of Rush partners.

3. "Onboarding" refers to the process by which independent individuals or transportation companies, such as limousine or livery companies, sign up to become Uber partners and use the Uber mobile application (the "Uber App"). The onboarding process is created and managed independently in each city or market in which Uber operates, and has changed over time in San Francisco.

4. The Uber teams in each individual city market are effectively the owners of the business in that city. They have autonomy and flexibility to structure the business in a way that makes sense in the local market. That model naturally extends to driver operations and partner onboarding. As a result, the onboarding process varies from city to city, and sometimes even within cities, with respect to partner recruiting, training, vehicle inspections, vehicle standards, ratings thresholds, and countless other aspects of onboarding and driver operations. Uber in the San Francisco Bay Area ("Uber SF") is no exception.

5. From at least August 2012 to approximately August 2013, the onboarding process for TCP partners, whether on UberX or UberBlack, occurred through in-person sessions. Partners signed up on Uber's website and then scheduled a time slot to come into the office for onboarding. Uber SF

2
DECLARATION OF SWATHY PRITHIVI IN SUPPORT OF DEFENDANT UBER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - CASE NO. CV 13-03826-EMC

Gibson, Dunn & Crutcher LLP

also held open sessions where prospective partners could drop in.  Uber SF would conduct an interview of the partner, verify their documentation, and perform an in-person vehicle inspection.  Then the partner would attend an in-person training session at which an operations manager would walk them through the process of partnering with Uber, including an explanation of what Uber was, how the Uber Partner App worked, what the fares were, how they would be paid, and how they could reach out to us for support.  The format of these sessions varied depending on which driver operations manager was in charge of the session.  For example, some sessions were conducted in a classroom format, others were more informal group discussions, and others in a one-on-one setting.  Session leaders also had discretion regarding what kind of material to use during onboarding.  For instance, some used a PowerPoint presentation while others simply distributed handouts to supplement a group discussion.

6. In early 2013, Uber SF began onboarding peer-to-peer vehicles, including for the UberX product.  Peer-to-peer partners created an account online, and, if they chose, upload pictures of their vehicle and pictures of relevant documents for verification.  They then picked a time to come for in-person onboarding.  At the in-person session, partners would provide documents for verification (if they had not already uploaded them), sign a background check consent form, and then watch a video in the office that explained how the Uber Partner App worked, and take a quiz.  After background check was completed, partners would return to the office to pick up an Uber-issued device.

7. Uber SF considered whether to deactivate a partner based on Star Rating combined with customer feedback.  There was no automatic deactivation process.  That was important for customizing by geographic region and sub-region.

8. It is possible that a partner may have been deactivated for minor offenses, despite having a high star rating, but they were usually given the option of driving in a different sub-market.  For example, a partner might be deactivated in San Francisco for minor offenses, such as lack of city knowledge, but still allowed to use the platform in one of the other Bay Area sub-markets such as the South Bay.

3
DECLARATION OF SWATHY PRITHIVI IN SUPPORT OF DEFENDANT UBER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - CASE NO. CV 13-03826-EMC

Gibson, Dunn & Crutcher LLP

9. In some instances, a partner who was deactivated for a major offense, such as harassment or safety issues, was told that the deactivation was for general quality issues. This was done to protect the identity of a customer who had brought a serious complaint.

10. To my knowledge, no partner was ever deactivated for failing to accept leads. Uber SF did encourage partners to go offline if they did not want to take dispatches.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on July 7, 2015 at New York, New York.

*Swathy Prithivi*
Swathy Prithivi (Jul 7, 2015)

Swathy Prithivi

Gibson, Dunn & Crutcher LLP

4

DECLARATION OF SWATHY PRITHIVI IN SUPPORT OF DEFENDANT UBER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - CASE NO. CV 13-03826-EMC

1  I, Theodore J. Boutrous, Jr., hereby attest that concurrence in the filing of this document has been obtained from Swathy Prithivi.

DATED: July 9, 2015          By:   /s/ Theodore J. Boutrous, Jr.
                                         Theodore J. Boutrous, Jr.

Gibson, Dunn & Crutcher LLP

5
DECLARATION OF SWATHY PRITHIVI IN SUPPORT OF DEFENDANT UBER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - CASE NO. CV 13-03826-EMC