# Exhibit 1

GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR., SBN 132099
  tboutrous@gibsondunn.com
DEBRA WONG YANG, SBN 123289
  dwongyang@gibsondunn.com
MARCELLUS A. MCRAE, SBN 140308
  mmcrae@gibsondunn.com
THEANE D. EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
  dmanthripragada@gibsondunn.com
BRANDON J. STOKER, SBN 277325
  bstoker@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

JOSHUA S. LIPSHUTZ, SBN 242557
  jlipshutz@gibsondunn.com
KEVIN J. RING-DOWELL, SBN 278289
  kringdowell@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, THOMAS COLOPY, MATTHEW MANAHAN, and ELIE GURFINKEL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br>UBER TECHNOLOGIES, INC.,<br>Defendant. | Case No. CV 13-03826-EMC<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S SURREPLY IN RESPONSE TO PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date:    August 6, 2015<br>Hearing Time:    1:30 p.m.<br>Hearing Place:    Courtroom 5<br>Judge:    Hon. Edward M. Chen |

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 2 |
| | A. | Uber Acted With The Utmost Propriety In Obtaining Driver Declarations | 2 |
| | B. | Dr. Justin McCrary's Expert Report Is Plainly Admissible and Relevant and Should Be Considered by This Court. | 4 |
| | C. | The United States Department of Labor's Administrator's Interpretation of the Federal FLSA is Irrelevant, and in Any Event Supports Uber's Position. | 8 |
| III. | CONCLUSION | | 9 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air Couriers Int'l v. Emp't Dev. Dep't,*
 150 Cal. App. 4th 923 (2007) .................................................................................................. 9

*Allen v. Similasan Corp.,*
 2015 WL 1534005 (S.D. Cal. Nov. 7, 2014) ............................................................................ 7

*Amchem Products, Inc. v. Windsor,*
 521 U.S. 591 (1997) .................................................................................................................. 7

*Arnold v. Mut. of Omaha Ins. Co.,*
 202 Cal. App. 4th 580 (2011) .................................................................................................... 6

*Astiana v. Ben & Jerry's Homemade, Inc.,*
 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ................................................................................. 6

*Babbitt v. Albertson's Inc.,*
 1993 WL 128089 (N.D. Cal. Jan. 28, 1993) ............................................................................. 2

*Broussard v. Meineke Discount Muffler Shops,*
 155 F.3d 331 (4th Cir. 1998) ..................................................................................................... 7

*Carrillo v. Schneider Logistics Inc.,*
 2013 WL 6442328 (C.D. Cal. Dec. 6, 2013) ............................................................................ 7

*Comcast v. Behrend,*
 133 S. Ct. 1426 (2013) ..................................................................................................... 4, 6, 7

*Costello v. Kohl's Ill., Inc.,*
 2014 WL 4377931 (S.D.N.Y. Sept. 4, 2014) ............................................................................ 4

*Creely v. HCR Manorcare, Inc.,*
 789 F. Supp. 2d 819 (N.D. Ohio 2011) ..................................................................................... 4

*Curtis v. Extra Space Storage, Inc.,*
 2013 WL 6073448 (N.D. Cal. Nov. 18, 2013) .......................................................................... 6

*Dukes v. Wal-Mart Stores, Inc.,*
 131 S. Ct. 2541 (2011) ........................................................................................................ 5, 6

*Dukes v. Wal-Mart, Inc.,*
 222 F.R.D. 189 (N.D. Cal. 2004) .............................................................................................. 8

*Enyart v. Nat'l Conference of Bar Examiners, Inc.,*
 823 F. Supp. 2d 995 (N.D. Cal. 2011) ...................................................................................... 5

*Ewert v. eBay, Inc.,*
 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ........................................................................... 7

*FedEx Ground Package Sys., Inc. Employment Practices Litig.,*
 2010 WL 1838400 (N.D. Ind. May 4, 2010) ............................................................................ 4

*In re Rail Freight Fuel Surcharge Antitrust Litig.,*
 725 F.3d 244 (D.C. Cir. 2013) .................................................................................................. 6

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
  527 F. Supp. 2d 1053 (N.D. Cal. 2007) .................................................................................. 4

*Joseph v. Gen. Motors Corp.*,
  109 F.R.D. 635 (D. Col. 1986) ............................................................................................... 4

*Mark H. v. Hamamoto*,
  2012 WL 3444138 (D. Haw. Aug. 14, 2012) ......................................................................... 5

*McPhail v. First Command Fin. Planning*,
  247 F.R.D. 598 (S.D. Cal. 2007) ............................................................................................ 4

*Ridgeway v. Wal-Mart Stores, Inc.*,
  2014 WL 4477662 (N.D. Cal. Sept. 10, 2014) ....................................................................... 7

*Rooney v. Sierra P. Windows*,
  2011 WL 2149097 (N.D. Cal. June 1, 2011) ......................................................................... 8

*Rosenberg v. Renal Advantage, Inc.*,
  2013 WL 3205426 (S.D. Cal. June 24, 2013) ........................................................................ 5

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
  48 Cal. 3d 341 (1989) ............................................................................................................ 6

*Taylor v. Shippers Transp. Exp., Inc.*,
  2014 WL 7499046 (C.D. Cal. Sept. 30, 2014) ....................................................................... 3

*Temple v. Guardsmark LLC*,
  2011 WL 723611 (N.D. Cal. Feb. 22, 2011) .......................................................................... 8

*The Pinal Creek Grp. v. Newmont Mining Corp.*,
  352 F. Supp. 2d 1037 (D. Ariz. 2005) .................................................................................... 4

*Twentieth Century Fox Film Corp. v. Dastar Corp.*,
  2000 WL 35503105 (C.D. Cal. Jan. 4, 2000) ........................................................................ 3

*United States v. Dazey*,
  403 F.3d 1147 (10th Cir. 2005) .............................................................................................. 5

*Wilson v. Kiewit Pac. Co.*,
  2010 WL 5059522 (N.D. Cal. Dec. 6, 2010) ......................................................................... 8

*Yingling v. eBay, Inc.*,
  2010 WL 2382304 (N.D. Cal. June 10, 2010) ....................................................................... 3

**Other Authorities**

Administrator's Interpretation No. 2015-1 at 2 (Dep't of Labor Wage and Hour
  Div. July 15, 2015) ................................................................................................................. 9

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................................ 7

Fed. R. Evid. 702 ............................................................................................................................ 4

Fed. R. Evid. 704 ............................................................................................................................ 5

## I. INTRODUCTION

In their class certification reply brief, Plaintiffs raise—for the first time—three new arguments pertaining to their request for class certification. They urge the Court to: (1) ignore the more than 400 driver declarations filed with Uber's opposition brief based on unsupported accusations that they were allegedly "obtained . . . under false pretenses";[1] (2) "disregard[]" the expert report of Dr. Justin McCrary filed in support of Uber's opposition to class certification, ECF No. 301 ("McCrary Report"), on grounds that it is purportedly "inadmissible and legally irrelevant"; and (3) give deference to statements made by the U.S. Department of Labor ("DOL") in an administrator's interpretation of the Fair Labor Standards Act ("FLSA") when determining whether class certification is proper here. *See* Pls.' Reply in Supp. of Their Mot. For Class Cert., ECF No. 312 ("Reply"), at 3 n.4, 8 n.10, 9 n.11, 18 n.24. Plaintiffs' contentions have no basis in fact or law.

First, Uber and its counsel were careful to ensure that all drivers with whom they spoke were well informed of the reasons for the conversation and the fact that it was completely voluntary, as well as the nature of the pending lawsuit, thereby fulfilling all of their legal and ethical obligations to putative class members who submitted declarations in support of Uber's opposition. The script that Uber followed meticulously during each driver interview is included with this filing, so this Court can see for itself that drivers were fully informed. Plaintiffs' reckless accusations that drivers were misled are entirely unsupported. Indeed, Plaintiffs have not filed a single driver declaration in which a driver *actually* contends he was misled—this spurious allegation comes only from a paralegal at Plaintiffs' counsel's law firm.

As for the McCrary Report, it is plainly admissible and persuasively demonstrates that Plaintiffs' proposed sweeping class cannot be certified. It discusses, from the perspective of a

---

[1] After Plaintiffs filed their motion for class certification in this action, Uber—by and through its counsel—interviewed and obtained the declarations of 385 California drivers who have used the uberX, UberBLACK, and/or UberSUV platforms of the Uber App since August 16, 2009, *i.e.*, putative class members. Evangelis Decl. in Supp. of Uber's Surreply ("Evangelis Decl.") ¶ 2. Uber filed these 385 declarations, as well as another 21 driver declarations that were previously filed in support of Uber's Motion for Summary Judgment, concurrently with Uber's Opposition to Plaintiffs' Motion for Class Certification. *Id.* & ¶ 2 n.1.

1

UBER'S SURREPLY IN RESPONSE TO PLS.' MOT. FOR CLASS CERT. - CASE NO. 13-03826-EMC

Berkeley economist, the economic underpinnings of Uber's relationships with various different types of drivers, including the many different economic reasons why drivers have chosen to use the Uber app, the economic impact that Uber has had on a variety of different types of drivers, and the likely economic impact of a judgment in Plaintiffs' favor on different types of drivers—topics that are well suited for an expert report. Uber complied with all of its discovery obligations, provided Plaintiffs with all of the data underlying the McCrary Report, and offered to make Dr. McCrary available for deposition—an offer to which Plaintiffs never responded.

Finally, the DOL interpretation on which Plaintiffs rely concerns the FLSA, not California's employee misclassification standards, and therefore is not entitled to any deference with respect to the questions at issue here. In any event, the DOL interpretation only highlights why class certification should be denied in this case.

For all of these reasons and for the reasons set forth below, the Court should reject each of the new arguments raised in Plaintiffs' Reply and deny class certification.

## II. ARGUMENT

### A. Uber Acted With The Utmost Propriety In Obtaining Driver Declarations.

Plaintiffs' baseless claim that "Uber obtained [driver] declarations under false pretenses" is unsupported by the handful of driver declarations Plaintiffs submitted, and rests solely on hearsay testimony from Plaintiffs' counsel's paralegal. Uber and its counsel acted with the highest respect for the putative class members' rights to be fully informed of the litigation and to participate voluntarily. As explained in the Evangelis declaration submitted herewith, Uber attorneys used a script that informed drivers that the attorney represented Uber, explained the claims at issue in this litigation and the fact that drivers could fall within the putative class, and emphasized the fact that giving a declaration was entirely voluntary without benefit or risk of retaliation. *See* Evangelis Decl. ¶¶ 2-7, Exs. A & B; *see also* Decls. of Armen Adzhemyan, Van Allyn Goodwin, Annureet Grewal, Victor Lee, Lalitha Madduri, and Nima Rahimi in Supp. of Uber's Surreply. Uber met its legal and ethical obligations by providing putative class members with clear, accurate information under completely voluntary circumstances. *See Babbitt v. Albertson's Inc.*, 1993 WL 128089, at *7 (N.D. Cal. Jan. 28, 1993) (determining that communications are proper where they indicate that the interview is

voluntary, clearly describe the nature of the litigation, and inform the interviewee that the purpose of the interview is to gather facts to evaluate and defend the action); *Yingling v. eBay, Inc.*, 2010 WL 2382304, at *2 (N.D. Cal. June 10, 2010) (same).  Plaintiffs' declarations from six drivers do not state otherwise—in fact, when compared to the drivers' original declarations, the six declarations do not conflict at all with these declarants' prior testimony.  *See, e.g.*, Evangelis Decl. ¶¶ 8(a)-(f), Exs. C-H.  And whereas Uber's counsel gave every declarant the opportunity to read and sign a hard-copy individually-tailored declaration, the declarations submitted by Plaintiffs all contain nearly the same stock language and are electronically signed.  *See* Evangelis Decl. ¶ 5; Beltrán Decl. in Supp. of Pls.' Reply, ECF No. 314, ¶¶ 10-15, Exs. A-F.

Further, the entire basis for Plaintiffs' specious accusations—the Declaration of Elizabeth Lopez Beltrán, filed with Plaintiffs' reply brief—rests on nothing more than hearsay.[2]  *See Taylor v. Shippers Transp. Exp., Inc.*, 2014 WL 7499046, at *4 (C.D. Cal. Sept. 30, 2014) (a declaration in which the declarant describes what other people supposedly "contacted him to tell him" . . . is "inadmissible hearsay"); *Twentieth Century Fox Film Corp. v. Dastar Corp.*, 2000 WL 35503105, at *2 (C.D. Cal. Jan. 4, 2000) (sustaining hearsay objections to a declaration that relayed the declarant's conversation with another person).  And, despite Beltrán's unsupported statement that over 1,700 drivers have contacted Plaintiffs' counsel to "express[] their support for the case and their desire to be classified as Uber's employees," *see* Reply at 18, Plaintiffs <u>do not submit a single driver declaration stating so</u>.  Even if some drivers may wish to be reimbursed for certain expenses, *see, e.g.*, Beltrán Decl. ¶ 10, Ex. A ¶ 7, ECF No. 314, nothing in these drivers' declarations indicates support for *this particular* litigation with its potential to drastically change the relationships between Uber and drivers.  *See id.* ¶¶ 10-15, Exs. A-F; McCrary Report at 84-88, 91-96.[3]

---

[2] For example, Elizabeth Lopez Beltrán's statement that "[t]he vast majority of the drivers I have spoken with have expressed support for the lawsuit" is hearsay that should be excluded by the Court, as should paragraphs 6-9.  *See* Beltrán Decl. ¶¶ 5-9.

[3] Plaintiffs' argument that the Court should disregard Uber's driver declarations relies on case law that is distinguishable, inapplicable, or supports Uber's position.  *See* Reply at 19 & n.25.  For example, two of the cases involve conditional certification of a collective action under the FLSA, a standard that does not require the same "rigorous analysis" involving the merits that Rule 23(b)

**B.     Dr. Justin McCrary's Expert Report Is Plainly Admissible and Relevant and Should Be Considered by This Court.**

Plaintiffs present two arguments as to why the Court should "disregard[]" the McCrary Report, claiming (1) it is "inadmissible and legally irrelevant"; and (2) Uber failed to comply with its disclosure requirements under Rules 26 and 37.  Reply at 9 n.11.  Neither contention has merit.  The Court can and should consider the McCrary Report when determining whether class certification is warranted.[4]

### 1.     The McCrary Report is Legally Relevant and Admissible.

In their reply brief, Plaintiffs suggest that the 97-page expert report filed by Dr. McCrary is inadmissible in its *entirety* because it states that "There is No Typical Driver Who Uses The Uber App"—a finding that Plaintiffs argue conflicts with the rule that expert reports may not "advis[e] the court about how the law should apply to the facts of a particular case."  Reply at 9 n.11 (citation omitted).  But the McCrary Report does not purport to apply the facts to the law, as Plaintiffs claim.[5]

---

requires.  *See Comcast v. Behrend*, 133 S. Ct. 1426, 1429 (2013); *Costello v. Kohl's Ill., Inc.*, 2014 WL 4377931, at *7 n.7 (S.D.N.Y. Sept. 4, 2014) (finding the declarations to be of "limited value" in a FLSA conditional certification inquiry because the court cannot "weigh evidence and make credibility determinations"); *Creely v. HCR Manorcare, Inc.*, 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011) (noting that the FLSA collective action standard "does not touch upon the merits of plaintiffs' claims").  Two other cases involve declarations that bear no resemblance to the declarations Uber submitted.  *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1060-61 (N.D. Cal. 2007) (finding fault in plaintiffs' declarations where they were "nearly identical in terms of language and substance," but still evaluating their impact on class certification); *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635 (D. Col. 1986) (declarations merely stated that certain "'satisfied customers' would be indifferent as to the claims and potential recovery of the class").

[4] Notably, Plaintiffs do not dispute (nor could they) that Dr. McCrary is qualified as an expert, or that he rigorously applied reliable methods to sufficient facts or data.  *See* Fed. R. Evid. 702.

[5] Cases cited by Plaintiffs in their reply brief are distinguishable because they involved reports that "read[] like a legal brief," contained "speculative calculations," or "simply [told] the jury what result to reach"—none of which remotely describes the McCrary Report.  *See The Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1044-45 (D. Ariz. 2005) (striking a portion of the expert report that "read[] like a legal brief . . . and applie[d] [law] to the facts," but allowing the same expert report to opine on corporate norms); *McPhail v. First Command Fin. Planning*, 247 F.R.D. 598, 605 (S.D. Cal. 2007) (striking portions of expert report containing "speculative calculations," but allowing portion of expert report that restated deposition testimony where it provided a "useful description" of the alleged wrongdoing); *compare FedEx Ground Package Sys., Inc. Employment Practices Litig.*, 2010 WL 1838400, at *5 (N.D. Ind. May 4,

Instead, the chapter of the McCrary Report with which Plaintiffs apparently take issue explains—through an economic lens based on substantial academic literature, surveys, and the *hundreds* of driver declarations that Dr. McCrary analyzed—the many substantial ways in which drivers' economic relationships with Uber vary.  For example, the report concludes, *inter alia*, that (1) some drivers who use the Uber App also use competing apps at the same time, while others do not; (2) individuals who were drivers before the existence of lead generation apps were affected in many different ways by the entry of such apps; and (3) individuals who were *not* drivers prior to the existence of lead generation apps started using such apps due in large part to the flexibility they provide.  *See* McCrary Report at 30-55.  Such expert analysis is appropriate because it will assist the court in analyzing how the economics of the sharing economy affect the class certification inquiry, *see Rosenberg v. Renal Advantage, Inc.*, 2013 WL 3205426, at * 4 (S.D. Cal. June 24, 2013) (denying motion to strike expert opinion on job classification of exempt employees), will aid the trier of fact in understanding and interpreting the voluminous evidence and facts at issue, *see Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 823 F. Supp. 2d 995, 1001 (N.D. Cal. 2011) (internal citation omitted), and does <u>not</u> purport to apply fact to law.[6]

In fact, courts routinely consider expert declarations submitted with class certification briefing, because the "rigorous analysis" required under Rule 23 "overlap[s] with the merits of the plaintiff's underlying claim," *Dukes v. Wal-Mart Stores, Inc.*, 131 S. Ct. 2541, 2551-52 (2011), and because plaintiffs must demonstrate that their "theory can be proved on a *classwide* basis," *id.* at 2555 (emphasis added).  Given the important role that expert witness evidence plays at the class

---

2010) (striking expert report because its "legal conclusions, which comprise[d] a majority of [the] expert report, wouldn't assist the jury in understanding the evidence or in determining the facts at issue because [it] simply tell[s] the jury what result to reach").

[6] To the extent Plaintiffs claim that the McCrary Report *overlaps* with the ultimate issue here—whether class certification is warranted—Plaintiffs' objections ignore that "[a]n [expert] opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704; *see Mark H. v. Hamamoto*, 2012 WL 3444138, at *3 (D. Haw. Aug. 14, 2012) (holding that "a party's expert may testify as to his or her factual opinions, even where the opinions embrace the ultimate issue . . . ."); *United States v. Dazey*, 403 F.3d 1147, 1172 (10th Cir. 2005) ("Even if his testimony arguably embraced the ultimate issue, such testimony is permissible as long as the expert's testimony assists, rather than supplants, the jury's judgment.").

certification stage, and the expectation that such evidence will be submitted, it is remarkable that Plaintiffs in this case have submitted *no* expert witness evidence in support of their request to certify this <u>160,000+</u> member putative class. As Chief Judge Phillis Hamilton recently held, "under *Comcast*, the plaintiff is required to provide 'evidentiary proof' showing a classwide method of awarding relief that is consistent with plaintiff's theory of liability." *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *12-13 (N.D. Cal. Jan. 7, 2014) (denying class certification because "plaintiff [had] offered no expert testimony demonstrating" predominance under Rule 23). Plaintiffs' failure to do so, and their reliance on bare and conclusory statements that their claims may be decided on a classwide basis, underscores Plaintiffs' utter failure to satisfy their burden at this stage. *See Comcast*, 133 S. Ct. at 1433 (finding lack of predominance because plaintiffs' expert witness failed to present a damages model capable of measurement on a classwide basis); *Dukes*, 131 S. Ct. at 2552-54 (reversing order granting class certification because plaintiffs' expert witness failed to prove that there were common answers to plaintiffs' claims); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification."); *Curtis v. Extra Space Storage, Inc.*, 2013 WL 6073448, at *4 (N.D. Cal. Nov. 18, 2013) (rejecting class certification "[b]ecause plaintiff fail[ed] to demonstrate a reliable method to compute damages classwide"); *Astiana*, 2014 WL 60097, at *12-13.

Furthermore, Plaintiffs state (without any elaboration) that the McCrary Report is "legally irrelevant." Reply at 9 n.11. However, the McCrary Report discusses a number of factual issues that are plainly relevant to class certification under *Borello*, including the profound differences among drivers who use the Uber App and how they use it, *see* McCrary Report at 30-74, *Arnold v. Mut. of Omaha Ins. Co.*, 202 Cal. App. 4th 580, 589 (2011) (finding an independent contractor relationship where an insurance agent "used her own judgment in determining . . . the time, place, and manner in which she would solicit, and the amount of time she spent soliciting"); the minimal degree of supervision exercised by Uber over drivers, *see* McCrary Report at 74-81, *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations,* 48 Cal. 3d 341, 350–51 (1989) (acknowledging the importance of the "right to control the manner and means of accomplishing the result desired"); the difficulties associated with calculating Plaintiffs' claimed damages on a classwide basis, *see* McCrary Report at

81-90, *Comcast*, 133 S. Ct. at 1433; and the fact that many drivers would be harmed by the very relief Plaintiffs seek, *see* McCrary Report at 91-97, a factor that is directly relevant to whether Plaintiffs have satisfied the adequacy prong of Rule 23, *see, e.g.*, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997), *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998).

### 2. Uber Satisfied Its Obligations Under Rules 26 and 37.

Plaintiffs also contend that the McCrary Report should be stricken because Uber did not disclose the identity of Dr. McCrary until the date on which it filed its class certification opposition. Reply at 9. Contrary to Plaintiffs' claims, however, numerous courts in the Northern District have made clear that Rule 26 does *not* require parties to disclose the existence or identity of their expert witnesses before filing their class certification briefing, absent a court order requiring disclosure. *See Ridgeway v. Wal-Mart Stores, Inc.*, 2014 WL 4477662, at *11 (N.D. Cal. Sept. 10, 2014) (declining to strike expert witness declarations filed by plaintiffs in support of class certification motion because Rule 26 "does not require advance disclosure of expert witness reports for use in class certification briefing"); *Ewert v. eBay, Inc.*, 2010 WL 4269259, at *13 (N.D. Cal. Oct. 25, 2010) ("Rule 26(a)(2) does not require advance disclosure of expert witness reports for use in class certification briefing.") (citations omitted); *see also* Fed. R. Civ. P. 26(a)(2)(A) ("[A] party must disclose to the other parties the identity of any witness it may use *at trial* to present evidence.") (emphasis added).[7]

And, even if Uber had breached a disclosure obligation (which it has not), Plaintiffs have failed to show that they suffered any prejudice—an independent reason to deny Plaintiffs' request. *See Carrillo v. Schneider Logistics Inc.*, 2013 WL 6442328, at *2 (C.D. Cal. Dec. 6, 2013) (concluding that defendants were not prejudiced by disclosure of expert witness on the eve of the disclosure deadline, and that defendants could seek relief for any actual prejudice under FRCP

---

[7] The sole case cited by Plaintiffs in support of their argument, *Allen v. Similasan Corp.*, 2015 WL 1534005, at *3-4 (S.D. Cal. Nov. 7, 2014), is inapposite, as it involves a motion to strike a rebuttal expert report that asserted a "novel damages model" and was filed over a month after a court-imposed deadline to exchange expert reports. *See Allen v. Similasan Corp.*, 2015 WL 1534005, at *3-4 (S.D. Cal. Nov. 7, 2014). Here, in contrast, there was no court deadline regarding the disclosure of expert reports, nor was there anything "novel" about Dr. McCrary's methodology or conclusions.

16(c)(4)); *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 190–91, 195 (N.D. Cal. 2004) (declining to strike portions of expert report because plaintiffs could not show actual prejudice). Indeed, Uber provided *all* of the data considered by Dr. McCrary shortly after Uber filed its class certification opposition, even though it was under no obligation to do so. *See* Evangelis Decl. in Supp. of Uber's Surreply ("Evangelis Decl.") ¶ 8, Ex. I. Moreover, Uber promptly offered to make Dr. McCrary available for deposition—on its own, without any request from Plaintiffs—an offer that Plaintiffs ignored. *Id.* Finally, Plaintiffs never once asked for a modification of the class certification briefing schedule so as to give them more time to analyze the expert report or depose Dr. McCrary, a fact that several courts have found relevant when deciding whether a party has been prejudiced by an alleged Rule 26 violation. *Wilson v. Kiewit Pac. Co.*, 2010 WL 5059522, at *10 (N.D. Cal. Dec. 6, 2010) ("[I]f plaintiff felt she needed to depose those declarants to test their assertions, plaintiff should have attempted to work with defendant to move the briefing schedule for the Reply so that she would have time to depose them (and if defendant wouldn't agree, sought leave of Court to do so)."); *Temple v. Guardsmark LLC*, 2011 WL 723611, at *3 n.3 (N.D. Cal. Feb. 22, 2011) ("The Court would have been more sympathetic to plaintiffs' objection if, instead of merely objecting to the declarations two months after they were filed, plaintiff had attempted to depose the declarants to test their assertions . . . ."). Given the lack of prejudice to Plaintiffs, "disregarding" Dr. McCrary's report is a "particularly harsh" result where, as here, it would impact Uber's ability to oppose class certification. *See Rooney v. Sierra P. Windows*, 2011 WL 2149097, at *3 (N.D. Cal. June 1, 2011).

**C.    The United States Department of Labor's Administrator's Interpretation of the Federal FLSA is Irrelevant, and in Any Event Supports Uber's Position.**

At various points throughout their reply, Plaintiffs cite a U.S. Department of Labor Administrator's Interpretation in support of their claims that "most workers are employees" and Uber purportedly exercises control over drivers. Reply at 3 n.4, 5 n.6, 8 n.9 & n.10. However, the Administrator's Interpretation on which Plaintiffs rely merely interprets the "suffer or permit to work" definition of "employ" under the federal FLSA. Plaintiffs have not explained why this federal agency interpretation of federal law is entitled to any deference when this Court interprets

California's *state* misclassification law.[8]

Even if the Administrator's Interpretation were relevant to Plaintiffs' motion, it would not support Plaintiffs' request for class certification. Instead, it severely *undermines* Plaintiffs' motion, which asks this Court to resolve the *Borello* test with a "laser-like" focus on a single factor—Uber's alleged right to control as purportedly evidenced by a handful of contract terms—to the exclusion of all other factors. *Air Couriers Int'l v. Emp't Dev. Dep't*, 150 Cal. App. 4th 923, 933 (2007). For example, the Administrator's Interpretation states that "[a]ll of the factors must be considered in each case, and no one factor (particularly the control factor) is determinative of whether a worker is an employee." Administrator's Interpretation No. 2015-1 at 2 (Dep't of Labor Wage and Hour Div. July 15, 2015); *see also id.* at 14 ("The control factor should not overtake the other factors of the economic realities test . . . ."); *id.* at 14 ("[T]he 'control' factor should not play an oversized role in the analysis of whether a worker is an employee or an independent contractor. All possibly relevant factors should be considered, and cases must not be evaluated on the control factor alone.") (citations omitted). In fact, according to the DOL, "[t]he addition or alteration of any . . . fact[] . . . could change the resulting analysis." *Id.* at 7 n.6. Thus, to the extent the DOL's interpretation of the FLSA is relevant at all, it supports *Uber's* contention that Plaintiffs' class certification motion may not be decided based on a supposedly "uniform" right to control drivers' conduct.[9] *See* Uber's Opp'n to Class Cert. at 11-12.

### III. CONCLUSION

The new arguments in Plaintiffs' Reply are meritless and should be rejected. Accordingly, and for all of the reasons presented in Uber's Opposition to Class Certification, the Court should deny Plaintiffs' Motion for Class Certification.

---

[8] Uber maintains that the *Borello* test—not *Martinez*'s Industrial Welfare Commission ("IWC") test—is applicable here, although Plaintiffs' claims fail Rule 23's requirements under either standard. *See* Uber's Opp'n to Class Cert. at 11 n.3, ECF No. 298; Order Denying Mot. for Summ. J., ECF No. 251, at 6-9 (applying *Borello* to Plaintiffs' claims).

[9] As discussed in Uber's opposition brief, the licensing agreements and driver addenda executed by drivers do not, in fact, afford Uber a "uniform" right to control drivers and have varied in numerous significant ways. *See, e.g.*, Uber's Opp'n to Class Cert. at 13-14, 16-17.

Dated:  July 30, 2015

Respectfully submitted,
GIBSON, DUNN & CRUTCHER LLP


By:  */s/ Theodore J. Boutrous, Jr.*

Attorneys for Defendant
UBER TECHNOLOGIES, INC.


**ECF ATTESTATION**

    I, Dhananjay S. Manthripragada, attest that concurrence in the filing of this document has been obtained from the other Signatory, which shall serve in lieu of his signature on the document. Signed this 30th day of July, 2015.

*/s/ Dhananjay S. Manthripragada*
Dhananjay S. Manthripragada