GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS JR., SBN 132099
 tboutrous@gibsondunn.com
DEBRA WONG YANG, SBN 123289
 dwongyang@gibsondunn.com
MARCELLUS A. MCRAE, SBN 140308
 mmcrae@gibsondunn.com
THEANE EVANGELIS, SBN 243570
 tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
 dmanthripragada@gibsondunn.com
BRANDON J. STOKER, SBN 277325
 bstoker@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

JOSHUA S. LIPSHUTZ, SBN 242557
 jlipshutz@gibsondunn.com
KEVIN RING-DOWELL, SBN 278289
 kringdowell@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, THOMAS COLOPY, MATTHEW MANAHAN, and ELIE GURFINKEL, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., <br><br> Defendant. | Case No. CV 13-03826-EMC <br><br> **SUPPLEMENTAL DECLARATION OF THEANE EVANGELIS IN SUPPORT OF DEFENDANT UBER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> Hearing Date:    August 6, 2015 <br> Hearing Time:    1:30 p.m. <br> Hearing Place:    Courtroom 5 <br> Judge:    Hon. Edward M. Chen |

1

## SUPPLEMENTAL DECLARATION OF THEANE EVANGELIS

2        I, Theane Evangelis, declare as follows:

3        1.        Pursuant to this Court's Supplemental Briefing Order dated July 31, 2015, ECF No.

4   321, and Federal Rules of Evidence Rule 1006, Defendant Uber Technologies, Inc. ("Uber")—by and

5   through the undersigned counsel—has prepared 14 amended charts in support of its opposition to

6   Plaintiffs' motion for class certification, ECF No. 298.  The below-listed charts summarize the

7   provisions contained in the 13 licensing and software agreements and 4 driver addenda that Uber

8   and/or Rasier, LLC ("Rasier") have promulgated to drivers who use the Uber App.  *See* Colman Decl.

9   in Supp. of Def.'s Opp'n to Class Cert., ECF. No. 302, Exs. A-Q.  I have reviewed these agreements,

10  am familiar with these agreements, believe that the following exhibits accurately depict the

11  provisions contained in these agreements, and if called to do so, I could and would competently

12  testify hereto.

13        a.        Amended Exhibit 41 ("Summary of Licensing Agreements") is a chart that was

14                  created by Gibson, Dunn & Crutcher ("Gibson Dunn") attorneys at my direction.

15                  It summarizes eight key provisions in the 17 licensing agreements, software

16                  agreements, and driver addenda that Uber and/or Rasier have promulgated to

17                  putative class members during the putative class period.

18        b.        Amended Exhibit 42 ("Whether Agreement States That Driver Is An Independent

19                  Contractor") is a chart that was created by Gibson Dunn attorneys at my direction.

20                  It analyzes whether each of the licensing agreements, software agreements, and

21                  driver addenda that Uber and/or Rasier have promulgated to putative class

22                  members during the putative class period defines the relationship between

23                  Uber/Rasier and putative class members as an independent contractor relationship.

24        c.        Amended Exhibit 43 ("Whether Agreement Prohibits Driver From Using the Uber

25                  App and Another Lead Generation App Simultaneously") is a chart that was

26                  created by Gibson Dunn attorneys at my direction.  It analyzes whether each of the

27                  licensing agreements, software agreements, and driver addenda that Uber and/or

28                  Rasier have promulgated to putative class members during the putative class

1

1    period prohibits putative class members from using the Uber App at the same time

2    as another lead generation app, such as Lyft or Sidecar.

3        d.    Amended Exhibit 44 ("Whether Agreement Requires Specific Types of Vehicle

4    Models") is a chart that was created by Gibson Dunn attorneys at my direction.  It

5    analyzes whether each of the licensing agreements, software agreements, and

6    driver addenda that Uber and/or Rasier have promulgated to putative class

7    members during the putative class period requires that drivers' vehicles satisfy

8    various criteria (including safety criteria, recent model types, and operating

9    condition).

10       e.    Amended Exhibit 45 ("Whether Agreement Limits Drivers' Discretion To Accept

11   Ride Requests") is a chart that was created by Gibson Dunn attorneys at my

12   direction.  It analyzes whether each of the licensing agreements, software

13   agreements, and driver addenda that Uber and/or Rasier have promulgated to

14   putative class members during the putative class period expressly permits riders to

15   decline ride requests.

16       f.    Amended Exhibit 46 ("Whether Agreement Requires Driver to Use App to Stay

17   Active") is a chart that was created by Gibson Dunn attorneys at my direction.  It

18   analyzes whether each of the licensing agreements, software agreements, and

19   driver addenda that Uber and/or Rasier have promulgated to putative class

20   members during the putative class period requires drivers to log into the Uber App

21   in order to maintain an active Uber account and, if so, how often putative class

22   members must do so.

23       g.    Amended Exhibit 47 ("Whether Agreement States That Uber/Rasier Will Arrange

24   Payment Of Partner/Driver") is a chart that was created by Gibson Dunn attorneys

25   at my direction.  It analyzes whether each of the licensing agreements, software

26   agreements, and driver addenda that Uber and/or Rasier have promulgated to

27   putative class members during the putative class period states that Uber/Rasier will

28   arrange payment of the partner or driver.

2

h.    <u>Amended Exhibit 48</u> ("Whether Agreement Expressly Permits Partner/Driver to Negotiate Rider Fares") is a chart that was created by Gibson Dunn attorneys at my direction.  It analyzes whether each of the licensing agreements, software agreements, and driver addenda that Uber and/or Rasier have promulgated to putative class members during the putative class period expressly permits the partner and/or driver to negotiate a different rider fare amount.

i.    <u>Amended Exhibit 49</u> ("Whether Agreement Expressly Permits Uber/Rasier To Adjust Fares") is a chart that was created by Gibson Dunn attorneys at my direction.  It analyzes whether each of the licensing agreements, software agreements, and driver addenda that Uber and/or Rasier have promulgated to putative class members during the putative class period expressly permits Uber to adjust rider fare amounts.

j.    <u>Amended Exhibit 50</u> ("Whether Agreement Prohibits Drivers/Partners From Accepting Tips") is a chart that was created by Gibson Dunn attorneys at my direction.  It analyzes whether each of the licensing and software agreements that Uber and/or Rasier have promulgated to putative class members during the putative class period expressly prohibits drivers from accepting tips.

k.    <u>Amended Exhibit 51</u> ("Whether Agreement Guarantees Driver/Partner A Rider Cancellation Fee") is a chart that was created by Gibson Dunn attorneys at my direction.  It analyzes whether each of the licensing agreements, software agreements, and driver addenda that Uber and/or Rasier have promulgated to putative class members during the putative class period guarantees that Uber/Rasier will pay the driver a cancellation fee if a rider cancels his or her ride request.

l.    <u>Amended Exhibit 52</u> ("Whether Agreement Expressly Permits Uber to Deactivate Drivers Based on Ratings") is a chart that was created by Gibson Dunn attorneys at my direction.  It analyzes whether each of the licensing agreements, software agreements, and driver addenda that Uber and/or Rasier have promulgated to

3

1    putative class members during the putative class period expressly permits

2    Uber/Rasier to deactivate driver accounts based on a low star rating and, if so,

3    whether Uber/Rasier must provide drivers with notice and an opportunity to cure.

4    m.    Amended Exhibit 53 ("Whether Agreement Creates an Express Right for Uber to

5          Terminate 'Without Cause'") is a chart that was created by Gibson Dunn attorneys

6          at my direction.  It analyzes whether each of the licensing agreements, software

7          agreements, and driver addenda that Uber and/or Rasier have promulgated to

8          putative class members during the putative class period creates an express right for

9          Uber/Rasier to terminate the agreement "without cause."

10   n.    Amended Exhibit 54 ("Whether Agreement Expressly Reserves a Mutual Right to

11         Terminate 'Without Cause'") is a chart that was created by Gibson Dunn attorneys

12         at my direction.  It analyzes whether each of the licensing agreements, software

13         agreements, and driver addenda that Uber and/or Rasier have promulgated to

14         putative class members during the putative class period creates a mutual right—

15         held by Uber/Rasier and the driver—to terminate the agreement "without cause."

16   o.    Amended Exhibit 55 ("Whether Agreement Contains an Arbitration Provision") is

17         a chart that was created by Gibson Dunn attorneys at my direction.  It analyzes

18         whether each of the licensing agreements, software agreements, and driver

19         addenda that Uber and/or Rasier have promulgated to putative class members

20         during the putative class period contains an arbitration provision.

21   I declare under penalty of perjury under the laws of the State of California and the United

22   States of America that the foregoing is true and correct.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

4

Executed at Los Angeles, California, the 3rd day of August 2015.

By:     /s/ Theane Evangelis
                Theane Evangelis

Attorney for Defendant
UBER TECHNOLOGIES, INC.

I, Kevin Ring-Dowell, hereby attest that concurrence in the filing of this document has been obtained from Theane Evangelis.

DATED: August 3, 2015          By:     /s/ Kevin Ring-Dowell.
                                          Kevin Ring-Dowell