SHANNON LISS-RIORDAN, *pro hac vice*
(sliss@llrlaw.com)
ADELAIDE PAGANO*, pro hac vice*
(apagano@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:      (617) 994-5801

MATTHEW CARLSON (SBN 273242)
(mcarlson@carlsonlegalservices.com)
Carlson Legal Services
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone:     (415) 817-1470

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, THOMAS COLOPY, MATTHEW MANAHAN, and ELIE GURFINKEL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC,<br><br>Defendant. | Case No. CV  13-3826-EMC<br><br>**PLAINTIFFS'  MOTION TO STRIKE THE COLEMAN DECLARATION (DOC. 302) AND EXHIBITS A THROUGH R THERETO, THE MCRARY DECLARATION (DOC. 301) AND EXHIBITS THERETO, AND THE EVANGELIS DECLARATION (DOC. 299) AND EXHIBITS THERETO**<br><br>Judge: Hon. Edward M. Chen<br><br>Date: August 6, 2015<br>Time: 1:30 PM |

## I.   INTRODUCTION

Plaintiffs hereby move to strike Doc. 302, the Declaration of Michael Coleman, as well as Doc. 302-1 through Doc. 302-18, which are a series of contracts between Defendant and its drivers, which Defendant did not produce when requested by Plaintiffs in discovery. Although Plaintiffs requested "all versions of all contracts Uber has used with any [] drivers," more than a year ago in April 2014, Defendant failed to provide a comprehensive production of its contracts until July 6, 2015, a mere *three days* before filing its Opposition to Class Certification and weeks after Plaintiffs had already filed their Motion for Class Certification.  See Ex. 1 (Uber's Supplemental Response to Plfs' Request for Production).  Defendant also declined to respond in deposition to Plaintiffs' questions regarding any variations in its contracts.  Uber has now relied heavily on the contents of this eleventh hour production of documents in its Opposition Memorandum, arguing that there are seventeen different versions of its contracts with drivers – a fact which it contends precludes class certification.  The Court should not reward Defendant's evasive discovery tactics and should strike the Coleman Declaration and accompanying exhibits A through R from the class certification record.

Plaintiffs also move, pursuant to Federal Rule of Evidence 702, to exclude Doc. 301, the expert report of Dr. Justin McCrary, and accompanying exhibits, because Dr. McCrary's testimony consists of legal conclusions and other information that is not the proper basis of expert testimony.  The Court and/or jury will be the ultimate decider of whether Uber drivers are employees or independent contractors, and the Court is the expert in determining whether class certification is warranted in this case.  By submitting this report and exhibits, Defendant is simply attempting to drown the Court and Plaintiffs with paper, which attempts to make the legal issue before the Court far more complicated than it is, as well as evade the page-limit requirements the Court set on the parties' class certification briefing.  The Court should strike the report and exhibits as irrelevant, as well as on the ground that they were not disclosed to Plaintiffs until after they were filed with the Court.

Finally, Plaintiffs move to strike the Declaration of Theane Evangelis, Doc. 299 (and 322),

and accompanying charts, on the grounds that the Declaration constitutes an impermissible attempt to exceed the page limitations by inserting additional legal argument, contains irrelevant discussion (again simply trying to drown this Court in paper), and constitutes yet another example of Uber's improper sandbagging tactics.

For the reasons set forth further herein, Plaintiffs urge the Court to strike these documents accompanying Defendant's filings opposing class certification.[1]

## II. ARGUMENT

### A. The Court Should Strike The Declaration of Michael Coleman and Exhibits A through R Thereto.

Plaintiffs have consistently sought information regarding any various versions of Uber's contracts with drivers and when and where those versions were in effect.  Plaintiffs requested this information via requests for production in April 2014. See Ex. 2 (excerpts of Plfs' First Request for Production of Documents).  Specifically, Plaintiffs requested "all versions of all contracts Uber has used with any [] drivers." Id. at No. 2.  Likewise, Plaintiffs requested "[c]opies of all Uber agreements that include an arbitration clause that were disseminated to drivers after August 16, 2013 . . . including all agreements that drivers were required to agree to after August 16, 2013, in order to provide transportation services using the Uber mobile phone application." Id. at No. 15. In addition, at the Rule 30(b)(6) deposition of Defendant, Plaintiffs again sought information concerning Uber's contracts and how those agreements had changed over time. See Ex. 3

---

[1]     Uber has indicated that it will oppose this motion as procedurally improper.  Plaintiffs note that they raised in their class certification reply that they believed the expert report to be improper and that the Court should disregard it. See Doc. 312 at 9, n. 11.  On further preparation for the class certification hearing, Plaintiffs realized that the "17 versions" of the contracts that Uber submitted and rely upon so heavily, had been requested in discovery and never produced by Uber until days before its opposition brief was filed.  Plaintiffs submit that it would manifestly unjust, if the Court finds these varying contracts to have any relevance to class certification, for Uber to be permitted to rely on such tactics; Uber should not be rewarded for its procedural deficiencies in relying on evidence it declined to produce in discovery.  As for the summaries and charts that Plaintiffs also seek to strike, Plaintiffs are simply attempting to focus the record on the legal arguments properly submitted through the briefs (with their accompanying page limits), and urge the Court to not allow Uber to attempt to overwhelm the record with voluminous pages that Plaintiffs submit are not helpful to deciding the issues at hand.

(Coleman Dep. excerpts) at 246:16-252:12. In response to a series of questions aimed at determining if and how the agreements with drivers had changed over time, defense counsel instructed Mr. Coleman, Uber's Rule 30(b)(6), witness not to answer and even left the room with the witness while a question was pending.  Id.[2]  Defendant had a continuing obligation to comply with Plaintiffs' requests for production and to answer responsive questions that were clearly within the scope of the Rule 30(b)(6) designations.  Not having received any further production regarding varying contracts, Plaintiffs understood that Uber had produced all versions of the contract, as had been requested, or at least all versions upon which Uber intended to rely in this matter.

However, more than a year after this discovery was propounded, on July 6, 2015, weeks after Plaintiffs had moved for class certification, and a mere *three days* before Uber filed its Opposition to Class Certification, Uber finally produced the various versions of its contracts attached to the Coleman declaration and clarified when each was in effect. See Ex. 1.  Uber now seeks to rely heavily on this dilatory production, arguing that the various versions of its contract preclude class certification.

As Plaintiffs have explained in their Reply in Support of Class Certification (Doc. 312), Plaintiffs contend that any minor changes to the language in these various contracts are immaterial, as Defendant has plainly maintained its right to terminate drivers at will and monitor their performance.  Indeed, even before July 2013, when Uber incorporated express language granting itself the unconditional right to terminate drivers,[3] its practice was always to simply terminate drivers in its sole discretion. See, e.g., Doc. 238-2 (showing Uber's practice of

---

[2]      When Plaintiffs' counsel posed the question, "Has the agreement that drivers are required to sign in order to use the Uber app changed from time to time over the years?", defense counsel instructed the witness not to answer and left the room with a question pending. Id. at 247-250. When Plaintiffs' counsel followed up and asked "Are you aware of any significant -- or any differences at all in the agreement that is used for drivers in different cities?", defense counsel again instructed the witness not to answer. Id. at 250-52.

[3]      See, e.g., Doc. 223-16 at § 4.1: "Uber will have the right, at all times and at Uber's sole discretion, to reclaim, prohibit, suspend, limit or otherwise restrict the Transportation Company and/or the Driver from accessing or using the Driver App or the Device."

terminating drivers in its discretion over time); 238-3, 238-4, 238-5 (correspondence regarding driver deactivations from 2012). Moreover, as noted in Plaintiffs' reply, Ryan Graves, Vice-President of Operations, has confirmed in his deposition that Uber does not have any process in place for determining which version of the contract a given driver has operated under before deciding whether to terminate (or "deactivate") that driver.  See Doc. 313-3 at 185:25-186:8.

Thus, Plaintiffs do not believe these various versions of the contract should undermine class certification.  However, if the Court were to find that these variations had any legal significance to the matter at hand, Plaintiffs urge the Court not to condone Uber's gamesmanship and strike these documents from the record in their entirety.  If Uber intended to rely on these documents that had been requested last year, it should have produced them at the time, it should have timely supplemented them when new versions of the contract were put into use, and it should have responded to Plaintiffs' attempts to obtain discovery about them through the Rule 30(b)(6) deposition.  Its failure to produce these in discovery until the eve of its Class Certification Opposition, and then rely so heavily on them, should not be tolerated by this Court.

### B.  The Court Should Strike the Declaration of Justin McCrary and All Exhibits Thereto, Doc. 301 and 301-1.

Under the Federal Rules of Evidence, the trial court provides an important gatekeeper function with respect to expert testimony, and has broad discretion to exclude such testimony where it is determined to be unreliable, irrelevant, or potentially prejudicial.  See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 592 (1993); Correa v. Cruisers, Div. of KCS Int'l, Inc., 298 F.3d 13, 24 (1st Cir.2002).  "The fundamental question that a court must answer in determining whether a proposed expert's testimony will assist the trier of fact is '[w]hether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved.'"  United States v. Shay, 57 F.3d 126, 132 (1st Cir. 1995) (internal citations omitted).  Expert testimony in the form of legal conclusion, like that proffered by Uber, which attempts to supplant the role of the judge, has no place in the courtroom. Pokorny v. Quixtar Inc., 2007 WL 1932922, *3 (N.D. Cal. Jun. 29, 2007)

4

1   (finding expert's declaration inadmissible because the legal conclusions are pervasive and "the

2   Court will not endeavor to rewrite the entire declaration, striking or allowing testimony on a

3   sentence-by-sentence basis").  Moreover, where an expert's testimony, as here, offers little in the

4   way of relevant evidence, the Court is within its discretion to exclude it. Aguilar v. International

5   Longshoremen's Union Local No. 10, 966 F.2d 443, 447 (9th Cir. 1992).

6          Here, McCrary's testimony should be excluded because the question of whether a class

7   should be certified is a legal question for the Court to decide and is not the proper subject of expert

8   testimony.  Indeed, McCrary's report inappropriately purports to offer expert opinions on a

9   number of legal questions, such as (1) the ascertainability of damages, (2) the potential for class

10  conflict, and (3) whether Plaintiffs' claims are "typical" of the class. See Doc. 301 at 30, 84-91.  It

11  is also essentially a supplemental 100-page brief, well beyond the page limits the Court has

12  allowed Uber for opposing class certification in this case.  The testimony should be excluded

13  because it improperly makes legal conclusions under the guise of expert testimony, when such

14  arguments are more properly argued by Uber's counsel and decided upon by the Court. See Smith

15  v. Pacific Bell Telephone Co., Inc., 649 F.Supp.2d 1073, 1089 (E.D. Cal. 2009) ("Testimony in

16  the form of a legal conclusion is an inappropriate matter for expert testimony"); Aguilar, 966 F.2d

17  at 447 (where expert opined on "matters of law for the court's determination . . . they were

18  inappropriate subjects for expert testimony"); Religious Tech. Ctr. v. Netcom On-Line Commc'n

19  Servs., Inc., 1997 WL 34605244, *8 (N.D. Cal. Jan. 6, 1997) ("It is well-established that

20  interpretations and explanations of the law are not proper subjects of expert testimony"); Salazar

21  v. A&J Constr. of Montana, Inc., 2012 WL 4092421, *3 (D.Mont. 2012) ("[I]t is the Court's duty,

22  not the…expert witness, to instruct the jury on the law"); In re FedEx Litig., 2010 WL 1838400,

23  *4 (N.D. Ind. May 4, 2010) ("Legal arguments are costly enough without being the subjects of

24  experts' depositions…" and "[i]f specialized knowledge…would assist the judge, the holders of

25  that knowledge can help counsel write the briefs and present oral argument") (quoting RLJCS

26  Enterprises Inc. v. Prof. Benefit Trust, 487 F.3d 494, 498 (7th Cir. 2007)).  Indeed, numerous

27  courts have excluded expert testimony regarding legal questions such as whether an individual is

28

PLAINTIFFS' MOTION TO STRIKE
CASE NO. CV13-3826-EMC

an independent contractor or employee.[4]  As in these cases, McCrary's report improperly opines on legal questions that are for the Court to resolve and attempts to get at this same legal question of whether Uber drivers are properly considered independent contractors or employees as well as whether such a determination can be made on a class-wide basis.  For these reasons alone it should be stricken.

Moreover, the McCrary expert report also contains irrelevant information regarding how drivers will allegedly be "harmed" if they are classified as employees.  See Doc. 301 at 92-96; Tony & Susan Alamo Foundation v. Sec'y of Labor, 471 U.S. 290, 302 (1985) (employer liable for paying even employees who do not want to be reimbursed for their wages); see also Martin v. Tango's Rest., Inc., 969 F.2d 1319, 1324 (1st Cir. 1992).  Because it offers little in the way of relevant evidence, the Court should strike it.

Plaintiffs also note that the report relies on a painstaking computational analysis of approximately 400 Uber drivers out a putative class that Uber has numbered at 160,000, as well as a self-serving hearsay report by Uber that it submitted, in which it claims to have studied its own drivers (again, never produced in discovery to Plaintiffs).  See Doc. 301-1.  It is unclear what the point is of studying and tallying these claimed differences among this tiny sampling of Uber drivers.  The parties are not in disagreement regarding the fact that many of these differences exist, but the issue before the Court is what relevance they have to class certification in this case.  Again, the introduction of this report and exhibits simply is drowning this Court in paper, which is not

---

[4]     See, e.g., Bostic v. Connor, 524 N.E.2d 881, 885-86 (Ohio 1988) (affirming the lower court's exclusion of expert testimony  and upholding a jury verdict that the plaintiff, a truck driver, was an employee of the defendant, a trucking company); Scovil v. FedEx Ground Package Sys., Inc., 2012 WL 10181062, at *1 (D. Me. Nov. 15, 2012) (striking so-called expert testimony regarding whether drivers were employees or independent contractors); In re FedEx Litig., 2010 WL 1838400, *5-6 (N.D. Ind. May 4, 2010) (excluding expert testimony on delivery drivers' employment status, finding that the preferred testimony did not assist the finder of fact); Perdue v. Gagnon Farms, Inc., 65 P.3d 570, 574 (Mont. 2003) ("Subject matter that is within the range of ordinary training or intelligence does not require expert testimony"); Summers v. A.L. Gilbert Co., 82 Cal.Rptr.2d 162, 164 (Ca.Ct.App. 1999) ("the lawyer-expert who expounds on the law usurps the role of the trial court.").

necessary to the Court's consideration of the issues.

Finally, Plaintiffs note that Uber has yet again engaged in improper sandbagging, by failing to disclose Dr. McCrary as a witness until the very day that it filed his report in support of its Opposition to Class Certification (and then produced the underlying data upon which he relied after the filing, a mere 10 days before Plaintiffs' reply was due). See Ex. 4 (Uber's Supplemental Initial Disclosures). Uber well knew that Plaintiffs would not have the opportunity to check the accuracy of the contents of this report prior to their reply being submitted (should the contents even be relevant or admissible), and also knew that Plaintiffs have no desire to defer the long-scheduled class certification hearing. Uber simply dumped this additional material at the eleventh hour on the Court and the plaintiffs in an attempt to distract from the relevant legal issues and flood the Court with its own paper. This belated disclosure constitutes an additional reason that McCrary's report should be stricken.

### C. The Court Should Strike the Declaration of Theane Evangelis, Doc. 299 (and 322), and Attachments Thereto.[5]

Finally, Plaintiffs move to strike the voluminous Declaration of Theane Evangelis (Doc. 299 and 322) and accompanying exhibits, which consist of numerous charts that purport to analyze four hundred driver declarations. The Evangelis Declaration really amounts to additional legal argument in excess of the page limits (which this Court already extended from twenty-five to forty at Uber's request, see Doc. 293). "Declarations, . . . should not be used to make an end-run around the page limitations . . . by including legal arguments outside of the briefs." King Cnty. v. Rasmussen, 299 F.3d 1077, 1082 (9th Cir. 2002). Thus, courts have routinely stricken such declarations where they are "little more than an elaboration of [the party's] legal arguments." Pac. Gas & Elec. Co. v. Lynch, 216 F. Supp. 2d 1016, 1027 (N.D. Cal. 2002) (noting that "[i]f such 'expert' testimony were permitted, the page requirements for briefs filed with the court would

---

[5]   Plaintiffs note that this Declaration was initially filed as Doc. 299 and appears to have been re-filed as Doc. 322 in response to the Court's Order requesting supplemental briefing. To the extent this new filing is deficient for the same reasons as the initial Evangelis Declaration, Plaintiffs respectfully request that it be stricken.

become, effectively, moot"); <u>see also</u> <u>Religious Tech. Ctr.</u>, 1997 WL 34605244, *9 (striking declarations and noting "that the declarations appear to be no more than an attempt to circumvent the page limits set for the moving parties' briefs"). Here, the Evangelis Declaration effectively attempts to award Defendant an additional extension of the page limits for its Opposition by allowing Uber to present lengthy analysis of the driver declarations that accompany its Opposition briefing. As such, the Declaration should be stricken.

Second, the Evangelis Declaration is largely irrelevant. As with the expert report, the declaration provides an analysis of just 400 Uber drivers out of the purportedly 160,000 putative class members, and it is not clear what relevance these precise computations have to the legal questions at issue. Finally, the declaration is yet another example of sandbagging on Uber's part, as these 400 driver declarations were not produced until Uber filed its Opposition with the Court on July 9, 2015. Defendant knew that in the limited two week period Plaintiffs had to file their reply brief they would not be able to perform a complete analysis of 400 driver declarations to confirm the accuracy of the various charts and computations in the Evangelis Declaration. This evasive maneuvering on Uber's part should not be rewarded and the declaration should be stricken.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Strike and Strike Docket Nos. 299 and 322 (and all attachments), 301 (and all attachments), and 302 (and Exhibits A through R).

Date: August 3, 2015

8

Respectfully submitted,

DOUGLAS O'CONNOR, THOMAS COLOPY,
MATTHEW MANAHAN, and ELIE GURFINKEL
individually and on behalf of all others similarly
situated,

By their attorneys,

  /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
Adelaide Pagano, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; apagano@llrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by electronic filing on August 3, 2015, on all counsel of record.

  /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.

9