1                                              Pages 1 - 22

2                      UNITED STATES DISTRICT COURT

3                    NORTHERN DISTRICT OF CALIFORNIA

4       Before The Honorable Vince Chhabria, Judge

5       PATRICK COTTER and ALEJANDRA      )   Case No. 3:13-cv-04065-vc
        MACIEL, on behalf of              )
6       themselves and all others         )
        similarly situated,               )
7                                          )
              Plaintiffs,                  )
8                                          )
           v.                              )
9                                          )
        LYFT, INC.,                        )
10                                         )
              Defendant.                   )
11      _____)
                                              San Francisco, California
12                                            Thursday, June 4, 2015

13                  TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL
                ELECTRONIC SOUND RECORDING - FTR 10:03-10:35
14
        APPEARANCES:
15
        For Plaintiffs:
16                           Lichten & Liss-Riordan, P.C.
                             729 Boylston Street, Suite 2000
17                           Boston, MA 02116
             BY:             **SHANNON LISS-RIORDAN, ESQ.**
18
                             Carlson Legal Services
19                           100 Pine Street, Suite 1250
                             San Francisco, CA 94111
20           BY:             **MATTHEW DAVID CARLSON, ESQ.**

21      For Defendant:
                             Keker & Van Nest LLP
22                           633 Battery Street
                             San Francisco, CA 94111-1809
23           BY:             **RACHAEL ELIZABETH MENY, ESQ.**

24      Also present telephonically:  Christopher John Morosoff, Esq.

25           *Transcribed by Kelly Polvi, Contract Transcriber*

| | |
|---|---|
| 1 | **THURSDAY, JUNE 4, 2015**                    **10:03 A.M.** |
| 2 | P R O C E E D I N G S |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  Counsel in *Cotter v. Lyft*, step forward. |
| 5 | Contacting Mr. Morosoff. |
| 6 | **MS. LISS-RIORDAN:**  Good morning, Your Honor. |
| 7 | **MR. MOROSOFF:**  Hello. |
| 8 | **THE CLERK:**  Hi.  Is this Mr. Morosoff? |
| 9 | **MR. MOROSOFF:**  Yeah. |
| 10 | **THE CLERK:**  Okay, I'm calling the case now. |
| 11 | **MR. MOROSOFF:**  Okay. |
| 12 | **THE CLERK:**  Calling case No. 13-cv-04065, *Cotter v. Lyft*. |
| 13 | Counsel, please state your appearances for the record. |
| 14 | **MS. LISS-RIORDAN:**  Good morning, Your Honor.  For the |
| 15 | plaintiffs, I'm Shannon Liss-Riordan.  And Matthew Carlson. |
| 16 | **THE COURT:**  Good morning. |
| 17 | **MS. MENY:**  Good morning, Your Honor.  For defendant Lyft, |
| 18 | Rachael Meny. |
| 19 | **THE COURT:**  Good morning. |
| 20 | And I know we have counsel -- counsel for the plaintiffs |
| 21 | in the state court action, *Price* -- is that what it's |
| 22 | called? -- chose not to participate in this hearing and just to |
| 23 | listen in by phone.  And I guess that's a little bit strange |
| 24 | because this is a motion to enjoin the *Price* litigation, the |
| 25 | state court litigation -- and it's a motion brought by the |

1    plaintiffs in this case -- and the defendants, in this case,

2    agree that I should enjoin the state court litigation, which

3    would obviously have a -- quite a significant impact on the

4    plaintiff in the state court litigation and their attorneys.

5    But they've, nonetheless, chosen not to participate in the

6    hearing.

7         So -- and I did have a number of questions for them, but

8    maybe, Ms. Liss-Riordan, I can talk them through with you and

9    you can help me figure them out.  I mean, do you -- I guess my

10   first question is do you agree that, in class actions like

11   this, one of the key responsibilities of the district judge is

12   to make sure that plaintiff's lawyers are not putting their own

13   financial interests ahead of the interests of the class of

14   people they propose to represent?

15        **MS. LISS-RIORDAN:**  Yes, I would say that's a fair

16   statement.

17        **THE COURT:**  Okay.  And I am concerned about that.  I am

18   concerned about the plaintiff's lawyers in the *Price* action are

19   putting their own financial interests ahead of the interests of

20   the people they propose to represent.  Because I cannot figure

21   out, given the posture that this case is currently in, what

22   benefit they could derive for the people they propose to

23   represent by proceeding with their follow-on class action in

24   state court.

25        The only thing that -- they don't really address that

1   very well in the papers that they filed.  The only thing that

2   they mentioned -- and I wanted to hear a response from you on

3   this -- is that they have a couple of claims that you don't

4   have in your lawsuit, one of which is a claim for reimbursement

5   for meal breaks and rest breaks.

6       Can you -- and they sort of say -- I mean, they don't do

7   a great job of explaining it, but they sort of say, "We -- you

8   know, "We would confer a benefit on the class of people we

9   propose to represent because we're pursuing this claim for meal

10  breaks and rest breaks, and the plaintiff Cotter and -- Cotter

11  does not -- in the federal case, does not pursue that claim on

12  behalf of the class.

13      Can you explain to me why you didn't include that claim

14  or why you don't think that their pursuit of that claim in the

15  state court would, in fact, potentially confer a benefit on the

16  class?

17      **MS. LISS-RIORDAN:**  Sure.  I'm happy to address that.

18      It does, obviously -- the circumstance puts us, the

19  plaintiffs here, in an awkward position of having to articulate

20  before the Court and before defense counsel our strategic

21  thinking as to what claims to pursue.

22      And I would submit that -- and I know that Your Honor

23  will be hearing class certification at a later date, but I

24  would submit that in a case in which plaintiff's counsel has

25  demonstrated to their Court competent counsel, able to

1    represent the interest of the class, their strategic decisions

2    should be given some respect and deference, and if they're

3    competent to decide which claims are in the best interest of

4    the class, that should be respected

5        So I'm hesitant to have to, essentially, attack other

6    plaintiff's counsel in open court for bringing claims that we

7    chose not to bring.

8        We brought claims that we thought would be viable, that

9    would serve the interest of the class, that would be viable and

10   certifiable.

11       Obviously, the meal and rest break claims, we see

12   problems with those claims, given the fact that how Lyft works

13   is that drivers can choose when they want to work, they sign

14   in, they sign out.  So we didn't see a viable claim that we

15   chose to pursue for the drivers that they were somehow being

16   deprived of their meal and rest breaks, since they can take

17   breaks whenever they want.

18       There is another claim that *Price* lawyers have included

19   for a -- a stand-alone claim for a direct violation of

20   independent con- -- or misclassification as independent

21   contractors, which requires an additional burden of proving

22   willfulness classification, which we also did not choose to

23   pursue because we didn't feel the need to have to meet that

24   higher standard.

25       So that's just a little bit of explanation as to why we

1    chose not to pursue them.

2         Given the circumstances, it does put the plaintiff's

3    lawyers who have pursued class litigation in an awkward

4    situation, if they have to file every claim imaginable under

5    the sun for fear of some other lawyers coming in and saying,

6    "Oh, you didn't pursue this, you didn't pursue that."

7         There may be reasons why we chose to pursue what we chose

8    to pursue and it would set a bad precedent and create bad

9    incentives, I think, for the parties, for court in general, to

10   put plaintiff's counsel, who filed class cases -- particular

11   class cases that may receive a lot of attention and the risk of

12   follow-on cases -- to have to assert every claim imaginable so

13   as to protect their case, so to speak.

14        And we chose not to pursue certain claims and we don't

15   believe that what the *Price* litigation purports to pursue would

16   add any particular benefit to the putative class here.

17        **THE COURT:**  And then there's the issue, I suppose --

18   again, I'm thinking of this primarily from the standpoint of

19   the unnamed members of the class, of the proposed class, the

20   Lyft drivers; right? -- who right now don't have any

21   representation because no class has been certified in either

22   case and so nobody is technically representing them right now.

23        And, you know -- so one certainty is if these plaintiff's

24   lawyers in the state court case insist on pursuing this action,

25   the only potential upside they've identified is this, you know,

1    meal and rest break claim.  And obviously I haven't dived into

2    that claim, you didn't bring it, but intuitively it seems very

3    unlikely that drivers would be able to get reimbursed for meal

4    breaks and rest breaks.

5        So the other issue that I'm focusing on in terms of

6    making sure that these unnamed, unrepresented class members are

7    not being -- their rights aren't being jeopardized is what's

8    the downside of plowing ahead with the state court litigation.

9        **MS. LISS-RIORDAN:**  Well, that raises another issue, which

10   we did note in our reply papers.  That we believe that what the

11   *Price* plaintiff's attorneys have asserted actually undermines

12   the interest of the putative class that they claim that they

13   seek to represent, and that's that their -- they made the

14   argument that Your Honor's summary judgment order is of no

15   effect to any other drivers besides the named plaintiff in this

16   case.

17       **THE COURT:**  And they're right, and that's correct.

18       **MS. LISS-RIORDAN:**  Technically, that's correct.

19   Our argument, on behalf of the putative class, is what you

20   decided -- although it was technically limited to those two

21   plaintiffs -- considered the broader issues of how Lyft

22   operates as a company.

23       And we would argue -- and we will argue -- that that

24   should apply more broadly than just the named plaintiffs.

25       The fact that these attorneys are actually arguing that

1    that decision wouldn't have any effect on anyone else is not in

2    the interest of that putative class.  And, in fact, their

3    argument that your summary judgment order should not have any

4    type of respect or deference because it was only with respect

5    to those two, again undermines the interest of the putative

6    class.  Because if their class is allowed to proceed,

7    presumably Lyft would be able to proceed to move for summary

8    judgment again in the state court case, allowing the

9    possibility of essentially what would be re-litigation of an

10   issue that was already litigated here.

11        So again, I feel that that case moving forward is not in

12   the interest of the putative class.  Not to mention the fact

13   that there is the risk that Lyft would be able to get another

14   bite at the apple of arguing that same summary judgment issue

15   that it argued before you already.  But that if that case moves

16   forward to class certification sooner than this case does, we

17   submit that, under Rule 23(g), my co-counsel and I are the

18   superior counsel to represent the interest of the class, and

19   we've put forth, in our papers, our qualifications.

20        The *Price* attorneys, in their untimely opposition, did

21   not even challenge that.

22        So I just wanted to point out that neither Lyft nor the

23   *Price* attorneys have opposed our request to be appointed

24   interim class counsel under Rule 23(g), and we submit that that

25   is also in the best interest of that class.  That qualified

1    counsel who have a great deal of experience in this type of

2    case would -- to represent the interests of the class would be

3    in the best interest of the class.

4    **THE COURT**:  Yeah, I mean, I suppose -- there are two

5    different questions.  One is who is more qualified to represent

6    the class, the plaintiff's counsel in this case or plaintiff's

7    counsel in the state court case, and I think, based on what

8    I've seen so far, that's not even a close question; right?

9    It appears that the attorneys who seek to represent the

10   plaintiffs in the state court case do not have the best

11   interests of the proposed class members at heart.  It appears

12   that they have their financial interests at heart; that is, the

13   financial interest of the plaintiff's lawyers.

14   And I think to sort of make the point maybe a little bit

15   more directly than you did, there's not much upside to them

16   proceeding with their case for their proposed clients but there

17   is a significant downside, And the significant downside is that

18   if they proceed a class could be certified in the state court

19   case and summary judgment could be granted in favor of Lyft on

20   behalf of -- with respect to all of the drivers.

21   And so they -- be that -- you know, and maybe, you know,

22   without -- without opining on whether that would be the correct

23   or incorrect outcome ultimately in the case, again, as a

24   district judge, I think I have to be concerned with the rights

25   of the people who are not currently represented in the case but

1    whose livelihood could be affected by the outcome of the case,

2    and that's the Lyft drivers, the unnamed class members.

3         So that is a major concern.  But that's different from

4    the question of who -- whether to appoint you as interim class

5    counsel in this case; right?

6         I mean, in making that decision, I wouldn't be making a

7    comparison between you and the plaintiff's lawyers in the state

8    class, which I think is an easy comparison; the question would

9    be do I believe that you are capable and able and willing to

10   faithfully represent the interests of the unnamed class

11   members; right?

12        And on that point, I do have a question, and it's

13   something we've discussed a little bit before.

14        In this case it seems to me that ultimately one of the

15   most important issues is going to be the work schedules of the

16   drivers.  And one of the factors that we consider is how -- in

17   deciding whether somebody is an independent contractor or an

18   employee is how long the worker has worked for the company.

19        So duration of the employment, and also, I think,

20   something that will be highly relevant in this case given the

21   particular unique circumstances of this case, is the work

22   schedules of the drivers.

23        And you have two named plaintiffs right now who had

24   rather sporadic work schedules and didn't work, for very long,

25   for Lyft.  And if this case goes -- if a class is ultimately

1    certified in this case and if the case goes to trial,

2    presumably you'll be putting those two named plaintiffs on the

3    stand and, in doing so, presumably you'll be shining a light on

4    their sporadic schedules and the short duration of their

5    employment with Lyft.

6          Isn't that -- I mean, if I'm right that that is going to

7    be a significant issue, isn't it potentially contrary to the

8    interests of the unnamed class members who drove for Lyft full

9    time and maybe worked for Lyft for a longer duration than the

10   plaintiffs -- the named plaintiffs in this case, and, if so,

11   you know, does that raise the concern about your willingness or

12   ability to represent the entire class, as best as it can be

13   represented?

14         **MS. LISS-RIORDAN**:  Yes, and I can speak directly to that,

15   Your Honor.

16         In light of Your Honor's comments on that very point, we

17   have identified and have a proposed new plaintiff that we

18   intend to seek to move to amend to add to the complaint as a

19   named plaintiff.

20         Frankly, we put that off, briefly, while we had this

21   matter before you.

22         **THE COURT**:  Sure.

23         **MS. LISS-RIORDAN**:  But we're prepared immediately to

24   amend-in this additional-named plaintiff who would satisfy that

25   concern -- this is someone who drove on a more full-time

1    schedule -- because of your comments.

2         Now, we don't believe that should be dispositive, but we

3    recognize that you've identified that as a concern, so -- and

4    when we get to the class certification stage, I think you'll

5    see that many Lyft -- the two plaintiffs that we have right now

6    actually may be among the most typical because many Lyft

7    drivers have driven not full time, and perhaps sporadically.

8         There is a subset, I believe, who have driven more

9    regular full-time-like hours.  And we have someone who is ready

10   and willing and wants to be a named plaintiff to represent the

11   drivers who have driven more full-time schedules.

12        **THE COURT:**  So, like, possibly subclasses, is what you're

13   saying.

14        **MS. LISS-RIORDAN:**  Perhaps, if Your Honor thought that

15   was appropriate; yes.

16        **THE COURT:**  Yeah, and I don't -- obviously, I don't --

17   you're welcome to chime in, although I just want to clarify I'm

18   not making any pre-judgments about whether the class should be

19   certified, or, if so, how the class should be certified.

20        But on the other hand, that is an issue that kind of

21   jumps off the page, I think, when you are considering the

22   particular unique circumstances of this case.

23        Sorry.

24        **MS. MENY:**  And, Your Honor, all I was going to say is

25   that we obviously reserve our rights to consider -- I assume

1       that plaintiff's counsel will talk to us about the proposed

2       amendment.  This is the first we're hearing of it.

3              **THE COURT:**  Yeah.  Of course.

4              **MS. MENY:**  And we obviously reserve our rights on that.

5              The second thing is with respect to their request to be

6       appointed interim class counsel.  Their request is in the

7       alternative, and so that request only becomes something that

8       the Court needs to decide if the Court does not grant the

9       motion to enjoin or stay.

10             And so I do believe that some of the concerns that

11      Your Honor raised are concerns, but they're also concerns that

12      may not need to be addressed on this particular motion unless

13      you are going to do an appointment of interim class counsel.

14             But in a world in which the *Price* litigation is stayed, I

15      don't believe that there's actually a necessity or a reason to

16      appoint interim class counsel now.  I mean, we could proceed

17      under the normal class certification schedule and, at the

18      appropriate point in time, there could be a discussion about

19      who should be appointed class counsel.

20             Can I ask you a question, or -- either of you.  I don't

21      know if you know the answer.  But the named plaintiff in the

22      *Price* action, Mr. -- or Mrs. Price, whoever it is, do we know

23      anything about that plaintiff's work schedule?  How long -- I

24      know -- I saw something that indicated that *Price* drove both

25      for Lyft and for Uber, but other than that, the complaint,

1    which was not very well drafted, didn't say anything about the

2    named plaintiff's worked schedule.

3         Do you know anything about that?

4    **MS. MENY:**  I don't, Your Honor, because we literally have

5    not started discovery in that case.  There is actually

6    discovery that they have now served and are attempting to

7    enforce in advance of our June 22nd motion to --

8    **THE COURT:**  But no discovery has taken place at all,

9    other than this recent discovery request that they have served

10    on you.

11    **MS. MENY:**  Correct.  They have served discovery, and we

12    have a deadline to object to it that comes up end of next week,

13    but nothing has yet occurred.

14    **THE COURT:**  Okay.  And you've asked the superior court

15    judge to stay the state court litigation and you have a hearing

16    coming up on that.

17    **MS. MENY:**  I do.

18    **THE COURT:**  So I guess -- here's my reaction to the

19    motion to stay -- or the motion to enjoin the superior court

20    litigation, state court litigation.  It's somewhat unusual

21    because we have both parties agreeing that I should do it.  But

22    I think that enjoining state court litigation, that is a very

23    extreme measure, and -- although if I were the superior court

24    judge I would probably stay the state court litigation because

25    this case is much farther along than the state court case, I

1    think there are real concerns about whether the plaintiff's

2    lawyers in the state court case really have the interests of

3    the Lyft drivers at heart.

4          But that's up to the state court judge, and I think it

5    would be -- it would be quite extreme for me, in these

6    circumstances, to enjoin state court litigation, so I'm going

7    to deny that motion.  I'm not going to enjoin the state court

8    litigation.  That motion is denied.

9          You have a couple of other requests.  One is to be

10    appointed interim class counsel, the other is to move up the

11    class certification schedule.

12          Sorry?

13    **MS. LISS-RIORDAN:**  Well, if I just may state, because I

14    thought -- I thought you might say exactly what you just said.

15    **THE COURT:**  Mm-hm.

16    **MS. LISS-RIORDAN:**  Alternatively, as we pointed out, if

17    you were to appoint us interim class counsel, to which there

18    has been no objection by Lyft or the *Price* attorneys in their

19    papers, and if -- and I understand we've also discussed the

20    class certification schedule in this case and that we had the

21    argument before you when you said it, as you said it, and we

22    are content with that schedule, other than the fact that this

23    issue just arose.

24    **THE COURT:**  Right.

25    **MS. LISS-RIORDAN:**  What might address the situation here

1    perhaps just as effectively as if you were to issue the

2    injunction that we had sought, is that -- if you were to

3    appoint us interim class counsel, if you were to state -- if

4    you believed this appropriate -- that we're under no obligation

5    to coordinate discovery with that case, if we choose not to.

6        And another possibility, and it's, I believe, in the

7    *Handbook of Complex Litigation*, is you could place a phone call

8    to the state court judge as well.

9        And obviously, I think it would be preferable, from the

10   federal court standpoint, if the state court judge made their

11   own decision to stay the case.

12       But there's nothing preventing you from communicating

13   and, in fact, there's authority for you to actually

14   communicate, if you thought that was appropriate.

15       **THE COURT:**  Yeah, but, you know, I mean, I think that

16   it's -- you know, you made another suggestion in your brief,

17   which was to hold off on deciding whether to enjoin the state

18   court litigation until the superior court judge made his own

19   decision on that.  And I'm not even comfortable doing that,

20   frankly.

21       You know, I just don't think it's my business, given the

22   circumstances we have currently, to even be attempting to

23   influence the superior court judge's decision on that front,

24   and I don't want anything to be perceived as hanging over his

25   head in that regard and so that's why I'm denying the motion

1    outright.

2         I'm also going to deny the motion to be appointed as

3    interim class counsel and the motion to accelerate the class

4    cert schedule, without prejudice.  And if you want to come

5    back -- and you can do it by way of administrative motion, I

6    think, if you need to come back; you don't have to do it by way

7    of noticed motion where you have to, you know, wait 35 days for

8    a hearing.

9         Or, if you want to have a hearing but you want shortened

10   time, you can do that.

11        But I've considered all of these issues carefully, and I

12   think, if you want, you can just do it by way of administrative

13   motion, if you need to come back on those two issues, the issue

14   of interim class counsel and the issue of moving up the class

15   cert schedule.

16        But right now, given the situation we're in right now,

17   I'm going to deny those motions without prejudice to re-raising

18   them after the superior court judge rules on Lyft's request to

19   stay the case.

20        On the issue of sharing discovery, I guess I do have a

21   preliminary concern at this stage, based on what I've seen so

22   far, with the idea of requiring the plaintiffs in this case to

23   share discovery with the plaintiff in the state court case.

24        It may be, if that case goes forward, that from an

25   efficiency standpoint it makes sense to do that, and I would

1    revisit that question, potentially, at some point, if need be.

2         But right now, as I said, you know, all the evidence so

3    far in this case, and in this motion, is that the plaintiff's

4    lawyers don't really have the interest of the unnamed class

5    members at heart, they have their own financial interest at

6    heart.

7         And so, in light of that, and in light of sort of the

8    incentives that you say that it would create -- you discussed

9    that in your papers, I -- you know, my sense is that it is

10   probably not a good idea to require the plaintiffs in these two

11   cases to share discovery.

12        But, you know, I mean, this is a fluid situation, and,

13   you know, that might change, and, you know, I would, you know,

14   potentially reconsider that.  But that's my view at this time.

15        **MS. LISS-RIORDAN**:  Okay.  Thank you, Your Honor.

16        I just wanted to inform the Court -- I understand your

17   ruling, so I just thought you might be interested to know that

18   a similar situation is playing out in the courtroom next

19   door --

20        **THE COURT**:  I was just going to ask about that.

21        **MS. LISS-RIORDAN**:  -- with Judge Chen in an Uber case.

22        It hasn't been brought to a head the way it has here, but

23   the same plaintiff's attorney representing the same named

24   plaintiff, *Price*, has also filed a copy-cat Uber case.  They

25   appeared by phone at a recent hearing that we had before Judge

1   Chen.  We didn't have as a specific discussion as we're having

2   here, but Judge Chen, on his own, asked did anyone have an

3   objection to him calling the state court judge in that case and

4   we all said we have no objection, so --

5       THE COURT:  Okay.

6       MS. LISS-RIORDAN:  I think that was his stated intention.

7   So I don't know what has happened as a result of that.

8       THE COURT:  Okay.

9       MS. MENY:  And, Your Honor, I think on Lyft's behalf, our

10  view of this is that, you know, we believe that the state court

11  case should be stayed, we believe we should be going forward in

12  this courtroom in one set of litigation.

13      THE COURT:  Nice to go forward in this courtroom --

14      MS. MENY:  That is true.

15      THE COURT:  -- because this is Judge Seeborg's courtroom

16  and I feel a lot smarter today, sitting in Judge Seeborg's

17  chair, than I usually feel sitting in my own chair.

18      So hopefully we will go forward in this courtroom.

19      MS. MENY:  But, Your Honor, I -- in the event that we do

20  not win our motion to re-stay the case, I believe it is in

21  everybody's interest at least to have the cases coordinated

22  because the biggest risk, I think -- including to this

23  litigation and the stage of where this litigation is -- is if

24  totally new litigation and motion practice starts up in the

25  state case.

1    And so to that end, I mean, we would also not have any

2    objection to you reaching out to the state court judge to

3    discuss coordination and whether there might be some type of

4    informal or formal coordination that could happen between the

5    cases because, you know, I do believe very strongly that if

6    they are -- hopefully, that case will not go forward, but if

7    they are both going forward, then there needs to be some

8    coordination that has yet been able to be able to be happened.

9        THE COURT:  That makes sense.

10       That reminded me of another question.  I know there's an

11   arbitration provision between Lyft and its drivers, and I know

12   that in this case Lyft has waived the arbitration provision.

13       Was there also a waiver in the superior court case of

14   the -- of lift's right to invoke the arbitration provision?

15       MS. MENY:  Your Honor, that was handled by my co-counsel,

16   but I believe that also occurred in state court.

17       THE COURT:  The waiver occurred in that case also?

18       MS. MENY:  But I may be incorrect on that.

19       THE COURT:  Okay.  Anything further?

20       Okay.  So that will be the ruling for now, and I'll issue

21   a short written order just reiterating what I just said.

22       And thanks for coming in.

23       MS. LISS-RIORDAN:  Okay.  Thank you.

24       THE COURT:  Interesting issue.

25       MS. LISS-RIORDAN:  Thank you.  The only remaining

1    housekeeping we have to do --

2        THE COURT:  Oh, yeah.  Sorry.

3        MS. LISS-RIORDAN:  -- is the plaintiff's lawyer in the

4    *Price* case filed notices of appearance in this case, although

5    they don't represent any parties in that case, and --

6        THE COURT:  Yeah, I mean.

7        MS. LISS-RIORDAN:  -- (indiscernible - simultaneous

8    speaking) have that stricken.

9        THE COURT:  Maybe I should state for the record I believe

10   it would have been appropriate for the lawyers in the *Price*

11   case to appear in this case for the purpose of weighing in on

12   this motion and made clear to them, through my courtroom

13   deputy, that they were completely welcome to come to court

14   today and argue their position and, for whatever reason, they

15   chose not to do that.

16       And they've known for many weeks that this hearing was on

17   calendar, but they -- they chose not to argue their position.

18       But as far as the notice of appearance goes, I mean,

19   maybe this gets to a level of technicality that I am not

20   familiar with, but I don't think there's any problem with them

21   having appeared for purposes of this motion by filing briefs,

22   and there would have been no problem, in my view, with them

23   coming to court and arguing.

24       But is that the sort of notice of appearance you're

25   talking about or does the notice of appearance you're referring

1    to have some greater effect than that?

2        **MS. LISS-RIORDAN:**  No, and we -- we're fine with them

3    having entered notice of appearance to argue this motion, but

4    now, if this motion is disposed of, they -- we believe they

5    have no basis to have general notices of appearance in the

6    case.  That's all I just wanted to point out.

7        **THE COURT:**  No, but -- I agree with that, but of course

8    they're perfectly free to monitor the docket, as everybody else

9    is, to see what's going on in the case.

10        **MS. LISS-RIORDAN:**  Yes, of course.  But they don't

11    represent any parties, so I don't know whether we need to --

12        **THE COURT:**  That is correct.

13        **MS. LISS-RIORDAN:**  -- strike those notices now or whether

14    they'll agree to withdraw them, if they're not representing a

15    party.

16        So I just wanted to raise that as a housekeeping issue.

17        THE COURT:  I don't know the answer.  I don't know

18    technically what the answer to that is, but we'll figure that

19    out.  Let me know, if there continues to be a problem with

20    that.

21        Anything else?

22        **MS. MENY:**  No, Your Honor.

23        **MS. LISS-RIORDAN:**  No, Your Honor.

24        **THE COURT:**  Okay.  Thanks very much.

25        **MS. LISS-RIORDAN:**  Thank you.  (Adjourned at 10:35 A.M.)

## CERTIFICATE OF CONTRACT TRANSCRIBER

I, Kelly Polvi, CSR, RMR, FCRR, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further, that I am not financially nor otherwise interested in the outcome of the action.

Dated June 9, 2015.

_____
Kelly Polvi, CSR #6389, RMR, FCRR
Contract Transcriber

*Kelly Polvi, CSR, RMR, FCRR*
*P.O. Box 1427*
*Alameda, CA 94501*
*(503) 779-7406; kpolvi@comcast.net*