**TRIAL PLAN:**

The subclasses described below could be tried in one traditional class action trial, or the Court could order bellwether trials, in which the jury is asked to consider just the lead plaintiffs. Either way, both sides could be limited to a **manageable number of witnesses for each subclass** (such as 5-10 witnesses).

**The jury should be asked to complete a special verdict form (for each subclass), addressing its factual finding on each of the** Borello **factors.** This way, Plaintiffs can preserve, if necessary, for appeal, their contention that it is a legal question for the Court to apply the factors to reach the ultimate conclusion regarding whether the drivers are employees or independent contractors.

Although the Court determined in it summary judgment order that the jury must reach the ultimate conclusion regarding whether the drivers are employees,
**Plaintiffs submit that it should be for the Court to make the ultimate legal conclusion as to whether drivers in each subclass are employees or independent contractors.**
 See Alexander v. FedEx Ground Package System, Inc., 765 F.3d 981, 988 (9th Cir. 2014) (emphasis added), quoting Arnold v. Mut. of Omaha Ins. Co., 202 Cal.App.4th 580 (2011) ("Even if one or two of the individual factors might suggest an [independent contractor] relationship, summary judgment is nevertheless proper when ... **all the factors weighed and considered** as a whole establish ... an [employment] and not an [independent contractor relationship.]"); Hennighan v. Insphere Ins. Solutions, Inc., 38 F.Supp.3d 1083, 1098 (N.D. Cal. 2014), quoting Harris v. Vecktor Mktg. Corp., 656 F.Supp.2d 1128, 1135 (N.D. Cal. 2009) **("Under federal law, as under state law, the existence and degree of each factor regarding the status of a person as an independent contractor or employee is a question of fact while the legal conclusion to be drawn from those facts-whether workers are employees or independent contractors-is a question of law").** See also Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1310 (11th Cir. 2013) ("A determination of employment status under the FLSA is a question of law."); Martin v. Shelby Telecom, LLC, 2012 WL 2476400, *3 (N.D. Ala. June 26, 2012) ("In performing this balancing test, the ultimate determination of an individual's employment status is a question of law. Subsidiary findings are considered issues of fact.").

Because the Court can modify a class certification order at any time under Rule 23(c)(1)(C), following trial, after the Court has seen the evidence and what the case looks like at trial, if the Court believes that class certification cannot be sustained, it could decertify the class (or subclasses).

**The trial could be on liability only.** As outlined on the following pages, if misclassification is established, then **§ 2802 damages will be a ministerial calculation** for mileage and data/phone charges and can be determined in a separate proceeding (such as referral to special master, if the parties cannot reach agreement on the damages calculation). (For drivers who drove through transportation companies and thus may have already received some reimbursement--or drivers who want to seek damages beyond mileage and data--the Court could establish a mini-trial process for adjudicating these individualized damages inquiries.)

If a § 351 violation is established, then **the jury would only need to be asked what percentage of the fare a reasonable passenger would have understood to be the tip**. From this percentage, § 351 damages can be calculated ministerially.

**POTENTIAL SUBCLASSES:**

---

I. <u>**UBER DRIVERS WHO HAVE CONTRACTED DIRECTLY WITH UBER/RAISER**</u>

    (Gurfinkel, Manahan)

This subclass could be further subdivided into drivers who:

  A. **Have driven for Uber at least 30 hrs/week**

    (Gurfinkel)

  B. **Have not driven for Uber at least 30 hrs/week**

    (Manahan)

---

II. <u>**UBER DRIVERS WHO HAVE CONTRACTED WITH UBER AND BEEN PAID THROUGH AN INTERMEDIARY TRANSPORTATION COMPANY**</u>

    (Colopy)

(This subclass could also be divided into drivers who have driven/have not driven at least 30 hrs/week, if the Court deemed it necessary.)

---

**Alternatively, the Court could certify subclasses of drivers who drove under substantially similar contracts.**

**DAMAGES:**

---

§ 2802 damages for Subclass I:

    Reimbursement for mileage at IRS rate:

        Distance transporting passengers

        Distance picking up passengers

    Reimbursement for charges by Uber:

        Phone/data charges

(If class members want to seek reimbursement for additional costs (e.g. unreimbursed tolls, bottled water), Court could establish a claims made or mini-trial process. Class members who choose not to participate in this process can receive the damages above, which are calculable from Uber's records.)

---

§ 2802 damages for Subclass II:

    Reimbursement for mileage at IRS rate:

        Distance transporting passengers

        Distance picking up passengers

    Reimbursement for charges by Uber:

        Phone/data charges

These class members could be asked to report whether they have received reimbursement from their transportation company for any expenses, such as for gas. Court could establish method for adjudicating these potential offsets, such as mini-trials for representative sampling of these subclass members.

§ 351 damages for all drivers:

> Would be calculated as a % of Uber's commission, depending on jury's finding of what amount customers would have reasonably believed was included as the tip for drivers
>
> For example, if jury finds that 20% would have reasonably been understood to be the tip:
>
>> For a $120 charge, $100 is the fare, and $20 is the tip
>>
>> If Uber takes a 20% commission, the driver should receive $80 from the $100 fare and the full $20 tip, which equals $100 (Uber keeps $20)
>>
>> However, Uber has actually taken 20% of the full $120, or $24
>>
>> Thus, driver's damages is $24 – $20 = $4.  This is 1/6 of Uber's commission ($24).
>
> The math would be different where Uber has taken higher or lower % commissions.  But the calculation can be made ministerially from Uber's records, once the jury has determined what a reasonable passenger would have understood the tip to be.

**THE BORELLO FACTORS**

| | **Factors** | **Application to This Case** | **Common?** |
|---|---|---|---|
| ** | "[T]he **right to control** work details is the 'most important' or 'most significant' consideration." S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations, 48 Cal. 3d 341, 350 (1989). | **COMMON FOR ALL DRIVERS**; Uber retains the right to terminate drivers at will throughout its agreements and in practice it has consistently done so. | X |
| A | "[W]hether the one performing services is engaged in a **distinct occupation or business**." Id. at 351. | **Not Common**; Some drivers may own transportation companies that independently offer rides to their own private customers in addition to using Uber, while others drive only for Uber and do not have their own business. | |
| B | "[T]he kind of occupation, with reference to whether, in the locality, the **work is usually done under the direction of the principal** or by a specialist without supervision." Id. at 351. | **COMMON FOR ALL DRIVERS**; The occupation (driver) is the same for all Uber drivers and is performed under the direction of Uber, utilizing its star ratings and other data regarding acceptance and cancellation rates. | X |
| C | "[T]he **skill required** in the particular occupation" Id. at 351. | **COMMON FOR ALL DRIVERS**; The skill required to do the job is uniformly low; Uber only requires that UberX drivers have a standard California driver's license, and that UberBlack drivers have a commercial license or drive through a company that holds such a license. | X |
| D | "[W]hether the principal or the worker **supplies the instrumentalities**, tools, and the place of work for the person doing the work." Id. at 351. | **COMMON FOR ALL DRIVERS**; Uber supplies the software for all drivers. Drivers provide their own vehicles either by owning them or leasing them from transportation companies or leasing companies. | X |
| E | "[T]he **length of time** for which the services are to be performed." Id. at 351. | **COMMON FOR ALL DRIVERS**; Although some drivers may work for Uber for long periods while others do not, all drivers are in an open-ended relationship of indefinite duration as opposed to contracting to drive for a fixed period of time. | X |
| F | "[T]he **method of payment**, whether by the time or by the job." Id. at 351. | **COMMON FOR ALL DRIVERS**; Uber drivers have always been compensated with an "all-inclusive" fare (based on time and distance) that is set unilaterally by Uber, less a percentage-based commission paid to Uber. | X |
| G | "[W]hether or not the work is a **part of the regular business of the principal**." Id. at 351. | **COMMON FOR ALL DRIVERS**; All drivers' work is uniformly integral to Uber's business as a transportation company. | X |
| H | "[W]hether or not the **parties believe they are creating the relationship of employer-employee**." Id. at 351. | **Not Common**; Some drivers believe they are Uber's employees while other believe they are independent contractors. | |

**ADDITIONAL FACTORS**

| | Factors | Application to This Case | Common? |
|---|---|---|---|
| 1 | "[T]he alleged employee's **opportunity for profit or loss** depending on his managerial skill." S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations, 48 Cal. 3d 341, 355 (1989). | **COMMON FOR ALL DRIVERS**; While drivers generally do not profit through managerial skill (but can make more money simply by working more, or working during periods when wages are higher, during "surge pricing"), all drivers' theoretical "opportunity for profit and loss" is common. | X |
| 2 | "[T]he alleged employee's **investment in equipment** or materials required for his task, or his employment of helpers." Id. at 355. | **COMMON FOR ALL DRIVERS**; Uber supplies the software for all drivers. Drivers provide their own vehicles either by owning them or leasing them from transportation companies or leasing companies. | X |
| 3 | "[W]hether the service rendered **requires a special skill**." Id. at 355. | **COMMON FOR ALL DRIVERS**; The skill required to do the job is uniformly low; Uber only requires that UberX drivers have a standard California driver's license, and that UberBlack drivers have a commercial license or drive through a company that holds such a license. | X |
| 4 | "[T]he degree of **permanence of the working relationship**" Id. at 355. | **COMMON FOR ALL DRIVERS**; Although some drivers may work for Uber for long periods while others do not, all drivers are in an open-ended relationship of indefinite duration as opposed to contracting to drive for a fixed period of time. | X |
| 5 | "[W]hether the service rendered is an **integral part of the alleged employer's business**." Id. at 355. | **COMMON FOR ALL DRIVERS**; All drivers' work is uniformly integral to Uber's business as a transportation company. | X |