GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR., SBN 132099
  tboutrous@gibsondunn.com
DEBRA WONG YANG, SBN 123289
  dwongyang@gibsondunn.com
MARCELLUS A. MCRAE, SBN 140308
  mmcrae@gibsondunn.com
THEANE D. EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
  dmanthripragada@gibsondunn.com
BRANDON J. STOKER, SBN 277325
  bstoker@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

JOSHUA S. LIPSHUTZ, SBN 242557
  jlipshutz@gibsondunn.com
KEVIN J. RING-DOWELL, SBN 278289
  kringdowell@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, THOMAS COLOPY, MATTHEW MANAHAN, and ELIE GURFINKEL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. CV 13-03826-EMC<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S RESPONSE TO PLAINTIFFS' CLASS CERTIFICATION PROPOSALS**<br><br>Judge:  Hon. Edward M. Chen |

As the Ninth Circuit has held, a party seeking class certification "bears the burden of demonstrating a suitable and realistic plan for trial of the class claims." *Zinser v. Accuflix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001). Failure to produce such a plan requires denial of class certification. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 186 (3d Cir. 2006).

Plaintiffs' "trial plan," submitted for the first time at the class certification hearing, commits virtually every cardinal sin of class action procedure, relying on outmoded arguments that are foreclosed by Rule 23, the Rules Enabling Act, due process, Article III, and Supreme Court precedent. Plaintiffs ask the Court to (1) ignore the fact that tens of thousands of putative class members are subject to arbitration agreements with Uber; (2) conduct a "Trial By Formula" that would deprive Uber of its right to present affirmative defenses for each putative class member; (3) certify a conditional class, even though Rule 23 was specifically amended to prohibit this practice; (4) certify a supposed liability-only class, in violation of Rule 23, the Seventh Amendment, and due process, and even though countless "mini-trials" would be required to evaluate damages; (5) cast aside the interests of absent class members by limiting their scope of recovery, or complicate proceedings further by creating a convoluted opt-in procedure that would result in thousands of fact-intensive individual "mini-trials" to determine class members' damages, destroying the very efficiencies the class procedure is designed to achieve; and (6) certify a series of ill-defined subclasses, even though Plaintiffs cannot serve as subclass representatives. The fact that Plaintiffs deem these "shortcut[s] [to be] necessary in order for this suit to proceed as a class action should … [be] a caution signal … that class-wide proof … [is] impermissible," *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 343 (4th Cir. 1998), and their belated and abbreviated stab at a trial plan confirms why class certification should be denied.

**First,** Plaintiffs' trial plan does not even *address* the fact that tens of thousands of putative class members are subject to arbitration agreements, which have varied over time and bar class treatment. *See Pablo v. ServiceMaster Global Holdings Inc.*, 2011 WL 3476473, at *2 (N.D. Cal. Aug. 9, 2011) (the existence of "arbitration agreements … support[s] the Court's finding that a class action is not the superior method of adjudication in this case."); *In re Titanium Dioxide Antitrust*

*Litig.*, 962 F. Supp. 2d 840, 861-62 (D. Md. 2013). Uber has a right to compel arbitration of the claims of any individual who is subject to such an agreement. 9 U.S.C. § 4. Moreover, all three named plaintiffs here opted out of arbitration, disqualifying them from representing those who did not. And while this Court held that two versions of the agreement are unenforceable, the Court also found that the enforceability of one of those agreements was "an extremely close question," *Gillette v. Uber Techs., Inc.*, No. 3:14-cv-05241 EMC (N.D. Cal. June 9, 2015), ECF No. 48 at 40, the resolution of which could upend this putative class action if the Ninth Circuit ultimately finds the agreement to be enforceable.

***Second,*** Plaintiffs have failed to produce a manageable plan by which Uber may present affirmative defenses as to *each* putative class member. Instead, Plaintiffs simply claim that the Court should hold that these issues may be decided—for all <u>160,000+</u> putative class members—in one fell swoop. ECF No. 334 at 1. But Plaintiffs' proposal—which ignores or glosses over the unique affirmative defenses that Uber has against members of the putative class—would violate Uber's due process right to present "defenses to individual claims," *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011), and impermissibly "force[] [Uber] to defend against a fictional composite" plaintiff in violation of the Rules Enabling Act, 20 U.S.C. § 2072(b). *Broussard*, 155 F.3d at 345.

For instance, Uber has a due process right to defend itself by showing that each putative employee is in fact an independent contractor under the 14-factor *Borello* test. *Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1100 (9th Cir. 2014); *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) ("Due process requires that there be an opportunity to present every available defense."). These "factors … are intertwined and their weight depends often on particular combinations," *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989), such that their application "may vary from hiree to hiree." *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 528, 533 (2014) (citing *Sotelo v. MediaNews Grp., Inc.*, 207 Cal. App. 4th 639, 657-58 (2012)). This is particularly true in a case involving a sweeping, heterogeneous proposed class such as this, where the evidence demonstrates that drivers' use of the Uber app varies dramatically. *See* Order Denying Def. Uber Tech., Inc.'s Mot. Summ. J., ECF No. 251, at 25 (holding that Uber's inability to "control … drivers' hours" is "a significant point"); *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1081-82 (N.D. Cal.

2015). Moreover, as Plaintiffs concede, *see* ECF No. 334 at 5, multiple *Borello* factors are incapable of classwide resolution:

- Uber submitted 406 declarations in which many drivers—unlike Plaintiffs—said they believe they are independent contractors. *See, e.g.*, Decl. of Jose Martinez ¶ 6. In fact, in a recent anonymized survey of 601 drivers conducted by the Benenson Strategy Group, 85% of drivers stated that they partnered with Uber "to have more flexibility"—flexibility that would be imperiled if they were to become Uber's employees. Hall & Krueger, An Analysis of the Labor Market for Uber's Driver-Partners in the United States, at 11; McCrary Report ¶¶ 187-195. An individual's intent to form an independent contractor relationship is "significant," *Borello*, 48 Cal. 3d at 350-51, and Uber has a right to raise this defense as to *each* individual. *Dukes*, 131 S. Ct. at 2561. As Uber's driver declarations show (and as Plaintiffs concede), there is no means by which to determine this factor without individualized testimony. ECF No. 334 at 5; *Sotelo*, 207 Cal. App. 4th at 659.

- Uber's agreements vary significantly on whether drivers may use or display the insignia of other lead generation apps while using the Uber App, a fact highly relevant to whether Uber has a right to control work details of drivers. *See Borello*, 48 Cal. 3d at 350; Supp. Decl. of Theane Evangelis ¶ 1.c, Am. Ex. 43. Many drivers, in fact, use and display the insignia of other apps, and have full- or part-time jobs in addition to using the Uber App—*i.e.*, they "engage[] in a distinct … business," *Borello*, 48 Cal. 3d at 350-51—while other drivers do not. Decl. of Theane Evangelis ¶ 6, Ex. 19; McCrary Report ¶¶ 80-82, 102 (31% of drivers surveyed had a full-time job and 30% had a part-time job); Decl. of Rafik Sergoyan ¶ 3 (scientist), Decl. of Raman Basha ¶¶ 2-3 (doctor). Plaintiffs have proposed no manageable method to address these highly individualized inquiries.[1] *See Bowerman v. Field Asset Servs.*, 2014 WL 4676611, at *10-11 (N.D. Cal. Sept. 17, 2014); *Sotelo*, 207 Cal. App. 4th at 658.

---

[1] Similarly, Plaintiffs have not presented any method by which the Court may (1) proceed with this putative class action without destroying Uber's right to show that putative class members are employees of Uber's *competitors* because they use competitors' apps; or (2) resolve the serious duty of loyalty concerns that would arise if drivers were found to be employees of competitor companies, particularly when they receive incoming ride requests *at the same time* on different apps and are required to choose among them. *See* Opp'n, ECF No. 298, at 31-32.

- There is wide variability in two other related *Borello* factors: the "length of time for which" drivers perform services with the Uber App and the "permanence of the working relationship." *Borello*, 48 Cal. 3d at 351, 355. Whereas some drivers have used the Uber App consistently for many years, others have used it only a handful of times and have had a fleeting relationship with Uber that in many cases ended years ago. Evangelis Decl. ¶ 6.l, 6.m, Exs. 12-13. Plaintiffs argue that these factors are susceptible to classwide resolution because "all drivers are in an open-ended relationship of indefinite duration," ECF No. 334 at 5-6, but this flies in the face of *Borello* itself, in which the Supreme Court found it relevant that many plaintiff-farmers "returned year after year" to perform services for defendant.[2] *Borello*, 48 Cal. 3d at 357. Here, these length and permanence factors vary radically from driver to driver and cannot be determine on a classwide basis, defeating class certification.

- Substantial evidence shows that some drivers employ no "helpers," whereas other drivers—like Mark Forester—employ *dozens* of "helpers." *See* Decl. of Mark Forester ¶¶ 3, 10-11. Again, this factor is relevant in each individual case, *Borello*, 48 Cal. 3d at 355, and Uber's right to raise it as a defense cannot be eliminated. *Dukes*, 131 S. Ct. at 2561.

In addition, Uber has a variety of other individualized affirmative defenses and counterclaims that it has a due process right to assert against absent class members, and which the Rules Enabling Act precludes this Court from simply eliminating from this case. *See Lindsey*, 405 U.S. at 66; *Dukes*, 131 S. Ct. at 2561. For example, in an individual proceeding, Uber would have the right to assert equitable defenses against Douglas O'Connor, the former named plaintiff and vexatious litigant who (1) has filed between 10-15 lawsuits in a variety of contexts, Ex. A at 321:24-325:21, 338:2-342:25; (2) invoked the Fifth Amendment during his deposition in this case, *id.* at 315:3-317:25; and (3) refused to authorize Uber to conduct a background check on him, *id.* at 73:9-16, in violation of § 1.4 of the 07/24/2013 driver addendum, ECF No. 302, Colman Decl. ¶ 9, Ex. D ("Subcontractor

---

[2] Plaintiffs' approach is so convoluted that it would require the Court to treat two drivers—Drivers A and B—exactly the same, even if Driver A used the Uber App just once in 2010 and then never used it again, whereas Driver B has used the Uber App every day, 10 hours per day, since 2010. That is not (and cannot be) consistent with California law. *See Borello*, 48 Cal. 3d at 351.

further agrees that, in order to obtain access to the Service and Software, Subcontractor may be required to submit to a criminal background check ….").

**Third,** Plaintiffs urge the Court to grant certification <u>now</u> and, "if the Court believes that class certification cannot be sustained," to "decertify the class" *after* trial. ECF No. 334 at 1. But Plaintiffs' cart-before-the-horse proposal is tantamount to a request for conditional certification— which was eliminated from Rule 23 in 2003 and is now forbidden. *See* Fed. R. Civ. P. 23 Advisory Committee's Notes (2003) ("A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met."); *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 105-6 (C.D. Cal. 2007) ("[T]he amendments to Rule 23 eliminated the … provision that allowed the conditional granting of class certification.").

**Fourth,** Plaintiffs suggest that the Court could certify a "liability-only" class on the issue of misclassification, leaving damages for a "special master" or "mini-trial process[.]" ECF No. 334 at 1. This proposal would not be permissible because individual issues predominate as to liability, *supra* at pp. 1-3, and because it suffers from several other fatal flaws:

- Plaintiffs have failed to prove that all putative class members have standing under Article III or that there is a way to determine, in a classwide proceeding, whether each class member has suffered an injury in fact. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("'[N]o class may be certified that contains members lacking Article III standing.'") (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)). To the contrary, many absent class members are no doubt independent contractors and have not been misclassified, *see, e.g.*, Mark Forester, and the hundreds of declarations that Uber submitted show that many drivers received tips from riders and had expenses advanced or reimbursed. Evangelis Decl. ¶¶ 6.gg, 6.nn, Exs. 33, 40. Yet it would be impossible to *identify* those drivers without individualized trials.

- Uber has a Seventh Amendment right to a jury trial on damages. *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 845-46 (1999); 28 U.S.C. § 2072(b). As such, a special master may not be appointed without Uber's consent. Fed. R. Civ. P. 53 Advisory Committee's Notes (2003) (Rule 53 "permits appointment of a trial master in an action to be tried to a jury only if the parties consent").

- As Plaintiffs concede, an elaborate "mini-trial process" would be required to resolve the *thousands* of damage calculations arising from liability-only certification. ECF No. 334 at 1. This fact alone underscores Plaintiffs' utter failure to satisfy Rule 23's commonality and predominance requirements. *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1022 (N.D. Cal. 2010); *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at *12 (C.D. Cal. Apr. 12, 2012); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *12-13 (N.D. Cal. Jan. 7, 2014).

- Plaintiffs do not even offer a proposal by which their Section 351 claims could be offset to reflect the gratuities that drivers have *already* received, even though it is beyond reasonable dispute that many members of the putative class commonly receive gratuities ranging from a few dollars to more than a hundred dollars *per tip*. *See* Evangelis Decl. ¶¶ 6.gg, 6.jj, 6.kk, Exs. 33, 36-37. Uber has a right to defend itself by showing that a particular driver received such gratuities. *See Comcast v. Behrend*, 133 S. Ct. 1426, 1434-35 (2013); *Dukes*, 131 S. Ct. at 2561.

**Fifth,** Plaintiffs' damages proposals seek an impermissible "Trial By Formula." Plaintiffs have offered two damage calculation proposals, asking the Court (1) to determine the *average* amount for which putative class members have already been reimbursed for their expenses and "offset[]" *all* drivers' recoveries by this amount; and (2) to permit the jury to determine a flat-rate percentage that *all* riders "would have reasonably believed was included as the tip" for *all* rides performed by *all* drivers. ECF No. 334 at 3-4. These proposals are the definition of "arbitrary" damages calculations prohibited by *Comcast*, 133 S. Ct. at 1433, and are unsupported by any cognizable damages model or expert testimony. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification."). Under *Comcast*, arbitrary damages proposals like these "shred the plaintiffs' case for certification." *In re Rail Freight*, 725 F.3d at 252-53. And even if they were feasible (which is doubtful), they smack of "Trial By Formula," an approach forbidden by the U.S. Supreme Court, *Dukes*, 131 S. Ct. at 2561, the Ninth Circuit, *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014) ("[S]tatistical sampling … [may] not [be] expanded into the realm of damages."), and district courts in this Circuit. *See, e.g.*, *Cruz v. Dollar Tree Stores, Inc.*, 2011 WL 2682967, at *6 (N.D. Cal. July 8, 2011). These proposals violate Uber's due process rights, *see McLaughlin v. Am.*

*Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008); they also fail to "protect absentees" who may be undercompensated by Plaintiffs' proposed averaging. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (predominance requirement "is designed to protect absentees").

**Sixth**, Plaintiffs try to manufacture commonality and predominance by limiting their § 2802 claims to reimbursement for mileage based on the IRS rate and phone/data charges. ECF No. 334 at 3. However, many absent class members claim expenses <u>*other than*</u> mileage and phone charges, and would benefit from a recovery that tracks their *actual* expenses. Opp'n to Mot. for Class Cert., ECF No. 289, at 28 n.14; *id.* at 29 n.15; McCrary Report ¶¶ 88-90. Plaintiffs' willingness to jettison these remedies for the sake of class treatment proves Plaintiffs are incapable of representing this large and diverse putative class, and are thus inadequate representatives. *See, e.g.*, *W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002); *Turcios v. Carma Labs.*, 296 F.R.D. 638, 648 (C.D. Cal. 2014); *see also Dukes*, 131 S. Ct. at 2551. Plaintiffs suggest that the Court could limit drivers' damages to mileage and phone charges by default, while establishing a "claims made or mini-trial process" that purportedly would enable class members to "opt-in" in order to recover the additional costs to which they would be entitled. ECF No. 334 at 3. But the fact that <u>*thousands*</u> of complex mini-trials would be needed just to apportion damages simply underscores Plaintiffs' failure to prove predominance or superiority. *See Comcast*, 133 S. Ct. at 1433; *Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 131 (N.D. Cal. 2014) (finding that individual issues predominated because the process to calculate damages required "mini-trials on individualized issues."); *Berndt v. Cal. Dep't. of Corr.*, 2012 WL 950625, at *13 (N.D. Cal. Mar. 20, 2012) ("[T]he potential for multiple mini-trials, even solely as to damages, further weakens the case for a finding of superiority …."); *see also Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977) ("[W]here the issue of damages … requires separate mini-trials of an overwhelming[ly] large number of individual claims, … the staggering problems of logistics thus created make the damage aspect of [the] cases predominate and render the case unmanageable as a class action.") (citations and quotation marks omitted); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006).

**Finally**, Plaintiffs' proposed subclasses highlight, rather than resolve, the problems with their motion. They propose three potential categories of subclasses: (1) two subclasses of "drivers who

7

have contracted directly with Uber/Rasier" and "drivers who have contracted with Uber and been paid through an intermediary transportation company"; (2) two subclasses of drivers "who have driven/have not driven at least 30 hrs/week"; and (3) an unidentified number of subclasses for drivers "who drove under substantially similar contracts." ECF No. 334 at 2. But Plaintiffs' unascertainable and unworkable subclasses raise more questions than they answer. *See Harris*, 753 F. Supp. 2d at 1022-23. For example, do drivers who sign up in their own name fall into the subclass of drivers who contracted directly with Uber, even though many such drivers drive through companies in which they have an ownership or managerial interest? Which subclass do drivers fall into if they use both uberX (and contracted with Rasier) *and* UberBLACK (and contracted through intermediate companies), and switch between the two frequently, even on a daily basis? Must drivers *transport riders* for 30+ hours every week to qualify for the "at least 30 hrs/week" subclass? Or may a driver qualify if she is merely *logged into the Uber App* for 30 hours, but not transporting riders? What about drivers whose app usage fluctuates on a weekly basis—like the <u>65%</u> of drivers whose hours vary by 25% or more from week to week? *See* BSG Report at 20. Are they in one subclass one week and another subclass the next week? And what does the phrase "substantially similar contracts" even mean?

Furthermore, Plaintiffs have introduced <u>no evidence</u> demonstrating that they can adequately represent each of the various subclasses they propose, or that their claims are typical of each subclass. Fed. R. Civ. P. 23(c)(5); *E. Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977); *Dukes*, 131 S. Ct. at 2550 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (quotation marks and citations omitted). And "[s]ubclasses must satisfy the class action requirements before they may be certified," *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 599 (7th Cir. 1993), so Plaintiffs' subclasses fail because they suffer from *exactly* the same predominance and commonality problems that doom their class certification motion. *Supra* at pp. 1-3 & 6; *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010) (citation omitted) ("Common sense tells us that 'the necessity of a large number of subclasses may indicate that common questions do not predominate.'").

\*   \*   \*

Plaintiffs' unconstitutional and unworkable proposal for class certification is fundamentally incompatible with Rule 23, the Rules Enabling Act, due process, and Supreme Court precedent.  Nor would it be an efficient, manageable, or superior procedure for adjudicating these claims.  Accordingly, the Court should deny certification.

Dated:  August 12, 2015                                  Respectfully submitted,
                                                         GIBSON, DUNN & CRUTCHER LLP


                                                         By:  */s/ Theodore J. Boutrous, Jr.*

                                                         Attorneys for Defendant
                                                         UBER TECHNOLOGIES, INC.

**ECF ATTESTATION**

I, Kevin J. Ring-Dowell, attest that concurrence in the filing of this document has been obtained from the other Signatory, which shall serve in lieu of his signature on the document. Signed this 12th day of August, 2015.

>           /s/ *Kevin J. Ring-Dowell*
>           Kevin J. Ring-Dowell