GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR., SBN 132099
 tboutrous@gibsondunn.com
DEBRA WONG YANG, SBN 123289
 dwongyang@gibsondunn.com
MARCELLUS A. MCRAE, SBN 140308
 mmcrae@gibsondunn.com
THEANE D. EVANGELIS, SBN 243570
 tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
 dmanthripragada@gibsondunn.com
BRANDON J. STOKER, SBN 277325
 bstoker@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

JOSHUA S. LIPSHUTZ, SBN 242557
 jlipshutz@gibsondunn.com
KEVIN J. RING-DOWELL, SBN 278289
 kringdowell@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, THOMAS COLOPY, MATTHEW MANAHAN, and ELIE GURFINKEL, individually and on behalf of all others similarly situated,<br><br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. CV 13-03826-EMC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AS TO CERTAIN ABSENT CLASS MEMBERS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Defendant's Request for Judicial Notice, Declaration of Michael Colman, and [Proposed] Orders Filed Concurrently Herewith]<br><br>Hearing Date:    October 15, 2015<br>Hearing Time:    1:30 p.m.<br>Hearing Place:   Courtroom 5<br>Judge:           Hon. Edward M. Chen |

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 15, 2015, at 1:30 p.m., or as soon as the matter may be heard before the Honorable Edward M. Chen in Courtroom 5 of the United States District Court for the Northern District of California in the San Francisco Courthouse, Seventeenth Floor, 450 Golden Gate Avenue, San Francisco, California, Defendant Uber Technologies, Inc. ("Uber") will and does move this Court for an order compelling arbitration on an individual basis of the claims of the absent class members who joined this case when the Court certified a plaintiff class on September 1, 2015, and who are subject to agreements to arbitrate their disputes with Uber (the "Absent Class Members").  This motion is brought on the grounds that the Absent Class Members' claims against Uber is subject to a valid and enforceable arbitration agreement that requires the Absent Class Members to arbitrate their claims on an individual basis only.

Uber's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the concurrently filed Declaration of Michael Colman, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................. 2

    A.   Defendant Uber Technologies, Inc. and the Licensing Agreements............ 2

        1.   February 2013 and August 2013 Service Agreements...................... 2

        2.   July 2013 Licensing Agreement and Driver Addendum.................. 3

        3.   October 2013 Service Agreement .................................................... 4

    B.   Arbitration Provisions ................................................................................. 4

    C.   The Absent Class Members' Claim ............................................................ 6

III. THE COURT SHOULD ORDER ABSENT CLASS MEMBERS TO ARBITRATE THEIR CLAIMS ON AN INDIVIDUAL BASIS AND DISMISS THE ABSENT CLASS MEMBERS' CLAIMS ................................ 7

    A.   The Federal Arbitration Act Applies to the Arbitration Provision ............. 7

    B.   The Arbitration Provision Is Valid And Must Be Enforced ....................... 8

        1.   The Arbitration Provision Delegates the Gateway Issues to the Arbitrator.......................................................................................... 8

        2.   The Gateway Issues Under The FAA Have Been Satisfied............ 17

    C.   The Absent Class Members' Class Claims Cannot Proceed...................... 25

IV. CONCLUSION ................................................................................................. 25

Gibson, Dunn & Crutcher LLP

1

2

## <u>TABLE OF AUTHORITIES</u>

3

<u>Page(s)</u>

### Cases

4

*24 Hours Fitness, Inc. v. Super. Ct.*,
    66 Cal. App. 4th 1199 (Ct. App. 1998) ...................................................................................... 23

5

6

*Alvarez v. T-Mobile USA, Inc.*,
    2011 WL 6702424 (E.D. Cal. Dec. 21, 2011) ........................................................................... 19

7

*Ambler v. BT Americas Inc.*,
    964 F. Supp. 2d 1169 (N.D. Cal. 2013) ..................................................................................... 16

8

9

*Anderson v. Pitney Bowes, Inc.*,
    2005 WL 1048700 (N.D. Cal. May 4, 2005) ............................................................................... 9

10

*Andrade v. P.F. Chang's China Bistro, Inc.*,
    2013 WL 5472589 (S.D. Cal. Aug. 9, 2013) ............................................................................ 21

11

12

*Ariza v. Autonation, Inc.*,
    317 F. App'x 662 (9th Cir. 2009) .............................................................................................. 10

13

*Armendariz v. Found. Health Psychcare Servs.*,
    24 Cal. 4th 83 (2000) ................................................................................... 13, 14, 16, 22

14

15

*Ashbey v. Archstone Prop. Mgmt, Inc.*,
    2015 WL 2193178 (9th Cir. May 12, 2015) ............................................................................. 23

16

*AT&T Mobility, LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) ........................................................................................................ 7, 14

17

18

*Beard v. Santander Consumer USA, Inc.*,
    2012 WL 1292576 (E.D. Cal. Apr. 16, 2012) ........................................................................... 14

19

*Bencharsky v. Cottman Transmission Sys., LLC*,
    625 F. Supp. 2d 872 (N.D. Cal. 2008) ..................................................................................... 25

20

21

*Bernal v. S.W. & Pac. Specialty Fin., Inc.*,
    2014 WL 1868787 (N.D. Cal. May 3, 2014) .................................................................. 9, 10, 13

22

*Boghos v. Certain Underwrites at Lloyd's of London*,
    36 Cal. 4th 495 (2005) .............................................................................................................. 11

23

24

*Briceno v. Scribner*,
    555 F.3d 1069 (9th Cir. 2009) ................................................................................................... 19

25

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) ................................................................................................................... 8

26

27

*Burgoon v. Narconon of N. Cal.*,
    2015 WL 5071982 (N.D. Cal. Aug. 27, 2015) ......................................................................... 16

28

*Chico v. Hilton Worldwide, Inc.*,
    2014 WL 5088240 (C.D. Cal. Oct. 7, 2014) ............................................................................ 24

Gibson, Dunn &
Crutcher LLP

ii

# TABLE OF AUTHORITIES

Page(s)

*Chung v. Nemer PC*,
   2012 WL 5289414 (N.D. Cal. Oct. 25, 2012) ..................................................................... 10, 13

*Circuit City Stores, Inc. v. Ahmed*,
   283 F.3d 1198 (9th Cir. 2002 ......................................................................................................... 19

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) ........................................................................................................................... 8

*City Stores, Inc. v. Najd*,
   294 F.3d 1104 (9th Cir. 2002) ..................................................................................................... 19

*Cobb v. Ironwood Country Club*,
   233 Cal. App. 4th 960 (Ct. App. 2015) ...................................................................................... 23

*Davis v. O'Melveny & Myers*,
   485 F. 3d 1066 (9th Cir. 2007) ..................................................................................................... 21

*Dream Theater, Inc. v. Dream Theater*,
   124 Cal. App. 4th 547 (2004) ................................................................................................... 9, 11

*Dwyer v. Dynetech Corp.*,
   2007 WL 2726699 (N.D. Cal. Sept. 17, 2007) ...................................................................... 18

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002) ...................................................................................................................... 24

*Ekin v. Amazon Servs., LLC*,
   2014 WL 7741772 (W.D. Wash. Dec. 10, 2014) ................................................................. 23

*Fallo v. High-Tech Inst.*,
   559 F.3d 874 (8th Cir. 2009) ....................................................................................................... 11

*Fardig v. Hobby Lobby Stores, Inc.*,
   2014 WL 4782618 (C.D. Cal. Aug. 11, 2014) ....................................................................... 24

*Farrow v. Fujitsu Am., Inc.*,
   37 F. Supp. 3d 1115 (N.D. Cal. 2014) ............................................................................... 21, 22

*First Options of Chicago v. Kaplan*,
   514 U.S. 938 (1995) ...................................................................................................................... 17

*Gentry v. Super. Ct.*,
   42 Cal.4th 443 (2007) ................................................................................................................... 19

*Gillette v. Uber Technologies, Inc.*,
   No. C-14-5241 EMC ........................................................................................................................ 1

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) ........................................................................................................................... 7

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*,
   232 Cal. App. 4th 1332 (2015) .................................................................................................... 18

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000) ......................................................................................................................... 15

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

*Hill v. Anheuser-Busch InBev Worldwide, Inc.*,
2014 WL 10100283 (C.D. Cal. Nov. 26, 2014).................................................................. 12

*Hodsdon v. Bright House Networks, LLC*,
2013 WL 1091396 (E.D. Cal. Mar. 15, 2013) .................................................................. 19

*Hoffman v. Citibank, N.A.*,
546 F. 3d 1078 (9th Cir. 2008)......................................................................................... 17

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ............................................................................................................. 8

*Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*,
194 Cal. App. 4th 704 (2011) ......................................................................................... 21

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009) .................................................................................... 20

*In re WorldCom, Inc. Sec. Litig.*,
2005 WL 1048073 (S.D.N.Y. May 5, 2005)..................................................................... 20

*Iskanian v. CLS Trans., LLC*,
59 Cal. 4th 348 (2014) ............................................................................................... 24, 25

*James v. Conceptus, Inc.*,
851 F. Supp. 2d 1020 (S.D. Tex. 2012) .......................................................................... 14

*Johnston Boiler Co. v. Local Lodge No. 893*,
753 F.2d 40 (6th Cir. 1985).............................................................................................. 9

*Kilgore v. KeyBank, Nat. Ass'n*,
673 F.3d 947 (9th Cir. 2012).................................................................................... 13, 21

*Kilgore v. KeyBank, Nat. Ass'n*,
718 F.3d 1052 (9th Cir. 2013).................................................................................... 18, 19

*King v. Hausfeld*,
2013 WL 1435288 (N.D. Cal. Apr. 9, 2013) ................................................................... 19

*Kuehn v. Citibank, N.A.*,
2012 WL 6057941 (S.D.N.Y. Dec. 6, 2012) ................................................................... 15

*Marenco v. DirecTV LLC*,
183 Cal. Rptr. 3d 587 (Cal. Ct. App. 2015) ................................................................... 24

*Marshall v. Pontiac*,
287 F. Supp. 2d 1229 (S.D. Cal. Sept. 17, 2003)............................................................ 16

*McIntosh v. Adventist Health/W. St. Helena Hosp.*,
2013 WL 968293 (N.D. Cal. Mar. 12, 2013).................................................................... 16

*Mendoza v. Ad Astra Recovery Servs. Inc.*,
2014 WL 47777 (C.D. Cal. Jan. 6, 2014) ....................................................................... 19

*Meyer v. T-Mobile USA Inc.*,
836 F. Supp. 2d 994 (N.D. Cal. Sept. 23, 2011) ............................................................ 19

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

*Mill v. Kmart Corp.*,
  2014 WL 6706017 (N.D. Cal. Nov. 26, 2014) ............................................................... 16, 19, 24

*Mohamed v. Uber Technologies, Inc.*,
  No. C-14-5200 EMC .................................................................................................................. 1, 10

*Morvant v. P.F. Chang's China Bistro, Inc.*,
  870 F.Supp.2d 831 (N.D. Cal. May 7, 2012) ................................................................................ 21

*Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ............................................................................................................................... 7

*Oracle Am. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ......................................................................................................... 11

*Ortiz v. Hobby Lobby Stores, Inc.*,
  52 F. Supp. 3d 1070 (E.D. Cal. 2014) ............................................................................................ 24

*Owen ex rel. Owen v. United States*,
  713 F.2d 1461 (9th Cir. 1983) ......................................................................................................... 19

*Pacificare Health Sys., Inc. v. Book*,
  538 U.S. 401 (2003) ............................................................................................................................ 8

*Pearson Dental Supplies, Inc. v. Super. Ct.*,
  229 P.3d 83 (Cal. 2010) ............................................................................................................ 14, 16

*Peng v. First Rep. Bank*,
  219 Cal. App. 4th 1462 (Ct. App. 2013) ......................................................................................... 23

*Perry v. Thomas*,
  482 U.S. 483 (1987) ............................................................................................................................ 8

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*,
  55 Cal. 4th 223 (2012) ...................................................................................................................... 17

*Rent-A-Center, W, Inc. v. Jackson*,
  561 U.S. 63 (2010) .................................................................................................................. 8, 10, 15

*Reyes v. United Healthcare Servs., Inc.*,
  2014 WL 3926813 (C.D. Cal. Aug. 11, 2014) ................................................................................ 16

*Roman v. Super. Ct.*,
  172 Cal. App. 4th 1462 (Cal. Ct. App. 2009) .......................................................................... 16, 24

*Ruhe v. Masimo Corp.*,
  2011 WL 442790 (C.D. Cal. Sept. 16, 2011) .................................................................................. 22

*Saincome v. Truly Nolen*,
  2011 WL 3420604 (S.D. Cal. Aug. 3, 2011) ................................................................................... 22

*Sanchez v. Valencia Holding Co., LLC*,
  353 P.3d 741 (Cal. 2015) ........................................................................................ 13, 18, 19, 20, 22

*Serafin v. Balco Props. Ltd., LLC*,
  235 Cal. App. 4th 165 (Ct. App. 2015) ........................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

*Serpa v. Cal. Surety Investigations*,
215 Cal.App.4th 695 (2013) .................................................................................... 23

*Slaughter v. Stewart Enterprises, Inc.*,
2007 WL 2255221 (N.D. Cal. Aug. 3, 2007)........................................................... 23

*Swarbrick v. Umpqua Bank*,
2008 WL 3166016 (E.D. Cal. Aug. 5, 2008) ........................................................... 14

*Tompkins v. 23andMe, Inc.*,
2014 WL 2903752 (N.D. Cal. June 25, 2014) ......................................................... 21

*Ulbrich v. Overstock.Com, Inc.*,
887 F. Supp. 2d 924 (N.D. Cal. 2012) ...................................................... 15, 16, 22

*Universal Prot. Serv., L.P. v. Super. Ct.*,
234 Cal. App. 4th 1128 (2015) ................................................................................ 10

*Van Dusen v. Swift Transp. Co.*,
2010 WL 9526372 (D. Ariz. Sept. 30, 2010)........................................................... 15

*Velazquez v. Sears, Roebuck & Co.*,
2013 WL 4525581 (S.D. Cal. Aug. 26, 2013) ................................................... 19, 21

*Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*,
51 F. Supp. 3d 713 (N.D. Ill. 2014) ........................................................................ 12

*Zenelaj v. Handybrook, Inc.*,
2015 WL 971320  (N.D. Cal. Mar. 3, 2015)............................................................. 10

**Statutes**

Cal. Labor Code § 2802 ...................................................................................................... 6

Cal. Labor Code § 351 ........................................................................................................ 7

Cal. Bus. & Prof. Code § 17200 ......................................................................................... 7

Federal Arbitration Act, 9 U.S.C. § 1 et seq. ...................................................... 5, 7, 8, 25

**Other Authorities**

Anthony S. Volpe and Linda X. Shi, *What to Consider Before Agreeing to an IP Arbitration*,
The Legal Intelligencer, Vol. 243 No. 35, p. 2 (Feb. 22, 2011).................................. 22

JAMS Policy on Employment Arbitration, Minimum Standards of Procedural Fairness ................. 15

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.    <u>INTRODUCTION</u>**

3       This Court's class certification order excluded from the class drivers who entered into

4   arbitration agreements with Defendant Uber Technologies, Inc. ("Uber") or its subsidiary Rasier,

5   LLC ("Rasier") in 2014 and thereafter, but it *included* in the class drivers who entered into arbitration

6   agreements with Uber or Rasier in 2013 and earlier (the "Absent Class Members").  Now that the

7   Absent Class Members are parties to this action,[1] Uber moves to compel arbitration of their disputes

8   on an individual basis.  As this Court is aware, the Absent Class Members' arbitration agreements

9   require—with certain expressly defined exceptions not at issue here—arbitration of all disputes

10  "arising out of or related to [their] relationship[s] with [Uber/the Company]"[2] including "state or

11  federal wage-hour law, . . . unfair competition, compensation, breaks and rest periods, expense

12  reimbursement, . . . and claims arising under the . . . Fair Labor Standards Act, . . . and state statues, if

13  any, addressing the same or similar subject matters, and all other similar federal and state statutory

14  and common law claims."  The Absent Class Members also clearly and unmistakably agreed to

15  delegate to arbitration virtually all threshold issues related to the enforceability and validity of the

16  arbitration agreements.  Under the parties' agreements, the Absent Class Members' disputes—

17  including any disputes about the validity of the arbitration agreements—*must* be referred to

18  arbitration.

19      Accordingly, Uber brings this motion to compel the Absent Class Members' compliance with

20  their agreements to arbitrate and requests that the Court dismiss these class members' claims.  Uber

21  recognizes that the Court previously rejected its motions to compel arbitration in the related cases of

22  *Gillette v. Uber Technologies, Inc.*, No. C-14-5241 EMC, and *Mohamed v. Uber Technologies, Inc.*,

23  No. C-14-5200 EMC, and that by certifying the Class in this case, it has implicitly rejected the

24

25  [1]  The Absent Class Members were not parties to this action prior to class certification on
    September 1, 2015.  *See, e.g.*, *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011) (rejecting as
26  "sure[] erro[r]" the notion that an unnamed class member "is a party to the class-action litigation
    *before the class is certified*").

27  [2]  Agreements with Uber use "Uber" and agreements with Rasier use "the Company."

28

1   argument that the Absent Class Members claims must be arbitrated.  Uber has appealed these rulings

2   in *Gillette* and *Mohamed*, and respectfully brings this motion to preserve these arguments against the

3   newly added Absent Class Members.

4   **II.   FACTUAL BACKGROUND**

5       **A.   Defendant Uber Technologies, Inc. and the Licensing Agreements**

6       Uber is a technology company that offers a smartphone application connecting riders looking

7   for transportation to independent transportation providers looking for riders.  (Decl. of Michael

8   Colman in Supp. of Defs.' Mot. to Compel ("Colman Decl.") ¶ 3.)  Uber offers the application as a

9   tool to facilitate transportation services, and licenses the use of its application to independent

10  transportation providers.  (*Id.* ¶¶ 3-4)  Rasier is a wholly-owned subsidiary of Uber engaged in the

11  business of providing lead generation to independent transportation providers through Uber's

12  app.  (*Id.* ¶ 2.)

13      Uber developed and licenses multiple software products, including:  (1) uberX,

14  (2) UberBLACK, and (3) UberSUV.  (*Id.* ¶ 4.)  Any independent transportation provider who wishes

15  to access the UberBLACK or UberSUV platform to book passengers must enter into a Software

16  License & Online Services Agreement ("Licensing Agreement") with Uber.  (*Id.* ¶ 8.)  Independent

17  transportation providers are free to engage drivers to provide transportation services booked using the

18  Uber application.  (*Id.* ¶ 9.)  Any such drivers are required to accept both the Licensing Agreement

19  and Driver Addendum Related to Uber Services ("Driver Addendum") before receiving access to the

20  application.  (*Id.* at ¶ 9.)  On occasion, Uber implements updated Licensing Agreements and Driver

21  Addendums, and transportation providers and drivers must agree to those updated documents in order

22  to access the Uber application.  (*Id.*)  Any independent transportation provider who wishes to access

23  the uberX platform to book passengers must first enter into a Transportation Provider Service

24  Agreement ("Service Agreement") with Uber's subsidiary, Rasier.  (*Id.* ¶ 15.)

25      **1.   February 2013 and August 2013 Service Agreements**

26      From approximately February 2013 to August 27, 2013, transportation providers who

27  attempted to access the uberX platform for the first time were required to assent to a Service

28  Agreement with Rasier (the "February 2013 Service Agreement").  (Colman Decl. ¶¶ 10.a, 16,

Ex. A.)  From approximately August 27, 2013, to October 22, 2013, transportation providers who attempted to access the uberX platform for the first time were required to assent to an amended version of the Service Agreement (the "August 2013 Service Agreement").  (*Id.* ¶¶ 10.d, 16, Ex. D.)

Transportation providers who signed up for the uberX platform online between approximately February 2013 and October 22, 2013 received an email instructing them to review and sign the applicable Service Agreement.  (Colman Decl. ¶ 17, Ex. I.)  A hyperlink within the email directed transportation providers to a PDF copy of the Service Agreement in EchoSign, a web-based review and electronic signature system, which the transportation provider could review prior to signing.  (*Id.* ¶ 17, Ex. J.)  Transportation providers who signed up for the uberX platform in person at an Uber office between approximately February 2013 and October 22, 2013 were provided with an iPad that navigated them to a PDF copy of the applicable Service Agreement in the same EchoSign system for review and electronic signature.   (*Id.*)  After electronically signing the Service Agreement, transportation providers received a confirmation email with a PDF copy of the final, executed Service Agreement for their records.  (*Id.* ¶ 17, Ex. K.)  Copies of the Service Agreements executed through the EchoSign system were made available to drivers on Uber's "Driver Portal"—a website that enables drivers to obtain information about their Uber account.  (*See id.* ¶¶ 20-21, Ex. N.)

## 2.      July 2013 Licensing Agreement and Driver Addendum

On or around July 22, 2013, Uber notified registered California transportation providers and drivers using the UberBLACK and UberSUV platforms by email that it intended to issue an updated Licensing Agreement (the "July 2013 Licensing Agreement") and Driver Addendum (the "July 2013 Driver Addendum") "[w]ithin the next two weeks."  (Colman Decl. ¶ 13, Ex. F.)  The email that Uber sent to transportation providers and their drivers included a link to the updated versions of these agreements, thereby affording transportation providers and their drivers an opportunity to review the agreements.   (*Id.*)  Uber also posted the July 2013 Licensing Agreement and the July 2013 Driver Addendum on its "Driver Portal."  (*See id.* ¶¶ 20-21, Ex. N.)

Beginning on or about July 27, 2013, Uber "rolled out" the 2013 Licensing Agreement and the 2013 Driver Addendum through its application.  (Colman Decl. ¶¶ 10.b, 13, Ex. B (July 2013 Licensing Agreement) & ¶¶ 10.c, 13, Ex. C (July 2013 Driver Addendum).)  When users logged onto

1  the application, a screen would appear containing links to the updated agreements, which drivers

2  could then review before clicking a button that stated "Yes, I agree." (*Id.* ¶ 14, Ex.G.)  After clicking

3  the "Yes, I agree" button, the application would prompt users to confirm that they agreed to the

4  updated agreements.  (*Id.* ¶ 14, Ex. H.)  New transportation providers and drivers that attempted to

5  access the UberBLACK and UberSUV platforms for the first time subsequent to the July 2013

6  "rollout," but prior to December 6, 2013, were required to accept the July 2013 Licensing Agreement

7  and July 2013 Driver Addendum through the Uber application before being permitted to access the

8  UberBLACK platform.  (*Id.* ¶ 14.)

9  **3.     October 2013 Service Agreement**

10  In October 2013, Rasier notified transportation providers on the uberX platform in California

11  that it was planning to roll out a new Service Agreement (the "October 2013 Service Agreement").

12  (Colman Decl. ¶ 18.)  In accordance with standard practices, local directors of operations chose the

13  method of notification, typically via email or text message (SMS) to transportation providers' mobile

14  phones, informing transportation providers that a new Service Agreement was forthcoming.  (*Id.*)

15  Beginning on or about October 22, 2013, Rasier "rolled out" the October 2013 Service

16  Agreement through the uberX application.  (Colman Decl. ¶¶ 18-19.)  When users logged onto the

17  application, a screen would appear containing links to the updated agreements, which drivers could

18  then review before clicking a button that stated "Yes, I agree."  (*Id.* ¶ 19, Ex. L)  After clicking the

19  "Yes, I agree" button, the application would prompt users to confirm that they agreed to the updated

20  agreements.  (*Id.* ¶ 19, Ex. M.)  New transportation providers that attempted to access the uberX

21  platform for the first time subsequent to the October 2013 "rollout," but prior to December 6, 2013,

22  were required to accept the October 2013 Service Agreement through the Uber application before

23  being permitted to access the uberX platform.  (*Id.* ¶ 19.)

24  **B.     Arbitration Provisions**

25  The July 2013 Licensing Agreement, July 2013 Driver Addendum, and February 2013,

26  August 2013, and October 2013 Service Agreements (collectively, the "Agreements") contain a

27  virtually identical arbitration agreement (the "Arbitration Provision"), which requires signatories to

28  those agreements to arbitrate all disputes—except for certain disputes expressly enumerated in the

agreements themselves—arising out of the agreements and/or the signatories' relationships with Uber and Rasier, including termination of that relationship.   The Arbitration Provision also expressly requires signatories to arbitrate any challenges to the validity or enforceability of the Arbitration Provision, subject to limited enumerated exceptions.  In relevant part, the Arbitration Provision reads:

> This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce.  This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates . . . .

> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration.  This Arbitration Provision requires all such disputes be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial.**

> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.

> Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to Your relationship with [Uber/the Company],[3] including termination of the relationship. . . .

(February 2013 Service Agreement at 11, § i; July 2013 Licensing Agreement § 14.3.i; August 2013 Service Agreement at 11, § i; October 2013 Service Agreement at 11, § i.)[4]  Further, the Arbitration Provision states that signatories must pursue any claims in arbitration solely on an individual basis, and not on a class, collective, or private attorney general representative action basis.  (*See* February

---

[3]   The July 2013 Licensing Agreement uses the word "Uber," and the February 2013, August 2013, and October 2013 Service Agreements use the words "the Company."

[4]   The July 2013 Driver Addendum also requires signatories to arbitrate any disputes related to the Driver Addendum consistent with the terms of the Arbitration Provision contained in the July 2013 Licensing Agreement, stating as follows:

> **DISPUTE RESOLUTION:**  Subcontractor agrees that any dispute, claim or controversy and arising out of relating to this Addendum, or the breach, termination, enforcement, interpretation or validity thereof, or performance of the services pursuant to the Software License and Online Services Agreement, including, but not limited to the use of the Service or Software, will be settled by binding arbitration in accordance with the terms set forth in the Software License and Online Services Agreement.

(July 2013 Driver Addendum § 7.)

2013 Service Agreement at 13, § v; July 2013 Licensing Agreement § 14.3.v; August 2013 Service Agreement at 13, § v; October 2013 Service Agreement at 13, § v.)

The Arbitration Provision contained an opt-out provision that afforded drivers a full 30 days to opt-out of the Arbitration Provision, and notified drivers: (1) that the Arbitration Provision was *not* a mandatory condition of their contractual relationship with Uber or Rasier; and (2) that they had a right to consult with an attorney regarding the dispute resolution provision:

> Your Right to Opt out of Arbitration
>
> Arbitration is not a mandatory condition of your contractual relationship with [Uber/the Company].[5] If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying [Uber/the Company] in writing of your desire to opt out of this Arbitration Provision …. In order to be effective, the writing must clearly indicate your intent to opt out of this Arbitration Provision and the envelope containing the signed writing **must be post-marked within 30 days** of the date this Agreement is executed by you. Your writing opting out of this Arbitration Provision will be filed with a copy of this Agreement and maintained by [Uber/the Company]. Should you not opt out of this Arbitration Provision within the 30-day period, You and [Uber/the Company] shall be bound by the terms of this Arbitration Provision. You have the right to consult with counsel of Your choice concerning this Arbitration Provision. You understand that you will not be subject to retaliation if You exercise Your right to assert claims or opt-out of coverage under this Arbitration Provision.

(February 2013 Service Agreement at 14-15, § vii; July 2013 Licensing Agreement § 14.3.viii; August 2013 Service Agreement at 14, § vii; October 2013 Service Agreement at 14, § vii.) Hundreds of drivers who use or have used the Uber application, including the named plaintiffs in this case, did, in fact, opt out of arbitration. (Colman Decl. ¶ 11; ECF No. 342 at 15.)

### C.    The Absent Class Members' Claim

On August 16, 2013, Plaintiffs filed a putative class action complaint against Uber, alleging that they had been misclassified as independent contractors rather than employees and asserting various claims, including claims under California Labor Code sections 351 and 2802 and Business and Professions Code section 17200, for reimbursement of certain expenses and gratuities they claim had been withheld by Uber. *See* Compl., ECF No. 1, ¶¶ 2, 40–41.

---

[5]  The July 2013 Licensing Agreement uses "Uber," and the February 2013, August 2013, and October 2013 Service Agreements use "the Company."

Gibson, Dunn &
Crutcher LLP

On September 1, 2015, the Court granted in part Plaintiffs' motion for class certification, certifying the following class to pursue a claim that Uber "violated California's Unfair Competition Law by violating Section 351 of the Labor Code":

> All UberBlack, UberX, and UberSUV drivers who have driven for Uber in the state of California at any time since August 16, 2009, and who (1) signed up to drive directly with Uber or an Uber subsidiary under their individual name, and (2) are/were paid by Uber or an Uber subsidiary directly and in their individual name, and (3) did not electronically accept any contract with Uber or one of Uber's subsidiaries which contains the notice and opt-out provisions previously ordered by this Court (including those contracts listed in the Appendix to this Order), *unless* the driver timely opted-out of that contract's arbitration agreement.

ECF No. 342 at 67.[6]  Although the named plaintiffs opted out of arbitration, a substantial number of transportation providers and drivers who signed arbitration agreements in Uber and Rasier's pre-2014 Service Agreements, Licensing Agreements, and Driver Addendums and did not opt out are now part of the certified class.  *Id.* at 63–64.

## III.  THE COURT SHOULD ORDER ABSENT CLASS MEMBERS TO ARBITRATE THEIR CLAIMS ON AN INDIVIDUAL BASIS AND DISMISS THE ABSENT CLASS MEMBERS' CLAIMS

### A.  The Federal Arbitration Act Applies to the Arbitration Provision

As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011), the Federal Arbitration Act ("FAA") declares a liberal policy favoring the enforcement of arbitration policies, stating:  "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," *Moses H Cone Mem'l Hosp. v. Mercury Constr.* Corp., 460 U.S. 1, 22 (1983); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991).  The FAA does not simply

---

[6]  The Appendix to the Court's certification order identifies all of Rasier's Service Agreements and Uber's Licensing Agreements and Driver Addendums dated June 21, 2014 or later as the agreements whose signatories are excluded from the certified class.  *See* ECF No. 342 at 68; *see also id.* at 61 ("since early 2014, the Court understands that all of Uber's contracts with its drivers have included the Court's approved corrective notice and opt-out procedures").

place arbitration agreements on equal footing with other contracts; rather, it "*favor[s]* arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (emphasis added).

The Arbitration Provision at issue in this case is indisputably governed by the FAA. As an initial matter, the Arbitration Provision *states* that it is "governed by the Federal Arbitration Act," which is sufficient to bring the Arbitration Provision within the purview of the FAA.[7] *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442-43 (2006). Moreover, the agreements within which the Arbitration Provision is contained affect commerce. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Uber's application is available to riders and transportation providers in over 100 cities across the country, and the Absent Class Members—as users of Uber's software application—utilized the interstate reach and popularity of the application in order to book passengers. (Colman Decl. ¶ 6.) For these reasons, the FAA—along with its liberal policy *favoring* arbitration—controls in this case.

## B.     The Arbitration Provision Is Valid And Must Be Enforced

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. In determining whether to compel arbitration, only two "gateway" issues need to be evaluated: (1) whether there exists a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25.

### 1.     The Arbitration Provision Delegates the Gateway Issues to the Arbitrator

Before reaching these gateway issues, the Court must first examine the underlying contracts to determine whether the parties have agreed to commit the threshold question of arbitrability to the arbitrator. *Rent-A-Center, W, Inc. v. Jackson*, 561 U.S. 63, 69 (2010) ("An agreement to arbitrate a

---

[7]   *See* February 2013 Service Agreement at 11, § i; July 2013 Licensing Agreement § 14.3.i; August 2013 Service Agreement at 11, § i; October 2013 Service Agreement at 11, § i.

gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").  The Court's review is limited to the face of the arbitration agreement.  *See Anderson v. Pitney Bowes, Inc.*, No. C 04-4808 SBA, 2005 WL 1048700, *4 (N.D. Cal. May 4, 2005) (courts "conduct[] a *facial and limited review* of [a] contract" when deciding "whether the parties have in fact clearly and unmistakably agreed to commit the question of arbitrability to the arbitrator"); *accord Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 553 (2004).

Here, the Arbitration Provision clearly and unmistakably provides that, with certain limited and enumerated exceptions, the following matters must be decided by the arbitrator:  "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision."[8]  Therefore, any question as to the validity of the Arbitration Provision and whether it applies to this dispute has been delegated to, and must be decided by, the arbitrator.

### a)   The Delegation Provision Clearly and Unmistakably Delegates The Gateway Questions To The Arbitrator

When making the determination as to whether there is "clear and unmistakable" evidence that the parties to an agreement intended the question of arbitrability to be decided by an arbitrator, courts must "conduct[] a *facial and limited review*" of the agreement itself.  *Anderson*, 2005 WL 1048700 at *4 (emphasis in original); *Bernal v. S.W. & Pac. Specialty Fin., Inc.*, Case No: C 12-05797 SBA, 2014 WL 1868787, *2 (N.D. Cal. May 7, 2014) (same); *see also Johnston Boiler Co. v. Local Lodge No. 893*, 753 F.2d 40, 43 (6th Cir. 1985) ("The function of the court is … confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.").  As such, courts routinely confine their analysis to the express language of the contract when determining whether parties—even "unsophisticated" parties—have manifested a "clear and

---

[8]   February 2013 Service Agreement at 11, § i; July 2013 Licensing Agreement § 14.3.i; August 2013 Service Agreement at 11, § i; October 2013 Service Agreement at 11, § i.

1  unmistakable" intent to delegate threshold issues to an arbitrator.  *See, e.g., Zenelaj v. Handybrook,*

2  *Inc.*, No. 14-cv-05449-TEH2015 WL 971320, *4 (N.D. Cal. Mar. 3, 2015).[9]

3        As the Court has already found, the language of the delegation provision evidences a "clear

4  and unmistakable" intent to arbitrate gateway issues such as arbitrability.  *See Mohamed v. Uber*

5  *Technologies, Inc.*, No. C-14-5200 EMC, ECF No. 70, at 16 ("Plaintiffs do not appear to contend that

6  the language of the delegation clauses itself is ambiguous, and such an argument would be a tough

7  sell.").   In a subsection of the Arbitration Provision entitled "How This Arbitration Provision

8  Applies," the agreement mandates that the following matters must be decided by the arbitrator:

9  "[D]isputes arising out of or relating to interpretation or application of this Arbitration Provision."[10]

10  Under *Rent-A-Center*, 561 U.S. at 70, this language is unambiguous in its mandate that the arbitrator,

11  not the Court, should address any arguments that Absent Class Members may have regarding contract

12  "valid[ity], revocab[ility], or enforceab[ility]."

13        This delegation provision may not be deemed ambiguous by virtue of the 2013 Licensing

14  Agreement's general jurisdictional reservation—a provision that is *not* a part of the Arbitration

15  Provision.[11]   (*See* July 2013 Licensing Agreement § 14.1 (reserving jurisdiction "in the state and

16  federal courts located in the City and County of San Francisco, California").)   The Arbitration

17  Provision broadly applies to "all" disputes that would otherwise be resolved in a court of law, but

18  then *carves out* particular types of disputes from the scope of arbitration.   In other words, the

19

20  [9]  *See also Universal Prot. Serv., L.P. v. Super. Ct.*, 234 Cal. App. 4th 1128, 1141 (2015)
     (arbitration agreement incorporating AAA Rules evinced "clear and unmistakable" intent of
21     security guard-employees); *Bernal*, *supra*, 2014 WL 1868787, at *4 (enforcing delegation
     provision in lawsuit brought by "payday loan" customer against bank); *Ariza v. Autonation,*
22     *Inc.*, 317 F. App'x 662, 663 (9th Cir. 2009) (reversing district court order denying auto lessor's
     motion to compel arbitration and finding that agreement clearly and unmistakably warranted
23     delegation); *Chung v. Nemer PC*, No. C 12-4608 PJH, 2012 WL 5289414, *2 (N.D. Cal. Oct. 25,
     2012) (granting employer's motion to compel arbitration with pro se employee pursuant to
24     delegation clause and rejecting employee's argument that she "did not fully understand the
     [arbitration] agreement").

25  [10]  *See* February 2013 Service Agreement at 11, § i; July 2013 Licensing Agreement § 14.3.i; August
26     2013 Service Agreement at 11, § i; October 2013 Service Agreement at 11, § i.

27  [11]  The February 2013, August 2013, and October 2013 Service Agreements do not contain a general
     jurisdictional reservation provision.

28

Arbitration Provision itself identifies the precise disputes to which the catchall jurisdictional reservation applies, and makes this fact apparent at the outset, with the words "***Except as it otherwise provides***, . . . ."  (July 2013 Licensing Agreement § 14.3.i (emphasis added; boldface in original).)  Because there can be no ambiguity that the Arbitration Provision applies to the resolution of all disputes "that would otherwise be resolved in a court of law"—*including* gateway issues related to the Arbitration Provision, but *excluding* those disputes that the Arbitration Provision itself reserves for the general jurisdictional provision set forth in Section 14.1 of the July 2013 Licensing Agreement—the delegation provision must be enforced.

The California Supreme Court has held that an arbitration provision with very similar features evinced a clear and unmistakable intent to refer matters to an arbitrator.  In *Boghos v. Certain Underwrites at Lloyd's of London*, 36 Cal. 4th 495 (2005), the Court rejected the claim that a separate service of suit clause requiring the defendants to "submit to the jurisdiction of a court of competent jurisdiction within the United States" created ambiguity.   36 Cal. 4th at 502.  The Court found instead that the parties "clearly . . . intended . . . for all disputes to be settled in binding arbitration, even if other provisions, read in isolation, might seem to require a different result," and held that the provisions were harmonious because the service of suit clause applied whenever defendants needed "to compel arbitration or to enforce arbitral awards . . . ."  *Id.* at 503; *accord Dream Theater*, 124 Cal. App. 4th at 556 ("No matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award").

Likewise, federal courts routinely hold that discrete references to "courts," like those in the agreements here, do not render clear and unmistakable delegation clauses ambiguous.  *See, e.g.*, *Oracle Am. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075 (9th Cir. 2013) (finding a clear and unmistakable intent to delegate and holding that it was "immaterial" that applicable arbitration rules stated that there could be "challenge[s] to [the arbitral tribunal's] jurisdiction [in] a court"); *Fallo v. High-Tech Institute*, 559 F.3d 874, 879 (8th Cir. 2009) (a reference to "court costs" in a governing law provision did not conflict with a clear and unmistakable intent to delegate because "a party may

1  seek to have the arbitrator's order confirmed, modified or vacated in a court . . . .").[12]  As in *Boghos*,

2  *Dream Theater*, *Oracle*, *Fallo*, *Anheuser-Bush*, and *Wal-Mart*, there is no ambiguity here.   The

3  Arbitration Provision states that an arbitrator must resolve the parties' disputes, subject to specific

4  carve outs to that general rule, and preserves parties' ability to confirm arbitration awards in court.

5          For precisely the same reason, there can be no *internal* ambiguity between the delegation

6  provision and the Arbitration Provision's statement that courts (not arbitrators) are to determine the

7  validity of the agreements' class, collective, and representative waivers.[13]   These provisions are

8  consistent with one another because the delegation clause itself contemplates that threshold questions

9  are to be delegated to an arbitrator *by default*, subject to certain specific *exceptions*.   The delegation

10  clause makes this point clear with the prefatory language "***Except as it otherwise provides***," and thus

11  contemplates that *some* disputes—such as the enforceability of class, collective, and representative

12  waivers—may be decided by the courts.[14]   *See Estate of Reynolds v. Martin*, 985 F.2d 470, 473 (9th

13  Cir. 1993) ("[The] general language . . . is qualified by the clause '[e]xcept as otherwise specifically

14  provided.' . . . .  The qualifying clause . . . must mean that . . . [there are] counterexamples that

15  specifically provide for exceptions to the general rule enunciated elsewhere . . . .").   Similarly, the

16  Waiver Provision recognizes that it is an exception to, and thus takes precedence over, the *default*

17  *rule* embodied in the delegation clause:

18  > ***Notwithstanding any other clause contained in this Agreement***, any claim that all or part of
19  > the [Waiver Provisions] [are] invalid, unenforceable, unconscionable, void or voidable may
20  > be determined only by a court of competent jurisdiction and not an arbitrator.

21

---

22  [12] *Accord Hill v. Anheuser-Busch InBev Worldwide, Inc.*, 2014 WL 10100283, at *4-5 (C.D. Cal. Nov. 26, 2014) (finding a clear and unmistakable intent to delegate, despite a provision stating that "a court [could] determine[ ] [whether] any provision of the [agreement] [was] invalid or unenforceable"); *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 720-21 (N.D. Ill. 2014) (same).

25  [13] *See* February 2013 Service Agreement at 13, § (v)(c); July 2013 Licensing Agreement § 14.3(v)(c); August 2013 Service Agreement at 13, § (v)(c); October 2013 Service Agreement at 13, § (v)(c) (the "Waiver Provision").

27  [14] February 2013 Service Agreement at 11, § i; July 2013 Licensing Agreement § 14.3.i; August 2013 Service Agreement at 11, § i; October 2013 Service Agreement at 11, § i.

28

Gibson, Dunn &
Crutcher LLP

(February 2013 Service Agreement at 13, § (v)(c) (emphasis added.)[15]

### b)  The Delegation Provision Is Not Unconscionable

Because the parties have "empower[ed] [an] arbitrator to decide arbitrability, the Court's role is narrowed from deciding whether there is an applicable arbitration agreement to only deciding whether there is a valid delegation clause." *Bernal*, 2014 WL 1868787 at *2.  A party challenging the validity of a delegation clause on grounds of unconscionability bears the burden of proving that the agreement is both procedurally and substantively unconscionable.  *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 748-49 (Cal. 2015).  "No matter how heavily one side of the scale tips . . . *both* procedural and substantive unconscionability are required for a court to hold an arbitration agreement unenforceable."  *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 952 (9th Cir. 2012) (citing *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 89 (2000) *on reh'g en banc*, 718 F.3d 1052 (9th Cir. 2013)).  Here, Absent Class Members can satisfy neither requirement.

*First*, the delegation clause is not procedurally unconscionable for the reasons discussed more fully below—in particular, the existence of a meaningful opt-out right that hundreds of drivers exercised precludes a finding of unconscionability under binding Ninth Circuit precedent.  *See infra* § III.B.2.a.1; Colman Decl. ¶ 11; ECF No. 342 at 15.  Additionally, although there is "no obligation to highlight" or "specifically call [attention] to" provisions of an arbitration agreement, *Sanchez*, 353 P.3d at 751 ("Any state law imposing such an obligation would be preempted by the FAA."), the delegation clause is written in unmistakable language contained in a stand-alone paragraph of the Arbitration Provision.  (February 2013 Service Agreement at 11, § i;[16] *see Chung*, 2012 WL 5289414, at *2 (delegation clause not procedurally unconscionable because it was "conspicuous, plain, and clear in stating that the arbitrator would resolve all disputes relating the enforceability of the arbitration agreement.").)

---

[15]  *Accord* July 2013 Licensing Agreement § 14.3(v)(c); August 2013 Service Agreement at 13, § (v)(c); October 2013 Service Agreement at 13, § (v)(c).

[16]  *Accord* July 2013 Licensing Agreement § 14.3.i; August 2013 Service Agreement at 11, § i; October 2013 Service Agreement at 11, § i.

***Second***, the delegation clause is not substantively unconscionable, even if there is a possibility that drivers might be required to pay a portion of the fees and costs for the arbitrator's services.[17]  Because Absent Class Members were informed that the Arbitration Provision "is not a mandatory condition of your contractual relationship with [Uber/the Company]," and were provided an opportunity to opt out,[18] the California Supreme Court's decision in *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (2000)—which precludes "mandatory" arbitration agreements in the employment context that would "require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court"— does not apply here.[19]  *Id.* at 687; *see also Pearson Dental Supplies, Inc. v. Super. Ct.*, 229 P.3d 83, 90 (Cal. 2010) (defining a "mandatory employment arbitration agreement" as one that "an employer imposes on the employee as a condition of employment"); *Swarbrick v. Umpqua Ban*k, No. 2:08-CV-00532MCEDAD, 2008 WL 3166016, at *4 (E.D. Cal. Aug. 5, 2008) (finding *Armendariz* inapplicable where plaintiffs "had the opportunity to negotiate or reject the arbitration clauses").

---

[17] The Arbitration Provision provides that, "in all cases where required by law, [Uber/the Company] will pay the Arbitrator's and arbitration fees."   (February 2013 Service Agreement at 14, § vi; July 2013 Licensing Agreement § 14.3.vi; August 2013 Service Agreement at 13-14, § vi; October 2013 Service Agreement at 14, § vi.) Thus, Absent Class Members would be required to pay a portion of the fees and costs of arbitration ***only*** to the extent that Uber is not required by applicable law to pay all of the Arbitrator's and/or arbitration fees. (*Id.* ("If under applicable law [Uber/the Company] is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the Parties in accordance with said applicable law").)

[18] *See supra* § III.B.2.a.1; *see also* February 2013 Service Agreement at 14-15, § vii; July 2013 Licensing Agreement § 14.3.viii; August 2013 Service Agreement at 14, § vii; October 2013 Service Agreement at 14, § vii.

[19] In any event, the *Armendariz* rule prohibiting an employee from having to pay "any *type* of expense" in arbitration that he or she would not be required to bear if the action were brought in court, 24 Cal. 4th at 110, imposes a special burden on arbitration agreements—and *only* arbitration agreements—and is therefore preempted by the FAA.  *Concepcion*, 131 S. Ct. at 1746 (the FAA does not permit agreements to arbitrate to be invalidated "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue"); *see, e.g.*, *James v. Conceptus, Inc.*, 851 F. Supp. 2d 1020, 1033 (S.D. Tex. 2012) ("The general *Armendariz* rule is in serious doubt following *Concepcion* …. To the extent *Armendariz* precludes arbitration in any employment dispute if the employee is required to bear any *type* of expense not present in litigation, it appears to be preempted."); *Beard v. Santander Consumer USA, Inc.*, 2012 WL 1292576, at *9 (E.D. Cal. Apr. 16, 2012) ("The general *Armendariz* rule has been criticized following the Supreme Court's ruling in *Concepcion*.").

Gibson, Dunn & Crutcher LLP

Even if *Armendariz* applied here (it does not), the Arbitration Provision requires Uber to pay *all* arbitration fees "where required by law."[20]  Additionally, the parties have the option of using an arbitrator from a commercial service like JAMS,[21] and according to the JAMS Policy on Employment Arbitration, Minimum Standards of Procedural Fairness,

> An employee's access to arbitration must not be precluded by the employee's inability to pay any costs . . . . **The only fee that an employee may be required to pay is JAMS' initial Case Management Fee.**  All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services.

(Request for Judicial Notice, Ex. A, JAMS Policy on Employment Arbitration, Minimum Standards of Procedural Fairness, Standard No. 6 (effective July 15, 2009) (emphasis added), available at http://www.jamsadr.com/employment-minimum-standards/ (last visited September 10, 2015).) Accordingly, Absent Class Members would only be required to pay a minimal initial Case Management fee or, if that fee would make arbitration cost prohibitive under California law,[22] all fees would be covered by Uber. *See, e.g., Ulbrich v. Overstock.Com, Inc.*, 887 F. Supp. 2d 924, 933-34 (N.D. Cal. 2012) (finding "little evidence of substantive unconscionability" where arbitration

---

[20]  *See* February 2013 Service Agreement at 14, § vi ("in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees"); July 2013 Licensing Agreement § 14.3.vi (same); August 2013 Service Agreement at 13 § vi (same); October 2013 Service Agreement at 13, § vi (same).

[21]  JAMS is the default arbitration service if the parties do not cannot agree on an arbitrator.  (*See* February 2013 Service Agreement at 12, § iii; July 2013 Licensing Agreement § 14.3.iii; August 2013 Service Agreement at 12 § iii; October 2013 Service Agreement at 12, § iii.)

[22]  Absent Class Members would bear the burden of proving that the costs of arbitration were "prohibitive," and not just the mere possibility that costs would have a chilling effect.  *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000); *see also id.*  ("The 'risk' that [a party] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.").  Moreover, given that only the delegation provision is within the Court's purview, Absent Class Members would need to demonstrate that the expense of arbitrating the enforceability of the agreement alone—*not the entire dispute*—would be prohibitive.  *Kuehn v. Citibank, N.A.*, No. 12 CIV. 3287 DLC, 2012 WL 6057941, at *4 (S.D.N.Y. Dec. 6, 2012); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. at 74 (noting the difficulty of meeting this burden); *Van Dusen v. Swift Transp. Co.*, No. 2:10-CV-00899 JWS, 2010 WL 9526372, at *6 (D. Ariz. Sept. 30, 2010) *rev'd on other grounds*, 544 F. App'x 724 (9th Cir. 2013) (same).  Furthermore, because this showing requires "individualized evidence," each Absent Class Member would need to *independently* demonstrate that the delegation provision was substantively unconscionable based on *personal* circumstances.  *See Van Dusen*, 2010 WL 9526372, at *6.

1    agreement provided that employer and employee would "share costs equally" but also indicated that

2    the American Arbitration Association's rules would apply, which required "that employees pay a

3    reduced filing fee and that the employer bear many of the hearing fees and costs").

4           Furthermore, *Armendariz* is "a rule of contract construction, not contract invalidation."

5    *Marshall v. Pontiac*, 287 F. Supp. 2d 1229, 1234 (S.D. Cal. Sept. 17, 2003).  Thus, to the extent the

6    agreements are mandatory employment arbitration agreements, the arbitrator would simply construe

7    the fee provision to require Uber to pay all arbitration fees, which is consistent with—indeed,

8    contemplated by—the savings clause of the fee provision.[23]  *Armendariz*, 24 Cal. 4th at 113.  Indeed,

9    California law and the FAA require courts to interpret the fee provision in a manner so as to "render[]

10   it lawful."  *Pearson* 229 P.3d at 94 ("When an arbitration provision is ambiguous, we will interpret

11   that provision, if reasonable, in a manner that renders it lawful").[24]

12          In the alternative, if the Court determines that the fee provision is unconscionable, it should

13   simply sever the unconscionable language from the fee provision instead of declaring the entire

14   delegation provision unenforceable.  *See Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1477 (Cal. Ct.

15   App. 2009).  "[T]he strong legislative and judicial preference is to sever the offending term and

16   enforce the balance of the agreement."  *Id.*[25]

---

[23] *See* February 2013 Service Agreement at 14, § vi ("in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees"); July 2013 Licensing Agreement § 14.3.vi (same); August 2013 Service Agreement at 13 § vi (same); October 2013 Service Agreement at 13, § vi (same).

[24] *See also Mill v. Kmart Corp.*, 2014 WL 6706017, at *4-6 (N.D. Cal. Nov. 26, 2014) (arbitration agreement satisfied *Armendariz* because it required employer to pay fees necessary "under state law"); *Reyes v. United Healthcare Servs., Inc.*, 2014 WL 3926813, at *5 (C.D. Cal. Aug. 11, 2014) (confidentiality provision that applied "unless applicable law provide[d] to the contrary" was not substantively unconscionable because provision "should be read not to apply when its application would be unconscionable").

[25] *See also Burgoon v. Narconon of N. California*, No. C-15-1381 EMC, 2015 WL 5071982, at *13 (N.D. Cal. Aug. 27, 2015) (holding that "the 'taint' from the cost-splitting and confidentiality provisions" did not "permeate[] the arbitration agreements to such an extent that the purpose of the agreements . . . was transformed"); *Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1177 (N.D. Cal. 2013); *McIntosh v. Adventist Health/W. St. Helena Hosp.*, No. C 12-05589 PJH, 2013 WL 968293, at *8-9 (N.D. Cal. Mar. 12, 2013); *Ulbrich*, 887 F. Supp. 2d at 933-34.

## 2.    The Gateway Issues Under The FAA Have Been Satisfied

Even if the Court were to find that it, rather than the arbitrator, should evaluate the enforceability and interpretation of the Arbitration Provision, the Court should hold that both of the "gateway" issues have been satisfied and that this case should be compelled to arbitration.

### a)    A Valid Agreement To Arbitrate Exists

General contract law principles apply to the interpretation and enforcement of arbitration agreements. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995). Arbitration can be denied only where a party proves a defense to enforcement of the agreement, such as unconscionability. *Hoffman v. Citibank, N.A.*, 546 F. 3d 1078, 1082 (9th Cir. 2008). To establish a defense based on unconscionability, Absent Class Members bear the burden of proving that the agreement is both procedurally and substantively unconscionable. *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev.*, 55 Cal. 4th 223, 235 (2012). Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise," whereas substantive unconscionability relates to "the fairness of the agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Id.* at 246.

### (1)    The Arbitration Provision Is Not Procedurally Unconscionable

There is nothing "oppressive" or "surprising" about the Arbitration Provision that the Absent Class Members executed here or the manner in which it was presented to the Absent Class Members, and thus there is no procedural unconscionability at all, let alone an amount sufficient to warrant a wholesale invalidation of the parties' contractual agreement.

Indeed, Uber and Rasier provided transportation providers and drivers ample notice of their intent to issue the July 2013 Licensing Agreement, July 2013 Driver Addendum, and October 2013 Service Agreements by *emailing* or *texting* transportation providers and drivers about the anticipated contractual revisions before the updated agreements were "rolled out" (*see* Colman Decl. ¶¶ 13, 17-18), or making copies available via email or electronic download when new drivers attempt to access the uberX platform between February and October 2013 (*see id.* ¶ 17). Uber and Rasier also *encouraged* transportation providers and drivers to download the Agreements and provided a

DEF.'S MOT. TO COMPEL ARBITRATION – CASE NO. 13-CV-03826-EMC

Gibson, Dunn &
Crutcher LLP

conspicuous download button.  (*See id.* ¶¶ 13, 17, Exs. F, I.)  Because transportation providers and drivers had ample time to review the agreements and decide for themselves whether or not to agree to the terms, the content of the agreements could hardly be called a "surprise" at all.  *See Dwyer v. Dynetech Corp.*, No. C 07-02309 JSW, 2007 WL 2726699, at *4 (N.D. Cal. Sept. 17, 2007) (the fact that plaintiff had four days to review arbitration agreement "weigh[ed] against a finding of procedural unconscionability"); *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348, (2015), *as modified on denial of reh'g* (Feb. 9, 2015), *reh'g denied* (Feb. 25, 2015), *review filed* (Mar. 24, 2015) (noting that "the amount of time the party is given to consider the proposed contract" is a relevant factor in analyzing procedural unconscionability).

Furthermore, while Uber and Rasier were under "no obligation to highlight the arbitration clause of its contract, nor [were they] required to specifically call that clause to [drivers'] attention," *Sanchez*, 353 P.3d at 751, they <u>did</u>, in fact, highlight the arbitration clause of the agreements and <u>did</u> call the Arbitration Provision "in its own section, clearly labeled, in boldface," *Kilgore*, 718 F.3d at 1059, and with a boldfaced paragraph alerting drivers, "**This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.**"[26]  Certainly, there can be no "surprise" where Uber and Rasier went well *beyond* their legal duty to notify drivers of the Arbitration Provision.

Even if Absent Class Members did not have ample time to review the Arbitration Provision before entering into it—which they did—or a conspicuous, bolded, and underlined heading and message alerting them to the arbitration provision—which they did—the Absent Class Members had a "meaningful opportunity to opt out of the arbitration program" altogether after accepting the agreements.[27]  This meaningful opportunity to opt out ***precludes*** any finding of procedural

---

[26] *See* February 2013 Service Agreement at 11, § i (marked by the heading "<u>**Arbitration Provision**</u>"); July 2013 Licensing Agreement § 14.3.i ("<u>**Arbitration**</u>"); August 2013 Service Agreement at 11, § i ("<u>**Arbitration Provision**</u>"); October 2013 Service Agreement at 11, § i ("<u>**Arbitration Provision**</u>").

[27] *See supra* § III.B.2.a.1; February 2013 Service Agreement at 14-15, § vii; July 2013 Licensing Agreement § 14.3.v.iii; August 2013 Service Agreement at 14, § vii; October 2013 Service Agreement at 14, § vii.

1   unconsciability and therefore *requires* enforcement of the arbitration agreements.  *See Kilgore*, 718

2   F.3d at 1059 (holding that an arbitration provision is not procedurally unconscionable if it "allows

3   [signatories] to reject arbitration" through an opt-out procedure); *accord Circuit City Stores, Inc. v.*

4   *Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108

5   (9th Cir. 2002); *see also Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983)

6   (the Ninth Circuit's interpretation of state law is binding "in the absence of any *subsequent* indication

7   from the California courts that [its] interpretation was incorrect") (emphasis added); *Briceno v.*

8   *Scribner*, 555 F.3d 1069, 1080 (9th Cir. 2009) (same).[28]

9           While Uber and Rasier were under no obligation to draw special attention to the arbitration

10  agreement or its provisions, *Sanchez*, 2015 WL 4605381, at *7, Absent Class Members' right to opt

11  out was conveyed in a standalone section with the underlined heading, "Your Right To Opt Out Of

12  Arbitration."[29]   In unambiguous language, the Arbitration Provision advised drivers that:

13

14  [28] The Ninth Circuit's en banc ruling in *Kilgore* postdates *Gentry v. Superior Court*, 42 Cal.4th 443
    (2007), and numerous federal courts have followed *Kilgore*, *Najd*, and *Ahmed* since *Gentry* was
15  issued nearly a decade ago.  *See, e.g., Mill*, 2014 WL 6706017, at *5-6; *Mendoza v. Ad Astra*
    *Recovery Servs. Inc.*, 2014 WL 47777, at *5 (C.D. Cal. Jan. 6, 2014); *Velazquez v. Sears,*
16  *Roebuck & Co.*, 2013 WL 4525581, at *7 (S.D. Cal. Aug. 26, 2013); *Hodsdon v. Bright House*
    *Networks, LLC*, 2013 WL 1091396, at *5 (E.D. Cal. Mar. 15, 2013); *King v. Hausfeld*, 2013 WL
17  1435288, at *8 (N.D. Cal. Apr. 9, 2013); *Alvarez v. T-Mobile USA, Inc.*, 2011 WL 6702424, at *6
    (E.D. Cal. Dec. 21, 2011); *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1002-3 (N.D. Cal.
18  Sept. 23, 2011).

19  In any event, *Gentry* is inapposite.  The arbitration agreement in that case was "not entirely free
    from procedural unconscionability" because the employer provided its employee with a dispute
20  resolution handbook that "was markedly one-sided" in the way it portrayed arbitration—the
    handbook "touted the virtues of arbitration" under headings like "WHY ARBITRATION IS
21  RIGHT FOR YOU AND CIRCUIT CITY," yet failed to mention "significant disadvantages" of
    the arbitration agreement at issue.  *Gentry*, 42 Cal.4th at 470-72.  And because the employer
22  made it "unmistakably clear that [it] preferred that the employee participate in the arbitration
    program," the employer was in a unique "position to pressure employees to choose its favored
23  option."  *Id.* at 472 & 472 n.10; *see also id.* at 472 (there was "no doubt about [the employer's]
    preference" for arbitration").  By contrast, Uber and Rasier did not "tout[] the virtues of
24  arbitration" or make it "unmistakably clear that [they] preferred" arbitration, nor did they
    "pressure [drivers] to choose [arbitration]."  *Id.* at 470, 472.  To the contrary, Uber and Rasier
25  advised drivers that "[a]rbitration [was] not a mandatory condition of [their] contractual
    relationship with Uber" and "[i]f [drivers] [did] not want to be subject to [the] Arbitration
26  Provision, [they] may opt out . . . ."  *See supra* § III.B.1.b.  Thus, *Gentry* is inapplicable.

27  [29] February 2013 Service Agreement at 14-15, § vii; July 2013 Licensing Agreement § 14.3.v.iii;
    August 2013 Service Agreement at 14, § vii; October 2013 Service Agreement at 14, § vii.

28

(1) arbitration was "not a mandatory condition of [their] contractual relationship"; (2) drivers would "not be subject to retaliation if [they] … opt[ed] out" of the Arbitration Provision; and (3) drivers "ha[d] the right to consult with counsel" concerning the Arbitration Provision.  (*Id.*)  Absent Class Members could review their Licensing Agreements at any time through the Driver Portal, and had 30 days to decide whether to opt out of the Arbitration Provision altogether.[30]  (*Id.*)  And, in fact, hundreds of drivers *did* opt out.  (Colman Decl. ¶ 11; ECF No. 342 at 15.)

The Absent Class Members thus had a choice—to opt out of the Arbitration Provision or not—and whatever they chose, they could continue to have access to the Uber application for lead generation.  Indeed, the named plaintiffs in this case are examples of the many individuals who did just that.  The Absent Class Members declined to do so, and must now abide by the Arbitration Provision.  *See Johnmohammadi v. Bloomingdales, Inc.*, 755 F.3d 1072, 1072 (9th Cir. 2014); *Kilgore*, 673 F.3d at 952; *Ahmed*, 283 F.3d at 1199-1200; *Najd*, 294 F.3d at 1108; *Rosas v. Macy's Inc.*, No. CV11–7318 PSG(PLAx), 2012 WL 3656274, at *6 (C.D. Cal. Aug. 24, 2012).

### (2)     The Arbitration Provision Is Not Substantively Unconscionable

Even if Absent Class Members were able to establish that the Arbitration Provision is procedurally unconscionable (they cannot), they would not be able to show that the Arbitration Provision is substantively unconscionable.  *See Najd*, 294 F.3d at 1108 ("Under California law, an agreement is unconscionable only if it is [both] procedurally and substantively unconscionable.").

***First***, the Arbitration Provision is not substantively unconscionable merely because it contains a confidentiality provision, which states as follows:  "Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content,

---

[30] Drivers could opt out via overnight mail or hand delivery, which are reliable means of preserving "documentary corroboration of a class member's efforts to opt out" while imposing only "minimal cost and effort."  *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 1048073, at *1, *5 (S.D.N.Y. May 5, 2005); *accord, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009) (rejecting argument that service of objections to a class settlement by "certified mail, overnight mail, or by hand" was too "burdensome" for class members).  As the California Supreme Court made clear in *Sanchez*, imposition of a *special* opt-out procedure in the arbitration context is contrary to California law and preempted by the FAA.  *See Sanchez*, 2015 WL 4605381 at *7.

Gibson, Dunn & Crutcher LLP

or results of any arbitration hereunder without the prior written consent of all Parties." (2013 Licensing Agreement § 14.3.vii; s*ee Davis v. O'Melveny & Myers*, 485 F. 3d 1066, 1079 (9th Cir. 2007) *overruled on other grounds by Kilgore*, 673 F.3d at 960.)  In fact, numerous courts have upheld the validity of arbitration agreements with confidentiality provisions *underline: identical* or *virtually identical* to the language found in the Arbitration Provision.  *See, e.g.*, *Velazquez v. Sears*, NO. 13cv680-WQH-DHB, 2013 U.S. District LEXIS 121400, at *13-15 (S.D. Cal. Aug. 26, 2013) (no substantive unconscionability in arbitration agreement with confidentiality provision identical to the one contained in the Arbitration Provision); *Andrade v. P.F. Chang's China Bistro, Inc.*, No. 12CV2724 JLS JMA, 2013 WL 5472589, at *9 (S.D. Cal. Aug. 9, 2013) (no substantive unconscionability where contract stated that, "[e]xcept as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder with the prior written consent of both parties"); *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F.Supp.2d 831, 847 (N.D. Cal. May 7, 2012) (same); *Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704, 714 (2011) (no substantive unconscionability where contract stated that, "[e]xcept as may be required by law, no party or arbitrator(s) may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties").  Furthermore, as this Court recognized in its order in *Mohamed*, an en banc panel of the Ninth Circuit recently held that enforceability of a confidentiality clause is a "matter distinct from the enforceability of [an] arbitration clause." *Kilgore*, 718 F.3d at 1058-59 n.9.

**Second**, the Arbitration Provision in the July 2013 Licensing Agreement is not substantively unconscionable based on any lack of "mutuality."  (*See* July 2013 Licensing Agreement § 14.2.)[31] Mutual carve-outs for intellectual property rights—like those at issue here—are not substantively unconscionable as a matter of law.  *See, e.g., Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, *17 (N.D. Cal. June 25, 2014); *see also Farrow v. Fujitsu Am., Inc.*, 37 F. Supp. 3d 1115, 1124 (N.D. Cal. 2014) (rejecting employee's claim that an arbitration agreement was unconscionable even though it

---

[31]  The February 2013, August 2013, and October 2013 Service Agreements do not include a carve-out for intellectual property rights.

"exclude[d] trade secret misappropriation claims form arbitration" because "[m]utuality . . . does not require an exactly even exchange of identical rights and obligations").[32]

Moreover, in addition to carving out intellectual property claims, the Agreements also carve out claims that are far more likely to be asserted *against* Uber, such as claims for employee benefits under ERISA, workers compensation claims, state disability insurance claims, and unemployment insurance benefit claims, which *only* employees would assert.  (*See* July 2013 Licensing Agreement § 14.3(i)-(ii).)  Further, the Arbitration Agreement also *covers* claims more likely to be brought by Uber, such as claims for trade secrets, unfair competition, and "claims arising under the Uniform Trade Secrets Act."  (*Id.*)

Courts—including the California Supreme Court's recent decision in *Sanchez*—have recognized that such *mutual* carve-outs are not unfairly one-sided and do not create substantive unconscionability.  *See, e.g.*, *Sanchez*, 353 P.3d at 756 (finding no substantive unconscionability in an arbitration agreement that included a carve out that favored defendant because another carve out in the agreement favored plaintiff); *id.* ("[A]lthough this remedy is favorable to the drafting party, the contract provision that preserves the ability of the parties to go to small claims court likely favors the car buyer."); *Farrow*, 37 F. Supp. 3d at 1124.  The July 2013 Licensing Agreement is thus sufficiently mutual to satisfy the low threshold of a "modicum of bilaterality," and it certainly does not "shock[] the conscience."  *Ruhe v. Masimo Corp.*, 2011 WL 4442790, at *4 (C.D. Cal. Sept. 16, 2011) (carve-out for IP claims "favor[ed] employer" but did not "create sufficient inequity . . . to 'shock the conscience'").[33]  And even if the IP carve-out were objectionable, the Court should simply

---

[32]  Intellectual property carve-outs such as this one are not unconscionable because they serve a host of legitimate business reasons.  *Armendariz*, 24 Cal. 4th at 117 (it is not "unfairly one-sided" for an employer "to impose arbitration on the employee" given "some reasonable justification" based on "business realities").  For example, a ruling from the Federal Circuit on the validity of a patent "can be a considerable asset for the patent holder in future licensing, enforcement and other commercial transactions."  Anthony S. Volpe and Linda X. Shi, *What to Consider Before Agreeing to an IP Arbitration*, The Legal Intelligencer, Vol. 243 No. 35, p. 2 (Feb. 22, 2011).  And since arbitration proceedings only bind the actual parties to an arbitration and do not permit joinder of third parties, arbitration would frustrate any attempt to prosecute contributory or induced infringement of IP rights by third parties.  *Id.* at 2.

[33]  *Accord Ulbrich*, 887 F. Supp. 2d at 934; *Saincome v. Truly Nolen*, 2011 WL 3420604, at *7–8 (S.D. Cal. Aug. 3, 2011).

1  sever it from the agreement to enforce the intent of the parties to arbitrate their agreements and

2  effectuate the strong policy interests favoring arbitration, particularly since this provision is ancillary

3  to the purpose of the arbitration agreement and concerns an irrelevant issue.  *See supra* § III.B.1.b.

4        ***Third***, the Arbitration Provision is not substantively unconscionable merely because Section

5  12.1 of the July 2013 Licensing Agreement permits Uber to modify the terms and conditions of the

6  agreement, "effective upon publishing an updated version of [the] Agreement at

7  http://www.uber.com or on the [Uber] Software."  (July 2013 Licensing Agreement § 12.1).)[34]  The

8  Ninth Circuit, just months ago, expressly *rejected* the argument that a party's ability to unilaterally

9  modify an arbitration agreement renders it unconscionable.  *Ashbey v. Archstone Prop. Mgmt, Inc.*,

10  2015 WL 2193178, at *1 (9th Cir. May 12, 2015) ("[U]nilateral modification provisions . . . are not

11  substantively unconscionable because they are always subject to the limits 'imposed by the covenant

12  of good faith and fair dealing implied in every contract.'") (citation omitted).   And even before

13  *Ashbey*, "Ninth Circuit courts have a history of enforcing contracts containing change-in-terms

14  provisions."  *Ekin v. Amazon Servs., LLC*, No. C14–0244–JCC, 2014 WL 7741772, *4 (W.D. Wash.

15  Dec. 10, 2014); *Slaughter v. Stewart Enterprises, Inc.*, No. C 07-01157 MHP, 2007 WL 2255221,

16  *10 (N.D. Cal. Aug. 3, 2007); *Serpa*, 215 Cal. App. 4th at 708.   Moreover, California courts have

17  held that "the implied covenant of good faith and fair dealing limits the employer's authority to

18  unilaterally modify [an] arbitration agreement and saves that agreement from being illusory and thus

19  unconscionable."  *Serpa v. Cal. Sur. Invest., Inc.*, 215 Cal. App. 4th 695, 708 (Ct. App. 2013).  And

20  courts that have applied California law have repeatedly held that such unilateral modification

21  provisions are *not* substantively unconscionable for this very reason.[35]

24  [34]  The February 2013, August 2013, and October 2013 Service Agreements do not include this provision.

26  [35]  *See 24 Hours Fitness, Inc. v. Super. Ct.*, 66 Cal. App. 4th 1199, 1214 (Ct. App. 1998); *Serpa*, 215 Cal. App. 4th at 708; *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966 (Ct. App. 2015); *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 176 (Ct. App. 2015); *Peng v. First Rep. Bank*, 219 Cal. App. 4th 1462, 1474 (Ct. App. 2013); *Slaughter v. Stewart Enterprises, Inc.*, 2007 WL 2255221, *10 (N.D. Cal. Aug. 3, 2007).

Gibson, Dunn &
Crutcher LLP

*Fourth,* the PAGA waiver contained in the arbitration agreements is not substantively unconscionable under the California Supreme Court's decision in *Iskanian v. CLS Transportation, LLC*, 59 Cal. 4th 348 (2014), because—as numerous district courts have recognized—the *Iskanian* decision is preempted by the Federal Arbitration Act.[36]  *See Concepcion*, 131 S. Ct. at 1747 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straight forward: The conflicting rule is displaced by the FAA."); *see also id.* at 1753 ("States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.").  In any event, *Iskanian*—by its own terms—applies only when a PAGA waiver contained within an arbitration agreement is a "condition of employment"—a fact not present here.  *Iskanian*, 59 Cal. 4th at 360; *see supra* § III.B.2.a.1.  Even if *Iskanian* is not preempted by the FAA, the Court should simply sever the PAGA waiver in accordance with California's "strong legislative and judicial preference . . . to sever [an] offending term and enforce the balance of the [arbitration] agreement," *Roman*, 172 Cal. App. 4th at 1477, rather than invalidating the Arbitration Provision in its entirety.

For all of these reasons, and those discussed more fully above, *see supra* § III.B.1.b, the Arbitration Provision is not substantively unconscionable.

### b) The Absent Class Members' Claims Are Covered By The Arbitration Provision

The second gateway issue is whether the Arbitration Provision covers the dispute between the parties.  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 280 (2002); *Moses H. Cone*, 460 U.S. at 24-25. Here, there can be no reasonable dispute that the Absent Class Members agreed to arbitrate the sole claim that has been certified by the Court for class treatment against Uber, namely their claim that Uber violated California's Unfair Competition Law by failing to disburse gratuities under Section 351 of the Labor Code.  *See* ECF No. 342 at 67.

---

[36]  *See, e.g.*, *Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070, 1083–85 (E.D. Cal. 2014); *Mill*, 2014 WL 6706017, at *6–7; *Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW, 2014 WL 5088240, at *12–13 (C.D. Cal. Oct. 7, 2014); *Fardig v. Hobby Lobby Stores, Inc.*, No. SACV 14-00561 JVS(ANx), 2014 WL 4782618, at *4 (C.D. Cal. Aug. 11, 2014); *see also Marenco v. DirecTV LLC*, 183 Cal. Rptr. 3d 587, 597 n.5 (Cal. Ct. App. 2015).

This claim is undoubtedly subject to the Arbitration Provision, which applies, "without limitation, to disputes arising out of or related to … [Absent Class Members'] relationship with [Uber/the Company] … [and] disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, [and] termination … and claims arising under the … Fair Labor Standards Act … and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims."  (February 2013 Service Agreement at 11, § i; August 2013 Service Agreement at 11, § i; October 2013 Service Agreement at 11, § i; July 2013 Licensing Agreement § 14.3.i.)  Because there is a valid agreement to arbitrate and the dispute falls within the scope of the agreement, the FAA requires that the Court order the parties to arbitrate the dispute. See 9 U.S.C. § 4; *Bencharsky v. Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872, 876 (N.D. Cal. 2008).

## C. The Absent Class Members' Class Claims Cannot Proceed

In the event that the Arbitration Provision is found to be enforceable, the Absent Class Members' claims must be dismissed and arbitrated solely on an individual basis.  Indeed, it is well settled in California that class action waivers are enforceable.  *Johnmohammadi*, 755 F. 3d at 1074; *accord Iskanian*, 59 Cal. 4th at 359-60.  Here, the Arbitration Provision contains a valid class action waiver:  "You and [Uber/the Company] agree to resolve any dispute in arbitration on an individual basis."[37]  Accordingly, the Absent Class Members may not proceed with their class action claim, whether in front of this Court or the arbitrator.

## IV. CONCLUSION

By executing the Arbitration Provision and declining to exercise their right to opt out of arbitration, the Absent Class Members have agreed to have an arbitrator adjudicate the claims that they now seek to assert against Uber, as well as all threshold issues related to the validity and enforceability of the Arbitration Provision itself.  As such, the Court should grant Uber's motion to compel arbitration and dismiss Absent Class Members' claims.

[37]  February 2013 Service Agreement at 13, § v; July 2013 Licensing Agreement § 14.3.v; August 2013 Service Agreement at 13, § v; October 2013 Service Agreement at 13, § v.

Gibson, Dunn & Crutcher LLP

25

Dated: September 10, 2015

THEODORE J. BOUTROUS JR.
GIBSON, DUNN & CRUTCHER LLP


By: _____/s/_____
              Theodore J. Boutrous Jr.

Attorneys for UBER TECHNOLOGIES, INC.

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document.



By: _____/s/_____
              Brandon J. Stoker