SHANNON LISS-RIORDAN, *pro hac vice*
(sliss@llrlaw.com)
ADELAIDE PAGANO, *pro hac vice*
(apagano@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:    (617) 994-5800
Facsimile:    (617) 994-5801

MATTHEW CARLSON (SBN 273242)
(mcarlson@carlsonlegalservices.com)
Carlson Legal Services
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone:    (415) 817-1470

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

DOUGLAS O'CONNOR, THOMAS COLOPY, MATTHEW MANAHAN, and ELIE GURFINKEL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC,

Defendant.

Case No. CV  13-3826-EMC

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AS TO CERTAIN ABSENT CLASS MEMBERS**

Judge: Hon. Edward M. Chen

Date: October 21, 2015
Time: 9:30 AM
Courtroom: 5

i

1

2

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................1

II.   BACKGROUND ...................................................................1

III.  PLAINTIFFS DID NOT ASSENT TO UBER'S ARBITRATION AGREEMENT
      AND NO AGREEMENT TO ARBITRATE WAS EVER FORMED..............................3

IV.   UBER'S DELEGATION CLAUSE IS NOT "CLEAR AND UNMISTAKABLE"
      AND, IN ANY CASE, HAS ALREADY BEEN FOUND TO BE
      UNCONSCIONABLE AND UNENFORCEABLE BY THIS COURT..............................5

      A. THE DELEGATION CLAUSE IS PROCEDURALLY UNCONSCIONABLE...........9

      B.  THE DELEGATION CLAUSE IS SUBSTANTIVELY
          UNCONSCIONABLE. ......................................................11

V.    UBER'S 2013 ARBITRATION AGREEMENT IS UNCONSCIONABLE AND
      UNENFORCEABLE. ..........................................................16

      A.  THE AGREEMENT IS PROCEDURALLY UNCONSCIONABLE. .................16

      B.  THE AGREEMENT IS SUBSTANTIVELY UNCONSCIONABLE. .................16

             i. Cost Splitting ...................................................18

             ii. Confidentiality Provision......................................19

             iii.  Intellectual Property Carve Out Creates a Lack of Mutuality ........20

             iv.   Unilateral Modification......................................20

             v.    PAGA Waiver...............................................21

V.    UBER'S AGREEMENT IS UNENFORCEABLE FOR THE ADDITIONAL
      REASON THAT IT VIOLATES DRIVERS' RIGHTS UNDER THE NLRA TO
      ENGAGE IN CONCERTED ACTIVITY FOR MUTUAL AID AND
      PROTECTION...............................................................22

CONCLUSION.................................................................25

ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

AccentCare Inc. v. Echevarria
  2015 WL 3465761 (N.D. Cal. June 1, 2015) ............................................................ 5

Admiral Ins. Co. v. Kay Auto. Distributors, Inc.
  2015 WL 400634 (C.D. Cal. Jan. 29, 2015) ............................................................ 8

Ajamian v. CantorCO2e, L.P.
  203 Cal. App. 4th 771 (2012) ................................................................ 5, 6, 8

Ajemian v. Yahoo!, Inc.
  83 Mass. App. Ct. 565 (2013) ................................................................ 4

Ambler v. BT Americas Inc.
  2013 WL 4427205 (N.D. Cal. Aug. 15, 2013) ........................................................ 18

American Express Co. v. Italian Colors Rest.
  133 S. Ct. 2304 (2013) ........................................................................ 25

Andrade v. P.F. Chang's China Bistro, Inc.
  2013 WL 5472589 (S.D. Cal. Aug. 9, 2013) ........................................................ 20

Armendariz v. Found. Health Psychcare Servs., Inc.
  24 Cal. 4th 83 (2000) ................................................................ 12, 13, 14, 18

AT&T Mobility LLC v. Concepcion
  563 U.S. 333 (2011) ........................................................................ 25

Baker v.Osborne Development Corp.
  159 Cal. App. 4th 884 (2008) ................................................................ 8

Booker v. Robert Half Int'l, Inc.,
  413 F.3d 77 (D.C. Cir. 2005) ................................................................ 17

Brady v. NFL
  644 F.3d 661 (8th Cir. 2011) ................................................................ 22

Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London
  2014 WL 116442 (N.D. Cal. Jan. 13, 2014) .......................................................... 9

Campbell v. Gen. Dynamics Gov't Sys. Corp.,
  407 F.3d 546 (1st Cir. 2005) ................................................................ 4

Chavarria v. Ralphs Grocery Co.
  733 F.3d 916 (9th Cir. 2013) ................................................................ 18, 20

iii

Cobarruviaz v. Maplebear, Inc.d/b/a Instacart
    Civ. A. No. 15-00697-EMC.............................................................................. 13, 14, 15

Davis v. O'Melveny & Myers
    485 F.3d 1066 (9th Cir. 2007) ...................................................................... 19, 20

Delock v. Securitas Sec. Servs. USA, Inc.
    883 F.Supp.2d 784 (E.D.Ark.2012).................................................................. 23

Eastex Inc. v. NLRB
    437 U.S. 556, 566 (1978)................................................................................. 22

First Options of Chicago, Inc. v. Kaplan
    514 U.S. 938 (1995)........................................................................................... 5

Fitz v. NCR Corp.
    118 Cal. App. 4th 702, 724 (2004) .................................................................. 20

Flores v. Transamerica HomeFirst, Inc.
    93 Cal. App. 4th 846 (2001) .............................................................................. 9

Gentry v. Superior Court
    42 Cal. 4th 443 (2007) .................................................................................... 25

Grant v. Convergys Corp.
    2013 WL 781898 (E.D. Mo. Mar. 1, 2013) ...................................................... 23

Grosvenor v. Qwest Commc'ns Int'l, Inc.,
    2010 WL 3906253 (D. Colo. Sept. 30, 2010)..................................................... 3

Guifu Li v. A Perfect Day Franchise, Inc.
    270 F.R.D. 509 (N.D. Cal. 2010)..................................................................... 25

Guzman v. VLM, Inc.
    2008 WL 597186 (E.D.N.Y. Mar. 2, 2008) ..................................................... 25

Harco Trucking, LLC
    344 NLRB 478 (2005) ..................................................................................... 22

Harris v. comScore, Inc.,
    825 F. Supp. 2d 924 (N.D. Ill. 2011) ................................................................. 3

Hartley v. Superior Court
    196 Cal. App. 4th 1249 (2011) .......................................................................... 8

Herrington v. Waterstone Mortg. Corp.
    2012 WL 1242318 (W.D.Wis. Mar. 16, 2012)................................................. 23

iv

<u>Hines v. Overstock.com, Inc.</u>,
   668 F. Supp. 2d 362 (E.D.N.Y. 2009) .................................................................. 3

<u>Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.</u>
   194 Cal. App. 4th 704 (2011) ........................................................................ 19

<u>Hwang v. J.P. Morgan Chase Bank, N.A.</u>
   2012 WL 3862338 (C.D. Cal. Aug. 16, 2012) ........................................................ 18

<u>In re 127 Restaurant Corp.</u>
   331 NLRB 269 (1996) .................................................................................. 22

<u>In Re D. R. Horton, Inc.</u>
   357 NLRB No. 184 (Jan. 3, 2012) .................................................................... 23

<u>Ingle v. Circuit City Stores, Inc.</u>
   328 F.3d 1165 (9th Cir. 2003) ....................................................................... 20

<u>Jones-Mixon v. Bloomingdale's, Inc.</u>
   2014 WL 2736020 (N.D. Cal. June 11, 2014) ......................................................... 9

<u>Kilgore v. KeyBank, Nat. Ass'n</u>
   718 F.3d 1052 (9th Cir. 2013) ....................................................................... 19

<u>Kinkel v. Cingular Wireless LLC</u>
   223 Ill. 2d 1 (2006) ................................................................................. 19

<u>Laughlin v. VMware, Inc.</u>
   2012 WL 298230 (N.D. Cal. Feb. 1, 2012) ........................................................... 18

<u>Lavitman v. Uber Technologies, Inc.</u>
   2015 WL 728187 (Mass. Super. Jan. 26, 2015) ....................................................... 4

<u>Lewis v. Epic Sys. Corp.</u>
   2015 WL 5330300 (W.D. Wis. Sept. 11, 2015) ...................................................... 24

<u>Lima v. Gateway, Inc.</u>
   886 F. Supp. 2d 1170 (C.D. Cal. 2012) .............................................................. 19

<u>Macias v. Excel Building Services LLC</u>
   767 F. Supp. 2d 1002 (N.D. Cal. 2011) .............................................................. 20

<u>Madri Restaurant</u>
   331 NLRB 269 (2000) .................................................................................. 22

v

Merkin v. Vonage Am. Inc.
  2014 WL 457942 (C.D. Cal. Feb. 3, 2014) ........................................................ 9, 17

Meyers Indus.
  281 NLRB 882 (1986) ........................................................ 24

Mohamed v. Uber Technologies, Inc.
  2015 WL 3749716 (N.D. Cal. June 9, 2015) ........................................................ passim

Morrison v. Circuit City Stores, Inc.
  317 F.3d 646 (6th Cir. 2003) ........................................................ 15

Murphy Oil USA, Inc.
  361 NLRB No. 72 (Oct. 28, 2014) ........................................................ 23

Nagrampa v. MailCoups, Inc.
  469 F.3d 1257 (9th Cir. 2006) ........................................................ 9, 20

Newton v. Am. Debt Servs., Inc.
  549 F. App'x 692 (9th Cir. 2013) ........................................................ 17

Nino v. Jewelry Exch., Inc.
  609 F.3d 191 (3d Cir. 2010) ........................................................ 17

O'Connor v. Uber Technologies, Inc.
  2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ........................................................ 2

Overka v. American Airlines, Inc.
  265 F.R.D. 14 (D. Mass. 2010) ........................................................ 24, 25

Owen v. Bristol Care, Inc.
  702 F.3d 1050 (8th Cir.2013) ........................................................ 23

Owner-Operator Indep. Drivers Ass'n v. C.R. England, Inc.
  325 F. Supp. 2d 1252 (D. Utah 2004) ........................................................ 15

Parada v. Superior Court
  176 Cal. App. 4th 1554 (2009) ........................................................ 8

Peleg v. Neiman Marcus Grp., Inc.
  204 Cal. App. 4th 1425 (2012). ........................................................ 7

Pokorny v. Quixtar, Inc.
  601 F.3d 987 (9th Cir. 2010) ........................................................ 19

Richards v. Ernst & Young, LLP
  744 F.3d 1072 (9th Cir. 2013) ........................................................ 24

vi

Sanchez v. Valencia Holding Co., LLC
    2015 WL 4605381 (Cal. Aug. 3, 2015) .................................................................. 19

Schnuerle v. Insight Commc'ns Co., L.P.
    376 S.W.3d 561 (Ky. 2012) ................................................................................... 19

Shankle v. B-G Maint. Mgmt. of Colorado, Inc.
    163 F.3d 1230 (10th Cir. 1999) ............................................................................. 15

Sjoblom v. Charter Communications, LLC,
    2007 WL 5314916 (W.D. Wis. Dec. 26, 2007) ...................................................... 25

Skirchak v. Dynamics Research Corp.,
    432 F. Supp. 2d 175 (D. Mass. 2006) ...................................................................... 4

Sonic-Calabasas A, Inc. v. Moreno
    57 Cal. 4th 1109 (2013) ................................................................................... 13, 14

Spandsco Oil & Royalty Co.
    42 NLRB 942 (1942) ............................................................................................. 23

Street Hotel Assoc.
    321 NLRB 624 (2000) ........................................................................................... 22

Sutherland v. Ernst & Young, LLP
    726 F.3d 290 (2d Cir. 2013) .................................................................................. 23

Syndicate 1245 at Lloyd's v. Walnut Advisory Corp.,
    2011 WL 5825979 (D.N.J. Nov. 16, 2011) .............................................................. 3

Thomas v. Meyers Associates, L.P.
    39 Misc. 3d 1217(A) (N.Y. Sup. Ct. 2013) ........................................................... 24

Tiri v. Lucky Chances, Inc.
    226 Cal. App. 4th 231 (2014) .................................................................................. 8

Tompkins v. 23andMe, Inc.
    2014 WL 2903752 (N.D. Cal. June 25, 2014)....................................................... 4, 5

Uber Technologies, Inc., et al. v. Berwick
    CGC-15-546378 (Sept. 21, 2015)......................................................................... 18

United Parcel Service
    252 NLRB 1015 (1980) ......................................................................................... 22

Van Voorhies v. Land/home Fin. Servs.,
    2010 WL 3961297 (Conn. Super. Ct. Sept. 3, 2010)............................................. 18

vii

Velazquez v. Sears, 2013 U.S. Dist. LEXIS 121400 (S.D. Cal. 2013).........................................19

Yucesoy v. Uber Technologies, Inc.
    3:15-cv-0262 (N.D. Cal).........................................................................................3, 4, 13

**Statutes**
National Labor Relations Act
    29 U.S.C. §158(a)(1)........................................................................................................22

**Other Authorities**

Ronald J. Mann & Travis Siebeneicher, Just One Click: The Reality of Internet Retail
    Contracting, 108 Colum. L. Rev. 984, 995 (2008) ...................................................3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

On September 1, 2015, this Court granted in part Plaintiffs' Motion for Class Certification in this case, certifying a class that includes drivers who would be bound by Uber's 2013 Arbitration Agreement, but not those drivers who would be bound by the later 2014 Agreement, which contained revised court-mandated notice and opt-out procedures. See Dkt. 342 at 67.  In determining that drivers who are bound by the earlier 2013 Agreement could be included in the class, the Court explained that the 2013 agreements "are unconscionable and unenforceable regardless of the individual driver's economic circumstances or any other possible differences between signatories" and that "Uber's likelihood of success on appeal of this Court's [earlier] determination [in Mohamed v. Uber Technologies, Inc., 2015 WL 3749716 (N.D. Cal. June 9, 2015)] . . . is exceedingly low." Id. at 63.  Uber now moves to compel arbitration of those absent class members who are bound by its unconscionable 2013 Agreements, notwithstanding the Court's repeated determination that this agreement is unenforceable. See Dkt. 346.  Plaintiffs submit that the outcome of Uber's motion is clearly dictated by this Court's previous decision in Mohamed and that none of the arguments offered by Uber to the contrary is persuasive.  Indeed, Uber essentially concedes that this motion is purely for purposes of "preserv[ing] these arguments" for appeal. Id. at 2.  Because this Court's decision in Mohamed controls, Uber's motion to compel arbitration of absent class members should be denied.

## II.     BACKGROUND

This case was filed on August 16, 2013, on behalf of individuals who have worked as drivers for Defendant Uber Technologies, Inc.  In 2013, Uber disseminated to its drivers a revised contract that drivers were required to accept if they wanted to continue driving for Uber. The agreement was e-mailed to Uber's drivers, and drivers were instructed that they could accept the terms of the agreement by swiping a button on their smartphone. See Dkt. 15-5. Buried at the end of this 2013 Agreement, beginning on page 11, is an inconspicuous arbitration provision.

The Court has confronted the enforceability of this arbitration twice before.  First, earlier

1

in this litigation, the Court declined to rule on the enforceability of the 2013 Agreement,[1] but found that the agreement constituted an improper class communication pursuant to Fed. R. Civ. P. 23(d), and ordered that Uber issue corrective notice and revise its opt-out procedure.  Later, in the related case, Mohamed v. Uber Technologies, Inc., 2015 WL 3749716 (N.D. Cal. June 9, 2015), the Court directly confronted the enforceability of the 2013 agreement.  In that decision, the Court first analyzed the agreement's delegation clause and found both that it was not clear and unmistakable and that in any case, the delegation clause was procedurally and substantively unconscionable. Id. at *8-16. Having concluded that the enforceability of the agreement was therefore an issue for the Court to decide, this Court analyzed the 2013 Agreement and concluded that it was both procedurally and substantively unconscionable and was so "permeated with unconscionability" as to be unenforceable. Id.,*20-31.[2]

On September 1, 2015, this Court granted in part Plaintiffs' Motion for Class Certification in this case (Dkt. 276) and certified the following class:

> All UberBlack, UberX, and UberSUV drivers who have driven for Uber in the state of California at any time since August 16, 2009, and who (1) signed up to drive directly with Uber or an Uber subsidiary under their individual name, and (2) are/were paid by Uber or an Uber subsidiary directly and in their individual name, and (3) did not electronically accept any contract with Uber or one of Uber's subsidiaries which contains the notice and opt-out provisions previously ordered by this Court (including those contracts listed in the Appendix to this Order), *unless* the driver timely opted-out of that contract's arbitration agreement.

Dkt. 346 at 76.  In certifying this class, the Court decided that while the unconscionability of Uber's 2014 Agreement might vary depending on the individual driver, Uber's 2013 agreements "are unconscionable and unenforceable regardless of the individual driver's economic

---

[1]     See O'Connor v. Uber Technologies, Inc., 2013 WL 6407583, *2 (N.D. Cal. Dec. 6, 2013) reconsideration denied, 2014 WL 1760314 (N.D. Cal. May 2, 2014) ("The Court declines to rule on the unconscionability of the arbitration provision as the issue is not properly before the Court at this juncture").

[2]     The Court also analyzed Uber's 2014 Agreements, which contained the Court's revised notice and opt-out procedures and concluded that this Agreement presented a "close question" but was likewise unconscionable and unenforceable. Id., *20, 36.

2

circumstances or any other possible differences between signatories." Dkt. 342 at 63.  Because it

concluded that these agreements were uniformly unenforceable, the Court concluded that drivers

bound by Uber's 2013 agreements were properly included in the class.

## III. PLAINTIFFS DID NOT ASSENT TO UBER'S ARBITRATION AGREEMENT AND NO AGREEMENT TO ARBITRATE WAS EVER FORMED.

As a preliminary issue, Plaintiffs note that the absent class members in question did not

assent to Uber's arbitration agreement in the first place because no agreement to arbitrate was

ever formed.[3]  Scholars have noted that online agreements such as Uber's 2013 Agreement at

issue here, typically exist on a "continuum" based on "the level of assent required" and have

noted that an agreement which requires "[s]crolling through contract terms" is more likely to be

enforced than one which merely contains a "button that must be affirmatively checked" but does

not display the contract terms on the screen which the employee actually viewed. See Ronald J.

Mann & Travis Siebeneicher, Just One Click: The Reality of Internet Retail Contracting, 108

Colum. L. Rev. 984, 995 (2008).[4]  Likewise, where employers fail to track whether a given

---

[3]      Plaintiffs recognize that the Court addressed the issue of whether a valid agreement to arbitrate was even formed in the first place in Mohamed and that it reaffirmed its view at oral argument on Defendants' Motion to Compel Arbitration in the related case, Yucesoy v. Uber Technologies, Inc., 3:15-cv-0262 (N.D. Cal), at the hearing on August 6, 2015. See Yucesoy, Dkt. 95; Mohamed v. Uber Technologies, Inc., 2015 WL 3749716, at *5-7 (N.D. Cal. June 9, 2015).  Plaintiffs nonetheless respectfully urge the Court to look again at this issue and consider that the means by which the agreement was presented to drivers on their phones did not allow them to meaningfully accept, or even review, the agreement.

[4]      See Grosvenor v. Qwest Commc'ns Int'l, Inc., 2010 WL 3906253, *2 (D. Colo. Sept. 30, 2010) (noting that "[a]s a rule, a clickwrap is valid where the terms of the agreement appear on the same screen with the button the user must click to accept the terms and proceed with the installation of the product"); Syndicate 1245 at Lloyd's v. Walnut Advisory Corp., 2011 WL 5825979, *4 (D.N.J. Nov. 16, 2011) (noting that "[g]enerally, courts have enforced . . .clauses in clickwrap agreements, [because] the clickwrap agreement, which collects all of the terms of the agreement in a single dialog box and then requires the user to affirmatively accept the agreement before proceeding, *makes every term equally visible*.") (emphasis added); Harris v. comScore, Inc., 825 F. Supp. 2d 924, 927 (N.D. Ill. 2011) (acknowledging "the possibility that a click-through agreement is not enforceable if its terms are not reasonably apparent to the user" and refusing to enforce a forum selection clause where "the location of the license agreement was not readily apparent"); Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), aff'd, 380 F. App'x 22 (2d Cir. 2010) (finding no reasonable communication and acceptance where "the website did not prompt her to review the Terms and Conditions and [] the link to the (continued on next page)

3

employee actually clicked and viewed the agreement, courts are less likely to enforce the

agreement. Here, Uber's failure to display the terms of its agreement on the same screen that the

drivers viewed in order to accept the agreement, or to determine or track whether drivers actually

did in fact view the agreement, cuts against finding an enforceable contract was formed.[5]

At the Yucesoy hearing on Defendants' Motion to Compel Arbitration, the Court

acknowledged that "there is a spectrum" between those agreements "where the text is actually on

the same page," and those where the text is "one click away, or in some cases two clicks away,

[or] in some cases more than two clicks away…[etc.]" See Yucesoy, Dkt. 95 at 6:1-8.  The Court

ultimately concluded that this "is a one-click-away case" and that the agreement was not "so

remote and difficult to access as to vitiate assent." Id. at 6:9-13. The Court cited Judge Koh's

decision in Tompkins v. 23andMe, Inc., 2014 WL 2903752 (N.D. Cal. June 25, 2014), and noted

that the case, which upheld a "one-click-away" agreement, was "very similar." Dkt. 95 at 6:9-14.

---

(Footnote continued from previous page)

Terms and Conditions was not prominently displayed"). See also Ajemian v. Yahoo!, Inc., 83 Mass. App. Ct. 565, 575 (2013) (where "the user was expected to follow a link to see the terms of the agreement . . . the record would need to contain information concerning the language that was used to notify users that the terms of their arrangement with [Defendant] could be found by following the link, how prominently displayed the link was, and any other information that would bear on the reasonableness of communicating the [terms of service] via a link"); Lavitman v. Uber Technologies, Inc., 2015 WL 728187, *3 (Mass. Super. Jan. 26, 2015) (noting that where Defendant Uber sought to enforce an online contract "which the other party allegedly entered into by clicking something on an electronic screen . . . [it] has the burden of establishing, on undisputed facts, that the provisions of the contract were reasonably communicated and accepted" by the party to be bound…") (internal citation omitted).

[5]     See Skirchak v. Dynamics Research Corp., 432 F. Supp. 2d 175, 180 (D. Mass. 2006), aff'd 508 F.3d 49 (1st Cir. 2007) (refusing to enforce provision of arbitration agreement where agreement was included in an attachment to an email sent out to employees, noting that defendant "did not track whether employees had opened the email about the [Dispute Resolution Program] and followed the link to the Program's website to view its contents" such that there was no evidence their employees had any actual knowledge of its contents); Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 548-49 (1st Cir. 2005) (noting that "[a]lthough General Dynamics set up a tracking log to monitor whether each of its employees opened the e-mail—the record indicates that the plaintiff opened the e-mail two minutes after it was sent—it did not take any steps to record whether its employees clicked on the embedded links to peruse either the brochure or the handbook" and therefore the company failed "to contradict the plaintiff's claim that he never read [it]").

However, in <u>Tompkins</u>, the agreement was presented on a computer screen, whereas here, the agreement was presented on a tiny iPhone screen when most drivers were about to go on-duty and start work.  Indeed, <u>Tompkins</u> states that "[c]ourts have enforced certain clickwrap and browsewrap agreements, ***depending on the nature of the parties, type of notice provided, and other factors***." <u>Id.</u> at *6 (emphasis added).  Here, all factors weigh against finding legal assent, as the parties were not presented with the text of the agreement unless they clicked on the hyperlink, they were only presented with the hyperlink as a pop-up notification on a tiny iPhone screen, and they were presented with the notification at a time when they were trying to log-in and start work, presumably in their car and in a hurry.  For all these reasons, Plaintiffs urge the Court to find that Uber's agreement was not clearly communicated to drivers so as to create meaningful assent.

## IV.  UBER'S DELEGATION CLAUSE IS NOT "CLEAR AND UNMISTAKABLE" AND, IN ANY CASE, HAS ALREADY BEEN FOUND TO BE UNCONSCIONABLE AND UNENFORCEABLE BY THIS COURT.

As this Court has already recognized in <u>Mohamed</u>, the Court has the authority to decide the enforceability of Uber's 2013 Agreement, because Uber's delegation clause does not meet the heightened standard required by the Supreme Court of clearly and unmistakably committing questions of arbitrability to the arbitrator.  And, in any event, it is unconscionable. "In contrast to matters of contract interpretation and arbitration procedure, questions of arbitrability are presumably determined by the court." <u>AccentCare Inc. v. Echevarria</u>, 2015 WL 3465761, *2 (N.D. Cal. June 1, 2015).  Thus, the Supreme Court has warned that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is *clear and unmistakable evidence* that they did so." <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995) (emphasis added). "The Supreme Court recognizes a heightened standard for an arbitrator to decide arbitrability issues." <u>Tompkins v. 23andMe, Inc.</u>, 2014 WL 2903752, *4 (N.D. Cal. June 25, 2014); <u>Ajamian v. CantorCO2e, L.P.</u>, 203 Cal. App. 4th 771, 781-82 (2012) (The "clear and unmistakable" test reflects a "heightened standard" of proof").  This is "because the question of

5

1    who would decide the unconscionability of an arbitration provision is not one that the parties

2    would likely focus upon in contracting, and the default expectancy is that the court would decide

3    the matter." Id. at 782. Here, the "heightened standard" has not been met, and the default

4    presumption that a court will decide the enforceability of the agreement should stand. Uber's

5    delegation clause states:

6           **Except as it otherwise provides, this Arbitration Provision is intended to apply to
7           the resolution of disputes that otherwise would be resolved in a court of law or
            before a forum other than arbitration. This Arbitration Provision requires all such
8           disputes to be resolved only by an arbitrator through final and binding arbitration
            and not by way of court or jury trial.** Such disputes include without limitation disputes
9           arising out of or relating to interpretation or application of this Arbitration Provision,
            including the enforceability, revocability or validity of the Arbitration Provision or any
10          portion of the Arbitration Provision.

11   Dkt. 347-1 at 11; Dkt 347-2 at § 14.3(i); Dkt. 347-4 at 11; Dkt. 347-5 at 11 (emphasis in

12

13   original).  Although this clause may appear to commit questions of arbitrability to an arbitrator,

14   when read in context with the remainder of the agreement, Uber has not clearly and

15   unmistakably delegated the gateway questions to an arbitrator.

16          For example, there is contradictory language suggesting that a court should determine the

17   validity of the agreement's class action waiver or PAGA waiver, creating clear ambiguity and

18   undercutting any notion that the delegation clause is "clear and unmistakable."  This conflicting

19   section of the Licensing Agreement states:

20          Notwithstanding any other clause contained in this Agreement, any claim that all or part
            of the Class Action Waiver, Collective Action Waiver or Private Attorney General
21          Waiver is invalid, unenforceable, unconscionable, void or voidable **may be determined
            only by a court of competent jurisdiction and not by an arbitrator**.
22

23   Dkt. 347-1 at 13; Dkt 347-2 at § 14.3(v)(c); Dkt. 347-4 at 13; Dkt. 347-5 at 13 (emphasis added).

24          This language provides that "[n]otwithstanding any other clause contained in this

25   Agreement," a court should decide the enforceability of these provisions.  One such "other

26   clause" is the delegation clause itself.  Thus, it seems apparent that "notwithstanding [the

27

28                                                    6

delegation] clause contained in this Agreement, any claim that all or part of the Class Action Waiver . . . or Private Attorney General Waiver is invalid, . . . may be determined only by a court of competent jurisdiction and not by an arbitrator." Id.[6]

This Court recognized the tension created by these contradictory and ambiguous clauses in Mohamed, in which the Court ultimately found the delegation clause unenforceable, noting that "the parties' intent to delegate threshold issues must be undeniably apparent from the text of the contract, and the text alone." 2015 WL 3749716, *11.  The Court explained:

> [T]he inconsistencies in the 2013 Agreement are particularly obvious. Most notably, the delegation clause in the contracts provides that "*without limitation*[,] disputes arising out of or relating to interpretation or application of this Arbitration Provision" shall be decided by an arbitrator. 2013 Agreement at § 14.3(i) (emphasis added). But the 2013 Agreement's arbitration provision later stipulates that "only a court of competent jurisdiction and not [] an arbitrator" may determine the validity of the arbitration provision's class, collective and representative action waivers. *See id.* at § 14.3(v)(c).

Id. at *10.

Plaintiffs submit that the Court's reasoning in Mohamed is conclusive on this question; the delegation clause in the parties' contract is not "clear and unmistakable" when the agreement as a whole is considered in its entirety.  Other courts have reached the same conclusion in considering delegation clauses that are contradicted by other language in the agreement, finding such agreements do not evince a clear and unmistakable intent to delegate the question to the

---

[6]    Likewise, there is contradictory language in some of the 2013 agreements, stating that "any disputes, actions, claims or causes of action arising out of or in connection with this Agreement" shall be subject to the "*exclusive* jurisdiction of the state and federal courts located in the City and County of San Francisco, California."  Dkt. 347-2 at § 14.1 (emphasis added).  This same provision, seemingly granting the courts exclusive jurisdiction over disputes arising out of the agreement, further notes that "[i]f any provision of this Agreement is held to be invalid or unenforceable, such provision shall be struck." Id.  "[T]he inconsistency between the Agreement's delegation and severability provisions indicates the parties did not clearly and unmistakably delegate enforceability questions to the arbitrator [because] [t]he delegation provision states that the arbitrator is to decide whether the Agreement is enforceable while the severability provision contemplates that a court has the same authority." Peleg v. Neiman Marcus Grp., Inc., 204 Cal. App. 4th 1425, 1444-45 (2012).

1  arbitrator.[7]  Moreover, any "ambiguities in a form contract that cannot otherwise be resolved are

2  resolved against the drafter," – in this case, Uber. <u>Admiral Ins. Co. v. Kay Auto. Distributors,</u>

3  <u>Inc.</u>, 2015 WL 400634, *2 (C.D. Cal. Jan. 29, 2015).  Thus, it is up to the Court to determine the

4  enforceability of the arbitration clause.[8]

5          However, even if the delegation clause in the parties' agreement was "clear and

6  unmistakable" (which it is not), the clause would still be unenforceable because it is procedurally

7  and substantively unconscionable. Even where a delegation clause is "clear and unmistakable," if

8  the delegation clause itself is also unconscionable, it is unenforceable. <u>See</u> <u>Tiri v. Lucky</u>

9  <u>Chances, Inc.</u>, 226 Cal. App. 4th 231, 244 (2014) (applying "state [un]conscionability principles

10  to examine whether Tiri sustained her burden of establishing that the delegation clause is

11  unconscionable"). With respect to Uber's 2013 agreement, this Court has already recognized that

12  the delegation clause is both procedurally and substantively unconscionable in its recent decision

13  in <u>Mohamed</u>. 2015 WL 3749716 at 12 ("In the alternative, the Court finds that the delegation

14  clauses in Uber's contracts are unenforceable because they are unconscionable"). The same

15  result should apply here.

16

17  ───────────────────

   [7]      <u>See</u> <u>Ajamian v. CantorCO2e, L.P.</u>, 203 Cal. App. 4th 771, 791-92 (2012); <u>Parada v.</u>
18  <u>Superior Court</u>, 176 Cal. App. 4th 1554, 1565-66 (2009); <u>Baker v.Osborne Development Corp.</u>,
   159 Cal. App. 4th 884, 888-89 (2008); <u>Hartley v. Superior Court</u>, 196 Cal. App. 4th 1249 (2011).
19
   [8]      Uber argues that because the "general jurisdictional reservation" is "*not* part of the
20  Arbitration Provision," it does not create any ambiguity. <u>See</u> Dkt. 346 at 10.   However, the
   Court already explicitly rejected this argument in <u>Mohamed</u>. <u>See</u> <u>Mohamed</u>, 2015 WL 3749716
21  at n. 17 (noting that the distinction as to where the conflicting language appears in the contract –
   whether in the arbitration provision or elsewhere – is "not legally relevant"); <u>see</u> <u>also</u> <u>Ajamian</u>,
22  203 Cal. App. 4th at 777 (noting ambiguity in the delegation clause where "Section 8 of the
   Employment Agreement sets forth an arbitration clause" that delegates authority to the arbitrator
23  but "[n]otwithstanding the arbitration clause, section 11 of the Employment Agreement
   anticipates that a court may make certain determinations"); <u>Parada</u>, 176 Cal. 4th at 1565-
24  66; <u>Baker v.Osborne Development Corp.</u>, 159 Cal. App. 4th 884, 888-89 (2008); <u>Hartley v.</u>
   <u>Superior Court</u>, 196 Cal. App. 4th 1249 (2011).
25

26

27

28                                                  8

1    "It is well-established that unconscionability is a generally applicable contract defense,

2    which may render an arbitration provision unenforceable." Nagrampa v. MailCoups, Inc., 469

3    F.3d 1257, 1280 (9th Cir. 2006).  California courts consider both procedural and substantive

4    unconscionability but "[t]hese two prongs operate on a sliding scale: greater substantive

5    unconscionability can make up for a lesser showing of procedural unconscionability, and vice

6    versa." Merkin v. Vonage Am. Inc., 2014 WL 457942 at *5 (C.D. Cal. Feb. 3, 2014).  Here, the

7    delegation clause is both procedurally and substantively unconscionable.

8                    **A. The Delegation Clause is Procedurally Unconscionable.**

9            First, Uber's delegation clause is procedurally unconscionable because it was presented

10   to absent class members as part of a contract of adhesion.[9]  Uber attempts to refute this

11   conclusion simply by arguing that "the existence of a meaningful opt-out right . . . precludes a

12   finding of unconscionability" under Ninth Circuit precedent. See Dkt. 346 at 13, 18-19.[10]  First

13   Uber's argument assumes that the opt-out *was* meaningful, but this Court in Mohamed already

14   found that "the opt-out right in the 2013 Agreement was illusory, and thus there is no evidence

15   that drivers could *actually* reject the arbitration provision, and thereby avoid the delegation

16   clause." Mohamed, 2015 WL 3749716, *13.  This Court reiterated its view in its class

17   certification order, where it noted that "Uber issued new contracts in 2013 to putative class

18   members that contained 'inconspicuous' arbitration agreements with class action waivers, and

19

20

21   _____
     [9]    See Jones-Mixon v. Bloomingdale's, Inc., 2014 WL 2736020, *7 (N.D. Cal. June 11,
22   2014) ("freedom to choose whether or not to enter a contract of adhesion is a factor weighing
     against a finding of procedural unconscionability"); Brookdale Inn & Spa v. Certain
23   Underwriters at Lloyds, London, 2014 WL 116442, *3 (N.D. Cal. Jan. 13, 2014) ("Because
     Plaintiffs do not appear to have had an opportunity to negotiate or opt out of the arbitration
24   clause, the Court finds that there is at least some amount of procedural unconscionability
     present..."); Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 853 (2001) ("A
25   finding of a contract of adhesion is essentially a finding of procedural unconscionability").

26   [10]   The case law relied upon by Uber for this proposition was already considered and
     rejected by the Court in its Mohamed decision. 2015 WL 3749716, *17-19.

27

28                                                 9
     _____

which contracts permitted drivers to opt-out of arbitration only by complying with 'extremely

onerous' and essentially illusory opt-out protocols…" Dkt. 342 at 61.[11]

Moreover, the fact that Uber emailed or texted the drivers a link to the contract in

advance of presenting it to them as an adhesive condition of continuing to work for Uber does

not counter the clear procedural unconscionability of the agreement.  As this Court already

recognized:

> The delegation clause appears on the eleventh page of a form agreement, without a
> separate header or any other indicator (*e.g.*, bold or relatively larger typeface) that would
> call a reader's attention to the provision. Put simply, . . . drivers would have no reason to
> know or suspect that arbitrability would be decided by an arbitrator under the 2013
> Agreement.

Mohamed, 2015 WL 3749716, *13.  The same is true here.  That Uber sent the agreement to

drivers in advance of requiring them to assent does not detract from the fact that a driver would

need to go through the entire, lengthy, adhesive agreement with a fine tooth comb to even come

---

[11]     Indeed, the Court had already found the opt-out clause in the 2013 agreement to be
procedurally problematic multiple times, not just in Mohamed but in this very case. See Dkt. 60,
99.  Thus, the Court had already noted that "the opt-out procedure is extremely onerous," and has
remarked upon the coercive presentation of the agreement, which allowed "an Uber driver to
swipe a button on their mobile phones" to indicate acceptance but required "a letter via *hand
delivery or overnight mail* to Uber's general counsel" in order to opt out. See Dkt. 60 at 10:9-14
(emphasis in original).  Furthermore, in Mohamed, this Court rejected the argument that "so long
as just one driver opted-out of the 2013 Agreement's arbitration provision, the opt-out right
necessarily must have been 'real,' and thus the arbitration provision (and importantly for this
discussion, the delegation clause) was not oppressive or otherwise procedurally unconscionable."
2015 WL 3749716, *13.  Although Uber claims here that "many individuals" did opt out, Dkt.
346 at 20, this is not sufficient to establish that the opt-out opportunity was meaningful.  Indeed,
even if hundreds of drivers had opted out that would still only represent a fraction of the
thousands of drivers who were sent the agreement and would not be enough to show that the opt-
out clause was meaningful. Id. ("[T]his Court has significant doubts that the California Supreme
Court would vindicate an opt-out clause simply because a few signatories out of thousands were
able to (and did) successfully opt-out").  Moreover, Uber has presented no evidence regarding
the precise number of drivers who successfully complied with the 2013 Agreement's onerous
procedures in a timely manner.  The "hundreds" of drivers who opted out appear to have mostly
opted out of the 2014 agreement.
     Thus, this Court has already determined *multiple times* that the opportunity to opt out
provided in the 2013 Licensing Agreement was not a meaningful one.  Uber's insistence that its
opt-out was "meaningful" and that the presence of the opt-out provision immunizes it from all
claims of procedural unconscionability, see Dkt. 346 at 13, 18-19, has already been rejected time
and again by this Court and should be rejected again.

across the delegation clause, which was not highlighted or announced in any way. Moreover, the

text of the agreement was only presented by hyperlink on their smartphones and thus not very

visible to the drivers in any event.[12]  In light of these facts, the delegation clause is plainly

procedurally unconscionable (as this Court has already found in <u>Mohamed</u>).

### B. The Delegation Clause is Substantively Unconscionable.

Likewise, the delegation clause is substantively unconscionable because of the

agreement's requirement that absent class members share the costs of arbitration with Uber.

This provision would obviously deter low-wage drivers from ever bringing claims in the first

place, thus preventing them from even getting their foot in the door to bring a claim.  The 2013

Licensing Agreement states:

> Each party will pay the fees for his, her or its own attorneys, subject to any remedies to
> which that party may later be entitled under applicable law. However, in all cases where
> required by law, Uber will pay the Arbitrator's and arbitration fees. If under applicable
> law Uber is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s)
> will be apportioned between the Parties in accordance with said applicable law, and any
> disputes in that regard will be resolved by the Arbitrator.

<u>See</u> Dkt. 347-1 at 14; Dkt. 347-2 at § 14.3(vi); Dkt. 347-4 at 13; Dkt. 347-5 at 13-14.

Based on Uber's denial that its drivers are employees (and Uber's admission that its

position is that drivers should have to share the costs of arbitration under this provision[13]), this

---

[12]     In its Motion, Uber notes that some UberX drivers who signed up to use the service for
the first time between February 2013 and October 2013 were required to sign their agreements
through the use of a hyperlink embedded in an email (as opposed to as a pop-up in the
Application) or by electronically signing on an iPad in person at the Uber office.  <u>See</u> Dkt. 347
at ¶ 17.  These minor distinctions make no difference to the ultimate procedural unconscionability
finding.  This Court's finding in <u>Mohamed</u> that "[t]he delegation clause appears on the eleventh
page of a form agreement, without a  separate header or any other indicator (*e.g.*, bold or
relatively larger typeface) that would call a reader's attention to the provision" and that "drivers
would have no reason to know or suspect that arbitrability would be decided by an arbitrator
under the 2013 Agreement" is equally true regardless of these fine distinctions in how the
agreement was presented to absent class members. <u>See Mohamed</u>, 2015 WL 3749716, *13.

[13]     <u>See</u> Dkt. 56 at 10:3-9 (Hearing Transcript 11/14/13) ("**THE COURT:** Okay. In
California who pays? **MR. HENDRICKS:** Well, it would depend -- in this context, given we're
dealing with independent contractors, I believe absent a showing of employee status, each party
(continued on next page)

provision would mean that drivers would be faced with paying large sums of money just to commence an arbitration proceeding.  Thus, at the moment when a driver is determining whether or not to even bring a claim, this provision (which does not state that the driver would not have to pay the fees – but instead indicates that, at best, the driver would be faced with the ambiguous situation in which he or she may well be forced to pay the fees) is clearly a deterrent against the driver filing a claim in arbitration in the first place.

Thus, under the delegation clause in Uber's Agreement, Plaintiffs are faced with the prospect of paying half the costs of arbitrating the gateway question of the Agreement's enforceability.  As this Court recognized in Mohamed, "if [a driver] is forced to arbitrate even the gateway question of arbitrability at JAMS, he will have to pay a number of hefty fees of a type he would not pay in court, such as a fee for 'reading and research' and 'award preparation'" and "would have to advance his *pro rata* portion of these fees just to get the arbitration started, and just to determine whether he needs to arbitrate his claims at all." Mohamed, 2015 WL 3749716, *15. Under California law, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 110-11 (2000).  Thus, the cost-splitting provision in Uber's agreement violate Armendariz's rule because absent class members "would be unable to access the arbitral forum to even litigate delegation issues if the fee-splitting clause is enforced." Mohamed, 2015 WL 3749716, *15.

Uber argues that Armendariz does not apply here because the presence of the opt-out

(Footnote continued from previous page)
would probably bear their own expenses"). Thus, Uber has argued consistently in this case that its drivers (who it contends are independent contractors), would be required to bear half the costs of arbitration, and Uber is estopped from arguing otherwise.  Indeed, if Uber's own lawyer believes that costs would be split between the parties, it seems absurd to presume that a driver would somehow *know* that he or she would not have to split the costs.

12

mechanism means that here there is no "mandatory arbitration as a condition of employment." Armendariz, 24 Cal. 4th at 110-11; Dkt. 346 at 14. However, this argument ignores that this Court has already found the opt-out mechanism in the 2013 agreement to be illusory, such that the 2013 Agreement was effectively presented as a mandatory condition of employment.  In other words, Uber assumes the opt-out was actually meaningful but given that this Court has repeatedly concluded that it was not, see supra, n. 9, this argument must fail.[14]

Uber next argues that even if Armendariz does apply, there is no substantive unconscionability because the provision requires Uber to pay all fees "where required by law." Dkt. 346 at 15. This argument was already rejected in Mohamed, and indeed, Uber's counsel has admitted that based on Uber's position that drivers are independent contractors, drivers are "required by law" to pay the fees for this case. See supra, n. 11.  Next, Uber argues that, because the agreement selects the JAMS rules, the JAMS Employment Rules would apply, specifically the JAMS Policy on Employment Arbitration, Minimum Standards of Procedural Fairness, which would only require a minimum initial fee. Dkt. 346 at 15; 347-2 at § 14.3(iii).  This argument is incorrect. First, there is no reason to assume that JAMS would apply its Policy on Employment Arbitration (as opposed to its Commercial Rules, which would require cost splitting).[15]  But, more importantly, a driver reading the agreement would have no reason to

---

[14]     Likewise, Uber's argument that Armendariz's holding is preempted by the FAA, see Dkt. 346 at 14, n. 19, has been rejected by the California Supreme Court. Sonic-Calabasas A, Inc. v. Moreno, 57 Cal. 4th 1109, 1144 (2013), cert. denied, 134 S. Ct. 2724 (2014).

[15]     Thus, this case is unlike Cobarruviaz v. Maplebear, Inc.d/b/a Instacart, Civ. A. No. 15-00697-EMC, in which the parties' arbitration agreement explicitly stated that the JAMS Policy on Employment Arbitration (Minimum Standards of Procedural Fairness) would apply.  Here, there is no reason to think JAMS would apply its Employment Rules, and indeed, Uber's own attorney opined that cost-splitting would be required for drivers' claims. See supra, n. 11.  In other cases, Plaintiffs' counsel has seen arbitration providers apply Commercial Rules because the respondent has classified the workers as independent contractors, even where the claimants are alleging they have been misclassified and are actually employees.  See Yucesoy, 15-cv-00262, Dkt. 102 (Declaration of Shannon Liss-Riordan and exhibits) (attached here as Exhibit A).  The Commercial Rules require claimants to split arbitration costs and thus be charged huge amounts of money, just to determine threshold questions (such as the question of who should pay the arbitration fees).  See id.

know that he or she would not have to split costs, and would indeed reasonably understand that they were responsible for paying half the costs of arbitration (or at least faced a substantial risk of having to do so). <u>Mohamed</u>, 2015 WL 3749716, *15 (noting that "[a] driver reviewing the 'Paying for the Arbitration' section of the contracts could easily conclude that she would be required to pay arbitral fees simply to begin arbitration—a conclusion which could seriously discourage the driver from attempting to vindicate his or her rights as a putative employee in any forum").[16]  Thus, this Court already recognized in <u>Mohamed</u> that this "could significantly chill drivers in the exercise of their rights under the relevant agreements." <u>Id.</u>[17]  Uber's delegation

---

[16]     As this Court explained in <u>Mohamed</u>:

> ….California Supreme Court precedent [] provides that when analyzing unconscionability, the court is to consider whether the clause or contract was "unconscionable at *the time it was made*." <u>Armendariz</u>, 24 Cal.4th at 114, 99 Cal.Rptr.2d 745 (emphasis added) (quoting Cal. Civ.Code § 1670.5(a)); <u>see also</u> <u>Sonic–Calabasas A</u>, 57 Cal.4th at 1134, 163 Cal.Rptr.3d 269. As the <u>Armendariz</u> court itself explained, the purpose of analyzing unconscionability at the time an agreement is drafted is to *deter* drafters from including such unconscionable terms in their agreements in the first instance: "An employer will not be deterred from routinely inserting such ... illegal clause[s] into the arbitration agreement it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter." <u>Armendariz</u>, 24 Cal.4th at 124 n. 13, 99 Cal.Rptr.2d 745.

<u>Mohamed</u>, 2015 WL 3749716, *34.  Thus, Uber cannot now attempt to modify the contract to provide that the JAMS Employment Rules would apply (and that it would waive any argument that the drivers are not employees and thus do not have to split arbitration fees).  As this Court recognized in <u>Cobarruviaz</u>, "both parties [must agree] to effectuate a modification of the contract".  <u>See</u> Civ. A. No. 15-00697-EMC, Hring Tr. (Aug. 20, 2015) (attached here as Exhibit F) at 17:8-10.  Plaintiffs, on behalf of the absent class members here, do not agree to such a modification, so as to allow Uber to enforce its arbitration clause against them.

[17]     Uber argues that "Plaintiffs would need to demonstrate that the expense of arbitrating the enforceability of the agreement alone – not the entire dispute – would be prohibitive." Dkt. 346 at 15, n. 22.  However, this is plainly the case given the very high fees required simply to retain an arbitrator. <u>See</u> <u>Mohamed</u>, 2015 WL 3749716, *15 (noting that a "fee schedule for a JAMS arbitrator shows that litigants will further be charged a hearing fee of $7,000 per full day, and that other professional time, including additional hearing time, pre and post hearing reading and research, and conference calls, will be billed at $700 per hour") (internal citation omitted); <u>see also</u> <u>Mohamed</u>, C-14-5200, Dkt. 37-2 (Declaration of Theodore Maya and attachments); <u>Yucesoy</u>, 15-cv-00262, Dkt. 102 (Declaration of Shannon Liss-Riordan and exhibits) (describing

(continued on next page)

14

clause is plainly substantively unconscionable for the reasons set forth herein and further

explained in this Court's decision in <u>Mohamed</u>.

---

(Footnote continued from previous page)

how deposit of $7500 was required just to retain an arbitrator to determine preliminary fee allocation question) (attached here as Exhibit A).  Likewise, it is obvious that the costs of paying thousands of dollars just to decide gateway questions is out of reach for Uber drivers.  For example, Plaintiffs attach here an example of an Uber driver (who they believe to be a member of the class), who attests that he now earns approximately $1000 per week but could not afford arbitration costs. <u>See</u> Exhibit B (Declaration of Helder Parreira), at ¶¶ 6-7.  (Plaintiffs note that Uber has not yet produced a class list, so they are not yet able to verify who is in the class, and given that the Court has included drivers bound by the 2013 agreement but not the 2014 agreement, Plaintiffs have had difficulty identifying on their own – without the benefit of a class list – what drivers are in the class by virtue of the Court's holding the 2013 agreement unenforceable on a classwide basis.  Thus, it should not be necessary for Plaintiffs to provide this specific exemplar evidence of drivers' inability to pay, but to the extent the Court believes it is necessary, Plaintiffs should not be prejudiced by not yet having access to information regarding the certified class.)

Uber argues that a showing of substantive unconscionability regarding cost-splitting "requires 'individualized evidence,' and thus, each absent class member would need to *independently* demonstrate that the delegation provision was substantively unconscionable based on their *personal* circumstances." Dkt. 346 at 15, n. 22. However, this is not the case.  First, under <u>Armendariz</u>, no such showing is needed; employees simply cannot be required to pay these costs.  Indeed, the Court recognized this fact. <u>See</u> <u>Cobarruviaz</u>, Civ. A. No. 15-00697-EMC, Hring Tr. (Aug. 20, 2015) (Exhibit F) at 36:13-17 ("[O]ther conscionability questions, like splitting fees, you don't look…[at] well, the person has got a low-wage job, but his grandmother just gave him a half million bucks. So you don't look at it that way").  Second, the burden that drivers would have to show is that costs they may have to pay would be high, not that they cannot afford them.  Here, Plaintiffs have shown that there is a real risk of drivers being forced to pay half the costs of arbitrating their individual claims (and indeed, this has been Uber's position all along), and Plaintiffs have shown (and the Court knows from the evidence cited in <u>Mohamed</u> and <u>Yucesoy</u>) that these costs are high. Thus, Plaintiffs have met their burden. Finally, the Court can take note that no person of everyday means can afford to split arbitration fees. Thus, courts have relied upon evidence of a single employee's financial circumstances to hold that where an employee "could not afford such a fee, [] it is unlikely other similarly situated employees could either." <u>Shankle v. B-G Maint. Mgmt. of Colorado, Inc.</u>, 163 F.3d 1230, 1234-35 (10th Cir. 1999); <u>see also</u> <u>Morrison v. Circuit City Stores, Inc.</u>, 317 F.3d 646, 663 (6th Cir. 2003) (holding that "if the reviewing court finds that the cost-splitting provision would deter a substantial number of similarly situated potential litigants, it should refuse to enforce the cost-splitting provision" and noting that the court should consider "the class of such similarly situated potential litigants by job description and socioeconomic background" and "should take the actual plaintiff's income and resources as representative of this larger class's ability to shoulder the costs of arbitration"); <u>Owner-Operator Indep. Drivers Ass'n v. C.R. England, Inc.</u>, 325 F. Supp. 2d 1252, 1262 (D. Utah 2004) (holding that "Plaintiffs have met their burden and shown that in this case the potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights in an arbitral forum").

15

V.   **UBER'S 2013 ARBITRATION AGREEMENT IS UNCONSCIONABLE AND UNENFORCEABLE.**

As explained above (and as this Court determined in <u>Mohamed</u>), because the delegation clause is procedurally and substantively unconscionable (as well as not clear and unmistakable), it is up to the Court to determine whether Uber's arbitration clause is enforceable.  As set forth below (and as this Court determined in <u>Mohamed</u>), it is not enforceable because it is both procedurally and substantively unconscionable.  Because this conclusion holds true "regardless of the individual driver's economic circumstances or any other possible differences between signatories," Dkt. 342 at 63, Uber's Motion to Compel Arbitration of Absent Class Members must be denied.

**A.  The Agreement is Procedurally Unconscionable.**

In <u>Mohamed</u>, this Court held that "[f]or largely the same reasons that this Court held the delegation clause in the 2013 Agreement was procedurally unconscionable, the entire 2013 arbitration provision is procedurally unconscionable as well." <u>Mohamed</u>, 2015 WL 3749716, at *21.  The same is true here.  For all the reasons set forth <u>supra</u>, Part III. A., the arbitration agreement, like the delegation clause, is procedurally unconscionable.  The agreement was presented as a contract of adhesion to drivers, usually on their tiny iPhones, which they had to accept just before beginning work if they wanted to work that day, the arbitration provision was buried towards the end of the lengthy agreement, and there was nothing earlier in the agreement that warned drivers of the existence of the arbitration clause.  Moreover, the opt-out provision was unduly burdensome and illusory.  As such, the showing of procedural unconscionability has been met.

**B.  The Agreement is Substantively Unconscionable.**

This Court has likewise already found the same arbitration clause at issue here to be substantively unconscionable based primarily on the presence of: (1) the cost-splitting provision; (2) the confidentiality provision; (3) an intellectual property claim carve out that creates a lack of mutality; (4) a unilateral modification provision; and (5) a waiver of the ability to bring claims

16

under the Private Attorney General Act ("PAGA"). Id., * 27-30. These same multiple

unconscionable provisions are at issue here. In the face of so many unconscionable terms, courts

have stricken entire arbitration agreements as unenforceable rather than severing the many

offending portions.[18] Indeed, as Justice Roberts explained when he was sitting on the D.C.

Circuit Court of Appeals, when courts are faced with arbitration agreements with multiple

unconscionable terms, the proper response is to strike the entire agreement, rather than merely

sever the multiple unconscionable terms:

> If illegality pervades the arbitration agreement such that only a disintegrated fragment
> would remain after hacking away the unenforceable parts . . . the judicial effort begins to
> look more like rewriting the contract than fulfilling the intent of the parties . . . Thus, the
> more the employer overreaches, the less likely a court will be able to sever the provisions
> and enforce the clause, a dynamic that creates incentives against the very overreaching
> Booker fears.

Booker v. Robert Half Int'l, Inc., 413 F.3d 77, 84-85 (D.C. Cir. 2005). Here, the unconscionable

PAGA waiver is explicitly not severable from the rest of the agreement,[19] but even if that were

not the case, "[s]everence is inappropriate if the agreement is 'permeated' by unconscionability,"

Merkin, 2014 WL 457942, *11, as is the case here. Indeed, a California state court has now

---

[18]   See, e.g., Newton v. Am. Debt Servs., Inc., 549 F. App'x 692, 695 (9th Cir. 2013)
(holding that "[t]he district court did not implausibly or illogically decline to sever the
unconscionable parts of this arbitration agreement, despite Congress's preference for arbitration,"
because where the "arbitration agreement included four unconscionable provisions," severing all
of them "would have left a mere agreement to arbitrate, [] requiring extensive reformation…");
Nino v. Jewelry Exch., Inc., 609 F.3d 191, 207-08 (3d Cir. 2010) (reversing the District Court's
decision to sever the unconscionable clauses from the arbitration agreement, and instead striking
down the agreement in its entirety because "[w]hen the unconscionable arbitration provisions are
so one-sided that their *only possible purpose* is to undermine the neutrality of the proceeding,
severance of those provisions and enforcement of the remainder of the arbitration agreement is
not appropriate") (internal quotation omitted); Merkin, 2014 WL 457942, *11 (declining "to
sever the offending provisions" of an arbitration agreement and finding "the entire agreement to
arbitrate unconscionable" because "[s]everance is inappropriate if the agreement is 'permeated'
by unconscionability").

[19]   See Dkt. 347-2 at § 14.3(v)(c) ("The Private Attorney General Waiver shall not be
severable from this Arbitration Provision in any case in which a civil court of competent
jurisdiction finds the Private Attorney General Waiver is unenforceable"). See also Mohamed,
2015 WL 3749716, *25-27.

17

1    found Uber's 2014 agreement to be unconscionable and unenforceable.  See Uber Technologies,

2    Inc., et al. v. Berwick, CGC-15-546378 (Sept. 21, 2015) (attached here as Exhibit C); Transcript

3    of Hearing (attached here as Exhibit D).  As this Court has recognized, the 2013 Agreement is

4    even more egregiously unconscionable. Thus, the Court should follow its previous ruling in

5    Mohamed and should strike Uber's 2013 agreement in its entirety for absent class members as

6    pervaded by multiple unconscionable terms.

7    **i. Cost Splitting**

8    As explained, supra, Part IV. B., Uber's arbitration clause requires drivers to split the

9    costs of arbitration (or at least would lead a driver to understand they risk splitting the costs of

10   arbitration, thereby deterring them in seeking to enforce their rights).  Indeed, Uber itself has

11   maintained that drivers would have to pay half the costs of arbitration. See supra, n. 11.  Many

12   courts have found that arbitration agreements that require plaintiffs with statutory claims

13   (including employment claims) to split the costs of arbitration are invalid. See, e.g., Chavarria v.

14   Ralphs Grocery Co., 733 F.3d 916, 925-26 (9th Cir. 2013) (finding cost-splitting provision

15   unconscionable where "the arbitrator's fees must be apportioned at the outset of the arbitration

16   and must be split evenly between [the parties]").[20]  Because drivers would not be required to

17   bear these types of costs were they to bring their claims in court, the cost-splitting provision is

18   substantively unconscionable. Armendariz, 24 Cal. 4th at 110-111 (when an employer imposes

19   mandatory arbitration as a condition of employment, the arbitration agreement or arbitration

---

[20]     See also Ambler v. BT Americas Inc., 2013 WL 4427205, *5 (N.D. Cal. Aug. 15, 2013)
(finding cost-splitting provision of arbitration agreement unconscionable where plaintiff had to
"pay one-half of the costs and expenses of such arbitration" as well as attorney's fees); Laughlin
v. VMware, Inc., 2012 WL 298230, *5 (N.D. Cal. Feb. 1, 2012) (finding that where
"Employment Agreement requires the parties to share the costs and expenses of arbitration and
does not specifically authorize an arbitrator to alter this allocation," the cost-split was
unconscionable); Hwang v. J.P. Morgan Chase Bank, N.A., 2012 WL 3862338, *4 (C.D. Cal.
Aug. 16, 2012) (finding that "[r]equiring [plaintiff] to pay the costs of arbitration would be
substantively unconscionable under California law"); Van Voorhies v. Land/home Fin. Servs.,
2010 WL 3961297, *6-7 (Conn. Super. Ct. Sept. 3, 2010) (finding "cost splitting provision of the
arbitration agreement is substantively unconscionable").

process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court"); see also Sanchez v. Valencia Holding Co., LLC, 2015 WL 4605381, *10 (Cal. Aug. 3, 2015).

### ii. Confidentiality Provision

The 2013 agreement contains a confidentiality provision that reads: "Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all the Parties." See Dkt. 347-1 at 14; Dkt. 347-2 at § 14.3(vii), Dkt. 347-4 at 14, Dkt. 347-5 at 14.  Courts have found that a broad a broad confidentiality provision in an arbitration agreement is unconscionable under California law. Ting v. AT&T, 319 F.3d 1126, 1151-52 (9th Cir. 2003).[21]  This Court has already rejected many of the cases cited by Uber in its decision in Mohamed, finding that Velazquez v. Sears, 2013 U.S. Dist. LEXIS 121400 (S.D. Cal. 2013), was "unpersuasive" and that Davis v. O'Melveny & Myers, 485 F.3d 1066, 1079 (9th Cir. 2007), drew a distinction between a broad confidentiality clause and a more narrowly tailored clause that attempted to "limit availability of sensitive employee information."[22]  Thus, the

---

[21]    These types of confidentiality provisions are particularly inhibiting if coupled with class action waivers because, as courts have recognized, such provisions prevent "the claimant [and] her attorney [from] shar[ing] [] information with other potential claimants." Kinkel v. Cingular Wireless LLC, 223 Ill. 2d 1, 42 (2006). Thus, "the unavailability of arbitral decisions may prevent potential plaintiffs from obtaining the information needed to build a case…" and "plaintiffs [will be] unable to mitigate the advantages inherent in being a repeat player." Ting v. AT&T, 319 F.3d 1126, 1152 (9th Cir. 2003). See also Pokorny v. Quixtar, Inc., 601 F.3d 987, 1001 (9th Cir. 2010) (noting that "[a]nother indicator of substantive unconscionability is the confidentiality requirement" in the arbitration agreement); Lima v. Gateway, Inc., 886 F. Supp. 2d 1170, 1185 (C.D. Cal. 2012); Schnuerle v. Insight Commc'ns Co., L.P., 376 S.W.3d 561, 579 (Ky. 2012).

[22]    Likewise, this Court has already rejected the notion that Kilgore v. KeyBank, Nat. Ass'n, 718 F.3d 1052 (9th Cir. 2013) requires that "the enforceability of a confidentiality clause is a matter distinct from the enforceability of the arbitration clause" see Dkt. 346 at 21, finding that this language was mere "dicta, in a footnote" that "appears to conflict with the United States Supreme Court's holding that a determination of arbitrability must be made by a court, and not an arbitrator, absent 'clear and unmistakable' intent to delegate the adjudication of arbitrability to an arbitrator." Mohamed, 2015 WL 3749716, *28.  The other two cases cited by Uber, Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp., 194 Cal. App. 4th 704, 714 (2011) and (continued on next page)

---

confidentiality clause in the agreement is further evidence here of the agreement's substantive unconscionability.

### iii. Intellectual Property Carve Out Creates a Lack of Mutuality

Uber's arbitration agreement also contains a clause which provides that "[o]ther than disputes regarding the Intellectual Property Rights of the parties, any disputes . . . may be subject to arbitration," thereby carving out intellectual property disputes from its arbitration clause. See Dkt. 347-2 at § 14.2.  In <u>Mohamed</u>, this Court recognized that this provision is one-sided because it excludes the types of claims Uber is most likely to bring while requiring drivers to bring their claims in arbitration.  This conclusion is well-supported by the case law.  Many courts have found one-sided arbitration clauses that exempted claims related to intellectual property rights or trade secrets from arbitration – claims that employers are far more likely to bring than their employees – to be substantively unconscionable. <u>See, e.g.</u>, <u>Macias v. Excel Building Services LLC</u>, 767 F. Supp. 2d 1002, 1009 (N.D. Cal. 2011); <u>Nagrampa v. MailCoups, Inc.</u>, 469 F.3d 1257, 1286-87 (9th Cir. 2006); <u>Fitz v. NCR Corp.</u>, 118 Cal. App. 4th 702, 724 (2004).  As such, it seems clear that this provision is further evidence of substantive unconscionability.

### iv. Unilateral Modification.

Uber's agreement also contains a provision in which "Uber reserves the right to modify the terms and conditions of this Agreement at any time, effective upon publishing an updated version of this Agreement at http://www.uber.com or on the Software."  See Dkt. 347-2 at §12.1.  When one party to an arbitration agreement can unilaterally alter that arbitration agreement, the agreement is substantively unconscionable. <u>Chavarria</u>, 733 F.3d at 926; <u>see also</u> <u>Ingle v. Circuit City Stores, Inc.</u>, 328 F.3d 1165, 1179 (9th Cir. 2003) ("[T]he unilateral power to terminate or

(Footnote continued from previous page)
<u>Andrade v. P.F. Chang's China Bistro, Inc.</u>, 2013 WL 5472589, *9 (S.D. Cal. Aug. 9, 2013), are out of step with  <u>Davis v. O'Melveny & Myers</u>, 485 F.3d 1066 (9th Cir.2007) and <u>Ting v. AT&T</u>, 319 F.3d 1126 (9th Cir.2003) and their reasoning is unpersuasive.

1    modify the contract is substantively unconscionable"). In <u>Mohamed</u>, this Court noted the lack of

2    controlling authority on this question but concluded that "the Court predicts that the California

3    Supreme Court would follow <u>Ingle</u>, <u>Sparks</u>, <u>Chavarria</u>, and <u>Macias</u>, and hold that a unilateral

4    modification provision is substantively unconscionable under these circumstances." <u>Mohamed</u>,

5    2015 WL 3749716, *30.  As such, Plaintiffs note that this same unilateral modification provision

6    that this Court rejected in <u>Mohamed</u> is present here and is substantively unconscionable.

7         **v.   PAGA Waiver.**

8         Uber's 2013 Agreement with UberBlack drivers states that "You and Uber agree to bring

9    any dispute in arbitration on an individual basis only, and not on a class, collective, or private

10   attorney general representative action basis" and that "[t]here will be no right or authority for any

11   dispute to be brought, heard, or arbitrated as a private attorney general representative action

12   ('Private Attorney General Waiver')." <u>See</u> Dkt. 347-2 § 14.3(v).[23]  In <u>Mohamed</u>, this Court

13   noted that the PAGA waiver was unconscionable and unenforceable even as to those drivers

14   from outside California who could not bring a PAGA claim.  However, here, the absent class

15   members are all California drivers. <u>Mohamed</u>, 2015 WL 3749716, *34.[24]  Thus, the PAGA

16   waiver is an additional reason to find Uber's 2013 agreement substantively unconscionable and

17   unenforceable. Moreover, as the Court has determined in <u>Mohamed</u> that the PAGA waiver is

18   unenforceable, and Uber's agreement expressly does not allow it to be severed from the

19

20   ――――――――――――――

     [23]    An almost identical provision exists in the 2013 UberX agreements. <u>See</u> Dkt. 347-1 at 13

21   ("You and the Company agree to bring any dispute in arbitration on an individual basis only, and
     not on a class, collective, or private attorney general representative action basis"); see also Dkt.

22   347-4 at 13, Dkt. 347-5 at 13.

23   [24]    This Court held in <u>Mohamed</u> that unconscionability should be analyzed "at the time an
     agreement is drafted [in order] to *deter* drafters from including such unconscionable terms in

24   their agreements in the first instance." <u>Mohamed</u>, 2015 WL 3749716, *34.  As this Court noted,
     "[w]hen the [] agreements were drafted, Uber had no way of knowing whether a particular driver

25   would or would not bring representative PAGA claims against it." <u>Id.</u> at *35.  Moreover, because
     the opt-out mechanism in the 2013 agreement was already found inadequate by this Court in this

26   case, <u>see</u> Dkt. 60, 99,  drivers had no effective mechanism to opt-out of the PAGA waiver.

27

28                                            21

     ――――――――――――――――――――――――――――――――――――――――――――――――――
     PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF ABSENT CLASS MEMBERS

agreement, see Dkt.347-2 at § 14.3(v)(c), Mohamed 2015 WL 3749716, *26-27, the inclusion of the unenforceable PAGA waiver renders the agreement invalid regardless of whether or not this is a claim that certain drivers may invoke or not.

In light of these numerous substantively unconscionable provisions, and the procedurally unconscionable manner in which the agreement was presented, the Court should refuse to enforce Uber's 2013 arbitration agreement against the absent class members, just as it did in Mohamed.

## VI.   UBER'S AGREEMENT IS UNENFORCEABLE FOR THE ADDITIONAL REASON THAT IT VIOLATES DRIVERS' RIGHTS UNDER THE NLRA TO ENGAGE IN CONCERTED ACTIVITY FOR MUTUAL AID AND PROTECTION.

Section 8(a)(1) of the National Labor Relations Act makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" Section 7. 29 U.S.C. §158(a)(1).  Section 7 of the NLRA protects the rights of workers to improve the terms and conditions of their employment through concerted activity, which includes "resort to administrative and judicial forums." Eastex Inc. v. NLRB, 437 U.S. 556, 566 (1978). Employees may engage in concerted activities for their mutual aid or protection even without the existence of a union. Brady v. NFL, 644 F.3d 661 (8th Cir. 2011). "[A] lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under § 7 under the National Labor Relations Act." Id. (emphasis in original).  The National Labor Relations Board has consistently held that a civil action filed by or on behalf of a group of employees constitutes protected concerted activity under §7.[25]

---

[25]   See, e.g., Harco Trucking, LLC, 344 NLRB 478, 481 (2005) (class action filed by one employee was concerted activity); Madri Restaurant, 331 NLRB 269, 275 (2000) ("the filing of a civil action by employees is protected activity unless done with malice or in bad faith"); Street Hotel Assoc., 321 NLRB 624, 633-636 (2000) (collective action was concerted activity); In re 127 Restaurant Corp., 331 NLRB 269, 275-76 (1996) (joint action filed by 17 employees was concerted activity); United Parcel Service, 252 NLRB 1015, 1018, 1022 fn. 26 (1980), enfd. 677 (continued on next page)

22

Here, Plaintiffs brought the underlying lawsuit as a class action on behalf of their fellow Uber drivers in an attempt to ameliorate working conditions that they have a good faith basis for believing are illegal.  However, Uber has attempted to prevent drivers from banding together as a class through enforcement of an arbitration clause which requires workers to bring claims on an individual basis. The Board has repeatedly held that employers violate the NLRA by enforcing such "class action waivers" in arbitration agreements, because these clauses interfere with and restrain an employee's well established right to engage in protected § 7 activity by filing a civil action on behalf of a group of employees.[26]

Some courts have followed the NRLB's conclusion that enforcement of class action and collective action waivers violate the NLRA.[27]  Other courts have rejected the conclusion.[28] However, it is not clear why these courts who have rejected the NLRB's reasoning have

---

(Footnote continued from previous page)

F.2d 421 (6th Cir. 1982) (class-action lawsuit filed by one employee alleging that employer failed to provide rest periods required by state statute was found to be protected concerted activity); Spandsco Oil & Royalty Co., 42 NLRB 942, 948-949 (1942) (finding the filing of a Fair Labor Standards Act suit by three employees was protected concerted activity).

[26]     See, e.g., In Re D. R. Horton, Inc., 357 NLRB No. 184 (Jan. 3, 2012) (holding that "maintaining a mandatory arbitration agreement provision that waives the right to maintain class or collective actions in all forums, whether arbitral or judicial, and that employees reasonably could believe bars or restricts their right to file charges with the National Labor Relations Board" constitutes a violation of the Act); Murphy Oil USA, Inc., 361 NLRB No. 72 (Oct. 28, 2014) (reaffirming D.R. Horton's holding and finding that a mandatory arbitration agreement "under which employees are compelled, as a condition of employment, to waive the right to maintain class or collective actions in all forums" is an unfair labor practice).

[27]     See Lewis v. Epic Sys. Corp., 2015 WL 5330300, *2 (W.D. Wis. Sept. 11, 2015) (denying motion to dismiss based on the holding of D.R. Horton); Grant v. Convergys Corp., 2013 WL 781898, *5 (E.D. Mo. Mar. 1, 2013), reconsideration denied, motion to certify appeal granted, 2013 WL 1342985 (E.D. Mo. Apr. 3, 2013), appeal dismissed (Jan. 17, 2014) (finding that "collective and class litigation, engaged in by employees for the purposes of mutual aid and protection, is protected concerted activity under the NLRA" and that the "Court cannot enforce a contract provision that violates the NLRA"); Herrington v. Waterstone Mortg. Corp., 2012 WL 1242318, *6 (W.D.Wis. Mar. 16, 2012) (finding "the Board's interpretation of the NLRA in D.R. Horton [ ] is reasonably defensible" and, therefore, "applying it ... to invalidate the collective action waiver in the arbitration agreement").

[28]     See, e.g., Sutherland v. Ernst & Young, LLP, 726 F.3d 290, 297 n. 8 (2d Cir. 2013); Owen v. Bristol Care, Inc., 702 F.3d 1050, 1055 (8th Cir.2013) (same) Delock v. Securitas Sec. Servs. USA, Inc., 883 F.Supp.2d 784, 789 (E.D.Ark.2012) (same).

---

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF ABSENT CLASS MEMBERS

determined that the FAA would necessarily trump the NLRA, another federal statute.  As one court noted, "the majority never persuasively rebutted the board's conclusion that a collective litigation waiver violates the NLRA and never explained why, if there is tension between the NLRA and the FAA, it is the FAA that should trump the NLRA, rather than the reverse." Lewis, 2015 WL 5330300, *4. Importantly, the Ninth Circuit has yet to address this question.[29]  Thus, Plaintiffs urge that this Court should follow D.R. Horton's analysis, and the persuasive reasoning of courts that have adopted the analysis, and find the class action waiver here is unenforceable under the NLRA.[30]

Here, under the standard articulated by the Board, Uber has violated the NLRA by preventing absent class members from "initiat[ing]," "induc[ing]" or "prepar[ing] for group action" by filing and pursuing a civil action on a class-wide basis. Meyers Indus., 281 NLRB 882, 885 (1986).  Employees bring class actions for many of the same reasons they engage in any other section 7 activity; class actions provide some level of anonymity for absent class members and provide safety in numbers for those who fear employer retaliation.  Many courts have recognized the high potential for coercion in the workplace and have lauded class actions as a way to help empower workers in the face of an unequal power dynamic with their employers.[31]

---

[29]     In Richards v. Ernst & Young, LLP, 744 F.3d 1072, 1075, n. 3 (9th Cir. 2013) cert. denied, 135 S. Ct. 355 (2014), the Ninth Circuit noted that it was *not* deciding the issue of whether to follow D.R. Horton but acknowledged "that the two courts of appeals, and the overwhelming majority of the district courts, to have considered the issue have determined that they should not defer to the NLRB's decision in D.R. Horton on the ground that it conflicts with the explicit pronouncements of the Supreme Court concerning the policies undergirding the Federal Arbitration Act ("FAA")."

[30]     Today, two absent class members, John Billington and Catherine London, filed charges of unfair labor practices with the NLRB, challenging Uber's use of its arbitration clause to limit the scope of this class action. See Exhibit E.

[31]     See, e.g., Thomas v. Meyers Associates, L.P., 39 Misc. 3d 1217(A), at 12 (N.Y. Sup. Ct. 2013) (noting that a class action is superior because "given the relatively small size of each claim, as well as fear of retaliation, many members of the class would be reluctant and unable to afford to pursue redress of their claims absent class certification"); Overka v. American Airlines, Inc., 265 F.R.D. 14, 24 (D. Mass. 2010) ("[C]lass adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis"); Guzman v. VLM, Inc., 2008 WL 597186 (E.D.N.Y. Mar. 2, (continued on next page)

24

1   Uber's violation of the NLRA, in trying to enforce an arbitration clause containing a class action

2   waiver, provides an additional basis for this Court to decline to grant Uber's motion.[32]

3                                    **CONCLUSION**

4           For all the reasons set forth herein, the Court should deny Defendants' Motion to Compel

5   Arbitration As to Certain Absent Class Members.

6

7

8

9

10

11   ────────────────────────────────────────────

(Footnote continued from previous page)

12   2008) (finding "many employees will be reluctant to participate in the action due to fears of
retaliation" and therefore "the opt-out nature of a class action is a valuable feature"); Sjoblom v.

13   Charter Communications, LLC, 2007 WL 5314916, *4 (W.D. Wis. Dec. 26, 2007) (noting the
"inherently coercive nature" of the employment relationship).

14   [32]        In addition, Plaintiffs note that the U.S. Supreme Court has yet to rule on the applicability

15   of its decisions regarding class action waivers in the employment context.  Likewise, the Ninth
Circuit has not addressed this issue either.  Neither AT&T Mobility LLC v. Concepcion, 563

16   U.S. 333 (2011), nor American Express Co. v. Italian Colors Rest., 133 S. Ct. 2304 (2013),
addressed employee wage claims.  Plaintiffs therefore urge the Court to refuse to enforce Uber's

17   arbitration agreement on the additional ground that it would prevent employees from vindicating
their statutory rights through a class action, and which the Supreme Court has not addressed in a

18   case involving wage claims by employees. Indeed, Concepcion was a consumer case, and
American Express was an antitrust case – both of which are contexts very different from the

19   employment context.  As courts have recognized, there is inherent coercion in the employment
context.  See, e.g., Guifu Li v. A Perfect Day Franchise, Inc., 270 F.R.D. 509, 517-19 (N.D. Cal.

20   2010) (recognizing potential for coercion in the context of an employment relationship); Overka,

21   265 F.R.D. at 24; Sjoblom, 2007 WL 5314916, *4. Thus, the considerations involving whether
states should be permitted to prohibit class action waivers in the employment context (see Gentry

22   v. Superior Court, 42 Cal. 4th 443 (2007)), are different from those present in the consumer or
antitrust context.  In the employment context, workers are often dependent on their employers for

23   their livelihoods.  It is fundamentally unfair to require workers to waive their right to proceed

24   collectively in claims involving wage law protections, and the states' traditional ability to
regulate this area should not be preempted by the FAA (which nowhere explicitly says that class

25   waivers must be permitted).

26

27                                      25

28
────────────────────────────────────────────

Respectfully submitted,

DOUGLAS O'CONNOR, THOMAS COLOPY,
MATTHEW MANAHAN, and ELIE
GURFINKEL, individually and on behalf of all
others similarly situated,

By their attorneys,


 _/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan, *pro hac vice*
Adelaide Pagano, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com

Dated:          September 24, 2015



## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was served by electronic filing on

September 24, 2015, on all counsel of record.

 _/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan, Esq.

26