October 23, 2015

**VIA ECF**

The Honorable Donna M. Ryu
United States District Court
Oakland Courthouse, Courtroom 4 - 3rd Floor
1301 Clay Street, Oakland, CA 94612

**Re:**     *O'Connor, et al. v. Uber Technologies, Inc.,* **Case No. 3:13-cv-03826-EMC**

Dear Judge Ryu:

The parties submit this joint discovery letter brief pursuant to Civil Local Rule 37-1 and this Court's standing order on discovery.  On July 23, 2015, Plaintiffs filed their class certification reply brief (Dkt. No. 312) and the supporting Declaration of Elizabeth Lopez Beltran (the "Beltran Decl.") (Dkt. No. 314).  On July 27, Uber served five requests for production of documents ("RFPs") and one interrogatory on each Plaintiff, seeking information evidencing or substantiating the factual assertions in the Beltran Declaration.  *See* Exhibit A.  On August 25, Plaintiffs served objections to Uber's discovery requests.  *Id.*  The parties' undersigned trial counsel met and conferred regarding this discovery dispute by telephone and email (with good cause for doing so because counsel are in Boston and Los Angeles, respectively) on September 4 and thereafter, and concluded that they are at an impasse.  With regard to case management deadlines, on September 1, the Court entered an amended order certifying a class on Plaintiffs' gratuities claim and allowing  Supplemental Briefing in support of Plaintiffs' motion for class certification by October 6, with Uber's response due on October 27.  *See* Dkt. No. 342.  Plaintiffs have moved for leave to file a fourth amended complaint. *See* Dkt. No. 355. A case management conference is scheduled for November 4, 2015.

**DEFENDANT'S POSITION:**  In their class certification reply brief, Plaintiffs made baseless accusations through unsubstantiated hearsay statements by Plaintiffs' counsel's paralegal, Ms. Beltran, that implicate issues at the heart of this case.  *See* Dkt. Nos. 312 and 314; *see also* Dkt. No. 342 at 25 (class certification order specifically citing the Beltran Declaration).  For example, Plaintiffs asserted that "hundreds of drivers" apparently "expressed to [Ms. Beltran] that they would like to be classified as employees and have their expenses reimbursed," and "Uber exerts significant control over their work as drivers."  *See* Beltran Decl. ¶ 4.  They also attempted to undermine the voluminous evidence that Uber submitted in support of its Opposition, alleging that "drivers who had submitted declarations" told Ms. Beltran that "Uber had not given them complete information about what this case is about."  *See id.* at ¶ 9.  Uber served narrowly tailored discovery—one interrogatory and five RFPs—seeking evidence substantiating the assertions in the Beltran Declaration.  In response, Plaintiffs served boilerplate objections, and took the position that Uber should not have an opportunity to test these assertions.

The discovery at issue seeks highly relevant information and Plaintiffs have not met their burden— as the party resisting discovery—to show that the discovery should not be allowed.  *See Indep. Living Ctr. of S. California v. City of Los Angeles, Cal.,* 296 F.R.D. 632, 634 (C.D. Cal. 2013) ("party who resists discovery has the burden to show discovery should not be allowed"). Accordingly, Uber respectfully requests that the Court compel Plaintiffs to respond to the discovery.

**I.      It Is Undisputed That The Discovery Seeks Highly Relevant Information**

Plaintiffs failed to assert any relevance objections to Uber's RFPs.  And although they assert a relevance objection to the interrogatory, the objection is baseless because the interrogatory merely asks Plaintiffs to identify individuals in relation to documents within the scope of the RFPs. Recognizing this, Plaintiffs attempt to assert a "mootness" objection, belatedly and improperly raised for the first time during a meet-and-confer session.  This objection—that the class certification order somehow renders the Beltran Declaration irrelevant and Uber's discovery moot—is just a relevance objection in disguise.  Having failed to lodge a proper relevance ("mootness") objection within the time required by the Federal Rules, Plaintiffs have waived it.  *See Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (untimely objections are waived).

In any event, the objection fails because the discovery sought by Uber is highly relevant to the issues in this case.  "Rule 26(b) . . . permits the discovery of any non-privileged material 'relevant to the claim or defense of any party.'"  *Gonzalez v. Google, Inc.*, 234 F.R.D. 674, 679 (N.D. Cal. 2006).  Having themselves put Ms. Beltran's hearsay statements at issue, Plaintiffs cannot now disavow their relevance to preclude Uber from responding.  *See Banga v. Experian Info. Solutions, Inc.*, 2013 WL 5539690, at *3 (N.D. Cal. Sept. 30, 2013) (court may consider new evidence in a reply brief "only if the adverse party is given an opportunity to respond.")  The requested discovery is the *only* way to afford Uber a full and fair opportunity to respond to hearsay statements that are now part of the record, since Plaintiffs have produced no substantiating evidence whatsoever.

Further, the discovery sought is necessary to allow the Court to protect the interests of class members and ensure that this case is fairly litigated.  *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) ("Because of the potential for abuse [in the class action device], a district court has both the duty and the broad authority to exercise control over a class action . . . .").  Plaintiffs' counsel recently admitted that she has unilaterally "disseminated" "notice . . . to drivers through informal means and setting up a website," and that "many if not most of [the drivers who opted out of arbitration] did so because of Plaintiffs' counsel's outreach efforts."  *See* Plaintiff's Opposition to Uber's Rule 23(f) Petition, No. 15-80169, Sep. 25, 2015, Dkt. No. 2-1 at n.13.  Given that Plaintiffs' counsel's website is adversarial, misleading, and one-sided,[1] and counsel's communications with putative class members have admittedly interfered with and influenced their decisions, the discovery sought is necessary to allow the Court and Uber to assess whether Plaintiffs' counsel's unilateral "notice" and "outreach efforts" have caused confusion amongst putative class members that is prejudicial to Uber and needs to be ameliorated.  *See, e.g., Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 353 (6th Cir. 2009) (affirming corrective notice to "unwind the confusion" caused by plaintiffs' attorney's unilateral communication with putative class members).

This discovery is also necessary for the Court to determine whether Plaintiffs' counsel is improperly "driving litigation."  *See Bodner v. Oreck Direct*, LLC, 2007 WL 1223777, at *2 (N.D. Cal. Apr. 25, 2007) (denying certification and noting "plaintiff's counsel, and not plaintiff, is the driving force

---

[1]  Plaintiffs' counsel's website references "Uber's misclassification of drivers" and "Uber's practice of telling passengers that the gratuity is included and not to tip the drivers, even though you are not getting a tip!" without clarifying that these are plaintiffs' *allegations*, that Uber disputes these claims, and that the Court has not ruled on the merits of these claims.  Further, the website trumpets that "the judge agreed with many of our arguments" and describes agency rulings that are "helpful to our lawsuit," without stating that the judge also disagreed with many of Plaintiffs' arguments, or describing agency rulings that go against Plaintiffs' position (*see, e.g., Alatraqchi v. Uber Techs.*, No. 11-42020 CT (Labor Comm. Aug. 1, 2012) (driver is an independent contractor)).

2

behind this action").  Indeed, Plaintiffs' counsel's potentially improper communications with and solicitation of putative class members, put squarely at issue by the Beltran Declaration, have given rise to a motion for leave to file a fourth amended complaint.  *See* www.llrlaw.com ("**IF YOU [ARE EXCLUDED FROM THE CLASS] and you want to be part of this case … CONTACT OUR FIRM** and sign up to bring your claim individually.")** (emphasis in original).  These concerns also pertain to Plaintiffs' counsel's continuing adequacy as class counsel and the ongoing question of whether certification is proper.  *See Creative Montessori Learning Centers*, 662 F.3d at 918 ("When class counsel have demonstrated a lack of integrity, a court can have no confidence that they will act as conscientious fiduciaries of the class."); *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) ("[C]ourts are required to reassess their class rulings as the case develops.").

Moreover, it is clear that class certification issues are far from settled, as Uber is seeking to appeal this Court's class certification order and Plaintiffs have submitted supplemental briefing on whether additional claims or subclasses warrant certification (*see* Dkt. No. 357).  Plaintiffs will be required to prove their adequacy once more in connection with any attempt to certify such claims or subclasses, *see Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981), and the discovery sought is directly relevant to that inquiry.  And the discovery also pertains to the *merits* of the claim certified for trial to the extent that the drivers who contacted Plaintiffs' counsel are in the certified class.  Ms. Beltran's hearsay statements directly relate to drivers' intent to form an independent contractor relationship with Uber—a factor described by *Borello* as "significant"— and thus go to the heart of Plaintiffs' claims.  *S.G. Borello & Sons, Inc. v. Dep't of Indus Relations*, 48 Cal. 3d 341, 358 (1989); *see also* Petition of Rule 23(f) Petition, No. 15-80169, Sep. 15, 2015, Dkt. No. 1-2 (discussing relevance of drivers' intent captured by the 400+ declarations that the Beltran Declaration seeks to undermine).

## II.      Plaintiffs Fail To Provide Any Basis For Their Objections Based on Attorney-Client Privileged and Work Product, and Refuse To Comply With the Court's Rules

With respect to the bulk of the information Uber seeks—the drivers' identities and contact information, and the means of communication—there is no colorable argument that such information is covered by attorney-client privilege.  "It is well established that the attorney-client privilege . . . does not ordinarily protect the client's identity."  *Tien v. Superior Court*, 43 Cal. Rptr. 3d 121, 127 (Cal. Ct. App. 2006) (citation omitted).  And regarding the remainder of what Uber seeks—the content of the communications at issue, *which occurred before class certification*—there is nothing in the record supporting Plaintiffs' blanket withholding of documents.  Plaintiffs' counsel has not established that *at the time of these communications* she was the drivers' attorney or that the drivers considered her their attorney.  *See Taylor v. Waddell & Reed, Inc.*, 2011 WL 1979486 at *3 (S.D. Cal. May 20, 2011) (no attorney-client privilege where "there was no effort whatsoever to convey even the impression…that an attorney-client relationship could be created"); *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002) ("no attorney-client relationship yet exists" "pre-certification").  With respect to drivers who are not in the certified class, these drivers were never clients of Plaintiffs' counsel, and Plaintiffs cannot invoke privilege as to their communications.  *Parks*, 235 F. Supp. 2d at 1084.

In any event, to the extent any attorney-client privilege exists, Plaintiffs' counsel has waived it by "placing the contents of the privileged communications at issue in the case," and "fundamental fairness requires that it be disclosed for the litigation to proceed."  *2,022 Ranch, L.L.C. v. Superior Court*, 7 Cal. Rptr. 3d 197, 210-11 (Cal. Ct. App. 2003), *disapproved of on other grounds by Costco v. Superior Court*, 219 P.3d 736 (Cal. 2009).  Here, Plaintiffs put the contents of the allegedly privileged communications at issue by disclosing the alleged contents through the Beltran

Declaration (*see* Dkt. 314 at ¶ 5-7) and Plaintiffs' counsel's repeated statements to the media (*see, e.g.,* Dara Kerr, *Uber heads to court over how it classifies its drivers*, CNET (Aug. 5, 2015); Marisa Kendall, *Lawyer: Uber Drivers Don't Want to Be Employees*, The Recorder (Jul. 9, 2015)).

Nor is the discovery Uber seeks covered by work product protection, which protects "documents and tangible things prepared by a party or his representative in anticipation of litigation." *See E.E.O.C. v. Safeway Store, Inc.,* 2002 WL 31947153, at *4 (N.D. Cal. Sept. 16, 2002) (Chen, J.) (citations omitted). Here, Uber simply seeks identifying information and communications related to a certain subset of drivers, the disclosure of which does not "compromise Plaintiffs' strategic or tactical position." *In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 428-429 (N.D. Cal. 2007) (Chen, J.) (witnesses' identities "do[] not compromise Plaintiffs' strategic or tactical position").

Finally, if Plaintiffs are standing on privilege or work product objections to withhold documents, they must produce a privilege log as required by this Court's Standing Order ¶ 12 and the Federal Rules. Without a privilege log, Uber has no way of assessing the applicability of the privilege. *See E.E.O.C. v. Safeway Store, Inc.*, 2002 WL 31947153, at *1 (privilege or work product assertions "must" "enable other parties to assess the applicability of the privilege or protection").

### III.    Plaintiffs' Remaining Objections Are Meritless

Plaintiffs' boilerplate objections that Uber's discovery requests are overbroad and unduly burdensome (and, for one request, vague) are no more than mere "recitation[s]," which this Court has held are "not adequate to voice [] successful objection[s]." *See Quiroz v. Cate*, 2012 WL 3236490, at *4 (N.D. Cal. Aug. 6, 2012). Uber's discovery requests are tied directly to the assertions in the Beltran Declaration and therefore are narrowly tailored and not vague, and Plaintiffs have not met their burden to show otherwise. Nor have Plaintiffs articulated with any specificity the burden allegedly imposed by the discovery.

Plaintiffs also assert privacy objections, but the facts demonstrate that the alleged infringement of privacy rights (if any) would be minimal and Uber's need for this information is overriding. The information sought by Uber—name, address, phone number, email address, employer, and job title—is not sensitive. Plaintiffs ignore that "the disclosure of names, addresses, and telephone numbers is common practice in the class action context." *Khalilpour v. CELLCO P'ship*, 2010 WL 1267749, at *3 (N.D. Cal. Apr. 1, 2010). And Plaintiffs have made no showing that disclosing the information sought would constitute even a minimum harm to privacy. *See Hernandez v. Best Buy Co.*, 2014 WL 5306888, at *9 (S.D. Cal. Oct. 15, 2014) (disclosure of contact information "does not constitute a serious invasion of privacy"). Notably, Plaintiffs have failed to show any *legitimate* concern of a "chilling effect." The record shows that a driver only may be deactivated if "(1) they fail to maintain a valid driver's license; (2) they pose a safety risk; or (3) their star rating falls below certain scores." Dkt. 298 at 6-7. Indeed, the named Plaintiffs themselves have not been deactivated even after bringing this suit, and no other driver has any reason to fear that they would be. Therefore, the balance between privacy interests and a litigant's need for information favors the latter. *Artis v. Deere & Co.*, 276 F.R.D. 348, 353 (N.D. Cal. 2011) (citations omitted) (where the information sought is not particularly sensitive, "privacy objections must yield to [a litigant's] request for the information"). Significantly, there is already a protective order in place that would protect the confidentiality of the drivers' information. *See Holman v. Experian Info. Solutions, Inc.*, 2012 WL 1496203, at *17 (N.D. Cal. Apr. 27, 2012) ("Numerous courts in the Northern District of California have allowed pre-certification discovery of putative class members' confidential information subject to a protective order . . . ."). There has been no indication anywhere that Uber's motives for seeking discovery are improper or that it seeks to interfere with any of the drivers'

rights.  To the contrary, and as detailed above, Uber seeks discovery to test factual assertions raised by Plaintiffs with their reply brief.

***

For all these reasons, Uber respectfully requests that the Court order that Plaintiffs must respond to Uber's discovery requests.  At minimum, Plaintiffs must produce a privilege log.


**PLAINTIFFS' POSITION:**  Plaintiffs dispute Uber's contention that they should be required to produce discovery related to the identity of drivers who have contacted their counsel, or discovery related to communications counsel has had with putative class members.  These discovery requests constitute a thinly veiled attempt to defeat class certification after the fact by seeking to re-hash arguments that have already been decided in Plaintiffs' favor, as well as by attacking the adequacy of class counsel (for which it is not even clear how this discovery would address that issue). Indeed, since Plaintiffs responded to these requests, the requests have been mooted by the Court's recent decision on class certification. *See* Dkt. No. 342.  Further, these communications are attorney-client privileged and constitute work product.  Requiring disclosure of these drivers' identities (and other personal information) would violate their privacy and interfere with the entire purpose of a class action (under which lead plaintiffs are permitted to pursue claims on behalf of a class without class members having to reveal themselves or their interest in a case). For all these reasons, the requests should be denied.

I.     **Uber Has Failed to Assert the Discovery's Relevance And Its Requests Are Now Moot.**

Uber fails to assert any substantive reason as to why this discovery is relevant to their case, instead arguing that Plaintiffs have "belatedly" raised a mootness objection.  However, any argument that Plaintiffs' objections are untimely is groundless, as the discovery was not mooted until the Court issued its class certification order (*after* Plaintiffs submitted their responses).  Now that a class has been certified, discovery regarding the identities of putative class members who have contacted Plaintiffs' counsel no longer has any even arguable relevance to the case.

Indeed, it is not even clear that the Court relied on the Beltran declaration in any way in reaching its decision to certify a class.  The Court conducted its own "*independent* review of the 400 declarations" submitted by Uber and found that they "have little probative value to the question at hand." *See* Dkt. 342 at 25 (emphasis added).  Furthermore, the Court found that "even if Uber *had* demonstrated some real tension between the goals of the class representatives and some statistically significant percentage of the class members, courts have refused to find inadequacy on these grounds," noting that "the protections conferred by [these laws] have a public purpose beyond the private interests of the workers themselves." *Id.* (internal citation omitted).  Under these circumstances, it makes no sense for Uber to argue that the confidential and privileged communications counsel has had with drivers that underlie the Beltran declaration have continuing relevance to the case where the Court has already rejected the notion that drivers' desires matter, and has independently discounted the utility of Uber's 400 declarations.

Moreover, even if this information had not been mooted by the Court's decision (which it has), subsequent events have already provided Uber with much of what it is asking for here (and all that it could be entitled to at this stage).  With respect to those drivers from California who are not part of the certified class, Uber now has a list of several hundred drivers who have authorized Plaintiffs' counsel to reveal their names (listed in Plaintiffs' recent motion for leave to file a fourth amended complaint, in which Plaintiffs seek to add them as individuals to the case, *see* Dkt. No. 355-1 – and

Plaintiffs intend to update this list periodically, with the Court's permission).  As for the drivers whom Plaintiffs have been in touch with but who are not listed on this proposed fourth amended complaint, many are not from California and thus are plainly irrelevant to these proceedings.  As to the remainder who are from California, they either have not (yet) authorized Plaintiffs' counsel to reveal their names as individuals who want to be listed on the case, or they are already class members in the certified class.  As to the latter group, Plaintiffs clearly have no obligation to disclose anything about their communications with these drivers as they are now *clearly* Plaintiffs' clients in the case.  *Bower v. Bunker Hill Co.*, 689 F. Supp. 1032, 1033 (E.D. Wash. 1985) ("[O]nce the court enters an order certifying a class, an attorney-client relationship arises between all members of the class and class counsel").  In any event, whether drivers are or are not part of the certified class currently, they contacted Plaintiffs' counsel for legal advice and thus attorney-client privilege attaches.  *See infra* Part II.

## II.   Uber's Argument That Discovery is Necessary for the Court is Without Merit.

Uber also supports its request for discovery it has no real need for by raising meritless arguments regarding Plaintiffs' counsel's adequacy and communications with putative class members. First, Judge Chen has already considered the adequacy of counsel and has rejected Uber's argument that the case is being "driv[en]" by counsel and a minority of drivers, noting that the Labor Code has a "public purpose," thus making irrelevant the argument that other drivers may prefer not to pursue the claims raised here.  *See* Dkt. 342 at 25.  Thus, Uber should not be permitted to raise this line of argument again, through this discovery dispute.

Uber also devotes a great deal of time to discussion of Plaintiffs' counsel's website regarding this case, suggesting that the requested discovery will somehow help the Court determine whether the website is improper.  First, Plaintiffs note that the website merely disseminates information about the case and includes copies of actual court decisions and proceedings related to the case.  Second, the website speaks for itself and it is not at all clear why the requested discovery regarding the identities of drivers who have contacted Plaintiffs' counsels' firm (or their communications) should have any bearing whatsoever on whether Plaintiffs' website is proper.  Finally, the use of websites and other technology to communicate with potential class members has become an accepted practice within our legal system.  *See Barton v. U.S. Dist. Court of Central Dist. of Cal.*, 410 F.3d 1104, 1112 (9th Cir. 2005); *Parris v. Superior Court*, 109 Cal.App.4th 285, 291 (2003).  Plaintiffs have a right to communicate with potential class members through this medium, and this right should only be limited "based on a clear record and specific findings" that a limitation is necessary. *Gulf Oil Co. v. Bernard*, 452, U.S. 89, 104 (1981); *Parris*, 109 Cal.App.4th at 290; *Self v. TPUSA, Inc.*, 2008 WL 4372928, *3 (D. Utah Sept. 19, 2008) (holding that "requiring Plaintiffs to shut down the website and choose another domain name would be excessive" and instead ordering the removal of specifically identified misleading language); *Frye v. Baptist Mem'l Hosp., Inc.*, 2008 WL 2117264, *4 (W.D. Tenn. May 20, 2008) (holding that website had been revised to address any issues raised by Defendants and did not constitute improper communications with putative class members); *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1344 (N.D. Ga. 2007) ("[I]t would be an abuse of discretion to totally proscribe plaintiffs … from communicating with potential class members through a website or other means prior to conditional certification" and noting that it would only intervene to the extent it deemed certain statements on the website "inappropriate").  Uber simply argues that the website promotes Plaintiffs' arguments in the case and does not fully explain Uber's defenses.  There is no requirement that Plaintiffs include Uber's advocacy as well, and indeed, Uber has itself posted on the internet its views about the case.  *See* Dkt. 358-1 (press release from Uber's managing counsel regarding class certification order).

Here, there is simply no evidence whatsoever that Plaintiffs have acted improperly by distributing information about the case through a website and, in any case, there is no evidence that the requested discovery has any connection to the website.  If Uber takes issue with specific aspects of Plaintiffs' website it should have raised those concerns through a meet and confer process and made those contentions specifically in this letter.

### III.    The Information Sought is Protected by Attorney-Client Privilege, the Work-Product Doctrine & Putative Class Members' Reasonable Expectation of Privacy.

Uber argues that the information sought is discoverable because there was no attorney-client privilege prior to the appointment of Plaintiffs' counsel as class counsel and no attorney-client privilege exists between Plaintiffs' counsel and putative class members. Uber is clearly incorrect. These drivers were contacting Plaintiffs' counsel in order to make inquiries about their rights, and thus, these communications are plainly attorney-client privileged. *See Barton*, 410 F.3d at 1111 ("Prospective clients' communications with a view to obtaining legal services are plainly covered by the attorney-client privilege under California law, regardless of whether they have retained the lawyer, and regardless of whether they ever retained the lawyer."); *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal.App.4th 110, 119-20 (1997) ("Under the Evidence Code, the attorney-client privilege applies to confidential communications within the scope of the attorney-client relationship even if the communication does not relate to pending litigation; the privilege applies not only to communications made in anticipation of litigation, but also to legal advice when no litigation is threatened") (internal quotations and citation omitted).[2]

Moreover, Uber's argument would frustrate one of the principal purposes of class actions: to enable workers to vindicate their rights where they might otherwise be dissuaded from doing so (whether because of the small value of individual claims, geographic dispersal, or fear of reprisal). Newberg on Class Actions § 4:65 (5th ed.) ("Courts are also more willing to certify classes when plaintiffs are vulnerable to reprisals by the defendant due to a continuing economic relationship, such as employment"). Thus, "[c]ourts have considered risk of reprisal by an employer as weighing in favor of certification…because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis." *Overka v. American Airlines, Inc.*, 265 F.R.D. 14, 24 (D. Mass. 2010); *see also Tierno v. Rite Aid Corp.,* 2008 WL 2705089, at *3 (N.D. Cal. July 8, 2008) ("forcing disclosure of the names of employees who have cooperated with Plaintiffs' counsel could have a chilling effect on class members' communications with counsel"); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 268 (D. Conn. 2002) ("a class action is the superior method for adjudication of the controversy, because [] class members may fear reprisal and would not be inclined to pursue individual claims").  To hold that the privilege does not apply to putative class members or individuals who were eventually excluded from the class would frustrate the purposes of a class action, by denying protection to these individuals and deterring them from coming forward to learn about their rights and seek legal counsel.  Here, where Plaintiffs' counsel's website directs persons interested in participating in the class to contact the firm, it is entirely clear that an attorney-client

---

[2] Contrary to Uber's assertions, Plaintiffs' counsel has not waived attorney-client privilege or work-product privilege. As the Court explained in *Marilley v. Bonham*, "the principal purpose of the doctrine of waiver of the attorney-client privilege is to protect against the unfairness that would result from a privilege holder *selectively disclosing* privileged communication to an adversary." 2013 WL 896755, *2 (N.D. Cal. Mar. 8, 2013).  Here, Plaintiffs' counsels' broad statements about being contacted by drivers regarding the case could not have created any prejudice to Uber and waiver should not be found.

relationship was formed once putative class members contacted Plaintiffs' law firm. *See Barton*, 410 F.3d at 1110 (attorney-client relationship was formed after putative class members filled out short questionnaire on counsel's website about their connection to the case because it was reasonable to assume that laymen believed that they were being solicited as clients). The fact that numerous putative class members have stressed the importance of confidentiality further evidences their belief that an attorney-client relationship has been formed.[3]

Similarly, although Uber contends that the work product doctrine does not apply (because it seeks only information as opposed to tangible objects or documents), it is more than apparent that the information sought through Uber's RFPs plainly falls within the protection of the work product doctrine. Notably, Judge Chen himself held in *Moreno v. Autozone, Inc.*, that documents relating to putative class members, including "their responses to questionnaires, [] their witness statements, and [] correspondence from them" all fall within the work product doctrine because they were created in anticipation of litigation. 2008 WL 906510, *2 (N.D. Cal. Apr. 1, 2008). This is exactly the kind of information that Uber seeks from Plaintiffs' counsel here.

Further, Uber argues that, even if the attorney-client privilege and work product doctrine would attach, neither objection can be asserted because biographical information is not sensitive enough to create a real infringement of privacy rights. Although Uber is correct in stating that, at times, courts have permitted the discovery of putative class members' contact information, this has generally been in cases where the *plaintiff* is requesting the information, in recognition of the fact that defendants will inherently have greater access to contact information for their own workforce. *See, e.g.*, *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal.4th 360, 373 (2007); *Moreno*, 2008 WL 906510, *5. Contrary to Uber's contentions, a heightened privacy concern exists where the party seeking biographical information is the defendant-employer. *See Moreno*, 2008 WL 906510, *5 (ordering that the names of putative class members be redacted from documents where class members' privacy interests outweighed defendant's interest in obtaining discovery). As the Court in *Tien v. Superior Court* explained, "the degree to which the identity of a client entails sensitive personal information may vary depending on the context." 139 Cal.App.4th 528, 541 (2006). "One of the more sensitive contexts is the employment context." *Id.* "Employees may be reluctant to engage in any act their employer may perceive as adversarial for fear of retaliation." *Id.* "Therefore, if employees feel their employer will be informed whenever they contract an attorney suing the employer, many would be deterred from exercising their right to consult counsel." *Id.* Thus, in

---

[3] Uber contends that "Plaintiffs have also made no showing that disclosing the information sought would constitute even a minimum harm to privacy." However, this is plainly not true. Many of the drivers who contacted Plaintiffs' counsel's firm still drive for Uber and have expressed concern about Uber knowing that they are involved in the litigation. Uber's protest that the protective order in this case will protect drivers' confidentiality does little good where the entity that drivers are most concerned about is Uber itself. Furthermore, Uber's assertion that its own interest is "overriding" is plainly overstated given the current posture of the case, in which a class has already been certified. In addition, Uber argues that lead plaintiffs in this case are still driving for Uber, as if to suggest this fact necessarily undermines drivers' fear that they may be at risk for retaliation if they are identified as having communicated with Plaintiffs' counsel. The fact that lead plaintiffs are still driving for Uber does not mean that there is no risk of retaliation for any drivers, and moreover, whether or not the drivers' fear is justified does <u>not</u> undermine the fact that drivers are concerned about retaliation and have expressed this concern to Plaintiffs' counsel. And it is interesting that Uber claims here that drivers could only be deactivated for a few enumerated reasons, when the Court has itself noticed that Uber's contracts allow for deactivation of drivers in the company's discretion. <u>*See* Dkt. 341, at 38</u> (noting that "*each one* [of Uber's seventeen contracts] contains an at-will termination clause")

order to avoid such a chilling effect, the Court should find that the putative class members' privacy rights outweigh Uber's minimal interest in obtaining their contact information and related communications.

***

For all these reasons, Plaintiffs request that the Court deny Uber's request for this discovery.[4]  Any privilege log Plaintiffs produce would simply consist of a heavily redacted list of drivers' names and would serve no purpose except to harass and distract from the substantive issues in the litigation.

Dated: October 23, 2015                     LICHTEN & LISS-RIORDAN, P.C.

                                            By: /s/ Shannon Liss-Riordan
                                            Shannon Liss-Riordan, *pro hac vice*
                                            Attorneys for Plaintiffs

Dated: October 23, 2015                     GIBSON DUNN & CRUTCHER, LLP

                                            By:  /s/ Theane Evangelis
                                            Theane Evangelis
                                            Attorneys for Defendant

**ECF ATTESTATION**

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document.

Dated: October 23, 2015                     GIBSON DUNN & CRUTCHER, LLP

                                            By /s/ Dhananjay S. Manthripragada
                                            Dhananjay S. Manthripragada
                                            Attorneys for Defendant

---

[4] Due to space limitations, Plaintiffs are not standing here on their objections to two of Uber's RFPs as potentially violative of certain sections of the NLRA, so the parties are not briefing this issue.

## Exhibit A

Note:  Reproduced below are Uber's Interrogatory and Requests for Production and Plaintiffs' Responses and Objections to the same.  An identical set of these discovery requests was served on each Plaintiff and the Plaintiffs submitted identical objections and the responses to each request. The numbering of these requests, however, varied from Plaintiff to Plaintiff.  The numbering reproduced below reflects those requests served on Plaintiff Gurfinkel.  Corresponding numbers for the same requests served on the other Plaintiffs are indicated in parentheses.

## INTERROGATORY NO. 23 (NO. 21 as to Colopy and O'Connor; NO. 23 as to Manahan):

IDENTIFY all members of the PUTATIVE CLASS who have had COMMUNICATIONS with YOU, YOUR counsel, or YOUR counsel's agents regarding DEFENDANT or this litigation, including, but not limited to:

a) the "more than 1,700 drivers" who use the UBER APP and have had COMMUNICATIONS with YOUR counsel regarding this litigation, according to Paragraph 2 of the BELTRAN DECLARATION;

b) the "hundreds of drivers" that Ms. Beltran has "spoken" to, according to Paragraph 4 of the BELTRAN DECLARATION; and

c) the 50 or more "drivers who had submitted declarations in support of Uber's Opposition" that Ms. Beltran "reached out to," according to Paragraph 9 of the BELTRAN DECLARATION.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 23 (NO. 21 as to Colopy and O'Connor; NO. 23 as to Manahan):

Plaintiff objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is subject to attorney-client and work product privilege.

## REQUEST FOR PRODUCTION NO. 57 (NO. 72 as to Colopy; No. 82 as to O'Connor; NO. 63 as to Manahan):

All DOCUMENTS RELATING TO, evidencing, or substantiating in any way the statements in Paragraphs 2 and 3 of the BELTRAN DECLARATION that "[i]n addition to the named plaintiffs in this action, more than 1,700 drivers have contacted [YOUR counsel] from across the country to express interest in this case and share information about their work driving for Uber," of which "approximately half have driven for Uber in the state of California," including but not limited to documents that are
sufficient to show:

a) the names of the "more than 1,700 drivers" who contacted YOUR counsel;

b) the contact information of the "more than 1,700 drivers," including but not limited to telephone numbers and email addresses;

c) the cities and states where each of the "more than 1,700 drivers" resides;

d) the means of any COMMUNICATIONS between the "more than 1, 700 drivers" and YOUR counsel; and

e) the contents of any COMMUNICATIONS between each of the "more than 1, 700 drivers" and YOUR counsel.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 57 (NO. 72 as to Colopy; No. 82 as to O'Connor; NO. 63 as to Manahan):**

     Plaintiff objects to this request on the grounds that it is overly broad and unduly burdensome, seeks privileged attorney-client communications, and seeks privileged personal information.

**REQUEST FOR PRODUCTION NO. 58 (NO. 73 as to Colopy; NO. 83 as to O'Connor; NO. 64 as to Manahan):**

All DOCUMENTS RELATING TO, evidencing, or substantiating in any way the statements in Paragraphs 4, 5, 6, 7, and 8 of the BELTRAN DECLARATION regarding COMMUNICATIONS between YOUR counsel and "hundreds of drivers who are putative class members to this action," including but not limited to documents that are sufficient to show:

    a) the names of the "hundreds of drivers" with whom Ms. Beltran has spoken;

    b) the names of the "drivers [Ms. Beltran] ha[ s] spoken with [who] have expressed support for the lawsuit";

    c) the names of the "drivers [who] ha[ve] expressed to [Ms. Beltran] that they would like to be classified as employees and have their expenses reimbursed"; (d) the names of the "drivers [who] feel that, through its policies, Uber exerts significant control over their work as drivers, forcing them to rely significantly on Uber to conduct their job";

    d) the names of the "drivers [who] appeared comfortable speaking with [Ms. Beltran], but indicated that they were afraid to become more involved in the lawsuit for fear of alienating Uber and the risk of being deactivated";

    e) the contact information of the "hundreds of drivers," including but not limited to telephone numbers and email addresses;

    f) the cities and states where each of the "hundreds of drivers" resides;

    g) the means of any COMMUNICATIONS between the "hundreds of drivers" and Ms. Beltran; and

    i) the contents of any COMMUNICATIONS between each of the "hundreds of drivers" and Ms. Beltran.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 58 (NO. 73 as to Colopy; NO. 83 as to O'Connor; NO. 64 as to Manahan):**

     Plaintiff objects to this request on the grounds that it is overly broad and unduly burdensome, and seeks privileged attorney-client communications as well as privileged personal information and work product.

**REQUEST FOR PRODUCTION NO. 59 (NO. 74 as to Colopy; NO. 84 as to O'Connor; NO. 65 as to Manahan):**

All DOCUMENTS RELATING TO, evidencing, or substantiating in any way the statements in Paragraph 9 of the BELTRAN DECLARATION regarding COMMUNICATIONS between YOUR counsel and "some of the drivers who had submitted declarations in support of Uber's Opposition," including but not limited to documents that are sufficient to show:

    a) the names of "the drivers who had submitted declarations in support of Uber's opposition" to whom Ms. Beltran "reached out";

    b) the names of the "approximately 50 drivers" with whom Ms. Beltran "spoke";

    c) the names of the drivers who stated that "Uber had not given them complete information about what this case is about";

    d) the names of the drivers who "expressed interest in being reimbursed for their expenses by Uber";

e) the names of the drivers who "expressed hesitation about putting their name on a statement opposing Uber in this lawsuit";

f) the contact information of these individuals identified in subparts (a)-(e), including but not limited to telephone numbers and email addresses;

g) the cities and states where each of these individuals resides;

h) the means of any COMMUNICATIONS between these individuals and Ms. Beltran; and

i) the contents of any COMMUNICATIONS between these individuals and Ms. Beltran.

## OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 59 (NO. 74 as to Colopy; NO. 84 as to O'Connor; NO. 65 as to Manahan):

Plaintiff objects to this request on the grounds that it is overly broad and unduly burdensome, seeks privileged attorney-client communications as well as privileged personal information and work product.

## REQUEST FOR PRODUCTION NO. 60 (NO. 75 as to Colopy; NO. 85 as to O'Connor; NO. 66 as to Manahan):

All DOCUMENTS provided to YOU or YOUR COUNSEL by members of the PUTATIVE CLASS regarding DEFENDANT or this litigation.

## OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 60 (NO. 75 as to Colopy; NO. 85 as to O'Connor; NO. 66 as to Manahan):

Plaintiff objects to this request on the grounds that it is vague, overly broad, and unduly burdensome.  Plaintiff also objects to this request to the extent that it constitutes an Unfair Labor Practice in violation of Section 7 and Section 8(a)(l) of the National Labor Relations Act.

## REQUEST FOR PRODUCTION NO. 61 (NO. 76 as to Colopy; NO. 86 as to O'Connor; NO. 67 as to Manahan):

All DOCUMENTS RELATING TO or evidencing any COMMUNICATIONS between YOU or YOUR counsel and members of the PUTATIVE CLASS regarding DEFENDANT or this litigation.

## OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 60 (NO. 76 as to Colopy; NO. 86 as to O'Connor; NO. 67 as to Manahan):

Plaintiff objects to this request on the grounds that it is overly broad and unduly burdensome, seeks privileged attorney-client communications as well as privileged personal information and work product.  Plaintiff also objects to this request to the extent that it constitutes an Unfair Labor Practice in violation of Section 7 and Section 8(a)(l) of the National Labor Relations Act.