UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 13-cv-03826-EMC<br><br>**ORDER DENYING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION**<br><br>Docket No. 346, 397 |

## I.  INTRODUCTION

Plaintiffs Douglas O'Connor, Thomas Colopy, Matthew Manahan, and Elie Gurfinkel are current or former drivers who have performed services for Defendant Uber Technologies, Inc. Docket No. 330 (Second Amended Complaint) (SAC) at ¶¶ 4-10. They are prosecuting the instant class action against Uber, alleging that Uber has violated California's Unfair Competition Law (UCL) by violating Section 351 of the Labor Code. On September 1, 2015, the Court certified a class action on behalf of the following individuals.

> All UberBlack, UberX, and UberSUV drivers who had driven for Uber in the state of California at any time since August 16, 2009, and who (1) signed up to drive directly with Uber or an Uber subsidiary under their individual name, and (2) are/were paid by Uber or an Uber subsidiary and in their individual name, and (3) did not electronically accept any contract with Uber or one of Uber's subsidiaries which contains the notice and opt-out provisions previously ordered by this Court . . . *unless* the driver timely opted-out of that contract's arbitration agreement.

Docket No. 276 (Certification Order) at 67.

Uber now moves to compel arbitration as to absent class members who are subject to the

2013 Agreements to arbitrate their disputes with Uber.[1]  Docket No. 346 (Mot.) at 1.  Uber's motion to compel arbitration came on for hearing before the Court on November 4, 2015.  For the reasons set forth in the Court's order denying arbitration in *Mohamed v. Uber Technologies, Inc.*, Case No. C-14-5200-EMC, 2015 WL 3749716 (N.D. Cal. June 9, 2015), as supplemented below, the Court **DENIES** Uber's motion to compel arbitration under the 2013 Agreements.[2]  The Court also **DENIES** Uber's *ex parte* motion to compel arbitration of the class certified in the Court's December 9, 2015 supplemental class certification order.  Docket No. 397.

## II.   BACKGROUND

Uber licenses a software application that connects riders with drivers.  In order to use the Uber app, drivers are required to enter into a licensing agreement and driving addenda with Uber or, in the case of uberX drivers, Uber's wholly-owned subsidiary, Rasier.  Docket No. 347 (Colman Dec.) at ¶ 9.

From February 2013 to December 10, 2013, Uber and Rasier issued four agreements and one driver addendum that incorporate the arbitration provision at issue in the instant motion (collectively, 2013 Agreements).  Colman Dec. at ¶ 10.  The relevant agreements are listed below:

| EXH.[3] | NAME | DATES ISSUED | PLATFORM |
|---|---|---|---|
| A | February 2013 Service Agreement (Rasier) | February 2013 to August 27, 2013 | uberX |
| B | July 2013 Licensing Agreement | July 24, 2013 to December 10, 2013 | UberBLACK; UberSUV |
| C | July 2013 Driving Addendum | July 24, 2013 to December 10, 2013 | UberBlack; UberSUV |
| D | August 2013 Service Agreement | August 27, 2013 to October 22, 2013 | uberX |

---

[1] In the instant motion, Uber states that it "recognizes that the Court previously rejected its motion to compel arbitration in the related cases of *Gillette* . . . and *Mohamed* . . . , and that by certifying the Class in this case, it has implicitly rejected the argument that the Absent Class Members claims must be arbitration."  Mot. at 1-2.  Uber thus brings this motion to "preserve" its arbitrability arguments against the absent class members.  *Id.* at 2.

[2] Uber requests judicial notice of the JAMS Policy on Employment Arbitration, Minimum Standards of Procedural Fairness, effective July 15, 2009.  Docket No. 348 (Request for Judicial notice) (RJN).  The RJN is granted.  Other district courts have taken judicial notice of the JAMS rules under Federal Rule of Evidence 201(b).  *See Lou v. M.A. Labs., Inc.*, Case No. 12-05409 WHA, 2013 U.S. Dist. LEXIS 70665, at *3-4 (N.D. Cal. May 17, 2013).

[3] The referenced exhibits are attached to the Colman Declaration.

| | (Rasier) | | |
|---|---|---|---|
| E | October 2013 Service Agreement | October 22, 2013 to December 10, 2013 | uberX |

The July 2013 Agreements and the three uberX Service Agreements "contain a virtually identical arbitration agreement . . . ." Mot. at 4; *see* February 2013 Service Agreement at 11, July 2013 Service Agreement at 11, August 2013 Service Agreement at 11, October 2013 Service Agreement at 11. Each of the arbitration agreements share a number of key features. First, each agreement requires all disputes not expressly exempted from the scope of the arbitration agreement "to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." *E.g.*, February 2013 Service Agreement at 11.[4] Second, each arbitration agreement prohibits individuals from pursuing class, collective, or representative claims.[5] *E.g.*, *id.* at 13. The arbitration agreement requires that the civil court should determine whether the class action, collective action, and representative action waivers are enforceable, and states that the waiver is not severable.[6] *Id.* Third, each arbitration agreement contains a delegation clause that provides that "disputes arising out of or relating to the interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any provision of the Arbitration Provision" shall be decided by the

---

[4] For example, the arbitration clause provides: "**Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.**" *E.g.*, February 2013 Service Agreement at 11 (original emphasis).

[5] Specifically, section (v) provides: "(a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ('Class Action Waiver'). . . . ¶ (b) There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ('Collective Action Waiver'). . . . ¶ (c) There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general action ('Private Attorney General Waiver')." *E.g.*, February 2013 Service Agreement at 13.

[6] Section (v) states: "Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator." *E.g.*, February 2013 Service Agreement at 13.

3

1  arbitrator.[7]  *E.g.*, *id.* at 11.  Fourth, each arbitration provision contains an opt-out clause that
2  purports to allow drivers to avoid the arbitration clause altogether.  *E.g.*, *id.* at 14-15.

### III.  DISCUSSION

In August 2013, Plaintiffs filed an emergency motion for a protective order to strike the arbitration clauses.  Docket Nos. 4, 14.  On December 6, 2013, the Court issued an order "declin[ing] to rule on the unconscionability of the arbitration provision . . . [b]ecause there is no allegation that a motion to compel arbitration is pending or threatened . . . ."  Docket No. 60 at 4.  Uber subsequently filed a motion to compel arbitration in the related case, *Mohamed v. Uber Technologies, Inc.*  There, the Court determined that the July 2013 Licensing Agreement's arbitration provision was unconscionable and therefore unenforceable.

First, the Court found a valid agreement to arbitrate was formed because the agreement resembled a "clickwrap agreement," requiring the driver to review the relevant terms of the hyperlinked agreement before the driver could continue using the Uber app.  *Mohamed*, 2014 WL 3749716, at *7.  The Court found it irrelevant whether the driver actually clicked the link or read the terms of the contract because "[u]nder California law '[a] party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing.'"  *Id.* (quoting *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g*, 89 Cal. App. 4th 1042, 1049 (2001)).

Next, the Court determined that the delegation clause was ambiguous because it conflicted with Section 14.1 (general jurisdiction provision) and Section 14.3(v) (class, collective, and representative action waiver).  *Id.* at *8.  Furthermore, even if the delegation clause was clear and unmistakable, it was unenforceable because it was a contract of adhesion, and the fee-splitting provision required the payment of hefty fees simply to arbitrate arbitrability.  *Id.* at *16.

Because the delegation clause was ineffective, the Court determined that it had the

---

[7] Immediately following the bolded paragraph requiring that disputes (except as otherwise provided) must be resolved by an arbitrator, the arbitration clause states: "Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision."  *E.g.*, February 2013 Service Agreement at 11.

1  authority to decide whether the July 2013 Licensing Agreement's arbitration agreement was
2  enforceable under California law and the Federal Arbitration Act (FAA). *Id.* at *20. The Court
3  determined that there was procedural unconscionability because the agreement was a contract of
4  adhesion which buried the arbitration clause on the eleventh page. *Id.* at *21. The Court also
5  explained that the contract was one of adhesion despite the opt-out clause because "[u]nder any
6  standard, the 2013 Agreement's opt-out provision was illusory because it was highly conspicuous
7  and incredibly onerous to comply with." *Id.* The Court then found there was substantive
8  unconscionability based on five terms: the private attorney general act (PAGA) waiver, the fee-
9  and cost-splitting provision, the confidentiality clause, the intellectual property claim carve-out,
10 and the unilateral modification provision. *Id.* at *25, 27-30. Finally, the Court concluded that
11 severance was improper because the PAGA waiver could not be severed by the terms of the
12 arbitration agreement, and that the agreement was permeated with substantively unconscionable
13 terms. *Id.* at *25-26 (finding that subsection (v)'s specific, non-severable PAGA clause controls
14 over section (ix)'s general severability clause), 31.

15 The Court finds that this analysis still applies generally to Uber's instant motion. Below,
16 the Court addresses the new issues raised by the parties, as well as specific arguments regarding
17 the 2013 Service Agreements.

18 A.   Valid Agreement to Arbitrate

19 Plaintiffs assert that there was no valid agreement because the agreement was presented on
20 "a tiny iPhone screen when most drivers were about to go on-duty and start work." Docket No.
21 353 (Opp.) at 5. The Court considered this argument in *Mohamed*, and again rejects it because
22 "for the purposes of contract *formation*, it is essentially irrelevant whether a party actually reads
23 the contract or not, so long as the individual had a legitimate *opportunity* to review it." 2014
24 WL3749716, at *7. Furthermore, the fact that the drivers were about to go on-duty and start work
25 did not deprive them of the opportunity to review the contract before assenting. Plaintiffs present
26 no evidence that even under these circumstances, drivers could not take the time to go over the
27 contract. The Court again finds that there was a valid agreement to arbitrate.
28

B.  Delegation Clause

1.  General Jurisdiction Provision

In the July 2013 Agreement, Section 14.1 includes a governing jurisdiction provision, which states:

> any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Service or Software shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California. If any provision of the Agreement is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced to the fullest extent under law.

July 2013 Agreement at § 14.1. Uber now contends that the delegation provision may not be deemed ambiguous by virtue of this general jurisdiction provision because the general jurisdiction provision is not part of the arbitration agreement. Mot. at 10. Instead, the arbitration agreement "*carves out* particular types of disputes from the scope of arbitration," and the catchall jurisdictional reservation applies to those disputes. *Id.* at 10-11 (original emphasis). However, the general jurisdiction provision on its face is not so limited, as it states that "*any* disputes, actions, claims or causes of action arising out of or in connection with this Agreement" will be subject to the "*exclusive*" jurisdiction of the San Francisco courts, before going on to state that "*any*" provision held to be invalid or unenforceable shall be stricken. This is bolstered by the very next sentence, which requires that any provision held to be invalid or unenforceable shall be stuck (presumably by the courts given exclusive jurisdiction). July 2013 Agreement at § 14.1 (emphasis added). Thus, the clear and unmistakable delegation requirement necessary to overcome the presumption that arbitrability is for the Court to decide is not satisfied. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise") (internal citation and modifications omitted).

Uber's cases are distinguishable because in each of these cases, the allegedly "conflicting" term did not require the dispute to be brought in a particular court or authorize the courts to decide the enforceability of the arbitration agreement. *Boghos v. Certain Underwriters at Lloyd's of*

*London* concerned a service of suit clause that required the defendant to submit to the jurisdiction of the United States.[8]  36 Cal. 4th 495, 503 (2005).  *Dream Theater, Inc. v. Dream Theater* was a venue provision that said suits "may" be brought in Los Angeles.  124 Cal. App. 4th 547, 556-57 (2004).  *Fallo v. High-Tech Institute* was an Eighth Circuit case which involved a choice-of-law provision that referred to "court costs."  559 F.3d 874, 879-80 (8th Cir. 2009).  Finally, *Oracle America, Inc. v. Myriad Group A.G.* simply acknowledged that some countries may require the right to seek judicial relief.  724 F.3d 1069, 1075 (9th Cir. 2013).  In *Boghos*, *Dream Theater, Inc.*, and *Fallo*, the courts concluded that the mere reference to a judicial forum was insufficient to create ambiguity because there are instances in which a party could go to court consistent with arbitration, *i.e.*, to enforce an arbitral award or to seek emergency relief.  *Boghos*, 36 Cal. 4th at 503; *Dream Theater, Inc.*, 124 Cal. App. 4th at 556; *Fallo*, 559 F.3d at 879.  In contrast, Section 14.1 goes a step further.  Rather than relying on an inference to find a conflict as was what essentially was done in the above cited cases, Section 14.1 *explicitly* requires that *any* disputes arising out of or in connection with the arbitration agreement be subject to the *exclusive* jurisdiction of the San Francisco courts, and then goes on to immediately state: "If any provision of the Agreement is held to be invalid or unenforceable, such provision shall be struck and the remaining provision shall be enforced to the fullest extent under law."  July 2013 Licensing Agreement at § 14.1.  As the Court in *Mohamed* explained:

> given its placement in the very same paragraph that provides that all disputes arising out of the Uber contracts will be settled *in court*, it is reasonable to assume that the typical Uber driver might read this severability language to provide further evidence that Uber intended any determination as to whether 'any provision of this Agreement is . . . invalid or unenforceable' to be made in court, and not arbitration.

2015 WL 3749716, at *10.  In short, unlike the allegedly "inconsistent" provisions in *Boghos*, *Dream Theater, Inc.*, *Fallo*, and *Oracle*, Section 14.1 specifically contemplates the ability of the court to find a provision unenforceable, creating a direct contradiction with the delegation clause

---

[8] Notably, the Court did consider *Boghos* in its *Mohamed* order, but found that the question before the California Supreme Court was not the enforceability of a delegation clause, and thus the heightened "clear and unmistakable" standard was not applied.  2014 WL 3749716, at *11 n.19.

7

that states only the arbitrator decides the arbitration agreement's enforceability. Thus, there is no clear and unmistakable delegation clause in the July 2013 Licensing Agreement.[9]

### 2. Private Attorney General Act (PAGA) Waiver

A different analysis is required for the 2013 Service Agreements because these agreements do not include the general jurisdiction provision. However, as noted in *Mohamed*, there is an additional inconsistency because the arbitration clause stipulates that the enforceability of the arbitration agreement's class, collective, and representative action waivers "may be determined only by a court of competent jurisdiction and not by an arbitrator." *E.g.*, February 2013 Service Agreement at 13; July 2013 Licensing Agreement at § 14.3(v). The Court found that this contradicted the delegation clause's requirement that "'*without limitation*, disputes arising out of or relating to interpretation or application of this Arbitration Provision' shall be decided by an arbitrator." 2015 WL 3749716, at *10 (quoting July 2013 Licensing Agreement at § 14.3(i)).

Additionally, Section 14.3(v)(c) states:

> There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action ("Private Attorney General Waiver"). **The Private Attorney General Waiver shall not be severable from this Arbitration Provision in any case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable.** In such instances and where the claim is brought as a private attorney general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.

February 2013 Service Agreement at 13; July 2013 Licensing Agreement at § 14.3(v)(c); August 2013 Agreement at 13; October 2013 Service Agreement at 13 (bold added). This clause contemplates that a "civil court" of competent jurisdiction will adjudicate the enforceability of the PAGA waiver. Moreover, by adjudicating that issue, the Court has the indirect power to invalidate the entire arbitration agreement because the PAGA waiver[10] cannot be severed. *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1098 (9th Cir. 2009) (finding arbitration agreement as a whole was unenforceable where an unenforceable class waiver was non-severable by the terms of

---

[9] *See also* Docket No. 395 (Supplemental Class Certification Order) at 10-11, fn. 7.
[10] As explained in section III.C below, the non-severable PAGA waiver here is a general PAGA waiver, unlike that in the later 2014 and 2015 contracts which are limited only to prohibiting PAGA in arbitration.

the agreement).

For these reasons, there is no clear and unmistakable delegation clause that precludes the Court from adjudicating enforceability.

### 3. Unconscionability of the Delegation Clause

Even if a delegation clause is "clear and unmistakable," the Court must still decline to enforce it if the delegation clause itself is unconscionable or otherwise unenforceable under the Federal Arbitration Act (FAA). *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71-74 (2010). In *Mohamed*, the Court concluded that the July 2013 Licensing Agreement's delegation clause was itself unconscionable despite the opt-out clause because the opt-out clause was rendered meaningless by its highly inconspicuous nature and "extremely onerous" requirements. *Id.* at *13.

Uber also now argues that pursuant to the California Supreme Court's ruling in *Sanchez v. Valencia Holding Co., LLC*, it is not required to highlight or specifically call attention to the arbitration agreement. Mot. at 13 (citing *Sanchez*, 61 Cal. 4th 899, 914 (2015)). In *Sanchez*, the California Supreme Court found that the defendant 'was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to Sanchez's attention," suggesting that "[a]ny state law imposing such an obligation would be preempted by the FAA." 61 Cal. 4th at 914. However, *Sanchez* concerned the issue of whether there was an agreement to arbitrate; it held the clause need not be conspicuous in order for it to be part of an agreement. As to the distinct issue of unconscionability, the *Sanchez* court concluded that there was "some degree of procedural unconsionability" because the contract was one of adhesion. *Id.* at 915. Here, the contract at issue is adhesive because as previously found by this Court, the opt-out provision was illusory. 2015 WL 3749716, at *14. Thus, even under *Sanchez*, the arbitration agreement is procedurally unconscionable. This then opens the door to analysis of substantive unconscionability.

Uber also contends that even if the fee-splitting provision is substantively unconscionable, the Court should simply sever that provision, and then enforce the delegation clause. Mot. at 16. Uber cites no case law in which a court has severed an unconscionable term in order to preserve a

9

delegation clause, and fails to explain why the Court may sever the fee-splitting provision in order to prevent the severance of the delegation clause.  In any case, severing the fee-splitting provision leaves the contract silent as to how fees and costs will be apportioned.  As the default rule of California Code of Civil Procedure Section 1284.2 is that parties to an arbitration agreement share costs "[u]nless the arbitration agreement otherwise provides or the parties to an arbitration otherwise agree," severance of the fee-splitting provision still leaves the parties in the same exact position as if the fee-splitting provision applied.

Thus, as in *Mohamed*, the Court finds that even if the delegation clause was clear and unmistakable, it would still be unenforceable because it is unconscionable.

C.      Unconscionability of the Arbitration Agreement

As discussed above and as found in *Mohamed*, the agreements are procedurally unconscionable despite the opt-out clause and post-*Sanchez*.  The Court also finds that there is significant substantive unconscionability because of the following terms: (1) a PAGA waiver, (2) a fee- and cost-splitting provision,[11] (3) a confidentiality clause, (4) an intellectual property claim carve-out, and (5) a unilateral modification provision.  The Court addresses each of Uber's new arguments in turn.

1.      PAGA Waiver

Uber again argues that the PAGA waiver is not substantively unconscionable because the FAA preempts the anti-waiver rule articulated by the California Supreme Court in *Iskanian*.  Mot. at 24.  Since the Court's decision in *Mohamed*, the Ninth Circuit has held that the *Iskanian* rule is a "generally applicable" contract defense, which is not preempted by the FAA.  *Sakkab*, 803 F.3d at 432-33.  The Court declines to ignore this binding Ninth Circuit precedent.

2.      Confidentiality Clause

The Court previously found that the confidentiality clause was substantively unconscionable because it placed Uber in a far superior legal position by ensuring that potential

---

[11] Uber does not separately address the fee- and cost-splitting provisions with respect to the validity of the arbitration agreement as a whole.  For the same reasons discussed in Section III.C.2 of *Mohamed*, the Court finds that these provisions are unconscionable.

opponents could not have access to precedent while Uber accumulated a wealth of knowledge on how to arbitrate claims most effectively. *Mohamed*, 2015 WL 3749716, at *28. The confidentiality clause could also prevent potential plaintiffs from building a case against the company. *Id.* In addition to *Velaquez v. Sears*, Case No. 13cv680-WQH-DHB, 20132 U.S. Dist. LEXIS 121400 (S.D. Cal. Aug. 26, 2013), Uber cites three new cases in which other courts have upheld identical or virtually identical confidentiality provisions. The Court finds that like *Velaquez*, the reasoning in these cases is unpersuasive.

First, in *Chin v. Advanced Fresh Concepts Franchise Corp.*, the Court of Appeal did not address either of the concerns above. The appellate court focused solely on the lack of neutrality of the arbitrator, as the plaintiff had argued that the confidentiality clause was unfair because the franchisor derived an advantage from repeatedly appearing before the same arbitrators. 194 Cal. App. 4th 704, 714 (2011). The *Chin* court never addressed the "repeat player" concern with respect to the franchisor "accumulat[ing] a wealth of knowledge on how to arbitrate the claims most effectively," or the burden placed on a plaintiff to build a case if they are unable to speak to third parties. *Contrast with Mohamed*, 2015 WL 3749716, at *28 (citation omitted).

The *Andrade v. P.F. Chang's China Bistro, Inc.* court in turn concluded that the confidentiality clause *alone* did not render the arbitration agreement unconscionable. Case No. 12CV2724 JLS JMA, 2013 WL 5472589, at *9 (S.D. Cal. 2013). The district court cited *Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007) for the proposition that "confidentiality agreements alone do not necessarily render an arbitration agreement substantively unconscionable," and pointed out that the cases cited by the plaintiffs had multiple provisions that were substantively unconscionable. *Id.* Furthermore, the district court found that a nearly identical confidentiality clause had been upheld in *Chin*, due to the clause's "limited breadth." *Id.* But again, the *Chin* court was concerned with the arbitrator's neutrality, not the fact that one party could be placed in a far superior legal position by being a repeat player with access to precedent, or the difficulty of a plaintiff to build a case. As these concerns do exist here, along with the existence of the multiple unconscionable terms that was not present in *Andrade*, the Court declines to follow *Andrade*.

11

Finally, *Morvant v. P.F. Chang's China Bistro, Inc.* did not specifically address the confidentiality clause issue. 870 F. Supp. 2d 831 (N.D. Cal. 2012).

For the reasons stated here and in *Mohamed*, the Court again finds that the confidentiality clause is substantively unconscionable.

### 3. Intellectual Property Claim Carve-Out

Uber contends that the carve-out for intellectual property rights in the July 2013 Licensing Agreement is not substantively unconscionable because it is mutual. Mot. at 21-23. Uber argues that while intellectual property claims are carved out, so too are claims that are more likely to be asserted against Uber, such as ERISA claims for employee benefits, worker's compensation claims, state disability insurance claims, and unemployment benefit claims. Mot. at 22. In other words, "the agreements also carve out claims that are indisputably more likely to be brought by *employees*." Reply at 12 (original emphasis).

This argument fails for one simple reason: Uber has strenuously argued that all of its drivers are *not* employees but independent contractors. In fact, the July 2013 Licensing Agreement specifically states that "this Agreement is not an employment agreement or employment relationship. The parties further agree that no employment contract is created between Uber and the Drivers." July 2013 Licensing Agreement at § 7.2; *see also* July 2013 Driving Addendum at § 6 (requiring that the driver state that "he/she specifically desires to operate as an independent contractor with respect to the transportation services performed under this addendum"). As an independent contractor, the drivers could never bring any of the "employee" claims that the arbitration agreement carves out. The July 2013 Licensing Agreement's carve-out, under Uber's own argument in this case, would therefore be illusory and would lack any mutuality, making it unconscionable.

### 4. Unilateral Modification Provision

Finally, Uber asserts that the July 2013 Licensing Agreement's unilateral modification term is not substantively unconscionable, relying on the same lower court decisions that the Court previously found unpersuasive in *Mohamed*, as well as the unpublished Ninth Circuit decision in *Ashbey v. Archstone Property Management, Inc.* 612 Fed. Appx. 430 (9th Cir. 2015). There, the

12

Ninth Circuit found that a unilateral modification provision was "not substantively unconscionable because they are always subject to the limits 'imposed by the covenant of good faith and fair dealing implied in every contract.'" *Id.* at 432 (quoting *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 706 (2013)).

*Ashbey* does not address published Ninth Circuit precedent which expressly found that "the unilateral power to terminate or modify the contract is substantively unconscionable." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003); *see also Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 926 (9th Cir. 2013). Furthermore, *Ashbey* relies on *Serpa*, a case that the Court discussed at length in *Mohamed* and concluded was not persuasive because "the duty of good faith will only prohibit Uber from imposing bad faith modifications, not *all* one-sided modifications." 2015 WL 3749716, at *30 (emphasis added). Thus, the Court again finds that the July 2013 Licensing Agreement's unilateral modification provision is substantively unconscionable.

For the reasons stated in *Mohamed*, the Court will not sever the unconscionable terms. The number of substantively unconscionable terms suggests that the arbitration clause is permeated with unconscionability, which weighs against severance. *See Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 122 (2000). The 2013 Service Agreements each contain three unconscionable terms, including the PAGA waiver, while the July 2013 Licensing Agreement has five unconscionable terms. When considered with the fact that this is a contract of adhesion, the Court finds that severance is not warranted under *Armendariz*.

D.  <u>Unenforceability as a Matter of Public Policy</u>

In addition to finding the arbitration agreement unconscionable, the arbitration agreement as a whole is unenforceable because as explained in the Court's supplemental class certification order filed on December 9, 2015, it includes an unenforceable PAGA waiver which is not severable. Docket No. 365 at 13-21. Indeed, the Court's analysis of the 2013 Agreements is even simpler than that of the 2014 and 2015 Agreements because the PAGA waiver in the 2013 Agreement is a blanket, non-severable waiver. Unlike the 2014 and 2015 Agreements, where the non-severable PAGA waiver appeared to be limited to the provision preventing PAGA in

arbitration, the non-severable PAGA waiver here is broader. It states:

> There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action ("Private Attorney General Waiver"). The Private Attorney General Waiver *shall not be severable from this Arbitration Provision* in any case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances and where the claim is brought as a private attorney general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.

*See* February 2013 Service Agreement at 13; July 2013 Agreement at § 14.3(v)(c) (emphasis added). This PAGA waiver bars *any* PAGA claim from all fora, and waiver expressly is non-severable from the entire arbitration provision.[12] This prohibition on all PAGA claims is further emphasized by the second to last paragraph of section (v), which states that if an individual brings "a class, collective or representative action *in any forum*, the Company may lawfully seek enforcement of this Arbitration Provision and the Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver under the Federal Arbitration Act and seek *dismissal* of such class, collective or *representative actions* or claims." *See* February 2013 Service Agreement at 13; July 2013 at § 14.3(v) (emphasis added).

Thus, the 2013 Agreements contain a non-severable blanket PAGA waiver. Such a waiver is void a matter of public policy under *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014) and *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015). The inability to sever the PAGA waiver causes the entire arbitration agreement to fail. *See Chalk*, 560 F.3d at 1098.

E.   National Labor Relations Act

In the alternative, Plaintiffs argue that the arbitration agreement is unenforceable because it violates the drivers' rights under the National Labor Relations Act to file a class action. Opp. at 22. Plaintiffs contend that the National Labor Relations Board has held that a mandatory arbitration agreement provision that waives the right to maintain a class or collective action is an

---

[12] Even if the last sentence states that the PAGA claim must be litigated in a civil court, this does not negate the general prohibition on any PAGA claim from being brought under the first sentence of the paragraph.

14

1  unfair labor practice. Opp. at 23 (citing *In re D.R. Horton, Inc.*, 357 NLRB No. 184 (Jan. 3,
2  2012); *Murphy Oil USA, Inc.*, 361 NLRB No. 72 (Oct. 28, 2014).
3        The vast majority of courts have not followed the Board's rulings. The Second, Fifth, and
4  Eighth Circuits have specifically considered the Board's ruling in *In re D.R. Horton, Inc.* and
5  declined to follow its reasoning, noting that the Board's interpretation is contrary to the Supreme
6  Court's ruling in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). *See D.R. Horton, Inc.*
7  *v. N.L.R.B.*, 737 F.3d 344, 359-60 (5th Cir. 2013); *Murphy Oil USA, Inc. v. N.L.R.B.*, Case No. 14-
8  60800, 2015 U.S. App. LEXIS 18673, at *9-10 (5th Cir. Oct. 26, 2015); *Sutherland v. Ernst &*
9  *Young LLP*, 726 F.3d 290, 297 n. 8 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050,
10  1053-54 (8th Cir. 2013). The Ninth Circuit has not decided the issue, but noted in *Richards v.*
11  *Ernst & Young LLP* that the "two courts of appeals, and the overwhelming majority of the district
12  courts, to have considered the issue have determined that they should not defer to the NLRB's
13  decision in *D.R. Horton* on the ground that it conflicts with the explicit pronouncements of the
14  Supreme Court concerning the policies undergirding the [FAA]." 744 F.3d 1072, 1075 n.3 (9th
15  Cir. 2013). In light of the above analysis, the Court need not reach this issue.

F.    <u>Uber's *Ex Parte* Motion to Compel Arbitration</u>

      On December 9, 2015, the Court certified the following subclass (December 9, 2015 subclass):

> All UberBlack, UberX, and UberSUV drivers who have driven for Uber in the state of California at any time since August 16, 2009, and who (1) signed up to drive directly with Uber or an Uber subsidiary under their individual name, and (2) are/were paid by Uber or an Uber subsidiary directly and in their individual name, and (3) did not electronically accept any contract with Uber or one of Uber's subsidiaries which contain the notice and opt-out provisions previously ordered by this Court (including those contracts listed in the Appendix to this Order), *unless* the driver timely opted-out of that contract's arbitration agreement.

Docket No. 395 at 32. Following this order, Uber filed an *ex parte* motion to compel arbitration of the December 9, 2015 subclass. Docket No. 397 at 1. For the reasons set forth in Docket No. 395, at Section II.B.3 (analyzing the enforceability of the 2014 and 2015 arbitration agreements), the Court **DENIES** Uber's *ex parte* motion to compel arbitration of the December 9, 2015 subclass.

15

## V. CONCLUSION

For the reasons stated above and in *Mohamed*, the Court **DENIES** Uber's motions to compel arbitration of the absent class members.

This order disposes of Docket No. 346, 348, and 397.

**IT IS SO ORDERED**.

Dated: December 10, 2015

_____
EDWARD M. CHEN
United States District Judge