UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | Case No. 13-cv-03826-EMC<br><br>**ORDER CONDITIONALLY GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STAY**<br><br>Docket No. 411 |

For the reasons stated herein, the Court **DENIES** Uber's request for a complete stay. Trial for both certified subclasses scheduled for June 20, 2016 will proceed; however the Court will conditionally stay an entry of judgment as to the December 9, 2015 subclass while appeal of the matters at issue are pending.

### I. INTRODUCTION

On December 9, 2015, this Court certified a supplemental subclass of drivers who had signed the 2014 and 2015 contracts, but had not opted out of the arbitration agreement (hereafter, December 9, 2015 subclass). Docket No. 395 (Supp. Class Order). In certifying this class, the Court found that the arbitration agreements in the 2014 and 2015 contracts were unenforceable because they contained an illegal, non-severable Private Attorney General Act (PAGA) waiver. *Id.* at Section II.B.3. The Court also denied Uber's motion to compel arbitration of absent class members in the original class of drivers certified on September 1, 2015 (hereafter, September 1, 2015 class). Uber has appealed this Court's orders certifying the supplemental class and denying Uber's motion to compel arbitration of absent class members to the Ninth Circuit. *See* Ninth Circuit Case No. 15-17420.

Currently pending before the Court is Uber's motion to stay all proceedings pending

appeal. Docket No. 411 (Mot.). Uber's motion came on for hearing before the Court on December 17, 2015. For the reasons set forth below, the Court **CONDITIONALLY GRANTS IN PART AND DENIES IN PART** Uber's motion to stay.

## II.    DISCUSSION

A.    Legal Standard

Whether to issue a stay pending appeal is "an exercise of judicial discretion . . . to be guided by sound legal principles." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009); *see also Guifu Li v. A Perfect Franchise, Inc.*, No. 10-cv-1189-LHK, 2011 WL 2293221, at *2 (N.D. Cal. Jun. 8, 2011). In determining whether a stay should issue, the Court considers four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) whether the public interest favors a stay.

*In re Carrier IQ Consumer Privacy Litig.*, No. C-12-md-2330 EMC, 2014 WL 2922726, at *1 (N.D. Cal. Jun. 13, 2014) (citations omitted); *see also Leiva-Perez v. Holder*, 40 F.3d 962 (9th Cir. 2011).

B.    Likelihood of Success on the Merits

To satisfy this first factor, although the moving party need not show that "success on appeal is more likely than not," *Guifu Li*, 2011 WL 2293221, at *3 (citation omitted), it must make a "strong showing" on the merits. *Morse v. Servicemaster Global Holdings, Inc.*, No. C-10-628-SI, 2013 WL 123610, at *2 (N.D. Cal. Jan. 8, 2013) (citing *Leiva-Perez*, 640 F.3d at 964). In the alternative, the moving party can show that its appeal raises "serious legal questions" even if the moving party has only a minimal chance of prevailing on these questions. *See In re Carrier IQ*, 2014 WL 2922726, at *1; *Mohamed v. Uber Techs., Inc.*, No. C-14-5200-EMC, 2015 WL 4483990, at *2 (N.D. Cal. July 22, 2015). However, if only this lesser showing is made, the appellant must further demonstrate that the balance of the hardships absent a stay tips "sharply" in its favor. *See Morse*, 2013 WL 123610, at *1-2 (explaining that a party seeking a stay pending appeal must either: (1) make a strong showing it is likely to succeed on the merits and show it will be irreparably harmed absent a stay, or (2) demonstrate that its appeal presents a serious question

2

on the merits and the balance of hardships tilts sharply in its favor); *see also Leiva-Perez*, 640 F.3d at 964.

While the Ninth Circuit has not exhaustively explained or defined what makes a question "serious," other district courts have suggested that "[f]or a legal question to be 'serious,' it must be a 'question going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *Guifu Li*, 2011 WL 2293221, at *3 (quoting *Walmer v. United States DOD*, 52 F.3d 851, 854 (10th Cir. 1995); *see also Morse*, 2013 WL 123610, at *3 (a serious legal issue or substantial case is "one that raises genuine matters of first impression within the Ninth Circuit, or which may "otherwise address a pressing legal issue which urges that the Ninth Circuit hear the case").

Uber argues that it has "at least a 'fair prospect' of persuading the Ninth Circuit that the PAGA waiver contained in Uber's 2014 and 2015 arbitration agreements, even if unenforceable as a matter of California public policy, can and must be severed so the remainder of the agreements may be enforced." Mot. at 5. First, Uber argues that the severability of arbitration agreements under California law is an issue currently before the Supreme Court, as the Supreme Court has granted certiorari in *MHN Government Services, Inc. v. Zaborowski* to address whether the Federal Arbitration Act (FAA) "preempts California's application of 'one rule of contract severability to contracts in general and a separate rule of contract severability to agreements to arbitrate,' t[he] latter of which disfavors arbitration by making it harder to sever unenforceable provisions that would otherwise be severable under generally applicable California law." *Id*. at 7. However, the *Zaborowski* petition challenges the rule that "the existence of more than one invalid provision can be read by a court to automatically indicate that the stronger party sought to use arbitration not simply as an alternative to litigation, but as a tool to steamroll the weaker party." *Zaborowski* Pet. for Writ of Certiorari at 1-2, *available at* http://www.scotusblog.com/wp-content/uploads/2015/08/cert-pet-as-filed.pdf (last accessed Dec. 18, 2015). With respect to the 2014 and 2015 contracts, the Court did not decline to sever because there was more than one invalid provision. The Court's analysis was based on the inability to sever because, *inter alia*, the blanket PAGA waiver was inextricably intertwined with the remainder of the arbitration

3

agreement. Supp. Class Order at 10-11.

Second, Uber maintains that the Court incorrectly focused on a linguistic analysis in determining whether specific words and phrases could be eliminated from the agreement to accomplish severance. Mot. at 8. By only looking at whether a "formalistic, line-by-line editing of the agreements" was possible, Uber contends that the Court failed to determine whether the illegal portion of the contract could be restricted, as was done in other cases. *Id.* at 8-10 (citing *Birbower, Montalbano, Condon & Frank v. Superior Court*, 17 Cal. 4th 119 (1998); *Marathon Ent., Inc. v. Blasi*, 42 Cal. 4th 974 (2008)). However, while this Court examined the feasibility of linguistic severance, a proper analysis under California law, *see Zullo v. Superior Court*, 197 Cal. App. 4th 477, 488 (holding unenforceable a contract where illegality could not be excised by striking a single provision, but would instead require addition of terms), the Court did not focus solely on linguistic severance. Instead, it found that in addition to not being linguistically severable, the PAGA waiver was not merely collateral to the main purpose of the contract, which was to require that *all* disputes (including PAGA representative claims) be directed to individual arbitration, and that the arbitration clause was not a divisible contract. Supp. Class Order at 16-20. The Court distinguished cases such as *Birbower* and *Marathon Entertainment*, both of which involved divisible contracts where the illegal portion of the consideration was independent of the legal consideration. Moreover, the Court concluded that equitable considerations did not favor severance because the arbitration clause in the 2014 and 2015 agreements were misleading – drivers are led to believe that all claims, including PAGA claims, could be heard only in arbitration without exception. *See* Supp. Class Order at Section II.B.3.b.iii.

Third, Uber contends that the Court's decision was contrary to both *Iskanian* and *Sakkab* because both of those cases ultimately severed the PAGA waiver and sent the remainder of the claims to arbitration. Mot. at 10-12. However, neither *Iskanian* nor *Sakkab* analyzed severability; in fact, the Ninth Circuit specifically noted that the *Sakkab* plaintiff did *not* argue that the invalid PAGA waiver rendered the entire agreement void, nor did the plaintiff ever dispute that he was required to arbitrate the non-PAGA claims. *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 440 (9th Cir. 2015); *see also Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348 (2014). A more

4

comparable decision is the California Court of Appeal's decision in *Securitas Security Services USA, Inc. v. Superior Court*, 234 Cal. App. 4th 1109 (2015), where the court found that an arbitration agreement with a non-severable PAGA waiver was wholly unenforceable on public policy grounds. *See* Supp. Class Order at 12.

Finally, Uber argues that there is an ongoing dispute as to whether the *Iskanian* rule is preempted by the Federal Arbitration Act (FAA). Mot. at 12. The Court notes that the Ninth Circuit's decision in *Sakkab* held that *Iskanian* is not preempted by the FAA, and that earlier this year, the Supreme Court has twice denied review in *Iskanian*. *See CLS Transp. L.A., LLC v. Iskanian*, 135 S. Ct. 1155 (2015) (denying petition for writ of certiorari); *see also CarMax Auto Superstores Cal., LLC v. Areso*, No. 15-236, 2015 WL 5005244, at *1 (U.S. Dec. 14, 2015) (denying petition for writ of certiorari on the question of whether *Iskanian* is preempted by the FAA); *CarMax Auto Superstores Cal., LLC* Pet. for Writ of Certiorari at i, *available at* http://www.scotusblog.com/wp-content/uploads/2015/09/CarMax-petition.pdf (last accessed Dec. 18, 2015).

For the reasons stated above, as well as for the reasons articulated in this Court's Supplemental Class Certification Order, the Court finds that Uber has not demonstrated that it has a strong showing on the merits or likelihood of success on appeal(s). Nonetheless, the Court believes that in light of the close analysis required of the severability question and the possibility of the Ninth Circuit hearing the *Sakkab* case en banc, a serious legal question has been raised by Uber.

C.     Irreparable Harm to Uber

Because Uber's appeal only demonstrates "serious legal questions," Uber must show not only the fact that it will suffer irreparable harm absent a stay, but also the balance of the hardships absent a stay tips sharply in its favor. *See In re Carrier IQ*, 2014 WL 2922726, at *1.

Uber identifies irreparable harm in the form of undergoing the expense of a trial and losing the anticipated advantages of arbitration. Mot. at 13. This reason was sufficient in *Mohamed v. Uber Technologies, Inc.*, in which this Court found that a reversal of the Court's decision on the 2014 contracts might result in "this Court's substantive rulings . . . be[ing] for naught, and the

5

parties will have expended significant resources to obtain what, in all likelihood, would constitute non-binding advisory opinions." Case No. C-14-5200-EMC, 2015 WL 4483990, at *6 (N.D. Cal. July 22, 2015). For that reason, the Court partially stayed the *Mohamed* case, permitting only reasonable discovery related specifically to Plaintiff Mohamed. However, while Uber may arguably suffer some irreparable harm for the reasons identified in *Mohammed*, the balance of hardships do not tip sharply in its favor.

### 1. Time and Expense of Trial

This is not a case in which the arbitration issue presents an "all or nothing" situation, where a defendant might be forced to needlessly endure the time and expense of a trial should the arbitration clause ultimately be enforced. Regardless of what happens with the December 9, 2015 subclass, Uber will be subject to a class action trial. The September 1, 2015 class has a right to move forward with trial; the Ninth Circuit denied Uber's petition for permission to appeal the September 1, 2015 order granting class certification, as well as Uber's motion to stay the *Gillette* proceedings during its appeal of this Court's order holding that the 2013 arbitration agreements were unconscionable. *See* Docket No. 389; Case No. 15-16181, Docket No. 30. Moreover, the September 1, 2015 class includes not only those who are subject only to the 2013 agreement but also those who opted out of the 2014 and 2015 agreements. Thus, the only effect of the Court's supplemental class certification order will be to affect the size of the class going to trial, not the fact and temporal scope of the trial.

Moreover, Uber has failed to make a persuasive case that the trial will be dramatically different were the December 9, 2015 subclass included in that trial. At the hearing on this matter, Uber argued that a broader range of evidence is required if the December 9, 2015 subclass is included, in part because of the time period covered by the December 9, 2015 subclass. However, as noted, the September 1, 2015 class not only includes drivers who signed the 2013 agreement (or no arbitration agreement at all), but drivers who opted out of the 2014 and 2015 arbitration agreements. Thus, the time period subject to the trial will be the same regardless of whether the December 9, 2015 subclass is included. Furthermore, much of the evidence on liability will focus on Uber's conduct (*e.g.*, the amount of control it exercises over the drivers), and Uber has not

6

argued that there was any significant change in its degree of control it exercised between 2013 and 2014 and 2015. Nor has Uber demonstrated that evidence on the other *Borello* factors which inform the merits of the dispute, *see* Docket No. 251 at 20-27, will be significantly altered were both subclasses instead of only the September 1, 2015 class to proceed to trial. Given the trial evidence will not change dramatically even if the December 9, 2015 subclass is included, there will be minimal hardship to Uber resulting from trial of both as opposed to one subclass.

    2.    <u>Binding Judgment</u>

In the event that both classes' claims are tried and the Ninth Circuit reverses on the Court's supplemental class certification order, any verdict in Plaintiffs' favor as to the 2014 and 2015 drivers who signed those agreements would likely be vacated. *See Richards v. Ernst & Young LLP*, 744 F.3d 1072, 1076 fn. 4 (9th Cir. 2013) (vacating district court's order certifying class of litigants after finding district court should have compelled arbitration); *see also Hospital & Health Care Workers' Union, Local 250 v. San Benito Health Found.*, CA No. 92-17028, 1994 U.S. App. LEXIS 6673, at *6 (9th Cir. Mar. 29, 1994) (reversing grant of summary judgment on the merits of the case where district court should have compelled arbitration). At the hearing, Uber also agreed that in all likelihood, the Court would be required to dismiss the December 9, 2015 subclass's claims for lack of jurisdiction were it to prevail on the merits of the supplemental class certification and arbitration orders. Thus, Uber will not be subject to a legally binding trial judgment which would vitiate its right to arbitration were the Ninth Circuit to ultimately uphold that right.

In any event, if these appeals are pending at the time of trial, the Court will stay entry of judgment with respect to the December 9, 2015 subclass so long as Uber's appeals are pending. *See Turner v. Japan Lines, Ltd.*, 702 F.2d 752, 757 n. 5 (9th Cir. 1983), *abrogated on other grounds by Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 834 (1990) (finding that Rule 58 permits a district court to delay the entry of judgment, although the district court should not ordinarily delay the entry of judgment on a jury verdict since Rule 62(b) provides procedures for a defendant to secure a stay of execution on the entered judgment). This assures Uber will be protected against entry of judgment until its appeal on the arbitration issue is heard.

Accordingly, Uber has not demonstrated that it will suffer significant irreparable injury or great hardship from moving forward with the trial. It will not suffer substantial harm from having to try both as opposed to one subclass, and it will not be subject to a final and irrevocable judgment on the merits pending resolution of its appeals because this Court, if necessary, will stay entry of judgment until the appeals are decided.

### D. Irreparable Harm to Plaintiffs

By contrast, if a stay of the entire case is issued – as Uber requests – and the June, 2016 trial date vacated and continued, the September 1, 2015 class would be deprived of their right to have their claims timely heard and decided. This case has been pending since 2013, and will have been ongoing for nearly three years by the date of the June 2016 trial. In *Mohamed*, the plaintiffs had suggested that a stay could prevent the filing of an amended complaint with new plaintiffs, an irreparable harm that the Court found "largely speculative" given that those individuals were not yet plaintiffs in the suit or barred from filing their own actions. *See Mohamed*, 2015 WL 4483990, at *7. However, here there is a certified class (which the Ninth Circuit has refused to review) who is ready to go to trial on the merits in June. The harm to this certified class that will result from delaying the adjudication of their certified claims is not speculative, and weighs significantly against issuing a stay. Alternatively, if the Court were to stay trial on the December 9, 2015 class and proceed with trial on the September 1, 2015 class, this could result in costly and inefficient piecemeal litigation, raising the specter of two jury trials (each lasting several weeks) on overlapping issues.

### E. Public Interest

Finally, the Court considers the public interest. Here, Uber argues that the public interest favors a stay because a stay will vindicate the federal policy favoring arbitration. Mot. at 14-16. But balanced against that is the significant public interest in this case, including the need to attain legal guidance on the important core issue of whether Uber's drivers should be considered employees or independent contractors. This case is currently the lead case on the issue of the status of Uber drivers in the nation, and is progressed much further than other cases that have been filed across the country. *E.g.*, Case No. 15-cv-06143, *Ogunmokun v. Uber Techs., Inc.*

(E.D.N.Y.); Case No. 15-cv-2418-DLR, *Sena v. Uber Techs., Inc.* (D. Az.); Case No. 15-1001, *Micheletti v. Uber Techs., Inc.* (W.D. Tex.). The public interest thus also weighs against issuing a complete stay and delaying trial.

### III.    CONCLUSION

In its motion to stay, Uber has arguably raised serious legal questions. However, Uber has not demonstrated that the balance of the hardships absent a stay tips sharply in its favor so as to warrant a complete stay. As explained above, Uber will not suffer substantial irreparable harm or great hardship in moving forward with the trial scheduled for June 20, 2016 on both the September 1, 2015 and December 9, 2015 subclasses. In comparison, both the harm in delaying the adjudication of Plaintiffs' – particularly the September 1, 2015 class's – claims and the public interest weighs heavily against issuing a complete stay. Instead, Uber's rights to arbitration of the December 9, 2015 subclass claims can be effectively preserved by a conditional stay of entry of final judgment if the appeals are still pending. For these reasons, the Court **CONDITIONALLY GRANTS IN PART AND DENIES IN PART** Uber's motion to stay.

This order disposes of Docket No. 411.

**IT IS SO ORDERED**.

Dated: December 22, 2015

_____
EDWARD M. CHEN
United States District Judge