UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 13-cv-03826-EMC   (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTER**<br><br>Re: Dkt. No. 364 |

The parties filed a joint discovery letter brief in which Defendant Uber Technologies, Inc. ("Uber") moves to compel Plaintiffs to provide further discovery responses. [Docket No. 364 (Jt. Letter).] The court held a hearing on the matter on December 17, 2015. For the following reasons, Uber's motion to compel is denied.

**I.     BACKGROUND**

Plaintiffs filed this class action against Uber in August 2013 seeking to represent a class of drivers who provide passenger car service in California for customers who hail rides using Uber's mobile phone application. Plaintiffs allege that Uber misclassifies drivers as independent contractors and forces drivers to bear necessary expenses of their employment to which they are legally entitled to reimbursement. They also allege that Uber has failed to pass on the entire amount of tips or gratuities as required by California law.

Plaintiffs moved for class certification in April 2015. [Docket No. 276.] In connection with its opposition to the motion, Uber submitted over 400 declarations by Uber drivers to support its argument that Plaintiffs "do not—and cannot—represent the interests" of the absent class members. [*See* Docket No. 298 at 1.] About 150 of the 400 declarants stated a preference for remaining an independent contractor. [Docket No. 342 (Sept. 1, 2015 Order) at 24.]

On July 23, 2015, in an effort to rebut the 400 driver declarations filed by Uber, Plaintiffs

filed the declaration of Elizabeth Lopez Beltran as part of their submissions on reply ("the Beltran declaration"). [Docket No. 314 (Beltran Decl., July 23, 2015).] Beltran is a paralegal at Lichten & Liss Riordan, P.C., one of the law firms representing Plaintiffs. In her declaration, Beltran states that more than 1,700 Uber drivers have contacted her law firm to "express interest in this case and share information" about driving for Uber, and that approximately half of those drivers have driven for Uber in California. Beltran Decl. ¶¶ 2, 3. She states that she has spoken at length with hundreds of putative class members, the majority of whom "have expressed support for the lawsuit" and indicated that "they would like to be classified as employees and have their expenses reimbursed." *Id*. at ¶¶ 4-6. According to Beltran, many of the drivers with whom she spoke "indicated that they were afraid to become more involved in the lawsuit for fear of alienating Uber and the risk of being deactivated." *Id*. at ¶ 8. Finally, Beltran stated that after she received Uber's opposition to the class certification motion, she contacted some of the drivers who had submitted declarations in support of the opposition. She spoke with about 50 drivers and learned "that Uber had not given them complete information about what this case is about . . . and most expressed interest in being reimbursed for their expenses by Uber." *Id*. at ¶ 9. Beltran submitted six declarations from Uber drivers describing their contact with Uber regarding this lawsuit and explaining that they did not understand when they provided their initial declarations that they would be entitled to reimbursement for expenses or other employee-only benefits if Plaintiffs prevail on their claims. Beltran Decl. Exs. A-F.

Several days later, Uber served one interrogatory and five requests for production of documents seeking evidence supporting the assertions in the Beltran declaration. The interrogatory states the following:

> **INTERROGATORY NO. 23:**
>
> IDENTIFY all members of the PUTATIVE CLASS who have had COMMUNICATIONS with YOU, YOUR counsel, or YOUR counsel's agents regarding DEFENDANT or this litigation, including, but not limited to:
>
> a) the "more than 1,700 drivers" who use the UBER APP and have had COMMUNICATIONS with YOUR counsel regarding this litigation, according to Paragraph 2 of the BELTRAN DECLARATION;

b) the "hundreds of drivers" that Ms. Beltran has "spoken" to, according to Paragraph 4 of the BELTRAN DECLARATION; and

c) the 50 or more "drivers who had submitted declarations in support of Uber's Opposition" that Ms. Beltran "reached out to," according to Paragraph 9 of the BELTRAN DECLARATION.

Uber also served five document requests, including the following:

> **REQUEST FOR PRODUCTION NO. 60:**
> All DOCUMENTS provided to YOU or YOUR COUNSEL by members of the PUTATIVE CLASS regarding DEFENDANT or this litigation.
>
> **REQUEST FOR PRODUCTION NO. 61:**
> All DOCUMENTS RELATING TO or evidencing any COMMUNICATIONS between YOU or YOUR counsel and members of the PUTATIVE CLASS regarding DEFENDANT or this litigation.

The three remaining document requests were keyed to the various portions of the interrogatory, seeking documents that identified the names, contact information, and the "means" and "content" of any communications between the drivers and Beltran.

Plaintiffs objected to the interrogatory on the grounds that it is overly broad and unduly burdensome, seeks irrelevant information, and seeks information protected by the attorney-client privilege and work product doctrine. As to the document requests, they objected that the requests were overly broad, unduly burdensome, sought privileged attorney-client communications, privileged personal information, and/or information protected by the work product doctrine.

On September 1, 2015, the Honorable Edward M. Chen certified the following class to pursue the claim that Uber violated the UCL by violating Labor Code section 351 (the tips claim):

> All UberBlack, UberX, and UberSUV drivers who have driven for Uber in the state of California at any time since August 16, 2009, and who (1) signed up to drive directly with Uber or an Uber subsidiary under their individual name, and (2) are/were paid by Uber or an Uber subsidiary directly and in their individual name, and (3) did not electronically accept any contract with Uber or one of Uber's subsidiaries which contain the notice and opt-out provisions previously ordered by this Court (including those contracts listed in the Appendix to this Order), unless the driver timely opted-out of that contract's arbitration agreement.

Sept. 1, 2015 Order at 7, 67 ("the September 1, 2015 Class"). The court permitted Plaintiffs to file supplemental briefing in support of certifying a class to pursue a claim for expense reimbursement

3

under California Labor Code section 2802 and certifying a subclass of drivers who labored for third-party transportation companies. *Id*. at 66.

On October 23, 2015, after the class certification ruling, the parties filed the current joint discovery letter in which Uber moves to compel Plaintiffs to respond to the discovery, arguing that the information and documents sought are relevant and that Plaintiffs' objections are unfounded.

On December 9, 2015, Judge Chen issued a second class certification order in which he broadened the scope of the original class by certifying the expense reimbursement claim, in addition to the tips claim. [Docket No. 395 (December 9, 2015 Order) at 32.] The December 9, 2015 Order also certified the following subclass of drivers to pursue both the tips claim and the expense reimbursement claim:

> All UberBlack, UberX, and UberSUV drivers who have driven for Uber in the state of California at any time since August 16, 2009, and meet all the following requirements: (1) who signed up to drive directly with Uber or an Uber subsidiary under their individual name, and (2) are/were paid by Uber or an Uber subsidiary directly and in their individual name, and (3) electronically accepted any contract with Uber or one of Uber's subsidiaries which contain the notice and opt-out provisions previously ordered by this Court, and did not timely opt out of that contract's arbitration agreement.

*Id.* at at 2-3, 32 ("the December 9, 2015 Subclass").][1] .

## II.     DISCUSSION

Federal Rule of Civil Procedure 26 defines the scope of discovery as matters that are both relevant and proportional to the needs of the case:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in

---

[1] Judge Chen clarified in the second class certification order that the December 9, 2015 subclass "is distinct from the September 1, 2015 Class, as it only includes drivers who signed the contracts including the Court-ordered notice and opt out provisions and did *not* opt out of the arbitration agreement," and that the December 9, 2015 subclass "also does not include drivers who labored for third-party transportation providers, or drivers who drove under a fictitious or corporate name." Dec. 9, 2015 Order at 3 n.2.

evidence to be discoverable." *Id.*

Uber argues that the discovery requests at issue are "highly relevant to the issues in this case," and asks the court to compel Plaintiffs to respond to the discovery for three reasons. Jt. Letter at 2. First, it contends that the requested discovery is "the *only* way to afford Uber a full and fair opportunity to respond to Beltran's hearsay statements that are part of the record." *Id.* (emphasis in original). This argument is unpersuasive. Uber keyed its discovery requests to the Beltran declaration, which was filed to rebut the 400 driver declarations that Uber had submitted in opposition to class certification. After Uber served the discovery, Judge Chen certified the case for class treatment—twice. The statements in the Beltran declaration were not in any sense critical to the class certification decisions. In his September 1, 2015 order, Judge Chen gave little weight to Uber's 400 driver declarations, explaining that such evidence represented a "statistically insignificant [non-random] sample" of the views of approximately 160,000 drivers. September 1, 2015 Order at 24. The court further noted that the existence of some tension between the goals of the named plaintiffs and those of class members does not necessarily demonstrate inadequacy of representation, because total agreement is not realistic, and moreover, the protections conferred by labor laws "have a public purpose beyond the private interests of the workers themselves." *Id.* at 25-26 (citation and quotation marks omitted). The court also expressed doubt that the declarants correctly understood the legal differences between employee and independent contractor status, or the consequences of the lawsuit. *Id.* at 25. This passage contains the sole reference to the Beltran declaration, noting that "Plaintiffs submitted five counter-declarations from drivers who had previously provided declarations for Uber that indicate that the declarants did not understand when they provided their initial declarations that they would be entitled to [employee-status benefits] if the Plaintiffs prevail on their claims here. *See, e.g.,* Docket No. 314-1 (Beltran Decl). at ¶¶ 5-7."[2] *Id.* The December 9, 2015 Order makes no reference to the Beltran declaration at all.

Uber's argument that it needs contact information plus the content of every communication

---

[2] Uber now knows the identities of these counter-declarants, and can serve appropriately tailored discovery seeking their percipient knowledge if Uber truly believes it needs to respond to the information in the counter-declarations.

between class counsel and class members in order to "rebut" the Beltran declaration lacks substance, as the Beltran declaration has played an insignificant role in the litigation. Moreover, the utility of the information sought by Uber is questionable because the case has been certified for class treatment, and the "putative class members" for whom Uber sought information are now class members. Uber's lawyers may not communicate with them absent class counsel's permission. *See, e.g., Kirola v. City & Cty. of San Francisco*, No. C 07-03685 SBA, at *2 (N.D. Cal. Sept. 7, 2010) (ethical rules prohibit communication by defense attorney with individual class members once a class action has been certified, absent express consent, citing Rules of Professional Conduct of the California State Bar, Rule 2-100; ABA Rule 4.2). In light of the foregoing, Uber's wildly overbroad discovery requests fail Rule 26(b)'s proportionality requirements, given the lack of importance of the discovery to the resolution of the issues in the case, as well as the enormous burden such discovery would place on the attorney-client relationship between class members and class counsel.

Next, Uber claims that the discovery is necessary to allow the court to protect the interests of the class members and ensure that the case is fairly litigated. According to Uber, Plaintiffs' counsel has set up a website about the lawsuit that is "adversarial, misleading, and one-sided." Jt. Letter at 2. It argues that the discovery sought is necessary to assess whether Plaintiff's counsel's communications and outreach efforts through the website "have caused confusion amongst putative class members that is prejudicial to Uber and needs to be ameliorated." *Id.* Uber asserts that these concerns go to counsel's continuing adequacy as class counsel and the ongoing question of whether certification is proper. *Id.* at 2-3.

This argument is also unavailing. Uber has not cited any authority to support its theory that class counsel's public website cannot be "adversarial" or "one-sided." As to its claim that the website is "misleading" or "causing confusion" among class members, Uber fails to point to a single example to substantiate its accusations. Nor does Uber explain how the requested discovery will bear on questions about the propriety of the website or truthfulness of statements therein. Moreover, as previously discussed, the requested discovery is of little use to Uber now that the court has certified a class and Uber's lawyers may not communicate directly with class members

6

about this litigation.

Finally, Uber argues that the discovery is relevant to the merits of the case. Beltran's statement indicates that some drivers want to be classified as employees. Uber contends that this implicates the question of whether drivers intended to form an independent contractor relationship with Uber, which is a factor the trier of fact must consider in determining whether drivers are employees or independent contractors. Jt. Letter at 3 (citing *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 358 (1989)).[3] This argument also fails. The overbreadth of the requested discovery matches poorly to Uber's stated justification. While Uber may be entitled to conduct discovery that is probative of the *Borello* factors, it may do so through appropriately targeted means, rather than calling for information about every class member contact with class counsel. Again, Uber fails to meet Rule 26(b)'s proportionality test.[4]

### III.  CONCLUSION

For the foregoing reasons, Uber's motion to compel is denied.

**IT IS SO ORDERED.**

Dated: January 11, 2016



Donna M. Ryu
United States Magistrate Judge

---

[3] The court notes that in his September 1, 2015 order, Judge Chen noted that "this particular *Borello* secondary factor is entitled to the least weight of all the various factors," stating that "[a]s the *Borello* opinion itself makes clear, '[t]he label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced.'" September 1, 2015 Order at 51 (citing *Borello*, 48 Cal. 3d at 349).

[4] Obviously, Uber's requests also raise the questions of attorney client privilege and work product. As Uber fails to meet the basic requirements of Rule 26(b), the court need not reach those issues.