GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
  dmanthripragada@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

JOSHUA S. LIPSHUTZ, SBN 242557
  jlipshutz@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

KEVIN J. RING-DOWELL, SBN 278289
  kringdowell@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile:  949.475.4220

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, THOMAS COLOPY, MATTHEW MANAHAN, and ELIE GURFINKEL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | CASE NO. CV 13-03826-EMC<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declaration of Kevin Ring-Dowell and Proposed Order Filed Concurrently Herewith]<br><br>Hearing Date:  August 24, 2017<br>Hearing Time:  11:00 a.m.<br>Hearing Place:  Courtroom 5<br>Judge:  Hon. Edward M. Chen |

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS ..................................................................................... 2

        A.      The Protective Order ................................................................................ 2

        B.      Plaintiffs' Prosecution of Multiple Individual Actions Against Uber ......................... 4

        C.      Plaintiffs' Counsel's Improper Use of the Class List to Solicit Clients for New
                Actions ..................................................................................................... 5

        D.      Meet-and-Confer Efforts ........................................................................... 7

III.    ARGUMENT ....................................................................................................... 7

        A.      The Court Should Impose Sanctions Because Plaintiffs' Counsel Willfully
                Violated the Protective Order .................................................................... 7

                1.      Sanctions are Proper Under Rules 16 and 37 Of the Federal Rules of
                        Civil Procedure ............................................................................. 7

                2.      Sanctions are Proper Under this Court's Inherent Authority ...................... 11

        B.      The Court Should Impose Sanctions Because Plaintiffs' Counsel Violated the
                California Rules of Professional Conduct .................................................. 13

        C.      The Court Should, Among Other Sanctions, Disqualify Plaintiffs' Counsel
                from Representing Any Individual Who Received the Solicitation........................... 15

IV.     CONCLUSION .................................................................................................... 17

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple, Inc. v. Samsung Elecs. Co.*,
  No. 5:11-cv-01846, 2014 WL 12596470 (N.D. Cal. Jan. 29, 2014)................................8

*Atkins v. Uber Techs., Inc.*,
  Case No. BC 657688 (Super. Ct. LA Cty).........................................................5

*Beam Sys., Inc. v. Checkpoint Sys., Inc.*,
  No. 95-cv-04068, 1997 WL 364081 (C.D. Cal. Feb. 6, 1997) .......................................15

*Bell v. Uber Techs., Inc.*,
  Case No. CGC-17-558253 (Super. Ct.) ............................................................5

*Bowcock v. Uber Techs., Inc.*,
  Case No. BC 657689 (LA Super. Ct.)...............................................................5

*Brown v. Stroud*,
  No. 08-cv-02348, 2012 WL 2709058 (N.D. Cal. July 6, 2012)......................................12

*Burda v. Fidelity Nat'l Mgmt. Servs., LLC*,
  No. 11-cv-00247, 2013 WL 11042668 (C.D. Cal. Mar. 25, 2013).....................10, 11, 16

*Cakebread v. Berkeley Millwork & Furniture Co.*,
  218 F. Supp. 3d 1040 (N.D. Cal. 2016) ...........................................................13

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005)........................................................................4

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)..................................................................................11

*Clarke v. First Transit, Inc.*,
  No. 07-cv-06476, 2012 WL 12877865 (C.D. Cal. Nov. 2, 2012)................................9, 10, 11, 16

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  482 F.3d 1091 (9th Cir. 2007).....................................................................16

*Erickson v. Newmar Corp.*,
  87 F.3d 298 (9th Cir. 1996)........................................................................12

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012)......................................................................11

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
  702 F.2d 770 (9th Cir. 1983).......................................................................16

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001)................................................................11

*Hi-Tek Bags, Ltd. v. Bobtron Int'l, Inc.*,
144 F.R.D. 379 (C.D. Cal. 1992) ..........................................................15

*James v. Kalanick*,
Case No. BC 666055 (Super. Ct. LA Cty) .............................................5

*Life Techs. Corp. v. Biosearch Techs., Inc.*,
No. 12-cv-00852, 2012 WL 1600393 (N.D. Cal. May 7, 2012)................7

*Loop AI Labs Inc. v. Gatti*,
No. 15-cv-00798, 2017 WL 934599 (N.D. Cal. Mar. 9, 2017)................13

*Mohamed v. Uber Techs., Inc.*,
836 F.3d 1102 (9th Cir. 2016)...........................................................4, 14

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016).................................................................4

*Moreno v. AutoZone, Inc.*,
No. 05-cv-04432, 2007 WL 4287517 (N.D. Cal. Dec. 6, 2007)............13

*Oracle USA, Inc. v. SAP AG*,
264 F.R.D. 541 (N.D. Cal. 2009) ...........................................................8

*Penk v. Oregon State Bd. of Higher Educ.*,
816 F.2d 458 (9th Cir. 1987)...................................................................8

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980)...............................................................................11

*United States v. Nat'l Med. Enters., Inc.*,
792 F.2d 906 (9th Cir. 1986)....................................................................8

*ViChip Corp. v. Lee*,
No. 04-cv-02914, 2004 WL 2780170 (N.D. Cal. Dec. 3, 2004)............15

*In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*,
No. 09-md-02015, 2013 WL 5424963 (N.D. Cal. Sept. 25, 2013)...........12

**Other Authorities**

Joel Rosenblatt & Patricia Hurtado, *Uber Gains Leverage Against Drivers With
Arbitration Ruling*, Bloomberg Technology (Sept. 7, 2016) .....................5

## TABLE OF AUTHORITIES
(continued)

Page(s)

**Rules**

Cal. Rules of Prof'l Conduct R. 1-400(D) ...................................................................13, 15

Cal. Rules of Prof'l Conduct R. 1-400(D)(2) ......................................................................13

Cal. Rules of Prof'l Conduct R. 3–310(c)(3) .......................................................................13

Civil Local Rule 11-4(a) .......................................................................................................13

Fed. R. Civ. P. 16 ................................................................................................................7, 8

Fed. R. Civ. P. 16(f) ...............................................................................................................8

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................................14

Fed. R. Civ. P. 37 ................................................................................................................7, 8

Fed. R. Civ. P. 37(b)(2)(A) .....................................................................................................8

Gibson, Dunn &
Crutcher LLP

## NOTICE OF MOTION AND MOTION FOR SANCTIONS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 24, 2017, at 11:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Edward M. Chen in Courtroom 5 of the United States District Court for the Northern District of California in the San Francisco Courthouse, Seventeenth Floor, 450 Golden Gate Avenue, San Francisco, California, Defendant Uber Technologies, Inc. ("Uber") will and hereby does move this Court for an order granting its Motion for Sanctions.

This Motion is made on the ground that Plaintiffs' counsel has willfully violated the Second Amended Stipulated Protective Order ("Protective Order") entered by this Court on February 10, 2016, by using material designated as "Highly Confidential—Attorneys' Eyes Only Information" for improper purposes not "specifically and directly related to the conduct of this litigation." Dkt. 478 at ¶ 9. In particular, Plaintiffs' counsel used a highly confidential class list containing the names and contact information of all individuals who used the Uber App as drivers in California during the class period (the "Class List") to solicit clients for the purpose of filing new, individual-plaintiff actions against Uber, separate and apart from the *O'Connor* class litigation. Uber moves for sanctions to remedy this willful misconduct pursuant to Rules 16 and 37 of the Federal Rules of Civil Procedure and the Court's inherent authority. Because the solicitation also contained untrue, deceptive, and misleading statements, Uber also moves for sanctions pursuant to Civil Local Rule 11–4(a), this Court's Standing Order—General, No. 1, and California Rule of Professional Conduct 1–400.

Uber requests that the Court impose all sanctions that it deems necessary or appropriate to remedy Plaintiffs' violations, including (1) disqualifying Plaintiffs' counsel from representing in any action(s) (other than *O'Connor*) any individual to whom Plaintiffs' counsel sent a solicitation or communication based on information derived from the Class List; (2) directing Plaintiffs' counsel to dismiss, without prejudice, any action(s) already filed on behalf of such individuals; (3) ordering Plaintiffs' counsel to send a Court-approved notice to the individuals to whom Plaintiffs' counsel sent a solicitation or communication based on information derived from the Class List, explaining Plaintiffs' counsel's disqualification and the reasons therefor; (4) producing to Uber any and all communications between Plaintiffs' counsel and individuals to whom Plaintiffs' counsel sent a solicitation or

communication based on information derived from the Class List, to determine the nature and extent of any additional violations of the Federal Rules of Civil Procedure, this Court's Local Rules and orders, and the California Rules of Professional Conduct; and (5) prohibiting Plaintiffs' counsel from using the Class List, except as expressly contemplated by the Protective Order, and ordering that any further violation(s) of the Protective Order will result in terminating sanctions.

Dated:  July 20, 2017

Gibson, Dunn & Crutcher LLP

By:  _____ /s/ *Theodore J. Boutrous Jr.* _____
Theodore J. Boutrous Jr.

Attorneys for Defendant Uber Technologies, Inc.

## I.    INTRODUCTION

During the course of this litigation, Plaintiffs and Uber jointly drafted and stipulated to a two-tiered protective order specifically designed to restrict the use and protect the confidentiality of a sensitive and proprietary list containing the names and email addresses of all *O'Connor* certified class members, i.e., all individuals who used the Uber App as drivers in California during the *O'Connor* class period.  Among other things, the parties agreed that this highly confidential class list "shall be used only for purposes of this litigation and not for any other purpose." Dkt. 478 ¶ 13.  In violation of this protective order, Plaintiffs' counsel used the information contained in the class list to send a solicitation email and retainer agreement to at least some, and perhaps all, of the 240,000+ individuals identified in the class list, offering "to continue to pursue [their] claims for [them], individually if necessary, in the event that the court enforces Uber's arbitration clause or decertifies the class." Declaration of Kevin Ring-Dowell ("Ring-Dowell Decl.") ¶ 3, Ex. A.  The conduct exhibited by Plaintiffs' counsel—using Uber's confidential class list to solicit clients for the purpose of initiating *new* actions against Uber, separate and apart from the *O'Connor* class litigation—violates the unambiguous terms of the stipulated protective order, harms Uber and its relationships with drivers, and is inappropriate and sanctionable.  When Uber learned about this misconduct and asked Plaintiffs' counsel for further information, Plaintiffs' counsel did not deny using confidential information to solicit new clients; instead, counsel appeared to *concede* that it was willfully "taking, and will continue to take, every action necessary" to pursue drivers' claims against Uber.  *Id.* ¶ 14, Ex. L.

To make matters worse, this improper solicitation contains numerous misrepresentations about the status of the *O'Connor* litigation and the consequences that supposedly would arise if a class member were to refrain from retaining Plaintiffs' counsel in an individual capacity, if and when the parties' arbitration agreements are enforced or the class is decertified.  In particular, the solicitation suggests that the Court has already found Plaintiffs' claims to be meritorious, that declining to retain Plaintiffs' counsel in an individual action will forfeit the driver's ability to bring any of the claims asserted in this case on an individual basis, and that class members must sign Plaintiffs' counsel's retainer agreement to *remain* a member of the certified class in *O'Connor*—patently false representations that, on their face, appear intended to increase the likelihood that drivers will enter into

new, individual attorney-client relationships with Plaintiffs' counsel separate and apart from the *O'Connor* litigation. *Id.* These misstatements contravene the California Rules of Professional Conduct and this Court's Standing Orders and Local Rules, and provide an independent basis for sanctions.

Plaintiffs' counsel's violations of its professional obligations, Uber's rights, and the Court's protective order warrants the imposition of any and all sanctions that the Court deems proper, including (1) disqualifying Plaintiffs' counsel from representing in any action(s) (other than *O'Connor*) any individual to whom Plaintiffs' counsel sent a solicitation or communication based on information derived from the class list; (2) directing Plaintiffs' counsel to dismiss, without prejudice, any action(s) already filed on behalf of such individuals; (3) ordering Plaintiffs' counsel to send a Court-approved notice to all individuals to whom Plaintiffs' counsel sent a solicitation or communication based on information derived from the class list, notifying each such individual of Plaintiffs' counsel's disqualification and the reasons warranting such disqualification; (4) producing to Uber any and all solicitations or communications Plaintiffs' counsel sent based on information derived from the class list, to determine the nature and extent of any additional violations of the Federal Rules of Civil Procedure, this Court's Local Rules and orders, and the California Rules of Professional Conduct; and (5) prohibiting Plaintiffs' counsel from using the Class List, except as expressly contemplated by the Protective Order, and ordering that any further violation(s) of the Protective Order will result in terminating sanctions.

## II.     STATEMENT OF FACTS

### A.     The Protective Order

On October 21, 2014 and November 26, 2014, this Court entered a Stipulated Protective Order and an Amended Stipulated Protective Order governing the "production of confidential, proprietary, or private information," and limiting the use of all material designated by the producing party as "Confidential Information." *See* Dkt. 181, 208. These orders defined "Confidential Information" to include information "[r]eferring or related to confidential and proprietary human resources, business or pricing information and/or financial records and information of [Uber]," as well as information "[r]eferring or related to any current, former or prospective business partner . . . of [Uber]," and provided that such information "shall be used only for purposes of this action, shall not be used for any

business purpose, and shall be disclosed only to qualified recipients for purposes that are specifically and directly related to the reasonable conduct of this litigation." Dkt. 181 ¶¶ 1, 3; Dkt. 208 ¶¶ 1, 3.

After this Court certified this action as a class action, Plaintiffs propounded written discovery on Uber seeking the names and email addresses of all individuals who used the Uber App as drivers during the class period (the "Class List"). *See* Ring-Dowell Decl. ¶ 5, Ex. C. Due to the highly sensitive and proprietary nature of that information, as well as the third-party privacy rights of the individuals whose information Plaintiffs requested, the parties negotiated a Second Amended Stipulated Protective Order ("Protective Order"), which established a heightened confidentiality designation, denoted "Highly Confidential—Attorneys' Eyes Only Information." Dkt. 478 ¶ 3. "Highly Confidential— Attorneys' Eyes Only Information" is defined as follows:

> ***[A]ny documents or information . . . which***, in good faith, [the] designating Party . . . believes could place it at a competitive disadvantage if disclosed to anyone other than the receiving Party's counsel of record in this litigation because such documents or information ***contain commercially sensitive information, proprietary information, or trade secrets, the disclosure of which is likely to cause irreparable harm or significant injury to the competitive position of the designating Party***.

*Id.* (emphasis added).

In relevant part, the Protective Order restricts the use of "Highly Confidential—Attorneys' Eyes Only Information" as follows:

> Highly Confidential—Attorneys' Eyes Only Information shall be disclosed only to the receiving Party's counsel of record in this litigation ***for purposes that are specifically and directly related to the reasonable conduct of this litigation***, and to no other persons. Such information shall be held in the highest confidence by each person to whom it is disclosed, ***shall be used only for purposes that are specifically and directly related to the conduct of this litigation, and shall not be used for any business purpose***.

*Id.* ¶ 9 (emphases added). Just a few paragraphs later, the Protective Order reiterates the stringent restrictions that apply to "Highly Confidential—Attorneys' Eyes Only Information":

> All information and/or documents produced in this action that are Confidential or Highly Confidential—Attorneys' Eyes Only ***shall be used only for purposes of this litigation and not for any other purpose***.

*Id.* ¶ 13 (emphasis added).

As the parties explained in a joint statement submitted to the Court, the parties negotiated the Protective Order with the express purpose of restricting the use and ensuring the confidentiality of the Class List: Because the Class "[L]ist contains Uber's commercially sensitive, proprietary, and trade

secret customer information," "the parties agreed and stipulated to including a 'Highly Confidential—Attorneys' Eyes Only Information' designation in the . . . Protective Order."  Dkt. 477 at 1.  The Court (Magistrate Judge Donna Ryu, presiding) entered the Protective Order on February 10, 2016.  *See* Dkt. 478.

In compliance with the terms of the Protective Order, Uber designated the Class List as "Highly Confidential—Attorneys' Eyes Only Information" and produced the Class List to Plaintiffs.  *See* Ring-Dowell Decl. ¶ 6, Ex. D.  When transmitting the Class List to Plaintiffs, Uber reminded Plaintiffs' counsel in writing that—as Highly Confidential—Attorneys' Eyes Only Information—the Class List was to be "held in the highest confidence" and "used only for purposes that are specifically and directly related to the conduct of this litigation . . . ."  *Id.*

**B.**     **Plaintiffs' Prosecution of Multiple Individual Actions Against Uber**

Since Uber produced the Class List to Plaintiffs in early 2016, several important developments have undermined the viability and/or scope of the certified class in this litigation.  Specifically, on April 5, 2016, the Ninth Circuit granted Uber's Rule 23(f) petition challenging this Court's class certification orders, *see* Ninth Circuit Appeal No. 16-15595, Dkt. 1—a "rare occurrence" warranted only when a class certification decision "presents an unsettled and fundamental issue of law relating to class actions" or when a "class certification decision is manifestly erroneous," *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005).  On September 7, 2016, the Ninth Circuit held that the delegation clauses in the parties' arbitration agreements are enforceable in a related putative class action, *Mohamed v. Uber Techs., Inc.*, 836 F.3d 1102 (9th Cir. 2016).  And on December 21, 2016, the Ninth Circuit denied a petition for rehearing of its *Mohamed* decision enforcing the delegation clauses contained within the parties' arbitration agreements.  *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016).  As Plaintiffs have acknowledged, a similar decision enforcing the arbitration agreements in this case would "gut the certified class."  Dkt. 611 at 3; *see also* Dkt. 519 at 5 (an order enforcing the arbitration

agreements would "destroy the certified class"); Dkt. 4 at 6–7 ("[T]he arbitration provision will, without a doubt, . . . prevent[] the ability of class members to participate in litigation.").[1]

Perhaps because of these substantial risks to the ongoing viability and/or scope of class certification, Plaintiffs' counsel has repeatedly stated that it intends to represent *O'Connor* class members in individual-driver actions in the event that the arbitration agreements are enforced in this case and/or if the class is decertified. *See, e.g.*, Joel Rosenblatt & Patricia Hurtado, *Uber Gains Leverage Against Drivers With Arbitration Ruling*, Bloomberg Technology (Sept. 7, 2016) ("[W]e have more than 1,500 Uber drivers signed up in California to pursue individual arbitrations if necessary."). True to its word, Plaintiffs' counsel has filed numerous individual-driver arbitration demands against Uber in recent months, including arbitrations on behalf of members of the certified class whose name and contact information appear on the Class List. *See* Ring-Dowell Decl. ¶ 7, Ex. E (Daniel Salaz, filed March 22, 2017); *id.* ¶ 8, Ex. F (John Salangsang, filed January 27, 2017); *id.* ¶ 9, Ex. G (Nick Bell, filed January 26, 2017); *id.* ¶ 10, Ex. H (Ted Williams, filed January 26, 2017). In addition, Plaintiffs' counsel has filed or substituted as counsel in several state court cases against Uber and/or Uber's executive officers, which assert identical or overlapping claims to those asserted here. *See, e.g.*, *Atkins v. Uber Techs., Inc.*, Case No. BC 657688 (Super. Ct. LA Cty); *Bowcock v. Uber Techs., Inc.*, Case No. BC 657689 (LA Super. Ct.); No. *James v. Kalanick*, Case No. BC 666055 (Super. Ct. LA Cty); *Bell v. Uber Techs., Inc.*, Case No. CGC-17-558253 (Super. Ct.).

## C.     Plaintiffs' Counsel's Improper Use of the Class List to Solicit Clients for New Actions

Notwithstanding the Protective Order, Plaintiffs' counsel used the highly confidential information contained in the Class List to send an email solicitation on June 20, 2017 to some, or perhaps all, *O'Connor* class members, in an apparent attempt to persuade recipients of the solicitation to hire Lichten & Liss-Riordan, P.C. as counsel to prosecute their claims against Uber on an individual basis ***separate and apart from the O'Connor litigation***. *See* Ring-Dowell Decl. ¶ 3, Ex. A.

---

[1] This Court has also acknowledged that "[a] finding that one or both of the arbitration clauses is valid and enforceable would . . . jeopardiz[e] the scope and potential viability of the class action at bar"—a "risk [that was] heightened by the Ninth Circuit's decision to grant Uber's petition for permission to appeal" the class certification orders. Dkt. 748 at 16.

The first line of this solicitation email states in bold, capitalized text:  "**READ HERE AND CLICK <u>THIS LINK</u> IF YOU WANT US TO CONTINUE TO PURSUE CLAIMS FOR YOU AGAINST UBER (*individually, if necessary*) FOR EXPENSE REIMBURSEMENT AND TIPS THAT WERE NOT PAID TO YOU.**"  *See* Ring-Dowell Decl. ¶ 3, Ex. A (italics added).  The solicitation explains that "Uber has been fighting hard to try to 'decertify' the class (by enforcing an arbitration agreement it has required all drivers to accept)," and that "[i]f Uber is successful, that would mean that only drivers who sign up to bring these claims individually would be able to recover any money, if [Plaintiffs] are successful in this case." *Id.*  The solicitation also states that Plaintiffs' counsel sent "this email to find out if [drivers] would like [Lichten & Liss-Riordan, P.C.] to continue to pursue these claims for [drivers], individually if necessary, *in the event that the court enforces Uber's arbitration clause or decertifies the class*." *Id.* (emphasis added).

A hyperlink contained within the body of the solicitation email directs the email recipient to an online retainer agreement, which states as follows:

> Yes, I want Lichten & Liss-Riordan, P.C. to continue to represent me individually in my claims against Uber for expense reimbursement and unremitted tips, if necessary, *in the event that the class action lawsuit is decertified or Uber's arbitration agreement is enforced*.
>
> . . .
>
> I want Lichten & Liss-Riordan, P.C. to continue representing me individually in my claims against Uber for expense reimbursement and unremitted tips, *if it becomes necessary because Uber's arbitration clause is enforced or the class is decertified*.  I understand that *the firm will represent me on a complete contingency fee basis*, so I will not be charged anything out of pocket and the firm would be entitled to one-third of what it recovers for me. . . .

*See* Ring-Dowell Decl. ¶ 4, Ex. B (emphases added).

On June 20, 2017, a third-party driver whose name and contact information appears on the Class List unilaterally forwarded to Uber's counsel a copy of the solicitation that Plaintiffs' counsel had sent earlier that day.  *See* Ring-Dowell Decl. ¶ 3.  Since then, Uber's counsel has reviewed several online message boards in which multiple other drivers have stated that Plaintiffs' counsel sent them identical or similar uninvited solicitations since at least March 2017, unbeknownst to Uber.  *Id.*, ¶¶ 11–12, Exs. I–J.

**D.      Meet-and-Confer Efforts**

In order to ascertain the full scope and extent of Plaintiffs' counsel's misuse of the Class List, Uber's counsel sent a detailed letter to Plaintiffs' counsel, articulating Uber's concerns that Plaintiff's counsel had misused the Class List, identifying each of the misleading misrepresentations contained within Plaintiffs' counsel's solicitation, and requesting that Plaintiffs' counsel (1) identify the number, names, and email addresses of the drivers in California to whom Plaintiffs' counsel sent the solicitation, (2) identify any arbitrations, administrative proceedings, or lawsuits that Plaintiffs' counsel had initiated as a result of the solicitation at issue, (3) state whether Plaintiffs' counsel had relied on the Class List to send solicitations to drivers, and (4) if Plaintiffs' counsel had, in fact, relied on the Class List, to state Plaintiffs' counsel's justification for doing so.  *See* Ring-Dowell Decl. ¶ 13, Ex. K.  In response, Plaintiffs' counsel refused to provide any of this information and did not deny misusing the Class List—quite the opposite.  *See id.* ¶ 14, Ex. L.  Plaintiffs' counsel's full response is set forth in the following paragraph:

> As you know, we represent a certified class of Uber drivers.  ***We are taking, and will continue to take, every action necessary to protect their rights*** to pursue the claims we have pursued on their behalf.  We are doing so in accordance with our ethical duty to protect their interests.  I understand ***your client is not happy about this because it hopes it can avoid the claims of most class members if you succeed in your upcoming appeal***, but your challenge to our right to do so is baseless.  We are not going to reveal to you our privileged communications with our clients.

*Id.* (emphasis added).

## III.      ARGUMENT

**A.      The Court Should Impose Sanctions Because Plaintiffs' Counsel Willfully Violated the Protective Order**

### 1.      Sanctions are Proper Under Rules 16 and 37 of the Federal Rules of Civil Procedure

"Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order . . . ."  *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. 12-cv-00852, 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012); *see also*

*United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986).[2]  "A court need not find bad faith before imposing sanctions for violations of Rule 37." *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 545 (N.D. Cal. 2009); *see also Penk v. Oregon State Bd. of Higher Educ.*, 816 F.2d 458, 466 (9th Cir. 1987); *Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-cv-01846, 2014 WL 12596470, at *4 (N.D. Cal. Jan. 29, 2014).  A court may also issue sanctions under Rule 16 where "a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f).  In such a case, "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)." *Id.*  Here, the parties negotiated and this Court entered a Protective Order expressly stating that "Highly Confidential—Attorneys' Eyes Only Information shall be used **only for purposes of this litigation and not for any other purpose.**"  Dkt. 478 ¶ 13 (emphasis added); *see also id.* ¶ 9 (noting that such information "**shall not be used for any business purpose**" (emphasis added)).  Instead of complying with this use and confidentiality provision, however, Plaintiffs' counsel willfully misused the name and contact information contained within the Class List—Uber's very own "Highly Confidential—Attorneys' Eyes Only Information"—to solicit some, if not all, drivers on the Class List for the purpose of initiating new, individual-plaintiff actions against Uber, separate and apart from the *O'Connor* litigation.  *See supra* Part II.C (describing Plaintiffs' counsel's solicitation and retainer agreement). This conduct not only damages Uber's ongoing business relationships drivers and impinges upon the privacy interests of those very same drivers; it violates the clear and unambiguous language of this Court's Protective Order.  This conduct can and should be sanctioned.

Indeed, Plaintiffs' counsel cannot argue that the solicitation was made in furtherance of *this* litigation.  Uber expects that Plaintiffs will point to language in the solicitation stating that drivers must retain Lichten & Liss-Riordan, P.C. if they desire to "*continue* to pursue" the claims at issue in *O'Connor*.  *See* Ring-Dowell Decl. ¶ 3, Ex. A (emphasis added).  Such pretextual explanations do not

---

[2] Such sanctions may include "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."  Fed. R. Civ. P. 37(b)(2)(A).

and cannot justify Plaintiffs' counsel's misconduct:  The solicitation and accompanying retainer agreement contemplate that Lichten & Liss-Riordan, P.C. will assert claims on behalf of ***individual*** drivers if and when the arbitration agreement is enforced in this case and/or the *O'Connor* class is decertified, events that will by definition terminate Plaintiffs' counsel's representation of the very drivers that Plaintiffs' counsel has solicited.  *See id.* ("We are sending you this email to find out if you would like us to continue to pursue these claims for you, individually if necessary, ***in the event that the court enforces Uber's arbitration clause or decertifies the class***" (emphasis added)); *id.* ("I want Lichten & Liss-Riordan, P.C. to continue representing me individually . . . ***if it becomes necessary because Uber's arbitration clause is enforced or the class is decertified***" (emphasis added)).[3]  In fact, when Uber requested further information from Plaintiffs' counsel regarding the solicitation at issue, Plaintiffs' counsel *confirmed* that it had, in fact, sent the solicitation in order to solicit drivers to sue Uber "if [Uber] succeed[s] in [its] upcoming appeal."  Ring-Dowell Decl. ¶ 14, Ex. L.

*Clarke v. First Transit, Inc.*, No. 07-cv-06476, 2012 WL 12877865 (C.D. Cal. Nov. 2, 2012), is squarely on point.  In *Clarke*, plaintiff filed a putative class action alleging wage-and-hour claims on behalf of bus drivers.  *Id.* at *1.  During discovery, defendant produced a class list subject to a protective order that provided, among other things, that the class list "shall only be used for preparing for, defending and prosecuting this case," and "cannot be used for any other purpose in any other manner or proceeding for any reason whatsoever."  *Id.* at *2.  Plaintiff's counsel then used the class list to "sen[d] a letter to each of the nearly 11,000 putative class members" stating that plaintiff's counsel was "available to advise [the recipient] as to [her] rights and to represent [the recipient] in connection with potential wage and hour claims against [defendant] . . . ."  *Id.* at *4, 5.  "The subject line of the letter indicated '*Clarke v. First Transit, Inc., et al.*,'" and an enclosed retainer agreement stated that "Attorneys currently seek to represent Client and others similarly situated as a Class (and not in

---

[3]  Plaintiffs' counsel also cannot pretend that it solicited drivers in order to assert *individual* drivers' claims in *O'Connor*.  This Court has already denied Plaintiffs' motion to assert the claims of hundreds of drivers' individual claims in *O'Connor*.  *See* Dkt. 401.  And in any event, an order enforcing the parties' arbitration agreements would require drivers to bring any individual claims that they may have in bilateral arbitration—not in the *O'Connor* litigation.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS – CASE NO. 13-CV-03826-EMC

separate, individual cases)" and that counsel would only "pursue Client's claims on an individual basis should the Court decline to certify a Class with Attorneys appointed as Class Counsel." *Id.* at *5.

Based on these facts, the court held that counsel's conduct was "sordid" and "indefensible, and a failure to impose significant sanctions would undermine the meaning and efficacy of protective orders entered by this Court." *Clarke*, 2012 WL 12877865, at *1, 13.  The court ordered plaintiff's counsel to disclose the identities of the individuals on the class list to whom plaintiff's counsel had sent a solicitation, disqualified counsel from representing any person who received the solicitation as a result of its improper use of the class list, required counsel to dismiss any such actions already filed, directed counsel to send a notice of the order to solicited individuals, and awarded fees and costs to defendant. *Id.* at *16.  In doing so, the court rejected the plaintiff's contention that plaintiff's counsel had merely "use[d] the information [in the putative class list] to prosecute the [*Clarke*] case, including any claims on behalf of the named plaintiff(s) and any putative class members." *Id.* at *14 (internal quotation marks omitted).  As the *Clarke* court correctly reasoned, the solicitation at issue violated the protective order *even if* plaintiff's counsel solicited bus drivers regarding the same claims that were at issue in *Clarke*, because plaintiff's counsel was prosecuting those overlapping claims in a *separate* action and the protective order limited "the use of confidential information for the purpose of prosecuting the *Clarke* action only, and not 'for any other purpose in any other matter or proceeding for any reason whatsoever.'" *Id.* (emphasis altered).

*Burda v. Fidelity Nat'l Mgmt. Servs., LLC*, No. 11-cv-00247, 2013 WL 11042668, at *3 (C.D. Cal. Mar. 25, 2013), is similarly instructive.  In that case, the court "ordered [defendant] to produce the contact information of all putative class members" to putative class counsel, subject to a protective order stating that "none of the contact information shall be used for any purpose outside of this litigation." 2013 WL 11042668, at *1 (emphasis omitted).  After the court denied a motion for class certification, plaintiffs' counsel "sent a letter . . . to every person on the putative class list" seeking new class representatives who might support a renewed motion for class certification. *Id.* at *2–3.  The court found that plaintiffs' counsel had violated the protective order:  "Plaintiffs' Counsel clearly intended to solicit the former putative class members as new clients with their letter.  The letter tout[ed] Plaintiffs' Counsel's prior success in 'similar cases,' explain[ed] that any work would be done on a

contingency fee basis, and request[ed] that any person who wishe[d] to 'join [the] case as a participant' and recover money they [were] 'owed' by [defendant] contact Plaintiffs' Counsel 'immediately.'" *Id.* at *3.  Accordingly, the court held that sanctions were needed to "preserve public trust in the integrity of the bar," levied monetary sanctions against plaintiffs' counsel, ordered plaintiffs' counsel to file a declaration listing all putative class members that had received the solicitation, disqualified plaintiffs' counsel from representing any putative class member with whom plaintiffs' counsel had formed an attorney-client relationship as a result of the solicitation, and ordered plaintiffs' counsel to inform all persons who received the solicitation that plaintiffs' counsel could not represent them.

As in *Clarke* and *Burda*, Plaintiffs' counsel willfully, and in direct violation of the Protective Order, used confidential information contained within a class list to solicit clients when it appeared that the prospects of continued class litigation were dimming.  As in those cases, this "indefensible" conduct violated Rule 16 and Rule 37 of the Federal Rules of Civil Procedure.  *Clarke*, 2012 WL 12877865, at *13.  And as in those cases, this Court should impose any and all necessary sanctions necessary "to maintain ethical standards of professional responsibility."  *Burda*, 2013 WL 11042668, at *2.

## 2.    Sanctions are Proper Under this Court's Inherent Authority

In addition to its authority under the Federal Rules, the Court also possesses inherent authority to impose sanctions on Plaintiffs and their counsel for willful violation of the Protective Order.  Federal courts have "inherent power to levy sanctions, including attorney's fees, for 'willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) ("A primary aspect of [the] discretion [to sanction] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.").  Willful violation of a court order is sufficient to support imposition of sanctions; a finding of bad faith is not required.  *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) ("A determination that a party was willfully disobedient is different from a finding that a party acted in bad faith.  Either supports the imposition of sanctions.").

Here, Plaintiffs' counsel's conduct was clearly willful.  Plaintiffs' counsel indisputably knew that the Protective Order applied to the Class List.  After all, the entire purpose of the Protective Order

was to establish a heightened confidentiality designation ("Highly Confidential—Attorneys' Eyes Only Information") for Uber to apply to the Class List.  *See* Dkt. 477 at 1 (explaining that the parties negotiated and stipulated to the Protective Order because the Class List contained "the names and email addresses of individuals who have used the Uber App as drivers in California" and "th[at] list contains Uber's commercially sensitive, proprietary, and trade secret customer information").  Furthermore, Uber designated the list "Highly Confidential—Attorneys' Eyes Only Information," and reminded Plaintiffs' counsel in the transmittal letter conveying the Class List that the Class List was to be "held in the highest confidence" and "used only for purposes that are specifically and directly related to the conduct of this litigation . . . ."  Ring-Dowell Decl. ¶ 6, Ex. D.

Nor was Plaintiffs' counsel's violation of the Protective Order inadvertent.  The solicitation and retainer agreement that Plaintiffs' counsel sent to drivers seek to establish attorney-client arrangements for actions independent from the *O'Connor* litigation.  Ring-Dowell Decl. ¶ 3, Ex. A.  Plaintiffs' counsel has been sending the solicitation and retainer agreement to individuals appearing on the Class List for several months—at least since March 2017—although Uber just learned of these communications on June 20, 2017.  *See* Ring-Dowell Decl. ¶¶ 3, 11–12, Exs. A, I–J.  And Plaintiffs' counsel has filed or intervened to represent individual drivers in numerous arbitrations and actions across the State of California over the past few months—actions that may be the result of improper solicitations derived from the Class List.  *See supra* Part II.B.

For all these reasons, Uber respectfully requests that the Court impose sanctions on Plaintiffs' counsel pursuant to its inherent authority.  *See Erickson v. Newmar Corp.*, 87 F.3d 298, 303–04 (9th Cir. 1996) (instructing the district court "to impose appropriate sanctions and disciplinary action" after counsel had improper ex parte contact with the opposing party's expert witness); *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*, No. 09-md-02015, 2013 WL 5424963, at *10 (N.D. Cal. Sept. 25, 2013) (imposing sanctions for "failure to comply with . . . reporting obligations and to provide consistent, comprehensible data" related to certain mortgage practices); *Brown v. Stroud*, No. 08-cv-02348, 2012 WL 2709058, at *6 (N.D. Cal. July 6, 2012) ("Stroud's violation of the August 24, 2010 order amounts to conduct designed to obfuscate, delay, and avoid responding to valid

discovery requests.  Thus, the court finds that Stroud engaged in bad faith or willful misconduct justifying the issuance of sanctions against him under its inherent authority.").

**B.      The Court Should Impose Sanctions Because Plaintiffs' Counsel Violated the California Rules of Professional Conduct**

Under Civil Local Rule 11-4(a) and this Court's Standing Order—General, No. 1, attorneys practicing before this Court are required to follow the California Rules of Professional Conduct.  *See* L.R. 11-4(a); *see also Moreno v. AutoZone, Inc.*, No. 05-cv-04432, 2007 WL 4287517, at *5 (N.D. Cal. Dec. 6, 2007) (disqualifying plaintiffs' counsel from representing plaintiffs because counsel violated California Rule of Professional Conduct 3–310(c)(3)).  "A district court may discipline an attorney for conduct that violates a California Rule of Professional Conduct by way of its local rules of professional conduct."  *Cakebread v. Berkeley Millwork & Furniture Co.*, 218 F. Supp. 3d 1040, 1043 (N.D. Cal. 2016); *see also Loop AI Labs Inc. v. Gatti*, No. 15-cv-00798, 2017 WL 934599, at *17–18 (N.D. Cal. Mar. 9, 2017) (granting terminating sanctions for counsel's violation of California Rules of Professional Conduct).

California Rules of Professional Conduct 1–400(D), in turn, provides as follows:

A communication or solicitation . . . shall not:

(1) Contain any ***untrue statement***;

(2) Contain any matter, or present or arrange any matter in a manner or format which is ***false, deceptive, or which tends to confuse, deceive or mislead the public***; or

(3) ***Omit to state any fact necessary to make the statement*** made, in the light of the circumstances under which they are made, ***not misleading to the public*** . . . .

Cal. Rules of Prof'l Conduct R. 1-400(D) (emphases added).  The solicitation distributed by Plaintiffs' counsel violates this Rule of Professional Conduct in at least four ways.

First, the solicitation states:  "You are getting this email because you are a member of a certified class action we brought against Uber for violating California wage law . . . .  ***The federal judge in our case has agreed that these are valid claims that can go to trial***."  Ring-Dowell Decl. ¶ 3, Ex. A (emphasis added).  This statement is, at a minimum, "present[ed] . . . in a manner . . . which tends to confuse, deceive or mislead the public," Cal. Rules of Prof'l Conduct R. 1-400(D)(2), because its assertion that this Court has agreed that Plaintiffs' claims are "valid" implies that the Court has held

that they are *meritorious*—something this Court has not done.  Plaintiffs' counsel's misrepresentation is especially egregious because it suggests that Plaintiffs have *already* prevailed on their claims, thereby increasing the likelihood that recipients will believe that they are entitled to a financial recovery if and when they enter into individual attorney-client relationships with Plaintiffs' counsel.

Second, the solicitation contends that "Uber has been fighting hard to try to 'decertify' the class (by enforcing an arbitration agreement ***it has required all drivers to accept***)."  Ring-Dowell Decl. ¶ 3, Ex. A (emphasis added).  This is demonstrably false:  Each of the arbitration agreements provide drivers with an unfettered right to opt out, and *hundreds* of drivers have exercised that right without consequence.  *See Mohamed*, 836 F.3d at 1111 ("[T]he contract bound Uber to accept opt-outs from those drivers who followed the procedure it set forth. There were some drivers who did opt out and whose opt-outs Uber recognized.  Thus, the promise was not illusory.").

Third, the solicitation asserts that "[i]f Uber is successful [in decertifying the class], that would mean that ***only drivers who sign up to bring these claims individually would be able to recover any money***, if we are successful in this case."  Ring-Dowell Decl. ¶ 3, Ex. A (emphasis added).  But of course, if the class is decertified or drivers are compelled to arbitrate their claims on an individual basis, then drivers will be free to pursue those individual claims (whether in arbitration or elsewhere) through counsel of their choosing.  This statement is highly misleading because it intentionally leads individuals to believe they must retain *Lichten & Liss-Riordan, P.C.* in order to "recover any money."

Fourth, the solicitation states that "***[i]f you would like to stay a part of our case***, and have us pursue these claims for you individually if needed, ***please click this link and fill out the form***."  Ring-Dowell Decl. ¶ 3, Ex. A (emphases added).  This misrepresentation suggests that a driver must contact Plaintiffs' counsel, agree to retain Lichten & Liss-Riordan, P.C. in an individual action if the class is decertified and/or the parties' arbitration agreements are enforced, and accept the contingency fee arrangement presented in the retainer agreement, simply to remain a member of the certified class in this case.  Needless to say, this is false.  Certified class members are—and will remain—certified class members, unless and until the Court decertifies the class or compels those drivers' claims into arbitration.  *See* Fed. R. Civ. P. 23(c)(2)(B).

The confusing nature of these misrepresentations is not merely hypothetical.  Already, the solicitation has created substantial confusion among recipients concerning the effect of signing (or declining to sign) the retainer agreement with Plaintiffs' counsel.  *See, e.g.*, Ring-Dowell Decl. ¶ 11–12, Exs. I–J.  For instance, multiple drivers have posted on message boards that they apparently believe that class members *must* sign Plaintiffs' counsel's retainer agreement to obtain any potential recovery for their claims.  *See, e.g.*, *id.* ¶ 11, Ex. I ("Pros you may get money.  Cons, you definitely get nothing, zero, goose eggs."); *id.* ("HMMM let me think abot [sic] this if I do nothing I get nothing If I sign up I have no rsk [sic] and get 66.6 % of any award and they take all the risk and do all the work.").  Others have questioned whether the solicitation may be a fraud or scam.  *See id.* ("Doesn't look like any class action notification I have ever seen, I have received a few (not for any action against Uber/Lyft).  Typically they show who the plaintiffs are vs who ever there are links to a site to be able to read the action, watch it when you click those links there is typically an amount etc. etc.").  Still other drivers appear to have no idea what action, if any, they must or should take if they wish to remain members of the *O'Connor* class.  *See id.* ("Got the same email, just wondering, should I react or just ignore, Dunno?"); *id.* ¶ 12, Ex. J ("I'm not sure what to do at this point.").

Because the solicitation and retainer agreement plainly misrepresent both the status and character of this litigation, as well as the rights of class members, all in an effort to increase Plaintiffs' counsel's clientele and file new individual-driver actions against Uber, these communications violate California Rule of Professional Conduct 1-400(D).  This breach of Plaintiffs' counsel's ethical duties provides an independent basis on which this Court should issue sanctions.  *See ViChip Corp. v. Lee*, No. 04-cv-02914, 2004 WL 2780170, at *1, 4 (N.D. Cal. Dec. 3, 2004).

## C.    The Court Should, Among Other Sanctions, Disqualify Plaintiffs' Counsel from Representing Any Individual Who Received the Solicitation

"Because of the important interests at stake, it is essential that protective orders be respected." *Beam Sys., Inc. v. Checkpoint Sys., Inc.*, No. 95-cv-04068, 1997 WL 364081, at *2 (C.D. Cal. Feb. 6, 1997).  For this reason, "the sanctions that can be imposed for violating a protective order may be severe."  *Id.*  In particular, sanctions should be crafted "to deter abuses and acts of contempt of court," *Hi-Tek Bags, Ltd. v. Bobtron Int'l, Inc.*, 144 F.R.D. 379, 383 (C.D. Cal. 1992), and "to compel

obedience to a court order, or to compensate the [violator's] adversary for the injuries which result from the noncompliance," *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778, 783 (9th Cir. 1983).

Accordingly, at a minimum, the Court should disqualify Plaintiffs' counsel from representing in any action(s) (other than *O'Connor*) any individual to whom Plaintiffs' counsel sent a solicitation based on information derived from the Class List, and direct Plaintiffs' counsel to dismiss any individual, putative class, or mass actions already filed on behalf of any such individual. *See Clarke*, 2012 WL 12877865, at *16 ("ILG is disqualified from representing any person who received the January 2012 solicitation letter by virtue of its use of the confidential contact information in any action against First Transit."); *Burda*, 2013 WL 11042668, at *4 ("Plaintiffs' Counsel is hereby disqualified from representing any former putative class member with whom they formed an attorney-client relationship as a result of contact initiated after December 19, 2012 by any representative of Plaintiffs' Counsel."). This sanction is necessary to ensure that Plaintiffs' counsel does not improperly profit from her violation of the Protective Order, and to prevent any further injury to Uber from this violation.

Additionally, this Court should order Plaintiffs' counsel to disclose to Uber the names of all individuals to whom Plaintiffs' counsel sent a communication or solicitation based on information derived from the Class List, so that Uber can determine whether any other breaches of the Federal Rules, this Court's Rules and Orders, or the California Rules of Professional Conduct have occurred. Relatedly, the Court should direct Plaintiffs' counsel to send a Court-approved notice to all persons to whom she sent a solicitation based on information derived from the Class List, notifying them that she has been disqualified from representing them because the solicitation was a violation of the Protective Order. *See Clarke*, 2012 WL 12877865, at *16 ("ILG is required to submit for the Court's approval . . . a notice to be sent to the solicited persons, notifying them that . . . ILG has been disqualified from representing them because it has violated the [protective order]."); *Burda*, 2013 WL 11042668, at *4. Finally, to ensure proper deterrence, the Court should also issue an order stating that any further violations of the Protective Order will result in terminating sanctions. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007) (affirming a grant of terminating sanctions where the non-movant's "'pattern of deception and discovery abuse made it impossible for

1   the district court to conduct another trial with any reasonable assurance that the truth would be

2   available'").

3   ## IV.   CONCLUSION

4       For these reasons, Uber requests that the Court impose all sanctions that it deems appropriate

5   considering Plaintiffs' counsel's willful violation of the Protective Order, including (1) disqualifying

6   Plaintiffs' counsel from representing in any action(s) (other than *O'Connor*) any individual to whom

7   Plaintiffs' counsel sent a solicitation or communication based on information derived from the Class

8   List; (2) directing Plaintiffs' counsel to dismiss, without prejudice, any action(s) already filed on behalf

9   of such individuals; (3) ordering Plaintiffs' counsel to send a Court-approved notice to the individuals

10  to whom Plaintiffs' counsel sent a solicitation or communication based on information derived from

11  the Class List, explaining Plaintiffs' counsel's disqualification and the reasons therefor; (4) producing

12  to Uber any and all communications between Plaintiffs' counsel and individuals to whom Plaintiffs'

13  counsel sent a solicitation or communication based on information derived from the Class List, to

14  determine the nature and extent of any additional violations of the Federal Rules of Civil Procedure,

15  this Court's Local Rules and orders, and the California Rules of Professional Conduct; and

16  (5) prohibiting Plaintiffs' counsel from using the Class List, except as expressly contemplated by the

17  Protective Order, and ordering that any further violation(s) of the Protective Order will result in

18  terminating sanctions.

19

20  Dated:  July 20, 2017                    Gibson, Dunn & Crutcher LLP

21
                                            By:  _____/s/ *Theodore J. Boutrous Jr.*_____
22                                                    Theodore J. Boutrous Jr.

23                                          Attorneys for Defendant Uber Technologies, Inc.

24

25

26

27

28

1

## ECF ATTESTATION

2

    I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document.

3

Dated: July 20, 2017                          GIBSON DUNN & CRUTCHER, LLP

4

5                                            _____/s/ *Kevin Ring Dowell*_____
                                                  Kevin Ring Dowell

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28