UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 13-cv-03826-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SANCTIONS**<br><br>Docket No. 811 |

Uber moves for sanctions against Class Counsel based on an e-mail solicitation to Class Members that Uber argues reflected an improper use of information covered by the protective order in this case and included misleading statements in violation of the California Rules of Professional Conduct. The Court **GRANTS IN PART** and **DENIES IN PART** the motion. As a sanction and as an exercise of the Court's discretionary power under Rule 23(d), the Court will direct corrective notice to the Class. The parties are ordered to meet-and-confer and submit notice proposals to the Court by September 5, 2017.

## I.    INTRODUCTION AND FACTUAL BACKGROUND

A.    <u>The Stipulated Protective Order</u>

In February 2016, after a class had been certified in this case, *see* Docket Nos. 342, 395, the parties stipulated to a two-tier protective order signed by Magistrate Judge Ryu. *See* Docket Nos. 467, 478 ("Protective Order"). Uber subsequently produced the class list to Class Counsel under a "Highly Confidential – Attorneys' Eyes Only" designation, defined under the Protective Order as:

> [A]ny documents or information . . . which, in good faith, [the] designating Party . . . believes could place it at a competitive disadvantage if disclosed to anyone other than the receiving Party's counsel of record in this litigation because such documents or

> information contain commercially sensitive information, proprietary information, or trade secrets, the disclosure of which is likely to cause irreparable harm or significant injury to the competitive position of the designating Party.

Docket No. 478 ¶ 3. The Protective Order restricted the use of such information:

> Highly Confidential—Attorneys' Eyes Only Information shall be disclosed only to the receiving Party's counsel of record in this litigation for purposes that are specifically and directly related to the reasonable conduct of this litigation, and to no other persons. Such information shall be held in the highest confidence by each person to whom it is disclosed, shall be used only for purposes that are *specifically related to the conduct of this litigation*, and shall not be used for any business purpose.

*Id.* ¶ 9 (emphasis added). The Order also states:

> All information and/or documents produced in this action that are Confidential or Highly Confidential—Attorneys Eyes' Only shall be used *only for purposes of this litigation and not for any other purpose*.

*Id.* ¶ 13 (emphasis added). Class Counsel did not object to or challenge the language of the order or the designation of the class list as Highly Confidential. The class list was thus transmitted under the Protective Order to facilitate issuance of notice that the Court had certified a class. *See* Docket No. 460.

Since that time, Uber has appealed several of the Court's orders, including the Court's orders denying Uber's motion to compel arbitration, *see* Docket No. 404, limiting its communications with Class Members, *see* Docket No. 437, and certifying a class pursuant to Federal Rule of Civil Procedure 23(f), *see* Docket No. 395. On April 11, 2016, the Ninth Circuit granted Uber's petition for permission to appeal the class certification order. *See* Docket No. 512. Subsequently, and after thorough review and extensive consideration, the Court also denied preliminary approval of a prospective class action settlement. *See* Docket No. 748. All outstanding matters, with the exception of this motion, have been stayed pending resolution of the appeals at the Ninth Circuit.

///

///

///

B.  Class Counsel's E-mail to Class Members

On June 20, 2017,[1] Class Counsel used the class list to send an email with the subject line: "IMPORTANT NOTICE FOR UBER DRIVERS REGARDING YOUR RIGHTS IN A CLASS ACTION LAWSUIT." *See* Ring-Dowell Decl. ¶ 3, Ex. A ("Solicitation Email").

The body of the e-mail reads:

> READ HERE AND CLICK THIS LINK IF YOU WANT US TO CONTINUE TO PURSUE CLAIMS FOR YOU AGAINST UBER (individually if necessary) FOR EXPENSE REIMBURSEMENT AND TIPS THAT WERE NOT PAID TO YOU
>
> Dear Uber driver:
>
> You are getting this email because you are a member of a certified class action we brought against Uber for violating California wage laws, by not reimbursing drivers for their expenses (including expenses for leasing or owning their vehicles, maintaining the vehicles, gas, insurance, etc.) and also for representing to passengers that tips are included in the fare (but not distributing any portion of the fare to drivers as tips). We have asserted that Uber is responsible for these payments because it has misclassified drivers as independent contractors. The federal judge in our case has agreed that these are valid claims that can go to trial.
>
> We started this case in 2013, and the case was certified as a class action in 2015 on behalf of most Uber drivers in California. (This is the original case that was filed against Uber for misclassifying drivers. It is called *O'Connor v. Uber Technologies, Inc.*, C.A. No. 13-3826 (N.D. Cal.)) However, Uber has been fighting hard to try to "decertify" the class (by enforcing an arbitration agreement it has required all drivers to accept). If Uber is successful, that would mean that only drivers who sign up to bring these claims individually would be able to recover any money, if we are successful in this case.
>
> We are sending you this email to find out if you would like us to continue to pursue these claims for you, individually if necessary, in the event that the court enforces Uber's arbitration clause or decertifies the class. IF YOU WOULD LIKE TO STAY A PART OF OUR CASE, AND HAVE US PURSUE THESE CLAIMS FOR YOU INDIVIDUALLY IF NEEDED, PLEASE CLICK THIS LINK AND FILL OUT THE FORM:

---

[1] Uber submitted evidence that at least one Class Member received a "follow-up" dated May 22, 2017, suggesting the original e-mail was sent even before June 20. *See* Lipshutz Decl., Ex. A (Docket No. 813-2). Another "follow-up" was sent on August 24, 2017, just hours before the hearing on this motion. *See* Docket No. 817-2. At the Court's order, Class Counsel explained that her firm had sent the original e-mail and follow-up reminders "in large batches" over the course of several months, but stopped after the hearing on this motion. *See* Liss-Riordan Decl. ¶¶ 4, 7 (Docket No. 824).

3

> <u>YES, PLEASE CONTINUE TO PURSUE MY CLAIM INDIVIDUALLY IF NECESSARY</u>
>
> Our representation of you is on a contingency basis, meaning you would not be charged anything out of pocket for us to continue to represent you, if we need to pursue a claim for you individually. Instead, we would be paid by contingency (meaning our firm will keep one-third of whatever we recover for you, and the other two-thirds will go to you). If we try to reach you for more information but cannot reach you, or if we determine that you do not have a viable claim, we would not be able to pursue your claim.
>
> You can find out more information about the case, and keep updated on developments, by visiting the website, www.uberlawsuit.com. You can read more about our firm at www.llrlaw.com. For other questions, feel free to contact us at uberlawsuit@llrlaw.com.
>
> Sincerely,
> Class Counsel, *O'Connor v. Uber Technologies, Inc.*
>
> Shannon Liss-Riordan
> Lichten & Liss-Riordan, P.C.
> [Address Omitted]

Docket No. 811-3. At the hearing on this motion, Class Counsel acknowledged that the e-mail had been sent to the entire Class, approximately 240,000 individuals.

The hyperlinks in the e-mail, if followed, took users to a web form that collected basic background information about each driver and his or her work history with Uber. The form stated at the top:

> Yes, I want Lichten & Liss-Riordan, P.C. to continue to represent me individually in my claims against Uber for expense reimbursement and unremitted tips, if necessary, in the event the class action lawsuit is decertified or Uber's arbitration agreement is enforced.

Docket No. 811-3. At the bottom, it read:

> I want Lichten & Liss-Riordan, P.C. to continue representing me individually in my claims against Uber for expense reimbursement and unremitted tips, if it becomes necessary because Uber's arbitration clause is enforced or the class is decertified. I understand that the firm will represent me on a complete contingency fee basis, so I will not be charged anything out of pocket and the firm would be entitled to one-third of what it recovers for me. I understand that my claims may not be pursued if the firm attempts to reach me for more information but I do not respond, or if the firm determines that I do not have a viable claim. If my contact information changes, I will notify the firm by emailing uberlawsuit@llr.com.

*Id.*

4

C. Uber's Reaction

Uber caught wind of the missive when a Class Member forwarded a copy to Uber's counsel. Ring-Dowell Decl. ¶ 3. Uber then sent a letter to Plaintiffs' Counsel stating it was "concerned that [counsel] may have violated the stipulated protective order . . . and California Rule of Professional Conduct 1-400, as well as the privacy rights of Uber's driver-partners." Ring-Dowell Decl. ¶ 13, Ex. K (Docket No. 811-12). The letter also argued that Class Counsel had misused the class list, identifying what Uber called "misrepresentations" in the solicitation e-mail, and demanding that Plaintiffs' counsel (1) identify every person to whom the letter was sent; (2) identify any arbitrations, administrative proceedings, or lawsuits that had been initiated as a result of the solicitation; (3) state whether Plaintiffs' counsel had relied on the class list to send the solicitation; and (4) to state the justification for doing so.

The same day, Plaintiffs' counsel responded to Uber's counsel by e-mail, stating:

> As you know, we represent a certified class of Uber drivers. We are taking, and will continue to take, every action necessary to protect their rights to pursue the claims we have pursued on their behalf. We are doing so in accordance with our ethical duty to protect their interests. I understand your client is not happy about this because it hopes it can avoid the claims of most class members if you succeed in your upcoming appeal, but your challenge to our right to do so is baseless. We are not going to reveal to you our privileged communications with our clients.

Ring-Dowell Decl. ¶ 14, Ex. L (Docket No. 811-13).

## II. DISCUSSION

A. Legal Standard

1. Rule 37

Federal Rule of Civil Procedure 37(b)(2)(A) provides that when any party "fails to obey an order . . . including an order under Rule 26(f)," "the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). The rule "grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order issued pursuant to Rule 26(f)." *Life Tech. Corp. v. Biosearch Tech., Inc.*, No. C-12-00852 WHA (JCS), 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012). The violation need not be willful, unless the sanction is dismissal. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1426-27 (9th Cir. 1985). Whether to

impose sanctions is "left to the sound discretion of the trial judge." *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 844 (9th Cir. 1976); *see also Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093, 1102 (9th Cir. 1981).

### 2. Rule 16

Federal Rule of Civil Procedure 16 provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: . . . (C) fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). The rule further provides that "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2). Sanctions under this rule, too, are committed to the district court's discretion. *Ayers v. City of Richmond*, 895 F.2d 1267, 1269-70 (9th Cir. 1990).

### 3. Court's Inherent Authority To Enter Sanctions

The Court also has the "inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (quotation and citation omitted). A finding of bad faith is usually required before a court can enter sanctions pursuant to its inherent authority. *Lahiri v. Universal Music and Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010). Bad faith can be inferred from a variety of circumstances, including but not limited to: an act that is both reckless and knowing, *see, e.g., B.K..B. v. Maui Police Dep't*, 276 F.3d 1091, 1107-08 (9th Cir. 2002); an act that is reckless and undertaken with an improper purpose, *see Fink*, 239 F.3d at 993-94; and actions delaying or disrupting the litigation, *see Primus Automotive Financial Servs., Inc. v. Batarse*, 115 F.3d 644, 648-49 (9th Cir. 1997). However, "a 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). Accordingly, the Court may enter sanctions pursuant to its inherent authority if it finds a willful violation of a Court order even without finding bad faith. This inherent power "must be exercised

with restraint and discretion," but a court is not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 50 (1991).

### 4. Professional Ethics

Lawyers who practice before this Court are required to comply with California's Rules of Professional Conduct. *See* Local C.R. 11-1(c)(3). "Failure by counsel or a party to comply with any duly promulgated local rule . . . may be a ground for imposition of any authorized sanction." Local C.R. 1-4. Moreover, "[t]he district court has the duty and responsibility of supervising the conduct of attorneys who appear before it." *Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996); *see also Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322 (9th Cir. 1976) ("It is the duty of the district court to examine the charge [of unethical conduct], since it is that court which is authorized to supervise the conduct of the members of its bar.") (quotation and citation omitted). To discharge this duty, courts have "an arsenal of sanctions they can impose for unethical behavior," including "monetary sanctions, contempt, and the disqualification of counsel." *Erickson*, 87 F.3d at 303.

### 5. Court's Authority to Supervise Conduct of Class Action

Separate and apart from the various sources of sanctions authority, the Court must safeguard the interests of absent class members. *See Allen v. Bedolla*, 787 F.3d 1218, (9th Cir. 2015) ("[T]he district court has a fiduciary duty to look after the interests of . . . absent class members."). To that end, Federal Rule of Civil Procedure 23(d) provides:

> In conducting an action under this rule, the court may issue orders that . . . (B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of: (i) any step in the action; (ii) the proposed extent of the judgment; or (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action.

Fed. R. Civ. P. 23(d)(1)(B)(i)-(iii). This has been described as a "nonexhaustive list." *See* Newberg on Class Actions, § 8:26; *see also* Fed. Prac. & Proc. § 1793 (enumerated factors are "not intended . . . to represent an exhaustive list of possible occasions on which orders requiring that notice be given to the class might be utilized"). The purpose of Rule 23(d) is to permit

7

1 discretionary notice "when needed for the protection of class members or for the fair conduct of
2 the action." Manual for Complex Litigation § 21.31 (4th ed.). *See*, *e.g.*, *In re McKesson HBOC,
3 Inc. Securities Litig.*, 126 F.Supp.2d 1239 (N.D. Cal. 2000) (trial court exercised discretion under
4 Rule 23(d) to order law firm that sent improper and misleading solicitation to putative class
5 members urging them to opt out of putative class and enter separate retention agreement to pay
6 costs of issuing corrective notice).

B.  Analysis

   1.  Class Counsel Violated the Protective Order

The Protective Order is explicit: designated material may only be used "for purposes that are *specifically related to the conduct of this litigation*." Docket No. 478 ¶ 9 (emphasis added); *id.* ¶ 13 (designated material "shall be used *only for purposes of this litigation and not for any other purpose*") (emphasis added).

On its face, Class Counsel's e-mail did not comply with this limitation. Had Class Counsel simply advised Class Members about the pending appeal and its potential impact on this case and on their rights, Class Counsel would have been well within the scope of the Protective Order. Such comments would pertain to "this litigation." But Class Counsel went one step beyond: it attempted to solicit Class Members as clients in separate arbitration proceedings that would be initiated outside of *this* litigation – an eventuality predicated on the class being decertified and the arbitration clause enforced as to those unnamed class members bound by an arbitration clause. To be sure, such individual arbitration proceedings might be related to this case inasmuch as they may involve identical or similar legal claims as asserted in this suit, but the individual arbitrations themselves would not be a part of "this litigation." The Court would not have jurisdiction or continued supervision over the arbitration of unnamed class members' claims.

Class Counsel did not cite any legal authority to the contrary. Instead, Class Counsel asserted without authority that, upon certification of the Class and the expiration of the exclusion period, the Protective Order's restrictions somehow disappeared and thus Counsel was not bound by the Protective Order. The fact that Class Counsel had an attorney-client relationship with Class

Members as a result of certification,[2] however, did not dissolve the Protective Order. The Protective Order contained no such term limiting its duration and Counsel has cited no case authority for the proposition that such a result automatically obtains. Counsel's assertion makes little sense; under its analysis, Counsel would not be prohibited by the Protective Order from, *e.g.*, sharing Uber's trade secrets with 240,000 members of the class simply because the class was certified. In any event, if Counsel had any doubt about the matter, it should have sought leave of the Court or a stipulation from Defendant to clarify the otherwise unambiguous scope of the Protective Order rather than taking unilateral action.

Accordingly, the Court finds that Class Counsel violated the Protective Order by using the protected class list to solicit retainer agreements for individual arbitration proceedings outside of *this* litigation (in the event the class is decertified).

2. Class Counsel's E-mail Was Misleading

Uber also argues that Class Counsel's e-mail was misleading in violation of California Rule of Professional Conduct 1-400, which states in relevant part:

> "A communication or a solicitation (as defined herein) shall not:
> (1) Contain any untrue statement; or
> (2) Contain any matter, or present or arrange any matter in a manner or format which is false, deceptive, or which tends to confuse, deceive, or mislead the public; or
> (3) Omit to state any fact necessary to make the statements made, in the light of circumstances under which they are made, not misleading to the public; or ….

Rule 1-400(C)(1)-(3).[3]

---

[2] *See, e.g., Harris v. Vector Mktg. Corp.*, 716 F.Supp.2d 835, 847 (N.D. Cal. 2010) ("[O]nce a class has been certified, the rules governing communications [with class members] apply as though each class member is a client of the class counsel.") (citing Manual for Complex Litigation, Fourth, § 21.33 ("Once a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel."); *see also* Restatement (Third) of Law Governing Lawyers § 99 cmt. l (2000) ("[A]ccording to the majority of decisions, once the proceeding has been certified as a class action, the members of the class are considered clients of the lawyer for the class …"). Prior to certification, putative class counsel has only a fiduciary duty to the class. *See, e.g.,* Fed. R. Civ. P. 23(g)(2), advisory committee's note (2003) ("Whether or not formally designated interim counsel, an attorney who acts on behalf of the class before certification must act in the best interests of the class as a whole.").

[3] Uber also argued that the e-mail was an improper "solicitation" under Rule 1-400. The e-mail, however, was not "delivered in person or by telephone" or "directed by any means to a person

9

Uber points to several statements in the e-mail that were arguably misleading, but the Court's primary concern are those statements that may have induced a wrongful reliance on the part of Class Members who read the e-mail and subsequently clicked through to enter into the retention agreement with Lichten & Liss-Riordan, P.C.

In particular, Class Counsel's e-mail strongly suggested to the average lay person that Class Members had to retain Lichten & Liss-Riordan, P.C., and no other firm, to preserve their rights, should the Ninth Circuit reverse this Court's orders regarding arbitration and class certification. It is true, as Class Counsel states, that the e-mail does not make that representation explicitly. In context, however, at the very least, the e-mail "tends to confuse, deceive, or mislead the public." Rule 1-400(C)(2). The e-mail begins in all capital letters that state: "READ HERE AND CLICK THIS LINK IF YOU WANT US TO CONTINUE TO PURSUE CLAIMS FOR YOU AGAINST UBER (individually if necessary) FOR EXPENSE REIMBURSEMENT AND TIPS THAT WERE NOT PAID TO YOU." *See* Docket No. 811-3. The body of the e-mail states "If Uber is successful, that would mean that *only drivers who sign up* to bring these claims individually would be able to recover any money, if we are successful in this case." *Id.* (emphasis added). The e-mail then states, again in capital letters, "IF YOU WOULD LIKE TO STAY A PART OF OUR CASE, AND HAVE US PURSUE THESE CLAIMS FOR YOU INDIVIDUALLY IF NEEDED, PLEASE CLICK THIS LINK AND FILL OUT THE FORM." *Id.*

A reasonable lay person, reviewing the e-mail as a whole, could be misled into believing that "only drivers who sign up" with Class Counsel would recover any money. There was no statement in the e-mail that Class Members were free to choose any counsel, or no counsel at all, to pursue arbitration. Additionally, contrary to what Class Counsel's e-mail suggested, Class

---

known to the sender to be represented by counsel in a matter which is a subject of the communication," and therefore does not constitute a prohibited solicitation. Rule 1-400 ¶ (B)(2). *See also Parris v. Sup. Ct.*, 109 Cal.App.4th 285, 298 n.6 (2003) ("Because neither the proposed notice to class members nor the web site prepared by plaintiffs' counsel is to be 'delivered in person or by telephone,' it is not prohibited by rule 1-400."); *Best Buy Stores, L.P. v. Sup. Ct.*, 137 Cal.App.4th 772, 776 (2006) (communication not covered by Rule 1-400 where "[t]here [was] no indication that [the attorney] intends to contact the identified Best Buy customers [in putative class action] in person or by telephone").

10

1 Members were not obligated to "sign up now" to "stay a part of our case." There was no urgency.

2 Class Members continue to be a part of the Class until otherwise ordered by the Court. By

3 delivering a message that suggested otherwise, Class Counsel's e-mail was arranged in "a manner

4 or format . . . which tends to confuse, deceive, or mislead." Rule 1-400(C)(2). The misleading

5 nature of the message about the need to "sign up" is amplified by saying the federal judge had

6 agreed that these were "valid claims." Although the email refers to "valid claims" that can go to

7 trial, a lay person may be misled into believing that the term "valid claim" means something more

8 than a claim that has survived summary judgment. Counsel could have simply omitted the word

9 "valid" to convey its point.

10 Accordingly, the Court finds that Class Counsel's e-mail violated Rule 1-400(C).

11     3.    <u>Sanctions</u>

12 In light of these findings, the Court is compelled to consider the appropriate sanctions.[4]

13 Uber presses the Court for sanctions (1) disqualifying Class Counsel from representing any

14 individual in other proceedings who received an e-mail through improper use of the class list; (2)

15 directing Class Counsel to dismiss, without prejudice, any actions already filed on behalf of such

16 individuals; (3) ordering Class Counsel to send a notice to recipients of the e-mail notifying them

17 of the disqualification and reasons therefor; (4) producing to Uber all solicitations sent based on

18 information in the class list; and (5) prohibiting Class Counsel from using the class list in any way

19 prohibited by the Protective Order.

20     a.    <u>Disqualification Is Not Warranted At This Time</u>

21 "[D]isqualification motions involve a conflict between the clients' right to counsel of their

22 choice and the need to maintain ethical standards of professional responsibility." *People ex rel.*

23 *Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1145 (1999).

24 Accordingly, a motion to disqualify should be carefully examined "to ensure that literalism does

25 not deny the parties substantial justice." *Id.* at 1144. The relevant considerations will vary

26 depending on the circumstances, but they "involve such considerations as a client's right to chosen

27

28   [4] Uber has not requested monetary sanctions, so the Court does not address that issue.

11

counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." *Id.* at 1145. Further, "[t]hese concerns are magnified when, as here, disqualification is sought not just for a single case but for many and, indeed, an entire class of litigation." *In re Complex Asbestos Litig.*, 232 Cal.App.3d 572, 586 (1991).

First, Uber expressly disavowed any request to disqualify Class Counsel from continuing to represent Plaintiffs or the Class in *this* litigation, so the sole question is whether the Court should disqualify Class Counsel from representing recipients of the e-mail in *separate* arbitration proceedings. The Court has serious questions about its authority to do so. The California Court of Appeals considered a similar situation in *In re Complex Asbestos Litigation.* There, the Court of Appeals affirmed the trial court's disqualification of a law firm in the case before it based on a conflict of interest. However, the trial court declined to disqualify the law firm from representing its clients in eleven other related asbestos cases that were not before it. The Court of Appeals affirmed, reasoning that the trial court's "inherent power to control the conduct of persons in any manner connected with a judicial proceeding before it . . . . [d]oes not mean that a superior court has any inherent or statutory power to control the conduct of persons in judicial proceedings pending *before a different superior court*." 232 Cal.App.3d at 600 (emphasis added). The Court explained that "[t]his is a matter of fundamental comity between the courts, which should not be cast aside because it may be expedient under . . . novel circumstances . . . ." *Id.* Accordingly, the Court reasoned that "whether the [firm] should be disqualified in any cases pending in other superior courts is a question we leave for those courts to decide in the sound exercise of their discretion in light of our opinion." *Id.* at 601. The Court is reluctant to disqualify Class Counsel from appearing before other tribunals outside of this litigation.

Even if the Court found such authority existed, disqualification would not appear to be an appropriate sanction here. The Court recognizes that each Class Member's right to choose their own counsel would be implicated by disqualification. Some Class Members who received the solicitation may want to be represented by Class Counsel, particularly in light of Counsel's years of experience preparing these legal claims and litigating against Uber. Moreover, this is not a

12

situation where, despite the client's desires, disqualification may be required due to a conflict of interest; Uber has not cited any conflict here. Further, Class Members who have pursued arbitration claims or signed up to pursue them might be left without legal assistance were disqualification ordered. The Court is also mindful of the possibility of Uber's desire to obtain a tactical advantage. Whether it is Uber's motive or not, Uber clearly stands to gain if Class Counsel is categorically disqualified from representing Class Members in separate arbitration proceedings if Uber is successful in decertifying the Class and compelling arbitration. Finally, although the Court concludes that Class Counsel's e-mail was sent willfully, it is unable to conclude that Class Counsel did so in bad faith given the fact that Counsel did have an attorney-client relationship with class members once the class was certified, a relationship that is entitled to some respect. Accordingly, disqualification would not appear to be merited in these circumstances even if the Court were to find it had the power to do so.[5]

Because the Court concludes that disqualification sought by Uber is not warranted here, the Court denies Uber's request for sanctions directing Class Counsel to dismiss actions it has already filed and to produce all solicitations based on information in the class list.

b. Corrective Notice

Although the Court will not disqualify Class Counsel at this time, the Court cannot allow the violation to go uncorrected. The sanction most appropriate to these circumstances is that

---

[5] Uber has cited two cases to support disqualification, but counsel's conduct in both cases is meaningfully distinguishable. In *Burda v. Fidelity Nat'l Mgmt. Servs., LLC*, No. SACV 11-00247-JVS (MLGx), 2013 WL 11042668 (C.D. Cal. Mar. 25, 2013), class counsel used contact information from a confidential class list after class certification had been denied to solicit individual representation agreements. Although, the violation of the protective order was comparable to the violation here, in *Burda*, it was the court's *second* time finding a violation of the protective order. Further, counsel in *Burda* had no legitimate reason to use the class list after class certification had been denied. In contrast, here, Class Counsel has not previously been sanctioned by the court for violating the protective order, and the class has been certified. In *Clarke v. First Transit, Inc.*, CV 07-06476 GAF (MANx), 2012 WL 12877865 (C.D. Cal. Nov. 2, 2012), the court concluded class counsel had violated a protective order by sending solicitations to putative class members offering to represent them in a separate action that they later filed. Although the violation of the protective order was comparable, the overall circumstances were not. Counsel there had been competing with other law firms pursuing parallel litigation in federal and state court for a leadership position. *Id.* at *2-3. It sent its solicitation on the eve of class certification as a means of interfering with a competing proceeding and strong-arming other law firms into accepting unfavorable fee sharing terms. *Id.* Class Counsel's conduct here is far from the egregious, bad-faith gamesmanship and misconduct in *Clarke*.

13

which most directly addresses the harm the violation caused – wrongful reliance by Class Members who received and read the e-mail, and who were misled into believing they were required to retain Class Counsel – and Class Counsel only – to preserve their rights. Accordingly, the Court directs Class Counsel to issue corrective notice to the Class approved by the Court.

As discussed above, the Court's authority to direct issuance of corrective notice stems not only from its broad sanctioning authority (including under Rule 37, Rule 16, and its inherent duty and responsibility to supervise the professional conduct of attorneys practicing before it), but also from its duties under Federal Rule of Civil Procedure 23(d). Rule 23 authorizes the court to "issue orders that . . . require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members" at its discretion. Fed. R. Civ. P. 23(d)(1)(B). *See*, *e.g.*, *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650 (9th Cir. 1977) (district court did not abuse discretion in issuing notice pursuant to Rule 23(d) "as an aid" to determine whether class certification requirements were met).

A corrective notice is warranted to protect class members. *See In re McKesson HBOC, Inc. Securities Litig.*, 126 F.Supp.2d at 1246-47 (entering sanction of corrective notice under Rule 23 where putative class members were misled by improper solicitation e-mail sent by firm who lost leadership bid and sought to provoke opt-outs). Class Members should know that they are not obligated to take any action at this time to preserve their rights or to remain members of the Class. And they should know that they are not obligated to retain Lichten & Liss-Riordan, P.C. if they should decide to pursue arbitration on an individual basis in the event the class is decertified and the arbitration clause is held to be valid and enforceable. They should also be informed that, if the Ninth Circuit ultimately reverses class certification or enforces Uber's arbitration clause, the Court will direct further notice to them to inform them of their rights and options at that time. Counsel should keep these goals in mind in drafting their proposals.[6]

---

[6] Uber's final request is that Class Counsel be ordered not to use the class list in a manner inconsistent with the Protective Order. However, the Protective Order already constrains Class Counsel's use of the list. A second, separate order would be redundant.

14

### III. CONCLUSION

For the reasons stated, the Court finds that Class Counsel violated the Protective Order and that the e-mail sent to Class Members was misleading in violation of California Rule of Professional Conduct 1-400(C). Pursuant to Rule 37, Rule 16, and its inherent authority to sanction attorneys for violations of the Rules of Professional Conduct, and pursuant to the Court's authority under Rule 23(d), the Court concludes that a corrective notice is necessary to protect Class Members' rights. The parties are ordered to meet-and-confer and to submit proposed corrective notices to the Court by **September 5, 2017**. Class Counsel shall file under seal the list of arbitrations arising from its solicitation by **September 5, 2017**. *See* Docket No. 822.

This order disposes of Docket No. 811.

**IT IS SO ORDERED**.

Dated: August 31, 2017

_____
EDWARD M. CHEN
United States District Judge