1   THEODORE J. BOUTROUS, JR., Bar No. 132099
    tboutrous@gibsondunn.com
2   THEANE D. EVANGELIS, Bar No. 243570
    tevangelis@gibsondunn.com
3   DHANANJAY S. MANTHRIPRAGADA, Bar No. 254433
    dmanthripragada@gibsondunn.com
4   GIBSON DUNN & CRUTCHER LLP
    333 South Grand Avenue
5   Los Angeles, CA 90071
    Telephone:   213.229.7000
6   Facsimile:   213.229.7520

7   ANDREW M. SPURCHISE, Bar No. 245998
    aspurchise@littler.com
8   LITTLER MENDELSON, P.C.
    900 Third Avenue
9   New York, New York  10022
    Telephone:   212.583.9600
10  Facsimile:   212.832.2719

11  SOPHIA BEHNIA, Bar No. 289318
    sbehnia@littler.com
12  LITTLER MENDELSON, P.C.
    333 Bush Street, 34th Floor
13  San Francisco, California  94104
    Telephone:   415.433.1940
14  Facsimile:   415.399.8490

15  Attorneys for Defendant
    UBER TECHNOLOGIES, INC.
16

17                  UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19

20  DOUGLAS O'CONNOR, THOMAS          Case No. 13-cv-03826 EMC
    COLOPY, MATTHEW MANAHAN, and
21  ELIE GURFINKEL, individually and on   **REQUEST FOR JUDICIAL NOTICE IN**
    behalf of all others similarly situated,   **SUPPORT OF DEFENDANT UBER**
22                                       **TECHNOLOGIES, INC.'S OPPOSITION**
                    Plaintiffs,          **TO MARCIANO ABADILLA'S**
23                                       **ADMINISTRATIVE MOTION TO**
          v.                             **CONSIDER WHETHER CASES SHOULD**
24                                       **BE RELATED (DKT. 906)**
    UBER TECHNOLOGIES, INC.,
25
                    Defendant.
26

27

28

1    In support of its opposition to the motion to relate, Defendant UBER TECHNOLOGIES,

2 INC. ("Defendant") respectfully requests that the Court take judicial notice of the following material

3 pursuant to Federal Rule of Evidence 201:

4    1.    November 20, 2018 Class Action Complaint, Dkt. 1, *Derrick Brown v. Keller*

5 *Lenkner, LLC, Dampier Law Firm, P.C.*, United States District Court, District of Massachusetts,

6 Case No. 1:18-cv-12423-NMG, a true and correct copy of which is attached hereto as **Exhibit A**.

7    Federal Rule of Evidence 201(b) permits courts to take judicial notice of any fact "not

8 subject to reasonable dispute" which is "capable of accurate and ready determination by resort to

9 sources whose accuracy cannot reasonably be questioned."  A court may take judicial notice of court

10 records in another case. *United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004).

11   Accordingly, Defendant submits that judicial notice may be properly taken as requested

12 herein.

13

14 Dated:  December 10, 2018

15

16                              */s/ Sophia Behnia*
                                SOPHIA BEHNIA
17                              LITTLER MENDELSON, P.C.
                                Attorneys for Defendant
18                              UBER TECHNOLOGIES, INC.

19

20

21

22 FIRMWIDE:161016316.1 073208.1016

23

24

25

26

27

28

EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DERRICK BROWN, Individually and on behalf of all others similarly situated,<br><br>PLAINTIFF,<br><br>V.<br><br>KELLER LENKNER, LLC and<br>THE DAMPIER LAW FIRM, P.C.,<br> DEFENDANTS | Case No. _____<br><br>CLASS ACTION COMPLAINT<br><br> JURY TRIAL DEMANDED |

Plaintiff, Derrick Brown ("Plaintiff"), by and through his attorney, brings this action on behalf of himself and all others similarly situated against Defendant Keller Lenkner, LLC ("Keller") and The Dampier Law Firm, P.C. ("Dampier") (collectively Keller and Dampier being sometimes referred to hereinafter as the "Defendants") for falsely advertising and marketing their legal services through radio advertisements within the Commonwealth of Massachusetts and elsewhere within and throughout the United States. Plaintiff alleges on personal knowledge as to all facts related to himself and upon information and belief as to all other matters.

### INTRODUCTION

1.      This is a class action brought on behalf of Plaintiff for himself and on behalf of a nationwide class of Uber drivers as further defined below as the "Class" who called an 800 number advertised by Defendants and subsequently signed a "Fee Agreement for Legal Services."

2.      During the autumn of 2018, Dampier and Keller  (i.e., "Defendants") jointly advertised, using the name of only Dampier in the advertisement, their services in one or more

mediums, including on one or more radio stations in the Boston Metropolitan area and in the major metropolitan areas throughout the 48 contiguous states of the United States. The joint advertisement (the "Advertisement") mentions a $ 20 million fund (the "Fund") that had been established as a result of a lawsuit filed by the Federal Trade Commission ("FTC") against Uber Technologies, Inc. ("Uber").

3. Immediately after referring to the FTC settlement, the Advertisement represents that Defendants can assist Uber drivers in obtaining monetary compensation. The Advertisement discloses a telephone number that Uber drivers should call in order to engage the services of Defendants for the purported purpose of having Defendants assist the Uber driver in obtaining monetary compensation.

4. The Fund is the result of the efforts of the Federal Trade Commission's ("FTC's") law suit filed by the FTC in California against Uber in connection with Uber's false and misleading representations concerning earnings and revenues that an Uber driver might receive as a result of driving for Uber.

5. The FTC action is styled as "FEDERAL TRADE COMMISSION, Plaintiff, v. UBER TECHNOLOGIES, INC., Defendant, No. 3:17-cv-00261 (D. CA. Jan. 19, 2017)."

6. The FTC's webpage states that, "[t]he Federal Trade Commission is mailing checks totaling $19,798,233 to drivers for Uber Technologies Inc., as part of a settlement with the Commission over allegations the ride-hailing company exaggerated the yearly and hourly income drivers could make in certain cities, and misled prospective drivers about the terms of its vehicle financing options….As part of a settlement with the FTC, Uber agreed to pay $20 million, which the FTC is using to send 88,799 checks to affected drivers. The average refund amount is $222.96, which is based on several factors, including how much recipients earned with Uber, in which cities and states they drove, and the total amount of money available in the settlement fund."

7. The FTC website then states, "*Epiq, the refund administrator for this matter*, will begin mailing refund checks today. The checks must be cashed within 60 days, or they will

become void. *The FTC never requires anyone to pay money or provide information to cash refund checks*. Recipients who have questions should call 1-888-506-8281." (emphasis added).

8.      The Defendants have had and will continue to have nothing whatever to do with the FTC action and Defendants are not involved as an "administrator" in the disbursement of the Funds.

9.      When an Uber driver calls the telephone number referenced in the Advertisement, he or she is asked a series of standardized and scripted questions purportedly in order to "screen" the driver as to his or her qualifications for obtaining monetary compensation.

10.      The Uber driver then has to provide personal information during the telephone call.

11.      If the Uber driver is deemed to have passed the "screening" process, he or she is sent by email or text a standardized form document entitled "Fee Agreement for Legal Services" (the "Fee Agreement").

12.      The Fee Agreement makes no mention of the Fund or the FTC lawsuit from which the Fund was derived.

13.      Rather, the Fee Agreement states that the client  is engaging the attorneys (i.e., the Defendants) to pursue on behalf of the client *in arbitration*, "claims for unpaid wages, expense reimbursement, and related claims against Uber Technologies, Inc., and its affiliates."  (emphasis added).

14.      The Advertisement never mentions the Fee Agreement, and the Fee Agreement has nothing whatever to do with the Fund or the FTC action, nor does the Fee Agreement have anything whatever to do with the Uber driver's right to have Defendants obtain his or her share of the Fund.

15.      While the Fee Agreement purports to bind the Uber driver to engage the services of Defendants, it simultaneously permits the Defendants to simply abandon their pursuit of the Uber driver's arbitration claims.

16.     Specifically, the Fee Agreement provides that, "the attorneys have the ***absolute right*** to stop representing you at any time, if in their professional judgment and consistent with their ethical responsibilities, they come to believe that your potential claims are unlikely to result in a recovery for any reason, including, but not limited to, the lack of a source of funds to pay your claims." (emphasis added).

17.     The first sentence of an October 18, 2018 article authored by Irina Ivanova published in Moneywatch states, *"[w]ith Uber expected to go public next year, banks are valuing the company as high as $120 billion."* (emphasis added).

18.     The Fee Agreement, on the other hand, imposes an outrageous, unconscionable and oppressive penalty on the driver in the event that the Uber driver (i.e., the client) desires to terminate the services of the Defendants.  Specifically, the Fee Agreement provides as follows:

> [y]ou have the right to dismiss the attorneys as any time.  If you do, you agree to immediately repay any expense advanced on your behalf and that the attorneys are entitled to a reasonable fee for the work prior to dismissal.  *You agree that a reasonable fee is 10% of your gross recovery if the attorneys have not yet filed an arbitration demand for you at the time of the dismissal or, if a demand has been filed, 20%.  Further you agree that if you terminate the attorneys after receiving a settlement offer but before accepting it, then a reasonable fee is the fee described in [section] 3.c.* (emphasis added).

19.     Section 3.c., in turns, sets out another outrageous, oppressive and unconscionable fee arrangement purportedly due to the attorneys for settlement of the Uber driver's claims or dismissal of the Defendants by the Uber driver after an offer of settlement is made; which fee arrangement includes a "double counting" of fees for services to be rendered by the Defendants.  Specifically, Section 3.c. provides as follows in regard to matters set forth above in the last sentence of the quoted language in paragraph 18 above, and upon settlement of the Uber driver's case:

> If your case is settled, then the funds recovered will be distributed in the following manner.  First the attorneys will receive the amount of their lodestar.  "Lodestar" means the attorneys' reasonable hourly rates multiplied by the hours reasonably incurred pursuing your claim.  Second the attorneys will be reimbursed from the settlement amount for costs and expenses they have incurred pursuing your claim.  Third, the

attorneys will receive, as a contingency fee, 40% of the remaining amount.  Fourth, the
remainder of the settlement will go to you.

20.     In effect, pursuant to the Fee Agreement, in the event of a settlement of the Uber

driver's claims or dismissal of Defendants' services after a settlement offer has been made,

Defendants will collect twice for the same services and quite possibly have virtually the entire

amount of the settlement paid to the Defendants rather than the Uber driver.

21.     Section 3.d of the Fee Agreement sets forth an equally outrageous, oppressive and

unconscionable fee arrangement purportedly due to the attorneys for obtaining an award for the

Uber driver; which includes a "double counting" of fees for services to be rendered by the

Defendants.  Specifically, Section 3.d. provides as follows:

> If your case results in an arbitration award of damages to you…then you agree to
> the following.  [I]f the other party is not required to pay your attorneys' fees and
> costs, then the fee [due to the attorneys] will be calculated according to [Section]
> 3.c of this Agreement.  If the other party is required to pay attorneys' fees and
> costs, then the attorneys will receive that payment.  Then, the attorneys will
> receive a contingent fee of 40% of the arbitrators' award of damages to you. Then
> any costs incurred but not reimbursed as part of an award of fees and costs will be
> deducted from the arbitration award to reimburse the attorneys.  You will receive
> the remainder of the award

22.     Equally disturbing is the outrageous, oppressive and unconscionable fee

purportedly due to the Defendants under the Fee Agreement in the event that an agency of the

United States is responsible for obtaining, as did the FTC in the FTC action, monies to be

distributed to Uber drivers.  Specifically, the Fee Agreement provides:

> If the other party offers you a settlement outside of arbitration and outside of a
> negotiation initiated on your behalf by attorneys, as for example, *part of a
> settlement of claims brought by a government agency*, then you agree that
> attorneys are still entitled to a reasonable fee if the work of attorneys on your
> behalf was *a factor* in bringing about that settlement or offer.  A reasonable fee
> under those circumstances is 5% of the gross amount collected by you.  (emphasis
> added).

23.     The fee purportedly due to Defendants referred to in paragraph 22 above results if the Defendants are *any "factor"* (whether or not substantial, necessary or material) in bringing about the settlement or offer.  Moreover, the fee is apparently due even if there is an "offer" as opposed to an offer *and* settlement.

24.     Sections 10.b. and 10.c. of the Fee Agreement contemplate that all Uber driver clients of Defendants might have their claims resolved on a class wide or collective basis. Presumably, this is the reason that the Fee Agreement permits Defendants to simply abandon their representation of the Uber driver in the event that Defendants unilaterally determine that the driver's arbitration is "unlikely to result in a recovery for any reason, *including, but not limited to, the lack of a source of funds to pay your claims."* (emphasis added).

25.     The Advertisement is false and misleading and does not disclose material facts including, but not limited to, the fact that the FTC action has been resolved, that the Funds derived from the FTC action do not require the assistance or involvement of the Defendants, that the Fee Agreement has nothing whatever to do with the FTC or the Fund, and that the Fund is being distributed by the FTC regardless of whether an Uber driver enters into a Fee Agreement.   The Advertisement is also misleading for the reasons stated in paragraphs 31 and 32 below.

26.     Plaintiff and putative Class Members, reasonably relied on the Advertisement in connection with their execution of the Fee Agreement.

27.     Defendants' Advertisement and standardized script constitutes a classic "bait and switch" tactic whereby Defendants use the existence of the FTC *court* action and the Fund to bait Uber drivers into engaging Defendants' services to assist them in pursuing unrelated wage claims in *an arbitration forum*.

28.     The arbitration provision set forth in the Fee Agreement is voidable by the Claimant and the Class as Claimant and the Class were fraudulently induced to agree to the arbitration clause and to thereby *arbitrate* their wage claims under the false and misleading pretense that the involvement of Defendants was required to obtain the Fund resulting from the already completed FTC *court* action.  The forum in which the arbitration is set to take place

6

under the Fee Agreement is Chicago, Illinois under the Commercial Arbitration Association rules which permit fee splitting among the parties to the arbitration.

29.     The purported fees due to Defendants under the Fee Agreement are outrageous, oppressive and unconscionable and are unenforceable for at least the reasons set forth above.

30.     Prior to its publication, Defendants knew that the Advertisement and standardized script were false and misleading and they prepared, approved and disseminated the Advertisement for the purpose of maximizing the number of Uber drivers entering into Defendants' Fee Agreement.

31.     The Defendants' Advertisement is also false and misleading as it fails to disclose that one of Keller's senior lawyers, Warren Postman, worked closely with Uber and its legal counsel from 2015 to approximately June 2018 pursuant to which Postman gained confidential information regarding Uber and its counsels' legal analysis and litigation strategy—core attorney work product—including information related directly to the driver classification issue and wage claims of Uber drivers.

32.     The Advertisement is false and misleading because it fails to disclose that Postman's prior work with Uber and his involvement with Plaintiff and the Class under the Fee Agreement (a) presents an irreconcilable conflict of interest; and (b) resulted in Uber informing Keller during the summer of 2018 that it would move to disqualify Keller from its representation of any Uber drivers in any actions or proceedings against Uber.

33.     Plaintiff brings this action, on behalf of himself and others similarly situated, to stop the dissemination of the false and misleading Advertisement, and to obtain redress for Plaintiff and those members of the Class who have signed the Fee Agreement.

34.     Plaintiff alleges violations of Massachusetts General Laws, Chapter 93A, § 2; Massachusetts General Laws, Chapter 266, § 91, voiding of contracts due to unconscionability, and, alternatively, asserts a claim for unjust enrichment.

35.     Plaintiff also seeks injunctive and declaratory relief based upon Defendants' conduct asserted in this Complaint.

36. Defendants' Advertisement is misleading to the Class and injunctive relief is necessary to ensure the cessation of this practice. Accordingly, Plaintiff seeks declaratory and injunctive relief to ensure that Defendants cease the Advertisement and to prevent Defendant from making the same misleading claims in the future.

## THE PARTIES

37. Defendant Keller Lenkner, LLC is a limited liability company maintaining its principal place of business located at 150 Riverside Plaza, Suite 4270, Chicago, Illinois 60606.

38. Defendant The Dampier Law Firm, P.C. is a professional corporation having a principal place of business located at 55 North Section Street, Fairhope, Alabama 36532.

39. Plaintiff Derrick Brown is an individual resident of Connecticut who heard the Advertisement while driving in Massachusetts, and who has for the past several years been engaged as an Uber driver primarily within the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

40. Jurisdiction of this Court is proper under 28 U.S.C. §1332(d). Diversity jurisdiction exists as Keller is headquartered in Illinois, Dampier is headquartered in Alabama, Plaintiff is a resident of Connecticut and the nationwide class ("Class") consists of citizens and residents of states across the country.[1] The amount in controversy exceeds $5,000,000 for Plaintiff and Class members collectively, exclusive of interest and costs, by virtue of the combined unconscionable and oppressive fees to be derived under the Fee Agreement, and the profits to be reaped by Defendants from their transactions with Plaintiff and the Class in connection with the Fee Agreement, as a direct and proximate result of the wrongful conduct alleged herein, and expressly therefore by virtue of the value of the injunctive and equitable relief sought.

41. Defendants Keller and Dampier do not "maintain a place of business or do[] not keep assets within the commonwealth…" and no 93A demand letter is required as a prerequisite

---

[1] If a national class is not certified, Plaintiff reserves the right, in the alternative, to seek class certification of a Massachusetts class against Defendants.

for initiating or pursuing this action should the Class be deemed to be consumers. See M.G.L. c. 93A, Section 9(3).

42.     Should the Class be deemed to be engaged in business in connection with the Fee Agreement, then no 93A demand letter is required as condition to initiating or pursuing this action.

43.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of herein occurred and affected persons and entities that are in this judicial district, and Defendants have received or will receive substantial compensation from such transactions and business activity in this judicial district, including as the result of advertising in this district.  The interstate trade and commerce described herein is and has been carried out in substantial part within this judicial district.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action on behalf of himself and on behalf of all other members of the Class ("Class"), defined as all persons who called a telephone number that was disseminated or disclosed in the Advertisement and who signed a Fee Agreement.  The Class Period is limited to statute of limitations applicable to each cause of action.  Plaintiff brings this Class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1) and 23(b)(2) (the latter cited statute because each Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole).

45.     Excluded from the Class are the following: Defendants and their employees, principals, affiliated entities, legal representatives, successors and assigns of all of the foregoing.

46.     There are at least several thousand Class members who are geographically dispersed throughout the United States.  Therefore, individual joinder of all members of the Class would be impracticable.

47. Common questions of law or fact exist as to all members of the Class (including Plaintiff). These questions predominate over the questions affecting only individual class members. These common legal or factual questions include:

    a   Whether Defendants' Advertisement is likely to deceive Class Members or the general public;

    b   Whether publication or dissemination of Defendants' Advertisements constitute an unfair method of competition, or an unfair or deceptive act or practice;

    c   Whether Defendants' representations are unconscionable;

    d   Whether Defendants' representations are otherwise unlawful;

    e   Whether Defendants have been or will be unjustly enriched; and

    f.   The appropriate relief that should be granted to Plaintiff and the Class.

48. Plaintiff's claims are typical of the claims of the Class in that Plaintiff was an Uber driver who called the telephone number disseminated or disclosed in the Advertisement and signed a Fee Agreement. Plaintiff, therefore, is no different in any relevant respect from any other Class member, and the relief sought is common to the Class.

49. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members he seeks to represent, and he has retained counsel competent to conduct complex class action litigation. Plaintiff and his counsel will adequately protect the interests of the Class.

50. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member likely will be relatively small when compared to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' conduct. Thus, it would be virtually impossible for Class members individually to effectively redress the wrongs done to them. Moreover, even

if Class members could afford to bring an individual action, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

51. The Class may be certified because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to the Class.

## COUNT I

## VIOLATION OF MASSACHUSETTS GENERAL LAWS ("M.G.L."), CHAPTER 93A, § 2

52. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth therein.

53. Defendants' conduct, as alleged herein, constitutes unfair or deceptive acts or practices and unfair methods of competition in trade or commerce in violation of M.G. L. c. 93A, § 2 and the regulations promulgated thereunder, including without limitation, 940 C.M.R. §§ 3.02, 3.05(1), 3.05(2), 3.16(2), 3.16(3) and 3.16(4).

54. M.G.L., c. 93A, § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

55. M.G.L., c. 93A, § 9 permits any consumer injured by a violation of M.G.L., c. 93A, §2 to bring a civil action, including a class action, for damages and injunctive relief.

56. M.G.L., c. 93A, § 11 permits any person who engages in the conduct of any trade or commerce and who is injured by another person who engages in any trade or commerce in violation of M.G.L., c. 93A, §2 to bring a civil action, including a class action, for damages and injunctive relief

11

57.     Defendants engaged in unfair and deceptive acts and/or practices in the conduct of trade or commerce in violation of M.G.L., c. 93A, § 2 by disseminating the Advertisement which was false and misleading for at least the reasons alleged in paragraphs 25, 31 and 32.

58.     Defendants' unfair and deceptive scheme to mislead Plaintiff and the Class fraudulently induced the Plaintiff and the Class to agree to an arbitration provision in the Fee Agreement pursuant to which Defendants would ***arbitrate*** wage act claims having nothing whatever to do with the FTC ***court*** settlement Fund.  This fraud and resultant unfair and deceptive act and practice has the capacity, tendency, and/or likelihood to deceive or mislead reasonable consumers and others, who are non-consumers, entitled to bring an action under M.G.L. c. 93A, Sec 11.

59.     Defendant's conduct, as alleged herein, violates various regulations promulgated by the Massachusetts Attorney General pursuant to c. 93A, § 2(c), including the following:

   a.   940 C.M.R. § 3.02 (prohibiting, among other things, statements or illustrations used in advertisements which create a false impression of the grade, quality, value, or usability of the product[1] offered);

   b.   940 C.M.R.§ 3.05(1) (prohibiting claims or representations "made by any means concerning a product which, directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect");

   c.   940 C.M.R. §3.05(2) (prohibiting the use of any advertisement "which would mislead or tend to mislead buyers or prospective buyers, through pictorial representations or in any other manner, as to the product being offered for sale");

_____

[1] For the purpose of c. 93A and these regulations, the term "product" is defined to include services. 940 C.M.R. Section 3.01.

d. 940 C.M.R. § 3.16(2) (providing that it is a violation of c. 93A, § 2 to "fail to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer to enter into the transaction");

e. 940 C.M.R. § 3.16(3) (providing that an act or practice violates c. 93A, § 2 if it "fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide consumers of this Commonwealth protection"); and

(f) 940 C.M.R. § 3.16(4) (providing that an act or practice violates c. 93A, § 2 if it violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2).

60. Pursuant to 940 C.M.R. § 3.16(3) and § 3.16(4), violations of the foregoing provisions are also violations of c. 93A, § 2.

61. Defendant's violations of M.G.L., c. 93A were willful and knowing.

62. As a direct and proximate result of Defendant's unfair and deceptive acts, Plaintiff and the Class were injured. The injuries suffered by Plaintiff and the Class include, but are not limited to agreeing to pay outrageous, oppressive and unconscionable legal fees for services to be rendered by Defendants under the Fee Agreement.

63. Had Plaintiff and the Class not heard the Advertisement, they would have not have known to call an 800 number and not, therefore, entered into the Fee Agreement.

64. Defendants' unfair or deceptive acts or practices, as alleged herein, were willful or knowing violations of c. 93A, § 2, within the meaning of c. 93A, § 9(3).

13

65.     Plaintiff and the other members of the Class are entitled to injunctive relief in the form of an order directing Defendants to cease their false and misleading Advertisement and to void or reform the Fee Agreement as the Court shall approve or order.

## COUNT II

### Untrue and Misleading Advertising under M.G.L. c. 266, § 91

66.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

67.     Defendants' Advertisement is untrue, deceptive, and misleading, in violation of M.G.L. c. 266, § 91.

68.     At all times relevant to this action, Defendants knew, or could, upon reasonable investigation, have ascertained that their Advertisement was untrue, deceptive, and misleading.

69.     Defendants' untrue, deceptive and misleading Advertisement has been promulgated during the Class Period.

70.     As a person who is aggrieved by Defendants' false and misleading Advertisement, Plaintiff brings this class action to seek all available remedies under M.G.L. c. 266, § 91, including injunctive relief. The injunctive relief would include, without limitation, an order directing Defendants to cease their false and misleading Advertisement, and publish corrective advertising.

## COUNT III (Unjust Enrichment)

71.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth therein.

72.     This claim is asserted in the alternative on behalf of Plaintiff and the Class, to the extent that any contracts do not govern the entirety of the subject matter of the disputes with Defendants.

73.     As a direct and proximate result of Defendants' misconduct as set forth above, Defendants have been unjustly enriched. Specifically, by Defendants' misconduct described herein, Defendants have accepted a benefit (the ability to collect excess, outrageous, oppressive and unconscionable fees). Defendants have an appreciation or knowledge of the benefit conferred on it by Plaintiff and the Class.

74.     It would be inequitable for Defendants to profit from Defendants' wrongful conduct.

75.     Plaintiff, on behalf of himself and all others similarly situated (i.e., the Class), seeks primarily, among other relief, to void the Fee Agreement and/or reform that Fee Agreement, as the Court shall determine proper and appropriate.

76.     Defendants should also disgorge any profits realized from the Fee Agreement.

## IV.  UNCONSCIONABILITY OF CONTRACT

77.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth therein.

78.     The Fee Agreement results in oppression and unfair surprise under the circumstances.

79.     The payments purportedly due to Defendants under the Fee Agreement is disproportionately high and the Fee Agreement is for that reason and others, unconscionable under the circumstances as alleged including, but not limited to the fact that Defendants (a) are entitled to be paid twice for the same services; (b) are entitled to be paid for the efforts of others; namely, government agencies; (c) are entitled to simply abandon representation of their clients; (d) exact an unreasonable penalty in the event a client terminates the services of Defendants.

80.     It would be inequitable to permit Defendants to profit from their unconscionable Fee Agreement.

81.     Plaintiff, on behalf of himself and all others similarly situated (i.e., the Class), seeks primarily, among other relief, to void the Fee Agreement and/or reform that Fee Agreement, as the Court shall determine proper and appropriate.

82.     Plaintiff, on behalf of himself and all others similarly situated (i.e., the Class) seeks rescission of the Fee Agreement, declare the Fee Agreement null and void and seeks to have Defendants disgorge all profits derived from the Fee Agreement.

## V.     UNCONSCIONABILITY OF CONTRACT UNDER  FEDERAL ARBITRATION ACT

83.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth therein.

84.     The Federal Arbitration Act, 9 U.S.C. Sec 2 allows a contract requiring arbitration to be void based upon grounds that exist at law or equity, including unconscionability.

85.     The Fee Agreement is unconscionable in the substance because of the unconscionable fee provisions set forth therein.

86.     The payments purportedly due to Defendants under the Fee Agreement is disproportionately high and the Fee Agreement is for that reason and others, unconscionable under the circumstances as alleged including, but not limited to the fact that Defendants (a) are entitled to be paid twice for the same services; (b) are entitled to be paid for the efforts of others; namely, government agencies; (c) are entitled to simply abandon representation of their clients; (d) exact an unreasonable penalty in the event a client terminates the services of Defendants.

87.     The manner in which drivers were induced to sign the Fee Agreement is procedurally unconscionable because, among other things, they were materially mislead concerning the reason for and work to be done under the Fee Agreement, and drivers were not given fair and proper notice of the arbitration provision under the circumstances.

88. The Fee Agreement is procedurally and substantively unconscionable because it is governed by the American Arbitration Association Commercial Rules and provisions which permit fee splitting of the costs of arbitration.

89. It would be inequitable to permit Defendants to profit from their unconscionable Fee Agreement.

90. Plaintiff, on behalf of himself and all others similarly situated (i.e., the Class), seeks primarily, among other relief, to void the Fee Agreement and/or reform that Fee Agreement, as the Court shall determine proper and appropriate.

91. Plaintiff, on behalf of himself and all others similarly situated (i.e., the Class) seeks rescission of the Fee Agreement, declare the Fee Agreement null and void and seeks to have Defendants disgorge all profits derived from the Fee Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the proposed Class, prays for judgment and other relief, as follows:

a. Certification of the Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Class and his counsel as Class counsel;

b. Equitable relief in the form of voiding the Fee Agreement or, should the Court so determine and order, conforming it to provide for reasonable attorneys' fees;

c. Disgorgement of all profits by Defendants from the Fee Agreement;

d. Rescission of the Fee Agreement;

e. Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

f. Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.


November 19, 2018

<div style="margin-left: 40%;">

Derrick Brown,
By Counsel,

/s/ Michael A. Borrelli
Michael A. Borrelli, Esq.
BBO# 634352
806 Fox Run
Middleboro, MA  02346
(781) 983-7983
lawyer2@earthlink.net

</div>